# *Westchester Surplus Lines Insurance Company*

11575 Great Oaks Way
Suite 200
Alpharetta, GA  30022

# NOTICE

**POLICY NO.**  D38064666 004

**NAME OF INSURED:**  Portofino Master Homeowners Association Inc

**ADDRESS:**  10 Portofino Drive
Gulf Breeze, FL 32561

We are pleased to enclose your policy for this account.

Please be advised that by binding this risk with the above referenced Surplus Lines Insurance Company, you agree that as the Surplus Lines Broker responsible for the placement of this insurance policy, it is your obligation to comply with all States Surplus Lines Laws including completion of any declarations/affidavits that must be filed as well as payment of any and all Surplus Lines taxes that must be remitted to the State(s). We will look to you for indemnification if controlling Surplus Lines Laws are violated by you as the Surplus Lines broker responsible for the placement.

You further confirm that any applicable state requirement concerning a diligent search for coverage by admitted carriers has been fulfilled in accordance with state law.

Thank you for this placement and your regulatory compliance.

Date:  6/29/2020

**Plaintiffs 000001**

# *Policy Declarations*



**Westchester**
A Chubb Company

™

| Policy No. D38064666 004 | Renewal of: D38064666 003 |
|---|---|

**NAMED INSURED & MAILING ADDRESS**

Portofino Master Homeowners Association Inc
10 Portofino Drive
Gulf Breeze, FL 32561

**POLICY PERIOD**

| When Coverage Begins: 04/01/2020 | 12:01 A. M. Local Time At The Location Of Covered Property |
|---|---|
| When Coverage Ends:    04/01/2021 | 12:01 A. M. Local Time At The Location Of Covered Property |

**INSURING COMPANY** | **Producer's Name & Address:**

## Westchester Surplus Lines Insurance Company

AMWINS BROKERAGE OF GEORGIA LLC
3630 PEACHTREE ROAD NE SUITE 1700
ATLANTA, GA 30326

Producer No: 277387

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW.  PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.

SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

**ATTACHED FORMS**

This policy is completed by the following:  BB-5W58a -PA (05/18) and forms and endorsements attached thereto.

**Authorization Information**

Dated:  06/29/2020

JOHN J. LUPICA, President
Authorized Representative

# *Common Policy Declarations*



**Westchester**
A Chubb Company

Policy Number:  D38064666 004
Named Insured & Mailing Address:
Portofino Master Homeowners Association Inc
10 Portofino Drive
Gulf Breeze, FL 32561

Company Name:  Westchester Surplus Lines Insurance Company
Producer's Name & Address:
AMWINS BROKERAGE OF GEORGIA LLC
3630 PEACHTREE ROAD NE SUITE 1700
ATLANTA, GA 30326
277387

**General Policy Information**

Business Description:  Condominium Development

When Coverage Begins:  04/01/2020     12:01 A.M. Local Time At The Location Of Covered Property

When Coverage Ends:     04/01/2021     12:01 A.M. Local Time At The Location Of Covered Property

**In return for the payment of premium, and subject to all the terms and conditions of this policy, we agree to provide the insurance as stated in this policy.**

The premium for this policy is indicated below next to the applicable Coverage Form(s).

*Coverage Form*

| | |
|---|---|
| Amwins Master Property Policy | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| **Total Premium:** | $ _____ |
| **Total Assessments, Fees, Surcharges, Taxes:** | $ _____ |
| **Total Amount Due:** | $ _____ |
| Minimum Earned Premium: | $ _____ |

**Attached Forms Information**

***Subject To Hurricane Minimum Earned Premium Endorsement, whichever is greater**
**See Forms Schedule CPfs2 -PA**

**Authorization Information**



Date: **06/29/2020**

JOHN J. LUPICA, President
Authorized Representative

**Internal Reference Number:**

**These Declarations together with the Coverage Declarations, Common Policy Conditions and Coverage Conditions (if applicable), Coverage Form(s) and Forms and Endorsements, if any, issued to form a part thereof, complete the above numbered policy.**

BB-5W58a-PA (05/18)

©Chubb. 2018. All rights reserved.

**Plaintiffs 000003**

# *Forms Schedule*

Company: Westchester Surplus Lines Insurance Company
SYM:    **FS**                              Policy ID: **D38064666 004**

| **Policy Period** | When Coverage Begins: | **04/01/2020** | 12:01 A.M. Local Time At The Location Of Covered Property |
|---|---|---|---|
| | When Coverage Ends: | **04/01/2021** | 12:01 A.M. Local Time At The Location Of Covered Property |

| **Applicable to all Coverage Parts** | **SLPD-PA (04/18)-Surplus Lines Declarations**<br>**BB-5W58a -PA (05/18)-Common Policy Declarations**<br>**SL-44730a (01/16)-Service Of Suit Endorsement - Florida**<br>**TRIA24 (01/15)-Policyholder Disclosure Notice of Terrorism Insurance Coverage**<br>**ALL-20887 (10/06)-CHUBB Producer Compensation Practices & Policies**<br>**ALL-21101 (11/06)-Trade or Economic Sanctions Endorsement**<br>**ALL-5X45 (11/96)-Questions About Your Insurance**<br>**IL P 001 01 04-U.S. Treasury Departments' Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders**<br>**MA-608255p (04/15)-Claims Directory Property and Inland Marine**<br>**LD-5S23j (03/14)-Signature Endorsement** |
|---|---|
| **Commercial Property** | **AmWins Master Property Policy**<br>**ACE0210 (01/08)-Nuclear, Biological, Chemical, Radiological Exclusion Endorsement**<br>**ACE0239 (06/06)-Hurricane Minimum Earned Premium Endorsement**<br>**ACE061 (08/18)-Asbestos Material Exclusion (Named Peril Exception)**<br>**ACE0668 (01/15)-Claims Adjustment**<br>**ACE126 (10/14)-Electronic Data Amendment Endorsement**<br>**ALL-10750 (01/15)-Terrorism Exclusion Endorsement**<br>**ACE0745 (09/12)-Certificate Of Insurance - Automatic Additional Insured And Loss Payee Endorsement**<br>**ACE100R (06/20)-Pollution and Pollutants Clean-Up And Removal Exclusion Endorsement**<br>**WP-272956 (06/20)-General Amendatory Endorsement - AmWins** |
| **Commercial Inland Marine** | **Not Covered** |
| **Commercial General Liability** | **Not Covered** |
| **Commercial Equipment Breakdown** | **Included** |

**Plaintiffs 000004**

## PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies) , do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy.

Provided that:

1.      The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2.      The liability of each of the Insurers shall not exceed the Participation Limit set against its name.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurer | Policy Number | Participation | Authorized Signature |
|---------|---------------|---------------|----------------------|
| Westchester Surplus Lines Insurance Company | D38064666 004 | $5,000,000 part of $15,000,000 Primary | |
| Endurance American Specialty Insurance Company | ESP30000298003 | $5,500,000 part of $15,000,000 Primary | |
| Everest Indemnity Company | CA3P005801201 | $3,000,000 part of $15,000,000 Primary | |
| Princeton Excess Surplus Lines Insurance Company | 3VA3PP0000251-02 | $1,500,000 part of $15,000,000 Primary | |
| Arch Specialty Insurance Company | ESP1002326-00 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Axis Surplus Insurance Company | EAF645360-20 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Colony Insurance Company | XP190091-1 | $6,250,000 part of $25,000,000 excess of $25,000,000 | |
| Evanston Insurance Company | MKLV11XP007995 | $7,500,000 part of $25,000,000 excess of $25,000,000 | |
| Aspen Specialty Insurance Company | PX005LG20 | $5,000,000 part of $25,000,000 excess of $25,000,000 | |

1

Plaintiffs 000005

| | | | |
|---|---|---|---|
| Independent Specialty Insurance Company | VUX-CN-0000328-04 | $8,689,317 part of $217,232,927 excess of $25,000,000 | |
| Interstate Fire & Casualty Company | VRX-CN-0000328-04 | $28,240,281 part of $217,232,927 excess of $25,000,000 | |
| Lloyd's of London | VPC-CN-0000328-04 | $17,378,634 part of $217,232,927 excess of $25,000,000 | |
| James River Insurance Company | 00090459-1 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Maxum Indemnity Company | MSP-6012522-11 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Landmark American Insurance Company | LHD912400 | $48,058,232 part of $192,232,927 excess of $50,000,000 | |
| Homeland Insurance Company of New York | 795012091 | $50,000,000 part of $100,000,000 excess of $200,000,000 | |
| Everest Indemnity Company | CA3X001322201 | $21,116,464 part of $42,232,927 excess of $200,000,000 | |

2

**Plaintiffs 000006**

## MASTER PROPERTY POLICY

1.  NAMED INSURED – "Named Insured" means **Portofino Master Homeowners Association at Pensacola Beach, Inc.; Portofino Tower One Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Two Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Three Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Four Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Five Homeowners Association at Pensacola Beach, Inc.** means the First Named Insured and any entity in which the First Named Insured owns an interest of more than 50 percent, during the Policy Period, controls during the Policy Period, or has the responsibility of placing the insurance provided by this Policy during the Policy Period. No entity is covered under this Policy unless the Company has received identifying information for such entity during the application or submission process, except if such entity is covered under miscellaneous unnamed insured locations or newly acquired property, or if such entity is added by endorsement.

    Notwithstanding any provision to the contrary in this Policy, if other valid and collectible insurance is available to any entity covered by this Policy solely because of the ownership, control, or responsibility to purchase insurance by the First Named Insured, this insurance will be excess with regard to such other insurance whether contingent, primary, excess or any other basis.

2.  TERM OF INSURANCE In consideration of a $ annual premium, this policy attaches and covers for a period of one year from April 1, 2020 to April 1, 2021, beginning and ending at 12:01 A.M. standard time, at the location of the property involved.

3.  PARTICIPATION – Please refer to the Participation Page.

4.  LIMIT OF LIABILITY - This Company shall not be liable for more than its proportion of $242,232,927 for any one occurrence.

5.  SUBLIMIT(S) OF LIABILITY) - This Company shall not be liable for more than its proportion of the following sublimits.  Sublimits are part of and not in addition to the overall Limit of Liability and apply on a per occurrence basis unless otherwise noted:

    a)  $15,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Flood.
    b)  $25,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Earthquake.
    c)  $1,000,000 per occurrence as respects Accounts Receivable
    d)  $500,000 per occurrence as respects Arson Reward

**Plaintiffs 000007**

e) $1,000,000 per occurrence as respects Contingent Time Element, Attraction Properties are excluded

f) $1,000,000 per occurrence as respects Consequential Loss

g) $10,000,000 per occurrence as respects Course of Construction Including Soft Costs

h) Included per occurrence as respects Demolition and Increased Cost of Construction Coverage A

i) $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage B

j) $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage C

k) $1,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage D

l) $10,000,000 per occurrence as respects Debris Removal

m) $10,000,000 per occurrence as respects Errors and Omissions

n) 25% of the Adjusted Loss Maximum, $10,000,000 per occurrence as respects Extra Expense

o) $5,000,000 per occurrence as respects Expediting Expense

p) 200,000,000 per occurrence as respects Equipment Breakdown

q) $1,000,000 per occurrence as respects Contract Penalty

r) $1,000,000 per occurrence as respects Fire Brigade Charges and Extinguishing Expenses

s) $50,000 per occurrence as respects Inland Transit

t) The lesser of 30 days of $2,500,000 per occurrence as respects Ingress/Egress

u) $5,000,000 per occurrence as respects Miscellaneous Unnamed Locations

v) $5,000,000 per occurrence as respects Newly Acquired Property (90 days; if not reported within 90 days the coverage ceases)

w) $1,000,000 per occurrence as respects Leasehold Interest

x) $500,000 per occurrence as respects Lost Master/Key Card

y) $5,000,000 per occurrence as respects Rental Value/Rental Income

z) Excluded per occurrence as respects Research and Development

aa) $1,000,000 per occurrence as respects Royalties

bb) $2,500,000 per occurrence as respects Service Interruption.  Property Damage and Time Element Combined.

cc) $1,000,000 per occurrence as respects Valuable Papers and Records

dd) The lesser of 30 days of $2,500,000 per occurrence as respects Civil or Military Authority

ee) $3,000,000 per occurrence as respects Landscaping, subject to a $25,000 maximum per item

ff) $1,000,000 per occurrence as respects Fine Arts, subject to a $25,000 maximum per item

The amount of loss from any one occurrence for which this policy is excess, shall be determined by the combined loss, damage or expense as insured under the primary policy.  In the event of loss or damage involving more than one coverage or peril, The Limits of Liability of the underlying policies shall first

4

apply to the coverage(s) or peril(s) not insured by this policy, and the remainder, if any to the coverages(s) or peril(s) as provided hereunder. Upon erosion or exhaustion of the Limits of Liability of the underlying policies, this policy shall then be liable for the loss uncollected from the coverage(s) or perils(s) insured hereunder, subject to the Limit of Liability specified herein.  In the event of reduction or exhaustion of the aggregate limit(s) designated in the underlying policy(ies), it is hereby understood and agreed that such insurance as is afforded by this policy shall apply in excess of the reduced or exhausted underlying limit(s).  The insured maintains the right to allocate and/or apply coverages, interests and/or perils, as insured in the primary and/or excess policies.

6.     DEDUCTIBLE CLAUSE - The Company will adjust all losses, damages or expenses arising out of any one occurrence as one loss. The Company will deduct the following from such loss:

**$50,000** per occurrence for all perils including earthquake sprinkler leakage, and the backup of sewers and drains, except:

WAITING PERIOD:

With respect to all Time Element coverages, coverage is provided by this policy only if the period of interruption of the Insured's business exceeds 24 hours. Then Time Element coverage will apply excess of the appropriate policy deductible.

EARTHQUAKE:

As respects loss or damage to property resulting from the peril of Earthquake, all loss, damage or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deductible the sum of $50,000.  This deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

FLOOD:

As respects loss or damage to property resulting from the peril of Flood, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100 year flooding, as defined by the Federal Emergency Management Agency, all loss arising out of any one occurrence shall be adjusted as one loss and from the loss shall be deducted the maximum amount recoverable under the National Flood Insurance Program for the Real or Personal Property at each Building, whether or not such coverage is purchased or maintained.

In addition, the following Deductible will apply to property not eligible and coverages not available under the National Flood Insurance Program that are covered under this Policy and any difference in valuation between policies: $100,000 per Occurrence.

The determination of whether a property is in whole or in part subject to the 100 Year Flood Zone shall be at the inception of the policy and not at the time of loss.

5

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

NAMED STORM:

With respect to loss or damage to property in Tier 1 Counties resulting from the period of Named Windstorm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm), the deductible shall be 2% of such unit of insurance at each location in accordance with policy valuation at the time of loss.  A minimum $100,000 each occurrence shall apply.

With respect to any other named storm loss or damage, the deductible shall be **$50,000** any one occurrence.

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

ALL OTHER WIND and HAIL:
As respects loss or damage to property resulting from the peril of All Other Wind, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

**$50,000**

Definition of 'Unit of Insurance':
   a)  Each separate building or structure
   b)  Contents in each separate building or structure
   c)  Property in the yard of each separate building or structure
   d)  Annual Business Interruption value applying to each separate building or structure.
   e)  Each Other Property item as listed in the Statement of Values.  If values are not listed separately, the value is included in the building value.

Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence. If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the insured shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s), notwithstanding the above reference to two or more deductibles.

The deductible amounts specified above shall not apply to general average contributions and salvage charges.

7.   LOSS PAYABLE - Loss, if any, shall be adjusted with and payable to the Insured, or as directed by them.

**Plaintiffs 000010**

8.      TERRITORY - This policy covers anywhere in the United States of America and its territories and possessions including coastal and inland waterways and while in due course of transit therein or thereto.

9.      PROPERTY COVERED - Except as hereinafter excluded, this policy covers the interest of the Insured in all real and personal property owned, used, leased or intended for use by the Insured or in which the Insured may have an insurable interest, or for which the Insured may be responsible for the insurance, or real or personal property hereafter constructed, erected, installed, or acquired including while in course of construction, erection, installation, and assembly including Improvements and Betterments. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.  This policy is extended to include:

a)      The interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by written contract for such property, including the cost to defend any allegations of liability for loss or damage to such property.

b)      At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured.

c)      Contractors' and/or subcontractors' (of any tier) and/or vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract.

10.     PROPERTY EXCLUDED - This policy does not cover loss or damage to:

a)      Money and securities;

b)      Land, land values, except as insured under the "Pollutant Cleanup of Land and Water" clause.  This exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements if land improvements have been scheduled on the Schedule of Values on file with the company.  Land improvements as described hereunder include, but are not limited to any alteration to the natural condition of the land by grading, landscaping, excavation, earthen dikes or dams, as well as additions to land such as pavements, roadways or similar works;

c)      Water; except water which is normally contained within any type of tank, piping system or other process equipment;

d)      Growing crops, standing timber, and live animals;

e)      Watercraft; aircraft and motor vehicles licensed for highway use;

f)      Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

g)      Underground mines or mine shafts or any property within such mine or shaft;

7

**Plaintiffs 000011**

h)   Offshore property; unless reported on the Schedule of Values on file with the company.

i)   Transmission and Distribution Lines beyond 1,000 feet of Insured Premises;

j)   currency; evidence of debt; notes

k)   Turbines and satellites;

l)   docks, piers, and wharves; bridges, roadways, streets, walks or any other paved surfaces; dams or dikes; railroad rolling stock; off-shore drilling rigs or platforms; underground mines, wells, caverns including property contained therein unless reported on the Schedule of Values on file with the company.

11.   PROPERTY VALUATION - The basis of loss adjustment shall be as follows:

a)   Valuable Papers & Records/Electronic Data Processing Media :  the cost to repair or replace the property with other of like kind and quality including the cost of labor, service or supplies consumed in reconstructing, reproducing, recreating, transcribing or copying information; or, if not so replaced, the value blank.

b)   Raw materials and supplies:  the replacement cost new.

c)   Stock in process:  The value of raw materials plus labor expended plus the proper proportion of overhead charges.

d)   Finished stock and other merchandise for sale:  The regular cash selling price less all discounts and charges to which such property would have been subject had no loss occurred.

e)   Real and personal property of others for which the Insured is liable:  A valuation consistent with the liability of the Insured but only to the extent that such money is necessarily expended by the Insured.

f)   Electronic data processing equipment, production machinery & equipment:  The cost to repair or replace new with like kind and quality. In addition, the Insured may elect to replace such equipment with equipment having technological advances and/or representing an improvement in function and/or forming part of a program of system enhancement and/or more consistent with the Insured's technology strategy (without any reduction or offset for betterment) provided that such replacement can be accomplished without increasing the Insurer's liability.

g)   Fine arts, at original cost to the Insured, per schedule, latest appraised value or current market value, all at the Insured's option.

h)   Other property not otherwise provided for; at replacement cost new without deduction for depreciation.  If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:

Plaintiffs 000012

      i)      The repairs, replacement or reinstatement must be executed with due diligence and dispatch.

      ii)     This Company's liability for loss or damage on a replacement cost basis shall not exceed the lesser of the replacement cost new of the property or any part thereof identical with such property intended for the same occupancy and use, including normal and customary profit and overhead even if the work is performed by the Insured; or the amount actually and necessarily expended in repairing or replacing said property or any part thereof including normal and customary profit and overhead even if the work is performed by the Insured.

12.    BUSINESS INTERRUPTION - This policy shall cover the loss resulting from necessary interruption of business conducted by the Insured including all interdependent loss of earnings between or among companies owned or operated by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

    a)     In the event of such loss, damage or destruction this Company shall be liable for the ACTUAL LOSS SUSTAINED by the insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business. Due consideration shall be given to the continuation of normal charges and expenses including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately before the loss. For the purposes of this insurance, "Gross Earnings" are defined as the sum of:

      i)      Net sales value of production from manufacturing operations, and net sales from Merchandising or Non-Manufacturing operations; and

      ii)     Other earnings derived from operations of the business,

              LESS THE COST OF:

      iii)    Raw Stock from which such production is derived;

      iv)    Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the services(s) sold by the Insured;

      v)     Merchandise sold, including packaging materials therefor; and

      vi)    Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

**Plaintiffs 000013**

b)     In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the period of restoration, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including ordinary payroll, directly attributable to such research and development activities.

c)     Resumption of Operations: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business:

     i)     by a complete or partial resumption of operation at a location owned by the same entity suffering the loss, whether damaged or not; or

     ii)     by making use of available stock, merchandise, or other property;

     such reduction shall be taken into account in arriving at the amount of loss hereunder.

d)     EXPERIENCE OF THE BUSINESS - In determining the amount of gross earnings, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

e)     As respects coverage provided under the Gross Earnings clause of this policy, the insurer shall not be liable for any loss resulting from loss or damage to finished stock nor for the time required to reproduce said finished stock.

13.     Extra Expense - This policy shall cover the necessary extra expense, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

a)     The term "Extra Expense" wherever used in this Policy, is defined as the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally have been incurred to conduct the business during the same period had no loss or damage occurred.

Plaintiffs 000014

      b)     In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities, this policy shall cover the actual loss sustained of the extra expenses as defined herein directly attributable to the interruption of such research and development activities.

      c)     As soon as practicable the Insured shall resume normal operations of the business and shall dispense with such extra expense.

14.    This policy is extended to cover expenses as are necessarily incurred for the purpose of reducing any loss under this policy; however, such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

15.    SOFT COSTS - This policy shall cover soft costs, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to property under construction as covered herein.

      a)     The term "Soft Costs" shall include:

          i)     Additional interest costs on money used to finance construction or repair;
          ii)    Additional real estate and property taxes incurred for the period of time that construction extends beyond the projected completion date;
          iii)   Additional legal and accounting fees; and
          iv)   Additional advertising and promotional expenses which become necessary as a result of an insured loss.

      b)     This company shall pay soft costs incurred from the date that the building, structure or improvement would have been completed had no physical damage occurred until such time that it is completed.  As soon as practicable after any loss, the Insured shall utilize every available means to reduce the amount of loss including:

          i)     partial or complete resumption of construction, business or operations;
          ii)    making use of materials, equipment, supplies, or other property at the Insured's premises or elsewhere; or
          iii)   making use of substitute facilities or services where practical;

      such reduction will be taken into account in arriving at the amount of such loss.

16.    Rental Value/Rental Income - This policy shall cover the actual loss sustained by the Insured resulting directly from the necessary untenability caused by direct

Plaintiffs 000015

physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as covered herein.  Loss settlement shall not exceed the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenability.

a)      If the Insured is the lessor, for the purposes of this insurance, "rental value" is defined as the sum of:

      i)      the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the insured, and

      ii)     the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

      iii)    the fair rental value of any portion of said property which is occupied by the Insured.

b)      If the Insured is the lessee, rental value shall be the determined rental which the Insured is obligated to pay (including ground rents, accrued charges, real estate taxes and interest if the Insured shall be liable therefor) less such charges and expenses as do not necessarily continue.

c)      Experience of the Business - In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

d)      With respect to buildings or structures leased or rented by the Insured, this policy will serve as rental income insurance in those situations where the insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord.  This policy will respond for rental expenses incurred by the Insured in excess of the expenses which would have been incurred had a leased or rented premises not been damaged or destroyed by any peril covered under this policy. Such coverage will apply for all additional expenses incurred during the period of untenability or if the lease cannot be terminated until its expiration.

17.    Royalties - This policy shall cover the loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to direct physical loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the other party.

Plaintiffs 000016

a)      Any loss hereunder shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED to such income referred to above, which would have been earned had no loss occurred.

b)      Resumption of Operations:  The Insured shall influence, to the extent possible, the party with whom the agreement described above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Company.

c)      Experience of the Business:  In determining the amount of income derived from the agreements(s) described above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

18.     Leasehold Interest - This policy covers the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

a)      the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

b)      improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of this policy;

c)      the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located; and "Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located. The "Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

Plaintiffs 000017

d)    The "Interest of the Insured as Lessee" is defined as:

      i)    the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

      ii)    the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

e)    The "Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is cancelled by the lessee, to the extent not covered under any other section of this policy.

f)    "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "Interest of the Insured as Lessee".

g)    This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

19.    Loss Provisions Applicable to Time Element Coverage - The "Period of Indemnity" is defined as the length of time for which loss may be claimed, and shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy, subject to the following provisions:

a)    The Period of Indemnity shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged.

b)    With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly the Period of Restoration shall be determined as provided above but such determined length of time shall be applied, and the loss hereunder calculated from the date that business operations would have begun had no damage or destruction occurred.

c)    Extended Period of Indemnity - The Period of Indemnity shall include such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

      i)    the date on which the liability of the Company for loss or damage would otherwise terminate; or

14

Plaintiffs 000018

       ii)     the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually completed;

terminating no more than 365 days from said later commencement date.

20.    Extensions of Time Element Coverage: This policy, subject to all its provisions and without increasing the amount of said policy, insures against direct physical loss resulting from damage to or destruction by the perils insured against, to:

a)    Any service provider's property including but not limited to, electrical equipment and systems, water, gas, steam, telephone or their respective transmission and distribution lines or utility plants which directly or indirectly provide incoming or outgoing services to the Insured situated on or outside of the Insured's premises.

b)    the actual loss sustained, and Extra Expense incurred by the Insured at an insured location during the period of restoration directly resulting from physical loss or damage of the type insured to property of the type insured at a Contingent Time Element Location, meaning a location within the TERRITORY of a direct supplier or direct customer of the Insured.

As respects this subparagraph b):

    i.   The Insured will influence and cooperate with the Contingent Time Element Location in every way and take any reasonable and necessary action, including the use of other machinery, supplies, or locations, to effect mitigation of the loss payable hereunder.

    ii.   In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

    iii.   This Policy does not insure loss resulting from a lack of incoming or outgoing electricity, fuel, gas, water, steam, refrigeration, sewage, or telecommunications of a direct supplier or direct customer of the Insured.

    iv.   The per occurrence deductible that applies to all perils also applies to the coverage as provided under this subparagraph b).

c)    dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other manufacturing purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources.

d)    the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory

Plaintiffs 000019

mile of an insured location, access to real or personal property is impaired or hindered by order of civil or military authority irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 e) below.

e)  the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory mile of an insured location, ingress to or egress from real or personal property is thereby impaired or hindered irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 d) above.

f)  property, facilities or piping systems which prevents the Insured from discharging its outgoing effluence.

21.  Transit - This policy shall cover property in transit, and this policy attaches and covers shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.  This insurance is extended to cover loss or damage to property:

a)  sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

b)  arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

c)  occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

d)  at the Insured's option, property which is incoming to the Insured.

The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor. With respect to shipments described under subparagraphs a and d above, this Company agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

Plaintiffs 000020

e)      The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

f)      Seaworthiness of any vessel or watercraft, and airworthiness of any aircraft are admitted between this Company and the Insured.

22.     Accounts Receivable - Defined as:

a)      All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

b)      Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

c)      Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

d)      Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

e)      the monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

f)      the monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

23.     Lost Master/Key Card - If a master or grand master key is lost, or damaged so it cannot be duplicated, we will pay for the actual loss of keys, the cost of adjusting locks to accept new keys, or the cost of new locks, if required, of like kind and

Plaintiffs 000021

quality including the cost of installation subject to the limit contained in the Declarations.

24.    Arson Reward - If covered property sustains direct physical loss or damage caused by or resulting from a fire, and the origin of such loss is determined to be the criminal acts of an individual or individuals, we will pay a reward to the person or persons who provide information that leads to the arrest and conviction of the individual or individuals responsible for the loss.

25.    Contract Penalty – This policy covers a compensation payment due under the Hotel Management Agreement between the Franchisee, Named Insured, and any Franchisor, as identified via policy endorsement, or other appropriate subsidiaries acting as the management company or agent, whether insured or not under this policy. The Contract Penalty is triggered when the Hotel Management Agreement is terminated due to loss or damage of a type insured under this policy from an insured peril where such loss or damage causes a total constructive loss.

"A total constructive loss" means the destruction or damage to the Hotel by an insured peril whereby the destruction of or damage to the Hotel is such that the cost of repairing, rebuilding or replacing the Hotel exceeds 50% of the Replacement value of the Hotel." The Contract Penalty will only apply if the franchisor does not release the franchisee from the Hotel Management Agreement after a total constructive loss occurs and the First Named Insured / Franchisee elects not to repair or rebuild the property.

26.    BOILER & MACHINERY - This policy insures direct or indirect loss as covered elsewhere in this policy to insured property as a result of an Accident to an Object subject to the following definitions:

a)     "Object" means any boiler, fired or unfired pressure vessel, refrigerating or air-conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

b)     "Accident" means an accidental loss to an Object or a part thereof which manifests itself in physical damage that necessitates repair or replacement of the Object or part thereof.

c)     "Hazardous Substance" means the additional expense incurred for clean up, repair or replacement, or disposal of damaged, contaminated or polluted property as a result of an "Accident" which causes property to become damaged, contaminated or polluted by a substance declared hazardous to health by an authorized governmental agency.  "Additional Expenses" means expenses incurred that would not have been incurred, had no substance hazardous to health been involved in the accident.

27.    PERILS INSURED AGAINST - This policy insures against all risks of direct physical loss of or damage to property described herein including general

18

average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

28.     PERILS EXCLUDED - This policy does not insure:

a)      infidelity or dishonesty of the Insured or of the Insured's employees. A willful act of malicious intent shall not be deemed to be an act of infidelity. In no event does this Policy insure loss caused by theft by the Insured or the Insured's employees;

b)      against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

c)      against ordinary wear and tear or gradual deterioration unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

d)      against inherent vice or latent defect unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

e)      against errors in processing or manufacture of the Insured's product unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

f)      against mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

g)      against nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except if a covered peril ensues, liability is specifically assumed for direct loss by such ensuing peril but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination.  This Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

h)      against hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or

19

Plaintiffs 000023

expected attack by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or by military, naval, or air forces; or by any agent of any such government, power, authority, or forces;

    i)        against any weapon employing atomic fission or fusion;

    ii)       against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

    iii)      against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against under this policy;

    iv)      against risks of contraband or illegal trade;

    v)       against confiscation, nationalization and expropriation;

Notwithstanding the above provisions, this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated.  Nothing in the foregoing shall be construed to include any loss, damage, or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon or war employing atomic fission or fusion whether in time of peace or war.

i)        loss or damage caused directly or indirectly by the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants unless the release, discharge, dispersal, seepage, migration, or escape is caused by a peril not otherwise excluded herein.  However, if a peril not otherwise excluded herein ensues due to the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants, such ensuing loss or damage shall be covered.

j)        loss or damage caused by an act of terrorism which means an act or series of acts, including the use of force or violence, of any person or group(s) or persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public or any section of the public in fear for such purposes.

k)      against loss or damage caused by insect or vermin.

**Plaintiffs 000024**

l)      against delay, loss of market loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

m)     against delay, loss of market, loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

n)      against corrosion, depletion, deterioration, erosion, wet rot, dry rot, decay, evaporation, rust, and shrinkage unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

o)      against changes of temperature or humidity, whether atmospheric or not;

p)      against settling, cracking, bulging, shrinking, or expansion of foundations; machinery pedestals, pads, or platforms; floors, pavements, walls, ceilings, or roofs; or the cumulative effects of smog, smoke, soot, vapor liquid, or dust;

q)      against lack of incoming power voice/data/internet access from offsite services except as provided in the Service Interruption Extension.

Exclusion b), c), d) and e) do not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly.

Exclusion b), c) and d) do not apply to property in transit.

29.    DEFINITIONS

a)      The term "Earthquake" as used in this policy shall mean loss or damage caused by or resulting from a series of vibrations induced in the earth's crust by the abrupt rupture and rebound of rocks in which elastic strain has been slowly accumulating (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

b)      The term "Flood" as used in this policy shall mean loss or damage caused by or resulting from waves, tide, or tidal water, and the rising (including the overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and similar bodies of water, whether wind driven or not (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

c)      The term "occurrence" is defined as follows:

21

Plaintiffs 000025

i)    Except as hereinafter defined, "loss occurrence" shall mean an accident or occurrence or series of accidents or occurrences arising out of one event.

ii)   ii) Each loss occurrence which involves the perils of tornado, windstorm, cyclone, hurricane, hail or flood shall include all loss or damage wherever occurring occasioned by these perils which arise out of one atmospheric disturbance during a continuous period of 168 hours.

iii)  Each loss occurrence which involves the peril of earthquake, a series of earthquakes shall include all losses or damage sustained during a continuous period of 168 hours.

iv)   Each loss occurrence which involves the peril(s) of vandalism, malicious mischief or riot/civil commotion shall include all losses or damage sustained resulting from one or more acts committed by a person acting alone or in collusion with others during a continuous period of 168 hours.

v)    The Insured shall have the right to elect the moment from which the time periods referred to in ii), iii), and iv) above shall be deemed to have commenced, however no elected period of time shall commence within any previous occurrence.

vi)   Should the time period in ii), iii), and iv) above extend beyond expiration or cancellation date of this policy and commence prior to the expiration or cancellation date, this Company shall be liable as is such period fell entirely within the term of this policy.

vii)  However, we shall not be liable hereunder for any loss or damage:

viii) Occurring before this policy becomes effective; or

ix)   Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

d)  "Raw Stock" - Materials and supplies in the state in which the Insured receives it for conversion by the Insured into Finished Stock, including supplies consumed in such conversion or in the service rendered by the Insured.

e)  "Stock in Process" - Raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture by on behalf of the Insured but which has not become Finished Stock.

f)  "Finished Stock" - Stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

g)  "Merchandise" - Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

h)  "Normal" - The condition that would have existed had no loss occurred.

Plaintiffs 000026

i)      "Improvements and Betterments" - Fixtures, alterations, installations or additions comprising a part of the described building and made or acquired at the expense of the Insured, but which are not legally subject to removal by the Insured.

j)      "Valuable papers and records" - Written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents and manuscripts.

k)      "Electronic Data Processing Media" - All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles.

l)      "Securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets.

m)      "Fine Arts" - Shall include but not be limited to bona fide works of art, works of rarity, works of historical value, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, galley proofs, original records, sculptures, carvings and similar property.

n)      "Architect and Engineering Fees" - Any cost associated with the preparation of plans, supervision of and approval for the repair or replacement of damaged or destroyed property.

o)      "Tier One County" - the entire territory of the United States Virgin Islands, the entire Commonwealth of Puerto Rico, the entire State of Florida, and the following:

      i)      In the State of Alabama, the counties of Baldwin, Escambia, and Mobile;

      ii)      In the State of Connecticut, the counties of Fairfield, New Haven, and New London;

      iii)      In the State of Georgia, the counties of Bryan, Camden, Chatham, Glynn, Liberty, and McIntosh;

      iv)      In the State of Hawaii, the counties of Honolulu, Kauai, and Maui;

      v)      In the State of Louisiana, the counties (also known as "Parishes") of Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, Iberia, Iberville, Jefferson Davis, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John The Baptist, St. Martin, St. Mary, St. Tammany, Terrebonne, and Vermillion;

      vi)      In the Commonwealth of Massachusetts, the counties of Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, and Suffolk;

23

Plaintiffs 000027

vii)   In the State of Mississippi, the counties of George, Greene, Hancock, Harrison, Jackson, Pearl River, and Stone;

viii)   In the State of New Jersey, the counties of Atlantic, Monmouth, and Ocean;

ix)   In the State of New York, the counties of Kings, Nassau, Queens, and Suffolk;

x)   In the State of North Carolina, the counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington;

xi)   In the State of Rhode Island, the counties of Newport, Providence, and Washington;

xii)   In the State of South Carolina, the counties of Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, and Williamsburg;

xiii)   In the State of Texas, the counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Gollad, Harris, Hidalgo, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, and Willacy; and

xiv)   In the Commonwealth of Virginia, the counties of Accomack, Gloucester, Isle of Wright, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, Westmoreland, and York; and the independent cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Suffolk, and Virginia Beach.

p)   "Named Storm"- A storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Depression or Tropical Storm. "Named storm" does not include "flood" resulting from a "named storm".

q)   "Time Element' – Includes coverage as described under Clause 12., 13., 14., 15., 16., 17., 18., 19. and 20. hereunder.

r)   "Unnamed Location' – A location which has not been scheduled with underwriters or the insured's representative and is not considered a Newly Acquired location.

s)   "Newly Acquired Location" – A location acquired by the insured after inception of this policy for a period of up to 90 days until reported to and agreed by underwriters.

30.   FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES - This policy covers fire brigade charges and other extinguishing expenses for which the Insured may be assessed including loss of fire extinguishing materials expended resulting from a peril insured.

Plaintiffs 000028

31.     SEVERABILITY OF INTERESTS - The inclusion herein of more than one person or organization, as Insured, shall not operate to increase the limit of the Company's liability nor the deductible amounts to be borne by the Insured. Except with respect to limits of liability and deductible amounts, the terms of this policy shall apply separately to each person or organization covered as Insured in the same manner and to the same extent as though a separate policy had been issued to each such person or organization.

32.     DEBRIS REMOVAL - This policy covers the cost of removal of debris of property covered hereunder including the cost of removal of debris of property not insured hereunder from the premises of the Insured resulting from a peril insured against. Except as otherwise provided for elsewhere in this policy, this policy does not cover the cost to extract contaminants or pollutants from land or water, nor does it cover the cost to remove, restore or replace contaminated or polluted land or water.

If at the time insured property is contaminated as a direct result of physical damage insured against by this policy there is in force any law or ordinance regulating contamination, including but not limited to pollution, then this policy shall cover, as a result of the enforcement of such law or ordinance, the increased cost of decontamination and debris removal of such property in a manner to satisfy such law or ordinance.  As respects Time Element coverage(s), this policy is extended to include such time as is necessary and reasonable with the exercise of due diligence and dispatch to decontaminate such property in a manner to satisfy such law or ordinance.

33.     DEMOLITION AND INCREASED COST OF CONSTRUCTION - In the event of loss or damage under this policy that causes the enforcement of any law or ordinance in force at the time of loss regulating the construction, repair or use of property, this Company shall be liable for:

a)      <u>COVERAGE A</u> - the loss in value of the undamaged portion of the property as a consequence of the enforcement of any law or ordinance that requires demolition of undamaged parts of the same property;

b)      <u>COVERAGE B</u> – the cost to demolish and clear the site of undamaged parts of the same property;

c)      <u>COVERAGE C</u> – the increased cost to repair or reconstruct damaged and undamaged property on the same or another site when the increased cost is a consequence of the enforcement of any law or ordinance.  These costs are limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  This Company shall not be liable for any increased cost of repair or reconstruction loss unless the damaged property is actually rebuilt or replaced;

25

d) Any increase in loss including but not limited to Business Interruption, Extra Expense, Rental Value, Rental Income, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law or ordinance.

e) In the event real or personal property is not repaired or replaced to the same height, floor area, size, style or comparable quality of the original property insured due to the enforcement of law or ordinance regulating, restricting or prohibiting repair or replacement of covered property, this policy will pay the full replacement cost without deduction for depreciation for the real or personal property damaged or destroyed, as if the property was replaced to the same height, floor area, size, style or comparable quality of the original property insured. This policy will also pay Time Element loss as if the original structure were repaired or replaced to original specifications, subject to the terms and conditions of these coverage(s).

34. EXPEDITING EXPENSE - This policy covers the extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

35. CONTRIBUTING INSURANCE - Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy. This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

36. EXCESS INSURANCE - Excess insurance is insurance over the limit of liability set forth in this policy. The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

37. UNDERLYING INSURANCE - Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy. Should the amount of loss payable under such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then no deductible shall apply hereunder and that portion which exceeds such a deductible amount shall be considered "other insurance". Should the amount of loss payable under such underlying insurance be less than the largest deductible amount which would apply in the event of loss under this policy, then the deductible amount to be deducted hereunder shall be the difference between the amount to be paid under such underlying insurance and the largest deductible amount which would apply in the event of loss under this policy.

38. OTHER INSURANCE - Except for insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether

26

**Plaintiffs 000030**

prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils.  This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.

39.     SUBROGATION - Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder.  The right of subrogation against the Insured, affiliated, subsidiary, and associated companies, or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived and at the option of the Insured, against a tenant or guest of the Insured. In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.  If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests.  If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

40.     SALVAGE AND RECOVERIES - All salvages, recoveries, and payments, (excluding proceeds from subrogation and underlying insurance) recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly.  If proceeds from subrogation are recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(s) participating in the payment of any loss, in the proportion of their respective interests.

41.     CONTROL OF DAMAGED MERCHANDISE - The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods.  The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods.  The Insured, using reasonable discretion, shall be the sole judge as to whether production or EDP equipment and/or media is damaged and unusable. This insurer shall be allowed to dispose of as salvage, any non-proprietary property deemed unusable by the Insured.

27

Plaintiffs 000031

42.   BRAND OR TRADEMARK - In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carriers or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at this Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

43.   ERRORS OR OMISSIONS - Any unintentional error or omission made by the Insured in the application for insurance shall not void or impair the insurance hereunder but only to the extent this Policy would have provided coverage had the unintentional error or omission not been made provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department. This coverage does not apply if there is coverage available under any other provision in this Policy.

44.   NOTICE OF LOSS - As soon as practicable after any loss or damage occurring under this policy is known to the Insured's home office insurance department, the Insured shall report such loss or damage with full particulars to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 for transmission to the designated loss adjuster and to this Company.

45.   DESIGNATED LOSS ADJUSTER - It is understood and agreed that each and every loss will be adjusted by Jeff Hellman of McLaren Young International, 19324 40th Avenue West, Suite C, Lynnwood, WA 98036.

46.   PROOF OF LOSS - Proof of loss is required as soon as practicable following the Company's written request for signed Proof from Insured; however, Insured, at its option, may elect to file Proof with the Company prior to the Company's request.  It shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained.

47.   PARTIAL PAYMENT OF LOSS - In the event of a loss covered by this policy, it is understood and agreed that the Company shall allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

48.   PAYMENT OF LOSS - All adjusted claims shall be due and payable no later than thirty (30) days after presentation of acceptable proofs of loss by the Insured or its appointed representative.

49.   LOSS ADJUSTMENT EXPENSES - This policy is extended to include reasonable expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. These expenses include fees of professionals engaged to assist the Insured in determining the cause and origin of the loss, the amount

28

of loss sustained, and the amount of loss payable under this policy. This policy shall not cover the expenses of a public adjuster. Such expenses shall not exceed $2,000,000 in any one occurrence.

50.   APPRAISAL - If the Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser.  The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending.  Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss.  If the appraisers fail to agree, they shall submit their differences to the umpire.  An award in writing by any two shall determine the amount of loss.  The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

51.   CONSEQUENTIAL LOSS - This policy insures against consequential loss including spoilage to real and personal property as insured hereunder caused by change of temperature or humidity or by interruption of any service including but not limited to power, heat, air conditioning, or refrigeration resulting from a peril insured against.

52.   PAIR AND SET - In the event of loss or damage by a peril insured against to any article or articles which are part of a pair or set, the measure of loss or damage to such article or articles shall be the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

53.   CONSEQUENTIAL REDUCTION IN VALUE - This policy covers the reduction in value of insured components or parts of components or parts of products or the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to direct physical loss or damage insured against by this Policy to other insured components or parts of products.

54.   COINSURANCE WAIVER - This policy is not subject to any coinsurance or average clause.

55.   ALTERATIONS AND USE CLAUSE - Permission is granted to the insured to cease operations or for buildings to remain vacant or unoccupied provided fire protection, watch alarm services are maintained, and written notice is given to the Insurer prior to the sixtieth (60th) consecutive day of cessation of operations, vacancy or unoccupancy. The Insured's building is considered vacant or unoccupied when it does not contain enough covered Property to conduct customary business operations.

Plaintiffs 000033

56.   ASSISTANCE AND COOPERATION OF THE INSURED - The Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

57.   SUE AND LABOR - In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment.  This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

58.   REINSTATEMENT - With the exception of loss subject to annual aggregate limits as noted herein, no loss hereunder shall reduce the amount of this policy.

59.   SUIT AGAINST THE COMPANY - No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy.  The Company agrees that any action or proceeding against it for recovery of any loss under this policy shall not be barred if commenced within the time prescribed therefor in the statutes of Florida.

60.   CERTIFICATES OF INSURANCE - It is understood and agreed that Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 is authorized to issue certificates of insurance naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests subject always to the terms, conditions, and limits of liability of this policy. The Company agrees to waive the issuance of formal Company endorsements in respect of such interests.

61.   NOTIFICATION CLAUSE - All notices or communications concerning this policy shall be addressed to the offices of the Insured, to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 and to AmWINS Brokerage of Georgia, 3630 Peachtree Road NE, Suite 1700, Atlanta, GA 30326.  All such notices shall be sent via registered mail.

62.   CANCELLATION/NON RENEWAL - This policy may be cancelled at any time at the request of the Insured or it may be cancelled or non-renewed by the Company by mailing to the Insured written notice stating when, not less than ninety (90) days thereafter or ten (10) days in the event of non-payment of premium, such cancellation or non-renewal shall be effective. If the First Named Insured cancels, return of any unearned premium will be calculated on the

30

customary short rate basis. If the Company cancels, return of any unearned premium will be calculated on a pro rata basis. Return of any unearned premium will be made by the Company as soon as practicable. The cancellation will be effective even if the Company has not made or offered a refund.

63.    TITLES OF PARAGRAPHS - The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

64.    MORTGAGE CLAUSE - As respects Real Property only, loss, if any, under this policy shall be payable to the mortgagee (or trustee) as its interest may appear under all present or future mortgages upon the property herein insured in which the aforesaid may have an interest as mortgagee (or trustee) in order or precedence of mortgages., and this insurance as to the interest of said mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that, in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided also, that the mortgagee (or trustee) shall, notify the Company of any changes of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and unless permitted by this policy, it shall be noted thereon and the mortgagees or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The company reserves the right to cancel this policy at any time as provided by its terms, and in such case, this policy shall continue in force for the benefit only of the mortgagee (or trustee) for an additional thirty (30) days.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgagee debt, or may at their option pay to the mortgagee (or trustee) the whole principal due or to grow on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and all of such other securities, but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

65.    JURISDICTION AND SUIT - It is hereby understood and agreed that in the event of the failure of the Insurer to pay an amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court

31

Plaintiffs 000035

of competent jurisdiction within the United States and will comply with all requirements necessary to give such jurisdiction.  All matters arising hereunder shall be determined in accordance with the law and practice of such court. In any suit instituted against it under this, the Insurer will abide by the final decision of such court or any appellate court in the event of an appeal.

66.     POLLUTANT CLEAN UP AND REMOVAL - This policy is extended to cover the expense actually incurred by the Insured to decontaminate, clean up and/or remove pollutants from land, water or air including resultant time element loss if the release, discharge, or dispersal of the pollutants results from any loss or damage as covered herein. Such expenses shall not exceed $500,000 in any one policy year.

67.     ATTACHMENT CLAUSE – Please refer to the Participation Page.

_____
 [Authorized Signature]

Plaintiffs 000036

# Endorsement No. 1

## <u>Microorganism Exclusion – Resultant Mold</u>

This policy does not insure any loss, Damage, Time Element, claim, cost, expense or other sum directly or indirectly arising out of or relating to (regardless of whether any other cause or event contributed concurrently or in any sequence):

Fungus, mold, mildew, yeast, mushrooms, spores, toxins, mycotoxins, bacteria or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion shall not apply to any such loss, Damage, Time Element, claim, cost, or expense resulting from mold that is a direct result of an Insured Cause of Loss and is not otherwise excluded by the Policy, provided such loss, Damage, Time Element, claim, cost, or expense is reported to the Company in writing within twelve months from the expiration date of the policy. This clause is subject to a $500,000 per occurrence and in the annual aggregate sublimit.

This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part, for these matters.

All other terms and conditions remain unchanged.

Plaintiffs 000037



## GENERAL AMENDATORY ENDORSEMENT

| Named Insured | | | | Endorsement Number |
|---|---|---|---|---|
| Portofino Master Homeowners Association Inc | | | | |

| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
|---|---|---|---|---|
| FS | D38064666 004 | 04/01/2020       To  04/01/2021 | | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

### MASTER PROPERTY POLICY FORM

The following changes are hereby made to the policy; supersede any term, provision or endorsement to the contrary in this policy; and apply notwithstanding such term, provision or endorsement:

**A.** As respects Section 12. BUSINESS INTERUPTION, Section 15. SOFT COSTS, Section 16. RENTAL VALUE/RENTAL INCOME, Section 17. ROYALTIES, and Section 20. EXTENSIONS OF TIME ELEMENT COVERAGE, this Policy only covers loss arising from direct physical loss or damage to covered property occurring within the coverage territory during the term of this Policy when directly caused by or resulting from a covered cause of loss and not otherwise excluded by this Policy.

**B.** The following is added to Section 28. PERILS EXCLUDED:

    a)   Earthquake at locations in California.

**C.** Section 43. DESIGNATED LOSS ADJUSTER is deleted and replaced by ACE0668, Claims Adjustment Endorsement, attached to this policy.

**D.** The most we will pay for CONSEQUENTIAL LOSS (Section 51) is $25,000 per occurrence or the Sublimit of Liability for Consequential Loss shown in Section 5 of this policy, whichever is greater.

**E.** Section 65. MORTGAGE CLAUSE is deleted in its entirety

**F.** Section 67. POLLUTANT CLEANUP AND REMOVAL is deleted and replaced by the ACE100R (06/20), Pollution Exclusion and Pollutant Cleanup and Removal Coverage Extensions Endorsement, attached to this policy.

All other terms and conditions remain unchanged.

Plaintiffs 000038

**POLLUTION EXCLUSION AND POLLUTANT CLEANUP AND REMOVAL COVERAGE EXTENSION ENDORSEMENT**

| Named Insured<br>Portofino Master Homeowners Association Inc | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D38064666 004 | Policy Period<br>04/01/2020   **to**   04/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

The following provisions and exclusions apply to the policy; supersede any term, provision or endorsement to the contrary in this policy; and apply notwithstanding any such term, provision or endorsement in this policy or in any underlying, contributing or followed policy to the contrary:

1. **EXCLUSION**

   The following exclusion is added and replaces any other Pollution Exclusion applicable to this policy.
   This policy does not cover loss or damage caused by or resulting from any of the following:

   Discharge, dispersal, seepage, migration, release or escape of "Pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "Specified Causes of Loss", provided such "Specified Causes of Loss" are otherwise covered by this policy. But if the discharge, dispersal, seepage, migration, release or escape of "Pollutants" results in a "Specified Cause of Loss", this policy will cover the loss or damage caused by that "Specified Cause of Loss" provided such "Specified Causes of Loss" are otherwise covered by this policy.

2. **DEBRIS REMOVAL**

   If any Debris Removal coverage is included in this policy, this policy is amended as follows:

   Debris Removal coverage does not apply to costs to:
   **(a)** Extract "pollutants" from land or water; or
   **(b)** Remove, restore or replace polluted land or water.

3. **TIME ELEMENT**

   In the event that Time Element coverage is provided elsewhere in this policy or endorsed hereto, the term "Period of Restoration", "Period of Recovery", "Period of Interruption", "Period of Liability" or any similar term which defines the time period for which loss is covered shall not include any increased periods of time due to the enforcement of laws regulating the prevention, control, repair, clean-up or restoration of environmental damage.

4. **POLLUTANT CLEANUP AND REMOVAL**

   The following Coverage Extension applies to this policy and replaces any other Pollutant Cleanup and Removal additional coverage or coverage extension contained elsewhere in this policy:

   We will pay your reasonable and necessary expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

   Includes copyrighted material of Insurance Services Office, Inc., with its permission<br>©Chubb. 2016. All rights reserved.

**Plaintiffs 000039**

This Coverage Extension does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Coverage Extension is $10,000 or the limit for such coverage as stated elsewhere in this Policy, whichever is greater, for the sum of all covered expenses arising out of Covered Causes of Loss occurring during the policy period or during each separate 12-month period of this policy if this policy is for a term greater than 12 months.

## 6. DEFINITIONS

The following definition is added to this policy and replaces any other definition of "pollutants" contained elsewhere in this policy:

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

"Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**(a)** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:
  a. The cost of filling sinkholes; or
  b. Sinking or collapse of land into man-made underground cavities.

**(b)** Falling objects does not include loss or damage to:
  a. Personal property in the open; or
  b. The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**(c)** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam.

**(d)** Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:
  a. Airborne volcanic blast or airborne shock waves;
  b. Ash, dust or particulate matter; or
  c. Lava flow.

All other terms and conditions remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
©Chubb. 2016. All rights reserved.

**Plaintiffs 000040**

# NUCLEAR, BIOLOGICAL, CHEMICAL, RADIOLOGICAL EXCLUSION ENDORSEMENT

| Named Insured<br>Portofino Master Homeowners Association Inc | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D38064666 004 | Policy Period<br>04/01/2020 **to** 04/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**BOILER AND MACHINERY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

The following exclusions are added to your Policy or Coverage Part.

This insurance does not apply to:

**A.** Loss or damage arising directly or indirectly from nuclear detonation, reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such nuclear detonation, reaction, nuclear radiation or radioactive contamination may have been caused. This exclusion replaces any other nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination exclusions found elsewhere in this Policy.

**B.** Loss or damage arising directly or indirectly from the dispersal, application or release of, or exposure to, chemical, radiological, or biological materials or agents, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such dispersal, application, release or exposure may have been caused.

**C.** If this endorsement is attached to a Commercial Inland Marine Policy or Coverage Part, the term loss or damage is changed to Loss.

©Chubb. 2016. All rights reserved.

**Plaintiffs 000041**

| Named Insured<br>Portofino Master Homeowners Association Inc | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D38064666 004 | Policy Period<br>04/01/2020 **to** 04/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**Commercial Property Coverage Part**

**Commercial Inland Marine Coverage Part**

**HURRICANE MINIMUM EARNED PREMIUM ENDORSEMENT**

The following terms and conditions will apply to this policy:

1. If you cancel this policy, remove a location or reduce the amount of insurance on a location that is within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands, and coverage existed any time during the period of June 1st to November 30th, the amount of premium we will return will be the Unearned Premium for the location.  The Unearned Premium is the annual premium for the policy (or for the location removed or coverage reduced, as applicable) multiplied by the Unearned Factor noted below. The location premium is the 100% annual rate multiplied by the location value as scheduled in the most current Statement of Values on file with the Company.

1 year Policy

| Days Policy<br>In Force | Unearned Factor |
|---|---|
| 1 to 180 | 20% |
| 181 to 210 | 15% |
| 211 to 240 | 10% |
| 241 to 270 | 7.5% |
| 271 to 300 | 5.0% |
| 301 to 330 | 2.5% |
| 331 to 365 | 0.0% |

2. If a Location that is within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands is added during the term of the policy and coverage exists at any time during the period of June 1st to November 30th, the rate will be calculated as 100% of the annual rate, less the Unearned Factor as calculated in No. 1 above based upon the number of days remaining in the policy term.

3. The provisions of this endorsement replace any short rate provisions stipulated in this policy for all locations that are within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands and coverage existed any time during the period of June 1st to November 30th.

©Chubb. 2016. All rights reserved.

**Plaintiffs 000042**

4.  Nothing herein will act to provide coverage outside the automatic acquisition clause, if any, that is located elsewhere in the policy.

**All other terms and conditions remain unchanged.**

_____

Authorized Representative

©Chubb. 2016. All rights reserved.

**Plaintiffs 000043**



## ASBESTOS MATERIAL EXCLUSION
### (Named Peril Exception)

| Named Insured | Endorsement Number |
|---|---|
| **Portofino Master Homeowners Association Inc** | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **FS** | **D38064666 004** | 04/01/2020 to 04/01/2021 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

### COMMERCIAL PROPERTY COVERAGE PART

### COMMERCIAL INLAND MARINE COVERAGE PART

The following exclusion is added to this policy; supersedes any term, provision or endorsement to the contrary in this policy; and applies notwithstanding such term, provision or endorsement:

A.  This policy excludes loss or damage to asbestos, asbestos-containing product, or asbestos-containing material.

B.  This policy does not provide insurance against any loss, damage, cost, expense, fine or penalty resulting from or arising out of:

1.  remediation of any kind, including but not limited to removal or modification, of any asbestos, asbestos-containing product, or asbestos-containing material from a building or structure of any kind, whether damaged or undamaged, and regardless of the reason such removal is undertaken, whether voluntary or compelled by government directive; or

2.  the demolition or increased cost of reconstruction of property, the repair of property, the removal of debris, or the loss of use of property when caused by, arising out of, or undertaken due to the enforcement of any law, regulation, rule or ordinance that in any manner regulates asbestos, asbestos-containing product, or asbestos-containing material, except to the extent that coverage is provided by the Demolition and Increased Cost of Construction Additional Coverage; or

3.  any fault in the design, manufacture, or installation of asbestos, asbestos-containing product, or asbestos-containing material.

C.  Notwithstanding the exclusions set forth above, this Policy covers direct physical loss or damage to asbestos, asbestos-containing product, and asbestos-containing material which is physically incorporated into an insured building or structure, including the necessary costs to remove or remediate such damaged asbestos, but only when such damage occurring during the policy period is directly and solely caused by the following perils, and then only that part of such asbestos which incurs direct physical loss or damage:

fire, lightning, explosion, windstorm, hail, smoke, aircraft or vehicle impact, riot or civil commotion, vandalism, malicious mischief or accidental discharge of fire protective equipment.

All other terms and conditions remain unchanged.

**Plaintiffs 000044**

**CLAIMS ADJUSTMENT**

| Named Insured<br>Portofino Master Homeowners Association Inc | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D38064666 004 | Policy Period<br>04/01/2020 **to**  04/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**COMMERCIAL BOILER & MACHINERY COVERAGE PART**

It is a condition of this policy that the Company reserves the right to engage its own adjusters, investigators and experts at its sole discretion and expense.

All other terms and conditions remain unchanged.

ACE0668 (01/15) ©Chubb. 2016. All rights reserved. Page 1 of 1

**Plaintiffs 000045**

**ELECTRONIC DATA AMENDMENT ENDORSEMENT**

| Named Insured | Endorsement Number |
|---|---|
| Portofino Master Homeowners Association Inc | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D38064666 004 | 04/01/2020 **to** 04/01/2021 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**BOILER AND MACHINERY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

The following terms and provisions are added to the Policy; supersede any term, provision or endorsement to the contrary in this Policy; and apply notwithstanding any such term, provision or endorsement in this Policy or in any underlying, contributing or followed policy:

1. This Policy excludes loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of:

   a. "Electronic Data" by any cause whatsoever (including but not limited to "Computer Virus");

   b. "Electronic Data Processing Equipment" caused by or resulting from the loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of "Electronic Data"; regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of "Electronic Data", "Electronic Data Processing Equipment", or "Electronic Media"; and/or

   c. "Electronic Media" caused by or resulting from the loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of "Electronic Data"; regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of "Electronic Data", "Electronic Data Processing Equipment", or "Electronic Media".

   This exclusion does not apply to loss or damage to "Electronic Data", "Electronic Data Processing Equipment", and "Electronic Media" caused by or resulting from a "Named Peril", if and to the extent such Named Peril is already covered by this or by any underlying policy.

2. This Policy excludes loss, damage, cost or expense resulting from or arising out of any failure, malfunction, deficiency, deletion, fault, Computer Virus or corruption of computer code that results from or arises out of any authorized or unauthorized access by any means and for any purpose, whether intentional or inadvertent, in, of or to any "Electronic Data", "Electronic Data Processing Equipment", or "Electronic Media" and similar data, media, devices, and equipment in the ownership, possession, or control of a third party.

Definitions

1. "Electronic Data" means information, facts or "Computer Programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hardware, computer memory, hard or floppy disks, zip drives, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

ACE126 (10/14)                    ©Chubb. 2016. All rights reserved.

**Plaintiffs 000046**

2.  "Computer Programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to send, receive, process, store, retrieve, erase, or destroy data, and "Electronic Data" which is integrated in and operates or controls the building's elevator, lighting, plumbing, electricity, heating, ventilation, air conditioning,  security system, safety system, and fire protection system, but does not include prepackaged software held in storage.

3.  "Electronic Data Processing Equipment" means "Computers", computer servers and similar equipment and component parts thereof, the purpose of which is to process Electronic Data.

4.  "Electronic Media" means any physical device the purpose of which is to hold, store, contain or transfer "Electronic Data", and includes but is not limited to disks, drives, films, tapes, records, drums, or cells.

5.  "Computers" includes but is not limited to mainframes, servers, workstations and portable computing devices, personal information managers, wide and local area network hardware, electronic and electromechanical equipment, data processing equipment, electronic controls for machinery, electronically programmed memory chips, and electronically controlled communication equipment.

6.  "Computer Virus" means instructions, code, files, applications or any software program that has the ability or is suspected to have the ability to damage, destroy, erase, corrupt, alter, impede, or prevent access to "Electronic Data", "Electronic Media" or "Computers", or to disrupt or interfere with the operations of "Computers", or to disrupt or interfere with the operation of any software or the reliability of any "Electronic Data", including but not limited to malicious codes, malware, Trojan Horses, worms and time or logic bombs.

7.  "Named Peril" means the perils of Fire; Lightning; Explosion; Windstorm or Hail; Smoke; Aircraft or Vehicles; Riot and Civil Commotion; Willful or malicious physical loss or damage by a means other than "Computer Virus" and/or an authorized or unauthorized access in, of or to any "Electronic Data", "Electronic Data Processing Equipment" and/or "Electronic Media"; Leakage from fire extinguishing equipment; Sinkhole Collapse; Volcanic Action; Building glass breakage; Falling Objects, Weight of snow, ice or sleet, Water Damage; Sonic Boom; Theft; Flood, Earthquake or Earth Movement.

All other terms and conditions remain unchanged.

©Chubb. 2016. All rights reserved.

**Plaintiffs 000047**

## TERRORISM EXCLUSION ENDORSEMENT

| Named Insured<br>Portofino Master Homeowners Association Inc | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D38064666 004 | Policy Period<br>04/01/2020 **to**  04/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**BOILER AND MACHINERY COVERAGE PART**
**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**
**BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE FORM**
**COMMERCIAL PROPERTY COVERAGE PART**
**STANDARD PROPERTY POLICY**

The following exclusion is added to this policy and applies to all coverages, additional coverages, and coverage extensions, notwithstanding any provision to the contrary in this policy or any other endorsement hereto:

A. This insurance does not cover loss, damage, injury, expense, cost, or legal obligation directly or indirectly caused by or resulting from any of the following, regardless of any other cause or event, whether or not insured under this policy, contributing concurrently or in any other sequence thereto:

   1. "Act of Terrorism"; or

   2. Actions taken by or on behalf of any government or any branch or division thereof (including, without limitation, the uniformed armed forces, militia, police, state security, and anti-terrorism agencies) in responding to, preventing, combating, defending or retaliating against any "Act of Terrorism; or

   3. dispersal, application, or release of any actual or alleged pathogen, poison, biologic or chemical product, material, waste or substance as a result of an Act of Terrorism, and it reasonably appears that one purpose of the Act of Terrorism was to release such product, material, waste or substance.

   This exclusion applies whether or not the "Act of Terrorism" was committed in concert with or on behalf of any organization or government.

   The terms and limitations of this exclusion do not serve to create coverage for any loss which would otherwise be excluded under this Policy, such as, but not limited to, losses excluded by the "Nuclear Exclusion" or the "War Exclusion" or similar provision.

B. As used in this endorsement:

   1. "Act of Terrorism" means any act against persons, organizations or property of any nature that involves the following or preparation for the following:

      a. Use or threat of force or violence; or

      b. Commission or threat of a dangerous act; or

      c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

 ©Chubb. 2016. All rights reserved.

**Plaintiffs 000048**

2.   Appears to be intended, in whole or in part, to:

    a.   Intimidate or coerce a government or the civilian population; or

    b.   Disrupt any segment of a nation's economy; or

    c.   Influence the policy of a government by intimidation or coercion; or

    d.   Affect the conduct of a government by mass destruction, assassination, kidnapping or hostage-taking; or

    e.   Further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology; or

    f.   Respond to governmental action or policy.

"Act of Terrorism" shall also include any incident determined to be such by an official, department or agency that has been specifically authorized by federal statute to make such a determination.

C.   Exception Covering Certain Fire Losses

If an Act of Terrorism results in a fire and the direct physical loss or damage to property insured hereunder located in any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands and any territory or possession of the United States, that, either pursuant to the Standard Fire Policy or otherwise, prohibits exclusions for acts of terrorism that result in fire,  this Company will pay for the loss or damage caused by that fire.  Such coverage for fire applies only to direct loss or damage to property insured hereunder and may be limited, in accordance with the Standard Fire Policy, to the lesser of the actual cash value of the property at the time of the loss or the amount which it would cost to repair or replace the property, without allowance for any increased cost of repair or replacement by reason of any ordinance or law, and without any compensation for business interruption, extra expense to continue business activities, or any other coverage for loss or damage other than direct physical loss or damage to the property insured hereunder.

All other terms and conditions remain unchanged.

 ©Chubb. 2016. All rights reserved.

Plaintiffs 000049

# SERVICE OF SUIT ENDORSEMENT - FLORIDA

| Named Insured<br>Portofino Master Homeowners Association Inc | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D38064666 004 | Policy Period<br>04/01/2020 **to**  04/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Information about service of suits upon the company is given below. Service of process of suits against the company may be made upon the following person, or another person the company may designate:

> Chief Financial Officer of the State of Florida
> Department of Financial Services
> 200 E. Gaines Street
> Tallahassee, FL 32399

The person named above is authorized and directed to accept service of process on the company's behalf in any action, suit or proceeding instituted against the company. If the insured requests, the company will give the insured a written promise that a general appearance will be entered on the company's behalf if a suit is brought.

If the insured requests, the company will submit to the jurisdiction of any court of competent jurisdiction. The company will accept the final decision of that court or any Appellate Court in the event of an appeal.  However, nothing in this endorsement constitutes a waiver of the company's right to: remove an action to a United States District Court, seek a transfer of a case to another court, or to enforce policy provisions governing choice of law or venue selection, as may be permitted by the laws of the United States, or of any state in the United States.

Florida law requires that the Chief Financial Officer of the State of Florida be designated as the company's agent for service of process. In Florida the company designates the Chief Financial Officer as the company's true and lawful attorney upon whom service of process on the company's behalf may be made. The company also authorizes the Chief Financial Officer to mail process received on the company's behalf to the company person named below.

> Mr. Paul Bech, Esq., Associate General Counsel
> Chubb
> 436 Walnut Street
> Philadelphia, PA 19106-3703

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

_____
Authorized Representative

SL-44730a (01/16)

**Plaintiffs 000050**



Westchester Surplus Lines Insurance Company
Insurance Company

**Portofino Master Homeowners Association Inc**
Policyholder

**D38064666 004**
Policy Number

**AMWINS BROKERAGE OF GEORGIA LLC**
Broker/Producer

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You were notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury---in consultation with the Secretary of Homeland Security, and the Attorney General of the United States---to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY YOUR POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS.  UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% FOR YEAR 2015, 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017, 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE.  THE PREMIUM THAT WOULD BE CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.**

**YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION.  IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.**

You elected *NOT* to purchase terrorism coverage under the Act at the price indicated. ACCORDINGLY, WE WILL *NOT* PROVIDE THIS COVERAGE AND YOU DO NOT OWE THE ADDITIONAL PREMIUM FOR THAT COVERAGE INDICATED BELOW.

Terrorism coverage described by the Act under your policy was made available to you for additional premium in the amount of $13,833 , however you elected to decline such coverage.

**Plaintiffs 000051**

## CERTIFICATES OF INSURANCE – AUTOMATIC ADDITIONAL INSURED AND LOSS PAYEE ENDORSEMENT

| Named Insured<br>Portofino Master Homeowners Association Inc | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D38064666 004 | Policy Period<br>04/01/2020 **to** 04/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

### COMMERCIAL PROPERTY COVERAGE PART

### COMMERCIAL INLAND MARINE COVERAGE PART

The following provisions are added to this policy and supersede and replace any conflicting provision in this Policy (including in any other endorsement hereto):

A. Any Certificate of Insurance issued in connection with this Policy will be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said certificate.  Certificates of Insurance do not amend, modify or alter any term or condition of this Policy.

B. However, if, pursuant to a written agreement executed prior to a date of loss in question, the First Named Insured is required to add a person or entity to this Policy as an Additional Insured and Loss Payee, then this Policy will be deemed to have been endorsed accordingly, subject to all other terms, conditions, limits of liability and exclusions of this Policy.  Loss to Covered Property in which such Additional Insured and Loss Payee has an interest will be adjusted with the First Named Insured and payable jointly to the First Named Insured and such Additional Insured and Loss Payee.  No written endorsement to this Policy will be required in order for this provision to be effective as to such person or entity subject to compliance with sub-paragraph E. below.

C. Within ten (10) business days after the Company is notified of a loss which may be covered under this Policy, the First Named Insured or its authorized representative will provide the Company with the identities of all persons or entities with interests in the property that is subject to the loss as well as copies of the agreement requiring such person or entity be added to this Policy as an Additional Insured or Loss Payee.  If the First Named Insured requires additional time to comply with this paragraph, the Company will provide extensions of time that are reasonable and appropriate for the circumstances, however, all such requests for extensions must be made in writing to the Company.

D. If the First Named Insured does not provide the Company with the information required in paragraph C above, the Company will assume that there are no such persons or entities and the Company will not be liable for any failure to take such person or entity's interest into account in the adjustment or payment of any loss.

E. This endorsement does not apply to persons or entities added by endorsement under the applicable Lenders Loss Payee and Mortgage Interests and Obligations provisions of this Policy.  Persons or entities added as Additional Insured and Loss Payee pursuant to this endorsement do not have the same rights and obligations as the First Named Insured or Lenders Loss Payee and Mortgage Interests.

All other terms and conditions remain unchanged.

 ©Chubb. 2016. All rights reserved.

**Plaintiffs 000052**



**Chubb Producer Compensation
Practices & Policies**

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

**Plaintiffs 000053**

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured<br>Portofino Master Homeowners Association Inc | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D38064666 004 | Policy Period<br>04/01/2020 **to**  04/01/2021 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, but not limited to, the payment of claims.  All other terms and conditions of policy remain unchanged.

_____
Authorized Agent

ALL-21101 (11-06) Ptd. In U.S.A.

**Plaintiffs 000054**



# Questions About Your Insurance?

Answers to questions about your insurance, coverage information, or assistance in resolving complaints can be obtained by calling Chubb, Customer Support Service Department, at 1-800-352-4462.

ALL-5X45 (11/96) Ptd. in U.S.A.

**Plaintiffs 000055**

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc.,  2004

Plaintiffs 000056



# Claims Directory
# Property and Inland Marine

**Claims or Loss Notices related to this policy should be reported to the following:**

| Claim Office | Email and Fax | Location |
|---|---|---|
| Chubb North American Claims | First Notices Email:<br>ChubbClaimsFirstNotice@Chubb.com<br><br>First Notices Fax:<br>    (877)-395-0131 (Toll Free)<br>    (302)-476-7254 (Local)<br><br>Phone:<br>    (800)-433-0385 - Business Hours<br>    (800)-523-9254 – After Hours | P.O. Box 5122<br>Scranton, PA<br>18505-0554 |

©Chubb. 2016. All rights reserved.

Plaintiffs 000057

## SIGNATURES

| Named Insured | Endorsement Number |
|---|---|
| Portofino Master Homeowners Association Inc | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D38064666 004 | 04/01/2020 **to**  04/01/2021 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**ILLINOIS UNION INSURANCE COMPANY** (A stock company)

525 W. Monroe Street, Suite 400, Chicago, Illinois 60661

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY** (A stock company)

Royal Centre Two, 11575 Great Oaks Way, Suite 200, Alpharetta, GA 30022

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

_____

Authorized Representative

Chubb. Insured.℠

Plaintiffs 000058

# SURPLUS LINES NOTICE

## FLORIDA

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.

SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

Plaintiffs 000059


SOMPO INTERNATIONAL

# Endurance American Specialty Insurance Company
## (Wilmington, Delaware)

This Declarations page, with endorsements, if any issued to form a part thereof, completes the below numbered POLICY.

**Policy No.**   ESP30000298003                                    **Renewal of:** ESP30000298002

## PROPERTY DECLARATIONS PAGE

| NAMED INSURED AND ADDRESS: | PRODUCER'S NAME AND ADDRESS: |
|---|---|
| Portofino Master Homeowners Association at Pensacola Beach, Inc. | AmWINS Brokerage |
| 10 Portofino Drive | 3630 Peachtree Road NE |
| Gulf Breeze, FL  32561 | Suite 1700 |
| | Atlanta, GA 30326 |

**POLICY PERIOD:**     Inception: April 01, 2020                    Expiration:  April 01, 2021

12:01 a.m. Standard Time at the address of the Named Insured.

Notice to Named Insured: It is important that the written portion of all policies covering the same property read exactly alike. If they do not, they should be made uniform at once.

**1.   DESCRIPTION OF PERILS INSURED:**
All Risks of Direct Physical Loss or Damage including Earthquake and Flood Per Policy Form, Endorsements and Exclusions Attached

**2.   DESCRIPTION OF COVERAGES:**
Real Property, Business Personal Property and Business Income including Extra Expense as per Policy Form, Endorsements and Exclusions attached.

**3.   VALUATION:**

| | |
|---|---|
| Property: | Replacement Cost |
| Business Income: | Actual Loss Sustained |

**4.   COINSURANCE:**          Not Applicable

**5.   LOCATIONS COVERED:**
As per schedule on file, dated March 06, 2020, totaling $242,232,927

**6.   LIMIT OF LIABILITY:**
$5,500,000 part of $15,000,000 Per Occurrence and Annual Aggregate as respects Earthquake and Flood.

The Company provides the limits shown above as applying on the basis of $5,500,000 part of $15,000,000 in sum excess of any applicable deductible(s) or self-insured retention with respect to each and every loss or occurrence caused by or resulting from the perils insured against under this policy and in the annual aggregate(s) as stated above

**7.   DEDUCTIBLE AMOUNT(S):**     Per manuscript form

**8.   TOTAL PREMIUM:**          ███████████████████████████

       **Minimum Earned Premium**:     ████████████

       ████████████████████████████

**Plaintiffs 000060**
ECP 0001 0616

| | | | |
|---|---|---|---|
| **9.** | **TAXES / FEES APPLICABLE:** | State Fees: | Producer Responsibility |
| | | Stamping Fees: | Producer Responsibility |
| | | Inspection Fee: | Not Applicable |
| | | Modeling Fee: | Not Applicable |

**10.   MORTGAGE CLAUSE:**       As Per Form Attached

**11.   SUBJECT TO FORMS AND ENDORSEMENTS SCHEDULE ECP 0101 ATTACHED**

**Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.**

**Any terms used in this Declarations Page that are defined in the attached policy form shall have the same meaning as in that policy form.**

Issuance Date:

_____
Authorized Representative

Issuing Office:       **3780 Mansell Road**
**Suite 400**
**Alpharetta, GA 30022**

**NOTE - SEE ENCLOSED NOTICE FOR SURPLUS LINES NOTIFICATION**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY**

**Plaintiffs 000061**
ECP 0001 0616

# FORMS AND ENDORSEMENT SCHEDULE

It is agreed the following forms and endorsements are attached to and are a part of this policy:

| # | FORM NUMBER | FORM NAME |
|---|---|---|
| 1. | SN 9048 0914 FL | SN - Florida |
| 2. | ECP 0001 0616 | Property Declarations |
| 3. | ECP 0101 0508 | Forms and Endorsements Schedule |
| 4. | | Manuscript Form |
| 5. | ECP 0502 0115 | Asbestos Exclusion |
| 6. | ECP 0511 0709 | Nuclear Exclusion Endorsement |
| 7. | ECP 0516 0416 | Exclusion for Certain Computer Related Losses |
| 8. | ECP 0519 0817 | Communicable Disease Exclusion |
| 9. | ECP 1321 0316 | Minimum Earned Premium Clause |
| 10. | ECP 1323 0215 | Hurricane Season Minimum Earned Premium Endorsement |
| 11. | ECP 1329 0316 | Amendment of Cancellation Endorsement |
| 12. | ECP 1301 0616 | Loss Adjustment Endorsement |
| 13. | ECP 1001 0606 | General Change Endorsement |
| 14. | ECP 1001 0606 | General Change Endorsement |
| 15. | ECP 1001 0606 | General Change Endorsement |
| 16. | ECP 1001 0606 | General Change Endorsement |
| 17. | IL 1201 0115 | Exclusion Of Certified Acts Of Terrorism And Exclusion Of Other Acts Of Terrorism Committed Outside The United States |
| 18. | ECP 1313 0115 | Disclosure Pursuant to TRIA - Rejection Of Offer |
| 19. | ECP 1302 0214 | Notice of Loss |
| 20. | ECP 1307 0316 | Service Of Suit Endorsement |
| 21. | PN 0001 0712 | Office of Foreign Assets Control ("OFAC") |
| 22. | IL 1008 0114 | Signature Page |

# PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies) , do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy.

Provided that:

1.   The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2.   The liability of each of the Insurers shall not exceed the Participation Limit set against its name.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurer | Policy Number | Participation | Authorized Signature |
|---|---|---|---|
| Westchester Surplus Lines Insurance Company | D38064666 004 | $5,000,000 part of $15,000,000 Primary | |
| Endurance American Specialty Insurance Company | ESP30000298003 | $5,500,000 part of $15,000,000 Primary | *(signature)* |
| Everest Indemnity Company | CA3P005801201 | $3,000,000 part of $15,000,000 Primary | |
| Princeton Excess Surplus Lines Insurance Company | 3VA3PP0000251-02 | $1,500,000 part of $15,000,000 Primary | |
| Arch Specialty Insurance Company | ESP1002326-00 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Axis Surplus Insurance Company | EAF645360-20 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Colony Insurance Company | XP190091-1 | $6,250,000 part of $25,000,000 excess of $25,000,000 | |
| Evanston Insurance Company | MKLV11XP007995 | $7,500,000 part of $25,000,000 excess of $25,000,000 | |
| Aspen Specialty Insurance Company | PX005LG20 | $5,000,000 part of $25,000,000 excess of $25,000,000 | |

1

Plaintiffs 000063

| | | | |
|---|---|---|---|
| Independent Specialty Insurance Company | VUX-CN-0000328-04 | $8,689,317 part of $217,232,927 excess of $25,000,000 | |
| Interstate Fire & Casualty Company | VRX-CN-0000328-04 | $28,240,281 part of $217,232,927 excess of $25,000,000 | |
| Lloyd's of London | VPC-CN-0000328-04 | $17,378,634 part of $217,232,927 excess of $25,000,000 | |
| James River Insurance Company | 00090459-1 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Maxum Indemnity Company | MSP-6012522-11 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Landmark American Insurance Company | LHD912400 | $48,058,232 part of $192,232,927 excess of $50,000,000 | |
| Homeland Insurance Company of New York | 795012091 | $50,000,000 part of $100,000,000 excess of $200,000,000 | |
| Everest Indemnity Company | CA3X001322201 | $21,116,464 part of $42,232,927 excess of $200,000,000 | |

2

## MASTER PROPERTY POLICY

1.     NAMED INSURED – "Named Insured" means **Portofino Master Homeowners Association at Pensacola Beach, Inc.; Portofino Tower One Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Two Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Three Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Four Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Five Homeowners Association at Pensacola Beach, Inc.** means the First Named Insured and any entity in which the First Named Insured owns an interest of more than 50 percent, during the Policy Period, controls during the Policy Period, or has the responsibility of placing the insurance provided by this Policy during the Policy Period. No entity is covered under this Policy unless the Company has received identifying information for such entity during the application or submission process, except if such entity is covered under miscellaneous unnamed insured locations or newly acquired property, or if such entity is added by endorsement.

Notwithstanding any provision to the contrary in this Policy, if other valid and collectible insurance is available to any entity covered by this Policy solely because of the ownership, control, or responsibility to purchase insurance by the First Named Insured, this insurance will be excess with regard to such other insurance whether contingent, primary, excess or any other basis.

2.     TERM OF INSURANCE In consideration of a $ annual premium, this policy attaches and covers for a period of one year from April 1, 2020 to April 1, 2021, beginning and ending at 12:01 A.M. standard time, at the location of the property involved.

3.     PARTICIPATION – Please refer to the Participation Page.

4.     LIMIT OF LIABILITY - This Company shall not be liable for more than its proportion of $242,232,927 for any one occurrence.

5.     SUBLIMIT(S) OF LIABILITY) - This Company shall not be liable for more than its proportion of the following sublimits.  Sublimits are part of and not in addition to the overall Limit of Liability and apply on a per occurrence basis unless otherwise noted:

   a)     $15,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Flood.
   b)     $25,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Earthquake.
   c)     $1,000,000 per occurrence as respects Accounts Receivable
   d)     $500,000 per occurrence as respects Arson Reward

3

**Plaintiffs 000065**

e)      $1,000,000 per occurrence as respects Contingent Time Element, Attraction Properties are excluded

f)      $1,000,000 per occurrence as respects Consequential Loss

g)      $10,000,000 per occurrence as respects Course of Construction Including Soft Costs

h)      Included per occurrence as respects Demolition and Increased Cost of Construction Coverage A

i)      $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage B

j)      $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage C

k)      $1,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage D

l)      $10,000,000 per occurrence as respects Debris Removal

m)      $10,000,000 per occurrence as respects Errors and Omissions

n)      25% of the Adjusted Loss Maximum, $10,000,000 per occurrence as respects Extra Expense

o)      $5,000,000 per occurrence as respects Expediting Expense

p)      200,000,000 per occurrence as respects Equipment Breakdown

q)      $1,000,000 per occurrence as respects Contract Penalty

r)      $1,000,000 per occurrence as respects Fire Brigade Charges and Extinguishing Expenses

s)      $50,000 per occurrence as respects Inland Transit

t)      The lesser of 30 days of $2,500,000 per occurrence as respects Ingress/Egress

u)      $5,000,000 per occurrence as respects Miscellaneous Unnamed Locations

v)      $5,000,000 per occurrence as respects Newly Acquired Property (90 days; if not reported within 90 days the coverage ceases)

w)      $1,000,000 per occurrence as respects Leasehold Interest

x)      $500,000 per occurrence as respects Lost Master/Key Card

y)      $5,000,000 per occurrence as respects Rental Value/Rental Income

z)      Excluded per occurrence as respects Research and Development

aa)     $1,000,000 per occurrence as respects Royalties

bb)     $2,500,000 per occurrence as respects Service Interruption.  Property Damage and Time Element Combined.

cc)     $1,000,000 per occurrence as respects Valuable Papers and Records

dd)     The lesser of 30 days of $2,500,000 per occurrence as respects Civil or Military Authority

ee)     $3,000,000 per occurrence as respects Landscaping, subject to a $25,000 maximum per item

ff)     $1,000,000 per occurrence as respects Fine Arts, subject to a $25,000 maximum per item

The amount of loss from any one occurrence for which this policy is excess, shall be determined by the combined loss, damage or expense as insured under the primary policy.  In the event of loss or damage involving more than one coverage or peril, The Limits of Liability of the underlying policies shall first

4

apply to the coverage(s) or peril(s) not insured by this policy, and the remainder, if any to the coverages(s) or peril(s) as provided hereunder. Upon erosion or exhaustion of the Limits of Liability of the underlying policies, this policy shall then be liable for the loss uncollected from the coverage(s) or perils(s) insured hereunder, subject to the Limit of Liability specified herein.  In the event of reduction or exhaustion of the aggregate limit(s) designated in the underlying policy(ies), it is hereby understood and agreed that such insurance as is afforded by this policy shall apply in excess of the reduced or exhausted underlying limit(s).  The insured maintains the right to allocate and/or apply coverages, interests and/or perils, as insured in the primary and/or excess policies.

6.   DEDUCTIBLE CLAUSE - The Company will adjust all losses, damages or expenses arising out of any one occurrence as one loss. The Company will deduct the following from such loss:

**$50,000** per occurrence for all perils including earthquake sprinkler leakage, and the backup of sewers and drains, except:

WAITING PERIOD:

With respect to all Time Element coverages, coverage is provided by this policy only if the period of interruption of the Insured's business exceeds 24 hours. Then Time Element coverage will apply excess of the appropriate policy deductible.

EARTHQUAKE:

As respects loss or damage to property resulting from the peril of Earthquake, all loss, damage or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deductible the sum of $50,000.  This deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

FLOOD:

As respects loss or damage to property resulting from the peril of Flood, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100 year flooding, as defined by the Federal Emergency Management Agency, all loss arising out of any one occurrence shall be adjusted as one loss and from the loss shall be deducted the maximum amount recoverable under the National Flood Insurance Program for the Real or Personal Property at each Building, whether or not such coverage is purchased or maintained.

In addition, the following Deductible will apply to property not eligible and coverages not available under the National Flood Insurance Program that are covered under this Policy and any difference in valuation between policies: $100,000 per Occurrence.

The determination of whether a property is in whole or in part subject to the 100 Year Flood Zone shall be at the inception of the policy and not at the time of loss.

Plaintiffs 000067

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

NAMED STORM:

With respect to loss or damage to property in Tier 1 Counties resulting from the period of Named Windstorm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm), the deductible shall be 2% of such unit of insurance at each location in accordance with policy valuation at the time of loss.  A minimum $100,000 each occurrence shall apply.

With respect to any other named storm loss or damage, the deductible shall be **$50,000** any one occurrence.

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

ALL OTHER WIND and HAIL:
As respects loss or damage to property resulting from the peril of All Other Wind, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

**$50,000**

Definition of 'Unit of Insurance':
 a) Each separate building or structure
 b) Contents in each separate building or structure
 c) Property in the yard of each separate building or structure
 d) Annual Business Interruption value applying to each separate building or structure.
 e) Each Other Property item as listed in the Statement of Values.  If values are not listed separately, the value is included in the building value.

Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence. If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the insured shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s), notwithstanding the above reference to two or more deductibles.

The deductible amounts specified above shall not apply to general average contributions and salvage charges.

7.    LOSS PAYABLE - Loss, if any, shall be adjusted with and payable to the Insured, or as directed by them.

Plaintiffs 000068

8.  TERRITORY - This policy covers anywhere in the United States of America and its territories and possessions including coastal and inland waterways and while in due course of transit therein or thereto.

9.  PROPERTY COVERED - Except as hereinafter excluded, this policy covers the interest of the Insured in all real and personal property owned, used, leased or intended for use by the Insured or in which the Insured may have an insurable interest, or for which the Insured may be responsible for the insurance, or real or personal property hereafter constructed, erected, installed, or acquired including while in course of construction, erection, installation, and assembly including Improvements and Betterments. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.  This policy is extended to include:

   a)  The interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by written contract for such property, including the cost to defend any allegations of liability for loss or damage to such property.

   b)  At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured.

   c)  Contractors' and/or subcontractors' (of any tier) and/or vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract.

10.  PROPERTY EXCLUDED - This policy does not cover loss or damage to:

   a)  Money and securities;

   b)  Land, land values, except as insured under the "Pollutant Cleanup of Land and Water" clause.  This exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements if land improvements have been scheduled on the Schedule of Values on file with the company.  Land improvements as described hereunder include, but are not limited to any alteration to the natural condition of the land by grading, landscaping, excavation, earthen dikes or dams, as well as additions to land such as pavements, roadways or similar works;

   c)  Water; except water which is normally contained within any type of tank, piping system or other process equipment;

   d)  Growing crops, standing timber, and live animals;

   e)  Watercraft; aircraft and motor vehicles licensed for highway use;

   f)  Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

   g)  Underground mines or mine shafts or any property within such mine or shaft;

7

Plaintiffs 000069

h)       Offshore property; unless reported on the Schedule of Values on file with the company.

i)        Transmission and Distribution Lines beyond 1,000 feet of Insured Premises;

j)        currency; evidence of debt; notes

k)      Turbines and satellites;

l)        docks, piers, and wharves; bridges, roadways, streets, walks or any other paved surfaces; dams or dikes; railroad rolling stock; off-shore drilling rigs or platforms; underground mines, wells, caverns including property contained therein unless reported on the Schedule of Values on file with the company.

11.    PROPERTY VALUATION - The basis of loss adjustment shall be as follows:

a)       Valuable Papers & Records/Electronic Data Processing Media :  the cost to repair or replace the property with other of like kind and quality including the cost of labor, service or supplies consumed in reconstructing, reproducing, recreating, transcribing or copying information; or, if not so replaced, the value blank.

b)       Raw materials and supplies:  the replacement cost new.

c)       Stock in process:  The value of raw materials plus labor expended plus the proper proportion of overhead charges.

d)       Finished stock and other merchandise for sale:  The regular cash selling price less all discounts and charges to which such property would have been subject had no loss occurred.

e)       Real and personal property of others for which the Insured is liable:  A valuation consistent with the liability of the Insured but only to the extent that such money is necessarily expended by the Insured.

f)       Electronic data processing equipment, production machinery & equipment:  The cost to repair or replace new with like kind and quality. In addition, the Insured may elect to replace such equipment with equipment having technological advances and/or representing an improvement in function and/or forming part of a program of system enhancement and/or more consistent with the Insured's technology strategy (without any reduction or offset for betterment) provided that such replacement can be accomplished without increasing the Insurer's liability.

g)       Fine arts, at original cost to the Insured, per schedule, latest appraised value or current market value, all at the Insured's option.

h)       Other property not otherwise provided for; at replacement cost new without deduction for depreciation.  If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:

Plaintiffs 000070

     i)     The repairs, replacement or reinstatement must be executed with due diligence and dispatch.

     ii)    This Company's liability for loss or damage on a replacement cost basis shall not exceed the lesser of the replacement cost new of the property or any part thereof identical with such property intended for the same occupancy and use, including normal and customary profit and overhead even if the work is performed by the Insured; or the amount actually and necessarily expended in repairing or replacing said property or any part thereof including normal and customary profit and overhead even if the work is performed by the Insured.

12.    BUSINESS INTERRUPTION - This policy shall cover the loss resulting from necessary interruption of business conducted by the Insured including all interdependent loss of earnings between or among companies owned or operated by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

    a)    In the event of such loss, damage or destruction this Company shall be liable for the ACTUAL LOSS SUSTAINED by the insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business. Due consideration shall be given to the continuation of normal charges and expenses including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately before the loss. For the purposes of this insurance, "Gross Earnings" are defined as the sum of:

     i)     Net sales value of production from manufacturing operations, and net sales from Merchandising or Non-Manufacturing operations; and

     ii)    Other earnings derived from operations of the business,

          LESS THE COST OF:

     iii)   Raw Stock from which such production is derived;

     iv)   Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the services(s) sold by the Insured;

     v)    Merchandise sold, including packaging materials therefor; and

     vi)   Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

Plaintiffs 000071

b)      In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the period of restoration, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including ordinary payroll, directly attributable to such research and development activities.

c)      Resumption of Operations: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business:

i)      by a complete or partial resumption of operation at a location owned by the same entity suffering the loss, whether damaged or not; or

ii)     by making use of available stock, merchandise, or other property;

such reduction shall be taken into account in arriving at the amount of loss hereunder.

d)      EXPERIENCE OF THE BUSINESS - In determining the amount of gross earnings, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

e)      As respects coverage provided under the Gross Earnings clause of this policy, the insurer shall not be liable for any loss resulting from loss or damage to finished stock nor for the time required to reproduce said finished stock.

13.     Extra Expense - This policy shall cover the necessary extra expense, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

a)      The term "Extra Expense" wherever used in this Policy, is defined as the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally have been incurred to conduct the business during the same period had no loss or damage occurred.

Plaintiffs 000072

b)     In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities, this policy shall cover the actual loss sustained of the extra expenses as defined herein directly attributable to the interruption of such research and development activities.

c)     As soon as practicable the Insured shall resume normal operations of the business and shall dispense with such extra expense.

14.     This policy is extended to cover expenses as are necessarily incurred for the purpose of reducing any loss under this policy; however, such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

15.     SOFT COSTS - This policy shall cover soft costs, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to property under construction as covered herein.

a)     The term "Soft Costs" shall include:

i)     Additional interest costs on money used to finance construction or repair;

ii)     Additional real estate and property taxes incurred for the period of time that construction extends beyond the projected completion date;

iii)     Additional legal and accounting fees; and

iv)     Additional advertising and promotional expenses which become necessary as a result of an insured loss.

b)     This company shall pay soft costs incurred from the date that the building, structure or improvement would have been completed had no physical damage occurred until such time that it is completed.  As soon as practicable after any loss, the Insured shall utilize every available means to reduce the amount of loss including:

i)     partial or complete resumption of construction, business or operations;

ii)     making use of materials, equipment, supplies, or other property at the Insured's premises or elsewhere; or

iii)     making use of substitute facilities or services where practical;

such reduction will be taken into account in arriving at the amount of such loss.

16.     Rental Value/Rental Income - This policy shall cover the actual loss sustained by the Insured resulting directly from the necessary untenability caused by direct

11

Plaintiffs 000073

physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as covered herein.  Loss settlement shall not exceed the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenability.

a)  If the Insured is the lessor, for the purposes of this insurance, "rental value" is defined as the sum of:

    i)  the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the insured, and

    ii)  the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

    iii)  the fair rental value of any portion of said property which is occupied by the Insured.

b)  If the Insured is the lessee, rental value shall be the determined rental which the Insured is obligated to pay (including ground rents, accrued charges, real estate taxes and interest if the Insured shall be liable therefor) less such charges and expenses as do not necessarily continue.

c)  Experience of the Business - In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

d)  With respect to buildings or structures leased or rented by the Insured, this policy will serve as rental income insurance in those situations where the insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord.  This policy will respond for rental expenses incurred by the Insured in excess of the expenses which would have been incurred had a leased or rented premises not been damaged or destroyed by any peril covered under this policy. Such coverage will apply for all additional expenses incurred during the period of untenability or if the lease cannot be terminated until its expiration.

17.  Royalties - This policy shall cover the loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to direct physical loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the other party.

12

Plaintiffs 000074

a)      Any loss hereunder shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED to such income referred to above, which would have been earned had no loss occurred.

b)      Resumption of Operations:  The Insured shall influence, to the extent possible, the party with whom the agreement described above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Company.

c)      Experience of the Business:  In determining the amount of income derived from the agreements(s) described above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

18.     Leasehold Interest - This policy covers the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

a)      the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

b)      improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of this policy;

c)      the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located; and "Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located. The "Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

Plaintiffs 000075

    d)    The "Interest of the Insured as Lessee" is defined as:

        i)    the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

        ii)    the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

    e)    The "Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is cancelled by the lessee, to the extent not covered under any other section of this policy.

    f)    "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "Interest of the Insured as Lessee".

    g)    This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

19.    Loss Provisions Applicable to Time Element Coverage - The "Period of Indemnity" is defined as the length of time for which loss may be claimed, and shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy, subject to the following provisions:

    a)    The Period of Indemnity shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged.

    b)    With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly the Period of Restoration shall be determined as provided above but such determined length of time shall be applied, and the loss hereunder calculated from the date that business operations would have begun had no damage or destruction occurred.

    c)    Extended Period of Indemnity - The Period of Indemnity shall include such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

        i)    the date on which the liability of the Company for loss or damage would otherwise terminate; or

Plaintiffs 000076

    ii)    the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually completed;

terminating no more than 365 days from said later commencement date.

20. Extensions of Time Element Coverage: This policy, subject to all its provisions and without increasing the amount of said policy, insures against direct physical loss resulting from damage to or destruction by the perils insured against, to:

a) Any service provider's property including but not limited to, electrical equipment and systems, water, gas, steam, telephone or their respective transmission and distribution lines or utility plants which directly or indirectly provide incoming or outgoing services to the Insured situated on or outside of the Insured's premises.

b) the actual loss sustained, and Extra Expense incurred by the Insured at an insured location during the period of restoration directly resulting from physical loss or damage of the type insured to property of the type insured at a Contingent Time Element Location, meaning a location within the TERRITORY of a direct supplier or direct customer of the Insured.

As respects this subparagraph b):

    i.    The Insured will influence and cooperate with the Contingent Time Element Location in every way and take any reasonable and necessary action, including the use of other machinery, supplies, or locations, to effect mitigation of the loss payable hereunder.

    ii.    In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

    iii.    This Policy does not insure loss resulting from a lack of incoming or outgoing electricity, fuel, gas, water, steam, refrigeration, sewage, or telecommunications of a direct supplier or direct customer of the Insured.

    iv.    The per occurrence deductible that applies to all perils also applies to the coverage as provided under this subparagraph b).

c) dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other manufacturing purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources.

d) the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory

15

**Plaintiffs 000077**

mile of an insured location, access to real or personal property is impaired or hindered by order of civil or military authority irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 e) below.

e)    the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory mile of an insured location, ingress to or egress from real or personal property is thereby impaired or hindered irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 d) above.

f)    property, facilities or piping systems which prevents the Insured from discharging its outgoing effluence.

21.    Transit - This policy shall cover property in transit, and this policy attaches and covers shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.  This insurance is extended to cover loss or damage to property:

a)    sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

b)    arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

c)    occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

d)    at the Insured's option, property which is incoming to the Insured.

The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor. With respect to shipments described under subparagraphs a and d above, this Company agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

Plaintiffs 000078

e)   The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

f)   Seaworthiness of any vessel or watercraft, and airworthiness of any aircraft are admitted between this Company and the Insured.

22.   Accounts Receivable - Defined as:

a)   All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

b)   Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

c)   Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

d)   Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

e)   the monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

f)   the monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

23.   Lost Master/Key Card - If a master or grand master key is lost, or damaged so it cannot be duplicated, we will pay for the actual loss of keys, the cost of adjusting locks to accept new keys, or the cost of new locks, if required, of like kind and

Plaintiffs 000079

quality including the cost of installation subject to the limit contained in the Declarations.

24. Arson Reward - If covered property sustains direct physical loss or damage caused by or resulting from a fire, and the origin of such loss is determined to be the criminal acts of an individual or individuals, we will pay a reward to the person or persons who provide information that leads to the arrest and conviction of the individual or individuals responsible for the loss.

25. Contract Penalty – This policy covers a compensation payment due under the Hotel Management Agreement between the Franchisee, Named Insured, and any Franchisor, as identified via policy endorsement, or other appropriate subsidiaries acting as the management company or agent, whether insured or not under this policy. The Contract Penalty is triggered when the Hotel Management Agreement is terminated due to loss or damage of a type insured under this policy from an insured peril where such loss or damage causes a total constructive loss.

   "A total constructive loss" means the destruction or damage to the Hotel by an insured peril whereby the destruction of or damage to the Hotel is such that the cost of repairing, rebuilding or replacing the Hotel exceeds 50% of the Replacement value of the Hotel." The Contract Penalty will only apply if the franchisor does not release the franchisee from the Hotel Management Agreement after a total constructive loss occurs and the First Named Insured / Franchisee elects not to repair or rebuild the property.

26. BOILER & MACHINERY - This policy insures direct or indirect loss as covered elsewhere in this policy to insured property as a result of an Accident to an Object subject to the following definitions:

   a) "Object" means any boiler, fired or unfired pressure vessel, refrigerating or air-conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.
   b) "Accident" means an accidental loss to an Object or a part thereof which manifests itself in physical damage that necessitates repair or replacement of the Object or part thereof.
   c) "Hazardous Substance" means the additional expense incurred for clean up, repair or replacement, or disposal of damaged, contaminated or polluted property as a result of an "Accident" which causes property to become damaged, contaminated or polluted by a substance declared hazardous to health by an authorized governmental agency. "Additional Expenses" means expenses incurred that would not have been incurred, had no substance hazardous to health been involved in the accident.

27. PERILS INSURED AGAINST - This policy insures against all risks of direct physical loss of or damage to property described herein including general

Plaintiffs 000080

average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

28.     PERILS EXCLUDED - This policy does not insure:

a)      infidelity or dishonesty of the Insured or of the Insured's employees. A willful act of malicious intent shall not be deemed to be an act of infidelity. In no event does this Policy insure loss caused by theft by the Insured or the Insured's employees;

b)      against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

c)      against ordinary wear and tear or gradual deterioration unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

d)      against inherent vice or latent defect unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

e)      against errors in processing or manufacture of the Insured's product unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

f)      against mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

g)      against nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except if a covered peril ensues, liability is specifically assumed for direct loss by such ensuing peril but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination.  This Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

h)      against hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or

19

expected attack by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or by military, naval, or air forces; or by any agent of any such government, power, authority, or forces;

i)   against any weapon employing atomic fission or fusion;

ii)   against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

iii)   against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against under this policy;

iv)   against risks of contraband or illegal trade;

v)   against confiscation, nationalization and expropriation;

Notwithstanding the above provisions, this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated.  Nothing in the foregoing shall be construed to include any loss, damage, or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon or war employing atomic fission or fusion whether in time of peace or war.

i)   loss or damage caused directly or indirectly by the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants unless the release, discharge, dispersal, seepage, migration, or escape is caused by a peril not otherwise excluded herein.  However, if a peril not otherwise excluded herein ensues due to the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants, such ensuing loss or damage shall be covered.

j)   loss or damage caused by an act of terrorism which means an act or series of acts, including the use of force or violence, of any person or group(s) or persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public or any section of the public in fear for such purposes.

k)   against loss or damage caused by insect or vermin.

Plaintiffs 000082

l)      against delay, loss of market loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

m)     against delay, loss of market, loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

n)     against corrosion, depletion, deterioration, erosion, wet rot, dry rot, decay, evaporation, rust, and shrinkage unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

o)     against changes of temperature or humidity, whether atmospheric or not;

p)     against settling, cracking, bulging, shrinking, or expansion of foundations; machinery pedestals, pads, or platforms; floors, pavements, walls, ceilings, or roofs; or the cumulative effects of smog, smoke, soot, vapor liquid, or dust;

q)     against lack of incoming power voice/data/internet access from offsite services except as provided in the Service Interruption Extension.

Exclusion b), c), d) and e) do not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly.

Exclusion b), c) and d) do not apply to property in transit.

29.    DEFINITIONS

a)     The term "Earthquake" as used in this policy shall mean loss or damage caused by or resulting from a series of vibrations induced in the earth's crust by the abrupt rupture and rebound of rocks in which elastic strain has been slowly accumulating (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

b)     The term "Flood" as used in this policy shall mean loss or damage caused by or resulting from waves, tide, or tidal water, and the rising (including the overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and similar bodies of water, whether wind driven or not (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

c)     The term "occurrence" is defined as follows:

Plaintiffs 000083

i)      Except as hereinafter defined, "loss occurrence" shall mean an accident or occurrence or series of accidents or occurrences arising out of one event.

ii)     ii) Each loss occurrence which involves the perils of tornado, windstorm, cyclone, hurricane, hail or flood shall include all loss or damage wherever occurring occasioned by these perils which arise out of one atmospheric disturbance during a continuous period of 168 hours.

iii)    Each loss occurrence which involves the peril of earthquake, a series of earthquakes shall include all losses or damage sustained during a continuous period of 168 hours.

iv)    Each loss occurrence which involves the peril(s) of vandalism, malicious mischief or riot/civil commotion shall include all losses or damage sustained resulting from one or more acts committed by a person acting alone or in collusion with others during a continuous period of 168 hours.

v)     The Insured shall have the right to elect the moment from which the time periods referred to in ii), iii), and iv) above shall be deemed to have commenced, however no elected period of time shall commence within any previous occurrence.

vi)    Should the time period in ii), iii), and iv) above extend beyond expiration or cancellation date of this policy and commence prior to the expiration or cancellation date, this Company shall be liable as is such period fell entirely within the term of this policy.

vii)   However, we shall not be liable hereunder for any loss or damage:

viii)  Occurring before this policy becomes effective; or

ix)    Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

d)     "Raw Stock" - Materials and supplies in the state in which the Insured receives it for conversion by the Insured into Finished Stock, including supplies consumed in such conversion or in the service rendered by the Insured.

e)     "Stock in Process" - Raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture by on behalf of the Insured but which has not become Finished Stock.

f)     "Finished Stock" - Stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

g)     "Merchandise" - Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

h)     "Normal" - The condition that would have existed had no loss occurred.

Plaintiffs 000084

i)     "Improvements and Betterments" - Fixtures, alterations, installations or additions comprising a part of the described building and made or acquired at the expense of the Insured, but which are not legally subject to removal by the Insured.

j)     "Valuable papers and records" - Written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents and manuscripts.

k)     "Electronic Data Processing Media" - All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles.

l)     "Securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets.

m)     "Fine Arts" - Shall include but not be limited to bona fide works of art, works of rarity, works of historical value, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, galley proofs, original records, sculptures, carvings and similar property.

n)     "Architect and Engineering Fees" - Any cost associated with the preparation of plans, supervision of and approval for the repair or replacement of damaged or destroyed property.

o)     "Tier One County" - the entire territory of the United States Virgin Islands, the entire Commonwealth of Puerto Rico, the entire State of Florida, and the following:

     i)     In the State of Alabama, the counties of Baldwin, Escambia, and Mobile;

     ii)     In the State of Connecticut, the counties of Fairfield, New Haven, and New London;

     iii)     In the State of Georgia, the counties of Bryan, Camden, Chatham, Glynn, Liberty, and McIntosh;

     iv)     In the State of Hawaii, the counties of Honolulu, Kauai, and Maui;

     v)     In the State of Louisiana, the counties (also known as "Parishes") of Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, Iberia, Iberville, Jefferson Davis, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John The Baptist, St. Martin, St. Mary, St. Tammany, Terrebonne, and Vermillion;

     vi)     In the Commonwealth of Massachusetts, the counties of Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, and Suffolk;

Plaintiffs 000085

       vii)     In the State of Mississippi, the counties of George, Greene, Hancock, Harrison, Jackson, Pearl River, and Stone;

       viii)   In the State of New Jersey, the counties of Atlantic, Monmouth, and Ocean;

       ix)     In the State of New York, the counties of Kings, Nassau, Queens, and Suffolk;

       x)      In the State of North Carolina, the counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington;

       xi)     In the State of Rhode Island, the counties of Newport, Providence, and Washington;

       xii)    In the State of South Carolina, the counties of Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, and Williamsburg;

       xiii)   In the State of Texas, the counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Gollad, Harris, Hidalgo, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, and Willacy; and

       xiv)   In the Commonwealth of Virginia, the counties of Accomack, Gloucester, Isle of Wright, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, Westmoreland, and York; and the independent cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Suffolk, and Virginia Beach.

p)     "Named Storm"- A storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Depression or Tropical Storm. "Named storm" does not include "flood" resulting from a "named storm".

q)     "Time Element' – Includes coverage as described under Clause 12., 13., 14., 15., 16., 17., 18., 19. and 20. hereunder.

r)     "Unnamed Location' – A location which has not been scheduled with underwriters or the insured's representative and is not considered a Newly Acquired location.

s)     "Newly Acquired Location" – A location acquired by the insured after inception of this policy for a period of up to 90 days until reported to and agreed by underwriters.

30.    FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES - This policy covers fire brigade charges and other extinguishing expenses for which the Insured may be assessed including loss of fire extinguishing materials expended resulting from a peril insured.

Plaintiffs 000086

31.     SEVERABILITY OF INTERESTS - The inclusion herein of more than one person or organization, as Insured, shall not operate to increase the limit of the Company's liability nor the deductible amounts to be borne by the Insured. Except with respect to limits of liability and deductible amounts, the terms of this policy shall apply separately to each person or organization covered as Insured in the same manner and to the same extent as though a separate policy had been issued to each such person or organization.

32.     DEBRIS REMOVAL - This policy covers the cost of removal of debris of property covered hereunder including the cost of removal of debris of property not insured hereunder from the premises of the Insured resulting from a peril insured against. Except as otherwise provided for elsewhere in this policy, this policy does not cover the cost to extract contaminants or pollutants from land or water, nor does it cover the cost to remove, restore or replace contaminated or polluted land or water.

If at the time insured property is contaminated as a direct result of physical damage insured against by this policy there is in force any law or ordinance regulating contamination, including but not limited to pollution, then this policy shall cover, as a result of the enforcement of such law or ordinance, the increased cost of decontamination and debris removal of such property in a manner to satisfy such law or ordinance.  As respects Time Element coverage(s), this policy is extended to include such time as is necessary and reasonable with the exercise of due diligence and dispatch to decontaminate such property in a manner to satisfy such law or ordinance.

33.     DEMOLITION AND INCREASED COST OF CONSTRUCTION - In the event of loss or damage under this policy that causes the enforcement of any law or ordinance in force at the time of loss regulating the construction, repair or use of property, this Company shall be liable for:

a)      <u>COVERAGE A</u> - the loss in value of the undamaged portion of the property as a consequence of the enforcement of any law or ordinance that requires demolition of undamaged parts of the same property;

b)      <u>COVERAGE B</u> – the cost to demolish and clear the site of undamaged parts of the same property;

c)      <u>COVERAGE C</u> – the increased cost to repair or reconstruct damaged and undamaged property on the same or another site when the increased cost is a consequence of the enforcement of any law or ordinance.  These costs are limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  This Company shall not be liable for any increased cost of repair or reconstruction loss unless the damaged property is actually rebuilt or replaced;

25

**Plaintiffs 000087**

    d)    Any increase in loss including but not limited to Business Interruption, Extra Expense, Rental Value, Rental Income, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law or ordinance.

    e)    In the event real or personal property is not repaired or replaced to the same height, floor area, size, style or comparable quality of the original property insured due to the enforcement of law or ordinance regulating, restricting or prohibiting repair or replacement of covered property, this policy will pay the full replacement cost without deduction for depreciation for the real or personal property damaged or destroyed, as if the property was replaced to the same height, floor area, size, style or comparable quality of the original property insured.  This policy will also pay Time Element loss as if the original structure were repaired or replaced to original specifications, subject to the terms and conditions of these coverage(s).

34.    EXPEDITING EXPENSE - This policy covers the extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

35.    CONTRIBUTING INSURANCE - Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy.  This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

36.    EXCESS INSURANCE - Excess insurance is insurance over the limit of liability set forth in this policy.  The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

37.    UNDERLYING INSURANCE - Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire.  The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy. Should the amount of loss payable under such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then no deductible shall apply hereunder and that portion which exceeds such a deductible amount shall be considered "other insurance". Should the amount of loss payable under such underlying insurance be less than the largest deductible amount which would apply in the event of loss under this policy, then the deductible amount to be deducted hereunder shall be the difference between the amount to be paid under such underlying insurance and the largest deductible amount which would apply in the event of loss under this policy.

38.    OTHER INSURANCE - Except for insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether

Plaintiffs 000088

prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils.  This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.

39.    SUBROGATION - Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder.  The right of subrogation against the Insured, affiliated, subsidiary, and associated companies, or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived and at the option of the Insured, against a tenant or guest of the Insured. In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.  If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests.  If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

40.    SALVAGE AND RECOVERIES - All salvages, recoveries, and payments, (excluding proceeds from subrogation and underlying insurance) recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly.  If proceeds from subrogation are recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(s) participating in the payment of any loss, in the proportion of their respective interests.

41.    CONTROL OF DAMAGED MERCHANDISE - The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods.  The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods.  The Insured, using reasonable discretion, shall be the sole judge as to whether production or EDP equipment and/or media is damaged and unusable. This insurer shall be allowed to dispose of as salvage, any non-proprietary property deemed unusable by the Insured.

27

Plaintiffs 000089

42.     BRAND OR TRADEMARK - In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carriers or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at this Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

43.     ERRORS OR OMISSIONS - Any unintentional error or omission made by the Insured in the application for insurance shall not void or impair the insurance hereunder but only to the extent this Policy would have provided coverage had the unintentional error or omission not been made provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department. This coverage does not apply if there is coverage available under any other provision in this Policy.

44.     NOTICE OF LOSS - As soon as practicable after any loss or damage occurring under this policy is known to the Insured's home office insurance department, the Insured shall report such loss or damage with full particulars to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 for transmission to the designated loss adjuster and to this Company.

45.     DESIGNATED LOSS ADJUSTER - It is understood and agreed that each and every loss will be adjusted by Jeff Hellman of McLaren Young International, 19324 40th Avenue West, Suite C, Lynnwood, WA 98036.

46.     PROOF OF LOSS - Proof of loss is required as soon as practicable following the Company's written request for signed Proof from Insured; however, Insured, at its option, may elect to file Proof with the Company prior to the Company's request.  It shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained.

47.     PARTIAL PAYMENT OF LOSS - In the event of a loss covered by this policy, it is understood and agreed that the Company shall allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

48.     PAYMENT OF LOSS - All adjusted claims shall be due and payable no later than thirty (30) days after presentation of acceptable proofs of loss by the Insured or its appointed representative.

49.     LOSS ADJUSTMENT EXPENSES - This policy is extended to include reasonable expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. These expenses include fees of professionals engaged to assist the Insured in determining the cause and origin of the loss, the amount

28

Plaintiffs 000090

of loss sustained, and the amount of loss payable under this policy. This policy shall not cover the expenses of a public adjuster. Such expenses shall not exceed $2,000,000 in any one occurrence.

50.     APPRAISAL - If the Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser.  The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending.  Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss.  If the appraisers fail to agree, they shall submit their differences to the umpire.  An award in writing by any two shall determine the amount of loss.  The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

51.     CONSEQUENTIAL LOSS - This policy insures against consequential loss including spoilage to real and personal property as insured hereunder caused by change of temperature or humidity or by interruption of any service including but not limited to power, heat, air conditioning, or refrigeration resulting from a peril insured against.

52.     PAIR AND SET - In the event of loss or damage by a peril insured against to any article or articles which are part of a pair or set, the measure of loss or damage to such article or articles shall be the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

53.     CONSEQUENTIAL REDUCTION IN VALUE - This policy covers the reduction in value of insured components or parts of components or parts of products or the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to direct physical loss or damage insured against by this Policy to other insured components or parts of products.

54.     COINSURANCE WAIVER - This policy is not subject to any coinsurance or average clause.

55.     ALTERATIONS AND USE CLAUSE - Permission is granted to the insured to cease operations or for buildings to remain vacant or unoccupied provided fire protection, watch alarm services are maintained, and written notice is given to the Insurer prior to the sixtieth (60th) consecutive day of cessation of operations, vacancy or unoccupancy. The Insured's building is considered vacant or unoccupied when it does not contain enough covered Property to conduct customary business operations.

Plaintiffs 000091

56.     ASSISTANCE AND COOPERATION OF THE INSURED - The Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

57.     SUE AND LABOR - In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment.  This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

58.     REINSTATEMENT - With the exception of loss subject to annual aggregate limits as noted herein, no loss hereunder shall reduce the amount of this policy.

59.     SUIT AGAINST THE COMPANY - No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy.  The Company agrees that any action or proceeding against it for recovery of any loss under this policy shall not be barred if commenced within the time prescribed therefor in the statutes of Florida.

60.     CERTIFICATES OF INSURANCE - It is understood and agreed that Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 is authorized to issue certificates of insurance naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests subject always to the terms, conditions, and limits of liability of this policy. The Company agrees to waive the issuance of formal Company endorsements in respect of such interests.

61.     NOTIFICATION CLAUSE - All notices or communications concerning this policy shall be addressed to the offices of the Insured, to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 and to AmWINS Brokerage of Georgia, 3630 Peachtree Road NE, Suite 1700, Atlanta, GA 30326.  All such notices shall be sent via registered mail.

62.     CANCELLATION/NON RENEWAL - This policy may be cancelled at any time at the request of the Insured or it may be cancelled or non-renewed by the Company by mailing to the Insured written notice stating when, not less than ninety (90) days thereafter or ten (10) days in the event of non-payment of premium, such cancellation or non-renewal shall be effective. If the First Named Insured cancels, return of any unearned premium will be calculated on the

Plaintiffs 000092

customary short rate basis. If the Company cancels, return of any unearned premium will be calculated on a pro rata basis. Return of any unearned premium will be made by the Company as soon as practicable. The cancellation will be effective even if the Company has not made or offered a refund.

63.     TITLES OF PARAGRAPHS - The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

64.     MORTGAGE CLAUSE - As respects Real Property only, loss, if any, under this policy shall be payable to the mortgagee (or trustee) as its interest may appear under all present or future mortgages upon the property herein insured in which the aforesaid may have an interest as mortgagee (or trustee) in order or precedence of mortgages., and this insurance as to the interest of said mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that, in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided also, that the mortgagee (or trustee) shall, notify the Company of any changes of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and unless permitted by this policy, it shall be noted thereon and the mortgagees or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The company reserves the right to cancel this policy at any time as provided by its terms, and in such case, this policy shall continue in force for the benefit only of the mortgagee (or trustee) for an additional thirty (30) days.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgagee debt, or may at their option pay to the mortgagee (or trustee) the whole principal due or to grow on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and all of such other securities, but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

65.     JURISDICTION AND SUIT - It is hereby understood and agreed that in the event of the failure of the Insurer to pay an amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court

31

of competent jurisdiction within the United States and will comply with all requirements necessary to give such jurisdiction.  All matters arising hereunder shall be determined in accordance with the law and practice of such court. In any suit instituted against it under this, the Insurer will abide by the final decision of such court or any appellate court in the event of an appeal.

66.    POLLUTANT CLEAN UP AND REMOVAL - This policy is extended to cover the expense actually incurred by the Insured to decontaminate, clean up and/or remove pollutants from land, water or air including resultant time element loss if the release, discharge, or dispersal of the pollutants results from any loss or damage as covered herein. Such expenses shall not exceed $500,000 in any one policy year.

67.    ATTACHMENT CLAUSE – Please refer to the Participation Page.

   [Authorized Signature]

32

# Endorsement No. 1

## <u>Microorganism Exclusion – Resultant Mold</u>

This policy does not insure any loss, Damage, Time Element, claim, cost, expense or other sum directly or indirectly arising out of or relating to (regardless of whether any other cause or event contributed concurrently or in any sequence):

Fungus, mold, mildew, yeast, mushrooms, spores, toxins, mycotoxins, bacteria or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion shall not apply to any such loss, Damage, Time Element, claim, cost, or expense resulting from mold that is a direct result of an Insured Cause of Loss and is not otherwise excluded by the Policy, provided such loss, Damage, Time Element, claim, cost, or expense is reported to the Company in writing within twelve months from the expiration date of the policy. This clause is subject to a $500,000 per occurrence and in the annual aggregate sublimit.

This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part, for these matters.

All other terms and conditions remain unchanged.

Plaintiffs 000095

# ASBESTOS EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.**

This policy does not apply to any loss, demand, claim, occurrence, direct physical loss or damage, suit or expense arising out of or related in any way to asbestos or asbestos containing material or material that is alleged to have contained asbestos. We shall have no duty of any kind with respect to any such loss, demand, claim, occurrence, direct physical loss or damage, expense or suit. This exclusion applies to all coverages under this policy.

All other terms and conditions of this policy shall remain unchanged.

**Plaintiffs 000096**

# NUCLEAR EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.**

This Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled, uncontrolled or naturally occurring, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part, concurrently caused by, contributed to, or aggravated by the peril(s) insured against in this policy.

All other terms and conditions of this policy shall remain unchanged.

# EXCLUSION FOR CERTAIN COMPUTER RELATED LOSSES

### THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.

This policy does not insure any loss, or damage caused by or resulting directly or indirectly by any of the following. **Such loss or damage is excluded regardless of any other cause or event that contributes directly, indirectly, concurrently, proximately, remotely, or in any sequence to the loss and includes but is not limited to:**

**A.** The alteration, manipulation or destruction of computer media and data, by the addition of a virus, destructive code or similar instruction, hacking or any other malicious or destructive programming or instructions that disrupts the normal operation of computer equipment or computer media and data or results in the loss of use or physical damage to computer equipment, including but not limited to microprocessors and networks, or computer media and data;

**B.** Denial of service; by unauthorized direction of a high volume of messages or inquiries to a web site or e-mail destinations, effectively denying, interrupting or limiting legitimate access;

**C.** Inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times;

**D.** Transfer of property caused by, resulting from, or arising out of unauthorized instructions transmitted by a computer;

**E.** Financial loss or any other loss or damage due to unauthorized viewing, copying or use of any data (including proprietary or confidential information) by any person, even if such activity is characterized as theft.

**F.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by the Insured or on the Insured's behalf to determine, rectify or test for any actual or potential problem described in paragraphs A through E above.

This exclusion applies regardless whether there is (a) any physical loss or damage to insured property; (b) any loss of use, occupancy or functionality; or (c) any action required, including but not limited to repair, replacement, restoration, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

All other terms and conditions of this policy shall remain unchanged.

**Plaintiffs 000098**

# COMMUNICABLE DISEASE EXCLUSION

**THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.**

This Policy excludes any loss, expense, cost or damage directly or indirectly arising out of, contributed to by, or resulting from, in whole or in part, the actual or alleged transmission of a "communicable disease", or threat thereof, including any cost or expense arising out of or related to testing for, prevention of, failure to report the disease to governmental authorities, monitoring, cleaning up, removing, containing, treating, or neutralizing the "communicable disease".

"Communicable disease", as used in this endorsement, means any sickness or malady capable of being transmitted.

All other terms and conditions of this policy shall remain unchanged.

**Plaintiffs 000099**

# MINIMUM EARNED PREMIUM CLAUSE

**THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.**

In the event of cancellation of this policy by the insured, a minimum earned premium of 25% of the annual premium shall become payable by the insured; any conditions of the policy to contrary notwithstanding.  Failure of the insured to make timely payment of premium shall be considered a request by the insured for the company to cancel.   In the event of such cancellation by the company for non-payment of premium, the minimum premium shall be due and payable; provided, however, such non-payment cancellation shall be rescinded if the insured remits the full premium due within 10 days of receiving the cancellation notice.

All other terms and conditions of this policy shall remain unchanged.

Endurance American Specialty Insurance Company

ECB-I-321-0216

# HURRICANE SEASON MINIMUM EARNED PREMIUM ENDORSEMENT

**THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING :**

**COMMERCIAL PROPERTY**

It is understood and agreed that the following special terms and conditions apply to this policy:

1. If this policy is canceled by the insured or if the amount of insurance is reduced and no coverage existed from June 1 to November 30, the return premium is 90% of the pro-rata premium subject to any minimum earned premium stipulations in the policy.

2. If coverage existed on a location that is within 100 miles of the Atlantic Ocean and/or Gulf of Mexico and/or Hawaii Islands at any time during the period from June 1st to November 30th , the amount of premium returned will be a percentage of the total premium determined as follows:

| Days Policy in Force | Unearned Factor |
|---|---|
| 1 - 180 | 20% |
| 181 - 210 | 15% |
| 211 - 240 | 10% |
| 241 - 270 | 7.5% |
| 271 - 300 | 5.0% |
| 301 - 330 | 2.5% |
| 331 - 365 | 0.0% |

3. If a location that is within 100 miles of the Atlantic Ocean and/or Gulf of Mexico and/or Hawaii Islands is added during the term of the policy, the rate will be calculated as 100% of the annual rate, less the Unearned Factor in Item 2 above.

4. The provisions of this endorsement are in addition to and do not alter any minimum earned premium provisions in the policy or its attachments.

All other terms and conditions of the policy will remain the same.

**Plaintiffs 000101**

# AMENDMENT OF CANCELLATION ENDORSEMENT

### THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.
### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:
### COMMERCIAL PROPERTY COVERAGE

The following Cancellation Provision  is added to this policy and supersedes anything to the contrary:

This policy may be cancelled by mailing or delivering to the first Named Insured written notice of cancellation at least:

    **a.**  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **b.**  90  days before the effective date of cancellation if we cancel for any other reason.

All other terms and conditions of the policy will remain the same.

EGP 1329 0316
**Plaintiffs 000102**

# LOSS ADJUSTMENT ENDORSEMENT

**THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.**

It is agreed that Endurance American Specialty Insurance Company has the option of engaging a separate loss adjuster and/or loss adjustment facility in addition to any loss adjuster and/or loss adjustment facility so designated or named in this policy or any other policy of insurance that may be in force and applies to this insurance.

All other terms and conditions of this policy shall remain unchanged.

ECB 1301 0616

**Plaintiffs 000103**

# GENERAL CHANGE ENDORSEMENT

| Named Insured: | Portofino Master Homeowners Association at Pensacola Beach, Inc. | | |
|---|---|---|---|
| Policy No.: | ESP30000298003 | **Endorsement Effective Date:** | 04/01/2020 |
| Issued By: | Endurance American Specialty Insurance Company | **Endorsement No.:** | 4 |

### THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.

Any Full Waiver clause, Waiver of Conditions clause, or any other clause whereby the Company is deemed to waive, override, supersede, substitute for or whereby the coverage form purports to void or alter the force, effect of meaning of, the Company's forms or endorsements issued as part of this policy is hereby deleted.

Nothing herein contained shall vary, alter, waive, or extend any of the terms, representations, conditions or agreements of the policy other than as above stated.

_____
Authorized Representative

**Plaintiffs 000104**

# GENERAL CHANGE ENDORSEMENT

| Named Insured: | Portofino Master Homeowners Association at Pensacola Beach, Inc. | | |
|---|---|---|---|
| Policy No.: | ESP30000298003 | Endorsement Effective Date: | 04/01/2020 |
| Issued By: | Endurance American Specialty Insurance Company | Endorsement No.: | 5 |

### THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.

In consideration of no additional premium, it is hereby understood and agreed that the following amendments are made to this policy:

EARTHQAUKE is hereby amended as follows in item 6. DEDUCTIBLE CLAUSE

EARTHQUAKE

As respects loss or damage to property resulting from the peril of Earthquake, all loss, damage or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deductible the sum of $100,000.  This deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

Nothing herein contained shall vary, alter, waive, or extend any of the terms, representations, conditions or agreements of the policy other than as above stated.

_____
Authorized Representative

**Plaintiffs 000105**

# GENERAL CHANGE ENDORSEMENT

| Named Insured: | Portofino Master Homeowners Association at Pensacola Beach, Inc. | | | |
|---|---|---|---|---|
| Policy No.: | ESP30000298003 | Endorsement Effective Date: | 04/01/2020 | |
| Issued By: | Endurance American Specialty Insurance Company | Endorsement No.: | 6 | |

### THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.

In consideration of no additional premium, it is hereby understood and agreed that the following amendments are made to this policy:

FLOOD is hereby amended as follows in item 6. DEDUCTIBLE CLAUSE

FLOOD:

As respects loss or damage to property resulting from the peril of Flood, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100 year flooding, as defined by the Federal Emergency Management Agency, all loss arising out of any one occurrence shall be adjusted as one loss and from the loss shall be deducted the maximum amount recoverable under the National Flood Insurance Program for the Real or Personal Property at each Building, whether or not such coverage is purchased or maintained.

In addition, the following Deductible will apply to property not eligible and coverages not available under the National Flood Insurance Program that are covered under this Policy and any difference in valuation between policies: $100,000 per Occurrence.

With respect to locations not wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100 year flooding, as defined by the Federal Emergency Management Agency, all loss arising out of any one occurrence shall be adjusted as one loss and from the loss shall be deducted the sum of $100,000

The determination of whether a property is in whole or in part subject to the 100 Year Flood Zone shall be at the inception of the policy and not at the time of loss.

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

**Plaintiffs 000106**

Nothing herein contained shall vary, alter, waive, or extend any of the terms, representations, conditions or agreements of the policy other than as above stated.

_____

Authorized Representative

**Plaintiffs 000107**

# GENERAL CHANGE ENDORSEMENT

| Named Insured: | Portofino Master Homeowners Association at Pensacola Beach, Inc. | | |
|---|---|---|---|
| Policy No.: | ESP30000298003 | **Endorsement Effective Date:** | 04/01/2020 |
| Issued By: | Endurance American Specialty Insurance Company | **Endorsement No.:** | 7 |

### THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.

In consideration of no additional premium, it is hereby understood and agreed that the following amendments are made to this policy:

ALL OTHER WIND and HAIL is hereby amended as follows in item 6. DEDUCTIBLE CLAUSE

ALL OTHER WIND and HAIL:
As respects loss or damage to property resulting from the peril of All Other Wind, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

$100,000

Nothing herein contained shall vary, alter, waive, or extend any of the terms, representations, conditions or agreements of the policy other than as above stated.

_____

Authorized Representative

# E N D O R S E M E N T

| | | | |
|---|---|---|---|
| Named Insured: | Portofino Master Homeowners Association at Pensacola Beach, Inc. | Policy Number: | ESP30000298003 |

| | | | |
|---|---|---|---|
| Endorsement Effective Date: | April 01, 2020 | Endorsement Number: | N/A |
| | (12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations) | | |

## EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that:

A.  This insurance does not apply to:

Terrorism

"Any injury or damage" arising directly or indirectly, out of a "certified act of terrorism" or out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act.

1.  The total of insured damage to all types of property exceeds $ 25,000,000 (valued in US dollars). In determining whether the $ 25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2.  fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    a.  physical injury that involves a substantial risk of death; or

    b.  protracted and obvious physical disfigurement; or

    c.  protracted loss of or impairment of the function of a bodily member or organ; or

3.  the terrorism involves the use or release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4.  the terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5.  pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

Date of Issuance: August 05, 2020
Endurance American Specialty Insurance Company     Page 1 of 3     Policy Form: Policy Form
Endorsement Form: IL 1201 0115

**Plaintiffs 000109**

# ENDORSEMENT

With respect to this exclusion, Paragraph 1. and 2. describe the thresholds used to measure the magnitude of an Incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

B.  The following definitions are added:

1.  For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under this policy, or "underlying insurance" to which this endorsement is applicable, and includes but is not limited to any Loss, Claim or injury as may be defined in any applicable policy, or "underlying insurance".

2.  "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

    a.  The act resulted in insured losses in excess of $ 5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

    b.  The act resulted in damage:

        i.  Within the United States (including its territories and possessions and Puerto Rico); or

        ii.  Outside of the United States in the case of:

            (a)  An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

            (b)  The premises of any United States mission; and

    c.  the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3.  "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism". Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

4.  "Coverage territory" means anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanctions or embargo by the United States of America.

Date of Issuance: August 05, 2020                                                                        Policy Form: Policy Form
Endurance American Specialty Insurance Company          Page 2 of 3          Endorsement Form: JL 1201 0115

**Plaintiffs 000110**

# ENDORSEMENT

C.   In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this policy.



_____

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT - REJECTION OF OFFER

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

A. **Rejection of Offer**

You have rejected the offer of terrorism coverage for Acts of Terrorism that are certified under the Terrorism Risk Insurance Act as reauthorized and amended, as an Act of Terrorism. An exclusion of terrorism losses has been made a part of this policy.

B. **Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% in 2015 and decreases its share 1% each calendar year to a total of 80% in 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer retention. **You have rejected this offer of coverage.**

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Plaintiffs 000112**

# Notice of Loss

Notwithstanding any provision to the contrary within this insurance policy, any endorsement thereto, or any policy to which this policy may follow form, the insured shall as soon as practical report in writing, to:

Property - E&S - Claims
1221 Avenue of the Americas
New York, NY 10020
E-Mail addressed to: insuranceclaims@sompo-intl.com

every loss, damage or occurrence which may give rise to a claim under this policy and also file with the Company within ninety (90) days from the date of such loss, damage or occurrence, a detailed sworn proof of loss.

Endurance American Specialty Insurance Company

ECB-1302.02.14

# SERVICE OF SUIT ENDORSEMENT

### THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.

In the event of failure of the Insurer to pay any amount claimed to be due under the terms of this policy, the Insurer, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Insurer's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.  In any suit instituted against the Insurer upon this policy, the Insurer will abide by the final decision of such court or of any appellate court in the event of appeal.

It is further agreed that service of process in such suit may be made upon the Senior Vice President - Claims, 1221 Avenue of the Americas New York, NY 10020

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Insurer designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, as its true and lawful attorney upon whom service may be made of any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Senior Vice President - Claims as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions of this policy shall remain unchanged.

Endurance American Specialty Insurance Company

ECR 1307 0216

# U. S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC.  **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous:

- Foreign agents;

- Front organizations;

- Terrorists;

- Terrorist organizations; and

- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons".  This list can be located on the United States Treasury's website - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.  Other limitations on the premiums and payments also apply.

**Plaintiffs 000115**



SOMPO
INTERNATIONAL

## Endurance American Specialty Insurance Company
## 1221 Avenue of the Americas
## New York, NY 10020

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Senior Vice President and countersigned where required by law on the Declarations page by its duly authorized representative.

Senior Vice President                        President



## <u>How to Report a Claim</u>

### Property and Inland Marine

The Everest Property Claims team is dedicated to providing a best in class claim experience through clear communication and a customer first approach.  Our team of Property and Inland Marine Claims Specialists work with you for the life of the claim and are available 24/7 to respond to all questions and concerns. Timely submission of Loss Notices complies with the terms and conditions of your policy and assists us in providing quality service to our policyholders.  Any claim or circumstance which may reasonably be expected to give rise to a claim needs to be reported to Everest as soon as possible.   In the event you have any questions and/or concerns regarding the claim process, contact Paul Keane:

Bus.: 908-604-7404

Cell:  908-334-8086

**Paul.keane@everestre.com**

**The following methods may be used to promptly report a claim:**

**Option 1:**
**Email Claim Reporting: PropertyMarineClaims@everestre.com**

**Option 2:**
**Phone Reporting Toll-Free: 1-866-287-1736**

**PLEASE FOLLOW THE FOLLOWING STEPS IMMEDIATELY AFTER A LOSS:**

1.  **Obtain the Facts:** Find out as much as you can about the incident.

2.  **Gather All Supporting Information:** Obtain as much supplemental information as you can before you report the claim:
    - ✓ Policy Number
    - ✓ Name, address, phone
    - ✓ Date of Loss
    - ✓ Loss location

3.  **Report the Claim Immediately and Please Provide Your Policy Number:** Don't delay in calling because you don't have all the information. Timely reporting is essential. You can gather and report any missing information at a later date.

### Retention of any and all evidence

Whenever possible, do not make nor have any repairs made until an inspection can be made. Many times immediate repairs are required. If so, it is crucial that **any and all parts** repaired or replaced **be retained and safeguarded until further notice.** In addition, please retain a copy of the repair invoice.

For additional information, please refer to our website: www.everestre.com

Plaintiffs 000117

EN IL 5 FL 10 18

# FLORIDA SUPPLEMENTAL DECLARATIONS PAGE

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

Plaintiffs 000118

EDEC 819 01 20

Everest Indemnity Insurance Company
477 Martinsville Road
P.O. Box 830 Liberty Corner, NJ 07938-0830
1-800-438-4375



# MANUSCRIPT PROPERTY
# POLICY DECLARATIONS

**Policy Number:** CA3P005801-201                    **Renewal of:** CA3P005801-191

**Named Insured and Address:**
Portofino Masters Homeowners Association at Pensacola Beach, Inc.
10 Portofino Drive
Gulf Breeze, FL 32561

**Policy Period: From:**   04/01/2020             **To:** 04/01/2021
(At 12:01 A.M. Standard Time at the location of the property involved)

**Limit of Liability:** 20% that being $3,000,000 part of $15,000,000 which in turn in Excess of Policy Deductibles
(Maximum Limit of Liability in any one Occurrence)

**Perils:** All Risks of Direct Physical Loss or Damage including Flood, Earth Movement, Named Windstorm and Boiler & Machinery, and as further described in the policy form

**Description of Property Covered:**
Real and Personal property; Furniture & Fixtures; Improvements and Betterment's; Inventory; Stock; EDP hardware media and data; Business Income; Extra Expense and as further defined in the policy form.

**Premium:**
**Inspection Fee:**
In return for the payment of the premium shown above, out of which a commission of
                         shall be paid by us, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**Forms Attached:** See attached forms schedule

President                                        Secretary

Plaintiffs 000119

EDEC 820 05 17

Everest Indemnity Insurance Company
477 Martinsville Road
P.O. Box 830 Liberty Corner, NJ 07938-0830
1-800-438-4375



# SCHEDULE OF FORMS AND ENDORSEMENTS

**Named Insured:** Portofino Masters Homeowners Association at Pensacola Beach, Inc.

**Policy Number:** CA3P005801-201          **Effective Date:** 04/01/2020

| Form Number | Edition Date | Endorsement Number | Title – Description |
|---|---|---|---|
| EDEC 819 | 01 20 | | Manuscript Property Policy Declarations |
| EDEC 820 | 05 17 | | Schedule of Forms and Endorsements |
| AmWINS Of Georgia | | | Broker Manuscript Policy Form |
| ECP 10 601 | 03 17 | | Authorities Exclusion |
| ECP 10 603 | 03 17 | | Asbestos Endorsement |
| ECP 10 604 | 03 20 | | Biological or Chemical Materials Exclusion |
| ECP 04 619 | 07 19 | | Absolute Cyber Exclusion |
| ECP 10 607 | 03 17 | | Electronic Date Recognition Exclusion |
| EIL 03 540 | 03 20 | | Communicable Disease Exclusion |
| ECP 10 611 | 03 20 | | Seepage And/or Pollution And/or Contamination Exclusion |
| ECP 13 002 | 07 18 | | Builders Risk Exclusion (Wood Frame) |
| ECP 00 565 | 06 18 | | Minimum Earned Premium |
| ECP 12 003 | 11 18 | | Amendment of Examination Under Oath Provision |
| ECP 10 544 | 09 17 | | Exclusion - Existing Damage |

**Plaintiffs 000120**

EDEC 820 05 17

| | | |
|---|---|---|
| ECP 13 003 | 09 18 | Exclusion of Terrorism-Certified And Noncertified Acts |
| ECP 10 614 | 03 17 | Method of Claim Notice And Service Of Suit Conditions |
| ECP 02 103 | 08 19 | Florida Amendatory Endorsement – Cancellation and Nonrenewal |
| ECP MAN | 05 17 | Amendatory Endorsement No. 2 |

President

Secretary

Plaintiffs 000121

## PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies) , do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy.

Provided that:

1.     The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2.     The liability of each of the Insurers shall not exceed the Participation Limit set against its name.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurer | Policy Number | Participation | Authorized Signature |
|---|---|---|---|
| Westchester Surplus Lines Insurance Company | D38064666 004 | $5,000,000 part of $15,000,000 Primary | |
| Endurance American Specialty Insurance Company | ESP30000298003 | $5,500,000 part of $15,000,000 Primary | |
| Everest Indemnity Company | CA3P005801201 | $3,000,000 part of $15,000,000 Primary | |
| Princeton Excess Surplus Lines Insurance Company | 3VA3PP0000251-02 | $1,500,000 part of $15,000,000 Primary | |
| Arch Specialty Insurance Company | ESP1002326-00 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Axis Surplus Insurance Company | EAF645360-20 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Colony Insurance Company | XP190091-1 | $6,250,000 part of $25,000,000 excess of $25,000,000 | |
| Evanston Insurance Company | MKLV11XP007995 | $7,500,000 part of $25,000,000 excess of $25,000,000 | |
| Aspen Specialty Insurance Company | PX005LG20 | $5,000,000 part of $25,000,000 excess of $25,000,000 | |

1

| | | | |
|---|---|---|---|
| Independent Specialty Insurance Company | VUX-CN-0000328-04 | $8,689,317 part of $217,232,927 excess of $25,000,000 | |
| Interstate Fire & Casualty Company | VRX-CN-0000328-04 | $28,240,281 part of $217,232,927 excess of $25,000,000 | |
| Lloyd's of London | VPC-CN-0000328-04 | $17,378,634 part of $217,232,927 excess of $25,000,000 | |
| James River Insurance Company | 00090459-1 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Maxum Indemnity Company | MSP-6012522-11 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Landmark American Insurance Company | LHD912400 | $48,058,232 part of $192,232,927 excess of $50,000,000 | |
| Homeland Insurance Company of New York | 795012091 | $50,000,000 part of $100,000,000 excess of $200,000,000 | |
| Everest Indemnity Company | CA3X001322201 | $21,116,464 part of $42,232,927 excess of $200,000,000 | |

2

## MASTER PROPERTY POLICY

1. NAMED INSURED – "Named Insured" means **Portofino Master Homeowners Association at Pensacola Beach, Inc.; Portofino Tower One Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Two Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Three Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Four Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Five Homeowners Association at Pensacola Beach, Inc.** means the First Named Insured and any entity in which the First Named Insured owns an interest of more than 50 percent, during the Policy Period, controls during the Policy Period, or has the responsibility of placing the insurance provided by this Policy during the Policy Period. No entity is covered under this Policy unless the Company has received identifying information for such entity during the application or submission process, except if such entity is covered under miscellaneous unnamed insured locations or newly acquired property, or if such entity is added by endorsement.

   Notwithstanding any provision to the contrary in this Policy, if other valid and collectible insurance is available to any entity covered by this Policy solely because of the ownership, control, or responsibility to purchase insurance by the First Named Insured, this insurance will be excess with regard to such other insurance whether contingent, primary, excess or any other basis.

2. TERM OF INSURANCE In consideration of a $ annual premium, this policy attaches and covers for a period of one year from April 1, 2020 to April 1, 2021, beginning and ending at 12:01 A.M. standard time, at the location of the property involved.

3. PARTICIPATION – Please refer to the Participation Page.

4. LIMIT OF LIABILITY - This Company shall not be liable for more than its proportion of $242,232,927 for any one occurrence.

5. SUBLIMIT(S) OF LIABILITY) - This Company shall not be liable for more than its proportion of the following sublimits.  Sublimits are part of and not in addition to the overall Limit of Liability and apply on a per occurrence basis unless otherwise noted:

   a) $15,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Flood.
   b) $25,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Earthquake.
   c) $1,000,000 per occurrence as respects Accounts Receivable
   d) $500,000 per occurrence as respects Arson Reward

3

**Plaintiffs 000124**

e)   $1,000,000 per occurrence as respects Contingent Time Element, Attraction Properties are excluded

f)   $1,000,000 per occurrence as respects Consequential Loss

g)   $10,000,000 per occurrence as respects Course of Construction Including Soft Costs

h)   Included per occurrence as respects Demolition and Increased Cost of Construction Coverage A

i)   $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage B

j)   $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage C

k)   $1,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage D

l)   $10,000,000 per occurrence as respects Debris Removal

m)   $10,000,000 per occurrence as respects Errors and Omissions

n)   25% of the Adjusted Loss Maximum, $10,000,000 per occurrence as respects Extra Expense

o)   $5,000,000 per occurrence as respects Expediting Expense

p)   200,000,000 per occurrence as respects Equipment Breakdown

q)   $1,000,000 per occurrence as respects Contract Penalty

r)   $1,000,000 per occurrence as respects Fire Brigade Charges and Extinguishing Expenses

s)   $50,000 per occurrence as respects Inland Transit

t)   The lesser of 30 days of $2,500,000 per occurrence as respects Ingress/Egress

u)   $5,000,000 per occurrence as respects Miscellaneous Unnamed Locations

v)   $5,000,000 per occurrence as respects Newly Acquired Property (90 days; if not reported within 90 days the coverage ceases)

w)   $1,000,000 per occurrence as respects Leasehold Interest

x)   $500,000 per occurrence as respects Lost Master/Key Card

y)   $5,000,000 per occurrence as respects Rental Value/Rental Income

z)   Excluded per occurrence as respects Research and Development

aa)   $1,000,000 per occurrence as respects Royalties

bb)   $2,500,000 per occurrence as respects Service Interruption.  Property Damage and Time Element Combined.

cc)   $1,000,000 per occurrence as respects Valuable Papers and Records

dd)   The lesser of 30 days of $2,500,000 per occurrence as respects Civil or Military Authority

ee)   $3,000,000 per occurrence as respects Landscaping, subject to a $25,000 maximum per item

ff)   $1,000,000 per occurrence as respects Fine Arts, subject to a $25,000 maximum per item

The amount of loss from any one occurrence for which this policy is excess, shall be determined by the combined loss, damage or expense as insured under the primary policy.  In the event of loss or damage involving more than one coverage or peril, The Limits of Liability of the underlying policies shall first

4

apply to the coverage(s) or peril(s) not insured by this policy, and the remainder, if any to the coverages(s) or peril(s) as provided hereunder. Upon erosion or exhaustion of the Limits of Liability of the underlying policies, this policy shall then be liable for the loss uncollected from the coverage(s) or perils(s) insured hereunder, subject to the Limit of Liability specified herein.  In the event of reduction or exhaustion of the aggregate limit(s) designated in the underlying policy(ies), it is hereby understood and agreed that such insurance as is afforded by this policy shall apply in excess of the reduced or exhausted underlying limit(s).  The insured maintains the right to allocate and/or apply coverages, interests and/or perils, as insured in the primary and/or excess policies.

6.    DEDUCTIBLE CLAUSE - The Company will adjust all losses, damages or expenses arising out of any one occurrence as one loss. The Company will deduct the following from such loss:

**$50,000** per occurrence for all perils including earthquake sprinkler leakage, and the backup of sewers and drains, except:

WAITING PERIOD:

With respect to all Time Element coverages, coverage is provided by this policy only if the period of interruption of the Insured's business exceeds 24 hours. Then Time Element coverage will apply excess of the appropriate policy deductible.

EARTHQUAKE:

As respects loss or damage to property resulting from the peril of Earthquake, all loss, damage or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deductible the sum of $50,000.  This deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

FLOOD:

As respects loss or damage to property resulting from the peril of Flood, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100 year flooding, as defined by the Federal Emergency Management Agency, all loss arising out of any one occurrence shall be adjusted as one loss and from the loss shall be deducted the maximum amount recoverable under the National Flood Insurance Program for the Real or Personal Property at each Building, whether or not such coverage is purchased or maintained.

In addition, the following Deductible will apply to property not eligible and coverages not available under the National Flood Insurance Program that are covered under this Policy and any difference in valuation between policies: $100,000 per Occurrence.

The determination of whether a property is in whole or in part subject to the 100 Year Flood Zone shall be at the inception of the policy and not at the time of loss.

5

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

NAMED STORM:

With respect to loss or damage to property in Tier 1 Counties resulting from the period of Named Windstorm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm), the deductible shall be 2% of such unit of insurance at each location in accordance with policy valuation at the time of loss.  A minimum $100,000 each occurrence shall apply.

With respect to any other named storm loss or damage, the deductible shall be **$50,000** any one occurrence.

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

ALL OTHER WIND and HAIL:
As respects loss or damage to property resulting from the peril of All Other Wind, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

**$50,000**

Definition of 'Unit of Insurance':
  a)  Each separate building or structure
  b)  Contents in each separate building or structure
  c)  Property in the yard of each separate building or structure
  d)  Annual Business Interruption value applying to each separate building or structure.
  e)  Each Other Property item as listed in the Statement of Values.  If values are not listed separately, the value is included in the building value.

Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence. If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the insured shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s), notwithstanding the above reference to two or more deductibles.

The deductible amounts specified above shall not apply to general average contributions and salvage charges.

7.   LOSS PAYABLE - Loss, if any, shall be adjusted with and payable to the Insured, or as directed by them.

Plaintiffs 000127

8.    TERRITORY - This policy covers anywhere in the United States of America and its territories and possessions including coastal and inland waterways and while in due course of transit therein or thereto.

9.    PROPERTY COVERED - Except as hereinafter excluded, this policy covers the interest of the Insured in all real and personal property owned, used, leased or intended for use by the Insured or in which the Insured may have an insurable interest, or for which the Insured may be responsible for the insurance, or real or personal property hereafter constructed, erected, installed, or acquired including while in course of construction, erection, installation, and assembly including Improvements and Betterments. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.  This policy is extended to include:

   a)    The interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by written contract for such property, including the cost to defend any allegations of liability for loss or damage to such property.

   b)    At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured.

   c)    Contractors' and/or subcontractors' (of any tier) and/or vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract.

10.    PROPERTY EXCLUDED - This policy does not cover loss or damage to:

   a)    Money and securities;

   b)    Land, land values, except as insured under the "Pollutant Cleanup of Land and Water" clause.  This exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements if land improvements have been scheduled on the Schedule of Values on file with the company.  Land improvements as described hereunder include, but are not limited to any alteration to the natural condition of the land by grading, landscaping, excavation, earthen dikes or dams, as well as additions to land such as pavements, roadways or similar works;

   c)    Water; except water which is normally contained within any type of tank, piping system or other process equipment;

   d)    Growing crops, standing timber, and live animals;

   e)    Watercraft; aircraft and motor vehicles licensed for highway use;

   f)    Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

   g)    Underground mines or mine shafts or any property within such mine or shaft;

7

Plaintiffs 000128

h) Offshore property; unless reported on the Schedule of Values on file with the company.

i) Transmission and Distribution Lines beyond 1,000 feet of Insured Premises;

j) currency; evidence of debt; notes

k) Turbines and satellites;

l) docks, piers, and wharves; bridges, roadways, streets, walks or any other paved surfaces; dams or dikes; railroad rolling stock; off-shore drilling rigs or platforms; underground mines, wells, caverns including property contained therein unless reported on the Schedule of Values on file with the company.

11. PROPERTY VALUATION - The basis of loss adjustment shall be as follows:

a) Valuable Papers & Records/Electronic Data Processing Media :  the cost to repair or replace the property with other of like kind and quality including the cost of labor, service or supplies consumed in reconstructing, reproducing, recreating, transcribing or copying information; or, if not so replaced, the value blank.

b) Raw materials and supplies:  the replacement cost new.

c) Stock in process:  The value of raw materials plus labor expended plus the proper proportion of overhead charges.

d) Finished stock and other merchandise for sale:  The regular cash selling price less all discounts and charges to which such property would have been subject had no loss occurred.

e) Real and personal property of others for which the Insured is liable:  A valuation consistent with the liability of the Insured but only to the extent that such money is necessarily expended by the Insured.

f) Electronic data processing equipment, production machinery & equipment:  The cost to repair or replace new with like kind and quality. In addition, the Insured may elect to replace such equipment with equipment having technological advances and/or representing an improvement in function and/or forming part of a program of system enhancement and/or more consistent with the Insured's technology strategy (without any reduction or offset for betterment) provided that such replacement can be accomplished without increasing the Insurer's liability.

g) Fine arts, at original cost to the Insured, per schedule, latest appraised value or current market value, all at the Insured's option.

h) Other property not otherwise provided for; at replacement cost new without deduction for depreciation.  If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:

Plaintiffs 000129

i)      The repairs, replacement or reinstatement must be executed with due diligence and dispatch.

ii)     This Company's liability for loss or damage on a replacement cost basis shall not exceed the lesser of the replacement cost new of the property or any part thereof identical with such property intended for the same occupancy and use, including normal and customary profit and overhead even if the work is performed by the Insured; or the amount actually and necessarily expended in repairing or replacing said property or any part thereof including normal and customary profit and overhead even if the work is performed by the Insured.

12.   BUSINESS INTERRUPTION - This policy shall cover the loss resulting from necessary interruption of business conducted by the Insured including all interdependent loss of earnings between or among companies owned or operated by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

a)      In the event of such loss, damage or destruction this Company shall be liable for the ACTUAL LOSS SUSTAINED by the insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business. Due consideration shall be given to the continuation of normal charges and expenses including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately before the loss. For the purposes of this insurance, "Gross Earnings" are defined as the sum of:

i)      Net sales value of production from manufacturing operations, and net sales from Merchandising or Non-Manufacturing operations; and

ii)     Other earnings derived from operations of the business,

        LESS THE COST OF:

iii)    Raw Stock from which such production is derived;

iv)     Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the services(s) sold by the Insured;

v)      Merchandise sold, including packaging materials therefor; and

vi)     Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

Plaintiffs 000130

b) In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the period of restoration, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including ordinary payroll, directly attributable to such research and development activities.

c) Resumption of Operations: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business:

   i) by a complete or partial resumption of operation at a location owned by the same entity suffering the loss, whether damaged or not; or

   ii) by making use of available stock, merchandise, or other property;

   such reduction shall be taken into account in arriving at the amount of loss hereunder.

d) EXPERIENCE OF THE BUSINESS - In determining the amount of gross earnings, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

e) As respects coverage provided under the Gross Earnings clause of this policy, the insurer shall not be liable for any loss resulting from loss or damage to finished stock nor for the time required to reproduce said finished stock.

13. Extra Expense - This policy shall cover the necessary extra expense, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

a) The term "Extra Expense" wherever used in this Policy, is defined as the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally have been incurred to conduct the business during the same period had no loss or damage occurred.

Plaintiffs 000131

b)      In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities, this policy shall cover the actual loss sustained of the extra expenses as defined herein directly attributable to the interruption of such research and development activities.

c)      As soon as practicable the Insured shall resume normal operations of the business and shall dispense with such extra expense.

14.      This policy is extended to cover expenses as are necessarily incurred for the purpose of reducing any loss under this policy; however, such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

15.      SOFT COSTS - This policy shall cover soft costs, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to property under construction as covered herein.

a)      The term "Soft Costs" shall include:

     i)      Additional interest costs on money used to finance construction or repair;

     ii)      Additional real estate and property taxes incurred for the period of time that construction extends beyond the projected completion date;

     iii)      Additional legal and accounting fees; and

     iv)      Additional advertising and promotional expenses which become necessary as a result of an insured loss.

b)      This company shall pay soft costs incurred from the date that the building, structure or improvement would have been completed had no physical damage occurred until such time that it is completed.  As soon as practicable after any loss, the Insured shall utilize every available means to reduce the amount of loss including:

     i)      partial or complete resumption of construction, business or operations;

     ii)      making use of materials, equipment, supplies, or other property at the Insured's premises or elsewhere; or

     iii)      making use of substitute facilities or services where practical;

     such reduction will be taken into account in arriving at the amount of such loss.

16.      Rental Value/Rental Income - This policy shall cover the actual loss sustained by the Insured resulting directly from the necessary untenability caused by direct

Plaintiffs 000132

physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as covered herein.  Loss settlement shall not exceed the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenability.

a)      If the Insured is the lessor, for the purposes of this insurance, "rental value" is defined as the sum of:

   i)      the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the insured, and

   ii)     the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

   iii)    the fair rental value of any portion of said property which is occupied by the Insured.

b)      If the Insured is the lessee, rental value shall be the determined rental which the Insured is obligated to pay (including ground rents, accrued charges, real estate taxes and interest if the Insured shall be liable therefor) less such charges and expenses as do not necessarily continue.

c)      Experience of the Business - In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

d)      With respect to buildings or structures leased or rented by the Insured, this policy will serve as rental income insurance in those situations where the insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord.  This policy will respond for rental expenses incurred by the Insured in excess of the expenses which would have been incurred had a leased or rented premises not been damaged or destroyed by any peril covered under this policy. Such coverage will apply for all additional expenses incurred during the period of untenability or if the lease cannot be terminated until its expiration.

17.    Royalties - This policy shall cover the loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to direct physical loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the other party.

Plaintiffs 000133

a)      Any loss hereunder shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED to such income referred to above, which would have been earned had no loss occurred.

b)      Resumption of Operations:  The Insured shall influence, to the extent possible, the party with whom the agreement described above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Company.

c)      Experience of the Business:  In determining the amount of income derived from the agreements(s) described above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

18.      Leasehold Interest - This policy covers the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

a)      the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

b)      improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of this policy;

c)      the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located; and "Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located. The "Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

13

Plaintiffs 000134

d)    The "Interest of the Insured as Lessee" is defined as:

    i)    the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

    ii)    the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

e)    The "Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is cancelled by the lessee, to the extent not covered under any other section of this policy.

f)    "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "Interest of the Insured as Lessee".

g)    This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

19.    Loss Provisions Applicable to Time Element Coverage - The "Period of Indemnity" is defined as the length of time for which loss may be claimed, and shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy, subject to the following provisions:

a)    The Period of Indemnity shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged.

b)    With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly the Period of Restoration shall be determined as provided above but such determined length of time shall be applied, and the loss hereunder calculated from the date that business operations would have begun had no damage or destruction occurred.

c)    Extended Period of Indemnity - The Period of Indemnity shall include such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

    i)    the date on which the liability of the Company for loss or damage would otherwise terminate; or

Plaintiffs 000135

ii)    the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually completed;

terminating no more than 365 days from said later commencement date.

20.    Extensions of Time Element Coverage: This policy, subject to all its provisions and without increasing the amount of said policy, insures against direct physical loss resulting from damage to or destruction by the perils insured against, to:

a)    Any service provider's property including but not limited to, electrical equipment and systems, water, gas, steam, telephone or their respective transmission and distribution lines or utility plants which directly or indirectly provide incoming or outgoing services to the Insured situated on or outside of the Insured's premises.

b)    the actual loss sustained, and Extra Expense incurred by the Insured at an insured location during the period of restoration directly resulting from physical loss or damage of the type insured to property of the type insured at a Contingent Time Element Location, meaning a location within the TERRITORY of a direct supplier or direct customer of the Insured.

As respects this subparagraph b):

i.    The Insured will influence and cooperate with the Contingent Time Element Location in every way and take any reasonable and necessary action, including the use of other machinery, supplies, or locations, to effect mitigation of the loss payable hereunder.

ii.    In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

iii.    This Policy does not insure loss resulting from a lack of incoming or outgoing electricity, fuel, gas, water, steam, refrigeration, sewage, or telecommunications of a direct supplier or direct customer of the Insured.

iv.    The per occurrence deductible that applies to all perils also applies to the coverage as provided under this subparagraph b).

c)    dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other manufacturing purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources.

d)    the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory

15

Plaintiffs 000136

mile of an insured location, access to real or personal property is impaired or hindered by order of civil or military authority irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 e) below.

    e)      the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory mile of an insured location, ingress to or egress from real or personal property is thereby impaired or hindered irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 d) above.

    f)      property, facilities or piping systems which prevents the Insured from discharging its outgoing effluence.

21.    Transit - This policy shall cover property in transit, and this policy attaches and covers shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.  This insurance is extended to cover loss or damage to property:

    a)      sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;
    b)      arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;
    c)      occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;
    d)      at the Insured's option, property which is incoming to the Insured.

The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor. With respect to shipments described under subparagraphs a and d above, this Company agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

Plaintiffs 000137

e)     The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

f)     Seaworthiness of any vessel or watercraft, and airworthiness of any aircraft are admitted between this Company and the Insured.

22.    Accounts Receivable - Defined as:

a)     All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

b)     Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

c)     Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

d)     Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

e)     the monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

f)     the monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

23.    Lost Master/Key Card - If a master or grand master key is lost, or damaged so it cannot be duplicated, we will pay for the actual loss of keys, the cost of adjusting locks to accept new keys, or the cost of new locks, if required, of like kind and

Plaintiffs 000138

quality including the cost of installation subject to the limit contained in the Declarations.

24.     Arson Reward - If covered property sustains direct physical loss or damage caused by or resulting from a fire, and the origin of such loss is determined to be the criminal acts of an individual or individuals, we will pay a reward to the person or persons who provide information that leads to the arrest and conviction of the individual or individuals responsible for the loss.

25.     Contract Penalty – This policy covers a compensation payment due under the Hotel Management Agreement between the Franchisee, Named Insured, and any Franchisor, as identified via policy endorsement, or other appropriate subsidiaries acting as the management company or agent, whether insured or not under this policy. The Contract Penalty is triggered when the Hotel Management Agreement is terminated due to loss or damage of a type insured under this policy from an insured peril where such loss or damage causes a total constructive loss.

"A total constructive loss" means the destruction or damage to the Hotel by an insured peril whereby the destruction of or damage to the Hotel is such that the cost of repairing, rebuilding or replacing the Hotel exceeds 50% of the Replacement value of the Hotel." The Contract Penalty will only apply if the franchisor does not release the franchisee from the Hotel Management Agreement after a total constructive loss occurs and the First Named Insured / Franchisee elects not to repair or rebuild the property.

26.     BOILER & MACHINERY - This policy insures direct or indirect loss as covered elsewhere in this policy to insured property as a result of an Accident to an Object subject to the following definitions:

    a)      "Object" means any boiler, fired or unfired pressure vessel, refrigerating or air-conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.
    b)      "Accident" means an accidental loss to an Object or a part thereof which manifests itself in physical damage that necessitates repair or replacement of the Object or part thereof.
    c)      "Hazardous Substance" means the additional expense incurred for clean up, repair or replacement, or disposal of damaged, contaminated or polluted property as a result of an "Accident" which causes property to become damaged, contaminated or polluted by a substance declared hazardous to health by an authorized governmental agency. "Additional Expenses" means expenses incurred that would not have been incurred, had no substance hazardous to health been involved in the accident.

27.     PERILS INSURED AGAINST - This policy insures against all risks of direct physical loss of or damage to property described herein including general

Plaintiffs 000139

average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

28.    PERILS EXCLUDED - This policy does not insure:

a)    infidelity or dishonesty of the Insured or of the Insured's employees. A willful act of malicious intent shall not be deemed to be an act of infidelity. In no event does this Policy insure loss caused by theft by the Insured or the Insured's employees;

b)    against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

c)    against ordinary wear and tear or gradual deterioration unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

d)    against inherent vice or latent defect unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

e)    against errors in processing or manufacture of the Insured's product unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

f)    against mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

g)    against nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except if a covered peril ensues, liability is specifically assumed for direct loss by such ensuing peril but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination.  This Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

h)    against hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or

19

Plaintiffs 000140

expected attack by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or by military, naval, or air forces; or by any agent of any such government, power, authority, or forces;

i) against any weapon employing atomic fission or fusion;

ii) against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

iii) against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against under this policy;

iv) against risks of contraband or illegal trade;

v) against confiscation, nationalization and expropriation;

Notwithstanding the above provisions, this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated.  Nothing in the foregoing shall be construed to include any loss, damage, or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon or war employing atomic fission or fusion whether in time of peace or war.

i) loss or damage caused directly or indirectly by the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants unless the release, discharge, dispersal, seepage, migration, or escape is caused by a peril not otherwise excluded herein.  However, if a peril not otherwise excluded herein ensues due to the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants, such ensuing loss or damage shall be covered.

j) loss or damage caused by an act of terrorism which means an act or series of acts, including the use of force or violence, of any person or group(s) or persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public or any section of the public in fear for such purposes.

k) against loss or damage caused by insect or vermin.

20

l)    against delay, loss of market loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

m)    against delay, loss of market, loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

n)    against corrosion, depletion, deterioration, erosion, wet rot, dry rot, decay, evaporation, rust, and shrinkage unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

o)    against changes of temperature or humidity, whether atmospheric or not;

p)    against settling, cracking, bulging, shrinking, or expansion of foundations; machinery pedestals, pads, or platforms; floors, pavements, walls, ceilings, or roofs; or the cumulative effects of smog, smoke, soot, vapor liquid, or dust;

q)    against lack of incoming power voice/data/internet access from offsite services except as provided in the Service Interruption Extension.

Exclusion b), c), d) and e) do not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly.

Exclusion b), c) and d) do not apply to property in transit.

29.    DEFINITIONS

a)    The term "Earthquake" as used in this policy shall mean loss or damage caused by or resulting from a series of vibrations induced in the earth's crust by the abrupt rupture and rebound of rocks in which elastic strain has been slowly accumulating (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

b)    The term "Flood" as used in this policy shall mean loss or damage caused by or resulting from waves, tide, or tidal water, and the rising (including the overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and similar bodies of water, whether wind driven or not (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

c)    The term "occurrence" is defined as follows:

Plaintiffs 000142

i)     Except as hereinafter defined, "loss occurrence" shall mean an accident or occurrence or series of accidents or occurrences arising out of one event.

ii)     ii) Each loss occurrence which involves the perils of tornado, windstorm, cyclone, hurricane, hail or flood shall include all loss or damage wherever occurring occasioned by these perils which arise out of one atmospheric disturbance during a continuous period of 168 hours.

iii)     Each loss occurrence which involves the peril of earthquake, a series of earthquakes shall include all losses or damage sustained during a continuous period of 168 hours.

iv)     Each loss occurrence which involves the peril(s) of vandalism, malicious mischief or riot/civil commotion shall include all losses or damage sustained resulting from one or more acts committed by a person acting alone or in collusion with others during a continuous period of 168 hours.

v)     The Insured shall have the right to elect the moment from which the time periods referred to in ii), iii), and iv) above shall be deemed to have commenced, however no elected period of time shall commence within any previous occurrence.

vi)     Should the time period in ii), iii), and iv) above extend beyond expiration or cancellation date of this policy and commence prior to the expiration or cancellation date, this Company shall be liable as is such period fell entirely within the term of this policy.

vii)     However, we shall not be liable hereunder for any loss or damage:

viii)     Occurring before this policy becomes effective; or

ix)     Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

d)     "Raw Stock" - Materials and supplies in the state in which the Insured receives it for conversion by the Insured into Finished Stock, including supplies consumed in such conversion or in the service rendered by the Insured.

e)     "Stock in Process" - Raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture by on behalf of the Insured but which has not become Finished Stock.

f)     "Finished Stock" - Stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

g)     "Merchandise" - Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

h)     "Normal" - The condition that would have existed had no loss occurred.

22

Plaintiffs 000143

i)       "Improvements and Betterments" - Fixtures, alterations, installations or additions comprising a part of the described building and made or acquired at the expense of the Insured, but which are not legally subject to removal by the Insured.

j)       "Valuable papers and records" - Written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents and manuscripts.

k)       "Electronic Data Processing Media" - All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles.

l)       "Securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets.

m)      "Fine Arts" - Shall include but not be limited to bona fide works of art, works of rarity, works of historical value, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, galley proofs, original records, sculptures, carvings and similar property.

n)       "Architect and Engineering Fees" - Any cost associated with the preparation of plans, supervision of and approval for the repair or replacement of damaged or destroyed property.

o)       "Tier One County" - the entire territory of the United States Virgin Islands, the entire Commonwealth of Puerto Rico, the entire State of Florida, and the following:

　　　i)       In the State of Alabama, the counties of Baldwin, Escambia, and Mobile;

　　　ii)      In the State of Connecticut, the counties of Fairfield, New Haven, and New London;

　　　iii)     In the State of Georgia, the counties of Bryan, Camden, Chatham, Glynn, Liberty, and McIntosh;

　　　iv)     In the State of Hawaii, the counties of Honolulu, Kauai, and Maui;

　　　v)      In the State of Louisiana, the counties (also known as "Parishes") of Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, Iberia, Iberville, Jefferson Davis, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John The Baptist, St. Martin, St. Mary, St. Tammany, Terrebonne, and Vermillion;

　　　vi)     In the Commonwealth of Massachusetts, the counties of Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, and Suffolk;

23

vii)    In the State of Mississippi, the counties of George, Greene, Hancock, Harrison, Jackson, Pearl River, and Stone;

viii)   In the State of New Jersey, the counties of Atlantic, Monmouth, and Ocean;

ix)    In the State of New York, the counties of Kings, Nassau, Queens, and Suffolk;

x)    In the State of North Carolina, the counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington;

xi)    In the State of Rhode Island, the counties of Newport, Providence, and Washington;

xii)   In the State of South Carolina, the counties of Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, and Williamsburg;

xiii)   In the State of Texas, the counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Gollad, Harris, Hidalgo, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, and Willacy; and

xiv)   In the Commonwealth of Virginia, the counties of Accomack, Gloucester, Isle of Wright, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, Westmoreland, and York; and the independent cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Suffolk, and Virginia Beach.

p)    "Named Storm"- A storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Depression or Tropical Storm. "Named storm" does not include "flood" resulting from a "named storm".

q)    "Time Element' – Includes coverage as described under Clause 12., 13., 14., 15., 16., 17., 18., 19. and 20. hereunder.

r)    "Unnamed Location' – A location which has not been scheduled with underwriters or the insured's representative and is not considered a Newly Acquired location.

s)    "Newly Acquired Location" – A location acquired by the insured after inception of this policy for a period of up to 90 days until reported to and agreed by underwriters.

30.    FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES - This policy covers fire brigade charges and other extinguishing expenses for which the Insured may be assessed including loss of fire extinguishing materials expended resulting from a peril insured.

Plaintiffs 000145

31.     SEVERABILITY OF INTERESTS - The inclusion herein of more than one person or organization, as Insured, shall not operate to increase the limit of the Company's liability nor the deductible amounts to be borne by the Insured. Except with respect to limits of liability and deductible amounts, the terms of this policy shall apply separately to each person or organization covered as Insured in the same manner and to the same extent as though a separate policy had been issued to each such person or organization.

32.     DEBRIS REMOVAL - This policy covers the cost of removal of debris of property covered hereunder including the cost of removal of debris of property not insured hereunder from the premises of the Insured resulting from a peril insured against. Except as otherwise provided for elsewhere in this policy, this policy does not cover the cost to extract contaminants or pollutants from land or water, nor does it cover the cost to remove, restore or replace contaminated or polluted land or water.

        If at the time insured property is contaminated as a direct result of physical damage insured against by this policy there is in force any law or ordinance regulating contamination, including but not limited to pollution, then this policy shall cover, as a result of the enforcement of such law or ordinance, the increased cost of decontamination and debris removal of such property in a manner to satisfy such law or ordinance.  As respects Time Element coverage(s), this policy is extended to include such time as is necessary and reasonable with the exercise of due diligence and dispatch to decontaminate such property in a manner to satisfy such law or ordinance.

33.     DEMOLITION AND INCREASED COST OF CONSTRUCTION - In the event of loss or damage under this policy that causes the enforcement of any law or ordinance in force at the time of loss regulating the construction, repair or use of property, this Company shall be liable for:

        a)      COVERAGE A - the loss in value of the undamaged portion of the property as a consequence of the enforcement of any law or ordinance that requires demolition of undamaged parts of the same property;
        b)      COVERAGE B – the cost to demolish and clear the site of undamaged parts of the same property;
        c)      COVERAGE C – the increased cost to repair or reconstruct damaged and undamaged property on the same or another site when the increased cost is a consequence of the enforcement of any law or ordinance.  These costs are limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  This Company shall not be liable for any increased cost of repair or reconstruction loss unless the damaged property is actually rebuilt or replaced;

**Plaintiffs 000146**

      d)     Any increase in loss including but not limited to Business Interruption, Extra Expense, Rental Value, Rental Income, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law or ordinance.

      e)     In the event real or personal property is not repaired or replaced to the same height, floor area, size, style or comparable quality of the original property insured due to the enforcement of law or ordinance regulating, restricting or prohibiting repair or replacement of covered property, this policy will pay the full replacement cost without deduction for depreciation for the real or personal property damaged or destroyed, as if the property was replaced to the same height, floor area, size, style or comparable quality of the original property insured.  This policy will also pay Time Element loss as if the original structure were repaired or replaced to original specifications, subject to the terms and conditions of these coverage(s).

34.    EXPEDITING EXPENSE - This policy covers the extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

35.    CONTRIBUTING INSURANCE - Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy.  This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

36.    EXCESS INSURANCE - Excess insurance is insurance over the limit of liability set forth in this policy.  The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

37.    UNDERLYING INSURANCE - Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire.  The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy. Should the amount of loss payable under such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then no deductible shall apply hereunder and that portion which exceeds such a deductible amount shall be considered "other insurance". Should the amount of loss payable under such underlying insurance be less than the largest deductible amount which would apply in the event of loss under this policy, then the deductible amount to be deducted hereunder shall be the difference between the amount to be paid under such underlying insurance and the largest deductible amount which would apply in the event of loss under this policy.

38.    OTHER INSURANCE - Except for insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether

Plaintiffs 000147

prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils.  This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.

39.     SUBROGATION - Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder.  The right of subrogation against the Insured, affiliated, subsidiary, and associated companies, or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived and at the option of the Insured, against a tenant or guest of the Insured.  In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.  If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests.  If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

40.     SALVAGE AND RECOVERIES - All salvages, recoveries, and payments, (excluding proceeds from subrogation and underlying insurance) recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly.  If proceeds from subrogation are recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(s) participating in the payment of any loss, in the proportion of their respective interests.

41.     CONTROL OF DAMAGED MERCHANDISE - The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods.  The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods.  The Insured, using reasonable discretion, shall be the sole judge as to whether production or EDP equipment and/or media is damaged and unusable. This insurer shall be allowed to dispose of as salvage, any non-proprietary property deemed unusable by the Insured.

27

Plaintiffs 000148

42.   BRAND OR TRADEMARK - In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carriers or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at this Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

43.   ERRORS OR OMISSIONS - Any unintentional error or omission made by the Insured in the application for insurance shall not void or impair the insurance hereunder but only to the extent this Policy would have provided coverage had the unintentional error or omission not been made provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department. This coverage does not apply if there is coverage available under any other provision in this Policy.

44.   NOTICE OF LOSS - As soon as practicable after any loss or damage occurring under this policy is known to the Insured's home office insurance department, the Insured shall report such loss or damage with full particulars to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 for transmission to the designated loss adjuster and to this Company.

45.   DESIGNATED LOSS ADJUSTER - It is understood and agreed that each and every loss will be adjusted by Jeff Hellman of McLaren Young International, 19324 40th Avenue West, Suite C, Lynnwood, WA 98036.

46.   PROOF OF LOSS - Proof of loss is required as soon as practicable following the Company's written request for signed Proof from Insured; however, Insured, at its option, may elect to file Proof with the Company prior to the Company's request.  It shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained.

47.   PARTIAL PAYMENT OF LOSS - In the event of a loss covered by this policy, it is understood and agreed that the Company shall allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

48.   PAYMENT OF LOSS - All adjusted claims shall be due and payable no later than thirty (30) days after presentation of acceptable proofs of loss by the Insured or its appointed representative.

49.   LOSS ADJUSTMENT EXPENSES - This policy is extended to include reasonable expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. These expenses include fees of professionals engaged to assist the Insured in determining the cause and origin of the loss, the amount

28

of loss sustained, and the amount of loss payable under this policy. This policy shall not cover the expenses of a public adjuster. Such expenses shall not exceed $2,000,000 in any one occurrence.

50.     APPRAISAL - If the Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser.  The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending.  Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss.  If the appraisers fail to agree, they shall submit their differences to the umpire.  An award in writing by any two shall determine the amount of loss.  The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

51.     CONSEQUENTIAL LOSS - This policy insures against consequential loss including spoilage to real and personal property as insured hereunder caused by change of temperature or humidity or by interruption of any service including but not limited to power, heat, air conditioning, or refrigeration resulting from a peril insured against.

52.     PAIR AND SET - In the event of loss or damage by a peril insured against to any article or articles which are part of a pair or set, the measure of loss or damage to such article or articles shall be the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

53.     CONSEQUENTIAL REDUCTION IN VALUE - This policy covers the reduction in value of insured components or parts of components or parts of products or the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to direct physical loss or damage insured against by this Policy to other insured components or parts of products.

54.     COINSURANCE WAIVER - This policy is not subject to any coinsurance or average clause.

55.     ALTERATIONS AND USE CLAUSE - Permission is granted to the insured to cease operations or for buildings to remain vacant or unoccupied provided fire protection, watch alarm services are maintained, and written notice is given to the Insurer prior to the sixtieth (60th) consecutive day of cessation of operations, vacancy or unoccupancy. The Insured's building is considered vacant or unoccupied when it does not contain enough covered Property to conduct customary business operations.

Plaintiffs 000150

56.     ASSISTANCE AND COOPERATION OF THE INSURED - The Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

57.     SUE AND LABOR - In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment.  This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

58.     REINSTATEMENT - With the exception of loss subject to annual aggregate limits as noted herein, no loss hereunder shall reduce the amount of this policy.

59.     SUIT AGAINST THE COMPANY - No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy.  The Company agrees that any action or proceeding against it for recovery of any loss under this policy shall not be barred if commenced within the time prescribed therefor in the statutes of Florida.

60.     CERTIFICATES OF INSURANCE - It is understood and agreed that Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 is authorized to issue certificates of insurance naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests subject always to the terms, conditions, and limits of liability of this policy. The Company agrees to waive the issuance of formal Company endorsements in respect of such interests.

61.     NOTIFICATION CLAUSE - All notices or communications concerning this policy shall be addressed to the offices of the Insured, to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 and to AmWINS Brokerage of Georgia, 3630 Peachtree Road NE, Suite 1700, Atlanta, GA 30326.  All such notices shall be sent via registered mail.

62.     CANCELLATION/NON RENEWAL - This policy may be cancelled at any time at the request of the Insured or it may be cancelled or non-renewed by the Company by mailing to the Insured written notice stating when, not less than ninety (90) days thereafter or ten (10) days in the event of non-payment of premium, such cancellation or non-renewal shall be effective. If the First Named Insured cancels, return of any unearned premium will be calculated on the

Plaintiffs 000151

customary short rate basis. If the Company cancels, return of any unearned premium will be calculated on a pro rata basis. Return of any unearned premium will be made by the Company as soon as practicable. The cancellation will be effective even if the Company has not made or offered a refund.

63.  TITLES OF PARAGRAPHS - The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

64.  MORTGAGE CLAUSE - As respects Real Property only, loss, if any, under this policy shall be payable to the mortgagee (or trustee) as its interest may appear under all present or future mortgages upon the property herein insured in which the aforesaid may have an interest as mortgagee (or trustee) in order or precedence of mortgages., and this insurance as to the interest of said mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that, in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided also, that the mortgagee (or trustee) shall, notify the Company of any changes of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and unless permitted by this policy, it shall be noted thereon and the mortgagees or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The company reserves the right to cancel this policy at any time as provided by its terms, and in such case, this policy shall continue in force for the benefit only of the mortgagee (or trustee) for an additional thirty (30) days.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgagee debt, or may at their option pay to the mortgagee (or trustee) the whole principal due or to grow on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and all of such other securities, but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

65.  JURISDICTION AND SUIT - It is hereby understood and agreed that in the event of the failure of the Insurer to pay an amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court

31

of competent jurisdiction within the United States and will comply with all requirements necessary to give such jurisdiction.  All matters arising hereunder shall be determined in accordance with the law and practice of such court. In any suit instituted against it under this, the Insurer will abide by the final decision of such court or any appellate court in the event of an appeal.

66.    POLLUTANT CLEAN UP AND REMOVAL - This policy is extended to cover the expense actually incurred by the Insured to decontaminate, clean up and/or remove pollutants from land, water or air including resultant time element loss if the release, discharge, or dispersal of the pollutants results from any loss or damage as covered herein. Such expenses shall not exceed $500,000 in any one policy year.

67.    ATTACHMENT CLAUSE – Please refer to the Participation Page.

_____
 [Authorized Signature]

Plaintiffs 000153

# Endorsement No. 1

## <u>Microorganism Exclusion – Resultant Mold</u>

This policy does not insure any loss, Damage, Time Element, claim, cost, expense or other sum directly or indirectly arising out of or relating to (regardless of whether any other cause or event contributed concurrently or in any sequence):

Fungus, mold, mildew, yeast, mushrooms, spores, toxins, mycotoxins, bacteria or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion shall not apply to any such loss, Damage, Time Element, claim, cost, or expense resulting from mold that is a direct result of an Insured Cause of Loss and is not otherwise excluded by the Policy, provided such loss, Damage, Time Element, claim, cost, or expense is reported to the Company in writing within twelve months from the expiration date of the policy. This clause is subject to a $500,000 per occurrence and in the annual aggregate sublimit.

This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part, for these matters.

All other terms and conditions remain unchanged.

Plaintiffs 000154

**COMMERCIAL PROPERTY**
**ECP 10 601 03 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AUTHORITIES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

Notwithstanding any of the preceding provisions of this Endorsement, except in respect of certain specific coverage(s) provided elsewhere in the policy to which this Endorsement is attached, this policy does not insure against fines, penalties and expenses directly attributable to such fines and penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

COMMERCIAL PROPERTY
ECP 10 603 03 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ASBESTOS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

A.  This Policy only insures asbestos physically incorporated in an insured building or structure, and then only that part of the asbestos which has been physically damaged during the policy period by one of these Listed Perils:

Fire; Smoke; Explosion; Lightning; Windstorm; Hail; Direct Impact of Vehicles, Aircraft or Vessel; Riot or Civil Commotion; Vandalism or Malicious Mischief; Leakage or Accidental Discharge of Fire Protective Equipment; Flood and Earth Movement.

This coverage is subject to all limitations in the policy to which this endorsement is attached and, in addition, to each of the following specific limitations:

1)  The said building or structure must be insured under this policy for damage by that Listed Peril.

2)  The Listed Peril must be the immediate, sole cause of the damage to the asbestos.

3)  The Assured must inspect the building or structure and report to Underwriters the existence and cost of the damage within one year after the Listed Peril first damaged the asbestos.  Any later reported damage is not insured, including all damage reported more than one year after the last day of the policy period.

4)  Insurance under this policy in respect of asbestos shall not include any sum relating to:

    (i)      faults in the asbestos or its design or workmanship;

    (ii)     asbestos not physically damaged by the Listed Peril;

    (iii)    actions taken to protect human health or property; or

    (iv)    standards or requirements set by any government or regulatory authority.

B.  Except as set forth in the foregoing Section A, this policy does not insure asbestos or any sum relating thereto.

Copyright, Everest Reinsurance Company, 2017
Includes copyrighted material of Insurance Services Office, Inc.,
used with permission

**Plaintiffs 000156**

**COMMERCIAL PROPERTY**
**ECP 10 604 03 20**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

ECP 04 619 07 19

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ABSOLUTE CYBER EXCLUSION

This endorsement modifies insurance provided under the following:

MANUSCRIPT PROPERTY COVERAGE FORM

It is understood and agreed that the following Exclusion is added to the Policy:

This policy does not insure against loss or damage caused directly or indirectly by any of the following, regardless of any other cause or event contributing concurrently or in sequence to the loss or damage:

Cyberattack, cyberwarfare, cyberterrorism or any kind of malicious activity that attempts to collect, disrupt, deny, degrade or destroy information system resources or the information itself, including loss, damage, cost or expense resulting from or caused directly or indirectly by any of the following:

   i.   Loss of, alteration of, or damage to, corruption of, or a reduction in the functionality, availability or operation of any computer, computer system, website or any other electronic data system, hardware, process, program, software , data, media, information repository, microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether your property or not;

   ii.  Any access to or disclosure of any person's or organization's confidential, personal, proprietary or other nonpublic information in any recordable form, including but not limited to costs or expenses associated with notification, remediation, mitigation or prevention of a security breach; or

   iii. Extortion threats, fraud or theft involving any computer, computer system, computer software, computer process or program, website or any other electronic data system or any confidential, personal, proprietary or other nonpublic information.

All other terms and conditions of this Policy remain unchanged.

**Plaintiffs 000158**

**COMMERCIAL PROPERTY**
**ECP 10 607 03 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ELECTRONIC DATE RECOGNITION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

This policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

a)   the calculation, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not; or

b)   any change, alteration or modification involving the date change to the year 2000, or any other date change including leap year calculations, to any such computer system, hardware program or software or any microchip, integrated circuit or similar device in computer equipment or noncomputer equipment, whether the property of the insured or not.

Clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

EIL 03 540 03 20

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

It is understood and agreed that the following Exclusion is added to the Policy:

**A.**  We will not pay for any loss, cost, damage or expense:

  **1.**  Arising out of, caused by, attributed to, or occurring concurrently or in any sequence to "communicable disease"; or

  **2.**  To clean-up, detoxify, remove, monitor or test:

    **(a)** For a "communicable disease"; or

    **(b)** Any tangible or intangible property insured under this policy that is affected by such "communicable disease".

  Any contamination of property or business interruption caused by any virus, parasite or microorganism is not direct physical loss insured under this policy. This exclusion also applies to any loss arising directly or indirectly out of fear or threat (whether actual or perceived) of any virus, bacterium or other microorganism.

**B**.  The exclusion set forth in Paragraph **A.** above applies to all coverage, coverage extension(s), additional coverage(s), and exception(s) to exclusions under all forms and endorsements that comprise this Coverage Part or Policy.

**C.**  For the purposes of this endorsement, the following Definition applies:

  "Communicable disease" means any infectious or contagious substance:

  **1.** Including, but not limited to a virus, bacterium, parasite or other microorganism or any mutation thereof whether deemed living or not, and

  **2.** Regardless of the method of transmission, whether direct or not, including, but not limited to, airborne transmission, bodily fluid transmission, transmission from or to any surface or object, solid, liquid or gas or between humans, animals, or from any animal to any human or from any human to any animal,

  that can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to tangible or intangible property insured insured under this policy.

All other terms and conditions of this Policy apply.

Copyright, Everest Reinsurance Co., 2020
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Plaintiffs 000160

COMMERCIAL PROPERTY
ECP 10 611 03 20

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION

It is understood and agreed that the following Exclusion is added to the Policy:

**1. SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION**

Notwithstanding any provisions in the policy to which this Endorsement is attached, this policy does not insure against loss, damage, costs or expenses in connection with the actual, alleged or threatened release, discharge, escape, dispersal, or seepage of "contaminants and/or pollutants", all whether direct or indirect, proximate or remote or in whole or in part caused by any cause whatsoever. Nevertheless if a fire or explosion arises directly from seepage and/or contamination and/or pollution, loss or damage insured under this policy arising directly from that peril shall (subject to the terms, conditions and limitations of the policy) be covered

The Insured shall give notice to the Company of intent to claim no later than 12 months after the date of the original physical loss or damage.

**2. POLLUTION CLEAN-UP OF LAND AND WATER**

Notwithstanding the provisions of the preceding exclusion in this Endorsement or any provision respecting seepage and/or "contaminants and/or pollutants", and/or debris removal and/or cost of clean-up in the policy to which this Endorsement is attached, this Policy also covers the reasonable and necessary cost for the cleanup, removal and disposal of "contaminants and/or pollutants" from uninsured property consisting of land and water at the Insured Location if the release, discharge or dispersal of "contaminants and/or pollutants" is a direct result of insured physical loss or damage to insured property. The maximum amount insured and payable under this Policy for Pollution Clean-Up is the sublimit stated in the Limit of Liability section.

This Policy does not cover the cost to cleanup, remove and dispose of "contaminants and/or pollutants" from such property:

**a.** at any location insured for Personal Property only.

**b.** at any property insured under AUTOMATIC COVERAGE, ERRORS AND OMISSIONS or Miscellaneous Unnamed Location coverage provided by this Policy.

**c.** when the Insured fails to give written notice of loss to the Company within 180 days after inception of the loss.

For the purposes of this endorsement, the following Definition applies:

"Contaminants and/or pollutants" means any material that after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, loss of use marketability or loss of use of property insured by this Policy, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, bacteria, fungi, virus, parasite, organism, mold, spores, vaccines, waste material, or hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act, or as designated by the U.S. Environmental Protection Agency.

 Copyright, Everest Reinsurance Company, 2020
Includes copyrighted material of Insurance Services Office, Inc.,
used with permission ☐

**Plaintiffs 000161**

**COMMERCIAL PROPERTY**
**ECP 13 002 07 18**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BUILDERS RISK EXCLUSION
## (WOOD FRAME)

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
COMMERCIAL PROPERTY MANUSCRIPT POLICY
PINNACLE PROPERTY COVERAGE FORM

In consideration of the premium charged, it is hereby understood and agreed that this policy does not provide coverage for the following:

Buildings or structures made of wood or any other combustible material that are under the course of construction or erection, including:

**(1)** Building materials, supplies, equipment, fixtures and machinery used for or incidental to construction;

**(2)** Foundations of a building or structure described in the Declarations while in the course of construction; and

**(3)** Temporary structures built or assembled on site, including cribbing, scaffolding and construction forms.

However, subject to the terms and conditions of this policy, this policy shall provide coverage for existing buildings undergoing normal maintenance, repairs or renovations which are considered to be finished property in the course of construction. For the purposes of this endorsement, an existing building is not considered to be undergoing normal maintenance, repairs or renovations when it is stripped down to its structural components and rebuilt.

**All other terms and conditions remain the same.**

 Copyright, Everest Reinsurance Co., 2018
Includes copyrighted material of Insurance Services Office,
Inc., with its permission.

**Plaintiffs 000162**

**INTERLINE**
**ECP 00 565 06 18**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

**SCHEDULE**

| Minimum Earned Premium: | 35 | % of the TOTAL PREMIUM shown on the DECLARATIONS |
|---|---|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

The following provision is added to the Cancellation Condition and replaces any provision to the contrary:

If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be pro rata, less 10%, and such refund will be subject to the minimum earned premium shown in the Schedule. The cancellation will be effective even if we have not made or offered a refund.

Copyright, Everest Reinsurance Company, 2018
Includes copyrighted material of  ISO Properties, Inc., used with its permission

**Plaintiffs 000163**

COMMERCIAL PROPERTY
ECP 12 003 11 18

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF EXAMINATION UNDER OATH PROVISION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

It is hereby understood and agreed that the Policy is amended as follows:

The provisions relating to duties of the Insured in the event of loss or damage are amended as follows:

1. Any provision relating to examination under oath is replaced by the following:

   The Company may examine the Named Insured, any other insured, the Insured's agents or representatives, and all others, under oath, while not in the presence of any other insured, agent or representative and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's book and records.  Such examination shall take place in the County where the building is located.  In the event of an examination, an insured's answers must be signed.

2. The following provisions are added:

   In the event of a direct damage loss which the Insured believes is insured herein, the Insured has the duty to:

   a. Provide the Company with the records and documents the Company requests and permit the Company to make copies;

   b. Any and all insureds must execute all authorizations for the release of information when requested by the Company;

   c. The Named Insured and any insured must submit to recorded statements when requested by the Company.

**All other terms and conditions remain the same.**

**Plaintiffs 000164**

**COMMERCIAL PROPERTY**
**ECP 10 544 09 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXISTING DAMAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

The following is Exclusion is added to the policy

**Existing Damage**

We will not pay for loss or damage caused directly or indirectly by **Existing Damage**. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence, to **Existing Damage**. This exclusion applies whether or not the loss or damage results in widespread damage or affects a substantial portion of the property.

For the purpose of this endorsement, **Existing Damage** means:

**a.** Any damage which occurred prior to the effective date of this policy regardless of whether such damage was apparent on the effective date of this policy or at a later date;

**b.** Any claims or damage arising out of workmanship, repairs and/or lack of repairs resulting from damage which occurred prior to the effective date of this policy; and

**c.** Any claims or damage unless all buildings insured under your previous policy have been fully and completely repaired. Prior to such completion of repairs, coverage will be limited to the actual cash value of the property at the time of a covered loss or damage occurring during this policy period.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**Plaintiffs 000165**

COMMERCIAL PROPERTY
ECP 13 003 09 18

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF TERRORISM – CERTIFIED AND NONCERTIFIED ACTS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY
PINNACLE PROPERTY COVERAGE FORM

**SCHEDULE**

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| FL | Property |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A.** The following Definitions are added:

**1. Certified Act Of Terrorism**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**2. Noncertified Act Of Terrorism**

"Noncertified act of terrorism" means activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence; or

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

Copyright, Everest Reinsurance Co., 2018
Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

**Plaintiffs 000166**

   **b.** When one or both of the following applies:

   **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology; and

   **c.** That are not certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.

**B.** The following Exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by any "certified act of terrorism" or "noncertified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exceptions to the exclusion in Paragraph **B.** apply only if indicated and as indicated in the Schedule of this endorsement.

**1.** If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Time Element Coverage, Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury

**2.** If a "noncertified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Time Element Coverage, Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion

COMMERCIAL PROPERTY
ECP 10 614 03 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# METHOD OF CLAIM NOTICE AND SERVICE OF SUIT CONDITIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

**AA.   METHOD OF CLAIM NOTICE**

Under all of the coverages of this policy, notice of claim or circumstances which may reasonably be expected to give rise to a claim hereunder shall be given in writing to, and at the address for the Claims Organization shown in the Declarations.  If no Claims Organization is shown in the Declarations, such notice shall be given in writing to Everest Indemnity Insurance Company, PO Box 830, Liberty Corner, NJ 07938-0830.

**BB.   SERVICE OF SUIT**

It is agreed that in the event of the Company's failure to pay any amount claimed to be due hereunder, the Company, at your request will submit to the jurisdiction of a court of competent jurisdiction within the United States.  Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.  It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Everest Indemnity Insurance Company, PO Box 830, Liberty Corner, NJ  07938-0830 or his or her representative, and that in any suit instituted against us upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, other officer specified for that purpose in the statute, or his or her successor or successors in office as the Company's true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named  Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**Plaintiffs 000168**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# FLORIDA AMENDATORY ENDORSEMENT – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL PROPERTY MANUSCRIPT POLICY
PINNACLE PROPERTY COVERAGE FORM

The following cancellation and nonrenewal provision applies and supersedes any similar provision to the contrary.

**<u>Cancellation and Nonrenewal</u>**

**I. Cancellation**

1. You may cancel this policy by providing us with an advance, written request for cancellation stating when the cancellation shall take effect; or by remitting the original policy, or by remitting a lost or retained policy release, signed by the First Named Insured or authorized representative.

2. Cancellation For Policies In Effect 90 Days Or Less

   a. If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

      i. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
      ii. 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:
         (1) A material misstatement or misrepresentation; or
         (2) A failure to comply with underwriting requirements established by the insurer.

   b. We may not cancel:

      i. On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

      ii. Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

Copyright, Everest Reinsurance Company, 2019
Includes copyrighted material of Insurance Services Office, Inc.,
used with its permission.

Plaintiffs 000169

3. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

4. Cancellation For Policies In Effect For More Than 90 Days

a. If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

i. Nonpayment of premium;

ii. The policy was obtained by a material misstatement;

iii. In the event of failure to comply, within 90 days after the effective date of coverage, with underwriting requirements established by us before the effective date of coverage;

iv. There has been a substantial change in the risk covered by the policy;

v. The cancellation is for all insureds under such policies for a given class of insureds;

vi On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

vii On the basis of a single property insurance claim which is the result of water damage, if we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

viii. The cancellation of some or all of our policies is necessary to protect the best interests of the public or policyholders and such cancellation is approved by the Florida Office of Insurance Regulation.

b. If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

i. 10 days before the effective date of cancellation if cancellation is for nonpayment of premium;

ii. 45 days before the effective date of cancellation if:

Plaintiffs 000170

(1) Cancellation is for one or more of the reasons stated in Paragraphs 4.a.ii. through 7.a.vii. above, and this policy does not cover a residential structure or its contents; or

(2) Cancellation is based on the reason stated in Paragraph 4.a.viii. above;

   iii.  120 days before the effective date of cancellation if:

(1) Cancellation is for one or more of the reasons stated in Paragraphs 4.a.ii. through 7.a.vii. above; and

(2) This policy covers a residential structure or its contents.

c . If this policy has been in effect for more than 90 days and covers a residential structure or its contents, we may not cancel this policy based on credit information available in public records.

## II. Nonrenewal

1. If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least:

   a. 45 days prior to the expiration of the policy if this policy does not cover a residential structure or its contents, or if nonrenewal is for the reason stated in Paragraph II.5.; or

   b. 120 days prior to the expiration of the policy if this policy covers a residential structure or its contents.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. We may not refuse to renew this policy:

   a. On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

   b. On the basis of filing of claims for sinkhole loss. However, we may refuse to renew this policy if:

      i. The total of such property insurance claim payments for this policy equals or exceeds the policy limits in effect on the date of loss for property damage to the covered building; or

      ii. You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based; or

   c. Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

Copyright, Everest Reinsurance Company, 2019
Includes copyrighted material of Insurance Services Office, Inc.,
used with its permission.

**Plaintiffs 000171**

4. Notwithstanding the provisions of Paragraph II.3., we may refuse to renew this policy if this policy includes Sinkhole Loss coverage. If we non-renew this policy for purposes of removing Sinkhole Loss coverage, pursuant to section 627.706, Florida Statutes, we will offer you a policy that includes catastrophic ground cover collapse coverage.

5. Notwithstanding the provisions of Paragraph II.3., we may refuse to renew this policy if nonrenewal of some or all of our policies is necessary to protect the best interests of the public or policyholders and such nonrenewal is approved by the Florida Office of Insurance Regulation.

### III. Limitations On Cancellation And Nonrenewal In The Event Of Hurricane Or Wind Loss – Residential Property

1. The following provisions apply to a policy covering a residential structure or its contents, if such property has sustained damage as a result of a hurricane or windstorm that is the subject of a declaration of emergency by the Governor and filing of an order by the Commissioner of Insurance Regulation:

   a. Except as provided in Paragraph III.1.b., we may not cancel or nonrenew the policy until at least 90 days after repairs to the residential structure or its contents have been substantially completed so that it is restored to the extent that it is insurable by another insurer writing policies in Florida. If we elect to not renew the policy, we will provide at least 100 days' notice that we intend to nonrenew 90 days after the substantial completion of repairs.

   b. We may cancel or nonrenew the policy prior to restoration of the structure or its contents for any of the following reasons:

      i. Nonpayment of premium;

      ii. Material misstatement or fraud related to the claim;

      iii. We determine that you have unreasonably caused a delay in the repair of the structure; or

      iv. We have paid the policy limits.

   If we cancel or nonrenew for nonpayment of premium, we will give you 10 days' notice. If we cancel or nonrenew for a reason listed in Paragraph b.(2), b.(3) or b.(4), we will give you 45 days' notice.

2. With respect to a policy covering a residential structure or its contents, any cancellation or nonrenewal that would otherwise take effect during the duration of a hurricane will not take effect until the end of the duration of such hurricane, unless a replacement policy has been obtained and is in effect for a claim occurring during the duration of the hurricane. We may collect premium for the period of time for which the policy period is extended.

3. With respect to Paragraph III.2., a hurricane is a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service (hereafter referred to as NHC). The hurricane occurrence begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the NHC and ends 72 hours after the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the NHC.

**Plaintiffs 000172**

ECP MAN 05 17

Everest Indemnity Insurance Company
477 Martinsville Road
P.O. Box 830 Liberty Corner, NJ 07938-0830
1-800-438-4375



# AMENDATORY ENDORSEMENT No. 2

**Named Insured: Portofino Masters Homeowners Association at Pensacola Beach, Inc.**

**Policy Number: CA3P005801-201**          **Effective Date: 04/01/2020**

In consideration of the premium charged, it is hereby understood and agreed that the following changes are made part of the policy:

Clause 5. SUBLIMIT(S) OF LIABILITY, item bb). is amended as follows:

bb). $2,500,000 per occurrence as respects Service Interruption. Property Damage and Time Element Combined (T&D Lines within premises and 1,000 ft. thereof).

Clause 10.  PROPERTY EXCLUDED, item e. is amended as follows

(e) Watercraft while afloat, aircraft, and motor vehicles licensed for highway use when not on the Insured's premises.

Clause 20.  EXTENSIONS OF TIME ELEMENT COVERAGE, is amended per the following:

(20) Extension of Time Element Coverage (b) property that directly or indirectly prevents a direct supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that prevents a direct receiver of goods and/or services from receiving the Insured's goods and/or services; such supplier or receiver shall not be an Insured under this policy. Coverage includes loss or damage to real and personal property not owned or operated by the Insured, located within 5 miles of an insured and which attracts business to the vicinity.

The following items are deleted in their entirety and excluded from this policy:

- WAIVER OF POLICY CONDITIONS
- POLICY AUTHORSHIP

**Plaintiffs 000173**

All other Terms and Conditions remain unchanged.

President

**Plaintiffs 000174**

**U.S. Terrorism Risk Insurance Act of 2002 as amended**
**Not Purchased Clause**

*This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.*

It is hereby noted that the Insurers have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

1230THB00627 0120

Plaintiffs 000175

# Property Declarations - Participating

This Declaration Page is attached to and forms part of Certificate provisions.

| Previous No. | S-1812-607776-01 | Account No. | S-1912-685259-01 |
|---|---|---|---|

| Name and address of the Insured | Portofino Master Homeowners Association, Inc. |
|---|---|
| | Ten Portofino Drive |
| | Pensacola Beach, FL 32561 |

| Policy Period | Effective From  04/01/2020      to 04/01/2021 | Both days at 12:01 a.m. standard time at the Insured's mailing address. |
|---|---|---|

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED - THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

Limits of Liability:  $1,500,000 part of $15,000,000 per occurrence

| | | Premium | TRIA |
|---|---|---|---|
| COMMERCIAL PROPERTY COVERAGE PART | | | |
| The Princeton Excess and Surplus Lines Insurance Company | 3VA3PP0000251-02 | | |

Inspection Fee

CAT Modeling Fee

**Total Advance Premium**

Minimum Earned Premium

| Dated | 07/06/2020 | By | _[signature]_ | Address | AmWINS Special Risk Underwriters, LLC |
|---|---|---|---|---|---|
| | | | Agent/Program Manager for the Company | | 4725 Piedmont Row Drive |
| | | | | | Charlotte, NC 28210 |

In the event of a claim, notify: Peninsula Insurance Bureau, 2842 Lent Road, Apopka, FL 32712; Email tpa@pibadjusters.com

## SCHEDULE OF FORMS AND ENDORSEMENTS

**FORMS APPLICABLE TO COMMON**
1230THB00627 0120 -- US Terrorism Risk Ins. - Not Purchased Clause
SRU-001 0519 - Property Declarations - Participating
SRU-074 0419 -- General Property Conditions
SRU-023 0119 -- Contract Allocation Endorsement - SRU-CA
SRU-019 0115 -- AmWINS Special Risk Underwriters Primary Co-Insuring Form
SRU-004 0710 -- CAT Minimum Earned Premium
SRU-005 0710 -- Electronic Date Recognition Exclusion EDRE
SRU-006 0710 -- Biological Or Chemical Materials Exclusion
SRU-012 0120 -- Property Cyber and Data Exclusion
SRU-031 0710 -- Additional Named Insured
SRU-072 1018 -- Coverage Territory Limitation Redefined
SRU-040 0312 -- Policy Changes 1
SRU-059 0116 -- OFAC Endorsement
PROPERTY LOSS NOTICE -- Property Loss Notice

# General Property Conditions

WITH RESPECT TO THE COVERAGE PROVIDED BY ALL UNDERWRITERS, CARRIERS AND
INSURERS OF THIS POLICY, THE FOLLOWING CLAUSES SHALL APPLY.

## A.   CLAIMS ADJUSTMENTS AND REPORTING

All claims hereunder shall be adjusted by:

> Peninsula Insurance Bureau
> 2842 Lent Road, Apopka, FL 32712
> Email Address: tpa@pibadjusters.com

And/or its assigned adjusters and the costs of such adjustments shall be borne by each Company in
proportion to its pro-rata participation in the Insured's Property Insurance Program.

In the event the Insurer elects to use its own adjusters or independent adjusters or consultants other than
as listed above, expenses so incurred shall be borne solely by the Insurer

It is further understood and agreed that, notwithstanding any provision contained elsewhere in this policy
to the contrary, the Insured will be deemed to be in full compliance with any claim notice requirements, if
notice of an occurrence If made to the Insurer(s) as soon as practicable after knowledge by the Insured or
their representatives, that such occurrence will, or is likely to result in a claim under the contract.  Any
unintentional failure to report any occurrence or claim shall not invalidate coverage with respect any such
occurrence or claim.

## B.  SEVERAL LIABILITY NOTICE

LMA5096 (Combined Certificate)
7 March 2008

The liability of an insurer under this contract is several and not joint with other insurers party to this
contract.  An insurer is liable only for the proportion of liability it has underwritten.  An insurer is not jointly
liable for the proportion of liability underwritten by any other insurer.  Nor is an insurer otherwise
responsible for any liability of any other insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by an insurer (or, in the case of a Lloyd's
syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is
shown in this contract.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is an
insurer.  Each member has underwritten a proportion of the total shown for the syndicate (that total itself
being the total of the proportions underwritten by all the members of the syndicate taken together).  The
liability of each member of the syndicate is several and not joint with other members.  A member is liable
only for that member's proportion.  A member is not jointly liable for any other member's proportion.  Nor
is any member otherwise responsible for any liability of any other insurer that may underwrite this
contract.  The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA.

SRU-074 0419

The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

## C. VARIOUS INSURERS' SERVICE OF SUIT CLAUSES

THE FOLLOWING APPLICABLE CLAUSES SHALL APPLY TO THE INDICATED INSURER(S) PROVIDED THAT INSURER IS PARTICIPATING ON THE POLICY:

### Service of Suit Clause(s)

It is agreed that in the event of the failure of the Insurer hereon to pay any amount claimed to be due hereunder, the Insurer hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of the Insurers' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon:

**Certain Underwriters at Lloyd's**

If the cause of action arises in California:

Eileen Ridley
FLWA Service Corp. c/o Foley & Lardner LLP
555 California Street, Suite 1700
San Francisco, CA 94104-1520

If the cause of action arises in any other state:

Lloyd's America, Inc.
Attention: Legal Department
280 Park Avenue, East Tower, 25th Floor
New York, NY 10017

**General Security Indemnity Company of Arizona**

One Seaport Plaza
199 Water Street
New York, NY 10038-3526
Attn: Maxine Verne, General Legal Counsel

**HDI Global Specialty SE**

Drinker, Biddle, & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, NY 10036-2714

**Western World Insurance Company**

If the cause of action arises in California:
Richard Glucksman; Chapman Glucksman
11900 West Olympic Boulevard, Suite 800
Los Angeles, CA 90064

If the cause of action arises in any other state:
Western World Insurance Group, Claims Department
300 Kimball Drive, Suite 500
Parsippany, NJ 07054

**Crum & Forster Specialty Insurance Company**

Marc Adee, President
305 Madison Avenue
Morristown, NJ 07960

SRU-074 0419

Plaintiffs 000179

**Safety Specialty Insurance Company**
Pursuant to any statute of any state, territory or District of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as the Company's true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured, arising out of this policy.

**The Princeton Excess and Surplus Lines Insurance Company**
If the cause of action arises in Illinois:
We designate the Director of the Illinois Department of Insurance and his successor or successors in office, at 320 W. Washington, Bicentennial Building, Springfield, IL 62727, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by, or on behalf of, the Insured or any beneficiary hereunder arising out of this contract of insurance.  We designate the General Counsel of The Princeton Excess and Surplus Lines Insurance Company, 555 College Road East, Princeton, New Jersey 08543 as the person to whom the said officer is authorized to mail such process or true copy thereof.

If the cause of action arises in Pennsylvania:
It is agreed that in the event we fail to pay any amount claimed to be due under this policy we will submit, at the Insured's request, to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction.  All matters arising hereunder shall be determined in accordance with the law and practice of such court.  It is further agreed that in any such action instituted against any Insured under this contract, we will abide by the final decision of such court or of any appellate court in the event of an appeal.

Service of process shall be made pursuant to the procedures provided by 42 Pa.C.S. Chapter 53 Subchapter B (relating to interstate and international procedure).  When making service of process by mail, such process shall be mailed to the General Counsel of The Princeton Excess and Surplus Lines Insurance Company, 555 College Road East, Princeton, New Jersey 08543.  The above named is authorized and directed to accept service of process on our behalf for any action or upon any request of the Insured to give a written undertaking to the Insured that they will enter a general appearance for us in the event such an action shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provisions therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as the true and lawful attorney upon whom any lawful process may be served in any action, suit or proceeding instituted by, or on behalf of, the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named as the person on whom such process or a true copy thereof shall be served.

If the cause of action arises in any other state:
We designate the Superintendent of Insurance, Insurance Commissioner, Director of Insurance, or other officer specified by law, pursuant to the laws of the State where this policy is delivered, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted in the State in which this policy is delivered, by, or on behalf of, the Named Insured or any beneficiary hereunder arising out of this Policy.  We designate the General Counsel of The Princeton Excess and Surplus Lines Insurance Company, 555 College Road East, Princeton, New Jersey 08543 as the person to whom the said officer is authorized to mail such process or true copy thereof.

and that in any suit instituted against any one of them upon this contract, the Insurer(s) will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named person(s) are authorized and directed to accept service of process on behalf of Insurer(s) in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Insurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, Insurer(s) hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named person(s) to whom the said officer is authorized to mail such process or a true copy thereof.

**D.  APPLICABLE LAW (U.S.A.)**

LMA5021
14/09/2005

This Insurance shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit Clause (U.S.A.)

**Plaintiffs 000180**

**E.  SANCTION LIMITATION AND EXCLUSION CLAUSE**

LMA3100
15/09/10

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

**F.  WAR AND TERRORISM EXCLUSION ENDORSEMENT**

NMA2918
08/10/01

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1.  war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.  any act of terrorism.

    For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Insurers allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

SRU-074 0419

**Plaintiffs 000181**

# Contract Allocation Endorsement - SRU-CA

This Insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers", and "Company".

The liability by each "Underwriter" on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each "underwriter" represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any "Underwriters" pursuant to this contract. An "Underwriter" shall not have its liability hereunder increased or decreased by reason of failure or delay of another "underwriter", its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the insured and each of the "Underwriters". This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyds combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriters at Lloyd's with any other insurance company(ies).

In Witness whereof, the following "Underwriters" execute and attest these presents, and subscribe for the amount of insurance provided.

The security is as noted below

| Layer of Participation | Attachment Point | Perils | Contract # | Company Code | Policy # Certificate # | % | Participation | Category |
|---|---|---|---|---|---|---|---|---|
| 15,000,000 | Deductibles | AOP excl. NW, EQ, FL | | Munich | 3VA3PP0000251-02 | 100.0000% | 1,500,000 | Sidecar 1 |
| 15,000,000 | Deductibles | NW | | Munich | 3VA3PP0000251-02 | 100.0000% | 1,500,000 | Sidecar 1 |
| 15,000,000 | Deductibles | EQ | | Munich | 3VA3PP0000251-02 | 100.0000% | 1,500,000 | Sidecar 1 |
| 15,000,000 | Deductibles | FL | | Munich | 3VA3PP0000251-02 | 100.0000% | 1,500,000 | Sidecar 1 |

Plaintiffs 000182

**\*If the peril of NW - CYHD applies, it is understood that both the Layer of Participation and Attachment Point in the WDBB Category are subject to erosion per terms outlined in the Calendar Year Deductible Endorsement (SRU-058). The overlying Layer of Participation which sits above the WDBB is variable as the WDBB erodes. At inception, the limit is the overlying Layer of Participation less the WDBB Layer of Participation. As the WDBB Category erodes, the overlying limit in the Layer of Participation increases commensurately. The policy limit listed in the Layer of Participation is expressed as the maximum limit.**

**Perils are further defined in the primary policy language or as per applicable forms attached to this policy. Symbols used above are defined as follows:**

**Company Codes:**
Lloyds - Certain Underwriters at Lloyd's of London
HDI - HDI Global Specialty SE
Hannover - International Insurance Company of Hannover SE
Scor - General Security Indemnity Company of Arizona
Munich - The Princeton Excess and Surplus Lines Insurance Company (PESLIC)
QBE - QBE Specialty Insurance Company, a North Dakota corporation
C&F - Crum & Forster Specialty Insurance Company
WW - Western World Insurance Company
SS - Safety Specialty Insurance Company
XL - XL Catlin Insurance Company UK LTD
Tudor - Tudor Insurance Company


**Perils:**
AOP- All Other Perils
NW - Named Wind Storm
W/H - Wind/Hail Only
SS - Storm Surge
DIC- Difference in Conditions
EQ- Earthquake Only
EM - Earth Movement Only
EQ/EQSL- Earthquake Including Earthquake Sprinkler Leakage
EM/EMSL - Earth Movement Including Earth Movement Sprinkler Leakage
FL- flood only
NW CYHD - Named Wind Storm (Calendar Year Hurricane Deductible)
EBD - Equipment Breakdown

Plaintiffs 000183

# AmWINS Special Risk Underwriters Primary Co-Insuring Form

Attached to and forming part of Account Number: S-1912-685259-01

**SCHEDULE**

1. Limit(s)

   a. Total Limit of Liability Applicable to this policy:  $1,500,000 part of $15,000,000 per occurrence except;

   b. Annual Aggregate Limits applicable to this policy:

      $ 1,500,000 for the Peril of Flood as defined in the leading insurer's policy;

      $ 1,500,000 for the Peril of Earthquake as defined in the leading insurer's policy;

   c. Additional Sublimits applicable to this policy: co-participating percentage applicable per sublimit as specified in the lead insurer's policy.

2. a. Premium applicable to this policy:

   b. Minimum Earned Premium applicable to this policy:

3. Perils Insured:

   As defined in Primary policy issued by Westchester Surplus Lines Insurance Company

   Policy Number: D38064666 004

4. The Property or Interest:

   As defined in Primary policy issued by Westchester Surplus Lines Insurance Company

   Policy Number: D38064666 004

5. The Property is located or contained at:

   As defined in Primary policy issued by Westchester Surplus Lines Insurance Company

   Policy number D38064666 004 and schedule of values on file with AmWINS Special Risk Underwriters.

6. Notification of Claims to:     Peninsula Insurance Bureau
                                   2842 Lent Road
                                   Apopka, FL 32712
                                   Email address: tpa@pibadjusters.com

**Co-Insurance Clause**

This Policy is subject to the same terms, conditions, limitations and exclusions as more fully defined in Policy Number D38064666 004 signed on behalf of  Westchester Surplus Lines Insurance Company on the identical subject matter and risk. This Policy will be subject, without notice, to the general and special conditions, endorsements, assignments and alterations of rates as are or may be assumed in the Company's policy upon which this Insurance is based.

Plaintiffs 000184

It is understood and agreed that the said Company shall, at the time of any loss, and at the same rate, cover at least their proportion stated in the Schedule (subject only to reduction by the amount of any loss not reinstated) for the same risk on the same subject matter, such proportion to be the same on each separate part thereof.

**Cancellation**

This insurance may be cancelled by the Assured at any time by written notice or by surrender of this Policy.  This insurance may also be cancelled by or on behalf of the Insurer(s) by delivering to the Assured or by mailing to the Assured, by registered, other first class mail, at the Assured's address as shown in this insurance written notice stating when, not less than 90 days thereafter, the cancellation shall be effective.  The mailing of such notice as aforesaid shall be sufficient proof of notice and this insurance shall terminate at the date and hour specified in such notice.

If this insurance shall be cancelled by the Assured, the Insurer(s) shall retain the customary short rate proportion of the premium hereon, except that if this insurance is on an adjustable basis, the Insurer(s) shall receive the earned premium hereon, or the customary short rate proportion of any minimum premium stipulated herein, whichever is the greater.

If this insurance shall be cancelled by or on behalf of the Insurer(s), the Insurer(s) shall retain the pro rata proportion of the premium hereon, except that if this insurance is on an adjustable basis the Insurer(s) shall receive the earned premium hereon, or the pro rata proportion or any minimum premium stipulated herein, whichever is the greater.

Payment or tender of unearned premium by the Insurer(s) shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

Notwithstanding anything contained in this **Cancellation** provision of the wording to the contrary, in the event of non-payment of the Premium stated in the Schedule, Insurer(s) may cancel this Insurance with written notice to the Assured stating when, not less than ten (10) days thereafter, the cancellation shall be effective.

**Plaintiffs 000185**

# CAT Minimum Earned Premium

The following additional provisions shall apply with respect to the cancellation clause of this policy:

**A.**  If this policy covers any location or locations in "Tier 1 wind zone(s)" as defined in this policy, and the policy is cancelled at the request of the Insured, the following provision will apply.

If coverage existed at any time during the period from June 1st to November 30th, the amount of premium we will return will be a percentage of the total premium, determined as follows:

1 Year Policy

| Days in Force | Percentage |
|---|---|
| 1 to 180 | 20% |
| 181 to 210 | 15% |
| 211 to 240 | 10% |
| 241 to 270 | 7.5% |
| 271 to 300 | 5.0% |
| 301 to 330 | 2.5% |
| 331 to 365 | 0.0% |

If a coverage or location is added or deleted to the policy, each type of coverage or such location(s) shall be underwritten separately and the rate will be determined based upon the characteristics of the risk.

If a location within a "Tier 1 wind zone" is added or deleted, and coverage for that location existed at any time during the period from June 1st to November 30th, the premium to be returned for that location will be determined using the table above.

If a location is not within a "Tier 1 wind zone" and is added or deleted, normal pro rata or short rate factors shall apply as appropriate.

**B.**  Tier 1 wind zone is defined as follows:

All reference herein to "Tier I", "Tier I Windstorm" or similar "Tier I" references, shall be defined as all locations situated within *Tier I States or Counties* as specified below:

| | |
|---|---|
| Alabama: | Baldwin, Mobile; |
| Florida: | Entire State of Florida; |
| Georgia: | Bryan, Camden, Chatham, Glynn, Liberty, McIntosh; |
| Hawaii: | Entire State of Hawaii; |
| Louisiana: | Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St. Mary, St. Bernard, St. Martin, St. Tammany, Terrebonne, Vermilion; |
| Mississippi: | Hancock, Harrison, Jackson; |
| North Carolina: | Beaufort, Brunswick, Camden, Carteret, Chowan, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans; Tyrrell, Washington; |
| South Carolina: | Beaufort, Berkley, Charleston, Colleton, Georgetown, Horry, Jasper; |
| Texas: | Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris, Jackson, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Orange, Refugio, San Patricio, Willacy; |
| Virginia: | Accomack, Northampton, Virginia Beach City, Chesapeake, Gloucester, Hampton City, Isle of Wright, James City, Lancaster, Mathews, Middlesex, Newport News, Norfolk City, Northumberland, Poquoson City, Portsmouth City, Suffolk City, York; |
| All other states: | As provided by endorsement hereto (if any). |

All other terms and conditions of the policy remain the same.

Plaintiffs 000186

# Electronic Date Recognition Exclusion (EDRE)

Any other similar Exclusion within this Policy (or within any other Endorsement which forms part of this Policy) is deleted and replaced by the following:

This Policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

**a.** the calculation, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, programme or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not; or

**b.** any change, alteration, or modification involving the date change to the year 2000, or any other date change, including leap year calculations, to any such computer system, hardware, programme or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not.

This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

Plaintiffs 000187

# Biological Or Chemical Materials Exclusion

Any other similar Exclusion within this Policy (or within any other Endorsement which forms part of this Policy) is deleted and replaced by the following:

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

Plaintiffs 000188

# Property Cyber and Data Exclusion

1   Notwithstanding any provision to the contrary within this Policy or any endorsement thereto this Policy excludes any:

   1.1   Cyber Loss;

   1.2   loss, damage, liability, claim, cost, expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any loss of use, reduction in functionality, repair, replacement, restoration or reproduction of any Data, including any amount pertaining to the value of such Data;

regardless of any other cause or event contributing concurrently or in any other sequence thereto.

2   In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

3   This endorsement supersedes and, if in conflict with any other wording in the Policy or any endorsement thereto having a bearing on Cyber Loss or Data, replaces that wording.

## Definitions

4   Cyber Loss means any loss, damage, liability, claim, cost or expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any Cyber Act or Cyber Incident including, but not limited to, any action taken in controlling, preventing, suppressing or remediating any Cyber Act or Cyber Incident.

5   Cyber Act means an unauthorised, malicious or criminal act or series of related unauthorised, malicious or criminal acts, regardless of time and place, or the threat or hoax thereof involving access to, processing of, use of or operation of any Computer System.

6   Cyber Incident means:

   6.1   any error or omission or series of related errors or omissions involving access to, processing of, use of or operation of any Computer System; or

   6.2   any partial or total unavailability or failure or series of related partial or total unavailability or failures to access, process, use or operate any Computer System.

7   Computer System means:

   7.1   any computer, hardware, software, communications system, electronic device (including, but not limited to, smart phone, laptop, tablet, wearable device), server, cloud or microcontroller including any similar system or any configuration of the aforementioned and including any associated input, output, data storage device, networking equipment or back up facility,

owned or operated by the Insured or any other party.

8   Data means information, facts, concepts, code or any other information of any kind that is recorded or transmitted in a form to be used, accessed, processed, transmitted or stored by a Computer System.

Plaintiffs 000189

# Additional Named Insured

| SCHEDULE |
| --- |
| Portofino Master Homeowners Association at Pensacola Beach, Inc.<br>Portofino Tower One Homeowners Association at Pensacola Beach, Inc.<br>Portofino Tower Two Homeowners Association at Pensacola Beach, Inc.<br>Portofino Tower Three Homeowners Association at Pensacola Beach, Inc.<br>Portofino Tower Four Homeowners Association at Pensacola Beach, Inc.<br>Portofino Tower Five Homeowners Association at Pensacola Beach, Inc |

In consideration of the payment of a premium and the deductible by you, we agree with you (subject to all the terms, exclusions and conditions of the policy) that the person(s) or entity(ies) shown in the Schedule above is included as a Named Insured under the policy.

Plaintiffs 000190

# COVERAGE TERRITORY LIMITATION REDEFINED

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:
**AmWINS EXCESS FORM**
**AmWINS CO-INSURING FORM**

The following additional Condition is added to the policy
to which this endorsement is attached and supersedes
any provision to the contrary.

The Coverage Territory Limitation as defined in the policy
is deleted and replaced by the following:

<u>United States, excluding US Virgin Islands, Puerto Rico, Canada, and
all foreign locations.</u>

All Other Terms and Conditions of the policy remain unchanged.

**Plaintiffs 000191**

# Policy Changes

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| POLICY NUMBER(S):<br>3VA3PP0000251-02 | POLICY CHANGES EFFECTIVE:<br>04/01/2020<br><br>POLICY CHANGE NO.<br>1 | COMPANY(S):<br>The Princeton Excess and Surplus Lines Insurance Company |
|---|---|---|
| NAMED INSURED:<br>Portofino Master Homeowners Association, Inc. | | AUTHORIZED REPRESENTATIVE: |

It is hereby agreed and understood that the following change(s) are made to this policy:

    1  Transmission and distribution lines are excluded beyond 1,000 feet of the insured's premises.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**Plaintiffs 000192**

# U.S. TREASURY DEPARTMENT'S
# OFFICE OF FOREIGN ASSETS CONTROL (OFAC)
# ADVISORY NOTICE TO POLICYHOLDERS

## PLEASE READ THIS NOTICE CAREFULLY.

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of national emergency. OFAC has identified and listed numerous foreign agents, front organizations, terrorists, terrorist organizations and narcotics traffickers as Specially Designated Nationals. This list can be located on the United States Treasury's web site: http://www.treasury.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

Plaintiffs 000193

# PROPERTY LOSS NOTICE

DATE (MM/DD/YYYY)

| AGENCY | INSURED LOCATION CODE | DATE OF LOSS AND TIME | | AM |
|---|---|---|---|---|
| | | | | PM |

**PROPERTY / HOME POLICY**

| CARRIER | NAIC CODE |
|---|---|

POLICY NUMBER

CONTACT NAME:

PHONE (A/C, No. Ext):

FAX (A/C, No):

E-MAIL ADDRESS:

CODE:     SUBCODE:

**FLOOD POLICY**

| CARRIER | NAIC CODE |
|---|---|

POLICY NUMBER

AGENCY CUSTOMER ID:

**WIND POLICY**

| CARRIER | NAIC CODE |
|---|---|

POLICY NUMBER

## INSURED

NAME OF INSURED (First, Middle, Last)      INSURED'S MAILING ADDRESS

| DATE OF BIRTH | FEIN (if applicable) | MARITAL STATUS / CIVIL UNION (if applicable) |
|---|---|---|

PRIMARY PHONE # ☐ HOME ☐ BUS ☐ CELL    SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL

PRIMARY E-MAIL ADDRESS:

SECONDARY E-MAIL ADDRESS:

NAME OF SPOUSE (First, Middle, Last) (if applicable)      SPOUSE'S MAILING ADDRESS (if applicable)

| DATE OF BIRTH | FEIN (if applicable) | MARITAL STATUS / CIVIL UNION (if applicable) |
|---|---|---|

PRIMARY PHONE # ☐ HOME ☐ BUS ☐ CELL    SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL

PRIMARY E-MAIL ADDRESS:

SECONDARY E-MAIL ADDRESS:

## CONTACT     |    CONTACT INSURED

NAME OF CONTACT (First, Middle, Last)      CONTACT'S MAILING ADDRESS

PRIMARY PHONE # ☐ HOME ☐ BUS ☐ CELL    SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL

WHEN TO CONTACT

PRIMARY E-MAIL ADDRESS:

SECONDARY E-MAIL ADDRESS:

## LOSS

LOCATION OF LOSS      POLICE OR FIRE DEPARTMENT CONTACTED

STREET:

CITY, STATE, ZIP:      REPORT NUMBER

COUNTRY:

DESCRIBE LOCATION OF LOSS IF NOT AT SPECIFIC STREET ADDRESS:

| KIND OF LOSS | ☐ FIRE    ☐ LIGHTNING    ☐ FLOOD   ☐ _____ | PROBABLE AMOUNT ENTIRE LOSS |
|---|---|---|
| | ☐ THEFT    ☐ HAIL    ☐ WIND | |

DESCRIPTION OF LOSS & DAMAGE (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

REPORTED BY      REPORTED TO

Plaintiffs 000194

AGENCY CUSTOMER ID: _____

**REMARKS**

## APPLICABLE IN ALABAMA

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

## APPLICABLE IN ALASKA

A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

## APPLICABLE IN ARIZONA

For your protection, Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

## APPLICABLE IN ARKANSAS, DELAWARE, KENTUCKY, LOUISIANA, MAINE, MICHIGAN, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH DAKOTA, PENNSYLVANIA, RHODE ISLAND, SOUTH DAKOTA, TENNESSEE, TEXAS, VIRGINIA, AND WEST VIRGINIA

Any person who knowingly and with intent to defraud any insurance company or another person, files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact, material thereto, commits a fraudulent insurance act, which is a crime, subject to criminal prosecution and [NY: substantial] civil penalties.  In LA, ME, TN, and VA, insurance benefits may also be denied.

## APPLICABLE IN CALIFORNIA

For your protection, California law requires the following to appear on this form:  Any person who knowingly presents a false or fraudulent claim for payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

## APPLICABLE IN COLORADO

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Plaintiffs 000195**

AGENCY CUSTOMER ID: _____

### APPLICABLE IN THE DISTRICT OF COLUMBIA

Warning:  It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person.  Penalties include imprisonment and/or fines.  In addition, an insurer may deny insurance benefits, if false information materially related to a claim was provided by the applicant.

### APPLICABLE IN FLORIDA

Pursuant to S. 817.234, Florida Statutes, any person who, with the intent to injure, defraud, or deceive any insurer or insured, prepares, presents, or causes to be presented a proof of loss or estimate of cost or repair of damaged property in support of a claim under an insurance policy knowing that the proof of loss or estimate of claim or repairs contains any false, incomplete, or misleading information concerning any fact or thing material to the claim commits a felony of the third degree, punishable as provided in S. 775.082, S. 775.083, or S. 775.084, Florida Statutes.

### APPLICABLE IN HAWAII

For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment, or both.

### APPLICABLE IN IDAHO

Any person who knowingly and with the intent to injure, defraud, or deceive any insurance company files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

### APPLICABLE IN INDIANA

A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

### APPLICABLE IN KANSAS

Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act.

### APPLICABLE IN MARYLAND

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### APPLICABLE IN MINNESOTA

A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

### APPLICABLE IN NEVADA

Pursuant to NRS 686A.291, any person who knowingly and willfully files a statement of claim that contains any false, incomplete or misleading information concerning a material fact is guilty of a felony.

### APPLICABLE IN NEW HAMPSHIRE

Any person who, with purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

### APPLICABLE IN OHIO

Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

### APPLICABLE IN OKLAHOMA

WARNING: Any person who knowingly and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

### APPLICABLE IN WASHINGTON

It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company.  Penalties include imprisonment, fines and denial of insurance benefits.

**Plaintiffs 000196**

## SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.



## ARCH SPECIALTY INSURANCE COMPANY
### (A Missouri Corporation)

Home Office Address:
2345 Grand Blvd.
Suite 900
Kansas City, Missouri  64108

Administrative Address:
Harborside 3
210 Hudson Street, Suite 300
Jersey City, NJ  07311-1107
Tel: (866) 413-5550

## FLORIDA COMMERCIAL PROPERTY

## DECLARATIONS

## THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT – OF – POCKET EXPENSES TO YOU.

**Policy Number:**     ESP1002326-00

**Named Insured:**     Portofino Master Homeowners Association, Inc.
**Address:**           10 Portofino Drive.
                       Gulf Breeze, FL 32561

**Policy Period:**
**From:**         April 1, 2020          **To:**     April 1, 2021
                  at 12:01 A.M., Standard Time at your mailing address shown above.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

**Commercial Property Coverage Part**                                    **PREMIUM**

                                                              **Total**

Premium Shown is payable at inception.

**LOCATIONS COVERED:**     As Per Schedule on File with the Company

**FORMS AND ENDORSEMENTS Applying to this Coverage Part and Made Part of this Policy at Time of Issue:** See attached Schedule of Forms and Endorsements

**ISSUE DATE:**     May 28, 2020

**Surplus Lines Agent Name:**          Michael Christian

06 EXP0001 10 08 16

**Plaintiffs 000197**

**Surplus Lines Agent Address:**     3630 Peachtree Rd NE, #1700
Atlanta, GA 30326 US

**Surplus Lines Agent License:**     A046973
**Surplus Lines State Taxes were filed:**     FL

Arch Specialty Insurance Company is licensed in the state of Missouri only.

## SCHEDULE OF FORMS AND ENDORSEMENTS

| NAMED INSURED: | Portofino Master Homeowners Association, Inc. | TERM: April 1, 2020 to April 1, 2021 |
|---|---|---|
| POLICY NUMBER: | ESP1002326-00 | |

| END. NO. | FORM NO. | TITLE |
|---|---|---|
| | 06 ML0002 00 12 14 | SIGNATURE PAGE (ARCH SPECIALTY) |
| 1 | 00 EXP0214 00 08 18 | MINIMUM EARNED PREMIUM CLAUSE – PERCENTAGE (WINDSTORM AND HAIL COVERAGE PERCENTAGE) |
| | 00 EXP0091 00 11 03 | COMMON POLICY CONDITIONS |
| 2 | 00 ML0003 00 04 12 | SERVICE OF SUIT |
| | 06 CP0002 00 03 08 | CLAIMS HANDLING PROCEDURES (Arch Specialty Ins. Co.) |
| 3 | 00 EXP0125 00 06 06 | TOTAL TERRORISM EXCLUSION |
| 4 | 00 EXP0078 00 01 16 | OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT |
| 5 | 00 EXP0199 00 01 16 | AMENDMENT OF OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT DELETE 2.b. |
| | 00 ML0065 00 06 07 | U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") |
| 6 | 00 EXP0189 00 02 15 | ASBESTOS MATERIAL REMOVAL LIMITATION |
| 7 | 00 EXP0192 00 03 15 | EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA |
| 8 | 00 EXP0132 00 11 14 | PRE-EXISTING DAMAGE EXCLUSION |
| 9 | 00 PRP0042 00 06 15 | POLLUTION AND CONTAMINATION EXCLUSION ENDORSEMENT |
| 10 | 00 EXP0134 00 06 14 | AMENDATORY ENDORSEMENT |
| | | BROKER MANUSCRIPT FORM |

Plaintiffs 000199



**Signature Page**

IN WITNESS WHEREOF, Arch Specialty Insurance Company has caused this policy to be executed and attested.

_____

John Mentz

President

_____

Patrick K. Nails

Secretary

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MINIMUM EARNED PREMIUM CLAUSE – PERCENTAGE
(WINDSTORM AND HAIL COVERAGE PERCENTAGE)**

This endorsement modifies insurance provided under this policy.

It is agreed that in the event of cancellation of this policy by you, a minimum premium of            of the original policy premium shall become earned, however                of the Windstorm and Hail portion of the policy premium being                  shall be earned for those locations that Windstorm and Hail coverage existed any time during the period of June 1 to November 30; any conditions of the policy to the contrary notwithstanding.  In the event you cancel prior to the June 1 to November 30 time period, the Windstorm and Hail portion of the policy premium, if any, will be subject to the same percentage of the original policy premium.

Your failure to make timely payment of premium shall be considered a request by you for us to cancel.  In the event of such cancellation by us for non-payment of premium, the minimum premium of           for non-payment outside the period of June 1 to November 30 and                 for any cancellation based on non-payment within the period of June 1 to November 30 shall be due and payable; provided, however, such non-payment cancellation shall be rescinded if you remit the full premium due within ten (10) days of receiving the policy cancellation.

In the event of any other cancellation by us, the earned premium shall be computed pro rata, not subject to the minimum premium.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 1

Policy Number: ESP1002326-00

Named Insured: Portofino Master Homeowners Association, Inc.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: April 1, 2020

**Plaintiffs 000201**

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A.    Cancellation**

    **1.**    The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    **2.**    We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        **a.**    10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        **b.**    90 days before the effective date of cancellation if we cancel for any other reason.

    **3.**    We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    **4.**    Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

    **5.**    If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

    **6.**    If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.    Changes**

This policy contains all the agreements between you and us concerning the insurance afforded.  The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.  This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C.    Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D.    Inspections And Surveys**

    **1.**    We have the right to:

        **a.**    Make inspections and surveys at any time;

        **b.**    Give you reports on the conditions we find; and

        **c.**    Recommend changes.

    **2.**    We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of

**Plaintiffs 000202**

any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    **a.**    Are safe or healthful; or

    **b.**    Comply with laws, regulations, codes or standards.

    **3.**    Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

    **4.**    Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E.**    **Premiums**

The first Named Insured shown in the Declarations:

    **1.**    Is responsible for the payment of all premiums; and

    **2.**    Will be the payee for any return premiums we pay.

**F.**    **Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative.  Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**Plaintiffs 000203**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SERVICE OF SUIT**

It is agreed that:

1.    In the event of the failure of the **Insurer** to pay any amount claimed to be due hereunder, the **Insurer**, at the request of the **Insured**, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction.  All matters arising under this Policy shall be determined in accordance with the law and practice of such Court, provided that nothing shall prohibit the **Insurer** from removing any action, suit or proceeding to a United States District Court.  The **Insurer** shall abide by the final decision of such court or any appellate court in the event of an appeal.

2.    Service of process in the above described action, suit or proceeding may be made upon: General Counsel, Arch Specialty Insurance Company, Harborside 3 210 Hudson Street, Suite 300 Jersey City, NJ 07311-1107.  Upon the request of the **Insured**, such General Counsel shall give a written undertaking to enter an appearance on behalf of the **Insurer** in the event that such an action, suit or proceeding shall be instituted.

3.    Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the **Insurer** hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified in such statute as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted against the **Insurer** upon this Policy.  The Superintendent, Commissioner or Director of Insurance or other officer is hereby authorized and directed to accept service of process on behalf of the **Insurer** in any such action, suit or proceeding and to mail a copy of such process to the above mentioned General Counsel.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 2

Policy Number: ESP1002326-00

Named Insured: Portofino Master Homeowners Association, Inc.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: April 1, 2020

**Plaintiffs 000204**

## CLAIMS HANDLING PROCEDURES

An important value of your insurance coverage is the ability of the insurance company to respond when you have a claim.  Arch Specialty Insurance Company is committed to providing its insureds with effective claim services.

Notices of each incident, claim or suit must be sent immediately to:

Arch Specialty Insurance Company
PROPERTY Claims
1299 Farnam Street, Suite 500
Omaha, NE  68102
P.O. Box 542033
Omaha, NE  68154
Phone:  877 688-ARCH (2724)
Fax:  866 266-3630
Email:  Claims@ArchInsurance.com

You will be contacted by a representative of the company's Claim Department.  This representative will confirm receipt of the loss notice directly to you, provide a company claim number for all future correspondence, refer to an adjuster if necessary, and discuss further handling of the claim.

**Plaintiffs 000205**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**TOTAL TERRORISM EXCLUSION**

This endorsement modifies insurance provided under the Policy.

A.    The following definition is added and applies under this endorsement whenever the term terrorism, is enclosed in quotation marks:

"Terrorism" means activities against persons, organizations or property of any nature:

1.    that involve the following or preparation for the following:

a.    use or threat of force or violence; or

b.    commission or threat of a dangerous act; or

c.    commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2.    When:

a.    the effect is to intimidate or coerce a government or a civilian population or any segment thereof, or to disrupt any segment of the economy; and/or

b.    it appears that the intent is to intimidate or coerce a government or a civilian population, or to further a philosophical, political, ideological, religious, social or economic objective or to express (or express opposition to) a philosophical, political, ideological, religious, social or economic objective.

B.    The following exclusion is added:

**EXCLUSION OF TERRORISM**

We (the Company) will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such loss or damage.

This exclusion also applies when one or more of the following are attributed to an incident of "terrorism":

1.    The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2.    Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3.    The "terrorism" involves the use, release, or escape of nuclear materials, or that directly or indirectly results in nuclear reaction, nuclear radiation or radioactive contamination; or

4.    The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

00 EXP0125 00 06 06

**Plaintiffs 000206**

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

**C.     Application Of Other Exclusions**

**1.** When the EXCLUSION OF TERRORISM applies in accordance with the terms of **B.1., B.2.** or **B.3.**, such exclusion applies without regard to the Nuclear Hazard Exclusion in this Coverage Form, Coverage Part or Policy.

**2.** The EXCLUSION OF TERRORISM contained in this Endorsement replaces any terrorism exclusion contained in this Coverage Form, Coverage Part or Policy.

**3.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this Coverage Form, Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion, War Exclusion, or the War And Military Action Exclusion.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 3

Policy Number: ESP1002326-00

Named Insured: Portofino Master Homeowners Association, Inc.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: April 1, 2020

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT**

This endorsement modifies insurance provided under this policy.

It is agreed that the following special terms and conditions apply to this policy:

1.   The DEFINITIONS Section of the policy and any forms or endorsements attached thereto are amended by the addition of the following Definition:

"Occurrence" shall mean any one loss, disaster, casualty or series of losses, disasters or casualties, arising out of one event.  The duration and extent of any one loss, disaster, casualty or series of losses, disasters or casualties will be limited to all losses or series of losses occurring during any period of 168 consecutive hours arising out of, and directly occasioned by, the same event.

When the term applies to loss or series of losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion, and vandalism and malicious mischief, one event shall be construed to be all losses arising during a continuous period of 72 hours.  When filing proof of loss, you may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than when the first loss occurs to any Covered Property.

2.   The premium for this policy is based upon the Statement of Values on file with us, or attached to this policy. In the event of loss hereunder, our liability, subject to the terms of paragraph **3.** below, shall be limited to the least of the following:

   a.   The actual adjusted amount of loss, less applicable deductible(s).

   b.   100% of the individually stated value for each scheduled item of interest insured, as shown on the latest Statement of Values on file with us, or attached to this policy, after applying the deductible(s).

   c.   The Limit of Liability or Amount of Insurance shown on the Declarations Page or endorsed onto this policy.

3.   The Limit of Liability or Amount of Insurance shown on the Declarations Page of this policy, or endorsed onto this policy, is the total limit of our liability applicable to each "occurrence". Notwithstanding any other terms and conditions of this policy, in no event shall our liability exceed this limit or amount, irrespective of the number of locations involved.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 4

Policy Number: ESP1002326-00

Named Insured: Portofino Master Homeowners Association, Inc.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: April 1, 2020

**Plaintiffs 000208**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDMENT OF OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT**

This endorsement modifies insurance provided under this policy.

It is agreed that the OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT is modified as follows:

1.  Paragraph 2.b. is deleted in its entirety.

2.  Paragraph 2.c. is amended to read 2.b.


All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 5

Policy Number: ESP1002326-00

Named Insured: Portofino Master Homeowners Association, Inc.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: April 1, 2020

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN
## ASSETS CONTROL ("OFAC")
## ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully**.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;

- Front organizations;

- Terrorists;

- Terrorist organizations; and

- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

**Plaintiffs 000210**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ASBESTOS MATERIAL REMOVAL LIMITATION**

This endorsement modifies insurance provided under this policy.

It is agreed that:

**ASBESTOS MATERIAL REMOVAL LIMITATION**

This policy excludes any loss, damage or expense to remove or replace asbestos materials unless such materials are themselves damaged by a Covered Cause of Loss.

Notwithstanding that competent Government Authority may declare all or parts of the insured premises unfit for occupancy without removal or modifications to asbestos materials, our liability is limited to the proportion represented by the cost to repair the damaged part of the premises, not the entire property.

Similarly, if the policy provides any coverage for business income, extra expense, loss of rents or rental value or other loss of use or occupancy, such coverage shall be limited to the time necessary to repair or replace only the damaged portion(s) of the premises.

Nothing in this Endorsement shall override any radioactive contamination exclusion clause in the Policy to which this Endorsement is attached.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 6

Policy Number: ESP1002326-00

Named Insured: Portofino Master Homeowners Association, Inc.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: April 1, 2020

**Plaintiffs 000211**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA**

This endorsement modifies insurance provided under this policy.

It is agreed that:

**EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA**

**1.**  The exclusion set forth in Paragraph **2.** applies to all coverages under all forms and endorsements that comprise this policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**2.**  We will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease.  However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot.  Such loss or damage is addressed in a separate exclusion in this policy.

**3.**  With respect to any loss or damage subject to the exclusion in Paragraph **2.**, such exclusion supersedes any exclusion relating to "pollutants".

**4.**  The following provisions in this policy are hereby amended to remove reference to bacteria:

   **(a)**  EXCLUSION – "Fungus", Wet Rot, Dry Rot And Bacteria;

   **(b)**  ADDITIONAL COVERAGE – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, Including any endorsement increasing the scope or amount of coverage.

The terms of the exclusion in Paragraph **2.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this policy.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 7

Policy Number: ESP1002326-00

Named Insured: Portofino Master Homeowners Association, Inc.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: April 1, 2020

**Plaintiffs 000212**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**PRE-EXISTING DAMAGE EXCLUSION**

This endorsement modifies insurance provided under this policy.

It is agreed that this policy does not cover any loss or damage directly or indirectly caused by, resulting from or contributed to by any pre-existing property damage.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 8

Policy Number: ESP1002326-00

Named Insured: Portofino Master Homeowners Association, Inc.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: April 1, 2020

**Plaintiffs 000213**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**POLLUTION AND CONTAMINATION EXCLUSION ENDORSEMENT**

Notwithstanding any other provisions to the contrary in the policy to which this endorsement is attached, it is agreed that:

This policy does not cover any loss, damage, cost or expense caused by, resulting from, contributed to or made worse by actual, suspected, alleged or threatened presence, discharge, dispersal, seepage, migrations, introduction, release or escape of "Pollutants or Contaminants", all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this policy, except as specifically referenced below.

Nevertheless, if a fire or explosion arises directly or indirectly from "Pollutants or Contaminants", any loss or damage insured under this policy arising directly from the fire or explosion is insured, subject to the provisions of this policy.

"Pollutants or Contaminants" means any material, whether solid, liquid, gaseous or otherwise, which can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder. "Pollutants or Contaminants" include, but are not limited to, foreign substances, impurities, hazardous materials, poisons, toxins, pathogens or pathogenic organisms, bacteria, virus, and any disease causing or illness causing agents.

However, this exclusion shall not apply to loss or damage directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, vehicle impact, windstorm, hail, vandalism or accidental discharge from automatic fire protective systems.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 9

Policy Number: ESP1002326-00

Named Insured: Portofino Master Homeowners Association, Inc.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: April 1, 2020

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDATORY ENDORSEMENT**

It is agreed that:

The Broker Manuscript Form is amended as follows:

Arch will not adhere to the Clause 31 Liberalization.

Clause 56 -Arch will not allow joint loss with the Terrorism carrier.

As Boiler & Machinery is included in the program, Arch considers the entire clause deleted.

Arch excludes pollution, however, we will recognize the program sub-limit as eroding our attachment.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 10

Policy Number: ESP1002326-00

Named Insured: Portofino Master Homeowners Association, Inc.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: April 1, 2020

# PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies) , do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy.

Provided that:

1.     The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2.     The liability of each of the Insurers shall not exceed the Participation Limit set against its name.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurer | Policy Number | Participation | Authorized Signature |
|---|---|---|---|
| Westchester Surplus Lines Insurance Company | D38064666 004 | $5,000,000 part of $15,000,000 Primary | |
| Endurance American Specialty Insurance Company | ESP30000298003 | $5,500,000 part of $15,000,000 Primary | |
| Everest Indemnity Company | CA3P005801201 | $3,000,000 part of $15,000,000 Primary | |
| Princeton Excess Surplus Lines Insurance Company | 3VA3PP0000251-02 | $1,500,000 part of $15,000,000 Primary | |
| Arch Specialty Insurance Company | ESP1002326-00 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Axis Surplus Insurance Company | EAF645360-20 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Colony Insurance Company | XP190091-1 | $6,250,000 part of $25,000,000 excess of $25,000,000 | |
| Evanston Insurance Company | MKLV11XP007995 | $7,500,000 part of $25,000,000 excess of $25,000,000 | |
| Aspen Specialty Insurance Company | PX005LG20 | $5,000,000 part of $25,000,000 excess of $25,000,000 | |

1

Plaintiffs 000216

| | | | |
|---|---|---|---|
| Independent Specialty Insurance Company | VUX-CN-0000328-04 | $8,689,317 part of $217,232,927 excess of $25,000,000 | |
| Interstate Fire & Casualty Company | VRX-CN-0000328-04 | $28,240,281 part of $217,232,927 excess of $25,000,000 | |
| Lloyd's of London | VPC-CN-0000328-04 | $17,378,634 part of $217,232,927 excess of $25,000,000 | |
| James River Insurance Company | 00090459-1 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Maxum Indemnity Company | MSP-6012522-11 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Landmark American Insurance Company | LHD912400 | $48,058,232 part of $192,232,927 excess of $50,000,000 | |
| Homeland Insurance Company of New York | 795012091 | $50,000,000 part of $100,000,000 excess of $200,000,000 | |
| Everest Indemnity Company | CA3X001322201 | $21,116,464 part of $42,232,927 excess of $200,000,000 | |

2

**MASTER PROPERTY POLICY**

1.　　NAMED INSURED – "Named Insured" means **Portofino Master Homeowners Association at Pensacola Beach, Inc.; Portofino Tower One Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Two Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Three Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Four Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Five Homeowners Association at Pensacola Beach, Inc.** means the First Named Insured and any entity in which the First Named Insured owns an interest of more than 50 percent, during the Policy Period, controls during the Policy Period, or has the responsibility of placing the insurance provided by this Policy during the Policy Period. No entity is covered under this Policy unless the Company has received identifying information for such entity during the application or submission process, except if such entity is covered under miscellaneous unnamed insured locations or newly acquired property, or if such entity is added by endorsement.

　　Notwithstanding any provision to the contrary in this Policy, if other valid and collectible insurance is available to any entity covered by this Policy solely because of the ownership, control, or responsibility to purchase insurance by the First Named Insured, this insurance will be excess with regard to such other insurance whether contingent, primary, excess or any other basis.

2.　　TERM OF INSURANCE In consideration of a $ annual premium, this policy attaches and covers for a period of one year from April 1, 2020 to April 1, 2021, beginning and ending at 12:01 A.M. standard time, at the location of the property involved.

3.　　PARTICIPATION – Please refer to the Participation Page.

4.　　LIMIT OF LIABILITY - This Company shall not be liable for more than its proportion of $242,232,927 for any one occurrence.

5.　　SUBLIMIT(S) OF LIABILITY) - This Company shall not be liable for more than its proportion of the following sublimits.  Sublimits are part of and not in addition to the overall Limit of Liability and apply on a per occurrence basis unless otherwise noted:

　　a)　　$15,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Flood.
　　b)　　$25,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Earthquake.
　　c)　　$1,000,000 per occurrence as respects Accounts Receivable
　　d)　　$500,000 per occurrence as respects Arson Reward

3

**Plaintiffs 000218**

e) $1,000,000 per occurrence as respects Contingent Time Element, Attraction Properties are excluded

f) $1,000,000 per occurrence as respects Consequential Loss

g) $10,000,000 per occurrence as respects Course of Construction Including Soft Costs

h) Included per occurrence as respects Demolition and Increased Cost of Construction Coverage A

i) $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage B

j) $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage C

k) $1,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage D

l) $10,000,000 per occurrence as respects Debris Removal

m) $10,000,000 per occurrence as respects Errors and Omissions

n) 25% of the Adjusted Loss Maximum, $10,000,000 per occurrence as respects Extra Expense

o) $5,000,000 per occurrence as respects Expediting Expense

p) 200,000,000 per occurrence as respects Equipment Breakdown

q) $1,000,000 per occurrence as respects Contract Penalty

r) $1,000,000 per occurrence as respects Fire Brigade Charges and Extinguishing Expenses

s) $50,000 per occurrence as respects Inland Transit

t) The lesser of 30 days of $2,500,000 per occurrence as respects Ingress/Egress

u) $5,000,000 per occurrence as respects Miscellaneous Unnamed Locations

v) $5,000,000 per occurrence as respects Newly Acquired Property (90 days; if not reported within 90 days the coverage ceases)

w) $1,000,000 per occurrence as respects Leasehold Interest

x) $500,000 per occurrence as respects Lost Master/Key Card

y) $5,000,000 per occurrence as respects Rental Value/Rental Income

z) Excluded per occurrence as respects Research and Development

aa) $1,000,000 per occurrence as respects Royalties

bb) $2,500,000 per occurrence as respects Service Interruption.  Property Damage and Time Element Combined.

cc) $1,000,000 per occurrence as respects Valuable Papers and Records

dd) The lesser of 30 days of $2,500,000 per occurrence as respects Civil or Military Authority

ee) $3,000,000 per occurrence as respects Landscaping, subject to a $25,000 maximum per item

ff) $1,000,000 per occurrence as respects Fine Arts, subject to a $25,000 maximum per item

The amount of loss from any one occurrence for which this policy is excess, shall be determined by the combined loss, damage or expense as insured under the primary policy.  In the event of loss or damage involving more than one coverage or peril, The Limits of Liability of the underlying policies shall first

4

apply to the coverage(s) or peril(s) not insured by this policy, and the remainder, if any to the coverages(s) or peril(s) as provided hereunder. Upon erosion or exhaustion of the Limits of Liability of the underlying policies, this policy shall then be liable for the loss uncollected from the coverage(s) or perils(s) insured hereunder, subject to the Limit of Liability specified herein.  In the event of reduction or exhaustion of the aggregate limit(s) designated in the underlying policy(ies), it is hereby understood and agreed that such insurance as is afforded by this policy shall apply in excess of the reduced or exhausted underlying limit(s).  The insured maintains the right to allocate and/or apply coverages, interests and/or perils, as insured in the primary and/or excess policies.

6.    DEDUCTIBLE CLAUSE - The Company will adjust all losses, damages or expenses arising out of any one occurrence as one loss. The Company will deduct the following from such loss:

**$50,000** per occurrence for all perils including earthquake sprinkler leakage, and the backup of sewers and drains, except:

WAITING PERIOD:

With respect to all Time Element coverages, coverage is provided by this policy only if the period of interruption of the Insured's business exceeds 24 hours. Then Time Element coverage will apply excess of the appropriate policy deductible.

EARTHQUAKE:

As respects loss or damage to property resulting from the peril of Earthquake, all loss, damage or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deductible the sum of $50,000.  This deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

FLOOD:

As respects loss or damage to property resulting from the peril of Flood, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100 year flooding, as defined by the Federal Emergency Management Agency, all loss arising out of any one occurrence shall be adjusted as one loss and from the loss shall be deducted the maximum amount recoverable under the National Flood Insurance Program for the Real or Personal Property at each Building, whether or not such coverage is purchased or maintained.

In addition, the following Deductible will apply to property not eligible and coverages not available under the National Flood Insurance Program that are covered under this Policy and any difference in valuation between policies: $100,000 per Occurrence.

The determination of whether a property is in whole or in part subject to the 100 Year Flood Zone shall be at the inception of the policy and not at the time of loss.

Plaintiffs 000220

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

NAMED STORM:

With respect to loss or damage to property in Tier 1 Counties resulting from the period of Named Windstorm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm), the deductible shall be 2% of such unit of insurance at each location in accordance with policy valuation at the time of loss.  A minimum $100,000 each occurrence shall apply.

With respect to any other named storm loss or damage, the deductible shall be **$50,000** any one occurrence.

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

ALL OTHER WIND and HAIL:
As respects loss or damage to property resulting from the peril of All Other Wind, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

**$50,000**

Definition of 'Unit of Insurance':
  a)  Each separate building or structure
  b)  Contents in each separate building or structure
  c)  Property in the yard of each separate building or structure
  d)  Annual Business Interruption value applying to each separate building or structure.
  e)  Each Other Property item as listed in the Statement of Values.  If values are not listed separately, the value is included in the building value.

Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence. If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the insured shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s), notwithstanding the above reference to two or more deductibles.

The deductible amounts specified above shall not apply to general average contributions and salvage charges.

7.  LOSS PAYABLE - Loss, if any, shall be adjusted with and payable to the Insured, or as directed by them.

Plaintiffs 000221

8.　　　TERRITORY - This policy covers anywhere in the United States of America and its territories and possessions including coastal and inland waterways and while in due course of transit therein or thereto.

9.　　　PROPERTY COVERED - Except as hereinafter excluded, this policy covers the interest of the Insured in all real and personal property owned, used, leased or intended for use by the Insured or in which the Insured may have an insurable interest, or for which the Insured may be responsible for the insurance, or real or personal property hereafter constructed, erected, installed, or acquired including while in course of construction, erection, installation, and assembly including Improvements and Betterments. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.  This policy is extended to include:

    a)　　The interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by written contract for such property, including the cost to defend any allegations of liability for loss or damage to such property.

    b)　　At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured.

    c)　　Contractors' and/or subcontractors' (of any tier) and/or vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract.

10.　　PROPERTY EXCLUDED - This policy does not cover loss or damage to:

    a)　　Money and securities;

    b)　　Land, land values, except as insured under the "Pollutant Cleanup of Land and Water" clause.  This exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements if land improvements have been scheduled on the Schedule of Values on file with the company.  Land improvements as described hereunder include, but are not limited to any alteration to the natural condition of the land by grading, landscaping, excavation, earthen dikes or dams, as well as additions to land such as pavements, roadways or similar works;

    c)　　Water; except water which is normally contained within any type of tank, piping system or other process equipment;

    d)　　Growing crops, standing timber, and live animals;

    e)　　Watercraft; aircraft and motor vehicles licensed for highway use;

    f)　　Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

    g)　　Underground mines or mine shafts or any property within such mine or shaft;

Plaintiffs 000222

h)   Offshore property; unless reported on the Schedule of Values on file with the company.

i)   Transmission and Distribution Lines beyond 1,000 feet of Insured Premises;

j)   currency; evidence of debt; notes

k)   Turbines and satellites;

l)   docks, piers, and wharves; bridges, roadways, streets, walks or any other paved surfaces; dams or dikes; railroad rolling stock; off-shore drilling rigs or platforms; underground mines, wells, caverns including property contained therein unless reported on the Schedule of Values on file with the company.

11.   PROPERTY VALUATION - The basis of loss adjustment shall be as follows:

a)   Valuable Papers & Records/Electronic Data Processing Media : the cost to repair or replace the property with other of like kind and quality including the cost of labor, service or supplies consumed in reconstructing, reproducing, recreating, transcribing or copying information; or, if not so replaced, the value blank.

b)   Raw materials and supplies:  the replacement cost new.

c)   Stock in process:  The value of raw materials plus labor expended plus the proper proportion of overhead charges.

d)   Finished stock and other merchandise for sale:  The regular cash selling price less all discounts and charges to which such property would have been subject had no loss occurred.

e)   Real and personal property of others for which the Insured is liable:  A valuation consistent with the liability of the Insured but only to the extent that such money is necessarily expended by the Insured.

f)   Electronic data processing equipment, production machinery & equipment:  The cost to repair or replace new with like kind and quality. In addition, the Insured may elect to replace such equipment with equipment having technological advances and/or representing an improvement in function and/or forming part of a program of system enhancement and/or more consistent with the Insured's technology strategy (without any reduction or offset for betterment) provided that such replacement can be accomplished without increasing the Insurer's liability.

g)   Fine arts, at original cost to the Insured, per schedule, latest appraised value or current market value, all at the Insured's option.

h)   Other property not otherwise provided for; at replacement cost new without deduction for depreciation.  If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:

8

Plaintiffs 000223

    i)      The repairs, replacement or reinstatement must be executed with due diligence and dispatch.

    ii)     This Company's liability for loss or damage on a replacement cost basis shall not exceed the lesser of the replacement cost new of the property or any part thereof identical with such property intended for the same occupancy and use, including normal and customary profit and overhead even if the work is performed by the Insured; or the amount actually and necessarily expended in repairing or replacing said property or any part thereof including normal and customary profit and overhead even if the work is performed by the Insured.

12.    BUSINESS INTERRUPTION - This policy shall cover the loss resulting from necessary interruption of business conducted by the Insured including all interdependent loss of earnings between or among companies owned or operated by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

    a)     In the event of such loss, damage or destruction this Company shall be liable for the ACTUAL LOSS SUSTAINED by the insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business. Due consideration shall be given to the continuation of normal charges and expenses including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately before the loss. For the purposes of this insurance, "Gross Earnings" are defined as the sum of:

    i)      Net sales value of production from manufacturing operations, and net sales from Merchandising or Non-Manufacturing operations; and

    ii)     Other earnings derived from operations of the business,

           LESS THE COST OF:

    iii)    Raw Stock from which such production is derived;

    iv)    Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the services(s) sold by the Insured;

    v)     Merchandise sold, including packaging materials therefor; and

    vi)    Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

9

b)      In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the period of restoration, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including ordinary payroll, directly attributable to such research and development activities.

c)      Resumption of Operations: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business:

      i)      by a complete or partial resumption of operation at a location owned by the same entity suffering the loss, whether damaged or not; or

      ii)      by making use of available stock, merchandise, or other property;

such reduction shall be taken into account in arriving at the amount of loss hereunder.

d)      EXPERIENCE OF THE BUSINESS - In determining the amount of gross earnings, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

e)      As respects coverage provided under the Gross Earnings clause of this policy, the insurer shall not be liable for any loss resulting from loss or damage to finished stock nor for the time required to reproduce said finished stock.

13.      Extra Expense - This policy shall cover the necessary extra expense, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

a)      The term "Extra Expense" wherever used in this Policy, is defined as the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally have been incurred to conduct the business during the same period had no loss or damage occurred.

Plaintiffs 000225

     b)     In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities, this policy shall cover the actual loss sustained of the extra expenses as defined herein directly attributable to the interruption of such research and development activities.

     c)     As soon as practicable the Insured shall resume normal operations of the business and shall dispense with such extra expense.

14.     This policy is extended to cover expenses as are necessarily incurred for the purpose of reducing any loss under this policy; however, such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

15.     SOFT COSTS - This policy shall cover soft costs, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to property under construction as covered herein.

     a)     The term "Soft Costs" shall include:

         i)     Additional interest costs on money used to finance construction or repair;
         ii)     Additional real estate and property taxes incurred for the period of time that construction extends beyond the projected completion date;
         iii)     Additional legal and accounting fees; and
         iv)     Additional advertising and promotional expenses which become necessary as a result of an insured loss.

     b)     This company shall pay soft costs incurred from the date that the building, structure or improvement would have been completed had no physical damage occurred until such time that it is completed.  As soon as practicable after any loss, the Insured shall utilize every available means to reduce the amount of loss including:

         i)     partial or complete resumption of construction, business or operations;
         ii)     making use of materials, equipment, supplies, or other property at the Insured's premises or elsewhere; or
         iii)     making use of substitute facilities or services where practical;

     such reduction will be taken into account in arriving at the amount of such loss.

16.     Rental Value/Rental Income - This policy shall cover the actual loss sustained by the Insured resulting directly from the necessary untenability caused by direct

Plaintiffs 000226

physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as covered herein.  Loss settlement shall not exceed the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenability.

a)   If the Insured is the lessor, for the purposes of this insurance, "rental value" is defined as the sum of:

   i)    the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the insured, and

   ii)   the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

   iii)  the fair rental value of any portion of said property which is occupied by the Insured.

b)   If the Insured is the lessee, rental value shall be the determined rental which the Insured is obligated to pay (including ground rents, accrued charges, real estate taxes and interest if the Insured shall be liable therefor) less such charges and expenses as do not necessarily continue.

c)   Experience of the Business - In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

d)   With respect to buildings or structures leased or rented by the Insured, this policy will serve as rental income insurance in those situations where the insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord.  This policy will respond for rental expenses incurred by the Insured in excess of the expenses which would have been incurred had a leased or rented premises not been damaged or destroyed by any peril covered under this policy. Such coverage will apply for all additional expenses incurred during the period of untenability or if the lease cannot be terminated until its expiration.

17.   Royalties - This policy shall cover the loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to direct physical loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the other party.

Plaintiffs 000227

a)     Any loss hereunder shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED to such income referred to above, which would have been earned had no loss occurred.

b)     Resumption of Operations:  The Insured shall influence, to the extent possible, the party with whom the agreement described above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Company.

c)     Experience of the Business:  In determining the amount of income derived from the agreements(s) described above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

18.    Leasehold Interest - This policy covers the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

a)     the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

b)     improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of this policy;

c)     the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located; and "Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located. The "Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

Plaintiffs 000228

d)   The "Interest of the Insured as Lessee" is defined as:

    i)   the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

    ii)   the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

e)   The "Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is cancelled by the lessee, to the extent not covered under any other section of this policy.

f)   "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "Interest of the Insured as Lessee".

g)   This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

19.   Loss Provisions Applicable to Time Element Coverage - The "Period of Indemnity" is defined as the length of time for which loss may be claimed, and shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy, subject to the following provisions:

a)   The Period of Indemnity shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged.

b)   With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly the Period of Restoration shall be determined as provided above but such determined length of time shall be applied, and the loss hereunder calculated from the date that business operations would have begun had no damage or destruction occurred.

c)   Extended Period of Indemnity - The Period of Indemnity shall include such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

    i)   the date on which the liability of the Company for loss or damage would otherwise terminate; or

Plaintiffs 000229

ii)     the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually completed;

terminating no more than 365 days from said later commencement date.

20.    Extensions of Time Element Coverage: This policy, subject to all its provisions and without increasing the amount of said policy, insures against direct physical loss resulting from damage to or destruction by the perils insured against, to:

a)    Any service provider's property including but not limited to, electrical equipment and systems, water, gas, steam, telephone or their respective transmission and distribution lines or utility plants which directly or indirectly provide incoming or outgoing services to the Insured situated on or outside of the Insured's premises.

b)    the actual loss sustained, and Extra Expense incurred by the Insured at an insured location during the period of restoration directly resulting from physical loss or damage of the type insured to property of the type insured at a Contingent Time Element Location, meaning a location within the TERRITORY of a direct supplier or direct customer of the Insured.

As respects this subparagraph b):

i.    The Insured will influence and cooperate with the Contingent Time Element Location in every way and take any reasonable and necessary action, including the use of other machinery, supplies, or locations, to effect mitigation of the loss payable hereunder.

ii.    In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

iii.    This Policy does not insure loss resulting from a lack of incoming or outgoing electricity, fuel, gas, water, steam, refrigeration, sewage, or telecommunications of a direct supplier or direct customer of the Insured.

iv.    The per occurrence deductible that applies to all perils also applies to the coverage as provided under this subparagraph b).

c)    dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other manufacturing purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources.

d)    the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory

15

Plaintiffs 000230

mile of an insured location, access to real or personal property is impaired or hindered by order of civil or military authority irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 e) below.

e)    the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory mile of an insured location, ingress to or egress from real or personal property is thereby impaired or hindered irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 d) above.

f)    property, facilities or piping systems which prevents the Insured from discharging its outgoing effluence.

21.    Transit - This policy shall cover property in transit, and this policy attaches and covers shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.  This insurance is extended to cover loss or damage to property:

a)    sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

b)    arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

c)    occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

d)    at the Insured's option, property which is incoming to the Insured.

The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor. With respect to shipments described under subparagraphs a and d above, this Company agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

16

     e)     The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

     f)     Seaworthiness of any vessel or watercraft, and airworthiness of any aircraft are admitted between this Company and the Insured.

22.    Accounts Receivable - Defined as:

     a)     All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

     b)     Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

     c)     Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

     d)     Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

     e)     the monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

     f)     the monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

23.    Lost Master/Key Card - If a master or grand master key is lost, or damaged so it cannot be duplicated, we will pay for the actual loss of keys, the cost of adjusting locks to accept new keys, or the cost of new locks, if required, of like kind and

Plaintiffs 000232

quality including the cost of installation subject to the limit contained in the Declarations.

24.     Arson Reward - If covered property sustains direct physical loss or damage caused by or resulting from a fire, and the origin of such loss is determined to be the criminal acts of an individual or individuals, we will pay a reward to the person or persons who provide information that leads to the arrest and conviction of the individual or individuals responsible for the loss.

25.     Contract Penalty – This policy covers a compensation payment due under the Hotel Management Agreement between the Franchisee, Named Insured, and any Franchisor, as identified via policy endorsement, or other appropriate subsidiaries acting as the management company or agent, whether insured or not under this policy. The Contract Penalty is triggered when the Hotel Management Agreement is terminated due to loss or damage of a type insured under this policy from an insured peril where such loss or damage causes a total constructive loss.

"A total constructive loss" means the destruction or damage to the Hotel by an insured peril whereby the destruction of or damage to the Hotel is such that the cost of repairing, rebuilding or replacing the Hotel exceeds 50% of the Replacement value of the Hotel." The Contract Penalty will only apply if the franchisor does not release the franchisee from the Hotel Management Agreement after a total constructive loss occurs and the First Named Insured / Franchisee elects not to repair or rebuild the property.

26.     BOILER & MACHINERY - This policy insures direct or indirect loss as covered elsewhere in this policy to insured property as a result of an Accident to an Object subject to the following definitions:

     a)      "Object" means any boiler, fired or unfired pressure vessel, refrigerating or air-conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

     b)      "Accident" means an accidental loss to an Object or a part thereof which manifests itself in physical damage that necessitates repair or replacement of the Object or part thereof.

     c)      "Hazardous Substance" means the additional expense incurred for clean up, repair or replacement, or disposal of damaged, contaminated or polluted property as a result of an "Accident" which causes property to become damaged, contaminated or polluted by a substance declared hazardous to health by an authorized governmental agency. "Additional Expenses" means expenses incurred that would not have been incurred, had no substance hazardous to health been involved in the accident.

27.     PERILS INSURED AGAINST - This policy insures against all risks of direct physical loss of or damage to property described herein including general

Plaintiffs 000233

average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

28.     PERILS EXCLUDED - This policy does not insure:

a)      infidelity or dishonesty of the Insured or of the Insured's employees. A willful act of malicious intent shall not be deemed to be an act of infidelity. In no event does this Policy insure loss caused by theft by the Insured or the Insured's employees;

b)      against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

c)      against ordinary wear and tear or gradual deterioration unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

d)      against inherent vice or latent defect unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

e)      against errors in processing or manufacture of the Insured's product unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

f)      against mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

g)      against nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except if a covered peril ensues, liability is specifically assumed for direct loss by such ensuing peril but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination.  This Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

h)      against hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or

Plaintiffs 000234

expected attack by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or by military, naval, or air forces; or by any agent of any such government, power, authority, or forces;

i)      against any weapon employing atomic fission or fusion;

ii)     against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

iii)    against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against under this policy;

iv)    against risks of contraband or illegal trade;

v)     against confiscation, nationalization and expropriation;

Notwithstanding the above provisions, this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated.  Nothing in the foregoing shall be construed to include any loss, damage, or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon or war employing atomic fission or fusion whether in time of peace or war.

i)      loss or damage caused directly or indirectly by the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants unless the release, discharge, dispersal, seepage, migration, or escape is caused by a peril not otherwise excluded herein.  However, if a peril not otherwise excluded herein ensues due to the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants, such ensuing loss or damage shall be covered.

j)      loss or damage caused by an act of terrorism which means an act or series of acts, including the use of force or violence, of any person or group(s) or persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public or any section of the public in fear for such purposes.

k)     against loss or damage caused by insect or vermin.

Plaintiffs 000235

l)      against delay, loss of market loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

m)    against delay, loss of market, loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

n)    against corrosion, depletion, deterioration, erosion, wet rot, dry rot, decay, evaporation, rust, and shrinkage unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

o)    against changes of temperature or humidity, whether atmospheric or not;

p)    against settling, cracking, bulging, shrinking, or expansion of foundations; machinery pedestals, pads, or platforms; floors, pavements, walls, ceilings, or roofs; or the cumulative effects of smog, smoke, soot, vapor liquid, or dust;

q)    against lack of incoming power voice/data/internet access from offsite services except as provided in the Service Interruption Extension.

Exclusion b), c), d) and e) do not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly.

Exclusion b), c) and d) do not apply to property in transit.

29.    DEFINITIONS

a)    The term "Earthquake" as used in this policy shall mean loss or damage caused by or resulting from a series of vibrations induced in the earth's crust by the abrupt rupture and rebound of rocks in which elastic strain has been slowly accumulating (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

b)    The term "Flood" as used in this policy shall mean loss or damage caused by or resulting from waves, tide, or tidal water, and the rising (including the overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and similar bodies of water, whether wind driven or not (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

c)    The term "occurrence" is defined as follows:

21

Plaintiffs 000236

i)     Except as hereinafter defined, "loss occurrence" shall mean an accident or occurrence or series of accidents or occurrences arising out of one event.

ii)    ii) Each loss occurrence which involves the perils of tornado, windstorm, cyclone, hurricane, hail or flood shall include all loss or damage wherever occurring occasioned by these perils which arise out of one atmospheric disturbance during a continuous period of 168 hours.

iii)    Each loss occurrence which involves the peril of earthquake, a series of earthquakes shall include all losses or damage sustained during a continuous period of 168 hours.

iv)    Each loss occurrence which involves the peril(s) of vandalism, malicious mischief or riot/civil commotion shall include all losses or damage sustained resulting from one or more acts committed by a person acting alone or in collusion with others during a continuous period of 168 hours.

v)    The Insured shall have the right to elect the moment from which the time periods referred to in ii), iii), and iv) above shall be deemed to have commenced, however no elected period of time shall commence within any previous occurrence.

vi)    Should the time period in ii), iii), and iv) above extend beyond expiration or cancellation date of this policy and commence prior to the expiration or cancellation date, this Company shall be liable as is such period fell entirely within the term of this policy.

vii)    However, we shall not be liable hereunder for any loss or damage:

viii)    Occurring before this policy becomes effective; or

ix)    Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

d)    "Raw Stock" - Materials and supplies in the state in which the Insured receives it for conversion by the Insured into Finished Stock, including supplies consumed in such conversion or in the service rendered by the Insured.

e)    "Stock in Process" - Raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture by on behalf of the Insured but which has not become Finished Stock.

f)    "Finished Stock" - Stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

g)    "Merchandise" - Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

h)    "Normal" - The condition that would have existed had no loss occurred.

Plaintiffs 000237

i)      "Improvements and Betterments" - Fixtures, alterations, installations or additions comprising a part of the described building and made or acquired at the expense of the Insured, but which are not legally subject to removal by the Insured.

j)      "Valuable papers and records" - Written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents and manuscripts.

k)      "Electronic Data Processing Media" - All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles.

l)      "Securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets.

m)      "Fine Arts" - Shall include but not be limited to bona fide works of art, works of rarity, works of historical value, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, galley proofs, original records, sculptures, carvings and similar property.

n)      "Architect and Engineering Fees" - Any cost associated with the preparation of plans, supervision of and approval for the repair or replacement of damaged or destroyed property.

o)      "Tier One County" - the entire territory of the United States Virgin Islands, the entire Commonwealth of Puerto Rico, the entire State of Florida, and the following:
   i)      In the State of Alabama, the counties of Baldwin, Escambia, and Mobile;
   ii)     In the State of Connecticut, the counties of Fairfield, New Haven, and New London;
   iii)    In the State of Georgia, the counties of Bryan, Camden, Chatham, Glynn, Liberty, and McIntosh;
   iv)     In the State of Hawaii, the counties of Honolulu, Kauai, and Maui;
   v)      In the State of Louisiana, the counties (also known as "Parishes") of Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, Iberia, Iberville, Jefferson Davis, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John The Baptist, St. Martin, St. Mary, St. Tammany, Terrebonne, and Vermillion;
   vi)     In the Commonwealth of Massachusetts, the counties of Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, and Suffolk;

Plaintiffs 000238

vii)   In the State of Mississippi, the counties of George, Greene, Hancock, Harrison, Jackson, Pearl River, and Stone;

viii)   In the State of New Jersey, the counties of Atlantic, Monmouth, and Ocean;

ix)   In the State of New York, the counties of Kings, Nassau, Queens, and Suffolk;

x)   In the State of North Carolina, the counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington;

xi)   In the State of Rhode Island, the counties of Newport, Providence, and Washington;

xii)   In the State of South Carolina, the counties of Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, and Williamsburg;

xiii)   In the State of Texas, the counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Gollad, Harris, Hidalgo, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, and Willacy; and

xiv)   In the Commonwealth of Virginia, the counties of Accomack, Gloucester, Isle of Wright, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, Westmoreland, and York; and the independent cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Suffolk, and Virginia Beach.

p)   "Named Storm"- A storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Depression or Tropical Storm. "Named storm" does not include "flood" resulting from a "named storm".

q)   "Time Element' – Includes coverage as described under Clause 12., 13., 14., 15., 16., 17., 18., 19. and 20. hereunder.

r)   "Unnamed Location' – A location which has not been scheduled with underwriters or the insured's representative and is not considered a Newly Acquired location.

s)   "Newly Acquired Location" – A location acquired by the insured after inception of this policy for a period of up to 90 days until reported to and agreed by underwriters.

30.   FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES - This policy covers fire brigade charges and other extinguishing expenses for which the Insured may be assessed including loss of fire extinguishing materials expended resulting from a peril insured.

Plaintiffs 000239

31.     SEVERABILITY OF INTERESTS - The inclusion herein of more than one person or organization, as Insured, shall not operate to increase the limit of the Company's liability nor the deductible amounts to be borne by the Insured. Except with respect to limits of liability and deductible amounts, the terms of this policy shall apply separately to each person or organization covered as Insured in the same manner and to the same extent as though a separate policy had been issued to each such person or organization.

32.     DEBRIS REMOVAL - This policy covers the cost of removal of debris of property covered hereunder including the cost of removal of debris of property not insured hereunder from the premises of the Insured resulting from a peril insured against. Except as otherwise provided for elsewhere in this policy, this policy does not cover the cost to extract contaminants or pollutants from land or water, nor does it cover the cost to remove, restore or replace contaminated or polluted land or water.

If at the time insured property is contaminated as a direct result of physical damage insured against by this policy there is in force any law or ordinance regulating contamination, including but not limited to pollution, then this policy shall cover, as a result of the enforcement of such law or ordinance, the increased cost of decontamination and debris removal of such property in a manner to satisfy such law or ordinance.  As respects Time Element coverage(s), this policy is extended to include such time as is necessary and reasonable with the exercise of due diligence and dispatch to decontaminate such property in a manner to satisfy such law or ordinance.

33.     DEMOLITION AND INCREASED COST OF CONSTRUCTION - In the event of loss or damage under this policy that causes the enforcement of any law or ordinance in force at the time of loss regulating the construction, repair or use of property, this Company shall be liable for:

a)     <u>COVERAGE A</u> - the loss in value of the undamaged portion of the property as a consequence of the enforcement of any law or ordinance that requires demolition of undamaged parts of the same property;

b)     <u>COVERAGE B</u> – the cost to demolish and clear the site of undamaged parts of the same property;

c)     <u>COVERAGE C</u> – the increased cost to repair or reconstruct damaged and undamaged property on the same or another site when the increased cost is a consequence of the enforcement of any law or ordinance.  These costs are limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  This Company shall not be liable for any increased cost of repair or reconstruction loss unless the damaged property is actually rebuilt or replaced;

Plaintiffs 000240

d)      Any increase in loss including but not limited to Business Interruption, Extra Expense, Rental Value, Rental Income, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law or ordinance.

e)      In the event real or personal property is not repaired or replaced to the same height, floor area, size, style or comparable quality of the original property insured due to the enforcement of law or ordinance regulating, restricting or prohibiting repair or replacement of covered property, this policy will pay the full replacement cost without deduction for depreciation for the real or personal property damaged or destroyed, as if the property was replaced to the same height, floor area, size, style or comparable quality of the original property insured.  This policy will also pay Time Element loss as if the original structure were repaired or replaced to original specifications, subject to the terms and conditions of these coverage(s).

34.     EXPEDITING EXPENSE - This policy covers the extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

35.     CONTRIBUTING INSURANCE - Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy.  This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

36.     EXCESS INSURANCE - Excess insurance is insurance over the limit of liability set forth in this policy.  The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

37.     UNDERLYING INSURANCE - Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire.  The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy. Should the amount of loss payable under such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then no deductible shall apply hereunder and that portion which exceeds such a deductible amount shall be considered "other insurance". Should the amount of loss payable under such underlying insurance be less than the largest deductible amount which would apply in the event of loss under this policy, then the deductible amount to be deducted hereunder shall be the difference between the amount to be paid under such underlying insurance and the largest deductible amount which would apply in the event of loss under this policy.

38.     OTHER INSURANCE - Except for insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether

Plaintiffs 000241

prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils.  This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.

39.    SUBROGATION - Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder.  The right of subrogation against the Insured, affiliated, subsidiary, and associated companies, or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived and at the option of the Insured, against a tenant or guest of the Insured.  In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.  If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests.  If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

40.    SALVAGE AND RECOVERIES - All salvages, recoveries, and payments, (excluding proceeds from subrogation and underlying insurance) recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly.  If proceeds from subrogation are recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(s) participating in the payment of any loss, in the proportion of their respective interests.

41.    CONTROL OF DAMAGED MERCHANDISE - The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods.  The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods.  The Insured, using reasonable discretion, shall be the sole judge as to whether production or EDP equipment and/or media is damaged and unusable.  This insurer shall be allowed to dispose of as salvage, any non-proprietary property deemed unusable by the Insured.

Plaintiffs 000242

42.  BRAND OR TRADEMARK - In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carriers or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at this Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

43.  ERRORS OR OMISSIONS - Any unintentional error or omission made by the Insured in the application for insurance shall not void or impair the insurance hereunder but only to the extent this Policy would have provided coverage had the unintentional error or omission not been made provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department. This coverage does not apply if there is coverage available under any other provision in this Policy.

44.  NOTICE OF LOSS - As soon as practicable after any loss or damage occurring under this policy is known to the Insured's home office insurance department, the Insured shall report such loss or damage with full particulars to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 for transmission to the designated loss adjuster and to this Company.

45.  DESIGNATED LOSS ADJUSTER - It is understood and agreed that each and every loss will be adjusted by Jeff Hellman of McLaren Young International, 19324 40th Avenue West, Suite C, Lynnwood, WA 98036.

46.  PROOF OF LOSS - Proof of loss is required as soon as practicable following the Company's written request for signed Proof from Insured; however, Insured, at its option, may elect to file Proof with the Company prior to the Company's request.  It shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained.

47.  PARTIAL PAYMENT OF LOSS - In the event of a loss covered by this policy, it is understood and agreed that the Company shall allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

48.  PAYMENT OF LOSS - All adjusted claims shall be due and payable no later than thirty (30) days after presentation of acceptable proofs of loss by the Insured or its appointed representative.

49.  LOSS ADJUSTMENT EXPENSES - This policy is extended to include reasonable expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. These expenses include fees of professionals engaged to assist the Insured in determining the cause and origin of the loss, the amount

28

of loss sustained, and the amount of loss payable under this policy. This policy shall not cover the expenses of a public adjuster. Such expenses shall not exceed $2,000,000 in any one occurrence.

50.    APPRAISAL - If the Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser.  The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending.  Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss.  If the appraisers fail to agree, they shall submit their differences to the umpire.  An award in writing by any two shall determine the amount of loss.  The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

51.    CONSEQUENTIAL LOSS - This policy insures against consequential loss including spoilage to real and personal property as insured hereunder caused by change of temperature or humidity or by interruption of any service including but not limited to power, heat, air conditioning, or refrigeration resulting from a peril insured against.

52.    PAIR AND SET - In the event of loss or damage by a peril insured against to any article or articles which are part of a pair or set, the measure of loss or damage to such article or articles shall be the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

53.    CONSEQUENTIAL REDUCTION IN VALUE - This policy covers the reduction in value of insured components or parts of components or parts of products or the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to direct physical loss or damage insured against by this Policy to other insured components or parts of products.

54.    COINSURANCE WAIVER - This policy is not subject to any coinsurance or average clause.

55.    ALTERATIONS AND USE CLAUSE - Permission is granted to the insured to cease operations or for buildings to remain vacant or unoccupied provided fire protection, watch alarm services are maintained, and written notice is given to the Insurer prior to the sixtieth (60th) consecutive day of cessation of operations, vacancy or unoccupancy. The Insured's building is considered vacant or unoccupied when it does not contain enough covered Property to conduct customary business operations.

Plaintiffs 000244

56. ASSISTANCE AND COOPERATION OF THE INSURED - The Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

57. SUE AND LABOR - In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment.  This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

58. REINSTATEMENT - With the exception of loss subject to annual aggregate limits as noted herein, no loss hereunder shall reduce the amount of this policy.

59. SUIT AGAINST THE COMPANY - No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy.  The Company agrees that any action or proceeding against it for recovery of any loss under this policy shall not be barred if commenced within the time prescribed therefor in the statutes of Florida.

60. CERTIFICATES OF INSURANCE - It is understood and agreed that Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 is authorized to issue certificates of insurance naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests subject always to the terms, conditions, and limits of liability of this policy. The Company agrees to waive the issuance of formal Company endorsements in respect of such interests.

61. NOTIFICATION CLAUSE - All notices or communications concerning this policy shall be addressed to the offices of the Insured, to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 and to AmWINS Brokerage of Georgia, 3630 Peachtree Road NE, Suite 1700, Atlanta, GA 30326.  All such notices shall be sent via registered mail.

62. CANCELLATION/NON RENEWAL - This policy may be cancelled at any time at the request of the Insured or it may be cancelled or non-renewed by the Company by mailing to the Insured written notice stating when, not less than ninety (90) days thereafter or ten (10) days in the event of non-payment of premium, such cancellation or non-renewal shall be effective. If the First Named Insured cancels, return of any unearned premium will be calculated on the

Plaintiffs 000245

customary short rate basis. If the Company cancels, return of any unearned premium will be calculated on a pro rata basis. Return of any unearned premium will be made by the Company as soon as practicable. The cancellation will be effective even if the Company has not made or offered a refund.

63.    TITLES OF PARAGRAPHS - The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

64.    MORTGAGE CLAUSE - As respects Real Property only, loss, if any, under this policy shall be payable to the mortgagee (or trustee) as its interest may appear under all present or future mortgages upon the property herein insured in which the aforesaid may have an interest as mortgagee (or trustee) in order or precedence of mortgages., and this insurance as to the interest of said mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that, in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided also, that the mortgagee (or trustee) shall, notify the Company of any changes of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and unless permitted by this policy, it shall be noted thereon and the mortgagees or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The company reserves the right to cancel this policy at any time as provided by its terms, and in such case, this policy shall continue in force for the benefit only of the mortgagee (or trustee) for an additional thirty (30) days.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgagee debt, or may at their option pay to the mortgagee (or trustee) the whole principal due or to grow on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and all of such other securities, but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

65.    JURISDICTION AND SUIT - It is hereby understood and agreed that in the event of the failure of the Insurer to pay an amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court

31

of competent jurisdiction within the United States and will comply with all requirements necessary to give such jurisdiction.  All matters arising hereunder shall be determined in accordance with the law and practice of such court. In any suit instituted against it under this, the Insurer will abide by the final decision of such court or any appellate court in the event of an appeal.

66.     POLLUTANT CLEAN UP AND REMOVAL - This policy is extended to cover the expense actually incurred by the Insured to decontaminate, clean up and/or remove pollutants from land, water or air including resultant time element loss if the release, discharge, or dispersal of the pollutants results from any loss or damage as covered herein. Such expenses shall not exceed $500,000 in any one policy year.

67.     ATTACHMENT CLAUSE – Please refer to the Participation Page.

_____

[Authorized Signature]

Plaintiffs 000247

# Endorsement No. 1

### <u>Microorganism Exclusion – Resultant Mold</u>

This policy does not insure any loss, Damage, Time Element, claim, cost, expense or other sum directly or indirectly arising out of or relating to (regardless of whether any other cause or event contributed concurrently or in any sequence):

Fungus, mold, mildew, yeast, mushrooms, spores, toxins, mycotoxins, bacteria or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion shall not apply to any such loss, Damage, Time Element, claim, cost, or expense resulting from mold that is a direct result of an Insured Cause of Loss and is not otherwise excluded by the Policy, provided such loss, Damage, Time Element, claim, cost, or expense is reported to the Company in writing within twelve months from the expiration date of the policy. This clause is subject to a $500,000 per occurrence and in the annual aggregate sublimit.

This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part, for these matters.

All other terms and conditions remain unchanged.

Plaintiffs 000248

POLICY NUMBER:   EAF645360-20



# COMMON POLICY DECLARATIONS

| | |
|---|---|
| **AXIS SURPLUS INSURANCE COMPANY**<br>**111 SOUTH WACKER DRIVE, SUITE 3500**<br>**CHICAGO, IL 60606** | **AMWINS BROKERAGE OF GEORGIA, LLC**<br>**3630 PEACHTREE ROAD NE, SUITE 1700**<br>**ATLANTA, GA 30326** |

NAMED INSURED:   Portofino Master Homeowners Association, Inc.

MAILING ADDRESS:   10 Portofino Drive

Gulf Breeze, FL 32561

POLICY PERIOD:   FROM   April 01, 2020   TO   April 01, 2021   AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

| BUSINESS DESCRIPTION | Homeowners Association |
|---|---|

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | PREMIUM |
|---|---|
| BOILER AND MACHINERY COVERAGE PART | $ |
| CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART | $ |
| COMMERCIAL AUTOMOBILE COVERAGE PART | $ |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ |
| COMMERCIAL INLAND MARINE COVERAGE PART | $ |
| EXCESS PROPERTY COVERAGE PART | $ |
| CRIME AND FIDELITY COVERAGE PART | $ |
| EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART | $ |
| FARM COVERAGE PART | $ |
| LIQUOR LIABILITY COVERAGE PART | $ |
| POLLUTION LIABILITY COVERAGE PART | $ |
| PROFESSIONAL LIABILITY COVERAGE PART | $ |
| INSPECTION FEE | $ |
| INSURED PURCHASED TRIA TERRORISM COVERAGE   ☒NO   ☐ YES | $ |
| **TOTAL:** | $ |

Premium shown is payable:   $ _____ at inception.

SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY. THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW.  PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.

ES 024 0607
Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

**Page 1 of 2**   ☐

**Plaintiffs 000249**

| **FORMS APPLICABLE TO ALL COVERAGE PARTS (SHOW NUMBERS):** | |
|---|---|
| 01 | AXIS Surplus Common Policy Declarations – ES 024 0607 | |
| 02 | Notice to Policyholder – ES 115 0106 | |
| 03 | Policyholder Notice Florida – ES 105 0316 | |
| 04 | State Fraud Statements – LI-FS 001 07 15 | |
| 05 | Manuscript Master Property Form - Including Endorsement 1 | |
| 06 | Minimum Earned Premium Clause – Percentage - Endorsement 2 - ES 106 0106 | |
| 07 | Commercial Property Exclusion Endorsement – Endorsement 3 - ES 133 0106 | |
| 08 | Total Exclusion – Electronic Property and Virus – Endorsement 4 - ES 033 0106 | |
| 09 | Nuclear, Chemical and Biological Exclusion Endorsement – Endorsement 5 - ES 116 0608 | |
| 10 | Exclusion of Loss or Damage due to Virus or Bacteria – Endorsement - 6 - AXIS 1012682 0320 | |
| 11 | Terrorism Exclusion Endorsement – Endorsement 7 – AXIS TERROR EXCLUSION 01 06 | |
| 12 | Cancellation and Non-Renewal Endorsement–Florida – Endorsement 8 - AXIS 801 FL (10-15) | |
| 13 | Notice of Cancellation Change Endorsement – Endorsement 9 - AXIS 124 (08-15) | |
| 14 | Service of Suit - Florida - AXIS 106 (02-20) | |
| 15 | Signature Page – AXIS 102 ASIC (04-15) | |
| 16 | Claim Notice – ES 036 0220 | |

| Countersigned: | By: |
|---|---|
| | |
| (Date) | (Authorized Representative) |

**NOTE**
OFFICERS' FACSIMILE SIGNATURES MAY BE INSERTED HERE, ON THE POLICY COVER OR ELSEWHERE AT THE COMPANY'S OPTION.

Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.                    **Plaintiffs 000250**

**NOTICE TO POLICYHOLDER**

This policy is composed of various forms explaining the insurance coverage provided.  It may also include one or more endorsements.  Endorsements are documents that change the policy.  Endorsements may provide additional coverage to the policy.  Endorsements can also restrict or remove coverage provided in the policy.  THE POLICY SHOULD BE READ CAREFULLY TO DETERMINE WHAT IS AND WHAT IS NOT COVERED.

As the context may require, the words "you", "your", "Insured", and "the Insured" refer to the Named Insured shown on the Declarations Page.  The words "we", "us", "our", "Company", "the Company", and "this Company" refer to the Company providing this insurance.



ES 115 0106

**Plaintiffs 000251**



**POLICYHOLDER NOTICE**


**FLORIDA**


**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**Plaintiffs 000252**

# STATE FRAUD STATEMENTS

Applicable in Alabama

### Alabama Fraud Statement

"Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison or any combination thereof."

Applicable in Arkansas, Louisiana, Rhode Island, and West Virginia

### Arkansas, Louisiana, Rhode Island, and West Virginia Fraud Statement

"Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison."

Applicable in Colorado

### Colorado Fraud Statement

"It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies."

Applicable in District of Columbia

### District of Columbia Fraud Statement

"Warning: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant."

Applicable in Florida

### Florida Fraud Statement

"Any person who knowingly and with intent to injure, defraud, or deceive any insurer  files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree."

Applicable in Kansas

### Kansas Fraud Statement

"A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false

information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto."


Applicable in Kentucky

### Kentucky Fraud Statement

"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information, or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime."


Applicable in Maine

### Maine Fraud Statement

"It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits."

Applicable in Maryland

### Maryland Fraud Statement

"Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison."

Applicable in New Jersey

### New Jersey Fraud Statement

"Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties."

Applicable in New Mexico

### New Mexico Fraud Statement

"Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties."

Applicable in New York

### New York Fraud Statement

"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation."

Applicable in Ohio

### Ohio Fraud Statement

"Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud."

**Plaintiffs 000254**

Applicable in Oklahoma

### Oklahoma Fraud Statement

"WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony."

Applicable in Oregon

### Oregon Fraud Statement

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

In order for us to deny a claim on the basis of misstatements, misrepresentations, omissions or concealments on your part, we must show that:

A. The misinformation is material to the content of the policy;
B. We relied upon the misinformation; and
C. The information was either:
      1. Material to the risk assumed by us; or
      2. Provided fraudulently.

For remedies other than the denial of a claim, misstatements, misrepresentations, omissions or concealments on your part must either be fraudulent or material to our interests.

With regard to fire insurance, in order to trigger the right to remedy, material misrepresentations must be willful or intentional.

Misstatements, misrepresentations, omissions or concealments on your part are not fraudulent unless they are made with the intent to knowingly defraud.

Applicable in Pennsylvania

### Pennsylvania Fraud Statement

"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties."

Applicable in Puerto Rico

### Puerto Rico Fraud Statement

**Plaintiffs 000255**

Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation with the penalty of a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

Applicable in Tennessee, Virginia and Washington

**Tennessee, Virginia and Washington Fraud Statement**

"It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits."

## PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies) , do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy.

Provided that:

1.      The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2.      The liability of each of the Insurers shall not exceed the Participation Limit set against its name.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurer | Policy Number | Participation | Authorized Signature |
|---|---|---|---|
| Westchester Surplus Lines Insurance Company | D38064666 004 | $5,000,000 part of $15,000,000 Primary | |
| Endurance American Specialty Insurance Company | ESP30000298003 | $5,500,000 part of $15,000,000 Primary | |
| Everest Indemnity Company | CA3P005801201 | $3,000,000 part of $15,000,000 Primary | |
| Princeton Excess Surplus Lines Insurance Company | 3VA3PP0000251-02 | $1,500,000 part of $15,000,000 Primary | |
| Arch Specialty Insurance Company | ESP1002326-00 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Axis Surplus Insurance Company | EAF645360-20 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Colony Insurance Company | XP190091-1 | $6,250,000 part of $25,000,000 excess of $25,000,000 | |
| Evanston Insurance Company | MKLV11XP007995 | $7,500,000 part of $25,000,000 excess of $25,000,000 | |
| Aspen Specialty Insurance Company | PX005LG20 | $5,000,000 part of $25,000,000 excess of $25,000,000 | |

1

| | | | |
|---|---|---|---|
| Independent Specialty Insurance Company | VUX-CN-0000328-04 | $8,689,317 part of $217,232,927 excess of $25,000,000 | |
| Interstate Fire & Casualty Company | VRX-CN-0000328-04 | $28,240,281 part of $217,232,927 excess of $25,000,000 | |
| Lloyd's of London | VPC-CN-0000328-04 | $17,378,634 part of $217,232,927 excess of $25,000,000 | |
| James River Insurance Company | 00090459-1 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Maxum Indemnity Company | MSP-6012522-11 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Landmark American Insurance Company | LHD912400 | $48,058,232 part of $192,232,927 excess of $50,000,000 | |
| Homeland Insurance Company of New York | 795012091 | $50,000,000 part of $100,000,000 excess of $200,000,000 | |
| Everest Indemnity Company | CA3X001322201 | $21,116,464 part of $42,232,927 excess of $200,000,000 | |

2

**MASTER PROPERTY POLICY**

1.    NAMED INSURED – "Named Insured" means **Portofino Master Homeowners Association at Pensacola Beach, Inc.; Portofino Tower One Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Two Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Three Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Four Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Five Homeowners Association at Pensacola Beach, Inc.** means the First Named Insured and any entity in which the First Named Insured owns an interest of more than 50 percent, during the Policy Period, controls during the Policy Period, or has the responsibility of placing the insurance provided by this Policy during the Policy Period. No entity is covered under this Policy unless the Company has received identifying information for such entity during the application or submission process, except if such entity is covered under miscellaneous unnamed insured locations or newly acquired property, or if such entity is added by endorsement.

    Notwithstanding any provision to the contrary in this Policy, if other valid and collectible insurance is available to any entity covered by this Policy solely because of the ownership, control, or responsibility to purchase insurance by the First Named Insured, this insurance will be excess with regard to such other insurance whether contingent, primary, excess or any other basis.

2.    TERM OF INSURANCE In consideration of a $ annual premium, this policy attaches and covers for a period of one year from April 1, 2020 to April 1, 2021, beginning and ending at 12:01 A.M. standard time, at the location of the property involved.

3.    PARTICIPATION – Please refer to the Participation Page.

4.    LIMIT OF LIABILITY - This Company shall not be liable for more than its proportion of $242,232,927 for any one occurrence.

5.    SUBLIMIT(S) OF LIABILITY) - This Company shall not be liable for more than its proportion of the following sublimits.  Sublimits are part of and not in addition to the overall Limit of Liability and apply on a per occurrence basis unless otherwise noted:

    a)    $15,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Flood.

    b)    $25,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Earthquake.

    c)    $1,000,000 per occurrence as respects Accounts Receivable

    d)    $500,000 per occurrence as respects Arson Reward

3

**Plaintiffs 000259**

e)   $1,000,000 per occurrence as respects Contingent Time Element, Attraction Properties are excluded

f)   $1,000,000 per occurrence as respects Consequential Loss

g)   $10,000,000 per occurrence as respects Course of Construction Including Soft Costs

h)   Included per occurrence as respects Demolition and Increased Cost of Construction Coverage A

i)   $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage B

j)   $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage C

k)   $1,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage D

l)   $10,000,000 per occurrence as respects Debris Removal

m)   $10,000,000 per occurrence as respects Errors and Omissions

n)   25% of the Adjusted Loss Maximum, $10,000,000 per occurrence as respects Extra Expense

o)   $5,000,000 per occurrence as respects Expediting Expense

p)   200,000,000 per occurrence as respects Equipment Breakdown

q)   $1,000,000 per occurrence as respects Contract Penalty

r)   $1,000,000 per occurrence as respects Fire Brigade Charges and Extinguishing Expenses

s)   $50,000 per occurrence as respects Inland Transit

t)   The lesser of 30 days of $2,500,000 per occurrence as respects Ingress/Egress

u)   $5,000,000 per occurrence as respects Miscellaneous Unnamed Locations

v)   $5,000,000 per occurrence as respects Newly Acquired Property (90 days; if not reported within 90 days the coverage ceases)

w)   $1,000,000 per occurrence as respects Leasehold Interest

x)   $500,000 per occurrence as respects Lost Master/Key Card

y)   $5,000,000 per occurrence as respects Rental Value/Rental Income

z)   Excluded per occurrence as respects Research and Development

aa)   $1,000,000 per occurrence as respects Royalties

bb)   $2,500,000 per occurrence as respects Service Interruption.  Property Damage and Time Element Combined.

cc)   $1,000,000 per occurrence as respects Valuable Papers and Records

dd)   The lesser of 30 days of $2,500,000 per occurrence as respects Civil or Military Authority

ee)   $3,000,000 per occurrence as respects Landscaping, subject to a $25,000 maximum per item

ff)   $1,000,000 per occurrence as respects Fine Arts, subject to a $25,000 maximum per item

The amount of loss from any one occurrence for which this policy is excess, shall be determined by the combined loss, damage or expense as insured under the primary policy.  In the event of loss or damage involving more than one coverage or peril, The Limits of Liability of the underlying policies shall first

4

Plaintiffs 000260

apply to the coverage(s) or peril(s) not insured by this policy, and the remainder, if any to the coverages(s) or peril(s) as provided hereunder. Upon erosion or exhaustion of the Limits of Liability of the underlying policies, this policy shall then be liable for the loss uncollected from the coverage(s) or perils(s) insured hereunder, subject to the Limit of Liability specified herein.  In the event of reduction or exhaustion of the aggregate limit(s) designated in the underlying policy(ies), it is hereby understood and agreed that such insurance as is afforded by this policy shall apply in excess of the reduced or exhausted underlying limit(s).  The insured maintains the right to allocate and/or apply coverages, interests and/or perils, as insured in the primary and/or excess policies.

6.     DEDUCTIBLE CLAUSE - The Company will adjust all losses, damages or expenses arising out of any one occurrence as one loss. The Company will deduct the following from such loss:

**$50,000** per occurrence for all perils including earthquake sprinkler leakage, and the backup of sewers and drains, except:

WAITING PERIOD:

With respect to all Time Element coverages, coverage is provided by this policy only if the period of interruption of the Insured's business exceeds 24 hours. Then Time Element coverage will apply excess of the appropriate policy deductible.

EARTHQUAKE:

As respects loss or damage to property resulting from the peril of Earthquake, all loss, damage or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deductible the sum of $50,000.  This deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

FLOOD:

As respects loss or damage to property resulting from the peril of Flood, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100 year flooding, as defined by the Federal Emergency Management Agency, all loss arising out of any one occurrence shall be adjusted as one loss and from the loss shall be deducted the maximum amount recoverable under the National Flood Insurance Program for the Real or Personal Property at each Building, whether or not such coverage is purchased or maintained.

In addition, the following Deductible will apply to property not eligible and coverages not available under the National Flood Insurance Program that are covered under this Policy and any difference in valuation between policies: $100,000 per Occurrence.

The determination of whether a property is in whole or in part subject to the 100 Year Flood Zone shall be at the inception of the policy and not at the time of loss.

5

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

NAMED STORM:

With respect to loss or damage to property in Tier 1 Counties resulting from the period of Named Windstorm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm), the deductible shall be 2% of such unit of insurance at each location in accordance with policy valuation at the time of loss. A minimum $100,000 each occurrence shall apply.

With respect to any other named storm loss or damage, the deductible shall be **$50,000** any one occurrence.

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

ALL OTHER WIND and HAIL:
As respects loss or damage to property resulting from the peril of All Other Wind, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss. The Company will deduct the following from such loss:

**$50,000**

Definition of 'Unit of Insurance':
  a) Each separate building or structure
  b) Contents in each separate building or structure
  c) Property in the yard of each separate building or structure
  d) Annual Business Interruption value applying to each separate building or structure.
  e) Each Other Property item as listed in the Statement of Values. If values are not listed separately, the value is included in the building value.

Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence. If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the insured shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s), notwithstanding the above reference to two or more deductibles.

The deductible amounts specified above shall not apply to general average contributions and salvage charges.

7.  LOSS PAYABLE - Loss, if any, shall be adjusted with and payable to the Insured, or as directed by them.

6

8.      TERRITORY - This policy covers anywhere in the United States of America and its territories and possessions including coastal and inland waterways and while in due course of transit therein or thereto.

9.      PROPERTY COVERED - Except as hereinafter excluded, this policy covers the interest of the Insured in all real and personal property owned, used, leased or intended for use by the Insured or in which the Insured may have an insurable interest, or for which the Insured may be responsible for the insurance, or real or personal property hereafter constructed, erected, installed, or acquired including while in course of construction, erection, installation, and assembly including Improvements and Betterments. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.  This policy is extended to include:

a)      The interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by written contract for such property, including the cost to defend any allegations of liability for loss or damage to such property.

b)      At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured.

c)      Contractors' and/or subcontractors' (of any tier) and/or vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract.

10.     PROPERTY EXCLUDED - This policy does not cover loss or damage to:

a)      Money and securities;

b)      Land, land values, except as insured under the "Pollutant Cleanup of Land and Water" clause.  This exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements if land improvements have been scheduled on the Schedule of Values on file with the company.  Land improvements as described hereunder include, but are not limited to any alteration to the natural condition of the land by grading, landscaping, excavation, earthen dikes or dams, as well as additions to land such as pavements, roadways or similar works;

c)      Water; except water which is normally contained within any type of tank, piping system or other process equipment;

d)      Growing crops, standing timber, and live animals;

e)      Watercraft; aircraft and motor vehicles licensed for highway use;

f)      Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

g)      Underground mines or mine shafts or any property within such mine or shaft;

7

h)     Offshore property; unless reported on the Schedule of Values on file with the company.

i)     Transmission and Distribution Lines beyond 1,000 feet of Insured Premises;

j)     currency; evidence of debt; notes

k)     Turbines and satellites;

l)     docks, piers, and wharves; bridges, roadways, streets, walks or any other paved surfaces; dams or dikes; railroad rolling stock; off-shore drilling rigs or platforms; underground mines, wells, caverns including property contained therein unless reported on the Schedule of Values on file with the company.

11.    PROPERTY VALUATION - The basis of loss adjustment shall be as follows:

a)     Valuable Papers & Records/Electronic Data Processing Media :  the cost to repair or replace the property with other of like kind and quality including the cost of labor, service or supplies consumed in reconstructing, reproducing, recreating, transcribing or copying information; or, if not so replaced, the value blank.

b)     Raw materials and supplies:  the replacement cost new.

c)     Stock in process:  The value of raw materials plus labor expended plus the proper proportion of overhead charges.

d)     Finished stock and other merchandise for sale:  The regular cash selling price less all discounts and charges to which such property would have been subject had no loss occurred.

e)     Real and personal property of others for which the Insured is liable:  A valuation consistent with the liability of the Insured but only to the extent that such money is necessarily expended by the Insured.

f)     Electronic data processing equipment, production machinery & equipment:  The cost to repair or replace new with like kind and quality. In addition, the Insured may elect to replace such equipment with equipment having technological advances and/or representing an improvement in function and/or forming part of a program of system enhancement and/or more consistent with the Insured's technology strategy (without any reduction or offset for betterment) provided that such replacement can be accomplished without increasing the Insurer's liability.

g)     Fine arts, at original cost to the Insured, per schedule, latest appraised value or current market value, all at the Insured's option.

h)     Other property not otherwise provided for; at replacement cost new without deduction for depreciation.  If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:

Plaintiffs 000264

    i)      The repairs, replacement or reinstatement must be executed with due diligence and dispatch.

    ii)     This Company's liability for loss or damage on a replacement cost basis shall not exceed the lesser of the replacement cost new of the property or any part thereof identical with such property intended for the same occupancy and use, including normal and customary profit and overhead even if the work is performed by the Insured; or the amount actually and necessarily expended in repairing or replacing said property or any part thereof including normal and customary profit and overhead even if the work is performed by the Insured.

12.    BUSINESS INTERRUPTION - This policy shall cover the loss resulting from necessary interruption of business conducted by the Insured including all interdependent loss of earnings between or among companies owned or operated by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

    a)     In the event of such loss, damage or destruction this Company shall be liable for the ACTUAL LOSS SUSTAINED by the insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business. Due consideration shall be given to the continuation of normal charges and expenses including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately before the loss. For the purposes of this insurance, "Gross Earnings" are defined as the sum of:

    i)      Net sales value of production from manufacturing operations, and net sales from Merchandising or Non-Manufacturing operations; and

    ii)     Other earnings derived from operations of the business,

         LESS THE COST OF:

    iii)    Raw Stock from which such production is derived;

    iv)    Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the services(s) sold by the Insured;

    v)     Merchandise sold, including packaging materials therefor; and

    vi)    Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

Plaintiffs 000265

    b)      In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the period of restoration, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including ordinary payroll, directly attributable to such research and development activities.

    c)      Resumption of Operations: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business:

        i)      by a complete or partial resumption of operation at a location owned by the same entity suffering the loss, whether damaged or not; or

        ii)     by making use of available stock, merchandise, or other property;

        such reduction shall be taken into account in arriving at the amount of loss hereunder.

    d)      EXPERIENCE OF THE BUSINESS - In determining the amount of gross earnings, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

    e)      As respects coverage provided under the Gross Earnings clause of this policy, the insurer shall not be liable for any loss resulting from loss or damage to finished stock nor for the time required to reproduce said finished stock.

13.    Extra Expense - This policy shall cover the necessary extra expense, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

    a)      The term "Extra Expense" wherever used in this Policy, is defined as the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally have been incurred to conduct the business during the same period had no loss or damage occurred.

Plaintiffs 000266

b)     In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities, this policy shall cover the actual loss sustained of the extra expenses as defined herein directly attributable to the interruption of such research and development activities.

c)     As soon as practicable the Insured shall resume normal operations of the business and shall dispense with such extra expense.

14.    This policy is extended to cover expenses as are necessarily incurred for the purpose of reducing any loss under this policy; however, such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

15.    SOFT COSTS - This policy shall cover soft costs, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to property under construction as covered herein.

a)     The term "Soft Costs" shall include:

    i)     Additional interest costs on money used to finance construction or repair;
    ii)    Additional real estate and property taxes incurred for the period of time that construction extends beyond the projected completion date;
    iii)   Additional legal and accounting fees; and
    iv)   Additional advertising and promotional expenses which become necessary as a result of an insured loss.

b)     This company shall pay soft costs incurred from the date that the building, structure or improvement would have been completed had no physical damage occurred until such time that it is completed.  As soon as practicable after any loss, the Insured shall utilize every available means to reduce the amount of loss including:

    i)     partial or complete resumption of construction, business or operations;
    ii)    making use of materials, equipment, supplies, or other property at the Insured's premises or elsewhere; or
    iii)   making use of substitute facilities or services where practical;

    such reduction will be taken into account in arriving at the amount of such loss.

16.    Rental Value/Rental Income - This policy shall cover the actual loss sustained by the Insured resulting directly from the necessary untenability caused by direct

Plaintiffs 000267

physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as covered herein.  Loss settlement shall not exceed the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenability.

a)     If the Insured is the lessor, for the purposes of this insurance, "rental value" is defined as the sum of:

   i)     the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the insured, and

   ii)    the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

   iii)   the fair rental value of any portion of said property which is occupied by the Insured.

b)     If the Insured is the lessee, rental value shall be the determined rental which the Insured is obligated to pay (including ground rents, accrued charges, real estate taxes and interest if the Insured shall be liable therefor) less such charges and expenses as do not necessarily continue.

c)     Experience of the Business - In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

d)     With respect to buildings or structures leased or rented by the Insured, this policy will serve as rental income insurance in those situations where the insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord.  This policy will respond for rental expenses incurred by the Insured in excess of the expenses which would have been incurred had a leased or rented premises not been damaged or destroyed by any peril covered under this policy. Such coverage will apply for all additional expenses incurred during the period of untenability or if the lease cannot be terminated until its expiration.

17.    Royalties - This policy shall cover the loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to direct physical loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the other party.

Plaintiffs 000268

a) Any loss hereunder shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED to such income referred to above, which would have been earned had no loss occurred.

b) Resumption of Operations:  The Insured shall influence, to the extent possible, the party with whom the agreement described above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Company.

c) Experience of the Business:  In determining the amount of income derived from the agreements(s) described above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

18. Leasehold Interest - This policy covers the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

a) the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

b) improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of this policy;

c) the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located; and "Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located. The "Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

Plaintiffs 000269

d)    The "Interest of the Insured as Lessee" is defined as:

    i)    the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

    ii)    the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

e)    The "Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is cancelled by the lessee, to the extent not covered under any other section of this policy.

f)    "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "Interest of the Insured as Lessee".

g)    This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

19.    Loss Provisions Applicable to Time Element Coverage - The "Period of Indemnity" is defined as the length of time for which loss may be claimed, and shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy, subject to the following provisions:

a)    The Period of Indemnity shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged.

b)    With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly the Period of Restoration shall be determined as provided above but such determined length of time shall be applied, and the loss hereunder calculated from the date that business operations would have begun had no damage or destruction occurred.

c)    Extended Period of Indemnity - The Period of Indemnity shall include such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

    i)    the date on which the liability of the Company for loss or damage would otherwise terminate; or

14

    ii)      the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually completed;

terminating no more than 365 days from said later commencement date.

20. Extensions of Time Element Coverage: This policy, subject to all its provisions and without increasing the amount of said policy, insures against direct physical loss resulting from damage to or destruction by the perils insured against, to:

a) Any service provider's property including but not limited to, electrical equipment and systems, water, gas, steam, telephone or their respective transmission and distribution lines or utility plants which directly or indirectly provide incoming or outgoing services to the Insured situated on or outside of the Insured's premises.

b) the actual loss sustained, and Extra Expense incurred by the Insured at an insured location during the period of restoration directly resulting from physical loss or damage of the type insured to property of the type insured at a Contingent Time Element Location, meaning a location within the TERRITORY of a direct supplier or direct customer of the Insured.

As respects this subparagraph b):

i. The Insured will influence and cooperate with the Contingent Time Element Location in every way and take any reasonable and necessary action, including the use of other machinery, supplies, or locations, to effect mitigation of the loss payable hereunder.

ii. In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

iii. This Policy does not insure loss resulting from a lack of incoming or outgoing electricity, fuel, gas, water, steam, refrigeration, sewage, or telecommunications of a direct supplier or direct customer of the Insured.

iv. The per occurrence deductible that applies to all perils also applies to the coverage as provided under this subparagraph b).

c) dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other manufacturing purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources.

d) the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory

**Plaintiffs 000271**

mile of an insured location, access to real or personal property is impaired or hindered by order of civil or military authority irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 e) below.

e)      the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory mile of an insured location, ingress to or egress from real or personal property is thereby impaired or hindered irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 d) above.

f)      property, facilities or piping systems which prevents the Insured from discharging its outgoing effluence.

21.     Transit - This policy shall cover property in transit, and this policy attaches and covers shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.  This insurance is extended to cover loss or damage to property:

a)      sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

b)      arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

c)      occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

d)      at the Insured's option, property which is incoming to the Insured.

The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor. With respect to shipments described under subparagraphs a and d above, this Company agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

Plaintiffs 000272

e)   The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

f)   Seaworthiness of any vessel or watercraft, and airworthiness of any aircraft are admitted between this Company and the Insured.

22.   Accounts Receivable - Defined as:

a)   All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

b)   Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

c)   Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

d)   Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

e)   the monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

f)   the monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

23.   Lost Master/Key Card - If a master or grand master key is lost, or damaged so it cannot be duplicated, we will pay for the actual loss of keys, the cost of adjusting locks to accept new keys, or the cost of new locks, if required, of like kind and

Plaintiffs 000273

quality including the cost of installation subject to the limit contained in the Declarations.

24.    Arson Reward - If covered property sustains direct physical loss or damage caused by or resulting from a fire, and the origin of such loss is determined to be the criminal acts of an individual or individuals, we will pay a reward to the person or persons who provide information that leads to the arrest and conviction of the individual or individuals responsible for the loss.

25.    Contract Penalty – This policy covers a compensation payment due under the Hotel Management Agreement between the Franchisee, Named Insured, and any Franchisor, as identified via policy endorsement, or other appropriate subsidiaries acting as the management company or agent, whether insured or not under this policy. The Contract Penalty is triggered when the Hotel Management Agreement is terminated due to loss or damage of a type insured under this policy from an insured peril where such loss or damage causes a total constructive loss.

"A total constructive loss" means the destruction or damage to the Hotel by an insured peril whereby the destruction of or damage to the Hotel is such that the cost of repairing, rebuilding or replacing the Hotel exceeds 50% of the Replacement value of the Hotel." The Contract Penalty will only apply if the franchisor does not release the franchisee from the Hotel Management Agreement after a total constructive loss occurs and the First Named Insured / Franchisee elects not to repair or rebuild the property.

26.    BOILER & MACHINERY - This policy insures direct or indirect loss as covered elsewhere in this policy to insured property as a result of an Accident to an Object subject to the following definitions:

a)      "Object" means any boiler, fired or unfired pressure vessel, refrigerating or air-conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

b)      "Accident" means an accidental loss to an Object or a part thereof which manifests itself in physical damage that necessitates repair or replacement of the Object or part thereof.

c)      "Hazardous Substance" means the additional expense incurred for clean up, repair or replacement, or disposal of damaged, contaminated or polluted property as a result of an "Accident" which causes property to become damaged, contaminated or polluted by a substance declared hazardous to health by an authorized governmental agency.  "Additional Expenses" means expenses incurred that would not have been incurred, had no substance hazardous to health been involved in the accident.

27.    PERILS INSURED AGAINST - This policy insures against all risks of direct physical loss of or damage to property described herein including general

18

average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

28.     PERILS EXCLUDED - This policy does not insure:

a)      infidelity or dishonesty of the Insured or of the Insured's employees. A willful act of malicious intent shall not be deemed to be an act of infidelity. In no event does this Policy insure loss caused by theft by the Insured or the Insured's employees;

b)      against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

c)      against ordinary wear and tear or gradual deterioration unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

d)      against inherent vice or latent defect unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

e)      against errors in processing or manufacture of the Insured's product unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

f)      against mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

g)      against nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except if a covered peril ensues, liability is specifically assumed for direct loss by such ensuing peril but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination. This Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

h)      against hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or

Plaintiffs 000275

expected attack by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or by military, naval, or air forces; or by any agent of any such government, power, authority, or forces;

i)      against any weapon employing atomic fission or fusion;

ii)     against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

iii)    against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against under this policy;

iv)     against risks of contraband or illegal trade;

v)      against confiscation, nationalization and expropriation;

Notwithstanding the above provisions, this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated.  Nothing in the foregoing shall be construed to include any loss, damage, or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon or war employing atomic fission or fusion whether in time of peace or war.

i)      loss or damage caused directly or indirectly by the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants unless the release, discharge, dispersal, seepage, migration, or escape is caused by a peril not otherwise excluded herein.  However, if a peril not otherwise excluded herein ensues due to the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants, such ensuing loss or damage shall be covered.

j)      loss or damage caused by an act of terrorism which means an act or series of acts, including the use of force or violence, of any person or group(s) or persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public or any section of the public in fear for such purposes.

k)      against loss or damage caused by insect or vermin.

Plaintiffs 000276

l)      against delay, loss of market loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

m)     against delay, loss of market, loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

n)      against corrosion, depletion, deterioration, erosion, wet rot, dry rot, decay, evaporation, rust, and shrinkage unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

o)      against changes of temperature or humidity, whether atmospheric or not;

p)      against settling, cracking, bulging, shrinking, or expansion of foundations; machinery pedestals, pads, or platforms; floors, pavements, walls, ceilings, or roofs; or the cumulative effects of smog, smoke, soot, vapor liquid, or dust;

q)      against lack of incoming power voice/data/internet access from offsite services except as provided in the Service Interruption Extension.

Exclusion b), c), d) and e) do not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly.

Exclusion b), c) and d) do not apply to property in transit.

29.   DEFINITIONS

a)      The term "Earthquake" as used in this policy shall mean loss or damage caused by or resulting from a series of vibrations induced in the earth's crust by the abrupt rupture and rebound of rocks in which elastic strain has been slowly accumulating (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

b)      The term "Flood" as used in this policy shall mean loss or damage caused by or resulting from waves, tide, or tidal water, and the rising (including the overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and similar bodies of water, whether wind driven or not (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

c)      The term "occurrence" is defined as follows:

Plaintiffs 000277

i)    Except as hereinafter defined, "loss occurrence" shall mean an accident or occurrence or series of accidents or occurrences arising out of one event.

ii)   ii) Each loss occurrence which involves the perils of tornado, windstorm, cyclone, hurricane, hail or flood shall include all loss or damage wherever occurring occasioned by these perils which arise out of one atmospheric disturbance during a continuous period of 168 hours.

iii)  Each loss occurrence which involves the peril of earthquake, a series of earthquakes shall include all losses or damage sustained during a continuous period of 168 hours.

iv)   Each loss occurrence which involves the peril(s) of vandalism, malicious mischief or riot/civil commotion shall include all losses or damage sustained resulting from one or more acts committed by a person acting alone or in collusion with others during a continuous period of 168 hours.

v)    The Insured shall have the right to elect the moment from which the time periods referred to in ii), iii), and iv) above shall be deemed to have commenced, however no elected period of time shall commence within any previous occurrence.

vi)   Should the time period in ii), iii), and iv) above extend beyond expiration or cancellation date of this policy and commence prior to the expiration or cancellation date, this Company shall be liable as is such period fell entirely within the term of this policy.

vii)  However, we shall not be liable hereunder for any loss or damage:

viii) Occurring before this policy becomes effective; or

ix)   Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

d)   "Raw Stock" - Materials and supplies in the state in which the Insured receives it for conversion by the Insured into Finished Stock, including supplies consumed in such conversion or in the service rendered by the Insured.

e)   "Stock in Process" - Raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture by on behalf of the Insured but which has not become Finished Stock.

f)   "Finished Stock" - Stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

g)   "Merchandise" - Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

h)   "Normal" - The condition that would have existed had no loss occurred.

Plaintiffs 000278

i)  "Improvements and Betterments" - Fixtures, alterations, installations or additions comprising a part of the described building and made or acquired at the expense of the Insured, but which are not legally subject to removal by the Insured.

j)  "Valuable papers and records" - Written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents and manuscripts.

k)  "Electronic Data Processing Media" - All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles.

l)  "Securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets.

m)  "Fine Arts" - Shall include but not be limited to bona fide works of art, works of rarity, works of historical value, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, galley proofs, original records, sculptures, carvings and similar property.

n)  "Architect and Engineering Fees" - Any cost associated with the preparation of plans, supervision of and approval for the repair or replacement of damaged or destroyed property.

o)  "Tier One County" - the entire territory of the United States Virgin Islands, the entire Commonwealth of Puerto Rico, the entire State of Florida, and the following:
    i)    In the State of Alabama, the counties of Baldwin, Escambia, and Mobile;
    ii)   In the State of Connecticut, the counties of Fairfield, New Haven, and New London;
    iii)  In the State of Georgia, the counties of Bryan, Camden, Chatham, Glynn, Liberty, and McIntosh;
    iv)   In the State of Hawaii, the counties of Honolulu, Kauai, and Maui;
    v)    In the State of Louisiana, the counties (also known as "Parishes") of Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, Iberia, Iberville, Jefferson Davis, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John The Baptist, St. Martin, St. Mary, St. Tammany, Terrebonne, and Vermillion;
    vi)   In the Commonwealth of Massachusetts, the counties of Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, and Suffolk;

23

Plaintiffs 000279

vii)   In the State of Mississippi, the counties of George, Greene, Hancock, Harrison, Jackson, Pearl River, and Stone;

viii)  In the State of New Jersey, the counties of Atlantic, Monmouth, and Ocean;

ix)    In the State of New York, the counties of Kings, Nassau, Queens, and Suffolk;

x)     In the State of North Carolina, the counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington;

xi)    In the State of Rhode Island, the counties of Newport, Providence, and Washington;

xii)   In the State of South Carolina, the counties of Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, and Williamsburg;

xiii)  In the State of Texas, the counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Gollad, Harris, Hidalgo, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, and Willacy; and

xiv)   In the Commonwealth of Virginia, the counties of Accomack, Gloucester, Isle of Wright, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, Westmoreland, and York; and the independent cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Suffolk, and Virginia Beach.

p)     "Named Storm"- A storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Depression or Tropical Storm. "Named storm" does not include "flood" resulting from a "named storm".

q)     "Time Element' – Includes coverage as described under Clause 12., 13., 14., 15., 16., 17., 18., 19. and 20. hereunder.

r)     "Unnamed Location' – A location which has not been scheduled with underwriters or the insured's representative and is not considered a Newly Acquired location.

s)     "Newly Acquired Location" – A location acquired by the insured after inception of this policy for a period of up to 90 days until reported to and agreed by underwriters.

30.    FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES - This policy covers fire brigade charges and other extinguishing expenses for which the Insured may be assessed including loss of fire extinguishing materials expended resulting from a peril insured.

Plaintiffs 000280

31.    SEVERABILITY OF INTERESTS - The inclusion herein of more than one person or organization, as Insured, shall not operate to increase the limit of the Company's liability nor the deductible amounts to be borne by the Insured. Except with respect to limits of liability and deductible amounts, the terms of this policy shall apply separately to each person or organization covered as Insured in the same manner and to the same extent as though a separate policy had been issued to each such person or organization.

32.    DEBRIS REMOVAL - This policy covers the cost of removal of debris of property covered hereunder including the cost of removal of debris of property not insured hereunder from the premises of the Insured resulting from a peril insured against. Except as otherwise provided for elsewhere in this policy, this policy does not cover the cost to extract contaminants or pollutants from land or water, nor does it cover the cost to remove, restore or replace contaminated or polluted land or water.

If at the time insured property is contaminated as a direct result of physical damage insured against by this policy there is in force any law or ordinance regulating contamination, including but not limited to pollution, then this policy shall cover, as a result of the enforcement of such law or ordinance, the increased cost of decontamination and debris removal of such property in a manner to satisfy such law or ordinance.  As respects Time Element coverage(s), this policy is extended to include such time as is necessary and reasonable with the exercise of due diligence and dispatch to decontaminate such property in a manner to satisfy such law or ordinance.

33.    DEMOLITION AND INCREASED COST OF CONSTRUCTION - In the event of loss or damage under this policy that causes the enforcement of any law or ordinance in force at the time of loss regulating the construction, repair or use of property, this Company shall be liable for:

a)    <u>COVERAGE A</u> - the loss in value of the undamaged portion of the property as a consequence of the enforcement of any law or ordinance that requires demolition of undamaged parts of the same property;

b)    <u>COVERAGE B</u> – the cost to demolish and clear the site of undamaged parts of the same property;

c)    <u>COVERAGE C</u> – the increased cost to repair or reconstruct damaged and undamaged property on the same or another site when the increased cost is a consequence of the enforcement of any law or ordinance.  These costs are limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  This Company shall not be liable for any increased cost of repair or reconstruction loss unless the damaged property is actually rebuilt or replaced;

Plaintiffs 000281

d)     Any increase in loss including but not limited to Business Interruption, Extra Expense, Rental Value, Rental Income, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law or ordinance.

e)     In the event real or personal property is not repaired or replaced to the same height, floor area, size, style or comparable quality of the original property insured due to the enforcement of law or ordinance regulating, restricting or prohibiting repair or replacement of covered property, this policy will pay the full replacement cost without deduction for depreciation for the real or personal property damaged or destroyed, as if the property was replaced to the same height, floor area, size, style or comparable quality of the original property insured.  This policy will also pay Time Element loss as if the original structure were repaired or replaced to original specifications, subject to the terms and conditions of these coverage(s).

34.   EXPEDITING EXPENSE - This policy covers the extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

35.   CONTRIBUTING INSURANCE - Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy.  This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

36.   EXCESS INSURANCE - Excess insurance is insurance over the limit of liability set forth in this policy.  The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

37.   UNDERLYING INSURANCE - Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire.  The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy. Should the amount of loss payable under such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then no deductible shall apply hereunder and that portion which exceeds such a deductible amount shall be considered "other insurance". Should the amount of loss payable under such underlying insurance be less than the largest deductible amount which would apply in the event of loss under this policy, then the deductible amount to be deducted hereunder shall be the difference between the amount to be paid under such underlying insurance and the largest deductible amount which would apply in the event of loss under this policy.

38.   OTHER INSURANCE - Except for insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether

26

Plaintiffs 000282

prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils.  This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.

39.   SUBROGATION - Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder.  The right of subrogation against the Insured, affiliated, subsidiary, and associated companies, or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived and at the option of the Insured, against a tenant or guest of the Insured. In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.  If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests.  If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

40.   SALVAGE AND RECOVERIES - All salvages, recoveries, and payments, (excluding proceeds from subrogation and underlying insurance) recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly.  If proceeds from subrogation are recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(s) participating in the payment of any loss, in the proportion of their respective interests.

41.   CONTROL OF DAMAGED MERCHANDISE - The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods.  The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods.  The Insured, using reasonable discretion, shall be the sole judge as to whether production or EDP equipment and/or media is damaged and unusable. This insurer shall be allowed to dispose of as salvage, any non-proprietary property deemed unusable by the Insured.

27

42.    BRAND OR TRADEMARK - In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carriers or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at this Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

43.    ERRORS OR OMISSIONS - Any unintentional error or omission made by the Insured in the application for insurance shall not void or impair the insurance hereunder but only to the extent this Policy would have provided coverage had the unintentional error or omission not been made provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department. This coverage does not apply if there is coverage available under any other provision in this Policy.

44.    NOTICE OF LOSS - As soon as practicable after any loss or damage occurring under this policy is known to the Insured's home office insurance department, the Insured shall report such loss or damage with full particulars to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 for transmission to the designated loss adjuster and to this Company.

45.    DESIGNATED LOSS ADJUSTER - It is understood and agreed that each and every loss will be adjusted by Jeff Hellman of McLaren Young International, 19324 40th Avenue West, Suite C, Lynnwood, WA 98036.

46.    PROOF OF LOSS - Proof of loss is required as soon as practicable following the Company's written request for signed Proof from Insured; however, Insured, at its option, may elect to file Proof with the Company prior to the Company's request.  It shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained.

47.    PARTIAL PAYMENT OF LOSS - In the event of a loss covered by this policy, it is understood and agreed that the Company shall allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

48.    PAYMENT OF LOSS - All adjusted claims shall be due and payable no later than thirty (30) days after presentation of acceptable proofs of loss by the Insured or its appointed representative.

49.    LOSS ADJUSTMENT EXPENSES - This policy is extended to include reasonable expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. These expenses include fees of professionals engaged to assist the Insured in determining the cause and origin of the loss, the amount

28

Plaintiffs 000284

of loss sustained, and the amount of loss payable under this policy. This policy shall not cover the expenses of a public adjuster. Such expenses shall not exceed $2,000,000 in any one occurrence.

50.   APPRAISAL - If the Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser.  The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending.  Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss.  If the appraisers fail to agree, they shall submit their differences to the umpire.  An award in writing by any two shall determine the amount of loss.  The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

51.   CONSEQUENTIAL LOSS - This policy insures against consequential loss including spoilage to real and personal property as insured hereunder caused by change of temperature or humidity or by interruption of any service including but not limited to power, heat, air conditioning, or refrigeration resulting from a peril insured against.

52.   PAIR AND SET - In the event of loss or damage by a peril insured against to any article or articles which are part of a pair or set, the measure of loss or damage to such article or articles shall be the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

53.   CONSEQUENTIAL REDUCTION IN VALUE - This policy covers the reduction in value of insured components or parts of components or parts of products or the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to direct physical loss or damage insured against by this Policy to other insured components or parts of products.

54.   COINSURANCE WAIVER - This policy is not subject to any coinsurance or average clause.

55.   ALTERATIONS AND USE CLAUSE - Permission is granted to the insured to cease operations or for buildings to remain vacant or unoccupied provided fire protection, watch alarm services are maintained, and written notice is given to the Insurer prior to the sixtieth (60th) consecutive day of cessation of operations, vacancy or unoccupancy. The Insured's building is considered vacant or unoccupied when it does not contain enough covered Property to conduct customary business operations.

Plaintiffs 000285

56.     ASSISTANCE AND COOPERATION OF THE INSURED - The Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

57.     SUE AND LABOR - In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment.  This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

58.     REINSTATEMENT - With the exception of loss subject to annual aggregate limits as noted herein, no loss hereunder shall reduce the amount of this policy.

59.     SUIT AGAINST THE COMPANY - No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy.  The Company agrees that any action or proceeding against it for recovery of any loss under this policy shall not be barred if commenced within the time prescribed therefor in the statutes of Florida.

60.     CERTIFICATES OF INSURANCE - It is understood and agreed that Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 is authorized to issue certificates of insurance naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests subject always to the terms, conditions, and limits of liability of this policy. The Company agrees to waive the issuance of formal Company endorsements in respect of such interests.

61.     NOTIFICATION CLAUSE - All notices or communications concerning this policy shall be addressed to the offices of the Insured, to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 and to AmWINS Brokerage of Georgia, 3630 Peachtree Road NE, Suite 1700, Atlanta, GA 30326.  All such notices shall be sent via registered mail.

62.     CANCELLATION/NON RENEWAL - This policy may be cancelled at any time at the request of the Insured or it may be cancelled or non-renewed by the Company by mailing to the Insured written notice stating when, not less than ninety (90) days thereafter or ten (10) days in the event of non-payment of premium, such cancellation or non-renewal shall be effective. If the First Named Insured cancels, return of any unearned premium will be calculated on the

30

Plaintiffs 000286

customary short rate basis. If the Company cancels, return of any unearned premium will be calculated on a pro rata basis. Return of any unearned premium will be made by the Company as soon as practicable. The cancellation will be effective even if the Company has not made or offered a refund.

63.    TITLES OF PARAGRAPHS - The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

64.    MORTGAGE CLAUSE - As respects Real Property only, loss, if any, under this policy shall be payable to the mortgagee (or trustee) as its interest may appear under all present or future mortgages upon the property herein insured in which the aforesaid may have an interest as mortgagee (or trustee) in order or precedence of mortgages., and this insurance as to the interest of said mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that, in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided also, that the mortgagee (or trustee) shall, notify the Company of any changes of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and unless permitted by this policy, it shall be noted thereon and the mortgagees or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The company reserves the right to cancel this policy at any time as provided by its terms, and in such case, this policy shall continue in force for the benefit only of the mortgagee (or trustee) for an additional thirty (30) days.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgagee debt, or may at their option pay to the mortgagee (or trustee) the whole principal due or to grow on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and all of such other securities, but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

65.    JURISDICTION AND SUIT - It is hereby understood and agreed that in the event of the failure of the Insurer to pay an amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court

31

of competent jurisdiction within the United States and will comply with all requirements necessary to give such jurisdiction.  All matters arising hereunder shall be determined in accordance with the law and practice of such court. In any suit instituted against it under this, the Insurer will abide by the final decision of such court or any appellate court in the event of an appeal.

66.     POLLUTANT CLEAN UP AND REMOVAL - This policy is extended to cover the expense actually incurred by the Insured to decontaminate, clean up and/or remove pollutants from land, water or air including resultant time element loss if the release, discharge, or dispersal of the pollutants results from any loss or damage as covered herein. Such expenses shall not exceed $500,000 in any one policy year.

67.     ATTACHMENT CLAUSE – Please refer to the Participation Page.

_____

 [Authorized Signature]

Plaintiffs 000288

# Endorsement No. 1

### <u>Microorganism Exclusion – Resultant Mold</u>

This policy does not insure any loss, Damage, Time Element, claim, cost, expense or other sum directly or indirectly arising out of or relating to (regardless of whether any other cause or event contributed concurrently or in any sequence):

Fungus, mold, mildew, yeast, mushrooms, spores, toxins, mycotoxins, bacteria or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion shall not apply to any such loss, Damage, Time Element, claim, cost, or expense resulting from mold that is a direct result of an Insured Cause of Loss and is not otherwise excluded by the Policy, provided such loss, Damage, Time Element, claim, cost, or expense is reported to the Company in writing within twelve months from the expiration date of the policy. This clause is subject to a $500,000 per occurrence and in the annual aggregate sublimit.

This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part, for these matters.

All other terms and conditions remain unchanged.

Plaintiffs 000289

| Named Insured | | Endorsement Number |
|---|---|---|
| Portofino Master Homeowners Association, Inc. | | 2 |
| **Policy Number** | **Policy Period** | **Effective Date of Endorsement** |
| EAF645360-20 | 04/01/2020    to    04/01/2021 | 04/01/2020 |
| **Issued By** | | **Endorsement Issue Date** |
| AXIS Surplus Insurance Company | | 04/01/2020 |

**This endorsement changes the policy.  Please read it carefully.**

### <u>MINIMUM EARNED PREMIUM CLAUSE - PERCENTAGE</u>

In the event of cancellation of this policy by the Insured, a minimum earned premium of 35% of the original policy premium shall become earned; any conditions of the policy to the contrary notwithstanding.

Failure of the Insured to make timely payment of premium shall be considered a request by the Insured for the Company to cancel.  In the event if such cancellation by the Company for non-payment of premium, the minimum earned premium shall be due and payable; provided, however, such non-payment cancellation shall be rescinded if the Insured remits the full premium due within 10 days of receiving it.

In the event of any other cancellation by the Company, the earned premium shall be computed pro-rata, not subject to the minimum premium.



ES 106 0106

Plaintiffs 000290

| Named Insured | | Endorsement Number |
|---|---|---|
| Portofino Master Homeowners Association, Inc. | | 3 |
| **Policy Number** | **Policy Period** | **Effective Date of Endorsement** |
| EAF645360-20 | 04/01/2020    to    04/01/2021 | 04/01/2020 |
| **Issued By** | | **Endorsement Issue Date** |
| AXIS Surplus Insurance Company | | 04/01/2020 |

**This endorsement changes the policy.  Please read it carefully.**

<u>**COMMERCIAL PROPERTY EXCLUSION ENDORSEMENT**</u>

1.    EXCLUSIONS

   A.  POLLUTANTS AND CONTAMINANTS EXCLUSION

      1)  As used in this endorsement, Pollutants or Contaminants means:

         a.  Any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

         b.  Pollutants or contaminants include, but are not limited to those materials that can cause or threaten damage to human health or human welfare or cause or threaten damage, deterioration, loss of value, marketability or loss of use to property.  Pollutants or contaminants include, but are not limited to bacteria, fungi, mold, mildew, virus or hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, Toxic Substances Control Act or as designated by the U.S. Environmental Protection Agency or any other governing authority.

      2)  This policy does not cover any of the following.

         a.  Loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of pollutants or contaminants, however caused;

         b.  The expense or cost to extract or remove pollutants or contaminants from debris;

         c.  The expense or cost to extract or remove pollutants or contaminants from land or water;

         d.  The expense or cost to extract or remove, restore or replace contaminated or polluted land or water;

         e.  The costs associated with the enforcement or any ordinance or law which requires the Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of pollutants or contaminants;



ES 133 0106

Plaintiffs 000291

      f.   Any cost to transport any property or debris to a site for storage or decontamination required because the property is infected by pollutants or contaminants, whether or not such removal, transport or decontamination is required by law, regulation or any authority governing such matters;

      g.   Any cost to store or otherwise dispose of any property because pollutants or contaminants infect the property; or

      h.   Any expense for the investigation or defense of any loss, damage or any cost, loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above.

3)   Additional Coverage

This policy is extended to cover the necessary and reasonable expenses actually incurred by the insured to clean up or remove pollutants from land or water at Covered Locations under this policy during the policy period if the discharge, dispersal, seepage, migration, release or escape of the pollutants is directly caused by or results directly from fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective system. The most the Company will pay for such pollutant clean up or removal is a $10,000 aggregate in any one policy year. The expenses will be paid only if they are reported to the Company in writing within 180 days of the date on which the covered loss occurs.  This additional coverage does not increase the Policy Limit of Insurance.

B.  ASBESTOS, DIOXIN OR POLYCHLORINATED BIPHENOLS MATERIALS EXCLUSION

1)   In this exclusion, Asbestos, Dioxin, and Polychlorinated Biphenols are all referred to as "Materials."

2)   This policy does not cover loss or damage caused directly or indirectly by any of the following:

      a.   Removal of such "Materials" from any goods, products, structures or debris;

      b.   Demolition, increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such "Materials";

      c.   Any governmental direction or request declaring that such "Materials" present in or part of or utilized in any undamaged portion of the Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified; or

      d.   Any expense for the investigation or defense of any loss, damage or any cost, loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above.

3)   Additional Coverage

This policy is extended to cover the necessary and reasonable expenses actually incurred by the Insured to remove Asbestos at Covered Locations under this policy during the policy period if Asbestos itself is directly damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective system.  The most the Company will pay for such Asbestos removal is a $10,000 aggregate in any one policy year. The expenses will be paid only if they are reported to the Company in writing within 180 days



        ES 133 0106

Plaintiffs 000292

of the date on which the covered loss occurs.  This additional coverage does not increase the Policy Limit of Insurance.

C.  NUCLEAR EXCLUSION CLAUSE

1)  The Company shall not be liable for loss or damage by nuclear reaction, nuclear radiation or radioactive contamination, however caused.

2)  This policy will not cover any cost or expense to defend any claim or suit or pay any damages, loss or expense or obligation, resulting from nuclear reaction, nuclear radiation or radioactive contamination, however caused.

D.  FINES OR PENALTIES

This policy will not pay any costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

2.    OTHER INSURANCE CONTRACTS

Coverage provided by other insurance contract(s) for any exclusion in this endorsement shall not affect the terms and conditions as set forth by this endorsement.  This policy shall not cover as excess insurance or contribute with such other insurance for loss or damage excluded by this endorsement.

The policy changes provided by this endorsement shall supersede and annul any conflicting provisions of the policy.  All other matters not affected by this endorsement remain the same and shall be governed by the terms and conditions of the Company's policy to which this endorsement is attached.



**Plaintiffs 000293**

| Named Insured | | Endorsement Number |
|---|---|---|
| Portofino Master Homeowners Association, Inc. | | 4 |
| **Policy Number** | **Policy Period** | **Effective Date of Endorsement** |
| EAF645360-20 | 04/01/2020     to     04/01/2021 | 04/01/2020 |
| **Issued By** | | **Endorsement Issue Date** |
| AXIS Surplus Insurance Company | | 04/01/2020 |

**This endorsement changes the policy.  Please read it carefully.**

## <u>TOTAL EXCLUSION – ELECTRONIC PROPERTY AND VIRUS</u>

This endorsement modifies insurance provided under all Coverage Parts.

A.  It is agreed the following is not Covered Property:

Electronic Data

Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.   The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

B.  It is agreed the following are not Covered Causes of Loss:

1.  Virus – A virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation.

2.  Computer Manipulation – Loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by any entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

C.  The following item is added as an EXCLUSION:

COST TO REPLACE ELECTRONIC DATA **—** The cost to replace or restore information which exists as electronic data.



Page 1 of 2                                    ES 033 0106

Plaintiffs 000294

D.  The following is added to the Business Income (and Extra Expense) Coverage Form, if it applies:

ADDITIONAL LIMITATION – Interruption of Computer Operations

Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data.

Coverage of Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data.



Plaintiffs 000295

| Named Insured | | Endorsement Number |
|---|---|---|
| Portofino Master Homeowners Association, Inc. | | 5 |
| **Policy Number** | **Policy Period** | **Effective Date of Endorsement** |
| EAF645360-20 | 04/01/2020    to    04/01/2021 | 04/01/2020 |
| **Issued By** | | **Endorsement Issue Date** |
| AXIS Surplus Insurance Company | | 04/01/2020 |

**This endorsement changes the policy.  Please read it carefully.**

### NUCLEAR, CHEMICAL AND BIOLOGICAL EXCLUSION ENDORSEMENT

The following exclusions are added to your Policy.

This insurance does not apply to:

A.   Loss or damage arising directly or indirectly from nuclear detonation, reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy, however such nuclear detonation, reaction, nuclear radiation or radioactive contamination may have been caused.  This exclusion replaces any other nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination exclusions found elsewhere in this Policy.

B.   Loss or damage arising directly or indirectly from the dispersal, application or release of, or exposure to, chemical or biological materials or agents that are harmful to property or human health, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy, however such dispersal, application, release or exposure may have been caused.

C.   This exclusion applies to all coverage under the Policy notwithstanding any coverage extension or any other endorsement.



**ES 116 0608**

**Plaintiffs 000296**

**AXIS PROPERTY INSURANCE**

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 6 | 12:01 a.m. on 04/01/2020 | EAF645360-20 | Included |

### EXCLUSION OF LOSS OR DAMAGE DUE TO VIRUS OR BACTERIA

It is agreed that the following exclusion shall be added to the policy:

**Virus or Bacteria Exclusion**

We will not pay for loss or damage to covered property caused by or resulting from, contributed to or made worse by, actual, alleged or suspected presence of any virus, bacterium or microorganism that induces or is capable of inducing physical distress, illness or disease.  Nor will we pay:

1. The expense or cost to extract or remove such a virus, bacterium or microorganism from covered property;

2. The costs associated with the enforcement of any ordinance or law which requires you or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of such a virus, bacterium or  microorganism;

3. Any cost to transport any property or debris to a site for storage or decontamination required because the property is infected by such a virus, bacterium or microorganism, whether or not such removal, transport or decontamination is required by law, regulation or any authority governing such matters; or

4. Any cost to store or otherwise dispose of any property because of the presence of such a virus, bacterium or microorganism in or on covered property.

However, this exclusion does not apply to loss or damage caused by or resulting from fungus, wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

This exclusion applies to all coverage under all forms and endorsements that comprise this coverage part or policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

With respect to loss or damage subject to this exclusion, the terms of this exclusion shall supersede any exclusion pertaining to pollutants.

As used in this endorsement:

The term "we" means the company providing this insurance.

The term "covered property" shall have the same meaning as set forth in the policy and shall have the same meaning as the term "insured property" (whenever such term is used in policy).

The terms of this exclusion, or the inapplicability of this exclusion to any particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this coverage part or policy.

All other provisions of the Policy remain unchanged.

Includes copyrighted material of Insurance Service Office Inc., with its permission.

AXIS 1012682 0320

Plaintiffs 000295

| Named Insured | | Endorsement Number |
|---|---|---|
| Portofino Master Homeowners Association, Inc. | | 7 |
| **Policy Number** | **Policy Period** | **Effective Date of Endorsement** |
| EAF645360-20 | 04/01/2020    to    04/01/2021 | 04/01/2020 |
| **Issued By** | | **Endorsement Issue Date** |
| AXIS Surplus Insurance Company | | 04/01/2020 |

**This endorsement changes the policy.  Please read it carefully.**

### TERRORISM EXCLUSION ENDORSEMENT

A.  The following exclusion is added:

Any other provision of this policy notwithstanding, this insurance does not cover loss, damage, injury, expense, cost or legal obligation directly or indirectly resulting from or arising out of or in any way related to any:

1. "Terrorism Act"; or

2. Actions taken by or on behalf of any government or any branch or division thereof (including, without limitation, the uniformed armed forces, militia, police, state security and anti-terrorism agencies) in responding to, preventing, combating, defending or retaliating against any "Terrorism Act."

This exclusion applies regardless of any other cause or event that in any way contributes concurrently or in any sequence to the loss, damage, injury, expense, cost or legal obligation.

This exclusion applies whether or not the "Terrorism Act" was committed in concert with or on behalf of any organization or government.

B. As used in this endorsement:

"Terrorism Act" means any act, preparation in respect of action or the threat of action that:

1. Involves violence or is dangerous to human life or tangible or intangible property (including electronic, communications, information or mechanical systems or infrastructure), and

2. Reasonably appears to be intended, in whole or in part, to:

a. Intimidate or coerce a civilian population or any segment of a civilian population; or
b. Disrupt any segment of the economy of one or more nations; or
c. Overthrow or influence the policy or conduct of a government; or
d. Respond to any governmental action or policy.

"Terrorism Act" shall also include any incident determined to be such by an official, department or agency that has been specifically authorized by federal statute to make such a determination.

"Terrorism Act" includes the intentional dispersal or application of pathogenic, or poisonous biological or chemical materials and shall also include any incident determined to be such by an official, department or agency that has been specifically authorized by federal statute to make such a determination.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this policy.



AXIS TERROR EXCLUSION 01 06

**Plaintiffs 000298**



| Endorsement No. | Effective Date of Endorsement | Policy Number | Additional Premium |
|---|---|---|---|
| 8 | 12:01 a.m. on 04/01/2020<br>If the above date is blank, then this endorsement is effective on the effective date of the Policy. | EAF645360-20 | N/A |

**CANCELLATION AND NONRENEWAL ENDORSEMENT – FLORIDA**

It is agreed that:

Any Cancellation or Nonrenewal provision in this policy is replaced by the following. If the policy does not contain a Cancellation and/or Nonrenewal provision, the following is added to the policy:

1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance notice of cancellation.  Such advance notice of cancellation should be mailed or delivered to the address indicated in the Declarations under the item entitled Notices to Insurer.

2.  Cancellation Of Policies In Effect

    a.  For 90 Days Or Less

    If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

    (1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    (2)  45 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

        (a)  A material misstatement or misrepresentation; or

        (b)  A failure to comply with the underwriting requirements established by the insurer.

    b.  For More Than 90 Days

    If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

    (1)  Nonpayment of premium;

    (2)  The policy was obtained by a material misstatement;

    (3)  Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

    (4)  A substantial change in the risk covered by the policy; or

    (5)  The cancellation is for all insureds under such policies for a given class of insureds.

    If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

        (a)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**Plaintiffs 000299**

(b) 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph 2.b.

c.   Notwithstanding the above provisions, if this policy provides coverage for an Insured's commercial residential property, if we cancel this policy for any of the reasons in 2.b., we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

(a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(b) 120 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph 2.b.

3.   We will mail or deliver our notice to the first Named Insured at the last mailing address known to us.

4.   If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

5.   Nonrenewal

a.   If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

b.   Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

6.   If notice of cancellation is mailed, proof of mailing shall be considered sufficient proof of notice.

As used herein, "us" and "we" refers to the insurance company named on the Declarations.

As used herein, "you", "your" or "named insured" refers to the person or entity first named as such on the Declarations.

If any provision of the policy contains cancellation or nonrenewal terms that are more favorable to the insured than those provided in this endorsement,  then, except where prohibited by applicable state law, the more favorable terms control.

All other provisions of the policy remain unchanged.

**Plaintiffs 000300**

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 9 | 12:01 a.m. on 04/01/2020 | EAF645360-20 | Included |

## NOTICE OF CANCELLATION CHANGE ENDORSEMENT

It is agreed that, notwithstanding any provisions to the contrary in this policy, the Insurer agrees to provide the required written notice of cancellation at least 90 days before the effective date of cancellation or the number of days required by applicable state law, whichever is greater, if it cancels the policy for a reason other than nonpayment of premium.

All other provisions of the policy remain unchanged.

Plaintiffs 000301



# SERVICE OF SUIT


# FLORIDA

The Company hereby designates the Chief Financial Officer of the Florida Office of Financial Regulation and his or her successors, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or by any beneficiary under this Policy against the Company arising out of this Policy, provided that all lawful process received by said Chief Financial Officer or his or her successors, is sent by certified or registered mail to the Company at:

**AXIS U.S. Insurance**

**Attn: Claims Administrator**

**10000 Avalon Blvd.**

**Suite 200**

**Alpharetta, GA 30009**

Service of process in any such action will also be valid if served upon any person in the State of Florida who, on behalf of the Company, solicits insurance within the State of Florida; makes, issues or delivers insurance policies within the State of Florida; or collects or receives any premiums or other consideration for the Company.

Service of process shall be deemed to be proper and lawful when in compliance with Florida Statutes, Surplus Lines Law, Section 626.907.

**Plaintiffs 000302**



# SIGNATURE PAGE

IN WITNESS WHEREOF, the Insurer has caused this policy to be issued by affixing hereto the facsimile signatures of its President and Secretary.

Secretary

Andrew Weissert, Secretary

President

Carlton Maner, President

Plaintiffs 000303



## <u>CLAIM NOTICE</u>

To report a new claim notice/loss, please notify:

**AXIS U.S. INSURANCE**

During business hours of 8:30 AM EST to 4:30 PM EST.

**Mailing Address**
PO Box 4470
Alpharetta, GA 30023

**Shipping Address**
10000 Avalon Blvd
Suite 200
Alpharetta, GA  30009

**Phone:**          (678) 746-9400
**Fax:**              (678) 746-9315
**Toll Free Fax:** (866) 770-5629
**E-mail:**          USClaimNoticeATL@axiscapital.com

**After business hours**
Please contact Cunningham Lindsey at 1-800-621-5410.



**ES 036 0220**

**Plaintiffs 000304**

# COMMON POLICY DECLARATIONS

**COLONY INSURANCE COMPANY**
**PO BOX 85122**
**RICHMOND, VA 23285**

**POLICY NUMBER**
XP190091-1

**RENEWAL OF**
XP190091-0

**PROGRAM CODE:**
*000-Non Program*

1. **NAMED INSURED AND MAILING ADDRESS:**

PORTOFINO MASTER HOMEOWNERS
ASSOCIATION, INC.
10 PORTOFINO DRIVE
GULF BREEZE, FL 32561

**PRODUCER:**   10026

AMWINS BROKERAGE OF GEORGIA, INC.
3630 PEACHTREE RD NE SUITE 1700
ATLANTA, GA 30326

2. **POLICY PERIOD:** From <u>04/01/2020</u> to <u>04/01/2021</u> 12:01 A.M. Standard Time at your Mailing Address above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL OF THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

3. **THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| COVERAGE PARTS | PREMIUM |
|---|---|
| PROPERTY EXCESS | |

Premium charge for coverage of certified acts of terrorism:
(Per Policyholder Disclosure attached.)
**or**
Coverage for certified acts of terrorism has been rejected; exclusion attached. [X]
(Per Policyholder Disclosure attached.)

ISSUED 07/28/2020 EA

| **Premium shown is payable at inception.** | **Total Policy Premium:** |
|---|---|
| | **Modeling Fee:** |

4. **FORMS APPLICABLE TO ALL COVERAGES:**

See Form U001 – Schedule of Forms and Endorsements

5. **BUSINESS DESCRIPTION:** CONDOS

Countersigned: _____
                         Date

By: _____
         Authorized representative

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1994

DCJ6550 (07/02)

**Plaintiffs 000305**



# Privacy Policy

Argo Group US, Inc. ("Argo Group") recognizes the importance of maintaining the privacy of our customers and the confidentiality of each individual's nonpublic personal information, including Social Security numbers.  We take seriously the responsibility that accompanies our collection of nonpublic personal information, including Social Security numbers.  Accordingly, Argo's corporate policy is to protect the privacy and confidentiality of our consumers and their nonpublic personal information as required by law.

## Information Collection and Use

In order to conveniently and effectively provide and service the insurance products we sell, we may collect and use Social Security numbers and other nonpublic personal information.  As such, this policy does not prohibit the collection or use of Social Security numbers and nonpublic personal information where legally authorized and/or required.  This policy complies with the requirements of the Gramm-Leach-Bliley Act (GLBA) and applicable federal and state laws and regulations implementing the act.  Such laws impose certain obligations upon third persons and organizations with which we share nonpublic personal information of our consumers, customers, former customers, or claimants. Accordingly, we prohibit the unauthorized disclosure of Social Security numbers and other protected nonpublic personal information, except as legally required or authorized.

## Information Sharing and Disclosure

Argo Group does not rent, sell or share your personally identifiable information with nonaffiliated third parties. Argo Group may, however, share personally identifiable information with third-party contractors. These third-party contractors are prohibited from using the information for purposes other than performing services for Argo Group.  Argo Group may disclose your information to third parties when obligated to do so by law and to investigate, prevent, or take action regarding suspected or actual prohibited activities, including but not limited to fraud and situations involving the security of our operations and employees.

Finally, Argo Group may transfer information, including any personally identifiable information, to a successor entity in connection with a corporate merger, consolidation, sale of all or a portion of its assets, bankruptcy, or other corporate change.

## Security

In order to protect your nonpublic personal information, we limit access to nonpublic personal information by only allowing authorized personnel to have access to such information. Furthermore, we maintain physical, electronic and procedural security protections to safeguard the nonpublic personal information in our records.  Documents that contain an individual's protected information are destroyed before disposal; this destruction process includes the shredding of print and disposable media and deletion of electronic media.  Argo Group has security measures in place to protect the loss, misuse and alteration of the information under our control. Our hardware infrastructure is housed in a controlled access facility that restricts access to authorized individuals. The network infrastructure is protected by a firewall and traffic is monitored and logged both on the firewall and servers. Sensitive administrative activities are carried out over secure, encrypted links between our offices and hosting facility. Administrative

**Plaintiffs 000306**

access is limited not only to authorized employees but also to specific remote administration protocols and IP addresses. All employees with access to personally identifiable information have been advised of Argo Group's security policies and practices. Argo Group will continue to conduct internal audits of its security systems and make all necessary enhancements to ensure the safety of the website and its users. No method of transmission over the Internet or method of electronic storage is 100% secure; therefore, while Argo Group uses commercially acceptable means to protect your information, we cannot guarantee absolute security.

Any Argo Group employee who becomes aware of the inappropriate use or disclosure of Social Security numbers and other protected nonpublic personal information is expected to immediately report such behavior to the General Counsel for further action.

**Corrected/Updated Information**

This policy applies to certain insureds of Argo Group, including but not limited to worker's compensation claimants.  If you have any questions about this Privacy Policy, please contact:

General Counsel
Argo Group US, Inc.
P.O. Box 469011
San Antonio, Texas 78246
(210) 321-8400

*Note: Argo Group is the parent of Argonaut Insurance Company; Argonaut-Southwest Insurance Company; Argonaut-Midwest Insurance Company; Argonaut Great Central Insurance Company; Argonaut Limited Risk Insurance Company; ARIS Title Insurance Corporation; Select Markets Insurance Company; Colony Insurance Company; Colony Specialty Insurance Company; Peleus Insurance Company (fka Colony National Insurance Company); Rockwood Casualty Insurance Company; Somerset Casualty Insurance Company; Grocers Insurance Agency, Inc.; Central Insurance Management, Inc.; Alteris Insurance Services, Inc.; Trident Insurance Services, LLC; Commercial Deposit Insurance Agency, Inc.; Sonoma Risk Management, LLC; John Sutak Insurance Brokers, Inc.; Colony Management Services, Inc.; Argonaut Management Services, Inc.; and Argonaut Claims Management, LLC.  This Privacy Policy applies to all companies and business produced or underwritten within Argo Group.

# COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

This Coverage Part consists of this Declarations Form, the Common Policy Conditions, the Commercial Property Conditions, the Coverage Forms(s) and the Endorsements indicated as applicable.

**POLICY NO**. XP190091-1

**NAMED INSURED**  PORTOFINO MASTER HOMEOWNERS ASSOCIATION, INC.

---

| **DESCRIPTION OF PREMISES** | [  ] "X" IF SUPPLEMENTAL DECLARATIONS ATTACHED |
| --- | --- |

| Prem. No. | Bldg. No. | Location, Construction and Occupancy |
| --- | --- | --- |
| 1 | 0 | SEE SCHEDULE DETAILS ON FILE WITH COMPANY , FL |

---

COVERAGES PROVIDED – INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF INSURANCE IS SHOWN.

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coinsurance* | Rates | Premium |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | 0 | See SOV | $ | Basic | | | |
| 1 | 0 | See SOV | $ | Broad | | | |
| 1 | 0 | See SOV | $ | NmdStrmCAT | | | |

*IF EXTRA EXPENSE COVERAGE, LIMITS ON LOSS PAYMENT

OPTIONAL COVERAGES – APPLICABLE ONLY WHEN ENTRIES ARE MADE IN THE SCHEDULE BELOW.

| Prem. No. | Bldg. No. | Agreed Value | | | Replacement Cost (X) | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | Expiration Date | Coverage | Amount | Building | Personal Property | Including Stock |

| Prem. No. | Bldg. No. | Inflation Guard (Percentage) | | *Monthly Limit of Indemnity (Fraction) | *Maximum Period of Indemnity (X) | *Extended Period of Indemnity (Days) |
| --- | --- | --- | --- | --- | --- | --- |
| | | Building | Personal Property | | | |

*APPLIES TO BUSINESS INCOME ONLY

## MORTGAGE HOLDERS

| Prem. No. | Bldg. No. | Mortgage Holder Name and Mailing Address |
| --- | --- | --- |

---

| **DEDUCTIBLE** $0.00 | **ANNUAL AGGREGATE LIMIT – WIND AND HAIL (IF APPLICABLE)** $ | **TOTAL PREMIUM FOR THIS COVERAGE PART** | |
| --- | --- | --- | --- |

| **FORMS / ENDORSEMENTS APPLICABLE** (To All Coverages) | | To Specific Premises / Coverages | | | |
| --- | --- | --- | --- | --- | --- |
| See Schedule of Forms and Endorsements – Form U001 | | Prem. No. | Bldg. No. | Coverages | Form Number |

DCJ6555 (11/06)      Includes copyrighted material of ISO Commercial Risk Services, Inc. with its permission
Copyright, ISO Commercial Risk Services, Inc., 1984.

**Plaintiffs 000308**

**Surplus lines insurers' policy rates and forms are not approved by any Florida regulatory agency.**

# SIGNATURE PAGE

IN WITNESS WHEREOF, the company issuing this policy has caused this policy to be signed by its President and its Secretary and countersigned (if required) on the Declarations page by a duly authorized representative of the company. This endorsement is executed by the company stated in the Declarations.

Colony Insurance Company

**President**                              **Secretary**

**Plaintiffs 000309**

Insured:  PORTOFINO MASTER HOMEOWNERS ASSOCIATION, INC.        U001 (10/04)
Policy Number:   XP190091-1

# SCHEDULE OF FORMS AND ENDORSEMENTS

Forms and Endorsements applying to and made part of this policy at the time of issuance:

| NUMBER | TITLE |
|---|---|
| FORMS APPLICABLE - | COMMON POLICY DECLARATIONS |
| | |
| IL0017-1198 | COMMON POLICY CONDITIONS |
| ILP001-0104 | U.S. TREASURY DEPT'S "OFAC" ADVISORY NOTICE TO POLICYHOLDERS |
| PRIVACYNOTICE-0415 | PRIVACY NOTICE |
| SIGCICFL-0817 | SIGNATURE PAGE |
| TRIANOTICE-0115 | POLICYHOLDER DISCLOSURE-NOTICE OF INSURANCE COVERAGE FOR CERTIFIED ACTS OF TERRORISM |
| U002-0917 | MINIMUM EARNED PREMIUM |
| U094-0415 | SERVICE OF SUIT |
| | |
| FORMS APPLICABLE - | COMMERCIAL PROPERTY COVERAGE PART |
| | |
| DCJ6555-1106 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| T5991-0420 | MASTER PROPERTY POLICY |
| U1008-1117 | EXCLUSION - ELECTRONIC DATA |
| U1021-0919 | EXCLUSION-CYBER EVENT |
| U672-0513 | TERRITORY COVERAGE LIMITATION |
| U676-1115 | EXCLUSION - FLOOD |
| U780-0619 | EARNED MINIMUM PREMIUM ENDORSEMENT FOR CATASTROPHIC WINDSTORM EXPOSURE |
| UIL0255SP-1115 | FLORIDA CHANGES - CANCELLATION AND NONRENEWAL |
| UIL0961-0115 | EXCLUSION OF CERTIFIED ACTS AND OTHER ACTS OF TERRORISM |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT

If service of process is to be made upon the Company by way of hand delivery or courier service, delivery should be made to the Company's principal place of business:

Claims Manager
  Colony Insurance Company,
  Colony Specialty Insurance Company, or
  Peleus Insurance Company
  8720 Stony Point Parkway, Suite 400
  Richmond, Virginia 23235

If service of process is to be made upon the Company by way of the U.S. Postal Service, the following mailing address should be used:

General Counsel
  Colony Insurance Company,
  Colony Specialty Insurance Company, or
  Peleus Insurance Company
  P.O. Box 469011
  San Antonio, Texas 78246

Where required by statute, regulation, or other regulatory directive, the Company appoints the Commissioner of Insurance, or other designee specified for that purpose, as its attorney for acceptance of service of all legal process in the state in any action or proceeding arising out of this insurance.

The Commissioner or other designee is requested to forward process to the Company as shown above, or if required in his/her particular state, to a designated resident agent for service of process.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Plaintiffs 000312

## PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies) , do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy.

Provided that:

1.    The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2.    The liability of each of the Insurers shall not exceed the Participation Limit set against its name.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurer | Policy Number | Participation | Authorized Signature |
|---------|---------------|---------------|----------------------|
| Westchester Surplus Lines Insurance Company | D38064666 004 | $5,000,000 part of $15,000,000 Primary | |
| Endurance American Specialty Insurance Company | ESP30000298003 | $5,500,000 part of $15,000,000 Primary | |
| Everest Indemnity Company | CA3P005801201 | $3,000,000 part of $15,000,000 Primary | |
| Princeton Excess Surplus Lines Insurance Company | 3VA3PP0000251-02 | $1,500,000 part of $15,000,000 Primary | |
| Arch Specialty Insurance Company | ESP1002326-00 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Axis Surplus Insurance Company | EAF645360-20 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Colony Insurance Company | XP190091-1 | $6,250,000 part of $25,000,000 excess of $25,000,000 | |
| Evanston Insurance Company | MKLV11XP007995 | $7,500,000 part of $25,000,000 excess of $25,000,000 | |
| Aspen Specialty Insurance Company | PX005LG20 | $5,000,000 part of $25,000,000 excess of $25,000,000 | |

**Plaintiffs 000313**

| | | | |
|---|---|---|---|
| Independent Specialty Insurance Company | VUX-CN-0000328-04 | $8,689,317 part of $217,232,927 excess of $25,000,000 | |
| Interstate Fire & Casualty Company | VRX-CN-0000328-04 | $28,240,281 part of $217,232,927 excess of $25,000,000 | |
| Lloyd's of London | VPC-CN-0000328-04 | $17,378,634 part of $217,232,927 excess of $25,000,000 | |
| James River Insurance Company | 00090459-1 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Maxum Indemnity Company | MSP-6012522-11 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Landmark American Insurance Company | LHD912400 | $48,058,232 part of $192,232,927 excess of $50,000,000 | |
| Homeland Insurance Company of New York | 795012091 | $50,000,000 part of $100,000,000 excess of $200,000,000 | |
| Everest Indemnity Company | CA3X001322201 | $21,116,464 part of $42,232,927 excess of $200,000,000 | |

2

T5991-0420

**Plaintiffs 000314**

## MASTER PROPERTY POLICY

1.     NAMED INSURED – "Named Insured" means **Portofino Master Homeowners Association at Pensacola Beach, Inc.; Portofino Tower One Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Two Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Three Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Four Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Five Homeowners Association at Pensacola Beach, Inc.** means the First Named Insured and any entity in which the First Named Insured owns an interest of more than 50 percent, during the Policy Period, controls during the Policy Period, or has the responsibility of placing the insurance provided by this Policy during the Policy Period. No entity is covered under this Policy unless the Company has received identifying information for such entity during the application or submission process, except if such entity is covered under miscellaneous unnamed insured locations or newly acquired property, or if such entity is added by endorsement.

Notwithstanding any provision to the contrary in this Policy, if other valid and collectible insurance is available to any entity covered by this Policy solely because of the ownership, control, or responsibility to purchase insurance by the First Named Insured, this insurance will be excess with regard to such other insurance whether contingent, primary, excess or any other basis.

2.     TERM OF INSURANCE In consideration of a $ annual premium, this policy attaches and covers for a period of one year from April 1, 2020 to April 1, 2021, beginning and ending at 12:01 A.M. standard time, at the location of the property involved.

3.     PARTICIPATION – Please refer to the Participation Page.

4.     LIMIT OF LIABILITY - This Company shall not be liable for more than its proportion of $242,232,927 for any one occurrence.

5.     SUBLIMIT(S) OF LIABILITY) - This Company shall not be liable for more than its proportion of the following sublimits.  Sublimits are part of and not in addition to the overall Limit of Liability and apply on a per occurrence basis unless otherwise noted:

a)     $15,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Flood.

b)     $25,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Earthquake.

c)     $1,000,000 per occurrence as respects Accounts Receivable

d)     $500,000 per occurrence as respects Arson Reward

**Plaintiffs 000315**

e)   $1,000,000 per occurrence as respects Contingent Time Element, Attraction Properties are excluded

f)   $1,000,000 per occurrence as respects Consequential Loss

g)   $10,000,000 per occurrence as respects Course of Construction Including Soft Costs

h)   Included per occurrence as respects Demolition and Increased Cost of Construction Coverage A

i)   $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage B

j)   $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage C

k)   $1,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage D

l)   $10,000,000 per occurrence as respects Debris Removal

m)   $10,000,000 per occurrence as respects Errors and Omissions

n)   25% of the Adjusted Loss Maximum, $10,000,000 per occurrence as respects Extra Expense

o)   $5,000,000 per occurrence as respects Expediting Expense

p)   200,000,000 per occurrence as respects Equipment Breakdown

q)   $1,000,000 per occurrence as respects Contract Penalty

r)   $1,000,000 per occurrence as respects Fire Brigade Charges and Extinguishing Expenses

s)   $50,000 per occurrence as respects Inland Transit

t)   The lesser of 30 days of $2,500,000 per occurrence as respects Ingress/Egress

u)   $5,000,000 per occurrence as respects Miscellaneous Unnamed Locations

v)   $5,000,000 per occurrence as respects Newly Acquired Property (90 days; if not reported within 90 days the coverage ceases)

w)   $1,000,000 per occurrence as respects Leasehold Interest

x)   $500,000 per occurrence as respects Lost Master/Key Card

y)   $5,000,000 per occurrence as respects Rental Value/Rental Income

z)   Excluded per occurrence as respects Research and Development

aa)   $1,000,000 per occurrence as respects Royalties

bb)   $2,500,000 per occurrence as respects Service Interruption. Property Damage and Time Element Combined.

cc)   $1,000,000 per occurrence as respects Valuable Papers and Records

dd)   The lesser of 30 days of $2,500,000 per occurrence as respects Civil or Military Authority

ee)   $3,000,000 per occurrence as respects Landscaping, subject to a $25,000 maximum per item

ff)   $1,000,000 per occurrence as respects Fine Arts, subject to a $25,000 maximum per item

The amount of loss from any one occurrence for which this policy is excess, shall be determined by the combined loss, damage or expense as insured under the primary policy. In the event of loss or damage involving more than one coverage or peril, The Limits of Liability of the underlying policies shall first

Plaintiffs 000316

apply to the coverage(s) or peril(s) not insured by this policy, and the remainder, if any to the coverages(s) or peril(s) as provided hereunder. Upon erosion or exhaustion of the Limits of Liability of the underlying policies, this policy shall then be liable for the loss uncollected from the coverage(s) or perils(s) insured hereunder, subject to the Limit of Liability specified herein. In the event of reduction or exhaustion of the aggregate limit(s) designated in the underlying policy(ies), it is hereby understood and agreed that such insurance as is afforded by this policy shall apply in excess of the reduced or exhausted underlying limit(s). The insured maintains the right to allocate and/or apply coverages, interests and/or perils, as insured in the primary and/or excess policies.

6.     **DEDUCTIBLE CLAUSE** - The Company will adjust all losses, damages or expenses arising out of any one occurrence as one loss. The Company will deduct the following from such loss:

**$50,000** per occurrence for all perils including earthquake sprinkler leakage, and the backup of sewers and drains, except:

WAITING PERIOD:

With respect to all Time Element coverages, coverage is provided by this policy only if the period of interruption of the Insured's business exceeds 24 hours. Then Time Element coverage will apply excess of the appropriate policy deductible.

EARTHQUAKE:

As respects loss or damage to property resulting from the peril of Earthquake, all loss, damage or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deductible the sum of $50,000. This deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

FLOOD:

As respects loss or damage to property resulting from the peril of Flood, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss. The Company will deduct the following from such loss:

With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100 year flooding, as defined by the Federal Emergency Management Agency, all loss arising out of any one occurrence shall be adjusted as one loss and from the loss shall be deducted the maximum amount recoverable under the National Flood Insurance Program for the Real or Personal Property at each Building, whether or not such coverage is purchased or maintained.

In addition, the following Deductible will apply to property not eligible and coverages not available under the National Flood Insurance Program that are covered under this Policy and any difference in valuation between policies: $100,000 per Occurrence.

The determination of whether a property is in whole or in part subject to the 100 Year Flood Zone shall be at the inception of the policy and not at the time of loss.

5

**Plaintiffs 000317**

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

NAMED STORM:

With respect to loss or damage to property in Tier 1 Counties resulting from the period of Named Windstorm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm), the deductible shall be 2% of such unit of insurance at each location in accordance with policy valuation at the time of loss. A minimum $100,000 each occurrence shall apply.

With respect to any other named storm loss or damage, the deductible shall be **$50,000** any one occurrence.

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

ALL OTHER WIND and HAIL:
As respects loss or damage to property resulting from the peril of All Other Wind, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss. The Company will deduct the following from such loss:

**$50,000**

Definition of 'Unit of Insurance':
   a)  Each separate building or structure
   b)  Contents in each separate building or structure
   c)  Property in the yard of each separate building or structure
   d)  Annual Business Interruption value applying to each separate building or structure.
   e)  Each Other Property item as listed in the Statement of Values. If values are not listed separately, the value is included in the building value.

Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence. If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the insured shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s), notwithstanding the above reference to two or more deductibles.

The deductible amounts specified above shall not apply to general average contributions and salvage charges.

7.   LOSS PAYABLE - Loss, if any, shall be adjusted with and payable to the Insured, or as directed by them.

T5991-0420

**Plaintiffs 000318**

8.   TERRITORY - This policy covers anywhere in the United States of America and its territories and possessions including coastal and inland waterways and while in due course of transit therein or thereto.

9.   PROPERTY COVERED - Except as hereinafter excluded, this policy covers the interest of the Insured in all real and personal property owned, used, leased or intended for use by the Insured or in which the Insured may have an insurable interest, or for which the Insured may be responsible for the insurance, or real or personal property hereafter constructed, erected, installed, or acquired including while in course of construction, erection, installation, and assembly including Improvements and Betterments. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary. This policy is extended to include:

a)   The interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by written contract for such property, including the cost to defend any allegations of liability for loss or damage to such property.

b)   At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured.

c)   Contractors' and/or subcontractors' (of any tier) and/or vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract.

10.   PROPERTY EXCLUDED - This policy does not cover loss or damage to:

a)   Money and securities;

b)   Land, land values, except as insured under the "Pollutant Cleanup of Land and Water" clause. This exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements if land improvements have been scheduled on the Schedule of Values on file with the company. Land improvements as described hereunder include, but are not limited to any alteration to the natural condition of the land by grading, landscaping, excavation, earthen dikes or dams, as well as additions to land such as pavements, roadways or similar works;

c)   Water; except water which is normally contained within any type of tank, piping system or other process equipment;

d)   Growing crops, standing timber, and live animals;

e)   Watercraft; aircraft and motor vehicles licensed for highway use;

f)   Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

g)   Underground mines or mine shafts or any property within such mine or shaft;

**Plaintiffs 000319**

h)   Offshore property; unless reported on the Schedule of Values on file with the company.

i)   Transmission and Distribution Lines beyond 1,000 feet of Insured Premises;

j)   currency; evidence of debt; notes

k)   Turbines and satellites;

l)   docks, piers, and wharves; bridges, roadways, streets, walks or any other paved surfaces; dams or dikes; railroad rolling stock; off-shore drilling rigs or platforms; underground mines, wells, caverns including property contained therein unless reported on the Schedule of Values on file with the company.

11.   PROPERTY VALUATION - The basis of loss adjustment shall be as follows:

a)   Valuable Papers & Records/Electronic Data Processing Media : the cost to repair or replace the property with other of like kind and quality including the cost of labor, service or supplies consumed in reconstructing, reproducing, recreating, transcribing or copying information; or, if not so replaced, the value blank.

b)   Raw materials and supplies: the replacement cost new.

c)   Stock in process: The value of raw materials plus labor expended plus the proper proportion of overhead charges.

d)   Finished stock and other merchandise for sale: The regular cash selling price less all discounts and charges to which such property would have been subject had no loss occurred.

e)   Real and personal property of others for which the Insured is liable: A valuation consistent with the liability of the Insured but only to the extent that such money is necessarily expended by the Insured.

f)   Electronic data processing equipment, production machinery & equipment: The cost to repair or replace new with like kind and quality. In addition, the Insured may elect to replace such equipment with equipment having technological advances and/or representing an improvement in function and/or forming part of a program of system enhancement and/or more consistent with the Insured's technology strategy (without any reduction or offset for betterment) provided that such replacement can be accomplished without increasing the Insurer's liability.

g)   Fine arts, at original cost to the Insured, per schedule, latest appraised value or current market value, all at the Insured's option.

h)   Other property not otherwise provided for; at replacement cost new without deduction for depreciation.  If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:

Plaintiffs 000320

    i)    The repairs, replacement or reinstatement must be executed with due diligence and dispatch.

    ii)    This Company's liability for loss or damage on a replacement cost basis shall not exceed the lesser of the replacement cost new of the property or any part thereof identical with such property intended for the same occupancy and use, including normal and customary profit and overhead even if the work is performed by the Insured; or the amount actually and necessarily expended in repairing or replacing said property or any part thereof including normal and customary profit and overhead even if the work is performed by the Insured.

12.    BUSINESS INTERRUPTION - This policy shall cover the loss resulting from necessary interruption of business conducted by the Insured including all interdependent loss of earnings between or among companies owned or operated by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

    a)    In the event of such loss, damage or destruction this Company shall be liable for the ACTUAL LOSS SUSTAINED by the insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business. Due consideration shall be given to the continuation of normal charges and expenses including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately before the loss. For the purposes of this insurance, "Gross Earnings" are defined as the sum of:

    i)    Net sales value of production from manufacturing operations, and net sales from Merchandising or Non-Manufacturing operations; and

    ii)    Other earnings derived from operations of the business,

    LESS THE COST OF:

    iii)    Raw Stock from which such production is derived;

    iv)    Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the services(s) sold by the Insured;

    v)    Merchandise sold, including packaging materials therefor; and

    vi)    Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

Plaintiffs 000321

b)      In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the period of restoration, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including ordinary payroll, directly attributable to such research and development activities.

c)      Resumption of Operations: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business:

i)      by a complete or partial resumption of operation at a location owned by the same entity suffering the loss, whether damaged or not; or

ii)      by making use of available stock, merchandise, or other property;

such reduction shall be taken into account in arriving at the amount of loss hereunder.

d)      EXPERIENCE OF THE BUSINESS - In determining the amount of gross earnings, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred. With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

e)      As respects coverage provided under the Gross Earnings clause of this policy, the insurer shall not be liable for any loss resulting from loss or damage to finished stock nor for the time required to reproduce said finished stock.

13.    Extra Expense - This policy shall cover the necessary extra expense, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

a)      The term "Extra Expense" wherever used in this Policy, is defined as the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally have been incurred to conduct the business during the same period had no loss or damage occurred.

Plaintiffs 000322

b)    In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities, this policy shall cover the actual loss sustained of the extra expenses as defined herein directly attributable to the interruption of such research and development activities.

c)    As soon as practicable the Insured shall resume normal operations of the business and shall dispense with such extra expense.

14.    This policy is extended to cover expenses as are necessarily incurred for the purpose of reducing any loss under this policy; however, such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

15.    SOFT COSTS - This policy shall cover soft costs, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to property under construction as covered herein.

a)    The term "Soft Costs" shall include:

i)    Additional interest costs on money used to finance construction or repair;

ii)    Additional real estate and property taxes incurred for the period of time that construction extends beyond the projected completion date;

iii)    Additional legal and accounting fees; and

iv)    Additional advertising and promotional expenses which become necessary as a result of an insured loss.

b)    This company shall pay soft costs incurred from the date that the building, structure or improvement would have been completed had no physical damage occurred until such time that it is completed. As soon as practicable after any loss, the Insured shall utilize every available means to reduce the amount of loss including:

i)    partial or complete resumption of construction, business or operations;

ii)    making use of materials, equipment, supplies, or other property at the Insured's premises or elsewhere; or

iii)    making use of substitute facilities or services where practical;

such reduction will be taken into account in arriving at the amount of such loss.

16.    Rental Value/Rental Income - This policy shall cover the actual loss sustained by the Insured resulting directly from the necessary untenability caused by direct

Plaintiffs 000323

physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as covered herein. Loss settlement shall not exceed the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenability.

a)  If the Insured is the lessor, for the purposes of this insurance, "rental value" is defined as the sum of:

   i)  the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the insured, and

   ii)  the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

   iii)  the fair rental value of any portion of said property which is occupied by the Insured.

b)  If the Insured is the lessee, rental value shall be the determined rental which the Insured is obligated to pay (including ground rents, accrued charges, real estate taxes and interest if the Insured shall be liable therefor) less such charges and expenses as do not necessarily continue.

c)  Experience of the Business - In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred. With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

d)  With respect to buildings or structures leased or rented by the Insured, this policy will serve as rental income insurance in those situations where the insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord. This policy will respond for rental expenses incurred by the Insured in excess of the expenses which would have been incurred had a leased or rented premises not been damaged or destroyed by any peril covered under this policy. Such coverage will apply for all additional expenses incurred during the period of untenability or if the lease cannot be terminated until its expiration.

17.  Royalties - This policy shall cover the loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to direct physical loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the other party.

Plaintiffs 000324

a)    Any loss hereunder shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED to such income referred to above, which would have been earned had no loss occurred.

b)    Resumption of Operations: The Insured shall influence, to the extent possible, the party with whom the agreement described above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Company.

c)    Experience of the Business: In determining the amount of income derived from the agreements(s) described above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

18.    Leasehold Interest - This policy covers the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

a)    the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

b)    improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of this policy;

c)    the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located; and "Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located. The "Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

Plaintiffs 000325

d)     The "Interest of the Insured as Lessee" is defined as:

    i)     the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

    ii)    the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

e)     The "Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is cancelled by the lessee, to the extent not covered under any other section of this policy.

f)     "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "Interest of the Insured as Lessee".

g)     This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

19.    Loss Provisions Applicable to Time Element Coverage - The "Period of Indemnity" is defined as the length of time for which loss may be claimed, and shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy, subject to the following provisions:

a)     The Period of Indemnity shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged.

b)     With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly the Period of Restoration shall be determined as provided above but such determined length of time shall be applied, and the loss hereunder calculated from the date that business operations would have begun had no damage or destruction occurred.

c)     Extended Period of Indemnity - The Period of Indemnity shall include such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

    i)     the date on which the liability of the Company for loss or damage would otherwise terminate; or

**Plaintiffs 000326**

    ii)    the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually completed;

terminating no more than 365 days from said later commencement date.

20.    Extensions of Time Element Coverage: This policy, subject to all its provisions and without increasing the amount of said policy, insures against direct physical loss resulting from damage to or destruction by the perils insured against, to:

a)    Any service provider's property including but not limited to, electrical equipment and systems, water, gas, steam, telephone or their respective transmission and distribution lines or utility plants which directly or indirectly provide incoming or outgoing services to the Insured situated on or outside of the Insured's premises.

b)    the actual loss sustained, and Extra Expense incurred by the Insured at an insured location during the period of restoration directly resulting from physical loss or damage of the type insured to property of the type insured at a Contingent Time Element Location, meaning a location within the TERRITORY of a direct supplier or direct customer of the Insured.

As respects this subparagraph b):

i.    The Insured will influence and cooperate with the Contingent Time Element Location in every way and take any reasonable and necessary action, including the use of other machinery, supplies, or locations, to effect mitigation of the loss payable hereunder.

ii.    In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

iii.    This Policy does not insure loss resulting from a lack of incoming or outgoing electricity, fuel, gas, water, steam, refrigeration, sewage, or telecommunications of a direct supplier or direct customer of the Insured.

iv.    The per occurrence deductible that applies to all perils also applies to the coverage as provided under this subparagraph b).

c)    dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other manufacturing purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources.

d)    the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory

Plaintiffs 000327

mile of an insured location, access to real or personal property is impaired or hindered by order of civil or military authority irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 e) below.

e)     the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory mile of an insured location, ingress to or egress from real or personal property is thereby impaired or hindered irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 d) above.

f)     property, facilities or piping systems which prevents the Insured from discharging its outgoing effluence.

21.   Transit - This policy shall cover property in transit, and this policy attaches and covers shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.  This insurance is extended to cover loss or damage to property:

a)     sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

b)     arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

c)     occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

d)     at the Insured's option, property which is incoming to the Insured.

The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor. With respect to shipments described under subparagraphs a and d above, this Company agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

Plaintiffs 000328

e)      The Insured is not to be prejudiced by any agreements exempting
      lightermen from liability.

f)      Seaworthiness of any vessel or watercraft, and airworthiness of any
      aircraft are admitted between this Company and the Insured.

22.   Accounts Receivable - Defined as:

a)      All sums due the Insured from customers, provided the Insured is unable
      to effect collection thereof as the direct result of loss of or damage to
      records of accounts receivable;

b)      Interest charges on any loan to offset impaired collections pending
      repayment of such sums made uncollectible by such loss or damage;

c)      Collection expense in excess of normal collection cost and made necessary
      because of such loss or damage;

d)      Other expenses, when reasonably incurred by the Insured in
      reestablishing records of accounts receivable following such loss or
      damage.

For the purpose of this insurance, credit card company charge media shall be
deemed to represent sums due the Insured from customers, until such charge
media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but
the Insured cannot more accurately establish the total amount of accounts
receivable outstanding as of the date of such loss, such amount shall be
computed as follows:

e)      the monthly average of accounts receivable during the last available
      twelve months shall be adjusted in accordance with the percentage
      increase or decrease in the twelve months average of monthly gross
      revenues which may have occurred in the interim.

f)      the monthly amount of accounts receivable thus established shall be
      further adjusted in accordance with any demonstrable variance from the
      average for the particular month in which the loss occurred, due
      consideration also being given to the normal fluctuations in the amount of
      accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however
established, the amount of such accounts evidenced by records not lost or
damaged, or otherwise established or collected by the Insured, and an amount to
allow for probable bad debts which would normally have been uncollectible by
the Insured.

23.   Lost Master/Key Card - If a master or grand master key is lost, or damaged so it
      cannot be duplicated, we will pay for the actual loss of keys, the cost of adjusting
      locks to accept new keys, or the cost of new locks, if required, of like kind and

**Plaintiffs 000329**

quality including the cost of installation subject to the limit contained in the Declarations.

24.     Arson Reward - If covered property sustains direct physical loss or damage caused by or resulting from a fire, and the origin of such loss is determined to be the criminal acts of an individual or individuals, we will pay a reward to the person or persons who provide information that leads to the arrest and conviction of the individual or individuals responsible for the loss.

25.     Contract Penalty – This policy covers a compensation payment due under the Hotel Management Agreement between the Franchisee, Named Insured, and any Franchisor, as identified via policy endorsement, or other appropriate subsidiaries acting as the management company or agent, whether insured or not under this policy. The Contract Penalty is triggered when the Hotel Management Agreement is terminated due to loss or damage of a type insured under this policy from an insured peril where such loss or damage causes a total constructive loss.

"A total constructive loss" means the destruction or damage to the Hotel by an insured peril whereby the destruction of or damage to the Hotel is such that the cost of repairing, rebuilding or replacing the Hotel exceeds 50% of the Replacement value of the Hotel." The Contract Penalty will only apply if the franchisor does not release the franchisee from the Hotel Management Agreement after a total constructive loss occurs and the First Named Insured / Franchisee elects not to repair or rebuild the property.

26.     BOILER & MACHINERY - This policy insures direct or indirect loss as covered elsewhere in this policy to insured property as a result of an Accident to an Object subject to the following definitions:

    a)      "Object" means any boiler, fired or unfired pressure vessel, refrigerating or air-conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

    b)      "Accident" means an accidental loss to an Object or a part thereof which manifests itself in physical damage that necessitates repair or replacement of the Object or part thereof.

    c)      "Hazardous Substance" means the additional expense incurred for clean up, repair or replacement, or disposal of damaged, contaminated or polluted property as a result of an "Accident" which causes property to become damaged, contaminated or polluted by a substance declared hazardous to health by an authorized governmental agency. "Additional Expenses" means expenses incurred that would not have been incurred, had no substance hazardous to health been involved in the accident.

27.     PERILS INSURED AGAINST - This policy insures against all risks of direct physical loss of or damage to property described herein including general

Plaintiffs 000330

average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

28.     PERILS EXCLUDED - This policy does not insure:

   a)     infidelity or dishonesty of the Insured or of the Insured's employees. A willful act of malicious intent shall not be deemed to be an act of infidelity. In no event does this Policy insure loss caused by theft by the Insured or the Insured's employees;

   b)     against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

   c)     against ordinary wear and tear or gradual deterioration unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

   d)     against inherent vice or latent defect unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

   e)     against errors in processing or manufacture of the Insured's product unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

   f)     against mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

   g)     against nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except if a covered peril ensues, liability is specifically assumed for direct loss by such ensuing peril but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination. This Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

   h)     against hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or

Plaintiffs 000331

expected attack by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or by military, naval, or air forces; or by any agent of any such government, power, authority, or forces;

i)     against any weapon employing atomic fission or fusion;

ii)    against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

iii)   against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against under this policy;

iv)   against risks of contraband or illegal trade;

v)    against confiscation, nationalization and expropriation;

Notwithstanding the above provisions, this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated. Nothing in the foregoing shall be construed to include any loss, damage, or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon or war employing atomic fission or fusion whether in time of peace or war.

i)     loss or damage caused directly or indirectly by the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants unless the release, discharge, dispersal, seepage, migration, or escape is caused by a peril not otherwise excluded herein. However, if a peril not otherwise excluded herein ensues due to the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants, such ensuing loss or damage shall be covered.

j)     loss or damage caused by an act of terrorism which means an act or series of acts, including the use of force or violence, of any person or group(s) or persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public or any section of the public in fear for such purposes.

k)    against loss or damage caused by insect or vermin.

Plaintiffs 000332

l)      against delay, loss of market loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

m)      against delay, loss of market, loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

n)      against corrosion, depletion, deterioration, erosion, wet rot, dry rot, decay, evaporation, rust, and shrinkage unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

o)      against changes of temperature or humidity, whether atmospheric or not;

p)      against settling, cracking, bulging, shrinking, or expansion of foundations; machinery pedestals, pads, or platforms; floors, pavements, walls, ceilings, or roofs; or the cumulative effects of smog, smoke, soot, vapor liquid, or dust;

q)      against lack of incoming power voice/data/internet access from offsite services except as provided in the Service Interruption Extension.

Exclusion b), c), d) and e) do not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly.

Exclusion b), c) and d) do not apply to property in transit.

29.     DEFINITIONS

a)      The term "Earthquake" as used in this policy shall mean loss or damage caused by or resulting from a series of vibrations induced in the earth's crust by the abrupt rupture and rebound of rocks in which elastic strain has been slowly accumulating (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

b)      The term "Flood" as used in this policy shall mean loss or damage caused by or resulting from waves, tide, or tidal water, and the rising (including the overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and similar bodies of water, whether wind driven or not (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

c)      The term "occurrence" is defined as follows:

Plaintiffs 000333

i)      Except as hereinafter defined, "loss occurrence" shall mean an accident or occurrence or series of accidents or occurrences arising out of one event.

ii)     ii) Each loss occurrence which involves the perils of tornado, windstorm, cyclone, hurricane, hail or flood shall include all loss or damage wherever occurring occasioned by these perils which arise out of one atmospheric disturbance during a continuous period of 168 hours.

iii)    Each loss occurrence which involves the peril of earthquake, a series of earthquakes shall include all losses or damage sustained during a continuous period of 168 hours.

iv)    Each loss occurrence which involves the peril(s) of vandalism, malicious mischief or riot/civil commotion shall include all losses or damage sustained resulting from one or more acts committed by a person acting alone or in collusion with others during a continuous period of 168 hours.

v)     The Insured shall have the right to elect the moment from which the time periods referred to in ii), iii), and iv) above shall be deemed to have commenced, however no elected period of time shall commence within any previous occurrence.

vi)    Should the time period in ii), iii), and iv) above extend beyond expiration or cancellation date of this policy and commence prior to the expiration or cancellation date, this Company shall be liable as is such period fell entirely within the term of this policy.

vii)   However, we shall not be liable hereunder for any loss or damage:

viii)  Occurring before this policy becomes effective; or

ix)    Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

d)     "Raw Stock" - Materials and supplies in the state in which the Insured receives it for conversion by the Insured into Finished Stock, including supplies consumed in such conversion or in the service rendered by the Insured.

e)     "Stock in Process" - Raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture by on behalf of the Insured but which has not become Finished Stock.

f)     "Finished Stock" - Stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

g)     "Merchandise" - Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

h)     "Normal" - The condition that would have existed had no loss occurred.

22

Plaintiffs 000334

i)      "Improvements and Betterments" - Fixtures, alterations, installations or additions comprising a part of the described building and made or acquired at the expense of the Insured, but which are not legally subject to removal by the Insured.

j)      "Valuable papers and records" - Written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents and manuscripts.

k)      "Electronic Data Processing Media" - All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles.

l)      "Securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets.

m)      "Fine Arts" - Shall include but not be limited to bona fide works of art, works of rarity, works of historical value, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, galley proofs, original records, sculptures, carvings and similar property.

n)      "Architect and Engineering Fees" - Any cost associated with the preparation of plans, supervision of and approval for the repair or replacement of damaged or destroyed property.

o)      "Tier One County" - the entire territory of the United States Virgin Islands, the entire Commonwealth of Puerto Rico, the entire State of Florida, and the following:
   i)      In the State of Alabama, the counties of Baldwin, Escambia, and Mobile;
   ii)     In the State of Connecticut, the counties of Fairfield, New Haven, and New London;
   iii)    In the State of Georgia, the counties of Bryan, Camden, Chatham, Glynn, Liberty, and McIntosh;
   iv)     In the State of Hawaii, the counties of Honolulu, Kauai, and Maui;
   v)      In the State of Louisiana, the counties (also known as "Parishes") of Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, Iberia, Iberville, Jefferson Davis, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John The Baptist, St. Martin, St. Mary, St. Tammany, Terrebonne, and Vermillion;
   vi)     In the Commonwealth of Massachusetts, the counties of Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, and Suffolk;

Plaintiffs 000335

vii)    In the State of Mississippi, the counties of George, Greene, Hancock, Harrison, Jackson, Pearl River, and Stone;

viii)    In the State of New Jersey, the counties of Atlantic, Monmouth, and Ocean;

ix)    In the State of New York, the counties of Kings, Nassau, Queens, and Suffolk;

x)    In the State of North Carolina, the counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington;

xi)    In the State of Rhode Island, the counties of Newport, Providence, and Washington;

xii)    In the State of South Carolina, the counties of Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, and Williamsburg;

xiii)    In the State of Texas, the counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Gollad, Harris, Hidalgo, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, and Willacy; and

xiv)    In the Commonwealth of Virginia, the counties of Accomack, Gloucester, Isle of Wright, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, Westmoreland, and York; and the independent cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Suffolk, and Virginia Beach.

p)    "Named Storm"- A storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Depression or Tropical Storm. "Named storm" does not include "flood" resulting from a "named storm".

q)    "Time Element' – Includes coverage as described under Clause 12., 13., 14., 15., 16., 17., 18., 19. and 20. hereunder.

r)    "Unnamed Location' – A location which has not been scheduled with underwriters or the insured's representative and is not considered a Newly Acquired location.

s)    "Newly Acquired Location" – A location acquired by the insured after inception of this policy for a period of up to 90 days until reported to and agreed by underwriters.

30.    FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES - This policy covers fire brigade charges and other extinguishing expenses for which the Insured may be assessed including loss of fire extinguishing materials expended resulting from a peril insured.

Plaintiffs 000336

31.     SEVERABILITY OF INTERESTS - The inclusion herein of more than one person or organization, as Insured, shall not operate to increase the limit of the Company's liability nor the deductible amounts to be borne by the Insured. Except with respect to limits of liability and deductible amounts, the terms of this policy shall apply separately to each person or organization covered as Insured in the same manner and to the same extent as though a separate policy had been issued to each such person or organization.

32.     DEBRIS REMOVAL - This policy covers the cost of removal of debris of property covered hereunder including the cost of removal of debris of property not insured hereunder from the premises of the Insured resulting from a peril insured against. Except as otherwise provided for elsewhere in this policy, this policy does not cover the cost to extract contaminants or pollutants from land or water, nor does it cover the cost to remove, restore or replace contaminated or polluted land or water.

If at the time insured property is contaminated as a direct result of physical damage insured against by this policy there is in force any law or ordinance regulating contamination, including but not limited to pollution, then this policy shall cover, as a result of the enforcement of such law or ordinance, the increased cost of decontamination and debris removal of such property in a manner to satisfy such law or ordinance. As respects Time Element coverage(s), this policy is extended to include such time as is necessary and reasonable with the exercise of due diligence and dispatch to decontaminate such property in a manner to satisfy such law or ordinance.

33.     DEMOLITION AND INCREASED COST OF CONSTRUCTION - In the event of loss or damage under this policy that causes the enforcement of any law or ordinance in force at the time of loss regulating the construction, repair or use of property, this Company shall be liable for:

a)      <u>COVERAGE A</u> - the loss in value of the undamaged portion of the property as a consequence of the enforcement of any law or ordinance that requires demolition of undamaged parts of the same property;

b)      <u>COVERAGE B</u> – the cost to demolish and clear the site of undamaged parts of the same property;

c)      <u>COVERAGE C</u> – the increased cost to repair or reconstruct damaged and undamaged property on the same or another site when the increased cost is a consequence of the enforcement of any law or ordinance. These costs are limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site. This Company shall not be liable for any increased cost of repair or reconstruction loss unless the damaged property is actually rebuilt or replaced;

Plaintiffs 000337

      d)      Any increase in loss including but not limited to Business Interruption, Extra Expense, Rental Value, Rental Income, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law or ordinance.

      e)      In the event real or personal property is not repaired or replaced to the same height, floor area, size, style or comparable quality of the original property insured due to the enforcement of law or ordinance regulating, restricting or prohibiting repair or replacement of covered property, this policy will pay the full replacement cost without deduction for depreciation for the real or personal property damaged or destroyed, as if the property was replaced to the same height, floor area, size, style or comparable quality of the original property insured. This policy will also pay Time Element loss as if the original structure were repaired or replaced to original specifications, subject to the terms and conditions of these coverage(s).

34.      EXPEDITING EXPENSE - This policy covers the extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

35.      CONTRIBUTING INSURANCE - Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy. This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

36.      EXCESS INSURANCE - Excess insurance is insurance over the limit of liability set forth in this policy. The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

37.      UNDERLYING INSURANCE - Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy. Should the amount of loss payable under such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then no deductible shall apply hereunder and that portion which exceeds such a deductible amount shall be considered "other insurance". Should the amount of loss payable under such underlying insurance be less than the largest deductible amount which would apply in the event of loss under this policy, then the deductible amount to be deducted hereunder shall be the difference between the amount to be paid under such underlying insurance and the largest deductible amount which would apply in the event of loss under this policy.

38.      OTHER INSURANCE - Except for insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether

Plaintiffs 000338

prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils. This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.

39.     SUBROGATION - Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder. The right of subrogation against the Insured, affiliated, subsidiary, and associated companies, or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived and at the option of the Insured, against a tenant or guest of the Insured. In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery. If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests. If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

40.     SALVAGE AND RECOVERIES - All salvages, recoveries, and payments, (excluding proceeds from subrogation and underlying insurance) recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly. If proceeds from subrogation are recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(s) participating in the payment of any loss, in the proportion of their respective interests.

41.     CONTROL OF DAMAGED MERCHANDISE - The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods. The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured, using reasonable discretion, shall be the sole judge as to whether production or EDP equipment and/or media is damaged and unusable. This insurer shall be allowed to dispose of as salvage, any non-proprietary property deemed unusable by the Insured.

**Plaintiffs 000339**

42.    BRAND OR TRADEMARK - In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carriers or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at this Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

43.    ERRORS OR OMISSIONS - Any unintentional error or omission made by the Insured in the application for insurance shall not void or impair the insurance hereunder but only to the extent this Policy would have provided coverage had the unintentional error or omission not been made provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department. This coverage does not apply if there is coverage available under any other provision in this Policy.

44.    NOTICE OF LOSS - As soon as practicable after any loss or damage occurring under this policy is known to the Insured's home office insurance department, the Insured shall report such loss or damage with full particulars to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 for transmission to the designated loss adjuster and to this Company.

45.    DESIGNATED LOSS ADJUSTER - It is understood and agreed that each and every loss will be adjusted by Jeff Hellman of McLaren Young International, 19324 40th Avenue West, Suite C, Lynnwood, WA 98036.

46.    PROOF OF LOSS - Proof of loss is required as soon as practicable following the Company's written request for signed Proof from Insured; however, Insured, at its option, may elect to file Proof with the Company prior to the Company's request. It shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained.

47.    PARTIAL PAYMENT OF LOSS - In the event of a loss covered by this policy, it is understood and agreed that the Company shall allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

48.    PAYMENT OF LOSS - All adjusted claims shall be due and payable no later than thirty (30) days after presentation of acceptable proofs of loss by the Insured or its appointed representative.

49.    LOSS ADJUSTMENT EXPENSES - This policy is extended to include reasonable expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. These expenses include fees of professionals engaged to assist the Insured in determining the cause and origin of the loss, the amount

**Plaintiffs 000340**

of loss sustained, and the amount of loss payable under this policy. This policy shall not cover the expenses of a public adjuster. Such expenses shall not exceed $2,000,000 in any one occurrence.

50.     APPRAISAL - If the Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss. The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

51.     CONSEQUENTIAL LOSS - This policy insures against consequential loss including spoilage to real and personal property as insured hereunder caused by change of temperature or humidity or by interruption of any service including but not limited to power, heat, air conditioning, or refrigeration resulting from a peril insured against.

52.     PAIR AND SET - In the event of loss or damage by a peril insured against to any article or articles which are part of a pair or set, the measure of loss or damage to such article or articles shall be the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

53.     CONSEQUENTIAL REDUCTION IN VALUE - This policy covers the reduction in value of insured components or parts of components or parts of products or the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to direct physical loss or damage insured against by this Policy to other insured components or parts of products.

54.     COINSURANCE WAIVER - This policy is not subject to any coinsurance or average clause.

55.     ALTERATIONS AND USE CLAUSE - Permission is granted to the insured to cease operations or for buildings to remain vacant or unoccupied provided fire protection, watch alarm services are maintained, and written notice is given to the Insurer prior to the sixtieth (60th) consecutive day of cessation of operations, vacancy or unoccupancy. The Insured's building is considered vacant or unoccupied when it does not contain enough covered Property to conduct customary business operations.

Plaintiffs 000341

56.   ASSISTANCE AND COOPERATION OF THE INSURED - The Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

57.   SUE AND LABOR - In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment. This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

58.   REINSTATEMENT - With the exception of loss subject to annual aggregate limits as noted herein, no loss hereunder shall reduce the amount of this policy.

59.   SUIT AGAINST THE COMPANY - No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy. The Company agrees that any action or proceeding against it for recovery of any loss under this policy shall not be barred if commenced within the time prescribed therefor in the statutes of Florida.

60.   CERTIFICATES OF INSURANCE - It is understood and agreed that Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 is authorized to issue certificates of insurance naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests subject always to the terms, conditions, and limits of liability of this policy. The Company agrees to waive the issuance of formal Company endorsements in respect of such interests.

61.   NOTIFICATION CLAUSE - All notices or communications concerning this policy shall be addressed to the offices of the Insured, to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 and to AmWINS Brokerage of Georgia, 3630 Peachtree Road NE, Suite 1700, Atlanta, GA 30326. All such notices shall be sent via registered mail.

62.   CANCELLATION/NON RENEWAL - This policy may be cancelled at any time at the request of the Insured or it may be cancelled or non-renewed by the Company by mailing to the Insured written notice stating when, not less than ninety (90) days thereafter or ten (10) days in the event of non-payment of premium, such cancellation or non-renewal shall be effective. If the First Named Insured cancels, return of any unearned premium will be calculated on the

Plaintiffs 000342

customary short rate basis. If the Company cancels, return of any unearned premium will be calculated on a pro rata basis. Return of any unearned premium will be made by the Company as soon as practicable. The cancellation will be effective even if the Company has not made or offered a refund.

63.     TITLES OF PARAGRAPHS - The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

64.     MORTGAGE CLAUSE - As respects Real Property only, loss, if any, under this policy shall be payable to the mortgagee (or trustee) as its interest may appear under all present or future mortgages upon the property herein insured in which the aforesaid may have an interest as mortgagee (or trustee) in order or precedence of mortgages., and this insurance as to the interest of said mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that, in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided also, that the mortgagee (or trustee) shall, notify the Company of any changes of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and unless permitted by this policy, it shall be noted thereon and the mortgagees or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The company reserves the right to cancel this policy at any time as provided by its terms, and in such case, this policy shall continue in force for the benefit only of the mortgagee (or trustee) for an additional thirty (30) days.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgagee debt, or may at their option pay to the mortgagee (or trustee) the whole principal due or to grow on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and all of such other securities, but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

65.     JURISDICTION AND SUIT - It is hereby understood and agreed that in the event of the failure of the Insurer to pay an amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court

Plaintiffs 000343

of competent jurisdiction within the United States and will comply with all requirements necessary to give such jurisdiction. All matters arising hereunder shall be determined in accordance with the law and practice of such court. In any suit instituted against it under this, the Insurer will abide by the final decision of such court or any appellate court in the event of an appeal.

66.     POLLUTANT CLEAN UP AND REMOVAL - This policy is extended to cover the expense actually incurred by the Insured to decontaminate, clean up and/or remove pollutants from land, water or air including resultant time element loss if the release, discharge, or dispersal of the pollutants results from any loss or damage as covered herein. Such expenses shall not exceed $500,000 in any one policy year.

67.     ATTACHMENT CLAUSE – Please refer to the Participation Page.

_____
 [Authorized Signature]

32

Plaintiffs 000344

## Endorsement No. 1

### **Microorganism Exclusion – Resultant Mold**

This policy does not insure any loss, Damage, Time Element, claim, cost, expense or other sum directly or indirectly arising out of or relating to (regardless of whether any other cause or event contributed concurrently or in any sequence):

Fungus, mold, mildew, yeast, mushrooms, spores, toxins, mycotoxins, bacteria or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion shall not apply to any such loss, Damage, Time Element, claim, cost, or expense resulting from mold that is a direct result of an Insured Cause of Loss and is not otherwise excluded by the Policy, provided such loss, Damage, Time Element, claim, cost, or expense is reported to the Company in writing within twelve months from the expiration date of the policy. This clause is subject to a $500,000 per occurrence and in the annual aggregate sublimit.

This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part, for these matters.


All other terms and conditions remain unchanged.

Plaintiffs 000345

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

A.  Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 45 days before the effective date of cancellation if we cancel for any other reason.

B.  The following is added:

**NONRENEWAL**

**1.**  If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days prior to the expiration of the policy.

**2.**  Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Includes copyrighted material of Insurance Services Office, Inc., 1999, with its permission.

**Plaintiffs 000346**

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

Plaintiffs 000347

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM

The following additional policy Condition supersedes any other policy Condition regarding a minimum earned premium for this policy:

**Policy Premium And Minimum Earned Premium**

**1.** Policy Premium is the sum of the following:

    **a.** The Total Policy Premium as shown in the Common Policy Declarations; plus

    **b.** Any premium adjustment by endorsement; plus

    **c.** Any premium adjustment developed by audit, if applicable.

**2.** The policy earned premium is the sum of the following:

    **a.** The amount of Policy Premium, not designated as fully earned premium at inception or by endorsement, calculated for the policy period that has been earned based on the ratio of the time passed on the policy to the effective date of the policy; plus

    **b.** Any Policy Premium that is designated as fully earned premium at inception or by endorsement.

**3.** If you cancel this policy, the return premium will be 90% of the unearned premium.  However, as a minimum earned premium, we will retain no less than 25% of the Policy Premium.

**4.** If we cancel the policy for non-payment of premium, the earned premium will be computed pro rata based on the length of the cancelled policy term.  However, as a minimum earned premium, we will retain no less than 25% of the Policy Premium.

**5.** If we cancel the policy for any reason other than for non-payment of premium, the earned premium will be computed pro rata based on the length of the cancelled policy term and the minimum earned premium as stated in Paragraph **4.** above shall not apply.

**6.** Any unearned premium will be returned as soon as practicable.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**Plaintiffs 000348**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ELECTRONIC DATA

This endorsement modifies insurance provided under the following:

PROPERTY COVERAGE PART
DIFFERENCE IN CONDITIONS – PROPERTY COVERAGE PART
EXCESS PROPERTY COVERAGE PART

The **Exclusions** Section is amended by the addition of the following:

**Electronic Data**

This Policy does not insure loss, damage, destruction, distortion, erasure, corruption, alteration, loss of use, reduction in functionality, cost, or expense arising from a "computer virus". "Computer virus" means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. "Computer virus" includes, but is not limited to, "trojan horses", "worms" and "time or logic bombs".

However, in the event that fire or explosion results from any of the matters described in the paragraph above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the policy period to property insured by this Policy directly caused by such fire or explosion.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U1008-1117          Includes copyrighted material of Insurance Services Office, Inc.,          Page 1 of 1
with its permission.

**Plaintiffs 000349**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CYBER EVENT

Except as stated in Paragraph B., the exclusion in Paragraph A. applies to all coverage under all forms and endorsements that comprise the Coverage Part or Policy to which this endorsement is attached, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, rental value, extra expense, action of civil authority, or utility services, whether on a direct or indirect damage basis.

A. **Cyber Event Exclusion**

We will not pay for loss, damage, costs or expense caused directly or indirectly by any of the following.  Such loss, damage, costs and expenses are excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

1. **Computer Virus or Software**

Including but not limited to any software, program, instructions, code or data that:

**a.** Infiltrates and disrupts computer operations;

**b.** Accesses, acquires, collects, gathers, transmits, alters or damages instructions, information or data, including but not limited to personally identifiable information or other personal data, confidential information or "electronic data";

**c.** Gains access to "computer systems"; or

**d.** Affects the operation or functionality of "computer systems", "computer networks" or "electronic data".

Computer virus or software also includes but is not limited to any computer code, worm, logic bomb, smurf attack, malware, Trojan horse, spyware, rootkits, ransomware, adware, keyloggers, rogue security software, destructive program, or malicious browsers, whether or not self-propagating.

2. **Cyber Extortion**

Including but not limited to a threat or series of threats made to:

**a.** Prevent access of authorized users to "computer systems", "computer networks" or "electronic data";

**b.** Introduce any computer virus or software as described in A.**1.** above into "computer systems", "computer networks" or "electronic data";

**c.** Conduct a cyber attack as described in A.**3.** below;

**d.** Gain access that otherwise would be unauthorized to "computer systems", "computer networks" or "electronic data"; or

**e.** Release, disclose, misuse, alter or destroy instructions, information or data, including but not limited to personally identifiable information or other personal data, confidential information or "electronic data".

Cyber extortion also includes any illegal demand for payment, including but not limited to payment in money or cryptocurrency, to unlock any computer, "computer systems" or "computer network", or to not do, undo or mitigate A.**2.a.**, A.**2.b.**, A.**2.c.**, A.**2.d.**, or A.**2.e.** above.  However, a threat to do any of the above that is not accompanied by a demand for payment also is considered to be cyber extortion.

Plaintiffs 000350

**3. Cyber Attack**

Attack on or vandalism of "computer systems", "computer networks" or "electronic data", including but not limited to a "denial-of-service attack".

B. **Exceptions**

The following exception to the exclusion in Paragraph A. applies:

**1.** To the extent that any part of the exclusion in Paragraph A. conflicts with an Additional Coverage, Coverage Extension or sublimited coverage granted elsewhere under this Coverage Part or Policy, that part of the exclusion does not apply. The preceding reference to an Additional Coverage, Coverage Extension and sublimited coverage does not mean that any of these have been included with this Policy. Additional Coverages, Coverage Extensions, or sublimited coverages are provided under this Coverage Part or Policy only as stated in and documented by one of the Coverage Forms or Endorsements included with this Coverage Part or Policy.

C. **Definitions**

The following definitions are added with respect to the provisions of this endorsement:

**1.** "Computer systems" means Information Technology (IT), data processing, industrial process control and communication systems, as well as any other item or element of hardware or associated software, including but not limited to IT infrastructure, software or equipment used for the purpose of creating, accessing, processing, protecting, monitoring, storing, backing up, retrieving, displaying or transmitting data. "Computer systems" also includes but is not limited to IT and mobile devices such as mobile phones, tablet devices, laptops, external drives, CD-ROMs, DVD-ROMs, magnetic tapes, magnetic disks or USB sticks that process, record, transmit or store data, as well as network equipment and associated input and output devices.

**2.** "Computer network" means a group of "computer systems" and other computing hardware devices or network facilities connected by a form of communication technology, including but not limited to those connected to or by the internet, any intranet and virtual private networks (VPNs), allowing the networked computing devices to, among other things, exchange data.

**3.** "Denial-of-service attack" means any attack leading to a total or partial deprivation, disruption or unavailability of "computer systems" or "computer networks" temporarily or permanently, such that they are non-functional in whole or in part, or otherwise unavailable to anticipated users of such "computer systems" or "computer networks". The term "denial-of-service attack" includes but is not limited to a distributed attack in which multiple compromised systems are used to deluge or overload "computer systems" or "computer networks" with an incoming stream or requests or data, volumetric and application-specific attacks, and attacks targeting specific "computer systems", entities or individuals.

**4.** "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software that are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions that direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Plaintiffs 000351

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TERRITORY COVERAGE LIMITATION

This endorsement modifies insurance provided under the following:

PROPERTY COVERAGE PART
DIFFERENCE IN CONDITIONS – PROPERTY COVERAGE PART
EXCESS PROPERTY COVERAGE PART

The following additional condition is added. With respect to the provisions addressed herein, this condition supersedes any other condition that addresses territories.

**Territory Coverage Limitation**

The coverage territory under this policy is limited to:  <u>The Fifty (50) United States of America and The District of Columbia</u>.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**Plaintiffs 000352**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – FLOOD

This endorsement modifies insurance provided under the following:

PROPERTY COVERAGE PART
EXCESS PROPERTY COVERAGE PART


The following exclusion is added. With respect to the provisions addressed herein, this exclusion supersedes any other provision which addresses the peril of "Flood".

**Flood Exclusion**

We do not pay for loss arising out of "Flood".

"Flood" means a general and temporary condition of partial or complete inundation of normally dry land areas from:

**a.** the usual and rapid accumulation or runoff of surface waters from any source;

**b.** the rising (including the overflowing or breaking of boundaries, dams or levies) of lakes, ponds, streams, reservoirs, rivers or other similar bodies of water; and

as further defined by, but not limited to, the definition in the controlling policy.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**Plaintiffs 000353**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EARNED MINIMUM PREMIUM ENDORSEMENT FOR CATASTROPHIC WINDSTORM EXPOSURE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
DIFFERENCE IN CONDITIONS – PROPERTY COVERAGE PART
EXCESS PROPERTY POLICY

This endorsement, effective 04/01/2020, forms a part of Policy # XP190091-1 issued to PORTOFINO MASTER HOMEOWNERS ASSOCIATION, INC. by Colony Insurance Company.

A.  In the event of:

1.  cancellation of this policy by the Named Insured or cancellation by us for non-payment of premium;

2.  an addition or deletion of insured locations; or

3.  an increase or decrease in the limits of insurance;

the earned premium for the coverage period will be computed using the cumulative monthly percentages shown in the SCHEDULE below and the unearned premium will be the additional premium or return premium depending on the type of transaction. However, any refund due is subject to a fully earned minimum premium of which will not be subject to pro-rata or short rate cancellation calculations.

### SCHEDULE

MONTHLY EARNED PREMIUM PERCENTAGE

| | |
|---|---|
| January | 2% |
| February | 2% |
| March | 2% |
| April | 2% |
| May | 2% |
| June | 6% |
| July | 7.5% |
| August | 20% |
| September | 27% |
| October | 20% |
| November | 7.5% |
| December | 2% |

Partial month will be computed as a whole month.

**Plaintiffs 000354**

B.  The following provide examples in calculating unearned premium refunds due to policy cancellation:

**Example No. 1:**

The example below assumes the policy is cancelled on May 31, 2012 at 12:01 a.m. standard time.

Policy Period

Annual Premium Amount

From: January 1, 2012
To: January 1, 2013
both dates at 12:01 a.m. standard time

$10,000 subject to a 25% minimum annual premium amount

Earned Premium Calculation:

1. The cumulative earned premium percentage for the period January 1, 2012 through May 31, 2012 per the Schedule is 10%.

Unearned Return Premium Calculation:

Annual Premium Amount $10,000
Earned Premium Percentage x .10
Earned Premium $ 1,000
Minimum Earned Premium $ 2,500
Unearned Return Premium $ 7,500 (Subject to Minimum Earned Premium)

**Example No. 2:**

The example below assumes the policy is cancelled on November 1, 2011 at 12:01 a.m. standard time.

Policy Period

Annual Premium Amount

From: June 1, 2011
To: June 1, 2012
both dates at 12:01 a.m. standard time

$10,000 subject to a 25% minimum annual premium amount

Earned Premium Calculation:

1. The cumulative earned premium percentage for the period June 1, 2011 through October 31, 2012 per the Schedule is 80.5%.

Unearned Return Premium Calculation:

Annual Premium Amount $10,000
Earned Premium Percentage x . 805
Earned Premium $8,050
Minimum Earned Premium $1,250
Unearned Return Premium $ 1,950 (Minimum Earned Premium does not apply)

**Plaintiffs 000355**

**Example No. 3:**

The example below assumes a location is being added to the policy on July 1, 2011 at 12:01 a.m. standard time.

Policy Period

From: February 1, 2012
To: February 1, 2013
both dates at 12:01 a.m. standard time

Annual Premium Amount for Location to be Added

$10,000 annual premium

Earned Premium Calculation:

1. The cumulative earned premium percentage for the period February 1, 2012 through June 30, 2012 per the Schedule is 14%.

Unearned Additional Premium Calculation:

Annual Premium Amount $10,000
Earned Premium Percentage x .14
Earned Premium $ 1,400
Unearned Additional Premium $ 8,600

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**Plaintiffs 000356**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS AND OTHER ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

A. The following Exclusion is added:

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss, except for ensuing fire, but only to the extent as required by state statute as indicated in item B., below.

**EXCLUSION OF CERTIFIED ACTS AND OTHER ACTS OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism" or an "other act of terrorism", including action in hindering or defending against an actual or expected incident of a "certified act of terrorism" or an "other act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

But with respect to any such activity that also comes within the terms of the War And Military Action Exclusion, that exclusion supersedes this Terrorism Exclusion.

In the event of an act of terrorism that involves nuclear reaction or radiation, or radioactive contamination, this Terrorism Exclusion supersedes the Nuclear Hazard Exclusion.

**EXCLUSION OF NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM**

We will not pay for loss or damage caused directly or indirectly by any act of terrorism:

**1.** that involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**2.** that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**3.** in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials;

including action in hindering or defending against an actual or expected incident of terrorism. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

In the event of any incident of terrorism that is not subject to this Nuclear, Biological or Chemical Terrorism Exclusion, coverage does not apply to any element of loss or damage that is otherwise excluded under this Coverage Part or Standard Property Policy.

But with respect to any such activity that also comes within the terms of the War And Military Action Exclusion, that exclusion supersedes this Terrorism Exclusion.

In the event of an incident of terrorism that involves nuclear reaction or radiation, or radioactive contamination, this Terrorism Exclusion supersedes the Nuclear Hazard Exclusion.

**Plaintiffs 000357**

B. **Exception Covering Certain Fire Losses**

If a "certified act of terrorism" or an "other act of terrorism" results in fire, we will pay for the loss or damage caused by that fire, to the extent as required by state statute.  Such coverage for fire applies only to direct loss or damage by fire to Covered Property.  Therefore, for example, the exception does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

C. The following definitions are added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

    **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

    **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infra-structure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism". Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

UIL0961-0115          Includes copyrighted material of Insurance Services Office, Inc.,          Page 2 of 2
with its permission.

**Plaintiffs 000358**

# POLICYHOLDER DISCLOSURE
# NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019; AND 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURER'S LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

PLEASE ALSO BE AWARE THAT YOUR POLICY DOES NOT PROVIDE COVERAGE FOR ACTS OF TERRORISM THAT ARE NOT CERTIFIED BY THE SECRETARY OF THE TREASURY.

### Acceptance or Rejection of Terrorism Insurance Coverage

You must accept or reject this insurance coverage for losses arising out of acts of terrorism, *as defined in Section 102(1) of the Act*, before the effective date of this policy. Your coverage cannot be bound unless our representative has received this form signed by you on behalf of all insureds with all premiums due.

☐ **Coverage acceptance:**
  I hereby elect to purchase coverage for certified acts of terrorism, *as defined in Section 102(1) of the Act* for a prospective annual premium of  $ _____.  I understand that I will not have coverage for losses resulting from any non-certified acts of terrorism.

**OR**

☒ **Coverage rejection:**
  I hereby decline to purchase coverage for certified acts of terrorism, *as defined in Section 102(1) of the Act*. I understand that I will not have coverage for any losses arising from either certified or non-certified acts of terrorism.

| | |
|---|---|
| Signature On File | COLONY INSURANCE COMPANY |
| **Policyholder/Applicant's Signature-** | **Insurance Company** |
| **Must be person authorized to sign for all Insureds.** | |
| On File | XP190091 |
| **Print Name** | **Policy Number** |
| PORTOFINO MASTER HOMEOWNERS ASSOCIATION, INC. | On File |
| | **Submission Number** |
| **Named Insured** | 10026 |
| | **Producer Number** |
| On File | AMWINS BROKERAGE OF GEORGIA, INC. |
| **Date** | **Producer Name** |
| | 3630 PEACHTREE RD NE SUITE 1700 |
| | **Street Address** |
| | ATLANTA, GA 30326 |
| | **City, State, Zip** |

**The producer shown above is the wholesale insurance broker your insurance agent used to place your insurance coverage with us.  Please discuss this Disclosure with your agent before signing.**

**A STOCK COMPANY**



# EVANSTON INSURANCE COMPANY

10275 West Higgins Road
Suite 750, Rosemont , IL  60018

**INSURANCE POLICY**

**Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.**

In **Witness Whereof**, the company (insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (insurer) identified in the Declarations.

**Secretary**                                              **President**

Plaintiffs 000360



# EVANSTON INSURANCE COMPANY

## COMMERCIAL PROPERTY FORMS REVISION
## NOTICE TO POLICYHOLDERS

As a result of a program update, changes have been made to many of the forms attached to your policy. Some forms have been revised, some forms have been discontinued and new forms have been introduced. Some of the changes to forms on your policy impact your coverage, but many have been reformatted, language has been rearranged and/or form numbers have been changed with no impact to your coverage.

**Please read your policy carefully as these changes are very broad in scope and are not enumerated in this notice. PLEASE CONTACT YOUR AGENT OR BROKER FOR DETAILS OF ALL CHANGES.**

No coverage is provided by this summary nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the policy and your expiring policy, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

**Plaintiffs 000361**



# EVANSTON INSURANCE COMPANY

## PRIVACY NOTICE

We are committed to safeguarding your privacy. We understand your concerns regarding the privacy of your nonpublic personal information. No nonpublic personal information is required to be collected when you visit our websites; however, this information may be requested in order to provide the products and services described.  We do not sell nonpublic personal information to non-affiliated third parties for marketing or other purposes. We only use and share this type of information with non-affiliated third parties for the purposes of underwriting insurance, administering your policy or claim and other purposes as permitted by law, such as disclosures to insurance regulatory authorities or in response to legal process. Notwithstanding the foregoing, we may use this information for the purpose of marketing our own products and services to you.

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms;

- Information about your transactions with us, our affiliates, or others; and/or

- Information we receive from consumer reporting agencies and inspection reports.

We do not disclose any nonpublic personal information about our customers/claimants or former customers/claimants to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to the following types of third parties:

- Service providers, such as insurance agents and/ or brokers and claims adjusters; and/or

- Other non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about our customers/claimants to those individuals who need to know that information to provide products and services to our customers/claimants or as permitted by law.  We maintain physical, electronic, and procedural safeguards to guard your nonpublic personal information.

*Residents of California:*

You may request to review and make corrections to recorded non-public personal information contained in our files.  A more detailed description of your rights and practices regarding such information is available upon request.  Please contact your agent/broker for instructions on how to submit a request to us.

MPIL 1007 03 14

Plaintiffs 000362



# EVANSTON INSURANCE COMPANY

## NOTICE TO POLICYHOLDERS
## CLAIM REPORTING

Please immediately report a new claim under this policy to:

**newclaims@markelcorp.com**

For general claims inquiries after a claim has been reported, please email:

**markelclaims@markelcorp.com**

In order for us to expedite the handling of your claim and quickly refer it to the appropriate party, please have the following information available:

- Claim number (or report as new)
- Your name, contact information and position with the Named Insured
- Date of loss
- Policy number and insured name
- Details of loss

Our address and additional contact information are as follows:

Markel Claims
P.O. Box 2009
Glen Allen, VA 23058-2009
Phone:  800-362-7535 (800) 3MARKEL
Fax:  855-662-7535 (855) 6MARKEL

Markel understands the importance of having knowledgeable claims professionals prepared to answer your questions with personal attention and expertise. With claims professionals located across four times zones, you are sure to find the claims assistance you need -- when you need it.

**PLEASE REFER TO THE POLICY FOR ANY NOTICE AND REPORTING PROVISIONS
AND DUTIES IN THE EVENT OF LOSS OR DAMAGE TO COVERED PROPERTY.**

**MPIL 1074 07 14**

**Page 1 of 1**



**INTERLINE**

# EVANSTON INSURANCE COMPANY

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

**Plaintiffs 000364**

**INTERLINE**
Policy Number: MKLV11XP007995

# EVANSTON INSURANCE COMPANY

## FORMS SCHEDULE

| Form Number | Form Name |
|---|---|
| MJIL 1000 08 10 | POLICY JACKET |
| MPCP 2001 11 14 | COMMERCIAL PROPERTY FORMS REVISION |
| MPIL 1007 03 14 | PRIVACY NOTICE |
| MPIL 1074 07 14 | NOTICE TO POLICLYHOLDERS CLAIM REPORTING |
| MPIL 1083 04 15 | U.S. TREASURY DEPT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS |
| MDIL 1001 08 11 | FORMS SCHEDULE |
| MEIL 1200 10 16 | SERVICE OF SUIT |
| MEIL 1237 09 14 | NOTICE OF CANCELLATION |
| MIL 1214 09 17 | TRADE OR ECONOMIC SANCTIONS |
| MDCP 1014 06 17 | SUBSCRIPTION PROPERTY DECLARATIONS |
| MECP 1215 09 14 | ADDTL PROPERTY EXCLUSIONS CONDITIONS |
| MECP 1252 09 14 | CHANGE ENDORSEMENT |
| MECP 1273 09 14 | MINIMUM EARNED PREMIUM EXPOSURE TO HURRICANES |
| MECP 1304 05 16 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| MECP 1308 09 14 | EXCL - VIRUS HARMFUL CODE OR INSTRUCTION |
| MECP 1315 09 14 | EXCLUSION - ASBESTOS |
| MECP 1317 09 14 | EXCL - BIOLOGICAL RADIOLOGICAL CHEMICAL MATERIALS |
| MECP 1322 09 14 | EXCLUSION - POLLUTION |
| MECP 1326 09 14 | EXCLUSION - ORGANIC PATHOGENS |



**INTERLINE**

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT

Except with respect to any policy issued in any state in which the Insurer is licensed as an admitted insurer to transact business, it is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois 60015, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this policy, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.



**INTERLINE**
POLICY NUMBER: MKLV11XP007995

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NOTICE OF CANCELLATION

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

SCHEDULE

| Number Of Days' Notice: 90 |
| --- |

This clause supersedes other cancellation clauses made a part of this policy.

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** The Number Of Days' Notice shown in the Schedule above before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

All other terms and conditions remain unchanged.

**Plaintiffs 000367**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TRADE OR ECONOMIC SANCTIONS

The following is added to this policy:

**Trade Or Economic Sanctions**

This insurance does not provide any coverage, and we (the Company) shall not make payment of any claim or provide any benefit hereunder, to the extent that the provision of such coverage, payment of such claim or provision of such benefit would expose us (the Company) to a violation of any applicable trade or economic sanctions, laws or regulations, including but not limited to, those administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms and conditions remain unchanged.

**MIL 1214 09 17**                                                                                                    **Page 1 of 1**

**Plaintiffs 000368**



# EVANSTON INSURANCE COMPANY

## SUBSCRIPTION PROPERTY DECLARATIONS

POLICY NUMBER:  MKLV11XP007995

Named Insured and Mailing Address  (No., Street, Town or City, County, State, Zip Code)

Portofino Master Homeowners Association, Inc.

10 Portofino Dr

Gulf Breeze                          FL   32561

Policy Period: From April 1, 2020 to April 1, 2021 at 12:01 A.M. Standard Time at your mailing address shown above.

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| Description Of Premises |
| --- |
| Per schedule on file with the company |
| |

| Premiums And Fees |
| --- |
| Total Premium For This Coverage Part: $ |
| Minimum Earned Premium: $ |
| Inspection Fee: $ |
| |

| Endorsements |
| --- |
| Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue: |
| **SEE MDIL 1001 ATTACHED** |

| Producer Number, Name and Mailing Address |
| --- |
| AmWINS Brokerage of Georgia |
| 3630 Peachtree Road Northeast, Suite 1700 |
| Atlanta                          GA    30326 |

**These declarations, together with the Common Policy Conditions, Coverage Form(s) and any Endorsement(s), complete the above-numbered policy.**

Countersigned: _____   By: _____
                    04/06/2020
                    **DATE**                          **AUTHORIZED REPRESENTATIVE**

**Plaintiffs 000369**

## PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies) , do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy.

Provided that:

1.      The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2.      The liability of each of the Insurers shall not exceed the Participation Limit set against its name.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurer | Policy Number | Participation | Authorized Signature |
|---|---|---|---|
| Westchester Surplus Lines Insurance Company | D38064666 004 | $5,000,000 part of $15,000,000 Primary | |
| Endurance American Specialty Insurance Company | ESP30000298003 | $5,500,000 part of $15,000,000 Primary | |
| Everest Indemnity Company | CA3P005801201 | $3,000,000 part of $15,000,000 Primary | |
| Princeton Excess Surplus Lines Insurance Company | 3VA3PP0000251-02 | $1,500,000 part of $15,000,000 Primary | |
| Arch Specialty Insurance Company | ESP1002326-00 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Axis Surplus Insurance Company | EAF645360-20 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Colony Insurance Company | XP190091-1 | $6,250,000 part of $25,000,000 excess of $25,000,000 | |
| Evanston Insurance Company | MKLV11XP007995 | $7,500,000 part of $25,000,000 excess of $25,000,000 | |
| Aspen Specialty Insurance Company | PX005LG20 | $5,000,000 part of $25,000,000 excess of $25,000,000 | |

1

**Plaintiffs 000370**

| | | | |
|---|---|---|---|
| Independent Specialty Insurance Company | VUX-CN-0000328-04 | $8,689,317 part of $217,232,927 excess of $25,000,000 | |
| Interstate Fire & Casualty Company | VRX-CN-0000328-04 | $28,240,281 part of $217,232,927 excess of $25,000,000 | |
| Lloyd's of London | VPC-CN-0000328-04 | $17,378,634 part of $217,232,927 excess of $25,000,000 | |
| James River Insurance Company | 00090459-1 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Maxum Indemnity Company | MSP-6012522-11 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Landmark American Insurance Company | LHD912400 | $48,058,232 part of $192,232,927 excess of $50,000,000 | |
| Homeland Insurance Company of New York | 795012091 | $50,000,000 part of $100,000,000 excess of $200,000,000 | |
| Everest Indemnity Company | CA3X001322201 | $21,116,464 part of $42,232,927 excess of $200,000,000 | |

2

## MASTER PROPERTY POLICY

1. NAMED INSURED – "Named Insured" means **Portofino Master Homeowners Association at Pensacola Beach, Inc.; Portofino Tower One Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Two Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Three Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Four Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Five Homeowners Association at Pensacola Beach, Inc.** means the First Named Insured and any entity in which the First Named Insured owns an interest of more than 50 percent, during the Policy Period, controls during the Policy Period, or has the responsibility of placing the insurance provided by this Policy during the Policy Period. No entity is covered under this Policy unless the Company has received identifying information for such entity during the application or submission process, except if such entity is covered under miscellaneous unnamed insured locations or newly acquired property, or if such entity is added by endorsement.

   Notwithstanding any provision to the contrary in this Policy, if other valid and collectible insurance is available to any entity covered by this Policy solely because of the ownership, control, or responsibility to purchase insurance by the First Named Insured, this insurance will be excess with regard to such other insurance whether contingent, primary, excess or any other basis.

2. TERM OF INSURANCE In consideration of a $ annual premium, this policy attaches and covers for a period of one year from April 1, 2020 to April 1, 2021, beginning and ending at 12:01 A.M. standard time, at the location of the property involved.

3. PARTICIPATION – Please refer to the Participation Page.

4. LIMIT OF LIABILITY - This Company shall not be liable for more than its proportion of $242,232,927 for any one occurrence.

5. SUBLIMIT(S) OF LIABILITY) - This Company shall not be liable for more than its proportion of the following sublimits.  Sublimits are part of and not in addition to the overall Limit of Liability and apply on a per occurrence basis unless otherwise noted:

   a) $15,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Flood.
   b) $25,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Earthquake.
   c) $1,000,000 per occurrence as respects Accounts Receivable
   d) $500,000 per occurrence as respects Arson Reward

3

**Plaintiffs 000372**

e)   $1,000,000 per occurrence as respects Contingent Time Element,
     Attraction Properties are excluded
f)   $1,000,000 per occurrence as respects Consequential Loss
g)   $10,000,000 per occurrence as respects Course of Construction Including
     Soft Costs
h)   Included per occurrence as respects Demolition and Increased Cost of
     Construction Coverage A
i)   $10,000,000 Included per occurrence as respects Demolition and Increased
     Cost of Construction Coverage B
j)   $10,000,000 Included per occurrence as respects Demolition and Increased
     Cost of Construction Coverage C
k)   $1,000,000 Included per occurrence as respects Demolition and Increased
     Cost of Construction Coverage D
l)   $10,000,000 per occurrence as respects Debris Removal
m)   $10,000,000 per occurrence as respects Errors and Omissions
n)   25% of the Adjusted Loss Maximum, $10,000,000 per occurrence as
     respects Extra Expense
o)   $5,000,000 per occurrence as respects Expediting Expense
p)   200,000,000 per occurrence as respects Equipment Breakdown
q)   $1,000,000 per occurrence as respects Contract Penalty
r)   $1,000,000 per occurrence as respects Fire Brigade Charges and
     Extinguishing Expenses
s)   $50,000 per occurrence as respects Inland Transit
t)   The lesser of 30 days of $2,500,000 per occurrence as respects
     Ingress/Egress
u)   $5,000,000 per occurrence as respects Miscellaneous Unnamed Locations
v)   $5,000,000 per occurrence as respects Newly Acquired Property (90 days;
     if not reported within 90 days the coverage ceases)
w)   $1,000,000 per occurrence as respects Leasehold Interest
x)   $500,000 per occurrence as respects Lost Master/Key Card
y)   $5,000,000 per occurrence as respects Rental Value/Rental Income
z)   Excluded per occurrence as respects Research and Development
aa)  $1,000,000 per occurrence as respects Royalties
bb)  $2,500,000 per occurrence as respects Service Interruption.  Property
     Damage and Time Element Combined.
cc)  $1,000,000 per occurrence as respects Valuable Papers and Records
dd)  The lesser of 30 days of $2,500,000 per occurrence as respects Civil or
     Military Authority
ee)  $3,000,000 per occurrence as respects Landscaping, subject to a $25,000
     maximum per item
ff)  $1,000,000 per occurrence as respects Fine Arts, subject to a $25,000
     maximum per item

The amount of loss from any one occurrence for which this policy is excess, shall
be determined by the combined loss, damage or expense as insured under the
primary policy.  In the event of loss or damage involving more than one
coverage or peril, The Limits of Liability of the underlying policies shall first

4

Plaintiffs 000373

apply to the coverage(s) or peril(s) not insured by this policy, and the remainder, if any to the coverages(s) or peril(s) as provided hereunder. Upon erosion or exhaustion of the Limits of Liability of the underlying policies, this policy shall then be liable for the loss uncollected from the coverage(s) or perils(s) insured hereunder, subject to the Limit of Liability specified herein.  In the event of reduction or exhaustion of the aggregate limit(s) designated in the underlying policy(ies), it is hereby understood and agreed that such insurance as is afforded by this policy shall apply in excess of the reduced or exhausted underlying limit(s).  The insured maintains the right to allocate and/or apply coverages, interests and/or perils, as insured in the primary and/or excess policies.

6.  DEDUCTIBLE CLAUSE - The Company will adjust all losses, damages or expenses arising out of any one occurrence as one loss. The Company will deduct the following from such loss:

**$50,000** per occurrence for all perils including earthquake sprinkler leakage, and the backup of sewers and drains, except:

WAITING PERIOD:

With respect to all Time Element coverages, coverage is provided by this policy only if the period of interruption of the Insured's business exceeds 24 hours. Then Time Element coverage will apply excess of the appropriate policy deductible.

EARTHQUAKE:

As respects loss or damage to property resulting from the peril of Earthquake, all loss, damage or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deductible the sum of $50,000.  This deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

FLOOD:

As respects loss or damage to property resulting from the peril of Flood, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100 year flooding, as defined by the Federal Emergency Management Agency, all loss arising out of any one occurrence shall be adjusted as one loss and from the loss shall be deducted the maximum amount recoverable under the National Flood Insurance Program for the Real or Personal Property at each Building, whether or not such coverage is purchased or maintained.

In addition, the following Deductible will apply to property not eligible and coverages not available under the National Flood Insurance Program that are covered under this Policy and any difference in valuation between policies: $100,000 per Occurrence.

The determination of whether a property is in whole or in part subject to the 100 Year Flood Zone shall be at the inception of the policy and not at the time of loss.

5

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

NAMED STORM:

With respect to loss or damage to property in Tier 1 Counties resulting from the period of Named Windstorm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm), the deductible shall be 2% of such unit of insurance at each location in accordance with policy valuation at the time of loss.  A minimum $100,000 each occurrence shall apply.

With respect to any other named storm loss or damage, the deductible shall be **$50,000** any one occurrence.

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

ALL OTHER WIND and HAIL:
As respects loss or damage to property resulting from the peril of All Other Wind, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

**$50,000**

Definition of 'Unit of Insurance':
   a) Each separate building or structure
   b) Contents in each separate building or structure
   c) Property in the yard of each separate building or structure
   d) Annual Business Interruption value applying to each separate building or structure.
   e) Each Other Property item as listed in the Statement of Values.  If values are not listed separately, the value is included in the building value.

Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence. If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the insured shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s), notwithstanding the above reference to two or more deductibles.

The deductible amounts specified above shall not apply to general average contributions and salvage charges.

7.     LOSS PAYABLE - Loss, if any, shall be adjusted with and payable to the Insured, or as directed by them.

**Plaintiffs 000375**

8.      TERRITORY - This policy covers anywhere in the United States of America and its territories and possessions including coastal and inland waterways and while in due course of transit therein or thereto.

9.      PROPERTY COVERED - Except as hereinafter excluded, this policy covers the interest of the Insured in all real and personal property owned, used, leased or intended for use by the Insured or in which the Insured may have an insurable interest, or for which the Insured may be responsible for the insurance, or real or personal property hereafter constructed, erected, installed, or acquired including while in course of construction, erection, installation, and assembly including Improvements and Betterments. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.  This policy is extended to include:

   a)     The interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by written contract for such property, including the cost to defend any allegations of liability for loss or damage to such property.

   b)     At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured.

   c)     Contractors' and/or subcontractors' (of any tier) and/or vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract.

10.     PROPERTY EXCLUDED - This policy does not cover loss or damage to:

   a)     Money and securities;

   b)     Land, land values, except as insured under the "Pollutant Cleanup of Land and Water" clause.  This exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements if land improvements have been scheduled on the Schedule of Values on file with the company.  Land improvements as described hereunder include, but are not limited to any alteration to the natural condition of the land by grading, landscaping, excavation, earthen dikes or dams, as well as additions to land such as pavements, roadways or similar works;

   c)     Water; except water which is normally contained within any type of tank, piping system or other process equipment;

   d)     Growing crops, standing timber, and live animals;

   e)     Watercraft; aircraft and motor vehicles licensed for highway use;

   f)     Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

   g)     Underground mines or mine shafts or any property within such mine or shaft;

7

Plaintiffs 000376

h) Offshore property; unless reported on the Schedule of Values on file with the company.

i) Transmission and Distribution Lines beyond 1,000 feet of Insured Premises;

j) currency; evidence of debt; notes

k) Turbines and satellites;

l) docks, piers, and wharves; bridges, roadways, streets, walks or any other paved surfaces; dams or dikes; railroad rolling stock; off-shore drilling rigs or platforms; underground mines, wells, caverns including property contained therein unless reported on the Schedule of Values on file with the company.

11. PROPERTY VALUATION - The basis of loss adjustment shall be as follows:

a) Valuable Papers & Records/Electronic Data Processing Media : the cost to repair or replace the property with other of like kind and quality including the cost of labor, service or supplies consumed in reconstructing, reproducing, recreating, transcribing or copying information; or, if not so replaced, the value blank.

b) Raw materials and supplies: the replacement cost new.

c) Stock in process: The value of raw materials plus labor expended plus the proper proportion of overhead charges.

d) Finished stock and other merchandise for sale: The regular cash selling price less all discounts and charges to which such property would have been subject had no loss occurred.

e) Real and personal property of others for which the Insured is liable: A valuation consistent with the liability of the Insured but only to the extent that such money is necessarily expended by the Insured.

f) Electronic data processing equipment, production machinery & equipment: The cost to repair or replace new with like kind and quality. In addition, the Insured may elect to replace such equipment with equipment having technological advances and/or representing an improvement in function and/or forming part of a program of system enhancement and/or more consistent with the Insured's technology strategy (without any reduction or offset for betterment) provided that such replacement can be accomplished without increasing the Insurer's liability.

g) Fine arts, at original cost to the Insured, per schedule, latest appraised value or current market value, all at the Insured's option.

h) Other property not otherwise provided for; at replacement cost new without deduction for depreciation. If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:

8

i)     The repairs, replacement or reinstatement must be executed with due diligence and dispatch.

ii)    This Company's liability for loss or damage on a replacement cost basis shall not exceed the lesser of the replacement cost new of the property or any part thereof identical with such property intended for the same occupancy and use, including normal and customary profit and overhead even if the work is performed by the Insured; or the amount actually and necessarily expended in repairing or replacing said property or any part thereof including normal and customary profit and overhead even if the work is performed by the Insured.

12.    BUSINESS INTERRUPTION - This policy shall cover the loss resulting from necessary interruption of business conducted by the Insured including all interdependent loss of earnings between or among companies owned or operated by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

a)    In the event of such loss, damage or destruction this Company shall be liable for the ACTUAL LOSS SUSTAINED by the insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business. Due consideration shall be given to the continuation of normal charges and expenses including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately before the loss. For the purposes of this insurance, "Gross Earnings" are defined as the sum of:

i)     Net sales value of production from manufacturing operations, and net sales from Merchandising or Non-Manufacturing operations; and

ii)    Other earnings derived from operations of the business,

LESS THE COST OF:

iii)   Raw Stock from which such production is derived;

iv)   Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the services(s) sold by the Insured;

v)    Merchandise sold, including packaging materials therefor; and

vi)   Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

Plaintiffs 000378

b)    In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the period of restoration, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including ordinary payroll, directly attributable to such research and development activities.

c)    Resumption of Operations: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business:

    i)    by a complete or partial resumption of operation at a location owned by the same entity suffering the loss, whether damaged or not; or

    ii)    by making use of available stock, merchandise, or other property;

    such reduction shall be taken into account in arriving at the amount of loss hereunder.

d)    EXPERIENCE OF THE BUSINESS - In determining the amount of gross earnings, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

e)    As respects coverage provided under the Gross Earnings clause of this policy, the insurer shall not be liable for any loss resulting from loss or damage to finished stock nor for the time required to reproduce said finished stock.

13.    Extra Expense - This policy shall cover the necessary extra expense, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

a)    The term "Extra Expense" wherever used in this Policy, is defined as the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally have been incurred to conduct the business during the same period had no loss or damage occurred.

Plaintiffs 000379

b)      In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities, this policy shall cover the actual loss sustained of the extra expenses as defined herein directly attributable to the interruption of such research and development activities.

c)      As soon as practicable the Insured shall resume normal operations of the business and shall dispense with such extra expense.

14.     This policy is extended to cover expenses as are necessarily incurred for the purpose of reducing any loss under this policy; however, such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

15.     SOFT COSTS - This policy shall cover soft costs, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to property under construction as covered herein.

a)      The term "Soft Costs" shall include:

i)      Additional interest costs on money used to finance construction or repair;
ii)     Additional real estate and property taxes incurred for the period of time that construction extends beyond the projected completion date;
iii)    Additional legal and accounting fees; and
iv)     Additional advertising and promotional expenses which become necessary as a result of an insured loss.

b)      This company shall pay soft costs incurred from the date that the building, structure or improvement would have been completed had no physical damage occurred until such time that it is completed.  As soon as practicable after any loss, the Insured shall utilize every available means to reduce the amount of loss including:

i)      partial or complete resumption of construction, business or operations;
ii)     making use of materials, equipment, supplies, or other property at the Insured's premises or elsewhere; or
iii)    making use of substitute facilities or services where practical;

such reduction will be taken into account in arriving at the amount of such loss.

16.     Rental Value/Rental Income - This policy shall cover the actual loss sustained by the Insured resulting directly from the necessary untenability caused by direct

11

Plaintiffs 000380

physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as covered herein.  Loss settlement shall not exceed the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenability.

a)      If the Insured is the lessor, for the purposes of this insurance, "rental value" is defined as the sum of:

      i)      the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the insured, and

      ii)     the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

      iii)    the fair rental value of any portion of said property which is occupied by the Insured.

b)      If the Insured is the lessee, rental value shall be the determined rental which the Insured is obligated to pay (including ground rents, accrued charges, real estate taxes and interest if the Insured shall be liable therefor) less such charges and expenses as do not necessarily continue.

c)      Experience of the Business - In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

d)      With respect to buildings or structures leased or rented by the Insured, this policy will serve as rental income insurance in those situations where the insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord.  This policy will respond for rental expenses incurred by the Insured in excess of the expenses which would have been incurred had a leased or rented premises not been damaged or destroyed by any peril covered under this policy. Such coverage will apply for all additional expenses incurred during the period of untenability or if the lease cannot be terminated until its expiration.

17.    Royalties - This policy shall cover the loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to direct physical loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the other party.

Plaintiffs 000381

a)      Any loss hereunder shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED to such income referred to above, which would have been earned had no loss occurred.

b)      Resumption of Operations:  The Insured shall influence, to the extent possible, the party with whom the agreement described above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Company.

c)      Experience of the Business:  In determining the amount of income derived from the agreements(s) described above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

18.   Leasehold Interest - This policy covers the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

a)      the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

b)      improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of this policy;

c)      the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located; and "Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located. The "Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

Plaintiffs 000382

d)      The "Interest of the Insured as Lessee" is defined as:

   i)      the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

   ii)     the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

e)      The "Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is cancelled by the lessee, to the extent not covered under any other section of this policy.

f)      "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "Interest of the Insured as Lessee".

g)      This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

19.    Loss Provisions Applicable to Time Element Coverage - The "Period of Indemnity" is defined as the length of time for which loss may be claimed, and shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy, subject to the following provisions:

a)      The Period of Indemnity shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged.

b)      With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly the Period of Restoration shall be determined as provided above but such determined length of time shall be applied, and the loss hereunder calculated from the date that business operations would have begun had no damage or destruction occurred.

c)      Extended Period of Indemnity - The Period of Indemnity shall include such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

   i)      the date on which the liability of the Company for loss or damage would otherwise terminate; or

Plaintiffs 000383

        ii)      the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually completed;

      terminating no more than 365 days from said later commencement date.

20. Extensions of Time Element Coverage: This policy, subject to all its provisions and without increasing the amount of said policy, insures against direct physical loss resulting from damage to or destruction by the perils insured against, to:

    a)    Any service provider's property including but not limited to, electrical equipment and systems, water, gas, steam, telephone or their respective transmission and distribution lines or utility plants which directly or indirectly provide incoming or outgoing services to the Insured situated on or outside of the Insured's premises.

    b)    the actual loss sustained, and Extra Expense incurred by the Insured at an insured location during the period of restoration directly resulting from physical loss or damage of the type insured to property of the type insured at a Contingent Time Element Location, meaning a location within the TERRITORY of a direct supplier or direct customer of the Insured.

        As respects this subparagraph b):

        i.   The Insured will influence and cooperate with the Contingent Time Element Location in every way and take any reasonable and necessary action, including the use of other machinery, supplies, or locations, to effect mitigation of the loss payable hereunder.

        ii.  In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

        iii. This Policy does not insure loss resulting from a lack of incoming or outgoing electricity, fuel, gas, water, steam, refrigeration, sewage, or telecommunications of a direct supplier or direct customer of the Insured.

        iv. The per occurrence deductible that applies to all perils also applies to the coverage as provided under this subparagraph b).

    c)    dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other manufacturing purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources.

    d)    the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory

15

Plaintiffs 000384

mile of an insured location, access to real or personal property is impaired or hindered by order of civil or military authority irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 e) below.

e)      the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory mile of an insured location, ingress to or egress from real or personal property is thereby impaired or hindered irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 d) above.

f)      property, facilities or piping systems which prevents the Insured from discharging its outgoing effluence.

21.      Transit - This policy shall cover property in transit, and this policy attaches and covers shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.  This insurance is extended to cover loss or damage to property:

a)      sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

b)      arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

c)      occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

d)      at the Insured's option, property which is incoming to the Insured.

The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor. With respect to shipments described under subparagraphs a and d above, this Company agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

Plaintiffs 000385

e)      The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

f)      Seaworthiness of any vessel or watercraft, and airworthiness of any aircraft are admitted between this Company and the Insured.

22.      Accounts Receivable - Defined as:

a)      All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

b)      Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

c)      Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

d)      Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

e)      the monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

f)      the monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

23.      Lost Master/Key Card - If a master or grand master key is lost, or damaged so it cannot be duplicated, we will pay for the actual loss of keys, the cost of adjusting locks to accept new keys, or the cost of new locks, if required, of like kind and

Plaintiffs 000386

quality including the cost of installation subject to the limit contained in the Declarations.

24.   Arson Reward - If covered property sustains direct physical loss or damage caused by or resulting from a fire, and the origin of such loss is determined to be the criminal acts of an individual or individuals, we will pay a reward to the person or persons who provide information that leads to the arrest and conviction of the individual or individuals responsible for the loss.

25.   Contract Penalty – This policy covers a compensation payment due under the Hotel Management Agreement between the Franchisee, Named Insured, and any Franchisor, as identified via policy endorsement, or other appropriate subsidiaries acting as the management company or agent, whether insured or not under this policy. The Contract Penalty is triggered when the Hotel Management Agreement is terminated due to loss or damage of a type insured under this policy from an insured peril where such loss or damage causes a total constructive loss.

"A total constructive loss" means the destruction or damage to the Hotel by an insured peril whereby the destruction of or damage to the Hotel is such that the cost of repairing, rebuilding or replacing the Hotel exceeds 50% of the Replacement value of the Hotel." The Contract Penalty will only apply if the franchisor does not release the franchisee from the Hotel Management Agreement after a total constructive loss occurs and the First Named Insured / Franchisee elects not to repair or rebuild the property.

26.   BOILER & MACHINERY - This policy insures direct or indirect loss as covered elsewhere in this policy to insured property as a result of an Accident to an Object subject to the following definitions:

  a)   "Object" means any boiler, fired or unfired pressure vessel, refrigerating or air-conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.
  b)   "Accident" means an accidental loss to an Object or a part thereof which manifests itself in physical damage that necessitates repair or replacement of the Object or part thereof.
  c)   "Hazardous Substance" means the additional expense incurred for clean up, repair or replacement, or disposal of damaged, contaminated or polluted property as a result of an "Accident" which causes property to become damaged, contaminated or polluted by a substance declared hazardous to health by an authorized governmental agency.  "Additional Expenses" means expenses incurred that would not have been incurred, had no substance hazardous to health been involved in the accident.

27.   PERILS INSURED AGAINST - This policy insures against all risks of direct physical loss of or damage to property described herein including general

Plaintiffs 000387

average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

28.    PERILS EXCLUDED - This policy does not insure:

a)    infidelity or dishonesty of the Insured or of the Insured's employees. A willful act of malicious intent shall not be deemed to be an act of infidelity. In no event does this Policy insure loss caused by theft by the Insured or the Insured's employees;

b)    against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

c)    against ordinary wear and tear or gradual deterioration unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

d)    against inherent vice or latent defect unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

e)    against errors in processing or manufacture of the Insured's product unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

f)    against mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

g)    against nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except if a covered peril ensues, liability is specifically assumed for direct loss by such ensuing peril but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination.  This Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

h)    against hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or

Plaintiffs 000388

expected attack by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or by military, naval, or air forces; or by any agent of any such government, power, authority, or forces;

    i)      against any weapon employing atomic fission or fusion;

    ii)     against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

    iii)    against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against under this policy;

    iv)    against risks of contraband or illegal trade;

    v)     against confiscation, nationalization and expropriation;

Notwithstanding the above provisions, this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated.  Nothing in the foregoing shall be construed to include any loss, damage, or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon or war employing atomic fission or fusion whether in time of peace or war.

i)      loss or damage caused directly or indirectly by the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants unless the release, discharge, dispersal, seepage, migration, or escape is caused by a peril not otherwise excluded herein.  However, if a peril not otherwise excluded herein ensues due to the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants, such ensuing loss or damage shall be covered.

j)      loss or damage caused by an act of terrorism which means an act or series of acts, including the use of force or violence, of any person or group(s) or persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public or any section of the public in fear for such purposes.

k)      against loss or damage caused by insect or vermin.

Plaintiffs 000389

l)     against delay, loss of market loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

m)    against delay, loss of market, loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

n)     against corrosion, depletion, deterioration, erosion, wet rot, dry rot, decay, evaporation, rust, and shrinkage unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

o)     against changes of temperature or humidity, whether atmospheric or not;

p)     against settling, cracking, bulging, shrinking, or expansion of foundations; machinery pedestals, pads, or platforms; floors, pavements, walls, ceilings, or roofs; or the cumulative effects of smog, smoke, soot, vapor liquid, or dust;

q)     against lack of incoming power voice/data/internet access from offsite services except as provided in the Service Interruption Extension.

Exclusion b), c), d) and e) do not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly.

Exclusion b), c) and d) do not apply to property in transit.

29.    DEFINITIONS

a)     The term "Earthquake" as used in this policy shall mean loss or damage caused by or resulting from a series of vibrations induced in the earth's crust by the abrupt rupture and rebound of rocks in which elastic strain has been slowly accumulating (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

b)     The term "Flood" as used in this policy shall mean loss or damage caused by or resulting from waves, tide, or tidal water, and the rising (including the overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and similar bodies of water, whether wind driven or not (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

c)     The term "occurrence" is defined as follows:

Plaintiffs 000390

i) Except as hereinafter defined, "loss occurrence" shall mean an accident or occurrence or series of accidents or occurrences arising out of one event.

ii) ii) Each loss occurrence which involves the perils of tornado, windstorm, cyclone, hurricane, hail or flood shall include all loss or damage wherever occurring occasioned by these perils which arise out of one atmospheric disturbance during a continuous period of 168 hours.

iii) Each loss occurrence which involves the peril of earthquake, a series of earthquakes shall include all losses or damage sustained during a continuous period of 168 hours.

iv) Each loss occurrence which involves the peril(s) of vandalism, malicious mischief or riot/civil commotion shall include all losses or damage sustained resulting from one or more acts committed by a person acting alone or in collusion with others during a continuous period of 168 hours.

v) The Insured shall have the right to elect the moment from which the time periods referred to in ii), iii), and iv) above shall be deemed to have commenced, however no elected period of time shall commence within any previous occurrence.

vi) Should the time period in ii), iii), and iv) above extend beyond expiration or cancellation date of this policy and commence prior to the expiration or cancellation date, this Company shall be liable as is such period fell entirely within the term of this policy.

vii) However, we shall not be liable hereunder for any loss or damage:

viii) Occurring before this policy becomes effective; or

ix) Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

d) "Raw Stock" - Materials and supplies in the state in which the Insured receives it for conversion by the Insured into Finished Stock, including supplies consumed in such conversion or in the service rendered by the Insured.

e) "Stock in Process" - Raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture by on behalf of the Insured but which has not become Finished Stock.

f) "Finished Stock" - Stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

g) "Merchandise" - Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

h) "Normal" - The condition that would have existed had no loss occurred.

Plaintiffs 000391

i) "Improvements and Betterments" - Fixtures, alterations, installations or additions comprising a part of the described building and made or acquired at the expense of the Insured, but which are not legally subject to removal by the Insured.

j) "Valuable papers and records" - Written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents and manuscripts.

k) "Electronic Data Processing Media" - All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles.

l) "Securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets.

m) "Fine Arts" - Shall include but not be limited to bona fide works of art, works of rarity, works of historical value, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, galley proofs, original records, sculptures, carvings and similar property.

n) "Architect and Engineering Fees" - Any cost associated with the preparation of plans, supervision of and approval for the repair or replacement of damaged or destroyed property.

o) "Tier One County" - the entire territory of the United States Virgin Islands, the entire Commonwealth of Puerto Rico, the entire State of Florida, and the following:
   i) In the State of Alabama, the counties of Baldwin, Escambia, and Mobile;
   ii) In the State of Connecticut, the counties of Fairfield, New Haven, and New London;
   iii) In the State of Georgia, the counties of Bryan, Camden, Chatham, Glynn, Liberty, and McIntosh;
   iv) In the State of Hawaii, the counties of Honolulu, Kauai, and Maui;
   v) In the State of Louisiana, the counties (also known as "Parishes") of Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, Iberia, Iberville, Jefferson Davis, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John The Baptist, St. Martin, St. Mary, St. Tammany, Terrebonne, and Vermillion;
   vi) In the Commonwealth of Massachusetts, the counties of Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, and Suffolk;

Plaintiffs 000392

vii)    In the State of Mississippi, the counties of George, Greene, Hancock, Harrison, Jackson, Pearl River, and Stone;

viii)    In the State of New Jersey, the counties of Atlantic, Monmouth, and Ocean;

ix)    In the State of New York, the counties of Kings, Nassau, Queens, and Suffolk;

x)    In the State of North Carolina, the counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington;

xi)    In the State of Rhode Island, the counties of Newport, Providence, and Washington;

xii)    In the State of South Carolina, the counties of Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, and Williamsburg;

xiii)    In the State of Texas, the counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Gollad, Harris, Hidalgo, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, and Willacy; and

xiv)    In the Commonwealth of Virginia, the counties of Accomack, Gloucester, Isle of Wright, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, Westmoreland, and York; and the independent cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Suffolk, and Virginia Beach.

p)    "Named Storm"- A storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Depression or Tropical Storm. "Named storm" does not include "flood" resulting from a "named storm".

q)    "Time Element' – Includes coverage as described under Clause 12., 13., 14., 15., 16., 17., 18., 19. and 20. hereunder.

r)    "Unnamed Location' – A location which has not been scheduled with underwriters or the insured's representative and is not considered a Newly Acquired location.

s)    "Newly Acquired Location" – A location acquired by the insured after inception of this policy for a period of up to 90 days until reported to and agreed by underwriters.

30.    FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES - This policy covers fire brigade charges and other extinguishing expenses for which the Insured may be assessed including loss of fire extinguishing materials expended resulting from a peril insured.

Plaintiffs 000393

31.  SEVERABILITY OF INTERESTS - The inclusion herein of more than one person or organization, as Insured, shall not operate to increase the limit of the Company's liability nor the deductible amounts to be borne by the Insured. Except with respect to limits of liability and deductible amounts, the terms of this policy shall apply separately to each person or organization covered as Insured in the same manner and to the same extent as though a separate policy had been issued to each such person or organization.

32.  DEBRIS REMOVAL - This policy covers the cost of removal of debris of property covered hereunder including the cost of removal of debris of property not insured hereunder from the premises of the Insured resulting from a peril insured against. Except as otherwise provided for elsewhere in this policy, this policy does not cover the cost to extract contaminants or pollutants from land or water, nor does it cover the cost to remove, restore or replace contaminated or polluted land or water.

If at the time insured property is contaminated as a direct result of physical damage insured against by this policy there is in force any law or ordinance regulating contamination, including but not limited to pollution, then this policy shall cover, as a result of the enforcement of such law or ordinance, the increased cost of decontamination and debris removal of such property in a manner to satisfy such law or ordinance.  As respects Time Element coverage(s), this policy is extended to include such time as is necessary and reasonable with the exercise of due diligence and dispatch to decontaminate such property in a manner to satisfy such law or ordinance.

33.  DEMOLITION AND INCREASED COST OF CONSTRUCTION - In the event of loss or damage under this policy that causes the enforcement of any law or ordinance in force at the time of loss regulating the construction, repair or use of property, this Company shall be liable for:

a)  <u>COVERAGE A</u> - the loss in value of the undamaged portion of the property as a consequence of the enforcement of any law or ordinance that requires demolition of undamaged parts of the same property;

b)  <u>COVERAGE B</u> – the cost to demolish and clear the site of undamaged parts of the same property;

c)  <u>COVERAGE C</u> – the increased cost to repair or reconstruct damaged and undamaged property on the same or another site when the increased cost is a consequence of the enforcement of any law or ordinance.  These costs are limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  This Company shall not be liable for any increased cost of repair or reconstruction loss unless the damaged property is actually rebuilt or replaced;

Plaintiffs 000394

d)    Any increase in loss including but not limited to Business Interruption, Extra Expense, Rental Value, Rental Income, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law or ordinance.

e)    In the event real or personal property is not repaired or replaced to the same height, floor area, size, style or comparable quality of the original property insured due to the enforcement of law or ordinance regulating, restricting or prohibiting repair or replacement of covered property, this policy will pay the full replacement cost without deduction for depreciation for the real or personal property damaged or destroyed, as if the property was replaced to the same height, floor area, size, style or comparable quality of the original property insured.  This policy will also pay Time Element loss as if the original structure were repaired or replaced to original specifications, subject to the terms and conditions of these coverage(s).

34.    EXPEDITING EXPENSE - This policy covers the extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

35.    CONTRIBUTING INSURANCE - Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy.  This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

36.    EXCESS INSURANCE - Excess insurance is insurance over the limit of liability set forth in this policy.  The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

37.    UNDERLYING INSURANCE - Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire.  The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy. Should the amount of loss payable under such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then no deductible shall apply hereunder and that portion which exceeds such a deductible amount shall be considered "other insurance". Should the amount of loss payable under such underlying insurance be less than the largest deductible amount which would apply in the event of loss under this policy, then the deductible amount to be deducted hereunder shall be the difference between the amount to be paid under such underlying insurance and the largest deductible amount which would apply in the event of loss under this policy.

38.    OTHER INSURANCE - Except for insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether

Plaintiffs 000395

prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils.  This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.

39.    SUBROGATION - Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder.  The right of subrogation against the Insured, affiliated, subsidiary, and associated companies, or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived and at the option of the Insured, against a tenant or guest of the Insured. In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.  If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests.  If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

40.    SALVAGE AND RECOVERIES - All salvages, recoveries, and payments, (excluding proceeds from subrogation and underlying insurance) recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly.  If proceeds from subrogation are recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(s) participating in the payment of any loss, in the proportion of their respective interests.

41.    CONTROL OF DAMAGED MERCHANDISE - The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods.  The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods.  The Insured, using reasonable discretion, shall be the sole judge as to whether production or EDP equipment and/or media is damaged and unusable. This insurer shall be allowed to dispose of as salvage, any non-proprietary property deemed unusable by the Insured.

Plaintiffs 000396

42.     BRAND OR TRADEMARK - In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carriers or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at this Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

43.     ERRORS OR OMISSIONS - Any unintentional error or omission made by the Insured in the application for insurance shall not void or impair the insurance hereunder but only to the extent this Policy would have provided coverage had the unintentional error or omission not been made provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department. This coverage does not apply if there is coverage available under any other provision in this Policy.

44.     NOTICE OF LOSS - As soon as practicable after any loss or damage occurring under this policy is known to the Insured's home office insurance department, the Insured shall report such loss or damage with full particulars to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 for transmission to the designated loss adjuster and to this Company.

45.     DESIGNATED LOSS ADJUSTER - It is understood and agreed that each and every loss will be adjusted by Jeff Hellman of McLaren Young International, 19324 40th Avenue West, Suite C, Lynnwood, WA 98036.

46.     PROOF OF LOSS - Proof of loss is required as soon as practicable following the Company's written request for signed Proof from Insured; however, Insured, at its option, may elect to file Proof with the Company prior to the Company's request.  It shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained.

47.     PARTIAL PAYMENT OF LOSS - In the event of a loss covered by this policy, it is understood and agreed that the Company shall allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

48.     PAYMENT OF LOSS - All adjusted claims shall be due and payable no later than thirty (30) days after presentation of acceptable proofs of loss by the Insured or its appointed representative.

49.     LOSS ADJUSTMENT EXPENSES - This policy is extended to include reasonable expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. These expenses include fees of professionals engaged to assist the Insured in determining the cause and origin of the loss, the amount

28

of loss sustained, and the amount of loss payable under this policy. This policy shall not cover the expenses of a public adjuster. Such expenses shall not exceed $2,000,000 in any one occurrence.

50. APPRAISAL - If the Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser.  The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending.  Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss.  If the appraisers fail to agree, they shall submit their differences to the umpire.  An award in writing by any two shall determine the amount of loss.  The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

51. CONSEQUENTIAL LOSS - This policy insures against consequential loss including spoilage to real and personal property as insured hereunder caused by change of temperature or humidity or by interruption of any service including but not limited to power, heat, air conditioning, or refrigeration resulting from a peril insured against.

52. PAIR AND SET - In the event of loss or damage by a peril insured against to any article or articles which are part of a pair or set, the measure of loss or damage to such article or articles shall be the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

53. CONSEQUENTIAL REDUCTION IN VALUE - This policy covers the reduction in value of insured components or parts of components or parts of products or the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to direct physical loss or damage insured against by this Policy to other insured components or parts of products.

54. COINSURANCE WAIVER - This policy is not subject to any coinsurance or average clause.

55. ALTERATIONS AND USE CLAUSE - Permission is granted to the insured to cease operations or for buildings to remain vacant or unoccupied provided fire protection, watch alarm services are maintained, and written notice is given to the Insurer prior to the sixtieth (60th) consecutive day of cessation of operations, vacancy or unoccupancy. The Insured's building is considered vacant or unoccupied when it does not contain enough covered Property to conduct customary business operations.

Plaintiffs 000398

56.     ASSISTANCE AND COOPERATION OF THE INSURED - The Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

57.     SUE AND LABOR - In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment.  This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

58.     REINSTATEMENT - With the exception of loss subject to annual aggregate limits as noted herein, no loss hereunder shall reduce the amount of this policy.

59.     SUIT AGAINST THE COMPANY - No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy.  The Company agrees that any action or proceeding against it for recovery of any loss under this policy shall not be barred if commenced within the time prescribed therefor in the statutes of Florida.

60.     CERTIFICATES OF INSURANCE - It is understood and agreed that Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 is authorized to issue certificates of insurance naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests subject always to the terms, conditions, and limits of liability of this policy. The Company agrees to waive the issuance of formal Company endorsements in respect of such interests.

61.     NOTIFICATION CLAUSE - All notices or communications concerning this policy shall be addressed to the offices of the Insured, to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 and to AmWINS Brokerage of Georgia, 3630 Peachtree Road NE, Suite 1700, Atlanta, GA 30326.  All such notices shall be sent via registered mail.

62.     CANCELLATION/NON RENEWAL - This policy may be cancelled at any time at the request of the Insured or it may be cancelled or non-renewed by the Company by mailing to the Insured written notice stating when, not less than ninety (90) days thereafter or ten (10) days in the event of non-payment of premium, such cancellation or non-renewal shall be effective. If the First Named Insured cancels, return of any unearned premium will be calculated on the

30

Plaintiffs 000399

customary short rate basis. If the Company cancels, return of any unearned premium will be calculated on a pro rata basis. Return of any unearned premium will be made by the Company as soon as practicable. The cancellation will be effective even if the Company has not made or offered a refund.

63.   TITLES OF PARAGRAPHS - The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

64.   MORTGAGE CLAUSE - As respects Real Property only, loss, if any, under this policy shall be payable to the mortgagee (or trustee) as its interest may appear under all present or future mortgages upon the property herein insured in which the aforesaid may have an interest as mortgagee (or trustee) in order or precedence of mortgages., and this insurance as to the interest of said mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that, in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided also, that the mortgagee (or trustee) shall, notify the Company of any changes of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and unless permitted by this policy, it shall be noted thereon and the mortgagees or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The company reserves the right to cancel this policy at any time as provided by its terms, and in such case, this policy shall continue in force for the benefit only of the mortgagee (or trustee) for an additional thirty (30) days.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgagee debt, or may at their option pay to the mortgagee (or trustee) the whole principal due or to grow on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and all of such other securities, but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

65.   JURISDICTION AND SUIT - It is hereby understood and agreed that in the event of the failure of the Insurer to pay an amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court

31

Plaintiffs 000400

of competent jurisdiction within the United States and will comply with all requirements necessary to give such jurisdiction.  All matters arising hereunder shall be determined in accordance with the law and practice of such court. In any suit instituted against it under this, the Insurer will abide by the final decision of such court or any appellate court in the event of an appeal.

66.   POLLUTANT CLEAN UP AND REMOVAL - This policy is extended to cover the expense actually incurred by the Insured to decontaminate, clean up and/or remove pollutants from land, water or air including resultant time element loss if the release, discharge, or dispersal of the pollutants results from any loss or damage as covered herein. Such expenses shall not exceed $500,000 in any one policy year.

67.   ATTACHMENT CLAUSE – Please refer to the Participation Page.

_____
 [Authorized Signature]

Plaintiffs 000401

# Endorsement No. 1

### <u>Microorganism Exclusion – Resultant Mold</u>

This policy does not insure any loss, Damage, Time Element, claim, cost, expense or other sum directly or indirectly arising out of or relating to (regardless of whether any other cause or event contributed concurrently or in any sequence):

Fungus, mold, mildew, yeast, mushrooms, spores, toxins, mycotoxins, bacteria or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion shall not apply to any such loss, Damage, Time Element, claim, cost, or expense resulting from mold that is a direct result of an Insured Cause of Loss and is not otherwise excluded by the Policy, provided such loss, Damage, Time Element, claim, cost, or expense is reported to the Company in writing within twelve months from the expiration date of the policy. This clause is subject to a $500,000 per occurrence and in the annual aggregate sublimit.

This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part, for these matters.

All other terms and conditions remain unchanged.

**Plaintiffs 000402**

**COMMERCIAL PROPERTY**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL PROPERTY EXCLUSIONS AND CONDITIONS

This endorsement modifies insurance provided under all Property, Difference In Conditions and similar or related coverage forms attached to this policy.

### A. EXCLUSIONS

We shall not pay for loss or damage caused directly or indirectly by or resulting from any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**1. Nuclear Hazard**

Nuclear reaction, nuclear radiation or radioactive contamination, however caused.

But, if nuclear reaction, radiation or radioactive contamination results in fire, we will pay for the loss or damage caused by that fire, if fire is a Covered Cause of Loss under this policy.

**2. Governmental Action**

Seizure, confiscation, quarantine or destruction of Covered Property by order of any governmental or public authority, But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**3. War And Military Action**

**a.** Any hostile or warlike action in time of peace or war, whether or not the war is declared, including action in hindering, combating or defending against an actual, impending or expected attack by:

    **(1)** Any government or sovereign power (de jure or de facto) or by any authority maintaining or using military forces;

    **(2)** Military, naval or air forces; or

    **(3)** Any agent of any government, power, authority or forces;

**b.** Any weapon of war, including but not limited to weapons employing atomic fission or radioactive force, whether in time of peace or war; or

**c.** Insurrection, rebellion, revolution, civil war, usurped power or action taken by governmental authority in hindering, combating or defending against any of these.

### B. CONDITIONS

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss within 60 days after the receipt of proof of loss by us. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state

**Plaintiffs 000403**

separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Brands And Labels**

In the event of loss of or damage to labels, capsules or wrappers, the loss will be adjusted on the basis of an amount sufficient to pay the cost of new labels, capsules or wrappers.

If branded or labeled merchandise covered by this policy is damaged and we elect to take all or any part of such merchandise at the value established by the terms of this policy, you may, at your own expense, label the damaged property as salvage or remove or obliterate the brands or labels, if such stamp, removal or obliteration will not physically damage the merchandise; but you must re-label the merchandise or containers in compliance with the requirements of law.

**4. Cancellation**

**a.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**b.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**c.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**d.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**e.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**f.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**5. Changes**

**a.** This policy contains all the agreements between you and us concerning the insurance afforded by this policy. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. The terms of this insurance can be amended or waived only by endorsement issued by us and made a part of this policy.

**b.** Notice to any agent or knowledge possessed by any agent or any other person will not:

**(1)** Create a waiver or change any part of this policy; or

**(2)** Prevent us from asserting any rights under this policy.

**6. Concealment, Misrepresentation Or Fraud**

This insurance is void in case of any fraud by you as it relates to this insurance at any time. It is also void if you or any other insured intentionally conceal or misrepresent a material fact concerning:

**a.** This insurance;

**b.** Any Covered Property;

**c.** Your interest in any Covered Property; or

**d.** A claim under this insurance.

**7. Control Of Property**

**a.** Any act or neglect of any person other than you beyond your direction or control will not affect tis insurance.

**Plaintiffs 000404**

**b.** The breach of any condition of this insurance at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**8. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Upon knowledge of any occurrence likely to give rise to claim for covered loss or damage, you shall give us written notice as soon as practicable but no later than one year from the expiration of this insurance. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**9. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this insurance at any time during the policy period and up to three years afterward.

**10. Inspections And Surveys**

**a.** We have the right to:

**(1)** Make inspections and surveys of the subject(s) of this insurance at any time;

**(2)** Give you reports on the conditions we find; and

**(3)** Recommend changes.

**b.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged.

**c.** We do not:

**(1)** Make safety inspections;

**(2)** Undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public; or

**(3)** Warrant that any conditions:

**(a)** Are safe or healthful; or

**(b)** Comply with laws, regulations, codes or standards.

**d.** Paragraphs **a.**, **b.** and **c.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**Plaintiffs 000405**

**e.** Paragraphs **b.** and **c.** of this condition do not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## 11. Insurance Under Two Or More Coverages

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## 12. Legal Action Against Us

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within one year after the date on which the direct physical loss or damage occurred.

## 13. Liberalization

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## 14. Mortgageholders

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

## 15. No Benefit To Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## 16. Other Insurance

**Plaintiffs 000406**

**a.** You may have other insurance subject to the same plan, terms, conditions and provisions as this insurance. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that our applicable Limit of Insurance bears to the limits of all insurance covering on the same basis.

**b.** If there is other insurance covering the same loss or damage other than that described in **a.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than our applicable Limit of Insurance.

### 17. Pair, Set Or Parts

In the event of loss of or damage to any:

**a.** Article or articles which are a part of a pair or set, the measure of loss of or damage to such article or articles shall be a reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of such article or articles, but in no event shall such loss or damage be construed to mean total loss of the pair or set; or

**b.** Part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

### 18. Policy Period, Coverage Territory

Under this Coverage Part:

**a.** We cover loss or damage commencing:

   **(1)** During the policy period shown in the Declarations; and

   **(2)** Within the coverage territory.

**b.** The coverage territory is:

   **(1)** The United States of America (including its territories and possessions); and

   **(2)** Canada.

### 19. Premiums

The first Named Insured shown in the Declarations:

**a.** Is responsible for the payment of all premiums; and

**b.** Will be the payee for any return premiums we pay.

### 20. Salvage And Recovery

If we pay you for the loss and the lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

**a.** You must notify us promptly if you recover property or receive payment;

**b.** We must notify you promptly if we recover property or receive payment;

**c.** Any recovery expenses incurred by either are reimbursed first;

**d.** You may keep the recovered property or payment received, but you must refund to us the amount of claim paid or any lesser amount to which we agree; and

**e.** If the claim paid is less than the agreed loss due to a deductible or other limiting terms of this policy, any recovery will be prorated between you and us based on our respective interest in the loss.

### 21. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties, but only with respect to that property.

### 22. Transfer Of Rights Of Recovery Against Others To Us

**Plaintiffs 000407**

If any person or organization to or for whom we make payment under this insurance has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**a.** Prior to a loss to your Covered Property or Covered Income;

**b.** After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   **(1)** Someone insured by this insurance;

   **(2)** Your tenant; or

   **(3)** A business firm:

      **(a)** You own or control; or

      **(b)** That owns or controls you.

This will not restrict your insurance.

All other terms and conditions remain unchanged.

**Plaintiffs 000408**



**COMMERCIAL PROPERTY**
POLICY NUMBER:  MKLV11XP007995

NAMED INSURED:  Portofino Master Homeowners Association, Inc.

# CHANGE ENDORSEMENT
## Number  2

In accordance with the terms and conditions of the policy, it is understood and agreed that the policy has been amended as follows:

1. 35% MEP will apply, subject to Hurricane Earned Premium Endorsement, whichever is greater.

2. This policy excludes all foreign locations and exposures.

3. This policy excludes pollution/contamination, asbestos, terrorism, mold (Recognize $500k Sublimit in Primary), electronic data/cyber risk losses and related computer losses, war, nuclear, chemical, and biological materials.

4. As respects policy form MECP 1215 09 14 - Additional Property Exclusions and Conditions, in the event of a conflict, the Manuscript will supersede.

5. As respects policy form MECP 1322 09 14 - Exclusions - Pollution, the policy will recognize the erosion of underlying limits.

**MECP 1252 09 14**                                                  **Page 1 of 1**



**COMMERCIAL PROPERTY**
POLICY NUMBER: MKLV11XP007995

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MINIMUM EARNED PREMIUM FOR EXPOSURE TO HURRICANES

This endorsement modifies insurance provided under all Property, Difference In Conditions, and similar or related coverage forms attached to this policy.

### SCHEDULE

| Paragraph **A.** applies as indicated (x). |
| --- |
| ☒ Paragraph **A.** applies to all locations; or |
| ☐ Paragraph **A.** applies to all locations except the following: |
|  |

The following condition is added:

**Minimum Earned Premium – Hurricanes**

**A.** If you cancel this policy, remove a location or reduce the amount of insurance on a location and coverage existed any time during the period of June 1st to November 30th, we will return the unearned premium for the policy or location, as applicable.

The unearned premium is calculated as the annual premium for the policy (or for the location removed or coverage reduced, as applicable) multiplied by the Unearned Factor shown in the chart below.

The location unearned premium is calculated by determining the location premium, which is the 100% annual rate multiplied by the location value as shown in the most current Statement of Values on file with us, and multiplying it by the Unearned Factor shown in the chart belod:

| 1 Year Policy | |
| --- | --- |
| **Days Policy In Force** | **Unearned Factor** |
| 1 to 180 | 20% |
| 181 to 210 | 15% |
| 211 to 240 | 10% |
| 241 to 270 | 7.5% |
| 271 to 300 | 5.0% |
| 301 to 330 | 2.5% |
| 331 to 365 | 0.0% |

**B.** If you cancel this policy and coverage did not exist anytime during the period of June 1st to November 30th, then a minimum earned premium factor of 35% shall apply.

**C.** The provisions of this endorsement replace any short rate or pro-rata provisions stipulated in this policy.

**D.** Nothing contained in this endorsement will act to provide coverage outside of the automatic acquisition clause, if any, attached to the policy.

All other terms and conditions remain unchanged.

**Plaintiffs 000410**

**COMMERCIAL PROPERTY**
POLICY NUMBER: MKLV11XP007995

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION OF CERTIFIED ACTS OF TERRORISM

All coverages, coverage parts or coverage forms included in the Property coverage section(s) of this policy are subject to the following conditions:

**SCHEDULE**

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| CA, ME | All Commercial Property and Commercial Inland Marine coverages, coverage parts or coverage forms attached to this policy. |
| GA, IA, NY, RI, WV | All Commercial Property coverages, coverage parts or coverage forms attached to this policy. |
| | |
| | |
| **Information required to complete this Schedule, if not shown above, will be shown in the Declarations.** ||

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not

**Plaintiffs 000411**

apply to insurance provided under any other types of coverage forms or endorsements, including but not limited to Business Income and/or Extra Expense coverages or any other time element or consequential coverages.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this coverage form or policy, such as losses excluded by a nuclear hazard exclusion or a war and military action exclusion.

All other terms and conditions remain unchanged.

**Plaintiffs 000412**

COMMERCIAL PROPERTY



# EVANSTON INSURANCE COMPANY

## EXCLUSION – VIRUS, HARMFUL CODE OR SIMILAR INSTRUCTION

This endorsement modifies insurance provided under all Property, Difference In Conditions, and similar or related coverage forms attached to this policy.

The following exclusion is added:

We will not pay for loss or damage to electronic data caused directly or indirectly by any of the following. Such loss or damage is excluded regardless or any other cause or event that contributes concurrently or in any sequence to the loss.

**Virus, Harmful Code Or Similar Instruction**

**1.** Denial of service attack, including but not limited to unauthorized direction of a high volume of messages or inquiries to a website or e-mail destinations, effectively denying, interrupting or limiting legitimate access;

**2.** Transfer of property caused by, resulting from, or arising out of unauthorized instructions transmitted by a computer;

**3.** Financial loss or any other loss or damage due to unauthorized viewing, copying or use of any data (including proprietary or confidential information) by any person, even if such activity is characterized as theft;

**4.** Virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to:

    **a.** Damage or destroy any part of the system, or disrupt its normal operation; or

    **b.** Cause physical damage to computer equipment or electronic data.

This includes electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

These exclusions apply regardless of:

    **a.** Any physical loss or damage to Covered Property by any cause, contributing concurrently or in any sequence;

    **b.** Any loss of use, occupancy or functionality of computer equipment or computer media and data;

    **c.** Any action required, including but not limited to repair, replacement, restoration, removal, cleanup, abatement, disposal, relocation; and

    **d.** Medical or legal costs, expenses or fees.

All other terms and conditions remain unchanged.

**Plaintiffs 000413**



**COMMERCIAL PROPERTY**

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – ASBESTOS

This endorsement modifies insurance provided under all Property and similar or related coverage forms attached to this policy.

The following exclusion is added and is therefore not a Covered Cause Of Loss:

We will not pay for loss or damage arising out of, resulting from, or related in any way to the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**Asbestos**

Asbestos, asbestos-containing material or any material or substance containing asbestos or that is alleged to have contained asbestos.

We shall have no duty of any kind with respect to any such loss or damage.

All other terms and conditions remain unchanged.

**MECP 1315 09 14**          Includes copyrighted material of Insurance Services Office, Inc.,          **Page 1 of 1**
with its permission.

**Plaintiffs 000414**

**COMMERCIAL PROPERTY**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – BIOLOGICAL, RADIOLOGICAL OR CHEMICAL MATERIALS

This endorsement modifies insurance provided under all Property and similar or related coverage forms attached to this policy.

The following exclusion is added and is therefore not a Covered Cause Of Loss:

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**Biological, Radiological Or Chemical Materials**

Loss or damage caused directly or indirectly by the actual or threatened malicious use of pathogenic or poisonous biological, radiological or chemical materials, whether in time of peace or war, and regardless of who commits the act.

All other terms and conditions remain unchanged.

**Plaintiffs 000415**



**COMMERCIAL PROPERTY**

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – POLLUTION

This endorsement modifies insurance provided all Property and similar or related coverage forms attached to this policy.

**A.**  The following exclusion is added and is therefore not a Covered Cause Of Loss:

We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless or any other cause or event that contributes concurrently or in any sequence to the loss.

**Pollution**

The discharge, dispersal, seepage, migration, release, escape or existence of contaminants or "pollutants".

This exclusion applies regardless of whether there is any:

**1.**  Direct physical loss or damage to Covered Property;

**2.**  Loss of use, occupancy or functionality or decreased valuation of Covered Property or loss of Business Income;

**3.**  Cost of removal, treatment, disposal, decontamination,  replacement or restoration of Covered Property which has been contaminated by toxic or hazardous substances, contaminants or "pollutants" and by law or civil authority must be removed, contained, treated, detoxified or neutralized, disposed of, decontaminated, replaced or restored; or

**4.**  Suit or administrative proceeding or action involving the insured.

But if the discharge, dispersal, seepage, migration, release, escape or existence of contaminants or "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

**B.**   The following definitions are added and replace any similar definition in any primary or underlying excess policy:

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, toxic or hazardous substances and waste. Waste includes materials to be, or that have been, recycled, reconditioned or reclaimed.

"Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion;  vandalism or malicious mischief;  leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action, falling objects; weight of snow, ice or sleet; and water damage.

**1.**  Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**a.**  The cost of filling sinkholes; or

**b.**  Sinking or collapse of land into man-made underground cavities.

**2.**  Falling objects does not include loss or damage to:

**a.**  Personal property in the open; or

**b.**  The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**3.**  Water damage means:

**MECP 1322 09 14**          Includes copyrighted material of Insurance Services Office, Inc.,          **Page 1 of 2**
with its permission.

**Plaintiffs 000416**

**a.** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

**b.** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of any water exclusion included in this policy.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **3.a.** or **3.b.** of this definition of "specified causes of loss," such water is not subject to the provisions of any water exclusion which precludes coverage for surface water or water under the surface of the ground.

All other terms and conditions remain unchanged.

**Plaintiffs 000417**



**COMMERCIAL PROPERTY**

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – ORGANIC PATHOGENS

This endorsement modifies insurance provided under all Property coverage forms attached to this policy.

**A.** The following exclusion is added and is therefore not a Covered Cause Of Loss:

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless or any other cause or event that contributes concurrently or in any sequence to the loss.

**Organic Pathogens**

Presence, growth, proliferation, spread or any activity of "organic pathogens".

This exclusion applies regardless of whether there is any:

**1.** Direct physical loss or damage to Covered Property;

**2.** Loss of use, occupancy or functionality or decreased valuation of Covered Property or loss of Business Income;

**3.** Action required, including but not limited to, testing, repair, replacement, removal, clean-up, abatement, disposal, relocation, or actions taken to address medical or legal concerns; or

**4.** Suit or administrative proceeding, or action involving the insured.

This exclusion replaces any "Fungus", Wet Rot, Dry Rot And Bacteria exclusion or other similar exclusion in this policy.

**B.** With respect to this exclusion, the following definitions are added and replace any similar definitions in this policy:

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by -products produced or released by fungi.

**2.** "Organic pathogen" means:

**a.** Any organic irritant or contaminant including, but not limited to, "fungus", wet or dry rot, bacteria, virus or other microorganisms of any type, and their by-products such as spores or mycotoxins; or

**b.** Any disease-causing agent as classified by the Environmental Protection Agency.

All other terms and conditions remain unchanged.

**Plaintiffs 000418**

FLORIDA SURPLUS LINES NOTICE


**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW.   PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

**Plaintiffs 000419**

Aspen Specialty Insurance Company



POLICY NUMBER:  PX005LG20
RENEWAL OF: PX005LG19

# COMMON POLICY DECLARATIONS

---

Insured Name & Mailing Address

Portofino Master Homeowners Association Inc
10 Portofino Drive
Gulf Breeze, FL 32561

Broker Name & Mailing Address

AmWINS Brokerage of Georgia, LLC
3630 Peachtree Rd. Ne
Suite 1700
Atlanta, GA 30326

Effective Date: 04/01/2020

Expiration Date: 04/01/2021

12:01 A.M. Standard Time at the location of the Covered Property

Business Description:

Condo Association

---

Premium Summary:

In return for the payment of the premium indicated below, and subject to all the terms of this policy, we agree to provide the insurance as stated in this policy.

| Coverage | Premium |
| --- | --- |
| Commercial Property | |
| Terrorism | |
| Total Premium Due | |
| Minimum Retained Premium | |

---

Coverage Forms Applicable:        Coverage form schedule as more specifically outlined in Aspen Form
                                  ASPPR006, *Schedule of Applicable Forms*

---

Plaintiffs 000420

Aspen Specialty Insurance Company



POLICY NUMBER:  PX005LG20
RENEWAL OF: PX005LG19

# COMMON POLICY DECLARATIONS

Named Insured                                Portofino Master Homeowners Association Inc

Surplus Lines Broker Name:                   Michael Christian
Surplus Lines Broker Address:                3630 Piedmont Road NE
                                             Suite 1700
                                             Atlanta, GA 30326
Surplus Lines Broker License No.:            A046973
Surplus Lines State Taxes were filed:        FL

Issued Date:  07/06/2020

_____
Authorized Representative

Plaintiffs 000421

## Aspen Specialty Insurance Company



IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Secretary and countersigned where required by law on the Declarations page by its duly Authorized Representative.

_____          _____
             Secretary                                      President

**Plaintiffs 000422**

# SCHEDULE OF APPLICABLE FORMS

The following forms are attached to and are a part of this policy:

| Form Number | Form Name |
| --- | --- |
| SNFL 0314 | FLORIDA SURPLUS LINES NOTICE |
| ASPPR011DEC 1017 | COMMON POLICY DECLARATIONS |
| ASPCO098 0213 | SIGNATURE PAGE |
| ASPPR006 0404 | SCHEDULE OF APPLICABLE FORMS |
| ASPPR074 1010 | EXCESS PHYSICAL DAMAGE SCHEDULE ENDORSEMENT |
| MANUS 001 042020 | MASTER PROPERTY POLICY |
| IL0953 0115 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| ASPCO002 0715 | GENERAL SERVICE OF SUIT NOTICE |
| ASPCO021 0616 | OFAC ENDORSEMENT |
| ASPCO023 1016 | NBCR TERRORISM EXCLUSION |
| ASPPR005 0917 | EARNED PREMIUM ENDORSEMENT |
| ASPPR072 0807 | MINIMUM EARNED PREMIUM CLAUSE |
| ASPPR086 0312 | LOSS ADJUSTMENT ENDORSEMENT |
| ASPPR138 0112 | COMMON POLICY CONDITIONS |
| ASPPR166 1016 | WAIVER PROVISIONS ENDORSEMENT |
| CP0090 0788 | COMMERCIAL PROPERTY CONDITIONS |
| IL0255 0316 | FLORIDA CHANGES – CANCELLATION AND NONRENEWAL |
| IL0935 0702 | EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES |
| NMA2915 0101 | ELECTRONIC DATA ENDORSEMENT |
| ASPPR100 0916 | POLICYHOLDER'S GUIDE TO REPORTING A PROPERTY CLAIM |

Aspen Specialty Insurance Company

**RENEWAL OF:** PX005LG19

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCESS PHYSICAL DAMAGE SCHEDULE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

1. Named Insured:
   Portofino Master Homeowners Association Inc

2. Addresses of Insured Premises:
   As per statement of values on file with the company received on 01/10/2020 Total Insured Value  $242,232,927

3. Perils Covered:
   All Risks of Direct Physical Loss or Damage Including Equipment Breakdown Excluding Earthquake, Flood

4. Property Covered:
   Real Property, Personal Property, Business Income including Extra Expense

5. Primary Insurer / Policy Numbers / Limits:
   Westchester Surplus Lines Insurance Company / D38064666 004 / $5,000,000 part of $15,000,000

6. Underlying Insurers / Policy Numbers / Limits:
   Refer to Participation Page, Manus 001 042020, attached

7. Limit Insured:
   $5,000,000 Part Of $25,000,000 Per Occurrence

   Excess Of $25,000,000 Per Occurrence , which in turn is excess of underlying deductibles

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

## PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies) , do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy.

Provided that:

1.      The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2.      The liability of each of the Insurers shall not exceed the Participation Limit set against its name.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurer | Policy Number | Participation | Authorized Signature |
|---|---|---|---|
| Westchester Surplus Lines Insurance Company | D38064666 004 | $5,000,000 part of $15,000,000 Primary | |
| Endurance American Specialty Insurance Company | ESP30000298003 | $5,500,000 part of $15,000,000 Primary | |
| Everest Indemnity Company | CA3P005801201 | $3,000,000 part of $15,000,000 Primary | |
| Princeton Excess Surplus Lines Insurance Company | 3VA3PP0000251-02 | $1,500,000 part of $15,000,000 Primary | |
| Arch Specialty Insurance Company | ESP1002326-00 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Axis Surplus Insurance Company | EAF645360-20 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Colony Insurance Company | XP190091-1 | $6,250,000 part of $25,000,000 excess of $25,000,000 | |
| Evanston Insurance Company | MKLV11XP007995 | $7,500,000 part of $25,000,000 excess of $25,000,000 | |
| Aspen Specialty Insurance Company | PX005LG20 | $5,000,000 part of $25,000,000 excess of $25,000,000 | |

1

| | | | |
|---|---|---|---|
| Independent Specialty Insurance Company | VUX-CN-0000328-04 | $8,689,317 part of $217,232,927 excess of $25,000,000 | |
| Interstate Fire & Casualty Company | VRX-CN-0000328-04 | $28,240,281 part of $217,232,927 excess of $25,000,000 | |
| Lloyd's of London | VPC-CN-0000328-04 | $17,378,634 part of $217,232,927 excess of $25,000,000 | |
| James River Insurance Company | 00090459-1 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Maxum Indemnity Company | MSP-6012522-11 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Landmark American Insurance Company | LHD912400 | $48,058,232 part of $192,232,927 excess of $50,000,000 | |
| Homeland Insurance Company of New York | 795012091 | $50,000,000 part of $100,000,000 excess of $200,000,000 | |
| Everest Indemnity Company | CA3X001322201 | $21,116,464 part of $42,232,927 excess of $200,000,000 | |

2

**MASTER PROPERTY POLICY**

1.  NAMED INSURED – "Named Insured" means **Portofino Master Homeowners Association at Pensacola Beach, Inc.; Portofino Tower One Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Two Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Three Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Four Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Five Homeowners Association at Pensacola Beach, Inc.** means the First Named Insured and any entity in which the First Named Insured owns an interest of more than 50 percent, during the Policy Period, controls during the Policy Period, or has the responsibility of placing the insurance provided by this Policy during the Policy Period. No entity is covered under this Policy unless the Company has received identifying information for such entity during the application or submission process, except if such entity is covered under miscellaneous unnamed insured locations or newly acquired property, or if such entity is added by endorsement.

    Notwithstanding any provision to the contrary in this Policy, if other valid and collectible insurance is available to any entity covered by this Policy solely because of the ownership, control, or responsibility to purchase insurance by the First Named Insured, this insurance will be excess with regard to such other insurance whether contingent, primary, excess or any other basis.

2.  TERM OF INSURANCE In consideration of a $ annual premium, this policy attaches and covers for a period of one year from April 1, 2020 to April 1, 2021, beginning and ending at 12:01 A.M. standard time, at the location of the property involved.

3.  PARTICIPATION – Please refer to the Participation Page.

4.  LIMIT OF LIABILITY - This Company shall not be liable for more than its proportion of $242,232,927 for any one occurrence.

5.  SUBLIMIT(S) OF LIABILITY) - This Company shall not be liable for more than its proportion of the following sublimits.  Sublimits are part of and not in addition to the overall Limit of Liability and apply on a per occurrence basis unless otherwise noted:

    a)  $15,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Flood.
    b)  $25,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Earthquake.
    c)  $1,000,000 per occurrence as respects Accounts Receivable
    d)  $500,000 per occurrence as respects Arson Reward

Manns 00-042929
**Plaintiffs 000427**

e)    $1,000,000 per occurrence as respects Contingent Time Element, Attraction Properties are excluded

f)    $1,000,000 per occurrence as respects Consequential Loss

g)    $10,000,000 per occurrence as respects Course of Construction Including Soft Costs

h)    Included per occurrence as respects Demolition and Increased Cost of Construction Coverage A

i)    $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage B

j)    $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage C

k)    $1,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage D

l)    $10,000,000 per occurrence as respects Debris Removal

m)    $10,000,000 per occurrence as respects Errors and Omissions

n)    25% of the Adjusted Loss Maximum, $10,000,000 per occurrence as respects Extra Expense

o)    $5,000,000 per occurrence as respects Expediting Expense

p)    200,000,000 per occurrence as respects Equipment Breakdown

q)    $1,000,000 per occurrence as respects Contract Penalty

r)    $1,000,000 per occurrence as respects Fire Brigade Charges and Extinguishing Expenses

s)    $50,000 per occurrence as respects Inland Transit

t)    The lesser of 30 days of $2,500,000 per occurrence as respects Ingress/Egress

u)    $5,000,000 per occurrence as respects Miscellaneous Unnamed Locations

v)    $5,000,000 per occurrence as respects Newly Acquired Property (90 days; if not reported within 90 days the coverage ceases)

w)    $1,000,000 per occurrence as respects Leasehold Interest

x)    $500,000 per occurrence as respects Lost Master/Key Card

y)    $5,000,000 per occurrence as respects Rental Value/Rental Income

z)    Excluded per occurrence as respects Research and Development

aa)    $1,000,000 per occurrence as respects Royalties

bb)    $2,500,000 per occurrence as respects Service Interruption.  Property Damage and Time Element Combined.

cc)    $1,000,000 per occurrence as respects Valuable Papers and Records

dd)    The lesser of 30 days of $2,500,000 per occurrence as respects Civil or Military Authority

ee)    $3,000,000 per occurrence as respects Landscaping, subject to a $25,000 maximum per item

ff)    $1,000,000 per occurrence as respects Fine Arts, subject to a $25,000 maximum per item

The amount of loss from any one occurrence for which this policy is excess, shall be determined by the combined loss, damage or expense as insured under the primary policy.  In the event of loss or damage involving more than one coverage or peril, The Limits of Liability of the underlying policies shall first

4

Marrs 001042920

apply to the coverage(s) or peril(s) not insured by this policy, and the remainder, if any to the coverages(s) or peril(s) as provided hereunder. Upon erosion or exhaustion of the Limits of Liability of the underlying policies, this policy shall then be liable for the loss uncollected from the coverage(s) or perils(s) insured hereunder, subject to the Limit of Liability specified herein.  In the event of reduction or exhaustion of the aggregate limit(s) designated in the underlying policy(ies), it is hereby understood and agreed that such insurance as is afforded by this policy shall apply in excess of the reduced or exhausted underlying limit(s).  The insured maintains the right to allocate and/or apply coverages, interests and/or perils, as insured in the primary and/or excess policies.

6.    DEDUCTIBLE CLAUSE - The Company will adjust all losses, damages or expenses arising out of any one occurrence as one loss. The Company will deduct the following from such loss:

**$50,000** per occurrence for all perils including earthquake sprinkler leakage, and the backup of sewers and drains, except:

WAITING PERIOD:

With respect to all Time Element coverages, coverage is provided by this policy only if the period of interruption of the Insured's business exceeds 24 hours. Then Time Element coverage will apply excess of the appropriate policy deductible.

EARTHQUAKE:

As respects loss or damage to property resulting from the peril of Earthquake, all loss, damage or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deductible the sum of $50,000.  This deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

FLOOD:

As respects loss or damage to property resulting from the peril of Flood, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100 year flooding, as defined by the Federal Emergency Management Agency, all loss arising out of any one occurrence shall be adjusted as one loss and from the loss shall be deducted the maximum amount recoverable under the National Flood Insurance Program for the Real or Personal Property at each Building, whether or not such coverage is purchased or maintained.

In addition, the following Deductible will apply to property not eligible and coverages not available under the National Flood Insurance Program that are covered under this Policy and any difference in valuation between policies: $100,000 per Occurrence.

The determination of whether a property is in whole or in part subject to the 100 Year Flood Zone shall be at the inception of the policy and not at the time of loss.

Mapes 001-042930
**Plaintiffs 000429**

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

NAMED STORM:

With respect to loss or damage to property in Tier 1 Counties resulting from the period of Named Windstorm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm), the deductible shall be 2% of such unit of insurance at each location in accordance with policy valuation at the time of loss.  A minimum $100,000 each occurrence shall apply.

With respect to any other named storm loss or damage, the deductible shall be **$50,000** any one occurrence.

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

ALL OTHER WIND and HAIL:
As respects loss or damage to property resulting from the peril of All Other Wind, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

**$50,000**

Definition of 'Unit of Insurance':
  a)  Each separate building or structure
  b)  Contents in each separate building or structure
  c)  Property in the yard of each separate building or structure
  d)  Annual Business Interruption value applying to each separate building or structure.
  e)  Each Other Property item as listed in the Statement of Values.  If values are not listed separately, the value is included in the building value.

Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence. If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the insured shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s), notwithstanding the above reference to two or more deductibles.

The deductible amounts specified above shall not apply to general average contributions and salvage charges.

7.    LOSS PAYABLE - Loss, if any, shall be adjusted with and payable to the Insured, or as directed by them.

6

Plaintiffs 000430

Mapes 001042930

8.      TERRITORY - This policy covers anywhere in the United States of America and its territories and possessions including coastal and inland waterways and while in due course of transit therein or thereto.

9.      PROPERTY COVERED - Except as hereinafter excluded, this policy covers the interest of the Insured in all real and personal property owned, used, leased or intended for use by the Insured or in which the Insured may have an insurable interest, or for which the Insured may be responsible for the insurance, or real or personal property hereafter constructed, erected, installed, or acquired including while in course of construction, erection, installation, and assembly including Improvements and Betterments. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.  This policy is extended to include:

a)      The interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by written contract for such property, including the cost to defend any allegations of liability for loss or damage to such property.

b)      At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured.

c)      Contractors' and/or subcontractors' (of any tier) and/or vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract.

10.     PROPERTY EXCLUDED - This policy does not cover loss or damage to:

a)      Money and securities;

b)      Land, land values, except as insured under the "Pollutant Cleanup of Land and Water" clause.  This exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements if land improvements have been scheduled on the Schedule of Values on file with the company.  Land improvements as described hereunder include, but are not limited to any alteration to the natural condition of the land by grading, landscaping, excavation, earthen dikes or dams, as well as additions to land such as pavements, roadways or similar works;

c)      Water; except water which is normally contained within any type of tank, piping system or other process equipment;

d)      Growing crops, standing timber, and live animals;

e)      Watercraft; aircraft and motor vehicles licensed for highway use;

f)      Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

g)      Underground mines or mine shafts or any property within such mine or shaft;

7

Plaintiffs 000431

h)      Offshore property; unless reported on the Schedule of Values on file with the company.

i)      Transmission and Distribution Lines beyond 1,000 feet of Insured Premises;

j)      currency; evidence of debt; notes

k)      Turbines and satellites;

l)      docks, piers, and wharves; bridges, roadways, streets, walks or any other paved surfaces; dams or dikes; railroad rolling stock; off-shore drilling rigs or platforms; underground mines, wells, caverns including property contained therein unless reported on the Schedule of Values on file with the company.

11.     PROPERTY VALUATION - The basis of loss adjustment shall be as follows:

a)      Valuable Papers & Records/Electronic Data Processing Media :  the cost to repair or replace the property with other of like kind and quality including the cost of labor, service or supplies consumed in reconstructing, reproducing, recreating, transcribing or copying information; or, if not so replaced, the value blank.

b)      Raw materials and supplies:  the replacement cost new.

c)      Stock in process:  The value of raw materials plus labor expended plus the proper proportion of overhead charges.

d)      Finished stock and other merchandise for sale:  The regular cash selling price less all discounts and charges to which such property would have been subject had no loss occurred.

e)      Real and personal property of others for which the Insured is liable:  A valuation consistent with the liability of the Insured but only to the extent that such money is necessarily expended by the Insured.

f)      Electronic data processing equipment, production machinery & equipment:  The cost to repair or replace new with like kind and quality. In addition, the Insured may elect to replace such equipment with equipment having technological advances and/or representing an improvement in function and/or forming part of a program of system enhancement and/or more consistent with the Insured's technology strategy (without any reduction or offset for betterment) provided that such replacement can be accomplished without increasing the Insurer's liability.

g)      Fine arts, at original cost to the Insured, per schedule, latest appraised value or current market value, all at the Insured's option.

h)      Other property not otherwise provided for; at replacement cost new without deduction for depreciation.  If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:

8

      i)      The repairs, replacement or reinstatement must be executed with due diligence and dispatch.

      ii)     This Company's liability for loss or damage on a replacement cost basis shall not exceed the lesser of the replacement cost new of the property or any part thereof identical with such property intended for the same occupancy and use, including normal and customary profit and overhead even if the work is performed by the Insured; or the amount actually and necessarily expended in repairing or replacing said property or any part thereof including normal and customary profit and overhead even if the work is performed by the Insured.

12.    BUSINESS INTERRUPTION - This policy shall cover the loss resulting from necessary interruption of business conducted by the Insured including all interdependent loss of earnings between or among companies owned or operated by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

    a)     In the event of such loss, damage or destruction this Company shall be liable for the ACTUAL LOSS SUSTAINED by the insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business. Due consideration shall be given to the continuation of normal charges and expenses including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately before the loss. For the purposes of this insurance, "Gross Earnings" are defined as the sum of:

      i)      Net sales value of production from manufacturing operations, and net sales from Merchandising or Non-Manufacturing operations; and

      ii)     Other earnings derived from operations of the business,

               LESS THE COST OF:

      iii)    Raw Stock from which such production is derived;

      iv)    Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the services(s) sold by the Insured;

      v)     Merchandise sold, including packaging materials therefor; and

      vi)    Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

Mapes 00-042329
**Plaintiffs 000433**

b)     In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the period of restoration, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including ordinary payroll, directly attributable to such research and development activities.

c)     Resumption of Operations: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business:

     i)     by a complete or partial resumption of operation at a location owned by the same entity suffering the loss, whether damaged or not; or

     ii)     by making use of available stock, merchandise, or other property;

     such reduction shall be taken into account in arriving at the amount of loss hereunder.

d)     EXPERIENCE OF THE BUSINESS - In determining the amount of gross earnings, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

e)     As respects coverage provided under the Gross Earnings clause of this policy, the insurer shall not be liable for any loss resulting from loss or damage to finished stock nor for the time required to reproduce said finished stock.

13.     Extra Expense - This policy shall cover the necessary extra expense, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

a)     The term "Extra Expense" wherever used in this Policy, is defined as the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally have been incurred to conduct the business during the same period had no loss or damage occurred.

Manns 00 042932

**Plaintiffs 000434**

b)　　In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities, this policy shall cover the actual loss sustained of the extra expenses as defined herein directly attributable to the interruption of such research and development activities.

c)　　As soon as practicable the Insured shall resume normal operations of the business and shall dispense with such extra expense.

14.　　This policy is extended to cover expenses as are necessarily incurred for the purpose of reducing any loss under this policy; however, such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

15.　　SOFT COSTS - This policy shall cover soft costs, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to property under construction as covered herein.

a)　　The term "Soft Costs" shall include:

i)　　Additional interest costs on money used to finance construction or repair;

ii)　　Additional real estate and property taxes incurred for the period of time that construction extends beyond the projected completion date;

iii)　　Additional legal and accounting fees; and

iv)　　Additional advertising and promotional expenses which become necessary as a result of an insured loss.

b)　　This company shall pay soft costs incurred from the date that the building, structure or improvement would have been completed had no physical damage occurred until such time that it is completed.  As soon as practicable after any loss, the Insured shall utilize every available means to reduce the amount of loss including:

i)　　partial or complete resumption of construction, business or operations;

ii)　　making use of materials, equipment, supplies, or other property at the Insured's premises or elsewhere; or

iii)　　making use of substitute facilities or services where practical;

such reduction will be taken into account in arriving at the amount of such loss.

16.　　Rental Value/Rental Income - This policy shall cover the actual loss sustained by the Insured resulting directly from the necessary untenability caused by direct

Plaintiffs 000435

physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as covered herein.  Loss settlement shall not exceed the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenability.

a)  If the Insured is the lessor, for the purposes of this insurance, "rental value" is defined as the sum of:

    i)  the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the insured, and

    ii)  the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

    iii)  the fair rental value of any portion of said property which is occupied by the Insured.

b)  If the Insured is the lessee, rental value shall be the determined rental which the Insured is obligated to pay (including ground rents, accrued charges, real estate taxes and interest if the Insured shall be liable therefor) less such charges and expenses as do not necessarily continue.

c)  Experience of the Business - In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

d)  With respect to buildings or structures leased or rented by the Insured, this policy will serve as rental income insurance in those situations where the insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord.  This policy will respond for rental expenses incurred by the Insured in excess of the expenses which would have been incurred had a leased or rented premises not been damaged or destroyed by any peril covered under this policy. Such coverage will apply for all additional expenses incurred during the period of untenability or if the lease cannot be terminated until its expiration.

17.  Royalties - This policy shall cover the loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to direct physical loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the other party.

Mann 00-042939
**Plaintiffs 000436**

a)     Any loss hereunder shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED to such income referred to above, which would have been earned had no loss occurred.

b)     Resumption of Operations:  The Insured shall influence, to the extent possible, the party with whom the agreement described above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Company.

c)     Experience of the Business:  In determining the amount of income derived from the agreements(s) described above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

18.    Leasehold Interest - This policy covers the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

a)     the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

b)     improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of this policy;

c)     the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located; and "Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located. The "Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

Manns 00 0042939
**Plaintiffs 000437**

d)      The "Interest of the Insured as Lessee" is defined as:

   i)      the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

   ii)     the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

e)      The "Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is cancelled by the lessee, to the extent not covered under any other section of this policy.

f)      "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "Interest of the Insured as Lessee".

g)      This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

19.   Loss Provisions Applicable to Time Element Coverage - The "Period of Indemnity" is defined as the length of time for which loss may be claimed, and shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy, subject to the following provisions:

a)      The Period of Indemnity shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged.

b)      With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly the Period of Restoration shall be determined as provided above but such determined length of time shall be applied, and the loss hereunder calculated from the date that business operations would have begun had no damage or destruction occurred.

c)      Extended Period of Indemnity - The Period of Indemnity shall include such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

   i)      the date on which the liability of the Company for loss or damage would otherwise terminate; or

Manns 00-012939
Plaintiffs 000438

       ii)      the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually completed;

terminating no more than 365 days from said later commencement date.

20.    Extensions of Time Element Coverage: This policy, subject to all its provisions and without increasing the amount of said policy, insures against direct physical loss resulting from damage to or destruction by the perils insured against, to:

a)    Any service provider's property including but not limited to, electrical equipment and systems, water, gas, steam, telephone or their respective transmission and distribution lines or utility plants which directly or indirectly provide incoming or outgoing services to the Insured situated on or outside of the Insured's premises.

b)    the actual loss sustained, and Extra Expense incurred by the Insured at an insured location during the period of restoration directly resulting from physical loss or damage of the type insured to property of the type insured at a Contingent Time Element Location, meaning a location within the TERRITORY of a direct supplier or direct customer of the Insured.

    As respects this subparagraph b):

    i.   The Insured will influence and cooperate with the Contingent Time Element Location in every way and take any reasonable and necessary action, including the use of other machinery, supplies, or locations, to effect mitigation of the loss payable hereunder.

    ii.   In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

    iii.   This Policy does not insure loss resulting from a lack of incoming or outgoing electricity, fuel, gas, water, steam, refrigeration, sewage, or telecommunications of a direct supplier or direct customer of the Insured.

    iv.   The per occurrence deductible that applies to all perils also applies to the coverage as provided under this subparagraph b).

c)    dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other manufacturing purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources.

d)    the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory

15

**Plaintiffs 000439**

mile of an insured location, access to real or personal property is impaired or hindered by order of civil or military authority irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 e) below.

e)   the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory mile of an insured location, ingress to or egress from real or personal property is thereby impaired or hindered irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 d) above.

f)   property, facilities or piping systems which prevents the Insured from discharging its outgoing effluence.

21.   Transit - This policy shall cover property in transit, and this policy attaches and covers shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.  This insurance is extended to cover loss or damage to property:

a)   sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

b)   arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

c)   occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

d)   at the Insured's option, property which is incoming to the Insured.

The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor. With respect to shipments described under subparagraphs a and d above, this Company agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

Maபுs 00 042020

**Plaintiffs 000440**

      e)     The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

      f)     Seaworthiness of any vessel or watercraft, and airworthiness of any aircraft are admitted between this Company and the Insured.

22.     Accounts Receivable - Defined as:

      a)     All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

      b)     Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

      c)     Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

      d)     Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

      e)     the monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

      f)     the monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

23.     Lost Master/Key Card - If a master or grand master key is lost, or damaged so it cannot be duplicated, we will pay for the actual loss of keys, the cost of adjusting locks to accept new keys, or the cost of new locks, if required, of like kind and

Maurs 00-042029

**Plaintiffs 000441**

quality including the cost of installation subject to the limit contained in the Declarations.

24.     Arson Reward - If covered property sustains direct physical loss or damage caused by or resulting from a fire, and the origin of such loss is determined to be the criminal acts of an individual or individuals, we will pay a reward to the person or persons who provide information that leads to the arrest and conviction of the individual or individuals responsible for the loss.

25.     Contract Penalty – This policy covers a compensation payment due under the Hotel Management Agreement between the Franchisee, Named Insured, and any Franchisor, as identified via policy endorsement, or other appropriate subsidiaries acting as the management company or agent, whether insured or not under this policy. The Contract Penalty is triggered when the Hotel Management Agreement is terminated due to loss or damage of a type insured under this policy from an insured peril where such loss or damage causes a total constructive loss.

"A total constructive loss" means the destruction or damage to the Hotel by an insured peril whereby the destruction of or damage to the Hotel is such that the cost of repairing, rebuilding or replacing the Hotel exceeds 50% of the Replacement value of the Hotel." The Contract Penalty will only apply if the franchisor does not release the franchisee from the Hotel Management Agreement after a total constructive loss occurs and the First Named Insured / Franchisee elects not to repair or rebuild the property.

26.     BOILER & MACHINERY - This policy insures direct or indirect loss as covered elsewhere in this policy to insured property as a result of an Accident to an Object subject to the following definitions:

a)      "Object" means any boiler, fired or unfired pressure vessel, refrigerating or air-conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

b)      "Accident" means an accidental loss to an Object or a part thereof which manifests itself in physical damage that necessitates repair or replacement of the Object or part thereof.

c)      "Hazardous Substance" means the additional expense incurred for clean up, repair or replacement, or disposal of damaged, contaminated or polluted property as a result of an "Accident" which causes property to become damaged, contaminated or polluted by a substance declared hazardous to health by an authorized governmental agency.  "Additional Expenses" means expenses incurred that would not have been incurred, had no substance hazardous to health been involved in the accident.

27.     PERILS INSURED AGAINST - This policy insures against all risks of direct physical loss of or damage to property described herein including general

Manns 00 042029
**Plaintiffs 000442**

average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

28.   PERILS EXCLUDED - This policy does not insure:

a)   infidelity or dishonesty of the Insured or of the Insured's employees. A willful act of malicious intent shall not be deemed to be an act of infidelity. In no event does this Policy insure loss caused by theft by the Insured or the Insured's employees;

b)   against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

c)   against ordinary wear and tear or gradual deterioration unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

d)   against inherent vice or latent defect unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

e)   against errors in processing or manufacture of the Insured's product unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

f)   against mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

g)   against nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except if a covered peril ensues, liability is specifically assumed for direct loss by such ensuing peril but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination.  This Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

h)   against hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or

Marsh 00 042029
Plaintiffs 000443

expected attack by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or by military, naval, or air forces; or by any agent of any such government, power, authority, or forces;

i) against any weapon employing atomic fission or fusion;

ii) against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

iii) against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against under this policy;

iv) against risks of contraband or illegal trade;

v) against confiscation, nationalization and expropriation;

Notwithstanding the above provisions, this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated.  Nothing in the foregoing shall be construed to include any loss, damage, or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon or war employing atomic fission or fusion whether in time of peace or war.

i) loss or damage caused directly or indirectly by the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants unless the release, discharge, dispersal, seepage, migration, or escape is caused by a peril not otherwise excluded herein.  However, if a peril not otherwise excluded herein ensues due to the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants, such ensuing loss or damage shall be covered.

j) loss or damage caused by an act of terrorism which means an act or series of acts, including the use of force or violence, of any person or group(s) or persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public or any section of the public in fear for such purposes.

k) against loss or damage caused by insect or vermin.

Maars 00 042022

**Plaintiffs 000444**

l)    against delay, loss of market loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

m)    against delay, loss of market, loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

n)    against corrosion, depletion, deterioration, erosion, wet rot, dry rot, decay, evaporation, rust, and shrinkage unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

o)    against changes of temperature or humidity, whether atmospheric or not;

p)    against settling, cracking, bulging, shrinking, or expansion of foundations; machinery pedestals, pads, or platforms; floors, pavements, walls, ceilings, or roofs; or the cumulative effects of smog, smoke, soot, vapor liquid, or dust;

q)    against lack of incoming power voice/data/internet access from offsite services except as provided in the Service Interruption Extension.

Exclusion b), c), d) and e) do not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly.

Exclusion b), c) and d) do not apply to property in transit.

29.    DEFINITIONS

a)    The term "Earthquake" as used in this policy shall mean loss or damage caused by or resulting from a series of vibrations induced in the earth's crust by the abrupt rupture and rebound of rocks in which elastic strain has been slowly accumulating (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

b)    The term "Flood" as used in this policy shall mean loss or damage caused by or resulting from waves, tide, or tidal water, and the rising (including the overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and similar bodies of water, whether wind driven or not (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

c)    The term "occurrence" is defined as follows:

Mayes 00 042029

**Plaintiffs 000445**

i)       Except as hereinafter defined, "loss occurrence" shall mean an accident or occurrence or series of accidents or occurrences arising out of one event.

ii)      ii) Each loss occurrence which involves the perils of tornado, windstorm, cyclone, hurricane, hail or flood shall include all loss or damage wherever occurring occasioned by these perils which arise out of one atmospheric disturbance during a continuous period of 168 hours.

iii)     Each loss occurrence which involves the peril of earthquake, a series of earthquakes shall include all losses or damage sustained during a continuous period of 168 hours.

iv)     Each loss occurrence which involves the peril(s) of vandalism, malicious mischief or riot/civil commotion shall include all losses or damage sustained resulting from one or more acts committed by a person acting alone or in collusion with others during a continuous period of 168 hours.

v)      The Insured shall have the right to elect the moment from which the time periods referred to in ii), iii), and iv) above shall be deemed to have commenced, however no elected period of time shall commence within any previous occurrence.

vi)     Should the time period in ii), iii), and iv) above extend beyond expiration or cancellation date of this policy and commence prior to the expiration or cancellation date, this Company shall be liable as is such period fell entirely within the term of this policy.

vii)    However, we shall not be liable hereunder for any loss or damage:

viii)   Occurring before this policy becomes effective; or

ix)    Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

d)     "Raw Stock" - Materials and supplies in the state in which the Insured receives it for conversion by the Insured into Finished Stock, including supplies consumed in such conversion or in the service rendered by the Insured.

e)     "Stock in Process" - Raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture by on behalf of the Insured but which has not become Finished Stock.

f)     "Finished Stock" - Stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

g)     "Merchandise" - Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

h)     "Normal" - The condition that would have existed had no loss occurred.

Mayes 00-0042020
**Plaintiffs 000446**

i)     "Improvements and Betterments" - Fixtures, alterations, installations or additions comprising a part of the described building and made or acquired at the expense of the Insured, but which are not legally subject to removal by the Insured.

j)     "Valuable papers and records" - Written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents and manuscripts.

k)     "Electronic Data Processing Media" - All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles.

l)     "Securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets.

m)     "Fine Arts" - Shall include but not be limited to bona fide works of art, works of rarity, works of historical value, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, galley proofs, original records, sculptures, carvings and similar property.

n)     "Architect and Engineering Fees" - Any cost associated with the preparation of plans, supervision of and approval for the repair or replacement of damaged or destroyed property.

o)     "Tier One County" - the entire territory of the United States Virgin Islands, the entire Commonwealth of Puerto Rico, the entire State of Florida, and the following:

    i)     In the State of Alabama, the counties of Baldwin, Escambia, and Mobile;

    ii)    In the State of Connecticut, the counties of Fairfield, New Haven, and New London;

    iii)   In the State of Georgia, the counties of Bryan, Camden, Chatham, Glynn, Liberty, and McIntosh;

    iv)    In the State of Hawaii, the counties of Honolulu, Kauai, and Maui;

    v)     In the State of Louisiana, the counties (also known as "Parishes") of Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, Iberia, Iberville, Jefferson Davis, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John The Baptist, St. Martin, St. Mary, St. Tammany, Terrebonne, and Vermillion;

    vi)    In the Commonwealth of Massachusetts, the counties of Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, and Suffolk;

Manus 00 042029
**Plaintiffs 000447**

vii)   In the State of Mississippi, the counties of George, Greene, Hancock, Harrison, Jackson, Pearl River, and Stone;

viii)   In the State of New Jersey, the counties of Atlantic, Monmouth, and Ocean;

ix)   In the State of New York, the counties of Kings, Nassau, Queens, and Suffolk;

x)   In the State of North Carolina, the counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington;

xi)   In the State of Rhode Island, the counties of Newport, Providence, and Washington;

xii)   In the State of South Carolina, the counties of Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, and Williamsburg;

xiii)   In the State of Texas, the counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Gollad, Harris, Hidalgo, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, and Willacy; and

xiv)   In the Commonwealth of Virginia, the counties of Accomack, Gloucester, Isle of Wright, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, Westmoreland, and York; and the independent cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Suffolk, and Virginia Beach.

p)   "Named Storm"- A storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Depression or Tropical Storm. "Named storm" does not include "flood" resulting from a "named storm".

q)   "Time Element' – Includes coverage as described under Clause 12., 13., 14., 15., 16., 17., 18., 19. and 20. hereunder.

r)   "Unnamed Location' – A location which has not been scheduled with underwriters or the insured's representative and is not considered a Newly Acquired location.

s)   "Newly Acquired Location" – A location acquired by the insured after inception of this policy for a period of up to 90 days until reported to and agreed by underwriters.

30.   FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES - This policy covers fire brigade charges and other extinguishing expenses for which the Insured may be assessed including loss of fire extinguishing materials expended resulting from a peril insured.

Maars 00.042029

**Plaintiffs 000448**

31.     SEVERABILITY OF INTERESTS - The inclusion herein of more than one person or organization, as Insured, shall not operate to increase the limit of the Company's liability nor the deductible amounts to be borne by the Insured. Except with respect to limits of liability and deductible amounts, the terms of this policy shall apply separately to each person or organization covered as Insured in the same manner and to the same extent as though a separate policy had been issued to each such person or organization.

32.     DEBRIS REMOVAL - This policy covers the cost of removal of debris of property covered hereunder including the cost of removal of debris of property not insured hereunder from the premises of the Insured resulting from a peril insured against. Except as otherwise provided for elsewhere in this policy, this policy does not cover the cost to extract contaminants or pollutants from land or water, nor does it cover the cost to remove, restore or replace contaminated or polluted land or water.

If at the time insured property is contaminated as a direct result of physical damage insured against by this policy there is in force any law or ordinance regulating contamination, including but not limited to pollution, then this policy shall cover, as a result of the enforcement of such law or ordinance, the increased cost of decontamination and debris removal of such property in a manner to satisfy such law or ordinance.  As respects Time Element coverage(s), this policy is extended to include such time as is necessary and reasonable with the exercise of due diligence and dispatch to decontaminate such property in a manner to satisfy such law or ordinance.

33.     DEMOLITION AND INCREASED COST OF CONSTRUCTION - In the event of loss or damage under this policy that causes the enforcement of any law or ordinance in force at the time of loss regulating the construction, repair or use of property, this Company shall be liable for:

a)      COVERAGE A - the loss in value of the undamaged portion of the property as a consequence of the enforcement of any law or ordinance that requires demolition of undamaged parts of the same property;

b)      COVERAGE B – the cost to demolish and clear the site of undamaged parts of the same property;

c)      COVERAGE C – the increased cost to repair or reconstruct damaged and undamaged property on the same or another site when the increased cost is a consequence of the enforcement of any law or ordinance.  These costs are limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  This Company shall not be liable for any increased cost of repair or reconstruction loss unless the damaged property is actually rebuilt or replaced;

25

Marrs 00 042020
**Plaintiffs 000449**

d)    Any increase in loss including but not limited to Business Interruption, Extra Expense, Rental Value, Rental Income, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law or ordinance.

e)    In the event real or personal property is not repaired or replaced to the same height, floor area, size, style or comparable quality of the original property insured due to the enforcement of law or ordinance regulating, restricting or prohibiting repair or replacement of covered property, this policy will pay the full replacement cost without deduction for depreciation for the real or personal property damaged or destroyed, as if the property was replaced to the same height, floor area, size, style or comparable quality of the original property insured.  This policy will also pay Time Element loss as if the original structure were repaired or replaced to original specifications, subject to the terms and conditions of these coverage(s).

34.    EXPEDITING EXPENSE - This policy covers the extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

35.    CONTRIBUTING INSURANCE - Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy.  This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

36.    EXCESS INSURANCE - Excess insurance is insurance over the limit of liability set forth in this policy.  The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

37.    UNDERLYING INSURANCE - Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire.  The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy. Should the amount of loss payable under such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then no deductible shall apply hereunder and that portion which exceeds such a deductible amount shall be considered "other insurance". Should the amount of loss payable under such underlying insurance be less than the largest deductible amount which would apply in the event of loss under this policy, then the deductible amount to be deducted hereunder shall be the difference between the amount to be paid under such underlying insurance and the largest deductible amount which would apply in the event of loss under this policy.

38.    OTHER INSURANCE - Except for insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether

26

Plaintiffs 000450

prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils.  This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.

39.     SUBROGATION - Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder.  The right of subrogation against the Insured, affiliated, subsidiary, and associated companies, or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived and at the option of the Insured, against a tenant or guest of the Insured. In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.  If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests.  If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

40.     SALVAGE AND RECOVERIES - All salvages, recoveries, and payments, (excluding proceeds from subrogation and underlying insurance) recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly.  If proceeds from subrogation are recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(s) participating in the payment of any loss, in the proportion of their respective interests.

41.     CONTROL OF DAMAGED MERCHANDISE - The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods.  The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods.  The Insured, using reasonable discretion, shall be the sole judge as to whether production or EDP equipment and/or media is damaged and unusable. This insurer shall be allowed to dispose of as salvage, any non-proprietary property deemed unusable by the Insured.

Marrs 00-042939

42. BRAND OR TRADEMARK - In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carriers or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at this Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

43. ERRORS OR OMISSIONS - Any unintentional error or omission made by the Insured in the application for insurance shall not void or impair the insurance hereunder but only to the extent this Policy would have provided coverage had the unintentional error or omission not been made provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department. This coverage does not apply if there is coverage available under any other provision in this Policy.

44. NOTICE OF LOSS - As soon as practicable after any loss or damage occurring under this policy is known to the Insured's home office insurance department, the Insured shall report such loss or damage with full particulars to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 for transmission to the designated loss adjuster and to this Company.

45. DESIGNATED LOSS ADJUSTER - It is understood and agreed that each and every loss will be adjusted by Jeff Hellman of McLaren Young International, 19324 40th Avenue West, Suite C, Lynnwood, WA 98036.

46. PROOF OF LOSS - Proof of loss is required as soon as practicable following the Company's written request for signed Proof from Insured; however, Insured, at its option, may elect to file Proof with the Company prior to the Company's request.  It shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained.

47. PARTIAL PAYMENT OF LOSS - In the event of a loss covered by this policy, it is understood and agreed that the Company shall allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

48. PAYMENT OF LOSS - All adjusted claims shall be due and payable no later than thirty (30) days after presentation of acceptable proofs of loss by the Insured or its appointed representative.

49. LOSS ADJUSTMENT EXPENSES - This policy is extended to include reasonable expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. These expenses include fees of professionals engaged to assist the Insured in determining the cause and origin of the loss, the amount

Manns 000042939
**Plaintiffs 000452**

of loss sustained, and the amount of loss payable under this policy. This policy shall not cover the expenses of a public adjuster. Such expenses shall not exceed $2,000,000 in any one occurrence.

50.     APPRAISAL - If the Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser.  The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending.  Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss.  If the appraisers fail to agree, they shall submit their differences to the umpire.  An award in writing by any two shall determine the amount of loss.  The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

51.     CONSEQUENTIAL LOSS - This policy insures against consequential loss including spoilage to real and personal property as insured hereunder caused by change of temperature or humidity or by interruption of any service including but not limited to power, heat, air conditioning, or refrigeration resulting from a peril insured against.

52.     PAIR AND SET - In the event of loss or damage by a peril insured against to any article or articles which are part of a pair or set, the measure of loss or damage to such article or articles shall be the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

53.     CONSEQUENTIAL REDUCTION IN VALUE - This policy covers the reduction in value of insured components or parts of components or parts of products or the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to direct physical loss or damage insured against by this Policy to other insured components or parts of products.

54.     COINSURANCE WAIVER - This policy is not subject to any coinsurance or average clause.

55.     ALTERATIONS AND USE CLAUSE - Permission is granted to the insured to cease operations or for buildings to remain vacant or unoccupied provided fire protection, watch alarm services are maintained, and written notice is given to the Insurer prior to the sixtieth (60th) consecutive day of cessation of operations, vacancy or unoccupancy. The Insured's building is considered vacant or unoccupied when it does not contain enough covered Property to conduct customary business operations.

Mapes 00 0012939
**Plaintiffs 000453**

56.     ASSISTANCE AND COOPERATION OF THE INSURED - The Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

57.     SUE AND LABOR - In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment.  This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

58.     REINSTATEMENT - With the exception of loss subject to annual aggregate limits as noted herein, no loss hereunder shall reduce the amount of this policy.

59.     SUIT AGAINST THE COMPANY - No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy.  The Company agrees that any action or proceeding against it for recovery of any loss under this policy shall not be barred if commenced within the time prescribed therefor in the statutes of Florida.

60.     CERTIFICATES OF INSURANCE - It is understood and agreed that Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 is authorized to issue certificates of insurance naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests subject always to the terms, conditions, and limits of liability of this policy. The Company agrees to waive the issuance of formal Company endorsements in respect of such interests.

61.     NOTIFICATION CLAUSE - All notices or communications concerning this policy shall be addressed to the offices of the Insured, to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 and to AmWINS Brokerage of Georgia, 3630 Peachtree Road NE, Suite 1700, Atlanta, GA 30326.  All such notices shall be sent via registered mail.

62.     CANCELLATION/NON RENEWAL - This policy may be cancelled at any time at the request of the Insured or it may be cancelled or non-renewed by the Company by mailing to the Insured written notice stating when, not less than ninety (90) days thereafter or ten (10) days in the event of non-payment of premium, such cancellation or non-renewal shall be effective. If the First Named Insured cancels, return of any unearned premium will be calculated on the

30

**Plaintiffs 000454**

customary short rate basis. If the Company cancels, return of any unearned premium will be calculated on a pro rata basis. Return of any unearned premium will be made by the Company as soon as practicable. The cancellation will be effective even if the Company has not made or offered a refund.

63.   TITLES OF PARAGRAPHS - The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

64.   MORTGAGE CLAUSE - As respects Real Property only, loss, if any, under this policy shall be payable to the mortgagee (or trustee) as its interest may appear under all present or future mortgages upon the property herein insured in which the aforesaid may have an interest as mortgagee (or trustee) in order or precedence of mortgages., and this insurance as to the interest of said mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that, in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided also, that the mortgagee (or trustee) shall, notify the Company of any changes of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and unless permitted by this policy, it shall be noted thereon and the mortgagees or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The company reserves the right to cancel this policy at any time as provided by its terms, and in such case, this policy shall continue in force for the benefit only of the mortgagee (or trustee) for an additional thirty (30) days.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgagee debt, or may at their option pay to the mortgagee (or trustee) the whole principal due or to grow on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and all of such other securities, but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

65.   JURISDICTION AND SUIT - It is hereby understood and agreed that in the event of the failure of the Insurer to pay an amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court

Plaintiffs 000455

of competent jurisdiction within the United States and will comply with all requirements necessary to give such jurisdiction.  All matters arising hereunder shall be determined in accordance with the law and practice of such court. In any suit instituted against it under this, the Insurer will abide by the final decision of such court or any appellate court in the event of an appeal.

66.    POLLUTANT CLEAN UP AND REMOVAL - This policy is extended to cover the expense actually incurred by the Insured to decontaminate, clean up and/or remove pollutants from land, water or air including resultant time element loss if the release, discharge, or dispersal of the pollutants results from any loss or damage as covered herein. Such expenses shall not exceed $500,000 in any one policy year.

67.    ATTACHMENT CLAUSE – Please refer to the Participation Page.

_____

[Authorized Signature]

Maurs 00 042939
**Plaintiffs 000456**

# Endorsement No. 1

## <u>Microorganism Exclusion – Resultant Mold</u>

This policy does not insure any loss, Damage, Time Element, claim, cost, expense or other sum directly or indirectly arising out of or relating to (regardless of whether any other cause or event contributed concurrently or in any sequence):

Fungus, mold, mildew, yeast, mushrooms, spores, toxins, mycotoxins, bacteria or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion shall not apply to any such loss, Damage, Time Element, claim, cost, or expense resulting from mold that is a direct result of an Insured Cause of Loss and is not otherwise excluded by the Policy, provided such loss, Damage, Time Element, claim, cost, or expense is reported to the Company in writing within twelve months from the expiration date of the policy. This clause is subject to a $500,000 per occurrence and in the annual aggregate sublimit.

This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part, for these matters.

All other terms and conditions remain unchanged.

Maxus 00.042939
**Plaintiffs 000457**

POLICY NUMBER : PX005LG20

**IL 09 53 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**SCHEDULE**

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C.** **Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

© Insurance Services Office, Inc., 2015

Plaintiffs 000458

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

**Plaintiffs 000459**

Aspen Specialty Insurance Company

# GENERAL SERVICE OF SUIT NOTICE

In the event of failure of the Company to pay any amount claimed to be due under the terms of this policy, the Company, at the request of the **Insured,** will submit to the jurisdiction of a court of competent jurisdiction within the United States.  Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. In any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of appeal.

It is further agreed that service of process in such suit may be made upon: Aspen Specialty Insurance Management, Inc., c/o General Counsel, 175 Capital Blvd., Rocky Hill, CT 06067; (877) 245-3510; Questions can be directed to: Compliance.us@aspenspecialty.com

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, Secretary of State, or other officer specified for that purpose in the statute, as its true and lawful attorney upon whom service may be made of any lawful process in any action, suit, or proceeding instituted by or on behalf of the **Insured** or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

This notice does not change any other provision of the policy.

**Plaintiffs 000460**

Aspen Specialty Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OFAC ENDORSEMENT

In consideration of the premium charged, it is agreed that any payment under this Policy shall only be made in full compliance with all U.S.A economic or trade sanctions or other laws or regulations, including sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

**Plaintiffs 000461**

Aspen Specialty Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR, BIOLOGICAL, CHEMICAL, OR RADIOLOGICAL TERRORISM EXCLUSION

This endorsement modifies insurance provided under this Policy.

**TO THE EXTENT ANY PROVISION OF THIS ENDORSEMENT CONFLICTS WITH ANY PROVISION OF THE POLICY OR ANY OF ITS OTHER ENDORSEMENTS, THE PROVISIONS OF THIS ENDORSEMENT WILL SUPERSEDE.**

In consideration of the premium charged, it is agreed that:

1. Notwithstanding anything to the contrary contained within the Policy, the following exclusion is added to the Policy:

   **Nuclear, Biological, Chemical, Or Radiological Terrorism**

   No coverage will be available under this insurance for any loss, cost, damage, expense, injury, claim or suit, caused by, arising out of, or resulting directly or indirectly, in whole or in part from any act of **Nuclear, Biological, Chemical, Or Radiological Terrorism**, regardless of any other cause or event that contributes concurrently or in any other sequence to the act of **Nuclear, Biological, Chemical, Or Radiological Terrorism**.

2. For the purpose of this Endorsement the following Definitions are added to the Policy:

   **Biological Agent** means any pathogenic (disease producing) micro-organism(s) and/or biological produced toxin(s), including genetically modified organisms and chemically synthesized toxin(s) which caused illness, damage, injury or death in humans, animals, or plants.

   **Chemical Agent** means any compound which, when disseminated, produces incapacitating illness, or damaging and/or lethal effects on people, animals, plants, or property.

   **Nuclear, Biological, Chemical, Or Radiological Terrorism** means the:

   **a.** Dispersal, application, or release of radioactive material;

   **b.** Use of any nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or

   **c.** Emission, discharge, dispersal, release, or escape of any solid, liquid or gaseous **Biological Agent** and/or **Chemical Agent**;

   by any person or group(s) of persons, whether acting alone, or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological purposes or reasons, including the intention to influence any government and/or to put the public, or any section of the public, in fear.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

**Plaintiffs 000462**

Aspen Specialty Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EARNED PREMIUM ENDORSEMENT

In consideration of the premium charged, it is agreed that:

For locations in Tier I coastal counties from Texas to Maine, and for all of the state of Florida, if you cancel this policy, or remove a location, or reduce the coverage limits on a location and coverage existed any time during the period of June 1st to November 30th then we will not return any premium.  Also, if such a referenced location is added during the term of the policy and coverage exists at any time during the period of June 1st to November 30th, the rate will be calculated as 100% of the annual rate; otherwise it shall be pro rata.

Coverage cannot be increased, nor additional locations added, if a named storm is in force, unless specifically accepted by us.

This endorsement replaces any short rate provisions stipulated in this policy for these referenced locations.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

**Plaintiffs 000463**

Aspen Specialty Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM CLAUSE – PERCENTAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

In the event of cancellation of this policy by the insured, a minimum premium of 35% of the original policy premium shall become earned; any conditions of the policy to the contrary notwithstanding.

Failure of the insured to make timely payment of premium shall be considered a request by the insured for the Company to cancel.

In the event of such cancellation by the Company for non-payment of premium, the minimum premium shall be due and payable; provided, however, such non-payment cancellation shall be rescinded if the insured remits the full premium due within 10 days of receiving it. In the event of any other cancellation by the Company, the earned premium shall be computed pro rata, not subject to the minimum payment.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

**Plaintiffs 000464**

Aspen Specialty Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS ADJUSTMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that:

We have the option of engaging a separate loss adjuster and/or loss adjustment facility in place of any loss adjuster and/or loss adjustment facility so designated or named in the policy or any other policy of insurance that may be in force at our sole discretion and expense.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

 2016 © Aspen Insurance U.S. Services Inc. All rights reserved.

Aspen Specialty Insurance Company

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 90 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

2016 © Aspen Insurance U.S. Services Inc. All rights reserved.
Includes copyrighted material of ISO Properties, Inc. used with permission

Plaintiffs 000466

   **1.** Is responsible for the payment of all premiums; and

   **2.** Will be the payee for any return premiums we pay.

**F.  Transfer Of Your Rights And Duties Under This Policy**

   Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

   If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

2016 © Aspen Insurance U.S. Services Inc. All rights reserved. Includes copyrighted material of ISO Properties, Inc. used with permission

**Plaintiffs 000467**

Aspen Specialty Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER PROVISIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that no permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on our part relating to appraisal or to any examination provided for herein.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

**Plaintiffs 000468**

COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

   **a.** During the policy period shown in the Declarations; and

   **b.** Within the coverage territory.

**2.** The coverage territory is:

   **a.** The United States of America (including its territories and possessions);

   **b.** Puerto Rico; and

   **c.** Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    a. Someone insured by this insurance;

    b. A business firm:

        (1) Owned or controlled by you; or

        (2) That owns or controls you; or

    c. Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc.,  1983, 1987

Plaintiffs 000970

CP 00 90 07 88   □

IL 02 55 03 16

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation For Policies In Effect 90 Days Or Less**

**a.** If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with underwriting requirements established by the insurer.

**b.** We may not cancel:

**(1)** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(2)** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**B.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

 © Insurance Services Office, Inc., 2015 Plaintiffs 000471

**C.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation For Policies In Effect For More Than 90 Days**

**a.** If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) The policy was obtained by a material misstatement;

(3) In the event of failure to comply, within 90 days after the effective date of coverage, with underwriting requirements established by us before the effective date of coverage;

(4) There has been a substantial change in the risk covered by the policy;

(5) The cancellation is for all insureds under such policies for a given class of insureds;

(6) On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

(7) On the basis of a single property insurance claim which is the result of water damage, if we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

(8) The cancellation of some or all of our policies is necessary to protect the best interests of the public or policyholders and such cancellation is approved by the Florida Office of Insurance Regulation.

**b.** If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

(1) 10 days before the effective date of cancellation if cancellation is for nonpayment of premium;

(2) 45 days before the effective date of cancellation if:

(a) Cancellation is for one or more of the reasons stated in Paragraphs **7.a.(2)** through **7.a.(7)** above, and this policy does not cover a residential structure or its contents; or

(b) Cancellation is based on the reason stated in Paragraph **7.a.(8)** above;

(3) 120 days before the effective date of cancellation if:

(a) Cancellation is for one or more of the reasons stated in Paragraphs **7.a.(2)** through **7.a.(7)** above; and

(b) This policy covers a residential structure or its contents.

**c.** If this policy has been in effect for more than 90 days and covers a residential structure or its contents, we may not cancel this policy based on credit information available in public records.

**D.** The following is added:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least:

**a.** 45 days prior to the expiration of the policy if this policy does not cover a residential structure or its contents, or if nonrenewal is for the reason stated in Paragraph **D.5.;** or

**b.** 120 days prior to the expiration of the policy if this policy covers a residential structure or its contents.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**3.** We may not refuse to renew this policy:

**a.** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

© Insurance Services Office, Inc., 2015

Plaintiffs-00056793 16

**b.** On the basis of filing of claims for sinkhole loss. However, we may refuse to renew this policy if:

    **(1)** The total of such property insurance claim payments for this policy equals or exceeds the policy limits in effect on the date of loss for property damage to the covered building; or

    **(2)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based; or

**c.** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**4.** Notwithstanding the provisions of Paragraph **D.3.,** we may refuse to renew this policy if this policy includes Sinkhole Loss coverage. If we nonrenew this policy for purposes of removing Sinkhole Loss coverage, pursuant to section 627.706, Florida Statutes, we will offer you a policy that includes catastrophic ground cover collapse coverage.

**5.** Notwithstanding the provisions of Paragraph **D.3.,** we may refuse to renew this policy if nonrenewal of some or all of our policies is necessary to protect the best interests of the public or policyholders and such nonrenewal is approved by the Florida Office of Insurance Regulation.

**E. Limitations On Cancellation And Nonrenewal In The Event Of Hurricane Or Wind Loss – Residential Property**

**1.** The following provisions apply to a policy covering a residential structure or its contents, if such property has sustained damage as a result of a hurricane or windstorm that is the subject of a declaration of emergency by the Governor and filing of an order by the Commissioner of Insurance Regulation:

**a.** Except as provided in Paragraph **E.1.b.,** we may not cancel or nonrenew the policy until at least 90 days after repairs to the residential structure or its contents have been substantially completed so that it is restored to the extent that it is insurable by another insurer writing policies in Florida. If we elect to not renew the policy, we will provide at least 100 days' notice that we intend to nonrenew 90 days after the substantial completion of repairs.

**b.** We may cancel or nonrenew the policy prior to restoration of the structure or its contents for any of the following reasons:

    **(1)** Nonpayment of premium;

    **(2)** Material misstatement or fraud related to the claim;

    **(3)** We determine that you have unreasonably caused a delay in the repair of the structure; or

    **(4)** We have paid the policy limits.

If we cancel or nonrenew for nonpayment of premium, we will give you 10 days' notice. If we cancel or nonrenew for a reason listed in Paragraph **b.(2), b.(3)** or **b.(4),** we will give you 45 days' notice.

**2.** With respect to a policy covering a residential structure or its contents, any cancellation or nonrenewal that would otherwise take effect during the duration of a hurricane will not take effect until the end of the duration of such hurricane, unless a replacement policy has been obtained and is in effect for a claim occurring during the duration of the hurricane. We may collect premium for the period of time for which the policy period is extended.

**3.** With respect to Paragraph **E.2.,** a hurricane is a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service (hereafter referred to as NHC). The hurricane occurrence begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the NHC and ends 72 hours after the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the NHC.

© Insurance Services Office, Inc., 2015

**Plaintiffs 000473**

IL 09 35 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  **1.** The failure, malfunction or inadequacy of:

    **a.** Any of the following, whether belonging to any insured or to others:

      **(1)** Computer hardware, including microprocessors;

      **(2)** Computer application software;

      **(3)** Computer operating systems and related software;

      **(4)** Computer networks;

      **(5)** Microprocessors (computer chips) not part of any computer system; or

      **(6)** Any other computerized or electronic equipment or components; or

    **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

  due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

  **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

  **1.** In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  **2.** Under the Commercial Property Coverage Part:

    **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

    **b.** In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

© ISO Properties, Inc.,  2001

Plaintiffs 000474

# ELECTRONIC DATA ENDORSEMENT

**1. Electronic Data Exclusion**

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

a) This policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of ELECTRONIC DATA from any cause whatsoever (including but not limited to COMPUTER VIRUS) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting there from, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

ELECTRONIC DATA means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing for electronically controlled equipment and includes programs, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. COMPUTER VIRUS includes but is not limited to "Trojan Horses," "worms" and "time or logic bombs".

b) However, in the event that a peril listed below results from any of the matters described in paragraph a) above, this policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such listed peril.

Listed Perils

Fire
Explosion

**2. Electronic Data Processing Media Valuation**

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this policy, then the basis of valuation shall be the cost of the blank media plus the costs of copying the ELECTRONIC DATA from back-up or from originals of a previous generation. These costs will not include research and engineering nor any costs of recreating, gathering or assembling such ELECTRONIC DATA. If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Assured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.

Form approved by Lloyd's Underwriters' Non-Marine Association Limited

Plaintiffs 000475

Aspen Specialty Insurance Company

# POLICYHOLDER'S GUIDE TO REPORTING A PROPERTY CLAIM

**A.** At the time when you are aware of an event that will give rise to the need to report a claim on your own behalf (1st Party Property Claims), please be sure to quickly report the matter to both your agent/broker and Aspen Specialty Insurance Management Company.  Be sure to include your policy number and the name of the insured as it is stated on the policy.

**B.** **New claims can be reported to Aspen Specialty Insurance Company as follows:**

    **1.** **By Mail:**           Aspen Specialty Insurance Company
                                  c/o Aspen Specialty Insurance Management Company
                                  Claims Department
                                  125 Summer Street
                                  Boston, MA  02110
                                  Main Telephone No:  617-532-7300

    **2.** **By Fax:**            617-532-7342

    **3.** **By E-mail:**        property.claims@aspenspecialty.com

    **4.** **Toll Free for**
        **policyholders to**
        **use in the event**
        **of a disaster:**       855-397-3295

**Plaintiffs 000476**

ASPPR100 0916      2016 © Aspen Insurance U.S. Services Inc. All rights reserved.      Page 1 of 1

# POLICYHOLDER NOTIFICATION
# APPLICABLE TO THE HOME STATE OF FLORIDA

_____

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

October 2009



20 Burton Hills Blvd., Ste. 350
Nashville, TN 37215

**GENERAL PROPERTY DECLARATIONS**
**This Declaration Page is attached to and forms part of the Policy as defined herein.**

_____

Account Number:    2017-9000328-04          Previous Account Number:    2017-9000328-03

Inception Date:         April 1, 2020          Expiration Date:              April 1, 2021
(12:01 A.M. Local time at each insured location.)

Coverage is provided by the following Company(s):    Specific Policy Number
Certain Underwriters at Lloyds (Consortium          VPC-CN-0000328-04
#9226)
c/o Asta Managing Agency, LTD Camomile
Court, 23 Camomile St, London, UK EC 3A 7II

Interstate Fire & Casualty Company                  VRX-CN-0000328-04
33 W. Monroe Street  , Chicago, IL 60603

Independent Specialty Insurance Company             VUX-CN-0000328-04
1900 L. Don Dodson Drive , Bedford, TX 76021

Named Insured and Mailing Address:          Portofino Master Homeowners Association, Inc.
                                            10 Portofino Drive
                                            Gulf Breeze, FL 32561

Producer Name and Address:                  Jason Williams
                                            AmWINS - Atlanta
                                            3630 Peachtree Rd. NE
                                            Suite 1700
                                            Atlanta, GA 30326

Business or Operations of the Named Insured:    Condominium

_____

The insurance provided by this policy consists of the following coverage form(s). In return for
payment of the premium and subject to all the terms of this policy, we agree with you to provide the
insurance as stated in this policy.

**PROPERTY INSURANCE**

PREMIUM and FEE SUMMARY (Policy and Inspection Fee retained by Velocity Risk Underwriters, LLC)

| Annual Premium/Fees | Premium (x TRIA) | TRIA | Policy Fee | Inspection Fee | Total |
|---|---|---|---|---|---|
| Certain Underwriters at Lloyds (Consortium #9226) | | | | | $ |
| Independent Specialty Insurance Company | | | | | |
| Interstate Fire & Casualty Company | | | | | |

Page 1 of 2

VRU-041-1118 General Property Declaration (Syndicated)
In the states of CA, NV, and NY, Velocity Risk Underwriters, LLC does business as Velocity Risk Insurance Agency, LLC.

**Plaintiffs 000478**



20 Burton Hills Blvd., Ste. 350
Nashville, TN 37215

**GENERAL PROPERTY DECLARATIONS**
**This Declaration Page is attached to and forms part of the Policy as defined herein.**

| TOTAL | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|

LOCATIONS OF PREMISES--Applicable to Coverages specified in these Declarations

Locations on file with the Insurer(s) and/or Company(ies)

**FORMS ATTACHED AT INCEPTION**

| | |
|---|---|
| FL PN 08 16 | Policyholder Notice  - Florida |
| VRU-041-1118 | General Property Declarations |
| VRU-038-0816 | Policyholder Notification – Privacy Notice |
| VRU-037-0816 | Policyholder Notification – Fraud Notice |
| 000-000-0000 | Manuscript Form |
| VRU-001-0118 | Service of Suit |
| VRU-003-0316 | Office of Foreign Assets Control |
| VRU-005 0320 | Mandatory Exclusions  - Modified |
| VRU-006-0316 | Minimum Earned and Special CAT Minimum Earned Premium |
| VRU-011-0516 | Claims Reporting Information Notice |
| VRU-012-0119 | Allocation Endorsement |
| VRU-016-0220 | TRIA Rejection Notice |
| VRU-067-1219 | Several Liability Clause |
| VRU-057-0718 | Total Or Constructive Loss Earned Premium Condition |
| VRU-055-0120 | Certain Underwriters at Lloyd's Syndicate List |
| VRU-066-1219 | Property Cyber and Data Exclusion |

THESE DECLARATIONS TOGETHER WITH THE COVERAGE PART DECLARATIONS, COVERAGE FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE CONTRACT OF INSURANCE.

Countersigned: 4/16/2020                                      By:
                            Date

                                                                      _____
                                                                      Authorized Representative

Page **2** of    **2**

**Plaintiffs 000479**

# POLICYHOLDER NOTIFICATION

## PRIVACY NOTICE

For commercial business customers with policies administered by Velocity Risk Underwriters, LLC (VRU) and insured by a nonadmitted insurer, our privacy policy is as follows:

- VRU does not collect or require personal private information from our customers.
- VRU does not share any policyholder information for marketing purposes with any third party.
- VRU does share policy information as necessary with third party service providers for purposes of evaluating, processing, or servicing our business, inclusive but not restricted to information gathered in the application, inspection, or claims process.
- We require a non-disclosure with all third party service providers as respects information shared from us to our third party service providers which restricts use of information to functions required to perform the contracted services.
- Exception to all restrictions above will be as required by applicable law or regulatory agency.

VRU-038-0816 Policyholder Notification – Privacy Notice

**Plaintiffs 000480**

# POLICYHOLDER NOTIFICATION

# FRAUD NOTICE

| Arkansas | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
|---|---|
| Colorado | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| District of Columbia | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| Florida | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| Kansas | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of any insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| Kentucky | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| Louisiana | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Maine | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| Maryland | Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| New Jersey | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| New Mexico | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |

Plaintiffs 000481

# POLICYHOLDER NOTIFICATION

| | |
|---|---|
| **New York** | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.<br><br>The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| **Oregon** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in Prison. The aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties. |
| **Pennsylvania** | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| **Puerto Rico** | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |

# POLICYHOLDER NOTIFICATION

| Tennessee | **All Commercial Insurance,** Except As Provided for Workers' Compensation It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:** It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
|---|---|
| Utah | **Workers' Compensation:** Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| Virginia | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| Washington | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| West Virginia | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| All Other States | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison. |

## PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies) , do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy.

Provided that:

1.     The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2.     The liability of each of the Insurers shall not exceed the Participation Limit set against its name.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurer | Policy Number | Participation | Authorized Signature |
|---|---|---|---|
| Westchester Surplus Lines Insurance Company | D38064666 004 | $5,000,000 part of $15,000,000 Primary | |
| Endurance American Specialty Insurance Company | ESP30000298003 | $5,500,000 part of $15,000,000 Primary | |
| Everest Indemnity Company | CA3P005801201 | $3,000,000 part of $15,000,000 Primary | |
| Princeton Excess Surplus Lines Insurance Company | 3VA3PP0000251-02 | $1,500,000 part of $15,000,000 Primary | |
| Arch Specialty Insurance Company | ESP1002326-00 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Axis Surplus Insurance Company | EAF645360-20 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Colony Insurance Company | XP190091-1 | $6,250,000 part of $25,000,000 excess of $25,000,000 | |
| Evanston Insurance Company | MKLV11XP007995 | $7,500,000 part of $25,000,000 excess of $25,000,000 | |
| Aspen Specialty Insurance Company | PX005LG20 | $5,000,000 part of $25,000,000 excess of $25,000,000 | |

1

**Plaintiffs 000484**

| | | | |
|---|---|---|---|
| Independent Specialty Insurance Company | VUX-CN-0000328-04 | $8,689,317 part of $217,232,927 excess of $25,000,000 | |
| Interstate Fire & Casualty Company | VRX-CN-0000328-04 | $28,240,281 part of $217,232,927 excess of $25,000,000 | |
| Lloyd's of London | VPC-CN-0000328-04 | $17,378,634 part of $217,232,927 excess of $25,000,000 | |
| James River Insurance Company | 00090459-1 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Maxum Indemnity Company | MSP-6012522-11 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Landmark American Insurance Company | LHD912400 | $48,058,232 part of $192,232,927 excess of $50,000,000 | |
| Homeland Insurance Company of New York | 795012091 | $50,000,000 part of $100,000,000 excess of $200,000,000 | |
| Everest Indemnity Company | CA3X001322201 | $21,116,464 part of $42,232,927 excess of $200,000,000 | |

2

# MASTER PROPERTY POLICY

1.    NAMED INSURED – "Named Insured" means **Portofino Master Homeowners Association at Pensacola Beach, Inc.; Portofino Tower One Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Two Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Three Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Four Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Five Homeowners Association at Pensacola Beach, Inc.** means the First Named Insured and any entity in which the First Named Insured owns an interest of more than 50 percent, during the Policy Period, controls during the Policy Period, or has the responsibility of placing the insurance provided by this Policy during the Policy Period. No entity is covered under this Policy unless the Company has received identifying information for such entity during the application or submission process, except if such entity is covered under miscellaneous unnamed insured locations or newly acquired property, or if such entity is added by endorsement.

Notwithstanding any provision to the contrary in this Policy, if other valid and collectible insurance is available to any entity covered by this Policy solely because of the ownership, control, or responsibility to purchase insurance by the First Named Insured, this insurance will be excess with regard to such other insurance whether contingent, primary, excess or any other basis.

2.    TERM OF INSURANCE In consideration of a _____ annual premium, this policy attaches and covers for a period of one year from April 1, 2020 to April 1, 2021, beginning and ending at 12:01 A.M. standard time, at the location of the property involved.

3.    PARTICIPATION – Please refer to the Participation Page.

4.    LIMIT OF LIABILITY - This Company shall not be liable for more than its proportion of $242,232,927 for any one occurrence.

5.    SUBLIMIT(S) OF LIABILITY) - This Company shall not be liable for more than its proportion of the following sublimits.  Sublimits are part of and not in addition to the overall Limit of Liability and apply on a per occurrence basis unless otherwise noted:

    a)    $15,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Flood.

    b)    $25,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Earthquake.

    c)    $1,000,000 per occurrence as respects Accounts Receivable

    d)    $500,000 per occurrence as respects Arson Reward

**Plaintiffs 000486**

e)   $1,000,000 per occurrence as respects Contingent Time Element, Attraction Properties are excluded

f)   $1,000,000 per occurrence as respects Consequential Loss

g)   $10,000,000 per occurrence as respects Course of Construction Including Soft Costs

h)   Included per occurrence as respects Demolition and Increased Cost of Construction Coverage A

i)   $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage B

j)   $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage C

k)   $1,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage D

l)   $10,000,000 per occurrence as respects Debris Removal

m)   $10,000,000 per occurrence as respects Errors and Omissions

n)   25% of the Adjusted Loss Maximum, $10,000,000 per occurrence as respects Extra Expense

o)   $5,000,000 per occurrence as respects Expediting Expense

p)   200,000,000 per occurrence as respects Equipment Breakdown

q)   $1,000,000 per occurrence as respects Contract Penalty

r)   $1,000,000 per occurrence as respects Fire Brigade Charges and Extinguishing Expenses

s)   $50,000 per occurrence as respects Inland Transit

t)   The lesser of 30 days of $2,500,000 per occurrence as respects Ingress/Egress

u)   $5,000,000 per occurrence as respects Miscellaneous Unnamed Locations

v)   $5,000,000 per occurrence as respects Newly Acquired Property (90 days; if not reported within 90 days the coverage ceases)

w)   $1,000,000 per occurrence as respects Leasehold Interest

x)   $500,000 per occurrence as respects Lost Master/Key Card

y)   $5,000,000 per occurrence as respects Rental Value/Rental Income

z)   Excluded per occurrence as respects Research and Development

aa)   $1,000,000 per occurrence as respects Royalties

bb)   $2,500,000 per occurrence as respects Service Interruption.  Property Damage and Time Element Combined.

cc)   $1,000,000 per occurrence as respects Valuable Papers and Records

dd)   The lesser of 30 days of $2,500,000 per occurrence as respects Civil or Military Authority

ee)   $3,000,000 per occurrence as respects Landscaping, subject to a $25,000 maximum per item

ff)   $1,000,000 per occurrence as respects Fine Arts, subject to a $25,000 maximum per item

The amount of loss from any one occurrence for which this policy is excess, shall be determined by the combined loss, damage or expense as insured under the primary policy.  In the event of loss or damage involving more than one coverage or peril, The Limits of Liability of the underlying policies shall first

4

apply to the coverage(s) or peril(s) not insured by this policy, and the remainder, if any to the coverages(s) or peril(s) as provided hereunder. Upon erosion or exhaustion of the Limits of Liability of the underlying policies, this policy shall then be liable for the loss uncollected from the coverage(s) or perils(s) insured hereunder, subject to the Limit of Liability specified herein.  In the event of reduction or exhaustion of the aggregate limit(s) designated in the underlying policy(ies), it is hereby understood and agreed that such insurance as is afforded by this policy shall apply in excess of the reduced or exhausted underlying limit(s).  The insured maintains the right to allocate and/or apply coverages, interests and/or perils, as insured in the primary and/or excess policies.

6.  DEDUCTIBLE CLAUSE - The Company will adjust all losses, damages or expenses arising out of any one occurrence as one loss. The Company will deduct the following from such loss:

**$50,000** per occurrence for all perils including earthquake sprinkler leakage, and the backup of sewers and drains, except:

WAITING PERIOD:

With respect to all Time Element coverages, coverage is provided by this policy only if the period of interruption of the Insured's business exceeds 24 hours. Then Time Element coverage will apply excess of the appropriate policy deductible.

EARTHQUAKE:

As respects loss or damage to property resulting from the peril of Earthquake, all loss, damage or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deductible the sum of $50,000.  This deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

FLOOD:

As respects loss or damage to property resulting from the peril of Flood, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100 year flooding, as defined by the Federal Emergency Management Agency, all loss arising out of any one occurrence shall be adjusted as one loss and from the loss shall be deducted the maximum amount recoverable under the National Flood Insurance Program for the Real or Personal Property at each Building, whether or not such coverage is purchased or maintained.

In addition, the following Deductible will apply to property not eligible and coverages not available under the National Flood Insurance Program that are covered under this Policy and any difference in valuation between policies: $100,000 per Occurrence.

The determination of whether a property is in whole or in part subject to the 100 Year Flood Zone shall be at the inception of the policy and not at the time of loss.

Plaintiffs 000488

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

NAMED STORM:

With respect to loss or damage to property in Tier 1 Counties resulting from the period of Named Windstorm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm), the deductible shall be 2% of such unit of insurance at each location in accordance with policy valuation at the time of loss.  A minimum $100,000 each occurrence shall apply.

With respect to any other named storm loss or damage, the deductible shall be **$50,000** any one occurrence.

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

ALL OTHER WIND and HAIL:
As respects loss or damage to property resulting from the peril of All Other Wind, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

**$50,000**

Definition of 'Unit of Insurance':
   a) Each separate building or structure
   b) Contents in each separate building or structure
   c) Property in the yard of each separate building or structure
   d) Annual Business Interruption value applying to each separate building or structure.
   e) Each Other Property item as listed in the Statement of Values.  If values are not listed separately, the value is included in the building value.

Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence. If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the insured shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s), notwithstanding the above reference to two or more deductibles.

The deductible amounts specified above shall not apply to general average contributions and salvage charges.

7.    LOSS PAYABLE - Loss, if any, shall be adjusted with and payable to the Insured, or as directed by them.

Plaintiffs 000489

8.  TERRITORY - This policy covers anywhere in the United States of America and its territories and possessions including coastal and inland waterways and while in due course of transit therein or thereto.

9.  PROPERTY COVERED - Except as hereinafter excluded, this policy covers the interest of the Insured in all real and personal property owned, used, leased or intended for use by the Insured or in which the Insured may have an insurable interest, or for which the Insured may be responsible for the insurance, or real or personal property hereafter constructed, erected, installed, or acquired including while in course of construction, erection, installation, and assembly including Improvements and Betterments. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.  This policy is extended to include:

a)  The interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by written contract for such property, including the cost to defend any allegations of liability for loss or damage to such property.

b)  At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured.

c)  Contractors' and/or subcontractors' (of any tier) and/or vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract.

10.  PROPERTY EXCLUDED - This policy does not cover loss or damage to:

a)  Money and securities;

b)  Land, land values, except as insured under the "Pollutant Cleanup of Land and Water" clause.  This exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements if land improvements have been scheduled on the Schedule of Values on file with the company.  Land improvements as described hereunder include, but are not limited to any alteration to the natural condition of the land by grading, landscaping, excavation, earthen dikes or dams, as well as additions to land such as pavements, roadways or similar works;

c)  Water; except water which is normally contained within any type of tank, piping system or other process equipment;

d)  Growing crops, standing timber, and live animals;

e)  Watercraft; aircraft and motor vehicles licensed for highway use;

f)  Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

g)  Underground mines or mine shafts or any property within such mine or shaft;

7

Plaintiffs 000490

h)     Offshore property; unless reported on the Schedule of Values on file with the company.

i)     Transmission and Distribution Lines beyond 1,000 feet of Insured Premises;

j)     currency; evidence of debt; notes

k)     Turbines and satellites;

l)     docks, piers, and wharves; bridges, roadways, streets, walks or any other paved surfaces; dams or dikes; railroad rolling stock; off-shore drilling rigs or platforms; underground mines, wells, caverns including property contained therein unless reported on the Schedule of Values on file with the company.

11.    PROPERTY VALUATION - The basis of loss adjustment shall be as follows:

a)     Valuable Papers & Records/Electronic Data Processing Media :  the cost to repair or replace the property with other of like kind and quality including the cost of labor, service or supplies consumed in reconstructing, reproducing, recreating, transcribing or copying information; or, if not so replaced, the value blank.

b)     Raw materials and supplies:  the replacement cost new.

c)     Stock in process:  The value of raw materials plus labor expended plus the proper proportion of overhead charges.

d)     Finished stock and other merchandise for sale:  The regular cash selling price less all discounts and charges to which such property would have been subject had no loss occurred.

e)     Real and personal property of others for which the Insured is liable:  A valuation consistent with the liability of the Insured but only to the extent that such money is necessarily expended by the Insured.

f)     Electronic data processing equipment, production machinery & equipment:  The cost to repair or replace new with like kind and quality. In addition, the Insured may elect to replace such equipment with equipment having technological advances and/or representing an improvement in function and/or forming part of a program of system enhancement and/or more consistent with the Insured's technology strategy (without any reduction or offset for betterment) provided that such replacement can be accomplished without increasing the Insurer's liability.

g)     Fine arts, at original cost to the Insured, per schedule, latest appraised value or current market value, all at the Insured's option.

h)     Other property not otherwise provided for; at replacement cost new without deduction for depreciation.  If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:

8

      i)     The repairs, replacement or reinstatement must be executed with due diligence and dispatch.

      ii)    This Company's liability for loss or damage on a replacement cost basis shall not exceed the lesser of the replacement cost new of the property or any part thereof identical with such property intended for the same occupancy and use, including normal and customary profit and overhead even if the work is performed by the Insured; or the amount actually and necessarily expended in repairing or replacing said property or any part thereof including normal and customary profit and overhead even if the work is performed by the Insured.

12.    BUSINESS INTERRUPTION - This policy shall cover the loss resulting from necessary interruption of business conducted by the Insured including all interdependent loss of earnings between or among companies owned or operated by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

    a)    In the event of such loss, damage or destruction this Company shall be liable for the ACTUAL LOSS SUSTAINED by the insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business. Due consideration shall be given to the continuation of normal charges and expenses including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately before the loss. For the purposes of this insurance, "Gross Earnings" are defined as the sum of:

      i)     Net sales value of production from manufacturing operations, and net sales from Merchandising or Non-Manufacturing operations; and

      ii)    Other earnings derived from operations of the business,

           LESS THE COST OF:

      iii)   Raw Stock from which such production is derived;

      iv)   Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the services(s) sold by the Insured;

      v)    Merchandise sold, including packaging materials therefor; and

      vi)   Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

Plaintiffs 000492

b) In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the period of restoration, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including ordinary payroll, directly attributable to such research and development activities.

c) Resumption of Operations: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business:

    i) by a complete or partial resumption of operation at a location owned by the same entity suffering the loss, whether damaged or not; or

    ii) by making use of available stock, merchandise, or other property;

such reduction shall be taken into account in arriving at the amount of loss hereunder.

d) EXPERIENCE OF THE BUSINESS - In determining the amount of gross earnings, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

e) As respects coverage provided under the Gross Earnings clause of this policy, the insurer shall not be liable for any loss resulting from loss or damage to finished stock nor for the time required to reproduce said finished stock.

13. Extra Expense - This policy shall cover the necessary extra expense, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

a) The term "Extra Expense" wherever used in this Policy, is defined as the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally have been incurred to conduct the business during the same period had no loss or damage occurred.

Plaintiffs 000493

b)     In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities, this policy shall cover the actual loss sustained of the extra expenses as defined herein directly attributable to the interruption of such research and development activities.

c)     As soon as practicable the Insured shall resume normal operations of the business and shall dispense with such extra expense.

14.    This policy is extended to cover expenses as are necessarily incurred for the purpose of reducing any loss under this policy; however, such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

15.    SOFT COSTS - This policy shall cover soft costs, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to property under construction as covered herein.

a)     The term "Soft Costs" shall include:

    i)     Additional interest costs on money used to finance construction or repair;

    ii)    Additional real estate and property taxes incurred for the period of time that construction extends beyond the projected completion date;

    iii)   Additional legal and accounting fees; and

    iv)   Additional advertising and promotional expenses which become necessary as a result of an insured loss.

b)     This company shall pay soft costs incurred from the date that the building, structure or improvement would have been completed had no physical damage occurred until such time that it is completed.  As soon as practicable after any loss, the Insured shall utilize every available means to reduce the amount of loss including:

    i)     partial or complete resumption of construction, business or operations;

    ii)    making use of materials, equipment, supplies, or other property at the Insured's premises or elsewhere; or

    iii)   making use of substitute facilities or services where practical;

such reduction will be taken into account in arriving at the amount of such loss.

16.    Rental Value/Rental Income - This policy shall cover the actual loss sustained by the Insured resulting directly from the necessary untenability caused by direct

Plaintiffs 000494

physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as covered herein. Loss settlement shall not exceed the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenability.

a) If the Insured is the lessor, for the purposes of this insurance, "rental value" is defined as the sum of:

   i) the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the insured, and

   ii) the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

   iii) the fair rental value of any portion of said property which is occupied by the Insured.

b) If the Insured is the lessee, rental value shall be the determined rental which the Insured is obligated to pay (including ground rents, accrued charges, real estate taxes and interest if the Insured shall be liable therefor) less such charges and expenses as do not necessarily continue.

c) Experience of the Business - In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred. With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

d) With respect to buildings or structures leased or rented by the Insured, this policy will serve as rental income insurance in those situations where the insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord. This policy will respond for rental expenses incurred by the Insured in excess of the expenses which would have been incurred had a leased or rented premises not been damaged or destroyed by any peril covered under this policy. Such coverage will apply for all additional expenses incurred during the period of untenability or if the lease cannot be terminated until its expiration.

17. Royalties - This policy shall cover the loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to direct physical loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the other party.

12

    a)      Any loss hereunder shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED to such income referred to above, which would have been earned had no loss occurred.

    b)      Resumption of Operations:  The Insured shall influence, to the extent possible, the party with whom the agreement described above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Company.

    c)      Experience of the Business:  In determining the amount of income derived from the agreements(s) described above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

18.    Leasehold Interest - This policy covers the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

    a)      the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

    b)      improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of this policy;

    c)      the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located; and "Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located. The "Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

Plaintiffs 000496

d)   The "Interest of the Insured as Lessee" is defined as:

  i)   the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

  ii)   the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

e)   The "Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is cancelled by the lessee, to the extent not covered under any other section of this policy.

f)   "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "Interest of the Insured as Lessee".

g)   This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

19.   Loss Provisions Applicable to Time Element Coverage - The "Period of Indemnity" is defined as the length of time for which loss may be claimed, and shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy, subject to the following provisions:

a)   The Period of Indemnity shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged.

b)   With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly the Period of Restoration shall be determined as provided above but such determined length of time shall be applied, and the loss hereunder calculated from the date that business operations would have begun had no damage or destruction occurred.

c)   Extended Period of Indemnity - The Period of Indemnity shall include such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

  i)   the date on which the liability of the Company for loss or damage would otherwise terminate; or

14

**Plaintiffs 000497**

ii)      the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually completed;

terminating no more than 365 days from said later commencement date.

20.    Extensions of Time Element Coverage: This policy, subject to all its provisions and without increasing the amount of said policy, insures against direct physical loss resulting from damage to or destruction by the perils insured against, to:

a)    Any service provider's property including but not limited to, electrical equipment and systems, water, gas, steam, telephone or their respective transmission and distribution lines or utility plants which directly or indirectly provide incoming or outgoing services to the Insured situated on or outside of the Insured's premises.

b)    the actual loss sustained, and Extra Expense incurred by the Insured at an insured location during the period of restoration directly resulting from physical loss or damage of the type insured to property of the type insured at a Contingent Time Element Location, meaning a location within the TERRITORY of a direct supplier or direct customer of the Insured.

As respects this subparagraph b):

i.    The Insured will influence and cooperate with the Contingent Time Element Location in every way and take any reasonable and necessary action, including the use of other machinery, supplies, or locations, to effect mitigation of the loss payable hereunder.

ii.    In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

iii.    This Policy does not insure loss resulting from a lack of incoming or outgoing electricity, fuel, gas, water, steam, refrigeration, sewage, or telecommunications of a direct supplier or direct customer of the Insured.

iv.    The per occurrence deductible that applies to all perils also applies to the coverage as provided under this subparagraph b).

c)    dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other manufacturing purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources.

d)    the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory

15

Plaintiffs 000498

mile of an insured location, access to real or personal property is impaired or hindered by order of civil or military authority irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 e) below.

e) the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory mile of an insured location, ingress to or egress from real or personal property is thereby impaired or hindered irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 d) above.

f) property, facilities or piping systems which prevents the Insured from discharging its outgoing effluence.

21. Transit - This policy shall cover property in transit, and this policy attaches and covers shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.  This insurance is extended to cover loss or damage to property:

a) sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

b) arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

c) occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

d) at the Insured's option, property which is incoming to the Insured.

The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor. With respect to shipments described under subparagraphs a and d above, this Company agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

Plaintiffs 000499

  e)  The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

  f)  Seaworthiness of any vessel or watercraft, and airworthiness of any aircraft are admitted between this Company and the Insured.

22. Accounts Receivable - Defined as:

  a)  All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

  b)  Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

  c)  Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

  d)  Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

  e)  the monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

  f)  the monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

23. Lost Master/Key Card - If a master or grand master key is lost, or damaged so it cannot be duplicated, we will pay for the actual loss of keys, the cost of adjusting locks to accept new keys, or the cost of new locks, if required, of like kind and

Plaintiffs 000500

quality including the cost of installation subject to the limit contained in the Declarations.

24.    Arson Reward - If covered property sustains direct physical loss or damage caused by or resulting from a fire, and the origin of such loss is determined to be the criminal acts of an individual or individuals, we will pay a reward to the person or persons who provide information that leads to the arrest and conviction of the individual or individuals responsible for the loss.

25.    Contract Penalty – This policy covers a compensation payment due under the Hotel Management Agreement between the Franchisee, Named Insured, and any Franchisor, as identified via policy endorsement, or other appropriate subsidiaries acting as the management company or agent, whether insured or not under this policy. The Contract Penalty is triggered when the Hotel Management Agreement is terminated due to loss or damage of a type insured under this policy from an insured peril where such loss or damage causes a total constructive loss.

    "A total constructive loss" means the destruction or damage to the Hotel by an insured peril whereby the destruction of or damage to the Hotel is such that the cost of repairing, rebuilding or replacing the Hotel exceeds 50% of the Replacement value of the Hotel." The Contract Penalty will only apply if the franchisor does not release the franchisee from the Hotel Management Agreement after a total constructive loss occurs and the First Named Insured / Franchisee elects not to repair or rebuild the property.

26.    BOILER & MACHINERY - This policy insures direct or indirect loss as covered elsewhere in this policy to insured property as a result of an Accident to an Object subject to the following definitions:

    a)    "Object" means any boiler, fired or unfired pressure vessel, refrigerating or air-conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

    b)    "Accident" means an accidental loss to an Object or a part thereof which manifests itself in physical damage that necessitates repair or replacement of the Object or part thereof.

    c)    "Hazardous Substance" means the additional expense incurred for clean up, repair or replacement, or disposal of damaged, contaminated or polluted property as a result of an "Accident" which causes property to become damaged, contaminated or polluted by a substance declared hazardous to health by an authorized governmental agency. "Additional Expenses" means expenses incurred that would not have been incurred, had no substance hazardous to health been involved in the accident.

27.    PERILS INSURED AGAINST - This policy insures against all risks of direct physical loss of or damage to property described herein including general

Plaintiffs 000501

average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

28.    PERILS EXCLUDED - This policy does not insure:

a)    infidelity or dishonesty of the Insured or of the Insured's employees. A willful act of malicious intent shall not be deemed to be an act of infidelity. In no event does this Policy insure loss caused by theft by the Insured or the Insured's employees;

b)    against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

c)    against ordinary wear and tear or gradual deterioration unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

d)    against inherent vice or latent defect unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

e)    against errors in processing or manufacture of the Insured's product unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

f)    against mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

g)    against nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except if a covered peril ensues, liability is specifically assumed for direct loss by such ensuing peril but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination.  This Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

h)    against hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or

Plaintiffs 000502

expected attack by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or by military, naval, or air forces; or by any agent of any such government, power, authority, or forces;

i)      against any weapon employing atomic fission or fusion;

ii)     against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

iii)    against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against under this policy;

iv)     against risks of contraband or illegal trade;

v)      against confiscation, nationalization and expropriation;

Notwithstanding the above provisions, this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated.  Nothing in the foregoing shall be construed to include any loss, damage, or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon or war employing atomic fission or fusion whether in time of peace or war.

i)      loss or damage caused directly or indirectly by the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants unless the release, discharge, dispersal, seepage, migration, or escape is caused by a peril not otherwise excluded herein.  However, if a peril not otherwise excluded herein ensues due to the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants, such ensuing loss or damage shall be covered.

j)      loss or damage caused by an act of terrorism which means an act or series of acts, including the use of force or violence, of any person or group(s) or persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public or any section of the public in fear for such purposes.

k)      against loss or damage caused by insect or vermin.

20

Plaintiffs 000503

l) against delay, loss of market loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

m) against delay, loss of market, loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

n) against corrosion, depletion, deterioration, erosion, wet rot, dry rot, decay, evaporation, rust, and shrinkage unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

o) against changes of temperature or humidity, whether atmospheric or not;

p) against settling, cracking, bulging, shrinking, or expansion of foundations; machinery pedestals, pads, or platforms; floors, pavements, walls, ceilings, or roofs; or the cumulative effects of smog, smoke, soot, vapor liquid, or dust;

q) against lack of incoming power voice/data/internet access from offsite services except as provided in the Service Interruption Extension.

Exclusion b), c), d) and e) do not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly.

Exclusion b), c) and d) do not apply to property in transit.

29. **DEFINITIONS**

a) The term "Earthquake" as used in this policy shall mean loss or damage caused by or resulting from a series of vibrations induced in the earth's crust by the abrupt rupture and rebound of rocks in which elastic strain has been slowly accumulating (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

b) The term "Flood" as used in this policy shall mean loss or damage caused by or resulting from waves, tide, or tidal water, and the rising (including the overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and similar bodies of water, whether wind driven or not (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

c) The term "occurrence" is defined as follows:

Plaintiffs 000504

     i)      Except as hereinafter defined, "loss occurrence" shall mean an accident or occurrence or series of accidents or occurrences arising out of one event.

     ii)     ii) Each loss occurrence which involves the perils of tornado, windstorm, cyclone, hurricane, hail or flood shall include all loss or damage wherever occurring occasioned by these perils which arise out of one atmospheric disturbance during a continuous period of 168 hours.

     iii)    Each loss occurrence which involves the peril of earthquake, a series of earthquakes shall include all losses or damage sustained during a continuous period of 168 hours.

     iv)    Each loss occurrence which involves the peril(s) of vandalism, malicious mischief or riot/civil commotion shall include all losses or damage sustained resulting from one or more acts committed by a person acting alone or in collusion with others during a continuous period of 168 hours.

     v)     The Insured shall have the right to elect the moment from which the time periods referred to in ii), iii), and iv) above shall be deemed to have commenced, however no elected period of time shall commence within any previous occurrence.

     vi)    Should the time period in ii), iii), and iv) above extend beyond expiration or cancellation date of this policy and commence prior to the expiration or cancellation date, this Company shall be liable as is such period fell entirely within the term of this policy.

     vii)   However, we shall not be liable hereunder for any loss or damage:

     viii)  Occurring before this policy becomes effective; or

     ix)    Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

d)    "Raw Stock" - Materials and supplies in the state in which the Insured receives it for conversion by the Insured into Finished Stock, including supplies consumed in such conversion or in the service rendered by the Insured.

e)    "Stock in Process" - Raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture by on behalf of the Insured but which has not become Finished Stock.

f)    "Finished Stock" - Stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

g)    "Merchandise" - Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

h)    "Normal" - The condition that would have existed had no loss occurred.

Plaintiffs 000505

i)  "Improvements and Betterments" - Fixtures, alterations, installations or additions comprising a part of the described building and made or acquired at the expense of the Insured, but which are not legally subject to removal by the Insured.

j)  "Valuable papers and records" - Written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents and manuscripts.

k)  "Electronic Data Processing Media" - All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles.

l)  "Securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets.

m)  "Fine Arts" - Shall include but not be limited to bona fide works of art, works of rarity, works of historical value, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, galley proofs, original records, sculptures, carvings and similar property.

n)  "Architect and Engineering Fees" - Any cost associated with the preparation of plans, supervision of and approval for the repair or replacement of damaged or destroyed property.

o)  "Tier One County" - the entire territory of the United States Virgin Islands, the entire Commonwealth of Puerto Rico, the entire State of Florida, and the following:
    i)  In the State of Alabama, the counties of Baldwin, Escambia, and Mobile;
    ii)  In the State of Connecticut, the counties of Fairfield, New Haven, and New London;
    iii)  In the State of Georgia, the counties of Bryan, Camden, Chatham, Glynn, Liberty, and McIntosh;
    iv)  In the State of Hawaii, the counties of Honolulu, Kauai, and Maui;
    v)  In the State of Louisiana, the counties (also known as "Parishes") of Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, Iberia, Iberville, Jefferson Davis, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John The Baptist, St. Martin, St. Mary, St. Tammany, Terrebonne, and Vermillion;
    vi)  In the Commonwealth of Massachusetts, the counties of Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, and Suffolk;

23

Plaintiffs 000506

vii)    In the State of Mississippi, the counties of George, Greene, Hancock, Harrison, Jackson, Pearl River, and Stone;

viii)    In the State of New Jersey, the counties of Atlantic, Monmouth, and Ocean;

ix)    In the State of New York, the counties of Kings, Nassau, Queens, and Suffolk;

x)    In the State of North Carolina, the counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington;

xi)    In the State of Rhode Island, the counties of Newport, Providence, and Washington;

xii)    In the State of South Carolina, the counties of Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, and Williamsburg;

xiii)    In the State of Texas, the counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Gollad, Harris, Hidalgo, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, and Willacy; and

xiv)    In the Commonwealth of Virginia, the counties of Accomack, Gloucester, Isle of Wright, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, Westmoreland, and York; and the independent cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Suffolk, and Virginia Beach.

p)    "Named Storm"- A storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Depression or Tropical Storm. "Named storm" does not include "flood" resulting from a "named storm".

q)    "Time Element' – Includes coverage as described under Clause 12., 13., 14., 15., 16., 17., 18., 19. and 20. hereunder.

r)    "Unnamed Location' – A location which has not been scheduled with underwriters or the insured's representative and is not considered a Newly Acquired location.

s)    "Newly Acquired Location" – A location acquired by the insured after inception of this policy for a period of up to 90 days until reported to and agreed by underwriters.

30.    FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES - This policy covers fire brigade charges and other extinguishing expenses for which the Insured may be assessed including loss of fire extinguishing materials expended resulting from a peril insured.

Plaintiffs 000507

31.     SEVERABILITY OF INTERESTS - The inclusion herein of more than one person or organization, as Insured, shall not operate to increase the limit of the Company's liability nor the deductible amounts to be borne by the Insured. Except with respect to limits of liability and deductible amounts, the terms of this policy shall apply separately to each person or organization covered as Insured in the same manner and to the same extent as though a separate policy had been issued to each such person or organization.

32.     DEBRIS REMOVAL - This policy covers the cost of removal of debris of property covered hereunder including the cost of removal of debris of property not insured hereunder from the premises of the Insured resulting from a peril insured against. Except as otherwise provided for elsewhere in this policy, this policy does not cover the cost to extract contaminants or pollutants from land or water, nor does it cover the cost to remove, restore or replace contaminated or polluted land or water.

If at the time insured property is contaminated as a direct result of physical damage insured against by this policy there is in force any law or ordinance regulating contamination, including but not limited to pollution, then this policy shall cover, as a result of the enforcement of such law or ordinance, the increased cost of decontamination and debris removal of such property in a manner to satisfy such law or ordinance.  As respects Time Element coverage(s), this policy is extended to include such time as is necessary and reasonable with the exercise of due diligence and dispatch to decontaminate such property in a manner to satisfy such law or ordinance.

33.     DEMOLITION AND INCREASED COST OF CONSTRUCTION - In the event of loss or damage under this policy that causes the enforcement of any law or ordinance in force at the time of loss regulating the construction, repair or use of property, this Company shall be liable for:

a)      COVERAGE A - the loss in value of the undamaged portion of the property as a consequence of the enforcement of any law or ordinance that requires demolition of undamaged parts of the same property;

b)      COVERAGE B – the cost to demolish and clear the site of undamaged parts of the same property;

c)      COVERAGE C – the increased cost to repair or reconstruct damaged and undamaged property on the same or another site when the increased cost is a consequence of the enforcement of any law or ordinance.  These costs are limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  This Company shall not be liable for any increased cost of repair or reconstruction loss unless the damaged property is actually rebuilt or replaced;

25

**Plaintiffs 000508**

d)     Any increase in loss including but not limited to Business Interruption, Extra Expense, Rental Value, Rental Income, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law or ordinance.

e)     In the event real or personal property is not repaired or replaced to the same height, floor area, size, style or comparable quality of the original property insured due to the enforcement of law or ordinance regulating, restricting or prohibiting repair or replacement of covered property, this policy will pay the full replacement cost without deduction for depreciation for the real or personal property damaged or destroyed, as if the property was replaced to the same height, floor area, size, style or comparable quality of the original property insured.  This policy will also pay Time Element loss as if the original structure were repaired or replaced to original specifications, subject to the terms and conditions of these coverage(s).

34.    EXPEDITING EXPENSE - This policy covers the extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

35.    CONTRIBUTING INSURANCE - Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy.  This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

36.    EXCESS INSURANCE - Excess insurance is insurance over the limit of liability set forth in this policy.  The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

37.    UNDERLYING INSURANCE - Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire.  The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy. Should the amount of loss payable under such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then no deductible shall apply hereunder and that portion which exceeds such a deductible amount shall be considered "other insurance". Should the amount of loss payable under such underlying insurance be less than the largest deductible amount which would apply in the event of loss under this policy, then the deductible amount to be deducted hereunder shall be the difference between the amount to be paid under such underlying insurance and the largest deductible amount which would apply in the event of loss under this policy.

38.    OTHER INSURANCE - Except for insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether

Plaintiffs 000509

prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils.  This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.

39.   SUBROGATION - Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder.  The right of subrogation against the Insured, affiliated, subsidiary, and associated companies, or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived and at the option of the Insured, against a tenant or guest of the Insured. In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.  If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests.  If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

40.   SALVAGE AND RECOVERIES - All salvages, recoveries, and payments, (excluding proceeds from subrogation and underlying insurance) recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly.  If proceeds from subrogation are recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(s) participating in the payment of any loss, in the proportion of their respective interests.

41.   CONTROL OF DAMAGED MERCHANDISE - The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods.  The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods.  The Insured, using reasonable discretion, shall be the sole judge as to whether production or EDP equipment and/or media is damaged and unusable. This insurer shall be allowed to dispose of as salvage, any non-proprietary property deemed unusable by the Insured.

27

Plaintiffs 000510

42. BRAND OR TRADEMARK - In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carriers or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at this Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

43. ERRORS OR OMISSIONS - Any unintentional error or omission made by the Insured in the application for insurance shall not void or impair the insurance hereunder but only to the extent this Policy would have provided coverage had the unintentional error or omission not been made provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department. This coverage does not apply if there is coverage available under any other provision in this Policy.

44. NOTICE OF LOSS - As soon as practicable after any loss or damage occurring under this policy is known to the Insured's home office insurance department, the Insured shall report such loss or damage with full particulars to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 for transmission to the designated loss adjuster and to this Company.

45. DESIGNATED LOSS ADJUSTER - It is understood and agreed that each and every loss will be adjusted by Jeff Hellman of McLaren Young International, 19324 40th Avenue West, Suite C, Lynnwood, WA 98036.

46. PROOF OF LOSS - Proof of loss is required as soon as practicable following the Company's written request for signed Proof from Insured; however, Insured, at its option, may elect to file Proof with the Company prior to the Company's request.  It shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained.

47. PARTIAL PAYMENT OF LOSS - In the event of a loss covered by this policy, it is understood and agreed that the Company shall allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

48. PAYMENT OF LOSS - All adjusted claims shall be due and payable no later than thirty (30) days after presentation of acceptable proofs of loss by the Insured or its appointed representative.

49. LOSS ADJUSTMENT EXPENSES - This policy is extended to include reasonable expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. These expenses include fees of professionals engaged to assist the Insured in determining the cause and origin of the loss, the amount

Plaintiffs 000511

of loss sustained, and the amount of loss payable under this policy. This policy shall not cover the expenses of a public adjuster. Such expenses shall not exceed $2,000,000 in any one occurrence.

50.    APPRAISAL - If the Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser.  The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending.  Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss.  If the appraisers fail to agree, they shall submit their differences to the umpire.  An award in writing by any two shall determine the amount of loss.  The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

51.    CONSEQUENTIAL LOSS - This policy insures against consequential loss including spoilage to real and personal property as insured hereunder caused by change of temperature or humidity or by interruption of any service including but not limited to power, heat, air conditioning, or refrigeration resulting from a peril insured against.

52.    PAIR AND SET - In the event of loss or damage by a peril insured against to any article or articles which are part of a pair or set, the measure of loss or damage to such article or articles shall be the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

53.    CONSEQUENTIAL REDUCTION IN VALUE - This policy covers the reduction in value of insured components or parts of components or parts of products or the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to direct physical loss or damage insured against by this Policy to other insured components or parts of products.

54.    COINSURANCE WAIVER - This policy is not subject to any coinsurance or average clause.

55.    ALTERATIONS AND USE CLAUSE - Permission is granted to the insured to cease operations or for buildings to remain vacant or unoccupied provided fire protection, watch alarm services are maintained, and written notice is given to the Insurer prior to the sixtieth (60th) consecutive day of cessation of operations, vacancy or unoccupancy. The Insured's building is considered vacant or unoccupied when it does not contain enough covered Property to conduct customary business operations.

Plaintiffs 000512

56.   ASSISTANCE AND COOPERATION OF THE INSURED - The Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

57.   SUE AND LABOR - In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment.  This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

58.   REINSTATEMENT - With the exception of loss subject to annual aggregate limits as noted herein, no loss hereunder shall reduce the amount of this policy.

59.   SUIT AGAINST THE COMPANY - No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy.  The Company agrees that any action or proceeding against it for recovery of any loss under this policy shall not be barred if commenced within the time prescribed therefor in the statutes of Florida.

60.   CERTIFICATES OF INSURANCE - It is understood and agreed that Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 is authorized to issue certificates of insurance naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests subject always to the terms, conditions, and limits of liability of this policy. The Company agrees to waive the issuance of formal Company endorsements in respect of such interests.

61.   NOTIFICATION CLAUSE - All notices or communications concerning this policy shall be addressed to the offices of the Insured, to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 and to AmWINS Brokerage of Georgia, 3630 Peachtree Road NE, Suite 1700, Atlanta, GA 30326.  All such notices shall be sent via registered mail.

62.   CANCELLATION/NON RENEWAL - This policy may be cancelled at any time at the request of the Insured or it may be cancelled or non-renewed by the Company by mailing to the Insured written notice stating when, not less than ninety (90) days thereafter or ten (10) days in the event of non-payment of premium, such cancellation or non-renewal shall be effective. If the First Named Insured cancels, return of any unearned premium will be calculated on the

Plaintiffs 000513

customary short rate basis. If the Company cancels, return of any unearned premium will be calculated on a pro rata basis. Return of any unearned premium will be made by the Company as soon as practicable. The cancellation will be effective even if the Company has not made or offered a refund.

63.   TITLES OF PARAGRAPHS - The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

64.   MORTGAGE CLAUSE - As respects Real Property only, loss, if any, under this policy shall be payable to the mortgagee (or trustee) as its interest may appear under all present or future mortgages upon the property herein insured in which the aforesaid may have an interest as mortgagee (or trustee) in order or precedence of mortgages., and this insurance as to the interest of said mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that, in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided also, that the mortgagee (or trustee) shall, notify the Company of any changes of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and unless permitted by this policy, it shall be noted thereon and the mortgagees or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The company reserves the right to cancel this policy at any time as provided by its terms, and in such case, this policy shall continue in force for the benefit only of the mortgagee (or trustee) for an additional thirty (30) days.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgagee debt, or may at their option pay to the mortgagee (or trustee) the whole principal due or to grow on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and all of such other securities, but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

65.   JURISDICTION AND SUIT - It is hereby understood and agreed that in the event of the failure of the Insurer to pay an amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court

31

of competent jurisdiction within the United States and will comply with all requirements necessary to give such jurisdiction.  All matters arising hereunder shall be determined in accordance with the law and practice of such court. In any suit instituted against it under this, the Insurer will abide by the final decision of such court or any appellate court in the event of an appeal.

66.     POLLUTANT CLEAN UP AND REMOVAL - This policy is extended to cover the expense actually incurred by the Insured to decontaminate, clean up and/or remove pollutants from land, water or air including resultant time element loss if the release, discharge, or dispersal of the pollutants results from any loss or damage as covered herein. Such expenses shall not exceed $500,000 in any one policy year.

67.     ATTACHMENT CLAUSE – Please refer to the Participation Page.

_____
 [Authorized Signature]

Plaintiffs 000515

# Endorsement No. 1

## <u>Microorganism Exclusion – Resultant Mold</u>

This policy does not insure any loss, Damage, Time Element, claim, cost, expense or other sum directly or indirectly arising out of or relating to (regardless of whether any other cause or event contributed concurrently or in any sequence):

Fungus, mold, mildew, yeast, mushrooms, spores, toxins, mycotoxins, bacteria or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion shall not apply to any such loss, Damage, Time Element, claim, cost, or expense resulting from mold that is a direct result of an Insured Cause of Loss and is not otherwise excluded by the Policy, provided such loss, Damage, Time Element, claim, cost, or expense is reported to the Company in writing within twelve months from the expiration date of the policy. This clause is subject to a $500,000 per occurrence and in the annual aggregate sublimit.

This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part, for these matters.

All other terms and conditions remain unchanged.

33

Plaintiffs 000516

# SERVICE OF SUIT
# STATE OF Florida

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY**

*To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. This endorsement does not change any other provision of the insurance policy to which it is affixed. This endorsement is a part of this insurance policy and takes effect on the effective date of this insurance policy unless another effective date is shown.*

A. In the event of our failure to pay any amount claimed to be due under this Policy, we agree to submit to the jurisdiction of any court of competent jurisdiction within the United States in which a suit for those amounts may be brought. Nothing in this condition constitutes or should be understood to constitute a waiver of our right to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

B. Service of process in such suit may be made upon:

**Interstate Fire & Casualty Company**

Allianz Global Risks US Insurance Company
General Counsel's Office
225 West Washington Street
Chicago, Illinois 60606

**Independent Specialty Insurance Company**

Jeff Atwater (or his successor in office)
Chief Financial Officer
Department of Financial Services
200 East Gaines Street
Tallahassee, Florida 32399

**Certain Underwriters Lloyds of London**

Mendes & Mount
750 Seventh Avenue
New York, New York 10019-6829

or his or her representative, and that in any suit instituted against us with respect to this Policy, we will abide by the final decision of such court or of any appellate court in the event of an appeal.

VRU-001-0118 Service of Suit (Syndicated)

**Plaintiffs 000517**

C.  To the extent required by the express provisions of any statute of any state, territory, or district of the United States, we hereby designate the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his successor or successors in office as our true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this Policy, and we hereby designate the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

VRU-001-0118 Service of Suit (Syndicated)

**Plaintiffs 000518**

# NOTICE TO POLICYHOLDERS REGARDING THE
# U.S. TREASURY DEPARTMENT'S
# OFFICE OF FOREIGN ASSETS CONTROL

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY**

*To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. All other terms and conditions of this insurance policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown*

No coverage is provided by this notice. You should read your policy and review your declarations page for complete information on the coverages you are provided.

This notice provides information concerning your rights as a policyholder and payments to, from or with the Insured, additional insured, loss payee, or claimant, for insured loss or damage to covered property under this policy. Such payments may be affected by the administration and enforcement of U.S. economic embargoes, trade sanctions, or other directives issued by the Office of Foreign Assets Control ("OFAC") and/or possibly the U.S. Department of State.

OFAC is an office of the Department of the Treasury that administers and enforces sanctions policy under presidential wartime and national emergency powers, as well as authority granted by specific legislation, in order to impose controls on transactions and freeze foreign assets under U.S. jurisdiction. OFAC has identified and listed numerous foreign countries, foreign organizations, foreign agents, terrorist organizations, terrorists, and international narcotics traffickers and other named individuals, group and entities as "Specially Designated Nationals and Blocked Persons." This list and more in-depth information on OFAC is available at the following website: http://www.treas.gov/ofac.

In accordance with OFAC regulations, or any other applicable regulation promulgated by the U.S. Department of State, if it is determined that the Insured, additional insured, loss payee, or claimant has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, we must block or "freeze" property and payment of any funds transfers or transactions and report all blocks to OFAC with ten (10) days. We will not pay a claim, accept premium, or exchange monies or assets of any kind to, from or with individuals or entities, including but not limited to financial institutions, on the Specially Designated National and Blocked Person list. Additionally, we will not defend or provide any other benefits under your policy to, from or with individuals, groups or entities on the Specially Designated National and Blocked Person list. Other limitations on premiums and payments may also apply.

VRU-003-0316 Office of Foreign Assets Control

**Plaintiffs 000519**

# MANDATORY EXCLUSIONS

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY**

*To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. This endorsement does not change any other provision of the insurance policy to which it is affixed. This endorsement is a part of your insurance policy and takes effect on the effective date of your insurance policy unless another effective date is shown.*

The Insurer(s) and/or Company(s) does not insure for actual or alleged loss damage, cost or expense caused directly or indirectly by any of the following. Such loss, damage, cost or expense is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

A. <u>N/A</u>

B. <u>N/A</u>

C. <u>N/A</u>

D. <u>Microorganism</u>
This Policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:

Mold, mildew, fungus, spores or other microorganism of any type, nature or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion D. Microorganism shall not apply if it is determined that mold, mildew, fungus, spores or other microorganisms are the result of loss or damage which has occurred during the policy period and is insured by this policy. Any ensuing loss or damage shall be subject to a per occurrence and annual aggregate limit of $15,000.

VRU-005-0320 Mandatory Exclusions -Modified

**Plaintiffs 000520**

This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part.

E.   N/A

F.   Authorities Exclusion

Fines or penalties incurred or sustained by or imposed on you at the order of any government agency, court or other governmental authority arising from any cause whatsoever, and any seizure or destruction of property by order of any government agency, court or governmental authority. But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Policy.

G.   War and Terrorism Exclusion

(1)  Regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

(a)  war;

(b)  invasion;

(c)  acts of foreign enemies;

(d)  hostilities or warlike operations (whether war be declared or not);

(e)  civil war;

(f)  rebellion;

(g)  revolution, insurrection;

(h)  civil commotion assuming the proportions of or amounting to an uprising; or

(i)  military or usurped power; and

(j)  Terrorism.

(2)  This Policy also excludes covered losses of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to (a) through (j), inclusive, above.

Page **2** of **5**

VRU-005-0320 Mandatory Exclusions- Modified

**Plaintiffs 000521**

(3) If we allege that by reason of this exclusion F, any covered losses are not covered by this Policy, the burden of proving the contrary shall be upon you to demonstrate that coverage under this insurance applies.

(4) For the purpose of this exclusion F, "Terrorism" means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

(5) Application of Other Exclusions

The terms and limitations of any terrorism exclusions, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any covered loss which would otherwise be excluded under this Policy.

## H. Electronic Data Exclusion

(1) This Policy does not insure loss, damage, destruction, distortion, erasure, corruption, alteration, loss of use, reduction in functionality, cost, or expense resulting from "Computer Virus."

"Computer Virus" means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. "Computer Virus" includes, but is not limited to, "Trojan Horses," "worms" and "time or logic bombs."

(2) However, in the event that a "Defined Cause of Loss" results from any of the matters described in paragraph (1) above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such Defined Cause of Loss.

(3) As used in this exclusion H. Electronic Data Exclusion, "Defined Cause of Loss" means fire, lightning, Explosion, Windstorm or Hail, Smoke, Aircraft or Vehicle Impact, Riot, Strike or Civil Commotion, Vandalism and Malicious Mischief, or Leakage from Fire Equipment.

## I. Electronic Date Recognition Exclusion

This Policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

VRU-005-0320 Mandatory Exclusions- Modified

**Plaintiffs 000522**

(1) the calculations, comparison, differentiation, sequencing or processing of data involving any date change, including leap year calculations, by any computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not; or

(2) any change, alteration or modification involving any other date change, including leap year calculations, to any such computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not.

This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

J. Cyber Exclusion

This policy does not cover Damage or Consequential loss directly or indirectly caused by, consisting of, or arising from:

(1) Any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility,

(2) Any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set,

(3) Loss of use or functionality whether partial or entire of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing liability or failure of the Insured to conduct business.

This Exclusion J. Cyber Exclusion shall not exclude subsequent damage or Consequential loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean: Fire, Lightning, Earthquake, Explosion, Falling Aircraft, Flood, Smoke, Vehicle Impact, Windstorm, Hail or Accident to an Object.

Such Damage or Consequential loss described in Exclusion J Cyber Exclusion. (1), (2), or (3) above is excluded regardless of any other cause that contributed concurrently or in any other sequence.

K. Exclusion of Loss Due to Virus or Bacteria

(1) The exclusion set forth in subparagraph (2) below, applies to all coverage under all forms and endorsements that comprise this policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements relating to time element coverages.

VRU-005-0320 Mandatory Exclusions- Modified

Plaintiffs 000523

(2) This policy will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from fungus, mold(s), mildew, spores or yeast. Such loss or damage is addressed in a separate exclusion in this policy and Exclusion D. Microorganism, above.

(1) With respect to any loss or damage subject to the exclusion in subparagraph (2) above, such exclusion supersedes any exclusion relating to pollutants or contaminants.

(2) The terms of the exclusion in Exclusion K. subparagraph (2) above, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded by this policy.

All other terms and conditions, insured coverage and exclusions of this insurance Policy remain unchanged, including applicable limits, sublimits and deductibles, and apply in full force and effect to the coverage provided by this Policy.

VRU-005-0320 Mandatory Exclusions- Modified

**Plaintiffs 000524**

# MINIMUM EARNED AND SPECIAL
# CATASTROPHE MINIMUM EARNED PREMIUM

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY**

*To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. This endorsement does not change any other provision of the insurance policy to which it is affixed. This endorsement is a part of this insurance policy and takes effect on the effective date of this insurance policy unless another effective date is shown.*

1. In the event of cancellation of this Policy or reduction of coverage by the Insured, a minimum premium of 35% of the original Policy premium shall become earned; any conditions of the Policy to the contrary notwithstanding.

   Failure of the Insured to make timely payment of premium shall be considered a request by the Insured for the Insurer(s) and/or Company(s) to cancel. In the event of such cancellation by the Insurer(s) and/or Company(s) for non-payment of premium, the minimum premium shall be due and payable; provided, however, such non-payment cancellation shall be rescinded if the Insured remits the full premium due within 10 days of receiving it.

2. In the event of any other cancellation by the Insurer(s) and/or Company(s), the earned premium shall be computed pro rata, subject to the minimum premium.

3. If this Policy is canceled by the Insured or if the amount of insurance on any Tier 1 location is reduced, and no coverage existed from June 1 to November 30, the return premium is 90% of the pro-rata subject to any minimum earned premium stipulations in the Policy.

4. If coverage existed on any Tier 1 location at any time during the period from June 1 to November 30, the amount of premium returned will be a percentage of the total premium determined as follows:

| Days Policy in Force | Unearned Factor |
|---|---|
| 1 – 180 | 20% |
| 181 – 210 | 15% |
| 211 – 240 | 10% |
| 241 – 270 | 7.50% |
| 271 – 300 | 5% |
| 301 – 330 | 2.50% |
| 331 – 365 | 0% |

VRU-006-0316 Minimum Earned and Special Catastrophe Minimum Earned Premium

**Plaintiffs 000525**

5.  If Tier 1 locations are added during the term of the Policy, the rate will be calculated as 100% of the annual rate, less the Unearned Factor in Item 4 above.

6.  The provisions of this endorsement are in addition to and do not alter any minimum earned premium provisions in the Policy or its attachments.

7.  All reference herein to "Tier I", "Tier I Windstorm" or similar "Tier I" references, shall be defined as within the Property Coverage Form.

All other terms and conditions, insured coverage and exclusions of this insurance Policy remain unchanged, including applicable limits, sublimits and deductibles, and apply in full force and effect to the coverage provided by this Policy.

VRU-006-0316 Minimum Earned and Special Catastrophe Minimum Earned Premium

**Plaintiffs 000526**

# CLAIMS REPORTING INFORMATION NOTICE

### THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

*To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. This endorsement does not change any other provision of the insurance policy to which it is affixed. This endorsement is a part of this insurance policy and takes effect on the effective date of this insurance policy unless another effective date is shown.*

To All Velocity Risk Underwriters, LLC ("VRU") Insured(s):

All claims shall be reported to VRU Claims (email is preferable for quickest response):

(1)    **E-Mail: business.claims@velocityrisk.com**

Or

(2)    Phone: 1-844-VRU-CLMS (1-844-878-2567)

and/or its  adjusters assigned to the respective claim(s).   The costs of such adjustments shall be borne by the Insurer(s) and/or Company(s) in proportion to its pro-rata participation in this Policy.

Many occurrences result in damages which require immediate attention in order to prevent further loss. Please contact VRU Claims at the e-mail address listed above as soon as possible to report the claim. Please try to have the following information available:

- Insured name and policy number
- Exact location of the occurrence
- Detailed description of the occurrence
- Type of loss
- A contact number for someone at the location of the occurrence

VRU-011-0516 Claims Reporting Information Notice (Syndicated)

Plaintiffs 000527

# ALLOCATION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY**

*To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. This endorsement does not change any other provision of the insurance policy to which it is affixed. This endorsement is a part of this insurance policy and takes effect on the effective date of this insurance policy unless another effective date is shown.*

In consideration of the premium charged for this Policy as outlined by the Insurer(s) and/or Company(s) in the declarations, the applicable participation of each Insurer(s) and/or Company(s) as a percentage (% ) of the limit of liability shown in the Policy is as follows:

| Perils (As Per | Insurer | Contract | Policy Number | Participation (as a %) |
|---|---|---|---|---|
| ACC | Certain Underwriters at Lloyds (Consortium #9226) | B6121VEL2020 | VPC-CN-0000328-04 | 32.00% |
| ACC | Interstate Fire & Casualty Company | IFC2020 | VRX-CN-0000328-04 | 52.00% |
| ACC | Independent Specialty Insurance Company | ISIC2020 | VUX-CN-0000328-04 | 16.00% |

The contracts herein cover mutually exclusive perils. The maximum limit of liability is not to exceed the per occurrence participation stated in the Policy, regardless of whether multiple perils and multiple contracts are involved. Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this Policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security. Covered perils shall be defined by the applicable forms attached to this Policy.

VRU-012-0119 Allocation Endorsement (Syndicated)

**Plaintiffs 000528**

Symbols Used Herein:

| Peril | Symbol | Insurer | Symbol |
|---|---|---|---|
| All Covered Causes of Loss excluding Equipment Breakdown and Cyber Coverage | ACC | Independent Specialty Insurance Company | ISIC |
| Equipment Breakdown | EBD | Interstate Fire & Casualty Company | IFC |
| Cyber Coverage | CC | Certain Underwriters at Lloyd's, London | Lloyds |

The Insurer's and/or Company's liability under this Policy for covered losses is several and not joint with other insurers party to this contract. The Insurer and/or Company is liable only for the proportion of liability it has underwritten. The Insurer and/or Company is not jointly liable for the proportion of liability underwritten by any other insurer. Nor is the Insurer and/or Company otherwise responsible for any liability of any other insurer that may underwrite this Policy.

The Insurer's and/or Company's liability may not be increased in the event that any other insurer or other party to this contract who for any reason does not satisfy all or part of its obligations.

This contract shall be constructed as a separate contract between the Insured and each of the Insurers. This evidence of coverage consists of separate sections of a composite insurance for all Underwriters at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified above. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriters at Lloyd's with any other insurance company(ies).

All other terms and conditions, insured coverage and exclusions of this insurance Policy including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this insurance Policy.

VRU-012-0119 Allocation Endorsement (Syndicated)

**Plaintiffs 000529**

## NOTICE TO POLICYHOLDERS REGARDING THE
## U.S. Terrorism Risk Insurance Act of 2002 As Amended
## Not Purchased Clause

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY**

*To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. This endorsement does not change any other provision of the insurance policy to which it is affixed. This endorsement is a part of this insurance policy and takes effect on the effective date of this insurance policy unless another effective date is shown.*

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, as amended ("TRIA"), that you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, **as defined in Section 102(1) of the Act, as amended:**  The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.  Any coverage you purchase for "acts of terrorism" shall expire at 12:00 midnight December 31, 2027, the date on which the TRIA Program is scheduled to terminate, or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates.

YOU SHOULD KNOW THAT COVERAGE PROVIDED BY THIS POLICY FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM IS PARTIALLY REIMBURSED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THIS FORMULA, THE UNITED STATES PAYS 80% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURER(S) PROVIDING THE COVERAGE. YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A USD100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS USD100 BILLION.  IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED USD100 BILLION, YOUR COVERAGE MAY BE REDUCED.

It is hereby noted that the Insurer(s) have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

If you have any questions about this or any other insurance matter, please contact your agent or broker representing Interstate Fire & Casualty Company, Independent Specialty Insurance Company and Certain Underwriters at Lloyd's.

Page **1** of **1**

**Plaintiffs 000530**

# SEVERAL LIABILITY CLAUSE

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY**

*To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. This endorsement does not change any other provision of the insurance policy to which it is affixed. This endorsement is a part of this insurance policy and takes effect on the effective date of this insurance policy unless another effective date is shown.*

The liability of an insurer under this contract is several and not joint with other insurers party to this contract.  An insurer is liable only for the proportion of liability it has underwritten.  An insurer is not jointly liable for the proportion of liability underwritten by any other insurer.  Nor is an insurer otherwise responsible for any liability of any other insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by an insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown in this contract.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is an insurer.  Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together).  The liability of each member of the syndicate is several and not joint with other members.  A member is liable only for that member's proportion.  A member is not jointly liable for any other member's proportion.  Nor is any member otherwise responsible for any liability of any other insurer that may underwrite this contract.  The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA.  The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

All other terms and conditions, insured coverage and exclusions of this insurance
Policy remain unchanged, including applicable limits, sublimits and deductibles,
and apply in full force and effect to the coverage provided by this Policy.

VRU-067-1219 SEVERAL LIABILITY CLAUSE

LMA 5096 (Combined Certificate)
7 MARCH 2008

Plaintiffs 000531

# TOTAL OR CONSTRUCTIVE LOSS EARNED PREMIUM CONDITION

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY**

*To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. This endorsement does not change any other provision of the insurance policy to which it is affixed. This endorsement is a part of this insurance policy and takes effect on the effective date of this insurance policy unless another effective date is shown.*

A.) It is hereby understood and agreed that in the event of a covered Actual Total Loss or Constructive Total Loss of any item of property insured during the Period of Insurance specified in the Statement of Values on File with this Company, the total premium for this Policy shall be considered to be fully earned at the time of the loss and no return premium will be due.

B.) This endorsement shall not apply where State Law or any Premium Finance Agreement would be violated.

Definition: "Constructive Total Loss" shall be defined as a property damage loss that is treated as an Actual Total Loss where the cost of repair would exceed the Limit of Liability shown in the Schedule on File with this Company or the actual cash value (whichever is the lesser amount).

"Actual Total Loss" shall mean a loss that occurs when the insured property is totally destroyed or damaged in such a way that it can be neither recovered nor repaired for further use.

VRU-057-0718  Total or Constructive Loss Earned Premium Condition

**Plaintiffs 000532**

# CERTAIN UNDERWRITERS AT LLOYD'S SYNDICATE LIST

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY**

*To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. This endorsement does not change any other provision of the insurance policy to which it is affixed. This endorsement is a part of this insurance policy and takes effect on the effective date of this insurance policy unless another effective date is shown.*

If Certain Underwriters at Lloyd's are listed as security on the Allocation Endorsement attached to the policy, the list of syndicates is shown below:

| | |
|---|---|
| Account Number: | 2017-9000328-04 |
| UMR: | B6121VEL2020 |
| Policy Number: | VPC-CN-0000328-04 |

| Consortium Number | Consortium Name |
|---|---|
| 9226 | Velocity Property Consortium* |

\*Velocity Property Consortium is an LPSO registered consortium – registered with Lloyd's under the number 9226 , rather than a Lloyd's syndicate in its own right. The security for the consortium is 76.19% Syndicate 2357 and 23.81% Syndicate 1458.

All other terms and conditions, insured coverage and exclusions of this insurance Policy remain unchanged, including applicable limits, sublimits and deductibles, and apply in full force and effect to the coverage provided by this Policy.

VRU-055-0120 Certain Underwriters at Lloyds Syndicate List

**Plaintiffs 000533**

# PROPERTY CYBER AND DATA EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY**

*To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. This endorsement does not change any other provision of the insurance policy to which it is affixed. This endorsement is a part of this insurance policy and takes effect on the effective date of this insurance policy unless another effective date is shown.*

1   Notwithstanding any provision to the contrary within this Policy or any endorsement thereto this Policy excludes any:

1.1   Cyber Loss;

1.2   loss, damage, liability, claim, cost, expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any loss of use, reduction in functionality, repair, replacement, restoration or reproduction of any Data, including any amount pertaining to the value of such Data;

regardless of any other cause or event contributing concurrently or in any other sequence thereto.

2   In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

3   This endorsement supersedes and, if in conflict with any other wording in the Policy or any endorsement thereto having a bearing on Cyber Loss or Data, replaces that wording.

Definitions

4   Cyber Loss means any loss, damage, liability, claim, cost or expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any Cyber Act or Cyber Incident including, but not limited to, any action taken in controlling, preventing, suppressing or remediating any Cyber Act or Cyber Incident.

5   Cyber Act means an unauthorised, malicious or criminal act or series of related unauthorised, malicious or criminal acts, regardless of time and place, or the threat or hoax thereof involving access to, processing of, use of or operation of any Computer System.

**Plaintiffs 000534**

6    Cyber Incident means:

6.1    any error or omission or series of related errors or omissions involving access to, processing of, use of or operation of any Computer System; or

6.2    any partial or total unavailability or failure or series of related partial or total unavailability or failures to access, process, use or operate any Computer System.

7    Computer System means:

7.1    any computer, hardware, software, communications system, electronic device (including, but not limited to, smart phone, laptop, tablet, wearable device), server, cloud or microcontroller including any similar system or any configuration of the aforementioned and including any associated input, output, data storage device, networking equipment or back up facility,

owned or operated by the Insured or any other party.

8    Data means information, facts, concepts, code or any other information of any kind that is recorded or transmitted in a form to be used, accessed, processed, transmitted or stored by a Computer System.

All other terms and conditions, insured coverage and exclusions of this insurance Policy remain unchanged, including applicable limits, sublimits and deductibles, and apply in full force and effect to the coverage provided by this Policy.

VRU-066-1219 PROPERTY CYBER AND DATA EXCLUSION

LMA 5401
11 NOVEMBER 2019

**Plaintiffs 000535**



20 Burton Hills Blvd Suite 350
Nashville, TN 37215

phone 1 615 942 0740
fax 1 615 454 9839

www.velocityrisk.com

I certify the provided are the policy documents for
Portofino Master Homeowners Association at Pensacola
Beach, Inc.  effective 4/1/2020 to 4/1/2021

7/7/2022                     Satyam Aggarwal

 Date                        Authorized Representative

# FLORIDA POLICYHOLDER NOTICE
# 626.924 (2)

This policy is issued by a nonadmitted or surplus lines insurer.  In order to comply with Florida Statutes, the following notice is given:

## SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

PN-01US 04-10                              Page 1 of 1

**Plaintiffs 000537**

# COMMERCIAL PROPERTY POLICY DECLARATIONS

**JAMES RIVER INSURANCE COMPANY**  **Policy Number:**
**6641 WEST BROAD STREET, SUITE 300**  **00090459-1**
**RICHMOND, VA 23230**

1. **NAMED INSURED AND MAILING ADDRESS:**  **PRODUCER:   10295**

   Portofino Master Homeowners Association Inc  AmWINS Brokerage of Georgia (Atlanta)
   10 Portofino Drive  3630 Peachtree Road, NE Suite 1700
   Gulf Breeze, FL 32561  Atlanta, GA 30326-6164

2. **POLICY PERIOD:**  From 04/01/2020 to 04/01/2021 12:01 A.M. Standard Time, at the location of the property involved.

   IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL OF THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

3. **DESCRIPTION OF COVERED PROPERTY:** Real Property, Business Personal Property and Business Income, as per schedule of values on file with this Company.

4. **PERILS:**  All Risk of Direct Physical Loss excluding Earthquake and Flood; excluding Storm Surge and ensuing Flood as a result of a Named Windstorm Event.

5. **LOCATION OF COVERED PROPERTY:**  As per schedule of values on file with this Company.

6. **LIMIT OF LIABILITY:**  $12,500,000 part of $50,000,000 excess of $50,000,000 per occurrence excluding Earthquake and Flood; excluding Storm Surge and ensuing Flood as a result of a Named Windstorm Event.

7. **DEDUCTIBLE AMOUNT:**

8. **TOTAL POLICY PREMIUM:**

9. **MINIMUM EARNED PREMIUM:**  See XP0006US-0506 – Minimum Earned Premium

10. **TAXES & FEES APPLICABLE:**  Company Fee:

11. **MORTGAGEE CLAUSE:**  LOSS, IF ANY, SHALL BE PAYABLE TO:

12. **FORMS APPLICABLE TO COVERAGES:**

**See attached Schedule A – Schedule of Forms.**

**Plaintiffs 000538**

# SCHEDULE A – Excess Property

FORMS AND ENDORSEMENTS THAT APPLY TO THIS POLICY:

**POLICY NO.  00090459-1**

| FORM NUMBER | DESCRIPTION |
|---|---|
| PN-01US-0410 | Florida Policyholder Notice |
| XP0002US-0403 | Commercial Property Policy Declarations |
| XP0005US-0403 | Schedule A-Excess Property |
| XPBROKER-0815 | Broker Manuscript Form |
| XP0006US-0506 | Minimum Earned Premium |
| XP0050US-0208 | Common Policy Conditions (Property) |
| XP0052US-0907 | Conflicting Provisions Clause |
| SP2303B-1209 | Occurrence Limit of Liability Endorsement - Blanket |
| SP2301US-1110 | Electronic Data Clause |
| SP2304US-0403 | Property Pollution Exclusion |
| AP5027R-0115 | Rejection of Coverage for Certified Acts of Terrorism Coverage |
| XP5005US-0115 | Exclusion - Terrorism |
| XP5006US-0115 | Exclusion of Certified Acts of Terrorism |
| IL1201-0403 | Policy Changes |
| ILP001-0104 | US Treasury Departments Office of Foreign Assets Control (OFAC) Advisory Notice to Policyholders |
| AP0100US-0403 | Privacy Policy |
| XP2315US-1117 | Notice of Loss, Damage or Occurrence |



# BROKER MANUSCRIPT FORM

## COVER PAGE

This document contains the following files:

| # | Description | Pages |
|---|-------------|-------|
| 1 | Portofino Master Homeowners Association – Policy Contract.pdf | 33 |

## PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies) , do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy.

Provided that:

1.      The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2.      The liability of each of the Insurers shall not exceed the Participation Limit set against its name.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurer | Policy Number | Participation | Authorized Signature |
|---|---|---|---|
| Westchester Surplus Lines Insurance Company | D38064666 004 | $5,000,000 part of $15,000,000 Primary | |
| Endurance American Specialty Insurance Company | ESP30000298003 | $5,500,000 part of $15,000,000 Primary | |
| Everest Indemnity Company | CA3P005801201 | $3,000,000 part of $15,000,000 Primary | |
| Princeton Excess Surplus Lines Insurance Company | 3VA3PP0000251-02 | $1,500,000 part of $15,000,000 Primary | |
| Arch Specialty Insurance Company | ESP1002326-00 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Axis Surplus Insurance Company | EAF645360-20 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Colony Insurance Company | XP190091-1 | $6,250,000 part of $25,000,000 excess of $25,000,000 | |
| Evanston Insurance Company | MKLV11XP007995 | $7,500,000 part of $25,000,000 excess of $25,000,000 | |
| Aspen Specialty Insurance Company | PX005LG20 | $5,000,000 part of $25,000,000 excess of $25,000,000 | |

1

Plaintiffs 000541

| | | | |
|---|---|---|---|
| Independent Specialty Insurance Company | VUX-CN-0000328-04 | $8,689,317 part of $217,232,927 excess of $25,000,000 | |
| Interstate Fire & Casualty Company | VRX-CN-0000328-04 | $28,240,281 part of $217,232,927 excess of $25,000,000 | |
| Lloyd's of London | VPC-CN-0000328-04 | $17,378,634 part of $217,232,927 excess of $25,000,000 | |
| James River Insurance Company | 00090459-1 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Maxum Indemnity Company | MSP-6012522-11 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Landmark American Insurance Company | LHD912400 | $48,058,232 part of $192,232,927 excess of $50,000,000 | |
| Homeland Insurance Company of New York | 795012091 | $50,000,000 part of $100,000,000 excess of $200,000,000 | |
| Everest Indemnity Company | CA3X001322201 | $21,116,464 part of $42,232,927 excess of $200,000,000 | |

2

## MASTER PROPERTY POLICY

1.    NAMED INSURED – "Named Insured" means **Portofino Master Homeowners Association at Pensacola Beach, Inc.; Portofino Tower One Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Two Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Three Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Four Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Five Homeowners Association at Pensacola Beach, Inc.** means the First Named Insured and any entity in which the First Named Insured owns an interest of more than 50 percent, during the Policy Period, controls during the Policy Period, or has the responsibility of placing the insurance provided by this Policy during the Policy Period. No entity is covered under this Policy unless the Company has received identifying information for such entity during the application or submission process, except if such entity is covered under miscellaneous unnamed insured locations or newly acquired property, or if such entity is added by endorsement.

Notwithstanding any provision to the contrary in this Policy, if other valid and collectible insurance is available to any entity covered by this Policy solely because of the ownership, control, or responsibility to purchase insurance by the First Named Insured, this insurance will be excess with regard to such other insurance whether contingent, primary, excess or any other basis.

2.    TERM OF INSURANCE In consideration of a $ annual premium, this policy attaches and covers for a period of one year from April 1, 2020 to April 1, 2021, beginning and ending at 12:01 A.M. standard time, at the location of the property involved.

3.    PARTICIPATION – Please refer to the Participation Page.

4.    LIMIT OF LIABILITY - This Company shall not be liable for more than its proportion of $242,232,927 for any one occurrence.

5.    SUBLIMIT(S) OF LIABILITY) - This Company shall not be liable for more than its proportion of the following sublimits.  Sublimits are part of and not in addition to the overall Limit of Liability and apply on a per occurrence basis unless otherwise noted:

    a)    $15,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Flood.

    b)    $25,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Earthquake.

    c)    $1,000,000 per occurrence as respects Accounts Receivable

    d)    $500,000 per occurrence as respects Arson Reward

**Plaintiffs 000543**

e)      $1,000,000 per occurrence as respects Contingent Time Element, Attraction Properties are excluded

f)      $1,000,000 per occurrence as respects Consequential Loss

g)      $10,000,000 per occurrence as respects Course of Construction Including Soft Costs

h)      Included per occurrence as respects Demolition and Increased Cost of Construction Coverage A

i)      $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage B

j)      $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage C

k)      $1,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage D

l)      $10,000,000 per occurrence as respects Debris Removal

m)      $10,000,000 per occurrence as respects Errors and Omissions

n)      25% of the Adjusted Loss Maximum, $10,000,000 per occurrence as respects Extra Expense

o)      $5,000,000 per occurrence as respects Expediting Expense

p)      200,000,000 per occurrence as respects Equipment Breakdown

q)      $1,000,000 per occurrence as respects Contract Penalty

r)      $1,000,000 per occurrence as respects Fire Brigade Charges and Extinguishing Expenses

s)      $50,000 per occurrence as respects Inland Transit

t)      The lesser of 30 days of $2,500,000 per occurrence as respects Ingress/Egress

u)      $5,000,000 per occurrence as respects Miscellaneous Unnamed Locations

v)      $5,000,000 per occurrence as respects Newly Acquired Property (90 days; if not reported within 90 days the coverage ceases)

w)      $1,000,000 per occurrence as respects Leasehold Interest

x)      $500,000 per occurrence as respects Lost Master/Key Card

y)      $5,000,000 per occurrence as respects Rental Value/Rental Income

z)      Excluded per occurrence as respects Research and Development

aa)      $1,000,000 per occurrence as respects Royalties

bb)      $2,500,000 per occurrence as respects Service Interruption.  Property Damage and Time Element Combined.

cc)      $1,000,000 per occurrence as respects Valuable Papers and Records

dd)      The lesser of 30 days of $2,500,000 per occurrence as respects Civil or Military Authority

ee)      $3,000,000 per occurrence as respects Landscaping, subject to a $25,000 maximum per item

ff)      $1,000,000 per occurrence as respects Fine Arts, subject to a $25,000 maximum per item

The amount of loss from any one occurrence for which this policy is excess, shall be determined by the combined loss, damage or expense as insured under the primary policy.  In the event of loss or damage involving more than one coverage or peril, The Limits of Liability of the underlying policies shall first

4

apply to the coverage(s) or peril(s) not insured by this policy, and the remainder, if any to the coverages(s) or peril(s) as provided hereunder. Upon erosion or exhaustion of the Limits of Liability of the underlying policies, this policy shall then be liable for the loss uncollected from the coverage(s) or perils(s) insured hereunder, subject to the Limit of Liability specified herein.  In the event of reduction or exhaustion of the aggregate limit(s) designated in the underlying policy(ies), it is hereby understood and agreed that such insurance as is afforded by this policy shall apply in excess of the reduced or exhausted underlying limit(s).  The insured maintains the right to allocate and/or apply coverages, interests and/or perils, as insured in the primary and/or excess policies.

6.    DEDUCTIBLE CLAUSE - The Company will adjust all losses, damages or expenses arising out of any one occurrence as one loss. The Company will deduct the following from such loss:

**$50,000** per occurrence for all perils including earthquake sprinkler leakage, and the backup of sewers and drains, except:

WAITING PERIOD:

With respect to all Time Element coverages, coverage is provided by this policy only if the period of interruption of the Insured's business exceeds 24 hours. Then Time Element coverage will apply excess of the appropriate policy deductible.

EARTHQUAKE:

As respects loss or damage to property resulting from the peril of Earthquake, all loss, damage or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deductible the sum of $50,000.  This deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

FLOOD:

As respects loss or damage to property resulting from the peril of Flood, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100 year flooding, as defined by the Federal Emergency Management Agency, all loss arising out of any one occurrence shall be adjusted as one loss and from the loss shall be deducted the maximum amount recoverable under the National Flood Insurance Program for the Real or Personal Property at each Building, whether or not such coverage is purchased or maintained.

In addition, the following Deductible will apply to property not eligible and coverages not available under the National Flood Insurance Program that are covered under this Policy and any difference in valuation between policies: $100,000 per Occurrence.

The determination of whether a property is in whole or in part subject to the 100 Year Flood Zone shall be at the inception of the policy and not at the time of loss.

Plaintiffs 000545

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

NAMED STORM:

With respect to loss or damage to property in Tier 1 Counties resulting from the period of Named Windstorm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm), the deductible shall be 2% of such unit of insurance at each location in accordance with policy valuation at the time of loss. A minimum $100,000 each occurrence shall apply.

With respect to any other named storm loss or damage, the deductible shall be **$50,000** any one occurrence.

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

ALL OTHER WIND and HAIL:
As respects loss or damage to property resulting from the peril of All Other Wind, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss. The Company will deduct the following from such loss:

**$50,000**

Definition of 'Unit of Insurance':
   a) Each separate building or structure
   b) Contents in each separate building or structure
   c) Property in the yard of each separate building or structure
   d) Annual Business Interruption value applying to each separate building or structure.
   e) Each Other Property item as listed in the Statement of Values. If values are not listed separately, the value is included in the building value.

Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence. If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the insured shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s), notwithstanding the above reference to two or more deductibles.

The deductible amounts specified above shall not apply to general average contributions and salvage charges.

7.   LOSS PAYABLE - Loss, if any, shall be adjusted with and payable to the Insured, or as directed by them.

**Plaintiffs 000546**

8.     TERRITORY - This policy covers anywhere in the United States of America and its territories and possessions including coastal and inland waterways and while in due course of transit therein or thereto.

9.     PROPERTY COVERED - Except as hereinafter excluded, this policy covers the interest of the Insured in all real and personal property owned, used, leased or intended for use by the Insured or in which the Insured may have an insurable interest, or for which the Insured may be responsible for the insurance, or real or personal property hereafter constructed, erected, installed, or acquired including while in course of construction, erection, installation, and assembly including Improvements and Betterments. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.  This policy is extended to include:

a)     The interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by written contract for such property, including the cost to defend any allegations of liability for loss or damage to such property.

b)     At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured.

c)     Contractors' and/or subcontractors' (of any tier) and/or vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract.

10.    PROPERTY EXCLUDED - This policy does not cover loss or damage to:

a)     Money and securities;

b)     Land, land values, except as insured under the "Pollutant Cleanup of Land and Water" clause.  This exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements if land improvements have been scheduled on the Schedule of Values on file with the company.  Land improvements as described hereunder include, but are not limited to any alteration to the natural condition of the land by grading, landscaping, excavation, earthen dikes or dams, as well as additions to land such as pavements, roadways or similar works;

c)     Water; except water which is normally contained within any type of tank, piping system or other process equipment;

d)     Growing crops, standing timber, and live animals;

e)     Watercraft; aircraft and motor vehicles licensed for highway use;

f)     Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

g)     Underground mines or mine shafts or any property within such mine or shaft;

Plaintiffs 000547

h)     Offshore property; unless reported on the Schedule of Values on file with the company.

i)     Transmission and Distribution Lines beyond 1,000 feet of Insured Premises;

j)     currency; evidence of debt; notes

k)     Turbines and satellites;

l)     docks, piers, and wharves; bridges, roadways, streets, walks or any other paved surfaces; dams or dikes; railroad rolling stock; off-shore drilling rigs or platforms; underground mines, wells, caverns including property contained therein unless reported on the Schedule of Values on file with the company.

11.     **PROPERTY VALUATION** - The basis of loss adjustment shall be as follows:

a)     Valuable Papers & Records/Electronic Data Processing Media : the cost to repair or replace the property with other of like kind and quality including the cost of labor, service or supplies consumed in reconstructing, reproducing, recreating, transcribing or copying information; or, if not so replaced, the value blank.

b)     Raw materials and supplies: the replacement cost new.

c)     Stock in process: The value of raw materials plus labor expended plus the proper proportion of overhead charges.

d)     Finished stock and other merchandise for sale: The regular cash selling price less all discounts and charges to which such property would have been subject had no loss occurred.

e)     Real and personal property of others for which the Insured is liable: A valuation consistent with the liability of the Insured but only to the extent that such money is necessarily expended by the Insured.

f)     Electronic data processing equipment, production machinery & equipment: The cost to repair or replace new with like kind and quality. In addition, the Insured may elect to replace such equipment with equipment having technological advances and/or representing an improvement in function and/or forming part of a program of system enhancement and/or more consistent with the Insured's technology strategy (without any reduction or offset for betterment) provided that such replacement can be accomplished without increasing the Insurer's liability.

g)     Fine arts, at original cost to the Insured, per schedule, latest appraised value or current market value, all at the Insured's option.

h)     Other property not otherwise provided for; at replacement cost new without deduction for depreciation. If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:

Plaintiffs 000548

    i)       The repairs, replacement or reinstatement must be executed with due diligence and dispatch.

    ii)      This Company's liability for loss or damage on a replacement cost basis shall not exceed the lesser of the replacement cost new of the property or any part thereof identical with such property intended for the same occupancy and use, including normal and customary profit and overhead even if the work is performed by the Insured; or the amount actually and necessarily expended in repairing or replacing said property or any part thereof including normal and customary profit and overhead even if the work is performed by the Insured.

12.    BUSINESS INTERRUPTION - This policy shall cover the loss resulting from necessary interruption of business conducted by the Insured including all interdependent loss of earnings between or among companies owned or operated by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

    a)     In the event of such loss, damage or destruction this Company shall be liable for the ACTUAL LOSS SUSTAINED by the insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business. Due consideration shall be given to the continuation of normal charges and expenses including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately before the loss. For the purposes of this insurance, "Gross Earnings" are defined as the sum of:

    i)       Net sales value of production from manufacturing operations, and net sales from Merchandising or Non-Manufacturing operations; and

    ii)      Other earnings derived from operations of the business,

              LESS THE COST OF:

    iii)     Raw Stock from which such production is derived;

    iv)     Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the services(s) sold by the Insured;

    v)      Merchandise sold, including packaging materials therefor; and

    vi)     Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

Plaintiffs 000549

b)  In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the period of restoration, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including ordinary payroll, directly attributable to such research and development activities.

c)  Resumption of Operations: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business:

i)  by a complete or partial resumption of operation at a location owned by the same entity suffering the loss, whether damaged or not; or

ii)  by making use of available stock, merchandise, or other property;

such reduction shall be taken into account in arriving at the amount of loss hereunder.

d)  EXPERIENCE OF THE BUSINESS - In determining the amount of gross earnings, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

e)  As respects coverage provided under the Gross Earnings clause of this policy, the insurer shall not be liable for any loss resulting from loss or damage to finished stock nor for the time required to reproduce said finished stock.

13.  Extra Expense - This policy shall cover the necessary extra expense, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

a)  The term "Extra Expense" wherever used in this Policy, is defined as the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally have been incurred to conduct the business during the same period had no loss or damage occurred.

Plaintiffs 000550

b)      In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities, this policy shall cover the actual loss sustained of the extra expenses as defined herein directly attributable to the interruption of such research and development activities.

c)      As soon as practicable the Insured shall resume normal operations of the business and shall dispense with such extra expense.

14.    This policy is extended to cover expenses as are necessarily incurred for the purpose of reducing any loss under this policy; however, such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

15.    SOFT COSTS - This policy shall cover soft costs, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to property under construction as covered herein.

a)      The term "Soft Costs" shall include:

i)      Additional interest costs on money used to finance construction or repair;
ii)     Additional real estate and property taxes incurred for the period of time that construction extends beyond the projected completion date;
iii)    Additional legal and accounting fees; and
iv)     Additional advertising and promotional expenses which become necessary as a result of an insured loss.

b)      This company shall pay soft costs incurred from the date that the building, structure or improvement would have been completed had no physical damage occurred until such time that it is completed.  As soon as practicable after any loss, the Insured shall utilize every available means to reduce the amount of loss including:

i)      partial or complete resumption of construction, business or operations;
ii)     making use of materials, equipment, supplies, or other property at the Insured's premises or elsewhere; or
iii)    making use of substitute facilities or services where practical;

such reduction will be taken into account in arriving at the amount of such loss.

16.    Rental Value/Rental Income - This policy shall cover the actual loss sustained by the Insured resulting directly from the necessary untenability caused by direct

11

physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as covered herein.  Loss settlement shall not exceed the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenability.

a)   If the Insured is the lessor, for the purposes of this insurance, "rental value" is defined as the sum of:

    i)   the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the insured, and

    ii)   the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

    iii)   the fair rental value of any portion of said property which is occupied by the Insured.

b)   If the Insured is the lessee, rental value shall be the determined rental which the Insured is obligated to pay (including ground rents, accrued charges, real estate taxes and interest if the Insured shall be liable therefor) less such charges and expenses as do not necessarily continue.

c)   Experience of the Business - In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

d)   With respect to buildings or structures leased or rented by the Insured, this policy will serve as rental income insurance in those situations where the insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord.  This policy will respond for rental expenses incurred by the Insured in excess of the expenses which would have been incurred had a leased or rented premises not been damaged or destroyed by any peril covered under this policy. Such coverage will apply for all additional expenses incurred during the period of untenability or if the lease cannot be terminated until its expiration.

17.   Royalties - This policy shall cover the loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to direct physical loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the other party.

12

Plaintiffs 000552

a)    Any loss hereunder shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED to such income referred to above, which would have been earned had no loss occurred.

b)    Resumption of Operations:  The Insured shall influence, to the extent possible, the party with whom the agreement described above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Company.

c)    Experience of the Business:  In determining the amount of income derived from the agreements(s) described above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

18.    Leasehold Interest - This policy covers the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

a)    the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

b)    improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of this policy;

c)    the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located; and "Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located. The "Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

**Plaintiffs 000553**

d)      The "Interest of the Insured as Lessee" is defined as:

   i)      the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

   ii)     the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

e)      The "Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is cancelled by the lessee, to the extent not covered under any other section of this policy.

f)      "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "Interest of the Insured as Lessee".

g)      This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

19.   Loss Provisions Applicable to Time Element Coverage - The "Period of Indemnity" is defined as the length of time for which loss may be claimed, and shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy, subject to the following provisions:

a)      The Period of Indemnity shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged.

b)      With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly the Period of Restoration shall be determined as provided above but such determined length of time shall be applied, and the loss hereunder calculated from the date that business operations would have begun had no damage or destruction occurred.

c)      Extended Period of Indemnity - The Period of Indemnity shall include such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

   i)      the date on which the liability of the Company for loss or damage would otherwise terminate; or

Plaintiffs 000554

ii)    the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually completed;

terminating no more than 365 days from said later commencement date.

20.    Extensions of Time Element Coverage: This policy, subject to all its provisions and without increasing the amount of said policy, insures against direct physical loss resulting from damage to or destruction by the perils insured against, to:

a)    Any service provider's property including but not limited to, electrical equipment and systems, water, gas, steam, telephone or their respective transmission and distribution lines or utility plants which directly or indirectly provide incoming or outgoing services to the Insured situated on or outside of the Insured's premises.

b)    the actual loss sustained, and Extra Expense incurred by the Insured at an insured location during the period of restoration directly resulting from physical loss or damage of the type insured to property of the type insured at a Contingent Time Element Location, meaning a location within the TERRITORY of a direct supplier or direct customer of the Insured.

As respects this subparagraph b):

i.    The Insured will influence and cooperate with the Contingent Time Element Location in every way and take any reasonable and necessary action, including the use of other machinery, supplies, or locations, to effect mitigation of the loss payable hereunder.

ii.    In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

iii.    This Policy does not insure loss resulting from a lack of incoming or outgoing electricity, fuel, gas, water, steam, refrigeration, sewage, or telecommunications of a direct supplier or direct customer of the Insured.

iv.    The per occurrence deductible that applies to all perils also applies to the coverage as provided under this subparagraph b).

c)    dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other manufacturing purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources.

d)    the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory

15

Plaintiffs 000555

mile of an insured location, access to real or personal property is impaired or hindered by order of civil or military authority irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 e) below.

e)     the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory mile of an insured location, ingress to or egress from real or personal property is thereby impaired or hindered irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 d) above.

f)     property, facilities or piping systems which prevents the Insured from discharging its outgoing effluence.

21.    Transit - This policy shall cover property in transit, and this policy attaches and covers shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.  This insurance is extended to cover loss or damage to property:

a)     sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

b)     arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

c)     occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

d)     at the Insured's option, property which is incoming to the Insured.

The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor. With respect to shipments described under subparagraphs a and d above, this Company agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

16

e)      The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

f)      Seaworthiness of any vessel or watercraft, and airworthiness of any aircraft are admitted between this Company and the Insured.

22.     Accounts Receivable - Defined as:

a)      All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

b)      Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

c)      Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

d)      Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

e)      the monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

f)      the monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

23.     Lost Master/Key Card - If a master or grand master key is lost, or damaged so it cannot be duplicated, we will pay for the actual loss of keys, the cost of adjusting locks to accept new keys, or the cost of new locks, if required, of like kind and

17

Plaintiffs 000557

quality including the cost of installation subject to the limit contained in the Declarations.

24.     Arson Reward - If covered property sustains direct physical loss or damage caused by or resulting from a fire, and the origin of such loss is determined to be the criminal acts of an individual or individuals, we will pay a reward to the person or persons who provide information that leads to the arrest and conviction of the individual or individuals responsible for the loss.

25.     Contract Penalty – This policy covers a compensation payment due under the Hotel Management Agreement between the Franchisee, Named Insured, and any Franchisor, as identified via policy endorsement, or other appropriate subsidiaries acting as the management company or agent, whether insured or not under this policy. The Contract Penalty is triggered when the Hotel Management Agreement is terminated due to loss or damage of a type insured under this policy from an insured peril where such loss or damage causes a total constructive loss.

        "A total constructive loss" means the destruction or damage to the Hotel by an insured peril whereby the destruction of or damage to the Hotel is such that the cost of repairing, rebuilding or replacing the Hotel exceeds 50% of the Replacement value of the Hotel." The Contract Penalty will only apply if the franchisor does not release the franchisee from the Hotel Management Agreement after a total constructive loss occurs and the First Named Insured / Franchisee elects not to repair or rebuild the property.

26.     BOILER & MACHINERY - This policy insures direct or indirect loss as covered elsewhere in this policy to insured property as a result of an Accident to an Object subject to the following definitions:

        a)      "Object" means any boiler, fired or unfired pressure vessel, refrigerating or air-conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.
        b)      "Accident" means an accidental loss to an Object or a part thereof which manifests itself in physical damage that necessitates repair or replacement of the Object or part thereof.
        c)      "Hazardous Substance" means the additional expense incurred for clean up, repair or replacement, or disposal of damaged, contaminated or polluted property as a result of an "Accident" which causes property to become damaged, contaminated or polluted by a substance declared hazardous to health by an authorized governmental agency.  "Additional Expenses" means expenses incurred that would not have been incurred, had no substance hazardous to health been involved in the accident.

27.     PERILS INSURED AGAINST - This policy insures against all risks of direct physical loss of or damage to property described herein including general

Plaintiffs 000558

average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

28.    PERILS EXCLUDED - This policy does not insure:

a)    infidelity or dishonesty of the Insured or of the Insured's employees. A willful act of malicious intent shall not be deemed to be an act of infidelity. In no event does this Policy insure loss caused by theft by the Insured or the Insured's employees;

b)    against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

c)    against ordinary wear and tear or gradual deterioration unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

d)    against inherent vice or latent defect unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

e)    against errors in processing or manufacture of the Insured's product unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

f)    against mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

g)    against nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except if a covered peril ensues, liability is specifically assumed for direct loss by such ensuing peril but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination.  This Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

h)    against hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or

Plaintiffs 000559

expected attack by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or by military, naval, or air forces; or by any agent of any such government, power, authority, or forces;

i)      against any weapon employing atomic fission or fusion;

ii)     against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

iii)    against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against under this policy;

iv)     against risks of contraband or illegal trade;

v)      against confiscation, nationalization and expropriation;

Notwithstanding the above provisions, this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated.  Nothing in the foregoing shall be construed to include any loss, damage, or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon or war employing atomic fission or fusion whether in time of peace or war.

i)      loss or damage caused directly or indirectly by the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants unless the release, discharge, dispersal, seepage, migration, or escape is caused by a peril not otherwise excluded herein.  However, if a peril not otherwise excluded herein ensues due to the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants, such ensuing loss or damage shall be covered.

j)      loss or damage caused by an act of terrorism which means an act or series of acts, including the use of force or violence, of any person or group(s) or persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public or any section of the public in fear for such purposes.

k)      against loss or damage caused by insect or vermin.

Plaintiffs 000560

l)      against delay, loss of market loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

m)     against delay, loss of market, loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

n)      against corrosion, depletion, deterioration, erosion, wet rot, dry rot, decay, evaporation, rust, and shrinkage unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

o)      against changes of temperature or humidity, whether atmospheric or not;

p)      against settling, cracking, bulging, shrinking, or expansion of foundations; machinery pedestals, pads, or platforms; floors, pavements, walls, ceilings, or roofs; or the cumulative effects of smog, smoke, soot, vapor liquid, or dust;

q)      against lack of incoming power voice/data/internet access from offsite services except as provided in the Service Interruption Extension.

Exclusion b), c), d) and e) do not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly.

Exclusion b), c) and d) do not apply to property in transit.

29.   DEFINITIONS

a)      The term "Earthquake" as used in this policy shall mean loss or damage caused by or resulting from a series of vibrations induced in the earth's crust by the abrupt rupture and rebound of rocks in which elastic strain has been slowly accumulating (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

b)      The term "Flood" as used in this policy shall mean loss or damage caused by or resulting from waves, tide, or tidal water, and the rising (including the overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and similar bodies of water, whether wind driven or not (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

c)      The term "occurrence" is defined as follows:

Plaintiffs 000561

i)    Except as hereinafter defined, "loss occurrence" shall mean an accident or occurrence or series of accidents or occurrences arising out of one event.

ii)    ii) Each loss occurrence which involves the perils of tornado, windstorm, cyclone, hurricane, hail or flood shall include all loss or damage wherever occurring occasioned by these perils which arise out of one atmospheric disturbance during a continuous period of 168 hours.

iii)    Each loss occurrence which involves the peril of earthquake, a series of earthquakes shall include all losses or damage sustained during a continuous period of 168 hours.

iv)    Each loss occurrence which involves the peril(s) of vandalism, malicious mischief or riot/civil commotion shall include all losses or damage sustained resulting from one or more acts committed by a person acting alone or in collusion with others during a continuous period of 168 hours.

v)    The Insured shall have the right to elect the moment from which the time periods referred to in ii), iii), and iv) above shall be deemed to have commenced, however no elected period of time shall commence within any previous occurrence.

vi)    Should the time period in ii), iii), and iv) above extend beyond expiration or cancellation date of this policy and commence prior to the expiration or cancellation date, this Company shall be liable as is such period fell entirely within the term of this policy.

vii)    However, we shall not be liable hereunder for any loss or damage:

viii)    Occurring before this policy becomes effective; or

ix)    Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

d)    "Raw Stock" - Materials and supplies in the state in which the Insured receives it for conversion by the Insured into Finished Stock, including supplies consumed in such conversion or in the service rendered by the Insured.

e)    "Stock in Process" - Raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture by on behalf of the Insured but which has not become Finished Stock.

f)    "Finished Stock" - Stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

g)    "Merchandise" - Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

h)    "Normal" - The condition that would have existed had no loss occurred.

Plaintiffs 000562

i)      "Improvements and Betterments" - Fixtures, alterations, installations or additions comprising a part of the described building and made or acquired at the expense of the Insured, but which are not legally subject to removal by the Insured.

j)      "Valuable papers and records" - Written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents and manuscripts.

k)      "Electronic Data Processing Media" - All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles.

l)      "Securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets.

m)      "Fine Arts" - Shall include but not be limited to bona fide works of art, works of rarity, works of historical value, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, galley proofs, original records, sculptures, carvings and similar property.

n)      "Architect and Engineering Fees" - Any cost associated with the preparation of plans, supervision of and approval for the repair or replacement of damaged or destroyed property.

o)      "Tier One County" - the entire territory of the United States Virgin Islands, the entire Commonwealth of Puerto Rico, the entire State of Florida, and the following:
  i)      In the State of Alabama, the counties of Baldwin, Escambia, and Mobile;
  ii)     In the State of Connecticut, the counties of Fairfield, New Haven, and New London;
  iii)    In the State of Georgia, the counties of Bryan, Camden, Chatham, Glynn, Liberty, and McIntosh;
  iv)     In the State of Hawaii, the counties of Honolulu, Kauai, and Maui;
  v)      In the State of Louisiana, the counties (also known as "Parishes") of Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, Iberia, Iberville, Jefferson Davis, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John The Baptist, St. Martin, St. Mary, St. Tammany, Terrebonne, and Vermillion;
  vi)     In the Commonwealth of Massachusetts, the counties of Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, and Suffolk;

Plaintiffs 000563

vii)    In the State of Mississippi, the counties of George, Greene, Hancock, Harrison, Jackson, Pearl River, and Stone;

viii)    In the State of New Jersey, the counties of Atlantic, Monmouth, and Ocean;

ix)    In the State of New York, the counties of Kings, Nassau, Queens, and Suffolk;

x)    In the State of North Carolina, the counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington;

xi)    In the State of Rhode Island, the counties of Newport, Providence, and Washington;

xii)    In the State of South Carolina, the counties of Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, and Williamsburg;

xiii)    In the State of Texas, the counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Gollad, Harris, Hidalgo, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, and Willacy; and

xiv)    In the Commonwealth of Virginia, the counties of Accomack, Gloucester, Isle of Wright, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, Westmoreland, and York; and the independent cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Suffolk, and Virginia Beach.

p)    "Named Storm"- A storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Depression or Tropical Storm. "Named storm" does not include "flood" resulting from a "named storm".

q)    "Time Element' – Includes coverage as described under Clause 12., 13., 14., 15., 16., 17., 18., 19. and 20. hereunder.

r)    "Unnamed Location' – A location which has not been scheduled with underwriters or the insured's representative and is not considered a Newly Acquired location.

s)    "Newly Acquired Location" – A location acquired by the insured after inception of this policy for a period of up to 90 days until reported to and agreed by underwriters.

30.    FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES - This policy covers fire brigade charges and other extinguishing expenses for which the Insured may be assessed including loss of fire extinguishing materials expended resulting from a peril insured.

Plaintiffs 000564

31.     SEVERABILITY OF INTERESTS - The inclusion herein of more than one person or organization, as Insured, shall not operate to increase the limit of the Company's liability nor the deductible amounts to be borne by the Insured. Except with respect to limits of liability and deductible amounts, the terms of this policy shall apply separately to each person or organization covered as Insured in the same manner and to the same extent as though a separate policy had been issued to each such person or organization.

32.     DEBRIS REMOVAL - This policy covers the cost of removal of debris of property covered hereunder including the cost of removal of debris of property not insured hereunder from the premises of the Insured resulting from a peril insured against. Except as otherwise provided for elsewhere in this policy, this policy does not cover the cost to extract contaminants or pollutants from land or water, nor does it cover the cost to remove, restore or replace contaminated or polluted land or water.

If at the time insured property is contaminated as a direct result of physical damage insured against by this policy there is in force any law or ordinance regulating contamination, including but not limited to pollution, then this policy shall cover, as a result of the enforcement of such law or ordinance, the increased cost of decontamination and debris removal of such property in a manner to satisfy such law or ordinance.  As respects Time Element coverage(s), this policy is extended to include such time as is necessary and reasonable with the exercise of due diligence and dispatch to decontaminate such property in a manner to satisfy such law or ordinance.

33.     DEMOLITION AND INCREASED COST OF CONSTRUCTION - In the event of loss or damage under this policy that causes the enforcement of any law or ordinance in force at the time of loss regulating the construction, repair or use of property, this Company shall be liable for:

a)      COVERAGE A - the loss in value of the undamaged portion of the property as a consequence of the enforcement of any law or ordinance that requires demolition of undamaged parts of the same property;

b)      COVERAGE B – the cost to demolish and clear the site of undamaged parts of the same property;

c)      COVERAGE C – the increased cost to repair or reconstruct damaged and undamaged property on the same or another site when the increased cost is a consequence of the enforcement of any law or ordinance.  These costs are limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  This Company shall not be liable for any increased cost of repair or reconstruction loss unless the damaged property is actually rebuilt or replaced;

25

**Plaintiffs 000565**

d)      Any increase in loss including but not limited to Business Interruption, Extra Expense, Rental Value, Rental Income, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law or ordinance.

e)      In the event real or personal property is not repaired or replaced to the same height, floor area, size, style or comparable quality of the original property insured due to the enforcement of law or ordinance regulating, restricting or prohibiting repair or replacement of covered property, this policy will pay the full replacement cost without deduction for depreciation for the real or personal property damaged or destroyed, as if the property was replaced to the same height, floor area, size, style or comparable quality of the original property insured.  This policy will also pay Time Element loss as if the original structure were repaired or replaced to original specifications, subject to the terms and conditions of these coverage(s).

34.     EXPEDITING EXPENSE - This policy covers the extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

35.     CONTRIBUTING INSURANCE - Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy.  This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

36.     EXCESS INSURANCE - Excess insurance is insurance over the limit of liability set forth in this policy.  The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

37.     UNDERLYING INSURANCE - Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire.  The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy. Should the amount of loss payable under such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then no deductible shall apply hereunder and that portion which exceeds such a deductible amount shall be considered "other insurance". Should the amount of loss payable under such underlying insurance be less than the largest deductible amount which would apply in the event of loss under this policy, then the deductible amount to be deducted hereunder shall be the difference between the amount to be paid under such underlying insurance and the largest deductible amount which would apply in the event of loss under this policy.

38.     OTHER INSURANCE - Except for insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether

26

prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils. This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.

39.   SUBROGATION - Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder. The right of subrogation against the Insured, affiliated, subsidiary, and associated companies, or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived and at the option of the Insured, against a tenant or guest of the Insured. In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery. If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests. If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

40.   SALVAGE AND RECOVERIES - All salvages, recoveries, and payments, (excluding proceeds from subrogation and underlying insurance) recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly. If proceeds from subrogation are recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(s) participating in the payment of any loss, in the proportion of their respective interests.

41.   CONTROL OF DAMAGED MERCHANDISE - The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods. The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured, using reasonable discretion, shall be the sole judge as to whether production or EDP equipment and/or media is damaged and unusable. This insurer shall be allowed to dispose of as salvage, any non-proprietary property deemed unusable by the Insured.

Plaintiffs 000567

42. BRAND OR TRADEMARK - In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carriers or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at this Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

43. ERRORS OR OMISSIONS - Any unintentional error or omission made by the Insured in the application for insurance shall not void or impair the insurance hereunder but only to the extent this Policy would have provided coverage had the unintentional error or omission not been made provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department. This coverage does not apply if there is coverage available under any other provision in this Policy.

44. NOTICE OF LOSS - As soon as practicable after any loss or damage occurring under this policy is known to the Insured's home office insurance department, the Insured shall report such loss or damage with full particulars to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 for transmission to the designated loss adjuster and to this Company.

45. DESIGNATED LOSS ADJUSTER - It is understood and agreed that each and every loss will be adjusted by Jeff Hellman of McLaren Young International, 19324 40th Avenue West, Suite C, Lynnwood, WA 98036.

46. PROOF OF LOSS - Proof of loss is required as soon as practicable following the Company's written request for signed Proof from Insured; however, Insured, at its option, may elect to file Proof with the Company prior to the Company's request.  It shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained.

47. PARTIAL PAYMENT OF LOSS - In the event of a loss covered by this policy, it is understood and agreed that the Company shall allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

48. PAYMENT OF LOSS - All adjusted claims shall be due and payable no later than thirty (30) days after presentation of acceptable proofs of loss by the Insured or its appointed representative.

49. LOSS ADJUSTMENT EXPENSES - This policy is extended to include reasonable expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. These expenses include fees of professionals engaged to assist the Insured in determining the cause and origin of the loss, the amount

28

of loss sustained, and the amount of loss payable under this policy. This policy shall not cover the expenses of a public adjuster. Such expenses shall not exceed $2,000,000 in any one occurrence.

50. APPRAISAL - If the Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser.  The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending.  Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss.  If the appraisers fail to agree, they shall submit their differences to the umpire.  An award in writing by any two shall determine the amount of loss.  The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

51. CONSEQUENTIAL LOSS - This policy insures against consequential loss including spoilage to real and personal property as insured hereunder caused by change of temperature or humidity or by interruption of any service including but not limited to power, heat, air conditioning, or refrigeration resulting from a peril insured against.

52. PAIR AND SET - In the event of loss or damage by a peril insured against to any article or articles which are part of a pair or set, the measure of loss or damage to such article or articles shall be the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

53. CONSEQUENTIAL REDUCTION IN VALUE - This policy covers the reduction in value of insured components or parts of components or parts of products or the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to direct physical loss or damage insured against by this Policy to other insured components or parts of products.

54. COINSURANCE WAIVER - This policy is not subject to any coinsurance or average clause.

55. ALTERATIONS AND USE CLAUSE - Permission is granted to the insured to cease operations or for buildings to remain vacant or unoccupied provided fire protection, watch alarm services are maintained, and written notice is given to the Insurer prior to the sixtieth (60th) consecutive day of cessation of operations, vacancy or unoccupancy. The Insured's building is considered vacant or unoccupied when it does not contain enough covered Property to conduct customary business operations.

Plaintiffs 000569

56. ASSISTANCE AND COOPERATION OF THE INSURED - The Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

57. SUE AND LABOR - In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment.  This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

58. REINSTATEMENT - With the exception of loss subject to annual aggregate limits as noted herein, no loss hereunder shall reduce the amount of this policy.

59. SUIT AGAINST THE COMPANY - No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy.  The Company agrees that any action or proceeding against it for recovery of any loss under this policy shall not be barred if commenced within the time prescribed therefor in the statutes of Florida.

60. CERTIFICATES OF INSURANCE - It is understood and agreed that Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 is authorized to issue certificates of insurance naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests subject always to the terms, conditions, and limits of liability of this policy. The Company agrees to waive the issuance of formal Company endorsements in respect of such interests.

61. NOTIFICATION CLAUSE - All notices or communications concerning this policy shall be addressed to the offices of the Insured, to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 and to AmWINS Brokerage of Georgia, 3630 Peachtree Road NE, Suite 1700, Atlanta, GA 30326.  All such notices shall be sent via registered mail.

62. CANCELLATION/NON RENEWAL - This policy may be cancelled at any time at the request of the Insured or it may be cancelled or non-renewed by the Company by mailing to the Insured written notice stating when, not less than ninety (90) days thereafter or ten (10) days in the event of non-payment of premium, such cancellation or non-renewal shall be effective. If the First Named Insured cancels, return of any unearned premium will be calculated on the

30

Plaintiffs 000570

customary short rate basis. If the Company cancels, return of any unearned premium will be calculated on a pro rata basis. Return of any unearned premium will be made by the Company as soon as practicable. The cancellation will be effective even if the Company has not made or offered a refund.

63.    TITLES OF PARAGRAPHS - The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

64.    MORTGAGE CLAUSE - As respects Real Property only, loss, if any, under this policy shall be payable to the mortgagee (or trustee) as its interest may appear under all present or future mortgages upon the property herein insured in which the aforesaid may have an interest as mortgagee (or trustee) in order or precedence of mortgages., and this insurance as to the interest of said mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that, in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided also, that the mortgagee (or trustee) shall, notify the Company of any changes of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and unless permitted by this policy, it shall be noted thereon and the mortgagees or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The company reserves the right to cancel this policy at any time as provided by its terms, and in such case, this policy shall continue in force for the benefit only of the mortgagee (or trustee) for an additional thirty (30) days.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgagee debt, or may at their option pay to the mortgagee (or trustee) the whole principal due or to grow on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and all of such other securities, but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

65.    JURISDICTION AND SUIT - It is hereby understood and agreed that in the event of the failure of the Insurer to pay an amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court

31

of competent jurisdiction within the United States and will comply with all requirements necessary to give such jurisdiction.  All matters arising hereunder shall be determined in accordance with the law and practice of such court. In any suit instituted against it under this, the Insurer will abide by the final decision of such court or any appellate court in the event of an appeal.

66.     POLLUTANT CLEAN UP AND REMOVAL - This policy is extended to cover the expense actually incurred by the Insured to decontaminate, clean up and/or remove pollutants from land, water or air including resultant time element loss if the release, discharge, or dispersal of the pollutants results from any loss or damage as covered herein. Such expenses shall not exceed $500,000 in any one policy year.

67.     ATTACHMENT CLAUSE – Please refer to the Participation Page.

_____

 [Authorized Signature]

Plaintiffs 000572

# Endorsement No. 1

### **Microorganism Exclusion – Resultant Mold**

This policy does not insure any loss, Damage, Time Element, claim, cost, expense or other sum directly or indirectly arising out of or relating to (regardless of whether any other cause or event contributed concurrently or in any sequence):

Fungus, mold, mildew, yeast, mushrooms, spores, toxins, mycotoxins, bacteria or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion shall not apply to any such loss, Damage, Time Element, claim, cost, or expense resulting from mold that is a direct result of an Insured Cause of Loss and is not otherwise excluded by the Policy, provided such loss, Damage, Time Element, claim, cost, or expense is reported to the Company in writing within twelve months from the expiration date of the policy. This clause is subject to a $500,000 per occurrence and in the annual aggregate sublimit.

This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part, for these matters.

All other terms and conditions remain unchanged.

**Plaintiffs 000573**



# BROKER MANUSCRIPT FORM

## END PAGE

XPBROKER 08-15

**Plaintiffs 000574**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM

Locations "Exposed to Hurricanes" are subject to the following minimum earned premium provisions:

1.  If the insured cancels this policy, removes a location or reduces the amount of insurance on a location and coverage existed any time during the period of June 1st to December 1st the minimum earned premium will develop as follows for locations "Exposed to Hurricanes":

    | Days Policy in Force | Earned Factor | Unearned Factor |
    |---|---|---|
    | 1-59 | 35% | 65% |
    | 60-89 | 50% | 50% |
    | 90-119 | 75% | 25% |
    | 120 to expiration | 100% | |

    Premium will be considered 100% fully earned effective December 1st, regardless of the number of days this policy has been in force.  In the event of a loss, premium is 100% minimum and fully earned.

2.  If a location "Exposed to Hurricanes" is added during the term of the policy and coverage exists at any time during the period of June 1st to December 1st, the rate will be calculated as 100% of the annual rate, less the Unearned Factor noted above.  Otherwise it shall be pro rata.

3.  Limits of Insurance or coverage cannot be increased nor can additional locations be added if they are "Exposed to Hurricanes" and a "Named Storm" is present, unless specifically accepted by the Company.

4.  If a location is added or deleted, each type of property at each location shall be treated separately and the Company shall determine the applicable annual rate based upon the characteristics of the risk.

5.  If a location is "Exposed to Hurricanes" the provisions of this endorsement replace any short rate or pro rata provisions stipulated in this policy, all subject to the Minimum Earned Premium provisions in this endorsement.

"Exposed to Hurricanes" means any location within 100 miles of the Gulf of Mexico or the Atlantic Ocean from Texas through Virginia and the District of Columbia.  For all states north or east of Virginia, "Exposed to Hurricanes" means any location within 30 miles of the Atlantic Ocean.

"Named Storm" means a storm or storm system that has been declared and defined by the National Weather Service to be a hurricane or tropical storm and to include the time period as follows:

1.  Beginning at the time a hurricane or tropical storm "watch" or "warning" has been issued by the National Weather Service for the area where the covered property is located.

2.  Continuing for the duration that hurricane or tropical storm conditions exist in the area.

3.  Ending 72 hours following the cancellation of the "watch" or "warning" for the area by the National Weather Service.

**Plaintiffs 000575**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

If the insured cancels the policy, the Cancellation and Non Renewal provision of the Policy Conditions shall apply to locations that are not "Exposed to Hurricanes",  If the Company cancels the policy, the Cancellation and Non Renewal provision, of the Policy Conditions shall apply.  The short rate return premium will be 90% of applicable pro rata premium subject to any Minimum Earned Premium stipulations in the policy.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**Plaintiffs 000576**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMON POLICY CONDITIONS (PROPERTY)

**PROTECTION SYSTEMS & SERVICE**

If there be in existence, at the inception of this policy, any automatic fire extinguishing system, watchman service or fire or burglar alarm service, the Insured agrees not to discontinue such protection unless this Company is notified.  Insofar as an extinguishing system and extinguishing agent thereof are under the control of the Insured, due diligence shall be used by the insured to maintain them in complete working order, and that no change shall be made in the system or in the extinguishing agent supply thereof or in any such supervisory alarm provided thereof without immediate notification to this Company. Permission, however, is hereby given in case of break, leakage, or the opening of sprinkler heads, to shut off the water from so much of the sprinkler system as may be imperative, it being a condition of this Policy that this Company shall be immediately notified and the protection restored as promptly as possible.

**WAR RISK EXCLUSION**

This Company shall not be liable for loss caused directly or indirectly by:

a.  Hostile or warlike action in time of peace or war, including any action in hindering, combating or defending against an actual, impending or expected attack by:
  (1)  Any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or
  (2)  Military, naval or air forces; or
  (3)  An agent of such government, power, authority or forces, it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such hostile or warlike action by such a government, power, authority or forces.
b.  Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence.

**NUCLEAR EXCLUSION**

This Company shall not be liable for loss caused directly or indirectly by:

Loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, is not insured against by this Policy, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to or aggravated by any of the perils insured against in this Policy.

**CANCELLATION AND NON-RENEWAL**

a.  The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.
b.  We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
  (1)  10 days before the effective date of cancellation if we cancel for non-payment of premium; or
  (2)  90 days before the effective date of cancellation if we cancel for any other reason.

**Plaintiffs 000577**

c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
e. If this Policy is cancelled, we will send the first Named Insured any refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
f. If we elect not to renew this Policy for an additional policy period, we shall mail written notice to the first Named Insured at the address shown in the Declarations. Such written notice of non-renewal shall be mailed at least thirty (30) days prior to the end of the policy period.
g. If notice is mailed, proof of mailing will be sufficient proof of notice.

## CHANGES

This Policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this Policy with our consent. This Policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

## TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS

If the insured has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

## LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Policy unless:

a. There has been full compliance with all of the terms of this Policy; and

b. No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity the same be commenced within twelve (12) months next after discovery by the insured of the occurrence which gives rise to the claim, provided, however, that if by the laws of the State within which this Policy is issued each limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State.

## REPRESENTATIONS

By accepting this Policy, you agree:

a. The statements made in the Declarations are accurate and complete;
b. Those statements are based upon representations you made to us; and
c. We have issued this Policy in reliance upon your representations.

## SERVICE OF SUIT

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company will submit to the jurisdiction of any Court of competent jurisdiction within the United States of America or Canada and will comply with all

Plaintiffs 000578

requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and the practice of such Court.

It is further agreed that service of process in such suit may be made upon the Company's President, or his nominee, at the address shown on the Declarations page of this Policy, and that in any suit instituted against any one of them upon this Policy, this Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named is authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America or province of Canada, which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designated the above-named person to whom the said officer is authorized to mail such process or a true copy thereof.

## GOVERNMENT ACTIVITY CLAUSE

The Company shall not be liable for loss or damage caused by or resulting from:
a.  The seizure or destruction of property insured by this Policy by any government body, including any customs or quarantine action, or
b.  Confiscation or destruction of any property by order of any government or public authority, except an order to destroy property to prevent the spread of fire or explosion.

## EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## INSPECTIONS AND SURVEYS

a.  We have the right to:
   (1)  Make inspections and surveys at any time;
   (2)  Give you reports on the conditions we find; and
   (3)  Recommend changes.
b.  We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   (1)  Are safe or healthful; or
   (2)  Comply with laws, regulations, codes or standards.
c.  Paragraphs a. and b. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

Plaintiffs 000579

d.  Paragraph b. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**PREMIUMS**

The first Named Insured shown in the Declarations:

a.  Is responsible for the payment of all premiums; and

b.  Will be the payee for any return premiums we pay.

**TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

In Witness Whereof, this Company has executed and attested these presents; but this Policy shall not be valid unless signed by duly authorized representatives of this Company.

*VICE PRESIDENT*                                         *PRESIDENT*

**Plaintiffs 000580**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONFLICTING PROVISIONS CLAUSE

The following applies to coverage as provided under this Policy:

The terms and conditions of this Policy shall apply in the event any of the terms or conditions in the underlying policy(ies) conflict with this Policy. In no event shall this Policy provide broader coverage than that provided by the underlying policy(ies). The coverage provided by this Policy is limited to the terms and conditions set forth herein and to the extent any other coverages are provided by the underlying policy(ies), those underlying coverages do not apply to extend coverage under this Policy to perils that are either excluded from coverage or are not specifically listed as a covered peril on the Declarations of this Policy.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**Plaintiffs 000581**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT - BLANKET

It is understood and agreed that the following special terms and conditions apply to this policy:

1. The limit of liability or amount of insurance shown on the Declarations Page, or endorsed onto this Policy, is a limit or amount per occurrence.  Notwithstanding anything to the contrary contained herein, in no event shall the liability of this Company exceed this limit or amount in one disaster, casualty or event, irrespective of the number of locations involved.

2. The premium for this policy is based upon the Statement of Values on file with this Company, or attached to this Policy.  In the event of a covered loss hereunder, liability of the Company shall be limited to the lesser of the following:

   a. The actual adjusted amount of loss, less applicable deductible(s).

   b. The limit of liability or amount of insurance in any one occurrence, shown on the Declarations Page or endorsed onto this Policy.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**Plaintiffs 000582**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ELECTRONIC DATA CLAUSE

This policy does not cover any loss, damage, claim, cost, expense, or any sum either directly or indirectly arising out of or relating to:

1. The failure, malfunction or inadequacy of design of any computer system, program, data, network, hardware, software, CPU or embedded chip;

2. The alteration, manipulation or destruction of computer media and data resulting from the addition of a virus, malware, destructive code or similar instruction that disrupts the normal operation of computer equipment or results in the loss of use or physical damage to computer equipment or computer media and data;

    a. If however, direct physical loss or damage ensues from the perils covered by this policy, then subject to all the terms and conditions, this policy will be liable for such ensuing loss or damage, other than loss or damage to data.

3. Denial of service, including but not limited to unauthorized direction of a high volume of messages or inquiries to a web site or e-mail destinations, effectively denying, interrupting or limiting legitimate access;

4. Transfer of property caused by, resulting from, or arising out of unauthorized instructions transmitted by a computer;

5. Financial loss or any other loss or damage due to unauthorized viewing, copying or use of any data (including proprietary or confidential information) by any person, even if such activity is characterized as theft.

This exclusion applies regardless of whether there is:

1. any physical loss or damage to insured property by any cause, contributing concurrently or in any sequence to the loss;
2. any loss of use, occupancy or functionality;
3. any action required, including but not limited to repair, replacement, research, reconstruction, restoration, recapturing, removal, cleanup, abatement, disposal, relocation;
4. medical or legal costs, expenses or fees.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**Plaintiffs 000583**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROPERTY POLLUTION EXCLUSION

This policy does not cover loss or damage caused directly or indirectly by the actual, alleged or threatened release, discharge, dispersal, seepage, migration or escape of any "hazardous substances" or "pollutants".  Furthermore, this policy does not cover the cost to assess, monitor, treat, detoxify, neutralize, decontaminate, remove, replace or dispose of insured property which has been contaminated by any "hazardous substances" or "pollutants", and by law, request, demand, order, regulatory requirement or civil authority must be restored, disposed of or decontaminated.

This exclusion applies regardless of whether there is:

1.  Any physical loss or damage to insured property;
2.  Any insured peril or cause, whether or not contributing concurrently or in any sequence to the loss;
3.  Any loss of use, occupancy or functionality; or
4.  Any action required, including but not limited to assessment, monitoring, treatment, detoxification, neutralization, decontamination, removal, replacement or disposal, or steps taken to address medical or legal concerns.

Definition:  "Hazardous substances" or "pollutants" include asbestos, benzene, gasoline, mercury, any pollutants, toxins, chemical waste, biological waste, nuclear waste, as well as any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and any other materials that cause or are alleged to cause loss or damage to insured property.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**Plaintiffs 000584**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# REJECTION OF COVERAGE
# FOR CERTIFIED ACTS OF TERRORISM COVERAGE
# (PURSUANT TO TERRORISM RISK INSURANCE ACT)

**SCHEDULE**

**THE INSURED WAS OFFERED AND**

**HAS DECLINED TERRORISM COVERAGE ON THIS POLICY**

In accordance with the federal Terrorism Risk Insurance Act, this notice confirms that you were offered and have rejected coverage for terrorist acts certified under that Act.

**Plaintiffs 000585**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - TERRORISM

The following applies to coverage as provided under this policy:

**A.** The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks.

"Terrorism" means activities against persons, organizations or property of any nature:

**1.** That involve the following or preparation for the following:

**a.** Use or threat of force or violence; or

**b.** Commission or threat of a dangerous act; or

**c.** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**2.** When one or both of the following applies:

**a.** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**b.** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**B.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

**5.** The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $5 million. In determining whether the $5 million threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold is exceeded.

With respect to this item **B.5.,** the immediately preceding paragraph describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Coverage Part or Policy.

XP5005US 01-15          Includes copyrighted material of Insurance Services Office, Inc.,          Page 1 of 2
with its permission.
**Plaintiffs 000586**

**C. Application Of Other Exclusions**

    **1.** When the Exclusion Of Terrorism applies in accordance with the terms of **B.1.** or **B.2.,** such exclusion applies without regard to the Nuclear Hazard Exclusion in this Coverage Form, Coverage Part or Policy.

    **2.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this Coverage Form, Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

**Plaintiffs 000587**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance   with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| 00090459-1 | 4/01/2020 12:01 AM Standard Time at the address of the Named Insured | JAMES RIVER INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| Portofino Master Homeowners Association Inc | Richard J. Schmitzer |

| COVERAGE PARTS AFFECTED |
|---|
| ALL COVERAGE PARTS |

| CHANGES |
|---|
| The PROTECTION SYSTEMS & SERVICE clause in Form Number XP005US 02-08, COMMON POLICY CONDITIONS (PROPERTY) is hereby deleted.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.** |

Authorized Representative Signature

**Plaintiffs 000589**

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004
Plaintiffs 000590

# JAMES RIVER INSURANCE COMPANY
## <u>Privacy Policy</u>

**We do not sell customer information to nonaffiliated third parties, and we do not share customer information with nonaffiliated third parties except those parties who perform contractual services for us, and parties to which we are authorized to provide information by law.**  In addition, when we provide information to affiliates or non-affiliates, we limit those disclosures to information about your transactions and experiences with us and to disclosures otherwise permitted by law.  You do not need to take any action to prevent us from selling or sharing information we obtain about you.

**We use security measures and training in our effort to protect the customer information we collect.**  We protect the information we obtain about you by maintaining physical, electronic and procedural safeguards.

**We collect the following types of information about you when you purchase or use our products and services.**  Most of the information that we obtain about you comes directly from you, such as through the insurance applications you submit when requesting insurance products.  These applications and other inquiries we make of you allow us to learn information that we may use to contact you in the future, such as your name, address, telephone number and e-mail address.  In addition, insurance applications and other information you provide enables us to determine the type and value of your insured property, the types of insurance coverages you have or in which you might be interested, and similar information.

If you visit an Internet site that we maintain, we might request or obtain information that will enable us to identify you as a registered user, such as your name, a user identification name, a password, password reminders, and your Internet service provider.  We might use a "cookie" to retain some of this information.  We also might obtain information about your operating system, web browser and similar information to enable us to improve the operation of our site.

When we consider products and services in which you may be interested, we often review information that we have about your past transactions with us or our affiliates, such as your existing or former policy coverages, premiums and payment history.  In addition, we may learn information about your transactions with nonaffiliated third parties, including the types of products or services you obtained from them and your experiences with them.  Finally, we may obtain other information from third parties that has a bearing upon your eligibility for the products or services you seek from us.  This information may include your credit report or information about your creditworthiness, or other information maintained by consumer reporting agencies.

**We provide customer information only to our affiliates and to nonaffiliates that must protect your customer information.**

**We also may provide information as mentioned in this notice to nonaffiliated third parties that perform services for us or perform functions on our behalf, such as marketing and research, or to other financial institutions with which we have joint agreements for activities such as marketing.  By law, our contracts with these parties must prevent them from using the information they receive about you except as described in this notice.**

Finally, we may share customer information as permitted by applicable law.  This means that we will share information with parties as necessary to affect, administer, or enforce transactions that you request.  For example, we might provide information to a company that processes, prints and mails our insurance policies to you, or to a company that adjusts claims under your policies.  We also might disclose customer information to other entities specified by law, such as insurance advisory organizations, our attorneys and accountants, consumer reporting agencies, or civil and regulatory authorities.  Federal law sets the limitations on these types of disclosures.

**We strive to keep our records as accurate as possible.**  We attempt to maintain accurate records about you and we will gladly make appropriate corrections when you notify us.  Of course, we do not control the accuracy of information gathered and provided by third parties, and you may need to notify third parties directly if you believe that any information we received from them is inaccurate.  You may request the name and address of any consumer-reporting agency from which we obtain a report on you.  You then may contact that consumer-reporting agency to request a copy of the report it makes or to advise of any changes to the information they maintain and report.

We will provide one copy of this Privacy Policy to joint contract holders.  Please share this information with everyone covered under your policy or contract.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NOTICE OF LOSS, DAMAGE, OR OCCURRENCE

The Insured or their authorized representatives shall immediately report in writing to the Company or its authorized representative any loss, damage or occurrence that will, or is likely to result in:

**a.**  a claim under this policy; or
**b.**  the exhaustion of 50% or more of the limits of the underlying insurance.

Failure to give notice of any such loss which, at the time of occurrence, did not appear to involve this policy but which, at a later date, would appear to give rise to a claim hereunder, shall not invalidate such claim.

All claims or likely claims are to be reported to the Company's Claims Department as follows:

Claims Department

James River Insurance Company

P.O. Box 27648

Richmond, VA 23261


Email:   new.claimsnotices@jamesriverins.com


Phone: (804) 289 - 2712


Fax:     (804) 420 - 1058 - Attention:  Claims Department


Additional information regarding reporting losses, can be found at  http://www.jamesriverins.com/claims.


**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**Plaintiffs 000592**

# CERTIFIED POLICY

This certification is affixed to a policy which is a true and accurate copy of the document in the company's business records as of the date shown below.

**No additional insurance is afforded by this copy.**

Name of Insuring Company:  <u>Maxum Indemnity Company</u>

| | | |
|---|---|---|
| <u>MSP 6012522-11</u> | <u>4/1/2020 - 4/1/2021</u> | <u>07/22/2022</u> |
| Policy Number | Policy Period | Date |

<u>Matthew Olin</u>
**Assoc General Adjuster**

**Hartford Global Specialty - Property Major Case**

**Plaintiffs 000593**



**Insurance Policy in Behalf of**

# Portofino Master Homeowners Association at Pensacola Beach, Inc. (See also Schedule of Named Insureds)

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

Maxum Indemnity Company
3655 North Point Pkwy., Suite 500
Alpharetta, Georgia 30005
Telephone: 678 597 4500
Fax: 678 597 4501

**PJ11 (12/15)**



A Company of The Hartford

Page Intentionally

Left Blank

Plaintiffs 000595



# COMMON POLICY DECLARATIONS

**ACCOUNT NUMBER:** 6012522-11                                          **RENEWAL OF/REWRITE OF:** 6012522-10

| | |
|---|---|
| **NAMED INSURED AND MAILING ADDRESS:** | **BROKER:** |
| Portofino Master Homeowners Association at Pensacola Beach, Inc. (See also Schedule of Named Insureds)<br>Ten Portofino Drive<br>Pensacola Beach, FL 32561 | AmWINS Brokerage of Georgia (Atlanta, GA)<br>3630 Peachtree Road NE<br>Suite 1700<br>Atlanta, GA 30326 |

| **POLICY PERIOD:** | From: 4/1/2020 | at 12:01 A.M. Standard Time at the address of |
|---|---|---|
| | To: 4/1/2021 | the Named Insured as stated herein. |

**BUSINESS DESCRIPTION:**

**IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE STATED IN THIS POLICY.**

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

COMMERCIAL PROPERTY COVERAGE

      Maxum Indemnity Company

Federal Terrorism Risk Insurance Act

SURPLUS LINES TAX

STAMPING/FILING FEE

CATASTROPHE ANALYSIS FEE

INSPECTION FEE

OTHER SURCHARGES/TAXES/FEES

                                                            Total

**LOCATION AND COVERED PROPERTY**

Buildings, Business Personal Property, Rental Income as more fully defined in the primary policy(s) and not excluded in this excess insurance, and as declared and located per the statement of values on file with the company or as amended by endorsement.

**FORM(S)AND ENDORSEMENT(S) MADE PART OF THIS POLICY AT INCEPTION:**

Refer to Endorsement E849.

**COUNTERSIGNED:**

BY:                                                                    Date: 4/7/2020

**Plaintiffs 000596**



Page Intentionally

Left Blank

Plaintiffs 000597

NAMED INSURED:   Portofino Master Homeowners Association at Pensacola Beach, Inc. (See also
                               Schedule of Named Insureds)

POLICY PERIOD:    4/1/2020 - 4/1/2021          POLICY NUMBER:   MSP-6012522-11

## FORMS AND ENDORSEMENTS SCHEDULE

| FORMS/ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS: | | |
|---|---|---|
| Jacket | | Property Jacket |
| CP0092 | 4/1/2009 | Commercial Property Conditions |
| E134 | 1/2/2003 | General Change Endorsement |
| E792 | 4/1/2009 | Asbestos Endorsement (Sublimited) |
| E793 | 4/1/2009 | Biological or Chemical Materials Exclusion |
| E794 | 4/1/2009 | Pollution And Removal Endorsement (Sublimited) |
| E795 | 12/1/2016 | Service of Suit |
| E800 | 4/1/2009 | Wind Earned Premium |
| E840 | 3/1/2010 | Mortgagee Interest And Obligations Endorsement |
| E849 | 3/1/2010 | Forms and Endorsements Schedule |
| E883 | 12/1/2010 | Amendment of Cancellation Notice |
| E1137 | 10/1/2013 | Paid Loss Earned Premium Endorsement |
| E1233 | 1/1/2015 | Exclusion - Terrorism |
| E1259 | 4/1/2015 | Nuclear, Biological, Chemical Or Radioactive Materials Exclusion |
| E1308 | 7/1/2017 | Electronic Data Endorsement D (Without Media Restoration) |
| MISC001 | 6/1/2012 | Claims Reporting |

| FORMS/ENDORSEMENTS APPLICABLE TO COMMERCIAL PROPERTY COVERAGE PART: | | |
|---|---|---|
| DECMSSCP | 12/1/2015 | Commercial Property Declarations |
| Manuscript | | Manuscript Form |

**Plaintiffs 000598**
Includes copyrighted material of Insurance Services Office, Inc., with its permission.



Page Intentionally

Left Blank

Plaintiffs 000599



# COMMERCIAL PROPERTY DECLARATIONS

**NAMED INSURED: Portofino Master Homeowners Association at Pensacola Beach, Inc. (See also Schedule of Named Insureds)**

**POLICY NUMBER:** MSP-6012522-11

---

**COVERAGE PROVIDED:**

☒ All Risk Direct Physical Loss    ☐ *including* Earthquake    ☐ *including* Flood

☐ Named or Specified Cause of Loss    ☐ Other:

☐ Specified Peril(s) see endt E841    ☐ *including* Earthquake    ☐ *including* Flood

☐ Difference in Conditions    ☐ *including* Earthquake    ☐ *including* Flood

☒ *TRIA*    ☐ *included*    ☒ *rejected*

---

**COVERAGE BASIS:**

☐ Primary    ☐ Excess    ☒ Participating Excess

---

**LIMIT OF LIABILITY:**

Maxum Indemnity Company:

Layer 1:  $12,500,000 per occurrence P/O    $50,000,000 per occurrence    XS    $50,000,000 per occurrence

Layer 2:    P/O    XS

Layer 3:    P/O    XS

---

**ANNUAL AGGREGATE(S):**

Maxum Indemnity Company:

| Earthquake: | Flood: | Named Storm: |
|---|---|---|
| Layer 1: | Layer 1: | Layer 1: |
| Layer 2: | Layer 2: | Layer 2: |
| Layer 3: | Layer 3: | Layer 3: |

---

**DEDUCTIBLE(S):**    See Primary Policy for Schedule of Deductibles.

---

**UNDERLYING CARRIER INFORMATION:**

Primary Carrier:

Policy Number:    Term:

---

**MORTGAGE HOLDER(S):**

Premise Location:    Mortgagee: See schedule on file with the Company.

---

Plaintiffs 000600



A Company of The Hartford

Page Intentionally

Left Blank

Plaintiffs 000601

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions Additional Conditions in Commercial Property Coverage Forms.

**A   CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 60 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.   CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in case of fraud by you as it relates to this Coverage Part at any time.  It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

**C.   CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

**Plaintiffs 000602**

Commercial Property Conditions

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## D.  CHANGES

This policy contains all the agreements between the Company and the Insured regarding this insurance. You are only authorized to make changes in the terms of this policy with the Companies consent. The policies terms can be amended or waived only by endorsement issued by Us and made part of this policy.

## E.  CHANGE OF BROKER

We will not change the Broker of record as indicated on the Common Policy Declaration page of this policy at any time other than at the anniversary date. All changes must be requested in writing and be received seven (7) days prior to the policy expiration. We will only accept such requests for change if the new Broker has an active contract with the **Special Property division of Maxum Specialty Insurance Group.**

## F.  EXAMINATION OF YOUR BOOKS AND RECORDS

The Company may examine and audit the Insured's books and records as they relate to this policy ant any time during the policy period and up to two (2) years thereafter.

## G.  INSPECTIONS AND SURVEYS

The Company reserves the right to:
1.  Make inspections and surveys at any reasonable time;
2.  Give the Insured reports on the condition of properties we find;
3.  Recommend changes.

The Company is not obligated to make any inspections, surveys, reports or recommendations and any such actions relate to insurability and premiums to be charged. We do not perform the duties of any person or organization to provide for the health or safety of workers or the public. The Company does not warrant that conditions are safe or healthful. We do not warrant that they comply with laws, regulations, codes or standards.

## H.  LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1.  There has been full compliance with all of the terms of this Coverage Part; and
2.  The action is brought within one (1) years after the date on which the direct physical loss or damage occurred.

**Plaintiffs 000603**

Commercial Property Conditions

## I.  MAINTENANCE OF UNDERLYING INSURANCE

The policies and Limits of Liability of the Primary and Underlying Excess Insurance shall be maintained in full force and effect during the term of this insurance. If not, or if there is a change in the coverage of such primary or underlying, this insurance shall apply in the same manner as though such primary or underlying policies had been so maintained and unchanged.

## J.  NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## K.  OTHER INSURANCE

You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part.  If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance Under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

## L.  PERMISSION FOR EXCESS INSURANCE

You may have excess insurance over the Limits of Liability provided by this policy without prejudice to this policy and the existence of such insurance shall not reduce any liability under this policy.

## M.  POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.
2. The coverage territory is:
   a. The United States of America (including its territories and possessions);
   b. Puerto Rico; and
   c. Canada.

**Plaintiffs 000604**

Commercial Property Conditions

**N.** **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment.  That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them.  But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income
2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:
    a. Someone insured by this insurance;
    b. A business firm:
        i)  Owned or controlled by you; or
        ii)  That owns or controls you; or
    c. Your tenant.

This will not restrict your insurance.

**Plaintiffs 000605**

# PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies) , do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy.

Provided that:

1.     The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2.     The liability of each of the Insurers shall not exceed the Participation Limit set against its name.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurer | Policy Number | Participation | Authorized Signature |
|---------|---------------|---------------|----------------------|
| Westchester Surplus Lines Insurance Company | D38064666 004 | $5,000,000 part of $15,000,000 Primary | |
| Endurance American Specialty Insurance Company | ESP30000298003 | $5,500,000 part of $15,000,000 Primary | |
| Everest Indemnity Company | CA3P005801201 | $3,000,000 part of $15,000,000 Primary | |
| Princeton Excess Surplus Lines Insurance Company | 3VA3PP0000251-02 | $1,500,000 part of $15,000,000 Primary | |
| Arch Specialty Insurance Company | ESP1002326-00 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Axis Surplus Insurance Company | EAF645360-20 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Colony Insurance Company | XP190091-1 | $6,250,000 part of $25,000,000 excess of $25,000,000 | |
| Evanston Insurance Company | MKLV11XP007995 | $7,500,000 part of $25,000,000 excess of $25,000,000 | |
| Aspen Specialty Insurance Company | PX005LG20 | $5,000,000 part of $25,000,000 excess of $25,000,000 | |

1

Plaintiffs 000606

| | | | |
|---|---|---|---|
| Independent Specialty Insurance Company | VUX-CN-0000328-04 | $8,689,317 part of $217,232,927 excess of $25,000,000 | |
| Interstate Fire & Casualty Company | VRX-CN-0000328-04 | $28,240,281 part of $217,232,927 excess of $25,000,000 | |
| Lloyd's of London | VPC-CN-0000328-04 | $17,378,634 part of $217,232,927 excess of $25,000,000 | |
| James River Insurance Company | 00090459-1 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Maxum Indemnity Company | MSP-6012522-11 | $12,500,000 part of $50,000,000 excess of $50,000,000 | *(signature)* |
| Landmark American Insurance Company | LHD912400 | $48,058,232 part of $192,232,927 excess of $50,000,000 | |
| Homeland Insurance Company of New York | 795012091 | $50,000,000 part of $100,000,000 excess of $200,000,000 | |
| Everest Indemnity Company | CA3X001322201 | $21,116,464 part of $42,232,927 excess of $200,000,000 | |

2

## MASTER PROPERTY POLICY

1.	NAMED INSURED – "Named Insured" means **Portofino Master Homeowners Association at Pensacola Beach, Inc.; Portofino Tower One Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Two Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Three Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Four Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Five Homeowners Association at Pensacola Beach, Inc.** means the First Named Insured and any entity in which the First Named Insured owns an interest of more than 50 percent, during the Policy Period, controls during the Policy Period, or has the responsibility of placing the insurance provided by this Policy during the Policy Period. No entity is covered under this Policy unless the Company has received identifying information for such entity during the application or submission process, except if such entity is covered under miscellaneous unnamed insured locations or newly acquired property, or if such entity is added by endorsement.

	Notwithstanding any provision to the contrary in this Policy, if other valid and collectible insurance is available to any entity covered by this Policy solely because of the ownership, control, or responsibility to purchase insurance by the First Named Insured, this insurance will be excess with regard to such other insurance whether contingent, primary, excess or any other basis.

2.	TERM OF INSURANCE In consideration of a $ annual premium, this policy attaches and covers for a period of one year from April 1, 2020 to April 1, 2021, beginning and ending at 12:01 A.M. standard time, at the location of the property involved.

3.	PARTICIPATION – Please refer to the Participation Page.

4.	LIMIT OF LIABILITY - This Company shall not be liable for more than its proportion of $242,232,927 for any one occurrence.

5.	SUBLIMIT(S) OF LIABILITY) - This Company shall not be liable for more than its proportion of the following sublimits.  Sublimits are part of and not in addition to the overall Limit of Liability and apply on a per occurrence basis unless otherwise noted:

	a)	$15,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Flood.
	b)	$25,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Earthquake.
	c)	$1,000,000 per occurrence as respects Accounts Receivable
	d)	$500,000 per occurrence as respects Arson Reward

3

**Plaintiffs 000608**

e) $1,000,000 per occurrence as respects Contingent Time Element, Attraction Properties are excluded

f) $1,000,000 per occurrence as respects Consequential Loss

g) $10,000,000 per occurrence as respects Course of Construction Including Soft Costs

h) Included per occurrence as respects Demolition and Increased Cost of Construction Coverage A

i) $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage B

j) $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage C

k) $1,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage D

l) $10,000,000 per occurrence as respects Debris Removal

m) $10,000,000 per occurrence as respects Errors and Omissions

n) 25% of the Adjusted Loss Maximum, $10,000,000 per occurrence as respects Extra Expense

o) $5,000,000 per occurrence as respects Expediting Expense

p) 200,000,000 per occurrence as respects Equipment Breakdown

q) $1,000,000 per occurrence as respects Contract Penalty

r) $1,000,000 per occurrence as respects Fire Brigade Charges and Extinguishing Expenses

s) $50,000 per occurrence as respects Inland Transit

t) The lesser of 30 days of $2,500,000 per occurrence as respects Ingress/Egress

u) $5,000,000 per occurrence as respects Miscellaneous Unnamed Locations

v) $5,000,000 per occurrence as respects Newly Acquired Property (90 days; if not reported within 90 days the coverage ceases)

w) $1,000,000 per occurrence as respects Leasehold Interest

x) $500,000 per occurrence as respects Lost Master/Key Card

y) $5,000,000 per occurrence as respects Rental Value/Rental Income

z) Excluded per occurrence as respects Research and Development

aa) $1,000,000 per occurrence as respects Royalties

bb) $2,500,000 per occurrence as respects Service Interruption.  Property Damage and Time Element Combined.

cc) $1,000,000 per occurrence as respects Valuable Papers and Records

dd) The lesser of 30 days of $2,500,000 per occurrence as respects Civil or Military Authority

ee) $3,000,000 per occurrence as respects Landscaping, subject to a $25,000 maximum per item

ff) $1,000,000 per occurrence as respects Fine Arts, subject to a $25,000 maximum per item

The amount of loss from any one occurrence for which this policy is excess, shall be determined by the combined loss, damage or expense as insured under the primary policy.  In the event of loss or damage involving more than one coverage or peril, The Limits of Liability of the underlying policies shall first

4

apply to the coverage(s) or peril(s) not insured by this policy, and the remainder, if any to the coverages(s) or peril(s) as provided hereunder. Upon erosion or exhaustion of the Limits of Liability of the underlying policies, this policy shall then be liable for the loss uncollected from the coverage(s) or perils(s) insured hereunder, subject to the Limit of Liability specified herein.  In the event of reduction or exhaustion of the aggregate limit(s) designated in the underlying policy(ies), it is hereby understood and agreed that such insurance as is afforded by this policy shall apply in excess of the reduced or exhausted underlying limit(s).  The insured maintains the right to allocate and/or apply coverages, interests and/or perils, as insured in the primary and/or excess policies.

6.     DEDUCTIBLE CLAUSE - The Company will adjust all losses, damages or expenses arising out of any one occurrence as one loss. The Company will deduct the following from such loss:

**$50,000** per occurrence for all perils including earthquake sprinkler leakage, and the backup of sewers and drains, except:

WAITING PERIOD:

With respect to all Time Element coverages, coverage is provided by this policy only if the period of interruption of the Insured's business exceeds 24 hours. Then Time Element coverage will apply excess of the appropriate policy deductible.

EARTHQUAKE:

As respects loss or damage to property resulting from the peril of Earthquake, all loss, damage or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deductible the sum of $50,000.  This deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

FLOOD:

As respects loss or damage to property resulting from the peril of Flood, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100 year flooding, as defined by the Federal Emergency Management Agency, all loss arising out of any one occurrence shall be adjusted as one loss and from the loss shall be deducted the maximum amount recoverable under the National Flood Insurance Program for the Real or Personal Property at each Building, whether or not such coverage is purchased or maintained.

In addition, the following Deductible will apply to property not eligible and coverages not available under the National Flood Insurance Program that are covered under this Policy and any difference in valuation between policies: $100,000 per Occurrence.

The determination of whether a property is in whole or in part subject to the 100 Year Flood Zone shall be at the inception of the policy and not at the time of loss.

**Plaintiffs 000610**

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

NAMED STORM:

With respect to loss or damage to property in Tier 1 Counties resulting from the period of Named Windstorm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm), the deductible shall be 2% of such unit of insurance at each location in accordance with policy valuation at the time of loss.  A minimum $100,000 each occurrence shall apply.

With respect to any other named storm loss or damage, the deductible shall be **$50,000** any one occurrence.

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

ALL OTHER WIND and HAIL:
As respects loss or damage to property resulting from the peril of All Other Wind, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

**$50,000**

Definition of 'Unit of Insurance':
  a)  Each separate building or structure
  b)  Contents in each separate building or structure
  c)  Property in the yard of each separate building or structure
  d)  Annual Business Interruption value applying to each separate building or structure.
  e)  Each Other Property item as listed in the Statement of Values.  If values are not listed separately, the value is included in the building value.

Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence. If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the insured shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s), notwithstanding the above reference to two or more deductibles.

The deductible amounts specified above shall not apply to general average contributions and salvage charges.

7.    LOSS PAYABLE - Loss, if any, shall be adjusted with and payable to the Insured, or as directed by them.

**Plaintiffs 000611**

8.     TERRITORY - This policy covers anywhere in the United States of America and its territories and possessions including coastal and inland waterways and while in due course of transit therein or thereto.

9.     PROPERTY COVERED - Except as hereinafter excluded, this policy covers the interest of the Insured in all real and personal property owned, used, leased or intended for use by the Insured or in which the Insured may have an insurable interest, or for which the Insured may be responsible for the insurance, or real or personal property hereafter constructed, erected, installed, or acquired including while in course of construction, erection, installation, and assembly including Improvements and Betterments. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary. This policy is extended to include:

    a)     The interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by written contract for such property, including the cost to defend any allegations of liability for loss or damage to such property.

    b)     At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured.

    c)     Contractors' and/or subcontractors' (of any tier) and/or vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract.

10.     PROPERTY EXCLUDED - This policy does not cover loss or damage to:

    a)     Money and securities;

    b)     Land, land values, except as insured under the "Pollutant Cleanup of Land and Water" clause. This exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements if land improvements have been scheduled on the Schedule of Values on file with the company. Land improvements as described hereunder include, but are not limited to any alteration to the natural condition of the land by grading, landscaping, excavation, earthen dikes or dams, as well as additions to land such as pavements, roadways or similar works;

    c)     Water; except water which is normally contained within any type of tank, piping system or other process equipment;

    d)     Growing crops, standing timber, and live animals;

    e)     Watercraft; aircraft and motor vehicles licensed for highway use;

    f)     Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

    g)     Underground mines or mine shafts or any property within such mine or shaft;

7

Plaintiffs 000612

h)     Offshore property; unless reported on the Schedule of Values on file with the company.

i)     Transmission and Distribution Lines beyond 1,000 feet of Insured Premises;

j)     currency; evidence of debt; notes

k)     Turbines and satellites;

l)     docks, piers, and wharves; bridges, roadways, streets, walks or any other paved surfaces; dams or dikes; railroad rolling stock; off-shore drilling rigs or platforms; underground mines, wells, caverns including property contained therein unless reported on the Schedule of Values on file with the company.

11.    PROPERTY VALUATION - The basis of loss adjustment shall be as follows:

a)     Valuable Papers & Records/Electronic Data Processing Media :  the cost to repair or replace the property with other of like kind and quality including the cost of labor, service or supplies consumed in reconstructing, reproducing, recreating, transcribing or copying information; or, if not so replaced, the value blank.

b)     Raw materials and supplies:  the replacement cost new.

c)     Stock in process:  The value of raw materials plus labor expended plus the proper proportion of overhead charges.

d)     Finished stock and other merchandise for sale:  The regular cash selling price less all discounts and charges to which such property would have been subject had no loss occurred.

e)     Real and personal property of others for which the Insured is liable:  A valuation consistent with the liability of the Insured but only to the extent that such money is necessarily expended by the Insured.

f)     Electronic data processing equipment, production machinery & equipment:  The cost to repair or replace new with like kind and quality. In addition, the Insured may elect to replace such equipment with equipment having technological advances and/or representing an improvement in function and/or forming part of a program of system enhancement and/or more consistent with the Insured's technology strategy (without any reduction or offset for betterment) provided that such replacement can be accomplished without increasing the Insurer's liability.

g)     Fine arts, at original cost to the Insured, per schedule, latest appraised value or current market value, all at the Insured's option.

h)     Other property not otherwise provided for; at replacement cost new without deduction for depreciation.  If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:

8

    i)      The repairs, replacement or reinstatement must be executed with due diligence and dispatch.

    ii)     This Company's liability for loss or damage on a replacement cost basis shall not exceed the lesser of the replacement cost new of the property or any part thereof identical with such property intended for the same occupancy and use, including normal and customary profit and overhead even if the work is performed by the Insured; or the amount actually and necessarily expended in repairing or replacing said property or any part thereof including normal and customary profit and overhead even if the work is performed by the Insured.

12.    BUSINESS INTERRUPTION - This policy shall cover the loss resulting from necessary interruption of business conducted by the Insured including all interdependent loss of earnings between or among companies owned or operated by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

    a)    In the event of such loss, damage or destruction this Company shall be liable for the ACTUAL LOSS SUSTAINED by the insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business. Due consideration shall be given to the continuation of normal charges and expenses including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately before the loss. For the purposes of this insurance, "Gross Earnings" are defined as the sum of:

    i)      Net sales value of production from manufacturing operations, and net sales from Merchandising or Non-Manufacturing operations; and

    ii)     Other earnings derived from operations of the business,

               LESS THE COST OF:

    iii)    Raw Stock from which such production is derived;

    iv)    Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the services(s) sold by the Insured;

    v)     Merchandise sold, including packaging materials therefor; and

    vi)    Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

9

**Plaintiffs 000614**

b)     In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the period of restoration, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including ordinary payroll, directly attributable to such research and development activities.

c)     Resumption of Operations: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business:

     i)     by a complete or partial resumption of operation at a location owned by the same entity suffering the loss, whether damaged or not; or

     ii)     by making use of available stock, merchandise, or other property;

such reduction shall be taken into account in arriving at the amount of loss hereunder.

d)     EXPERIENCE OF THE BUSINESS - In determining the amount of gross earnings, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

e)     As respects coverage provided under the Gross Earnings clause of this policy, the insurer shall not be liable for any loss resulting from loss or damage to finished stock nor for the time required to reproduce said finished stock.

13.     Extra Expense - This policy shall cover the necessary extra expense, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

a)     The term "Extra Expense" wherever used in this Policy, is defined as the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally have been incurred to conduct the business during the same period had no loss or damage occurred.

Plaintiffs 000615

b)      In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities, this policy shall cover the actual loss sustained of the extra expenses as defined herein directly attributable to the interruption of such research and development activities.

c)      As soon as practicable the Insured shall resume normal operations of the business and shall dispense with such extra expense.

14.     This policy is extended to cover expenses as are necessarily incurred for the purpose of reducing any loss under this policy; however, such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

15.     SOFT COSTS - This policy shall cover soft costs, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to property under construction as covered herein.

a)      The term "Soft Costs" shall include:

i)      Additional interest costs on money used to finance construction or repair;
ii)     Additional real estate and property taxes incurred for the period of time that construction extends beyond the projected completion date;
iii)    Additional legal and accounting fees; and
iv)     Additional advertising and promotional expenses which become necessary as a result of an insured loss.

b)      This company shall pay soft costs incurred from the date that the building, structure or improvement would have been completed had no physical damage occurred until such time that it is completed.  As soon as practicable after any loss, the Insured shall utilize every available means to reduce the amount of loss including:

i)      partial or complete resumption of construction, business or operations;
ii)     making use of materials, equipment, supplies, or other property at the Insured's premises or elsewhere; or
iii)    making use of substitute facilities or services where practical;

such reduction will be taken into account in arriving at the amount of such loss.

16.     Rental Value/Rental Income - This policy shall cover the actual loss sustained by the Insured resulting directly from the necessary untenability caused by direct

11

physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as covered herein. Loss settlement shall not exceed the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenability.

a) If the Insured is the lessor, for the purposes of this insurance, "rental value" is defined as the sum of:

i) the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the insured, and

ii) the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

iii) the fair rental value of any portion of said property which is occupied by the Insured.

b) If the Insured is the lessee, rental value shall be the determined rental which the Insured is obligated to pay (including ground rents, accrued charges, real estate taxes and interest if the Insured shall be liable therefor) less such charges and expenses as do not necessarily continue.

c) Experience of the Business - In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred. With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

d) With respect to buildings or structures leased or rented by the Insured, this policy will serve as rental income insurance in those situations where the insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord. This policy will respond for rental expenses incurred by the Insured in excess of the expenses which would have been incurred had a leased or rented premises not been damaged or destroyed by any peril covered under this policy. Such coverage will apply for all additional expenses incurred during the period of untenability or if the lease cannot be terminated until its expiration.

17. Royalties - This policy shall cover the loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to direct physical loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the other party.

Plaintiffs 000617

a)    Any loss hereunder shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED to such income referred to above, which would have been earned had no loss occurred.

b)    Resumption of Operations:  The Insured shall influence, to the extent possible, the party with whom the agreement described above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Company.

c)    Experience of the Business:  In determining the amount of income derived from the agreements(s) described above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

18.    Leasehold Interest - This policy covers the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

a)    the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

b)    improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of this policy;

c)    the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located; and "Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located. The "Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

Plaintiffs 000618

d)      The "Interest of the Insured as Lessee" is defined as:

      i)        the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

      ii)       the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

e)      The "Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is cancelled by the lessee, to the extent not covered under any other section of this policy.

f)      "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "Interest of the Insured as Lessee".

g)      This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

19.     Loss Provisions Applicable to Time Element Coverage - The "Period of Indemnity" is defined as the length of time for which loss may be claimed, and shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy, subject to the following provisions:

a)      The Period of Indemnity shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged.

b)      With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly the Period of Restoration shall be determined as provided above but such determined length of time shall be applied, and the loss hereunder calculated from the date that business operations would have begun had no damage or destruction occurred.

c)      Extended Period of Indemnity - The Period of Indemnity shall include such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

      i)        the date on which the liability of the Company for loss or damage would otherwise terminate; or

14

Plaintiffs 000619

    ii)     the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually completed;

terminating no more than 365 days from said later commencement date.

20.    Extensions of Time Element Coverage: This policy, subject to all its provisions and without increasing the amount of said policy, insures against direct physical loss resulting from damage to or destruction by the perils insured against, to:

a)    Any service provider's property including but not limited to, electrical equipment and systems, water, gas, steam, telephone or their respective transmission and distribution lines or utility plants which directly or indirectly provide incoming or outgoing services to the Insured situated on or outside of the Insured's premises.

b)    the actual loss sustained, and Extra Expense incurred by the Insured at an insured location during the period of restoration directly resulting from physical loss or damage of the type insured to property of the type insured at a Contingent Time Element Location, meaning a location within the TERRITORY of a direct supplier or direct customer of the Insured.

    As respects this subparagraph b):

i.    The Insured will influence and cooperate with the Contingent Time Element Location in every way and take any reasonable and necessary action, including the use of other machinery, supplies, or locations, to effect mitigation of the loss payable hereunder.

ii.    In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

iii.    This Policy does not insure loss resulting from a lack of incoming or outgoing electricity, fuel, gas, water, steam, refrigeration, sewage, or telecommunications of a direct supplier or direct customer of the Insured.

iv.    The per occurrence deductible that applies to all perils also applies to the coverage as provided under this subparagraph b).

c)    dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other manufacturing purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources.

d)    the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory

Plaintiffs 000620

mile of an insured location, access to real or personal property is impaired or hindered by order of civil or military authority irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 e) below.

e)  the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory mile of an insured location, ingress to or egress from real or personal property is thereby impaired or hindered irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 d) above.

f)  property, facilities or piping systems which prevents the Insured from discharging its outgoing effluence.

21.  Transit - This policy shall cover property in transit, and this policy attaches and covers shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.  This insurance is extended to cover loss or damage to property:

a)  sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

b)  arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

c)  occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

d)  at the Insured's option, property which is incoming to the Insured.

The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor. With respect to shipments described under subparagraphs a and d above, this Company agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

16

Plaintiffs 000621

e)  The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

f)  Seaworthiness of any vessel or watercraft, and airworthiness of any aircraft are admitted between this Company and the Insured.

22.  Accounts Receivable - Defined as:

a)  All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

b)  Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

c)  Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

d)  Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

e)  the monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

f)  the monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

23.  Lost Master/Key Card - If a master or grand master key is lost, or damaged so it cannot be duplicated, we will pay for the actual loss of keys, the cost of adjusting locks to accept new keys, or the cost of new locks, if required, of like kind and

17

quality including the cost of installation subject to the limit contained in the Declarations.

24.      Arson Reward - If covered property sustains direct physical loss or damage caused by or resulting from a fire, and the origin of such loss is determined to be the criminal acts of an individual or individuals, we will pay a reward to the person or persons who provide information that leads to the arrest and conviction of the individual or individuals responsible for the loss.

25.      Contract Penalty – This policy covers a compensation payment due under the Hotel Management Agreement between the Franchisee, Named Insured, and any Franchisor, as identified via policy endorsement, or other appropriate subsidiaries acting as the management company or agent, whether insured or not under this policy. The Contract Penalty is triggered when the Hotel Management Agreement is terminated due to loss or damage of a type insured under this policy from an insured peril where such loss or damage causes a total constructive loss.

"A total constructive loss" means the destruction or damage to the Hotel by an insured peril whereby the destruction of or damage to the Hotel is such that the cost of repairing, rebuilding or replacing the Hotel exceeds 50% of the Replacement value of the Hotel." The Contract Penalty will only apply if the franchisor does not release the franchisee from the Hotel Management Agreement after a total constructive loss occurs and the First Named Insured / Franchisee elects not to repair or rebuild the property.

26.      BOILER & MACHINERY - This policy insures direct or indirect loss as covered elsewhere in this policy to insured property as a result of an Accident to an Object subject to the following definitions:

a)       "Object" means any boiler, fired or unfired pressure vessel, refrigerating or air-conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

b)       "Accident" means an accidental loss to an Object or a part thereof which manifests itself in physical damage that necessitates repair or replacement of the Object or part thereof.

c)       "Hazardous Substance" means the additional expense incurred for clean up, repair or replacement, or disposal of damaged, contaminated or polluted property as a result of an "Accident" which causes property to become damaged, contaminated or polluted by a substance declared hazardous to health by an authorized governmental agency. "Additional Expenses" means expenses incurred that would not have been incurred, had no substance hazardous to health been involved in the accident.

27.      PERILS INSURED AGAINST - This policy insures against all risks of direct physical loss of or damage to property described herein including general

Plaintiffs 000623

average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

28. PERILS EXCLUDED - This policy does not insure:

a) infidelity or dishonesty of the Insured or of the Insured's employees. A willful act of malicious intent shall not be deemed to be an act of infidelity. In no event does this Policy insure loss caused by theft by the Insured or the Insured's employees;

b) against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

c) against ordinary wear and tear or gradual deterioration unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

d) against inherent vice or latent defect unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

e) against errors in processing or manufacture of the Insured's product unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

f) against mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

g) against nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except if a covered peril ensues, liability is specifically assumed for direct loss by such ensuing peril but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination. This Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

h) against hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or

Plaintiffs 000624

expected attack by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or by military, naval, or air forces; or by any agent of any such government, power, authority, or forces;

i)      against any weapon employing atomic fission or fusion;

ii)     against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

iii)    against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against under this policy;

iv)    against risks of contraband or illegal trade;

v)     against confiscation, nationalization and expropriation;

Notwithstanding the above provisions, this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated.  Nothing in the foregoing shall be construed to include any loss, damage, or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon or war employing atomic fission or fusion whether in time of peace or war.

i)      loss or damage caused directly or indirectly by the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants unless the release, discharge, dispersal, seepage, migration, or escape is caused by a peril not otherwise excluded herein.  However, if a peril not otherwise excluded herein ensues due to the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants, such ensuing loss or damage shall be covered.

j)      loss or damage caused by an act of terrorism which means an act or series of acts, including the use of force or violence, of any person or group(s) or persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public or any section of the public in fear for such purposes.

k)     against loss or damage caused by insect or vermin.

Plaintiffs 000625

l)     against delay, loss of market loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

m)    against delay, loss of market, loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

n)     against corrosion, depletion, deterioration, erosion, wet rot, dry rot, decay, evaporation, rust, and shrinkage unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

o)     against changes of temperature or humidity, whether atmospheric or not;

p)     against settling, cracking, bulging, shrinking, or expansion of foundations; machinery pedestals, pads, or platforms; floors, pavements, walls, ceilings, or roofs; or the cumulative effects of smog, smoke, soot, vapor liquid, or dust;

q)     against lack of incoming power voice/data/internet access from offsite services except as provided in the Service Interruption Extension.

Exclusion b), c), d) and e) do not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly.

Exclusion b), c) and d) do not apply to property in transit.

29.   DEFINITIONS

a)     The term "Earthquake" as used in this policy shall mean loss or damage caused by or resulting from a series of vibrations induced in the earth's crust by the abrupt rupture and rebound of rocks in which elastic strain has been slowly accumulating (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

b)     The term "Flood" as used in this policy shall mean loss or damage caused by or resulting from waves, tide, or tidal water, and the rising (including the overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and similar bodies of water, whether wind driven or not (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

c)     The term "occurrence" is defined as follows:

Plaintiffs 000626

i)        Except as hereinafter defined, "loss occurrence" shall mean an accident or occurrence or series of accidents or occurrences arising out of one event.

ii)       ii) Each loss occurrence which involves the perils of tornado, windstorm, cyclone, hurricane, hail or flood shall include all loss or damage wherever occurring occasioned by these perils which arise out of one atmospheric disturbance during a continuous period of 168 hours.

iii)      Each loss occurrence which involves the peril of earthquake, a series of earthquakes shall include all losses or damage sustained during a continuous period of 168 hours.

iv)      Each loss occurrence which involves the peril(s) of vandalism, malicious mischief or riot/civil commotion shall include all losses or damage sustained resulting from one or more acts committed by a person acting alone or in collusion with others during a continuous period of 168 hours.

v)       The Insured shall have the right to elect the moment from which the time periods referred to in ii), iii), and iv) above shall be deemed to have commenced, however no elected period of time shall commence within any previous occurrence.

vi)      Should the time period in ii), iii), and iv) above extend beyond expiration or cancellation date of this policy and commence prior to the expiration or cancellation date, this Company shall be liable as is such period fell entirely within the term of this policy.

vii)     However, we shall not be liable hereunder for any loss or damage:

viii)    Occurring before this policy becomes effective; or

ix)      Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

d)      "Raw Stock" - Materials and supplies in the state in which the Insured receives it for conversion by the Insured into Finished Stock, including supplies consumed in such conversion or in the service rendered by the Insured.

e)      "Stock in Process" - Raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture by on behalf of the Insured but which has not become Finished Stock.

f)      "Finished Stock" - Stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

g)      "Merchandise" - Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

h)      "Normal" - The condition that would have existed had no loss occurred.

22

i)      "Improvements and Betterments" - Fixtures, alterations, installations or additions comprising a part of the described building and made or acquired at the expense of the Insured, but which are not legally subject to removal by the Insured.

j)      "Valuable papers and records" - Written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents and manuscripts.

k)      "Electronic Data Processing Media" - All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles.

l)      "Securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets.

m)      "Fine Arts" - Shall include but not be limited to bona fide works of art, works of rarity, works of historical value, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, galley proofs, original records, sculptures, carvings and similar property.

n)      "Architect and Engineering Fees" - Any cost associated with the preparation of plans, supervision of and approval for the repair or replacement of damaged or destroyed property.

o)      "Tier One County" - the entire territory of the United States Virgin Islands, the entire Commonwealth of Puerto Rico, the entire State of Florida, and the following:

      i)      In the State of Alabama, the counties of Baldwin, Escambia, and Mobile;

      ii)      In the State of Connecticut, the counties of Fairfield, New Haven, and New London;

      iii)      In the State of Georgia, the counties of Bryan, Camden, Chatham, Glynn, Liberty, and McIntosh;

      iv)      In the State of Hawaii, the counties of Honolulu, Kauai, and Maui;

      v)      In the State of Louisiana, the counties (also known as "Parishes") of Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, Iberia, Iberville, Jefferson Davis, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John The Baptist, St. Martin, St. Mary, St. Tammany, Terrebonne, and Vermillion;

      vi)      In the Commonwealth of Massachusetts, the counties of Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, and Suffolk;

Plaintiffs 000628

vii)     In the State of Mississippi, the counties of George, Greene, Hancock, Harrison, Jackson, Pearl River, and Stone;

viii)    In the State of New Jersey, the counties of Atlantic, Monmouth, and Ocean;

ix)      In the State of New York, the counties of Kings, Nassau, Queens, and Suffolk;

x)       In the State of North Carolina, the counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington;

xi)      In the State of Rhode Island, the counties of Newport, Providence, and Washington;

xii)     In the State of South Carolina, the counties of Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, and Williamsburg;

xiii)    In the State of Texas, the counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Gollad, Harris, Hidalgo, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, and Willacy; and

xiv)     In the Commonwealth of Virginia, the counties of Accomack, Gloucester, Isle of Wright, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, Westmoreland, and York; and the independent cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Suffolk, and Virginia Beach.

p)       "Named Storm"- A storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Depression or Tropical Storm. "Named storm" does not include "flood" resulting from a "named storm".

q)       "Time Element' – Includes coverage as described under Clause 12., 13., 14., 15., 16., 17., 18., 19. and 20. hereunder.

r)       "Unnamed Location' – A location which has not been scheduled with underwriters or the insured's representative and is not considered a Newly Acquired location.

s)       "Newly Acquired Location" – A location acquired by the insured after inception of this policy for a period of up to 90 days until reported to and agreed by underwriters.

30.   FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES - This policy covers fire brigade charges and other extinguishing expenses for which the Insured may be assessed including loss of fire extinguishing materials expended resulting from a peril insured.

24

Plaintiffs 000629

31.     SEVERABILITY OF INTERESTS - The inclusion herein of more than one person or organization, as Insured, shall not operate to increase the limit of the Company's liability nor the deductible amounts to be borne by the Insured. Except with respect to limits of liability and deductible amounts, the terms of this policy shall apply separately to each person or organization covered as Insured in the same manner and to the same extent as though a separate policy had been issued to each such person or organization.

32.     DEBRIS REMOVAL - This policy covers the cost of removal of debris of property covered hereunder including the cost of removal of debris of property not insured hereunder from the premises of the Insured resulting from a peril insured against. Except as otherwise provided for elsewhere in this policy, this policy does not cover the cost to extract contaminants or pollutants from land or water, nor does it cover the cost to remove, restore or replace contaminated or polluted land or water.

If at the time insured property is contaminated as a direct result of physical damage insured against by this policy there is in force any law or ordinance regulating contamination, including but not limited to pollution, then this policy shall cover, as a result of the enforcement of such law or ordinance, the increased cost of decontamination and debris removal of such property in a manner to satisfy such law or ordinance.  As respects Time Element coverage(s), this policy is extended to include such time as is necessary and reasonable with the exercise of due diligence and dispatch to decontaminate such property in a manner to satisfy such law or ordinance.

33.     DEMOLITION AND INCREASED COST OF CONSTRUCTION - In the event of loss or damage under this policy that causes the enforcement of any law or ordinance in force at the time of loss regulating the construction, repair or use of property, this Company shall be liable for:

a)      COVERAGE A - the loss in value of the undamaged portion of the property as a consequence of the enforcement of any law or ordinance that requires demolition of undamaged parts of the same property;

b)      COVERAGE B – the cost to demolish and clear the site of undamaged parts of the same property;

c)      COVERAGE C – the increased cost to repair or reconstruct damaged and undamaged property on the same or another site when the increased cost is a consequence of the enforcement of any law or ordinance.  These costs are limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  This Company shall not be liable for any increased cost of repair or reconstruction loss unless the damaged property is actually rebuilt or replaced;

25

Plaintiffs 000630

d)   Any increase in loss including but not limited to Business Interruption, Extra Expense, Rental Value, Rental Income, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law or ordinance.

e)   In the event real or personal property is not repaired or replaced to the same height, floor area, size, style or comparable quality of the original property insured due to the enforcement of law or ordinance regulating, restricting or prohibiting repair or replacement of covered property, this policy will pay the full replacement cost without deduction for depreciation for the real or personal property damaged or destroyed, as if the property was replaced to the same height, floor area, size, style or comparable quality of the original property insured.  This policy will also pay Time Element loss as if the original structure were repaired or replaced to original specifications, subject to the terms and conditions of these coverage(s).

34.   EXPEDITING EXPENSE - This policy covers the extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

35.   CONTRIBUTING INSURANCE - Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy.  This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

36.   EXCESS INSURANCE - Excess insurance is insurance over the limit of liability set forth in this policy.  The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

37.   UNDERLYING INSURANCE - Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire.  The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy. Should the amount of loss payable under such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then no deductible shall apply hereunder and that portion which exceeds such a deductible amount shall be considered "other insurance". Should the amount of loss payable under such underlying insurance be less than the largest deductible amount which would apply in the event of loss under this policy, then the deductible amount to be deducted hereunder shall be the difference between the amount to be paid under such underlying insurance and the largest deductible amount which would apply in the event of loss under this policy.

38.   OTHER INSURANCE - Except for insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether

Plaintiffs 000631

prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils.  This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.

39.     SUBROGATION - Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder.  The right of subrogation against the Insured, affiliated, subsidiary, and associated companies, or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived and at the option of the Insured, against a tenant or guest of the Insured. In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.  If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests.  If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

40.     SALVAGE AND RECOVERIES - All salvages, recoveries, and payments, (excluding proceeds from subrogation and underlying insurance) recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly.  If proceeds from subrogation are recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(s) participating in the payment of any loss, in the proportion of their respective interests.

41.     CONTROL OF DAMAGED MERCHANDISE - The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods.  The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods.  The Insured, using reasonable discretion, shall be the sole judge as to whether production or EDP equipment and/or media is damaged and unusable. This insurer shall be allowed to dispose of as salvage, any non-proprietary property deemed unusable by the Insured.

Plaintiffs 000632

42.    BRAND OR TRADEMARK - In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carriers or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at this Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

43.    ERRORS OR OMISSIONS - Any unintentional error or omission made by the Insured in the application for insurance shall not void or impair the insurance hereunder but only to the extent this Policy would have provided coverage had the unintentional error or omission not been made provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department. This coverage does not apply if there is coverage available under any other provision in this Policy.

44.    NOTICE OF LOSS - As soon as practicable after any loss or damage occurring under this policy is known to the Insured's home office insurance department, the Insured shall report such loss or damage with full particulars to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 for transmission to the designated loss adjuster and to this Company.

45.    DESIGNATED LOSS ADJUSTER - It is understood and agreed that each and every loss will be adjusted by Jeff Hellman of McLaren Young International, 19324 40th Avenue West, Suite C, Lynnwood, WA 98036.

46.    PROOF OF LOSS - Proof of loss is required as soon as practicable following the Company's written request for signed Proof from Insured; however, Insured, at its option, may elect to file Proof with the Company prior to the Company's request.  It shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained.

47.    PARTIAL PAYMENT OF LOSS - In the event of a loss covered by this policy, it is understood and agreed that the Company shall allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

48.    PAYMENT OF LOSS - All adjusted claims shall be due and payable no later than thirty (30) days after presentation of acceptable proofs of loss by the Insured or its appointed representative.

49.    LOSS ADJUSTMENT EXPENSES - This policy is extended to include reasonable expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. These expenses include fees of professionals engaged to assist the Insured in determining the cause and origin of the loss, the amount

Plaintiffs 000633

of loss sustained, and the amount of loss payable under this policy. This policy shall not cover the expenses of a public adjuster. Such expenses shall not exceed $2,000,000 in any one occurrence.

50.    APPRAISAL - If the Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser.  The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending.  Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss.  If the appraisers fail to agree, they shall submit their differences to the umpire.  An award in writing by any two shall determine the amount of loss.  The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

51.    CONSEQUENTIAL LOSS - This policy insures against consequential loss including spoilage to real and personal property as insured hereunder caused by change of temperature or humidity or by interruption of any service including but not limited to power, heat, air conditioning, or refrigeration resulting from a peril insured against.

52.    PAIR AND SET - In the event of loss or damage by a peril insured against to any article or articles which are part of a pair or set, the measure of loss or damage to such article or articles shall be the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

53.    CONSEQUENTIAL REDUCTION IN VALUE - This policy covers the reduction in value of insured components or parts of components or parts of products or the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to direct physical loss or damage insured against by this Policy to other insured components or parts of products.

54.    COINSURANCE WAIVER - This policy is not subject to any coinsurance or average clause.

55.    ALTERATIONS AND USE CLAUSE - Permission is granted to the insured to cease operations or for buildings to remain vacant or unoccupied provided fire protection, watch alarm services are maintained, and written notice is given to the Insurer prior to the sixtieth (60th) consecutive day of cessation of operations, vacancy or unoccupancy. The Insured's building is considered vacant or unoccupied when it does not contain enough covered Property to conduct customary business operations.

Plaintiffs 000634

56.    ASSISTANCE AND COOPERATION OF THE INSURED - The Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

57.    SUE AND LABOR - In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment.  This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

58.    REINSTATEMENT - With the exception of loss subject to annual aggregate limits as noted herein, no loss hereunder shall reduce the amount of this policy.

59.    SUIT AGAINST THE COMPANY - No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy.  The Company agrees that any action or proceeding against it for recovery of any loss under this policy shall not be barred if commenced within the time prescribed therefor in the statutes of Florida.

60.    CERTIFICATES OF INSURANCE - It is understood and agreed that Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 is authorized to issue certificates of insurance naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests subject always to the terms, conditions, and limits of liability of this policy. The Company agrees to waive the issuance of formal Company endorsements in respect of such interests.

61.    NOTIFICATION CLAUSE - All notices or communications concerning this policy shall be addressed to the offices of the Insured, to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 and to AmWINS Brokerage of Georgia, 3630 Peachtree Road NE, Suite 1700, Atlanta, GA 30326.  All such notices shall be sent via registered mail.

62.    CANCELLATION/NON RENEWAL - This policy may be cancelled at any time at the request of the Insured or it may be cancelled or non-renewed by the Company by mailing to the Insured written notice stating when, not less than ninety (90) days thereafter or ten (10) days in the event of non-payment of premium, such cancellation or non-renewal shall be effective. If the First Named Insured cancels, return of any unearned premium will be calculated on the

Plaintiffs 000635

customary short rate basis. If the Company cancels, return of any unearned premium will be calculated on a pro rata basis. Return of any unearned premium will be made by the Company as soon as practicable. The cancellation will be effective even if the Company has not made or offered a refund.

63.     TITLES OF PARAGRAPHS - The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

64.     MORTGAGE CLAUSE - As respects Real Property only, loss, if any, under this policy shall be payable to the mortgagee (or trustee) as its interest may appear under all present or future mortgages upon the property herein insured in which the aforesaid may have an interest as mortgagee (or trustee) in order or precedence of mortgages., and this insurance as to the interest of said mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that, in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided also, that the mortgagee (or trustee) shall, notify the Company of any changes of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and unless permitted by this policy, it shall be noted thereon and the mortgagees or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The company reserves the right to cancel this policy at any time as provided by its terms, and in such case, this policy shall continue in force for the benefit only of the mortgagee (or trustee) for an additional thirty (30) days.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgagee debt, or may at their option pay to the mortgagee (or trustee) the whole principal due or to grow on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and all of such other securities, but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

65.     JURISDICTION AND SUIT - It is hereby understood and agreed that in the event of the failure of the Insurer to pay an amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court

Plaintiffs 000636

of competent jurisdiction within the United States and will comply with all requirements necessary to give such jurisdiction.  All matters arising hereunder shall be determined in accordance with the law and practice of such court. In any suit instituted against it under this, the Insurer will abide by the final decision of such court or any appellate court in the event of an appeal.

66. POLLUTANT CLEAN UP AND REMOVAL - This policy is extended to cover the expense actually incurred by the Insured to decontaminate, clean up and/or remove pollutants from land, water or air including resultant time element loss if the release, discharge, or dispersal of the pollutants results from any loss or damage as covered herein. Such expenses shall not exceed $500,000 in any one policy year.

67. ATTACHMENT CLAUSE – Please refer to the Participation Page.

_____
 [Authorized Signature]

Plaintiffs 000637

# Endorsement No. 1

## **Microorganism Exclusion – Resultant Mold**

This policy does not insure any loss, Damage, Time Element, claim, cost, expense or other sum directly or indirectly arising out of or relating to (regardless of whether any other cause or event contributed concurrently or in any sequence):

Fungus, mold, mildew, yeast, mushrooms, spores, toxins, mycotoxins, bacteria or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion shall not apply to any such loss, Damage, Time Element, claim, cost, or expense resulting from mold that is a direct result of an Insured Cause of Loss and is not otherwise excluded by the Policy, provided such loss, Damage, Time Element, claim, cost, or expense is reported to the Company in writing within twelve months from the expiration date of the policy. This clause is subject to a $500,000 per occurrence and in the annual aggregate sublimit.

This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part, for these matters.

All other terms and conditions remain unchanged.

Plaintiffs 000638



A Company of The Hartford

Page Intentionally

Left Blank

**Plaintiffs 000639**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective* **4/1/2020** at 12:01 A.M. Standard time, forms a part of Policy Number

**MSP-6012522-11** issued to **Portofino Master Homeowners Association at Pensacola Beach, Inc. (See also Schedule of Named Insureds)** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Excess - All Risk of Direct Physical Damage excluding Earthquake and Flood**

---

## PAID LOSS EARNED PREMIUM ENDORSEMENT

---

If loss or damage by a Covered Cause of Loss occurs to Covered Property and the Limit of Liability for that Covered Property is paid partially or in full, then the entire policy premium charged is considered fully earned and no premium refund will be due in the event of cancellation of this Policy.

*If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Plaintiffs 000640**



Page Intentionally

Left Blank

Plaintiffs 000641

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective* **4/1/2020** at 12:01 A.M. Standard time, forms a part of Policy Number **MSP-6012522-11** issued to **Portofino Master Homeowners Association at Pensacola Beach, Inc. (See also Schedule of Named Insureds)** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Excess - All Risk of Direct Physical Damage excluding Earthquake and Flood**

---

## NUCLEAR, BIOLOGICAL, CHEMICAL OR RADIOACTIVE MATERIALS EXCLUSION

---

The following exclusion is added to the Policy:

**EXCLUSION – NUCLEAR, BIOLOGICAL, CHEMICAL OR RADIOLOGICAL LOSSES**

A.  We will not pay for loss or damage arising out of or resulting from:

  a.  The release, dispersal or application of radioactive material, or the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or
  b.  The release, dispersal or application of pathogenic or poisonous biological or chemical material.

  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

B.  Exception Covering Certain Fire Losses

  The following exception to the exclusion in Paragraph A**.** applies only if indicated and as indicated in the Schedule of this endorsement.

  If a loss excluded under Paragraph A**.** results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

All other terms, conditions and exclusions of the Policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

*If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

E1259 (4/1/2015)                    Page 1 of 1

**Plaintiffs 000642**



Page Intentionally

Left Blank

Plaintiffs 000643

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective* **4/1/2020** at 12:01 A.M. Standard time, forms a part of Policy Number **MSP-6012522-11** issued to **Portofino Master Homeowners Association at Pensacola Beach, Inc. (See also Schedule of Named Insureds)** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Excess - All Risk of Direct Physical Damage excluding Earthquake and Flood**

---

## ELECTRONIC DATA ENDORSEMENT D ( without media restoration)

---

**Electronic Data Exclusion:**

1.  Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

    a.  This Policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of Electronic Data from any cause whatsoever (including but not limited to Computer Virus) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

    b.  Electronic Data means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programs, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

    c.  Computer Virus means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. Computer Virus includes but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

2.  Notwithstanding the foregoing, this Policy insures physical loss, damage or destruction to Covered Property insured hereunder directly caused by a Listed Peril, but only if a covered peril hereunder, when directly or indirectly caused by 1.a., 1.b. or 1.c. above, but only when occurring during the policy period.

LISTED PERILS:  Fire; lightning; explosion; windstorm or hail; smoke; direct impact of vehicle, aircraft or vessel; strike, riot or civil commotion; vandalism or malicious mischief; leakage or accidental discharge of fire protection equipment; collapse; falling objects; weight of snow, ice or sleet; theft; sudden and accidental discharge leakage, backup or overflow of liquids or molten material from confinement within piping, plumbing systems, tanks, equipment or other containment located at the insured location; Earthquake; Flood.

**Electronic Data Processing Media Valuation:**

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is agreed as follows:

Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost of the blank media plus the costs of copying the Electronic Data from back-up or from originals of a previous generation. These costs will not include research and engineering nor any costs of recreating, gathering or assembling such Electronic Data. If the

*© 2017 by The Hartford. Classification: Internally Controlled. All rights reserved.*
*No part of this document may be reproduced, published or used without the permission of The Hartford.*
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Plaintiffs 000644**

media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such Electronic Data to the Insured or any other party, even if such Electronic Data cannot be recreated, gathered or assembled.

All other terms, conditions and exclusions on the Policy remain unchanged.

*If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

© 2017 by The Hartford. Classification: Internally Controlled. All rights reserved.
No part of this document may be reproduced, published or used without the permission of The Hartford.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

E1308 (7/1/2017)

**Plaintiffs 000645**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/1/2020** at 12:01 A.M. Standard time, forms a part of Policy Number

**MSP-6012522-11** issued to **Portofino Master Homeowners Association at Pensacola Beach, Inc. (See also Schedule of Named Insureds)** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Excess - All Risk of Direct Physical Damage excluding Earthquake and Flood**

---

## ASBESTOS ENDORSEMENT (SUBLIMITED)

---

**ASBESTOS COVERAGE**

This Policy only insures asbestos physically incorporated in an insured building or structure, and then only that part of the asbestos which has been physically damaged during the period of insurance by one of these Listed Cause of Loss or Perils:

> Fire; Explosion, Lightning, Windstorm, Hail, Direct Impact of Vehicle, Aircraft or Vessel, Riot or Civil Commotion, Vandalism or Malicious Mischief, Accidental Discharge of Fire Protective Equipment, Named Windstorm, Earthquake, and Flood.

This coverage is subject to each of the following specific limitations:

1. The building or structure containing the asbestos must be insured under this Policy for loss or damage by that Listed Cause of Loss or Peril.

2. The Listed Cause of Loss or Peril must be the immediate, sole cause of the damage of the asbestos.

3. The Insured must report to the Company the existence and cost of the damage as soon as practicable after the Listed Cause of Loss or Peril first damaged the asbestos. However, this Policy does not insure any such damage first reported to the Underwriters more than 12 (twelve) months after the expiration, or termination, of the period of insurance.

4. Insurance under this Policy in respect of asbestos shall not include any sum relating to:

    i) any faults in the design, manufacture or installation of the asbestos;

    ii) asbestos not physically damaged by the Listed Peril including any governmental or regulatory authority direction or request of whatsoever nature relating to undamaged asbestos.

5. The maximum amount that the Company will pay in any 12 month period is **$25,000**.

---

**Plaintiffs 000646**

ASBESTOS EXCLUSION

Except as set forth above, this Policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to, regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense from asbestos.

This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

**Plaintiffs 000647**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/1/2020** at 12:01 A.M. Standard time, forms a part of Policy Number **MSP-6012522-11** issued to **Portofino Master Homeowners Association at Pensacola Beach, Inc. (See also Schedule of Named Insureds)** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Excess - All Risk of Direct Physical Damage excluding Earthquake and Flood**

---

### BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION

---

BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION


 This Policy does not insure against any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

**Plaintiffs 000648**



Page Intentionally

Left Blank

Plaintiffs 000649

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective* **4/1/2020** at 12:01 A.M. Standard time, forms a part of Policy Number **MSP-6012522-11** issued to **Portofino Master Homeowners Association at Pensacola Beach, Inc. (See also Schedule of Named Insureds)** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

### Excess - All Risk of Direct Physical Damage excluding Earthquake and Flood

---

## SERVICE OF SUIT

---

This endorsement modifies all coverage parts:

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the Commissioner, Superintendent or Director of Insurance or other officer specified for that purpose in the statute, and his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted in any Court of competent jurisdiction by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the person listed below as the person to whom said officer is authorized to mail such process or a true copy thereof:

**Doug Elliot**
**President and CEO**
**Maxum Indemnity Company**
**3655 North Point Parkway**
**Suite 500**
**Alpharetta, GA 30005**

All other terms, conditions and exclusions on this Policy remain unchanged.

*If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

E795 (12/1/2016)                     Page 1 of 1

**Plaintiffs 000650**



Page Intentionally

Left Blank

Plaintiffs 000651

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/1/2020** at 12:01 A.M. Standard time, forms a part of Policy Number **MSP-6012522-11** issued to **Portofino Master Homeowners Association at Pensacola Beach, Inc. (See also Schedule of Named Insureds)** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Excess - All Risk of Direct Physical Damage excluding Earthquake and Flood**

---

## MORTGAGEE INTEREST AND OBLIGATIONS ENDORSEMENT

---

Loss or damage, if any, as covered under this policy, will be payable to each mortgagee (or trustee) designated herein in order of their precedence as their interests may appear. With respect to the mortgagee (or trustee's) interest, this insurance will not be invalidated by any act of the Insured (mortgagor or owner), nor by any foreclosure or other similar proceedings or notice of sale relating to the property, nor by any change in title or ownership of the property, provided that:

1. In the event the Insured (mortgagor or owner) has neglected to pay any premium due under this policy, the mortgagee (or trustee), at the request of the Company, pays the same;
2. The mortgagee (or trustee) has notified the Company of any change in ownership, occupancy or increase in the risk or hazards known to the mortgagee (or trustee) and, at the request of the Company, pays the premium for such increased risk or hazards; and
3. The mortgagee (or trustee) submits a signed, sworn proof of loss within sixty (60) days after having been notified by the Company that the Insured (mortgagor or owner) has failed to do so.

In the event the Company pays the mortgagee (or trustee) for any loss or damage covered under this policy and therefore claims that as to the Insured (mortgagor or owner) no liability existed, the Company will be subrogated to all the rights, to the extent of such payment, of the party to whom such payment was made. The Company may, at the Company's option, pay to the mortgagee (or trustee) the whole principal due plus any accrued interest. Thereupon, the Company will receive a full assignment and transfer of the mortgage and other such securities and the remaining mortgage debt will be payable by the Insured (mortgagor or owner) to the Company.

The Company reserves the right to cancel this policy at any time as provided by its terms but, in such case, this policy will continue in force for the benefit only of the mortgagee (or trustee) for ten (10) days after notice to the mortgagee (or trustee) of cancellation for nonpayment of premium or sixty (60) days after notice to the mortgagee (or trustee) of cancellation for any other reason. In the event the Company elects not to renew this policy, the Company will give written notice to the mortgagee (or trustee) at least thirty (30) days prior to the expiration of this policy.

**Plaintiffs 000652**
Includes copyrighted material of Insurance Services Office, Inc., with its permission.



Page Intentionally

Left Blank

**Plaintiffs 000653**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/1/2020** at 12:01 A.M. Standard time, forms a part of Policy Number

**MSP-6012522-11** issued to **Portofino Master Homeowners Association at Pensacola Beach, Inc. (See also Schedule of Named Insureds)** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Excess - All Risk of Direct Physical Damage excluding Earthquake and Flood**

---

# CHANGE ENDORSEMENT

---

Item 57. Waiver of Company Conditions is removed from the policy.

All other terms and conditions remain unchanged.

**Plaintiffs 000654**



Page Intentionally

Left Blank

Plaintiffs 000655

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/1/2020** at 12:01 A.M. Standard time, forms a part of Policy Number **MSP-6012522-11** issued to **Portofino Master Homeowners Association at Pensacola Beach, Inc. (See also Schedule of Named Insureds)** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Excess - All Risk of Direct Physical Damage excluding Earthquake and Flood**

---

## WIND MINIMUM EARNED PREMIUM ENDORSEMENT

---

The following terms and conditions will apply to this policy:

1. If you cancel this policy, remove a location or reduce the amount of insurance on a location that is within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands, and coverage existed any time during the period of June 1st to November 30th the amount of premium we will return will be the Unearned Premium for the location. The Unearned Premium is the annual premium for the policy (or for the location removed or coverage reduced, as applicable) multiplied by the Unearned Factor noted below. The location premium is the 100% annual rate multiplied by the location value as scheduled in the most current Statement of Values on file with the Company.

2. If a Location that is within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands is added during the term of the policy and coverage exists at any time during the period of June 1st to November 30th, the rate will be calculated as 100% of the annual rate, less the Unearned Factor as calculated in No. 1 above based upon the number of days remaining in the policy term.

3. The provisions of this endorsement replace any short rate provision stipulated in this policy for all locations that are within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaiian Islands and coverage existed any time during the period of June 1st to November 30th.

### 1 year Policy

| Days Policy In Force | Unearned Factor |
|---|---|
| 1 to 180 | 20% |
| 181 to 210 | 15% |
| 211 to 240 | 10% |
| 241 to 270 | 7.5% |
| 271 to 300 | 5.0% |
| 301 to 330 | 2.5% |
| 331 to 365 | 0.0% |

All other terms and conditions remain unchanged.

Plaintiffs 000656



Page Intentionally

Left Blank

**Plaintiffs 000657**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/1/2020** at 12:01 A.M. Standard time, forms a part of Policy Number

**MSP-6012522-11** issued to **Portofino Master Homeowners Association at Pensacola Beach, Inc. (See also Schedule of Named Insureds)** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

### Excess - All Risk of Direct Physical Damage excluding Earthquake and Flood

---

### AMENDMENT – CANCELLATION NOTICE

---

**Paragraph 2.** of **Section A. Cancellation** of the CP0092 (04/01/2009) – **Commercial Property Conditions**, is deleted and replaced by the following:

  **2.**  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      **a.**  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      **b.**  90  days before the effective date of cancellation if we cancel for any other reason.

Includes copyrighted material of Insurance Services Office, Inc with its permission.

Plaintiffs 000658



Page Intentionally

Left Blank

Plaintiffs 000659

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/1/2020** at 12:01 A.M. Standard time, forms a part of Policy Number **MSP-6012522-11** issued to **Portofino Master Homeowners Association at Pensacola Beach, Inc. (See also Schedule of Named Insureds)** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Excess - All Risk of Direct Physical Damage excluding Earthquake and Flood**

---

### POLLUTION AND REMOVAL ENDORSEMENT (SUBLIMITED)

---

## POLLUTION CLEAN UP AND REMOVAL COVERAGE

This policy is extended to pay your expenses to extract "pollutants" from land or water if the release, discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

      **a.**   The date of direct physical "loss"; or
      **b.**   The end of the policy period.

The maximum amount that the Company will pay is up to $25,000 sublimit for pollution clean up and removal in any one occurrence unless the direct loss and pollution clean up and removal expense exceed the applicable Limit of Insurance shown in the "Commercial Property Declarations" in which case that is the most we will pay. Additionally, $25,000 is the maximum amount we will pay for all such Pollution expenses arising out of occurrences in any 12-month period.

## POLLUTION EXCLUSION

Except as set forth above, this policy does not insure any loss or damage, claim, cost, expense or other sum directly or indirectly arising out of the discharge, dispersal, seepage, migration, release or escape of "pollutants" . "POLLUTANTS" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Plaintiffs 000660**



Page Intentionally

Left Blank

**Plaintiffs 000661**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective* **4/1/2020** at 12:01 A.M. Standard time, forms a part of Policy Number **MSP-6012522-11** issued to **Portofino Master Homeowners Association at Pensacola Beach, Inc. (See also Schedule of Named Insureds)** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Excess - All Risk of Direct Physical Damage excluding Earthquake and Flood**

## EXCLUSION - TERRORISM

### SCHEDULE

| The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy: | |
|---|---|
| **State(s)** | **Coverage Form, Coverage Part Or Policy** |
| New York | Commercial Property Coverage Part |
| | |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** The following definitions are added with respect to the provisions of this endorsement:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   **a.** That involve the following or preparation for the following:

   **(1)** Use or threat of force or violence; or

   **(2)** Commission or threat of a dangerous act; or

   **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   **b.** When one or both of the following applies:

   **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

*If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

E1233 (1/1/2015)  Page 1 of 2

Plaintiffs 000662

and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

**B.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If an incident of "terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

*If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

**Plaintiffs 000663**



## Claims Reporting

All claims should be reported immediately. It is imperative that Maxum receive notice of a claim as soon as possible.

Claims can either be reported directly to Maxum or to your agent for processing.

All legal notices should be sent by fax or overnight mail. Many states have limited time frames to file a responsive pleading, thus requiring overnight mail.

If you want to report directly to Maxum, please use one of the methods listed below and include the following information:

1. Name of the insured
2. Policy number and policy dates
3. Date of the loss
4. Detailed description of how and where loss occurred
5. Names, address, home and cell phone numbers of all persons involved
6. Business, home and cell phone numbers of insured
7. Police department name and case number, if reported to police
8. Detailed description of injury or damages

Claims can be reported in the following ways:

**1. E-mail**
   Email to: claims@mxmsig.com

**2. Fax**
   Address to: Claims Department and send fax to (678) 597-4501

**3. Phone**
   Toll Free: (800) 598-6324

**4. U.S. Mail**

   Address to:
   Claims Department
   Maxum Indemnity Company
   3655 North Point Parkway, Suite 500
   Alpharetta, GA 30005

**Plaintiffs 000664**



*A Company of The Hartford*

Page Intentionally

Left Blank



**PRODUCER COMPENSATION NOTICE**

You can review and obtain information on Maxum's producer compensation practices at www.thehartford.com or at 1-800-592-5717.

**Plaintiffs 000666**



Page Intentionally

Left Blank

Plaintiffs 000667

LANDMARK AMERICAN INSURANCE COMPANY
945 EAST PACES FERRY RD
SUITE 1800
ATLANTA GA 30326

# NOTICE OF POLICY CHANGE

Named Insured & Mailing Address:

PORTOFINO MASTER HOMEOWNERS ASSOC
10 PORTOFINO DRIVE
PENSACOLA BEACH FL 32561

Producer: 1051

AMWINS BROKERAGE OF GEORGIA
3630 PEACHTREE ROAD NE
SUITE 1700
ATLANTA GA 30326

Policy No.:      LHD912400
Type of Policy:  COMMERCIAL PROPERTY
Date of Change:  04/01/2021; 12:01 A.M. Local Time at the mailing address of the Named Insured.

This notice is to advise you of changes in this policy on the effective date shown above.

The description of the change is as follows:  Change in rate, and/or limits, and/or terms and conditions

Named Insured

PORTOFINO MASTER HOMEOWNERS ASSOC
10 PORTOFINO DRIVE
PENSACOLA BEACH FL 32561

Date Mailed:
13th day of January, 2021

*David E. Leonard*

DAVID LEONARD

FORM# CP9697FL51995
ODEN 3.0.20.12a

Copy for Named Insured

**Plaintiffs 000668**

FLCP27ANY REAS
01132021INNY
Page 1 of 1

LANDMARK AMERICAN INSURANCE COMPANY
945 EAST PACES FERRY RD
SUITE 1800
ATLANTA GA 30326

# NOTICE OF POLICY CHANGE

Named Insured & Mailing Address:

PORTOFINO MASTER HOMEOWNERS ASSOC
10 PORTOFINO DRIVE
PENSACOLA BEACH FL 32561

Producer: 1051

AMWINS BROKERAGE OF GEORGIA
3630 PEACHTREE ROAD NE
SUITE 1700
ATLANTA GA 30326

---

Policy No.:     LHD912400
Type of Policy:  COMMERCIAL PROPERTY
Date of Change:  04/01/2021; 12:01 A.M. Local Time at the mailing address of the Named Insured.

This notice is to advise you of changes in this policy on the effective date shown above.

---

The description of the change is as follows:  Change in rate, and/or limits, and/or terms and conditions

Producer

AMWINS BROKERAGE OF GEORGIA
3630 PEACHTREE ROAD NE
SUITE 1700
ATLANTA GA 30326

Date Mailed:
13th day of January, 2021

*David E. Leonard*

DAVID LEONARD

Plaintiffs 000669

**COMMON POLICY DECLARATIONS**

RSUI

COMPANY NAME:   Landmark American Insurance Company

BRANCH ADDRESS:   945 East Paces Ferry Road, Suite 1800, Atlanta, GA  30326-1160

POLICY NO.:  LHD912400                                RENEWAL OF:   LHD907672

**NAMED INSURED AND MAILING ADDRESS:**          **PRODUCER:**

Portofino Master Homeowners Association at Pensacola
Beach Inc
(Name Incomplete - refer to Manuscript Form)
10 Portofino Drive
Pensacola Beach, FL 32561

POLICY PERIOD: From ___4/1/2020___ To ___4/1/2021___ 12:01 A.M. Standard Time at your Mailing Address above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE
AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

☒ **SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

☒ **THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

☐ **THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

**Plaintiffs 000670**
A member of Alleghany Insurance Holdings LLC

## COMMON POLICY DECLARATIONS



COMPANY NAME:   Landmark American Insurance Company

BRANCH ADDRESS:   945 East Paces Ferry Road, Suite 1800, Atlanta, GA  30326-1160

POLICY NO.:  LHD912400                                    RENEWAL OF:   LHD907672

**NAMED INSURED AND MAILING ADDRESS:**          **PRODUCER:**

Portofino Master Homeowners Association at Pensacola
Beach Inc
(Name Incomplete - refer to Manuscript Form)
10 Portofino Drive
Pensacola Beach, FL 32561

*THIS IS A TRUE AND
CERTIFIED COPY OF
POLICY # LHD912400*

POLICY PERIOD: From     4/1/2020     To     4/1/2021     12:01 A.M. Standard Time at your Mailing Address above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE
AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| COVERAGE PARTS | PREMIUM | COMM. |
|---|---|---|
| **Commercial Property** | $ | DO NOT WRITE IN THIS AREA |
|  | $ |  |
|  | $ |  |
| STATE ASSESSMENTS & FEES |  |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
| TOTAL | $ |  |

FORMS APPLICABLE TO ALL COVERAGE PARTS:

SEE SCHEDULE OF POLICY ATTACHMENTS AND FORMS, RSG 94106 1009

**BUSINESS DESCRIPTION:** Homeowners Association

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS,
COVERAGE FORMS(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE
CONTRACT OF INSURANCE.

Countersigned:     May 01, 2020     By: _____
                   Date          CMC              Authorized Representative

A member of Alleghany Insurance Holdings LLC

Plaintiffs 000671

LANDMARK AMERICAN INSURANCE COMPANY

# *IMPORTANT NOTICE*

**IMPORTANT INFORMATION TO FLORIDA POLICYHOLDERS**

**KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS**

**QUESTIONS ABOUT YOUR INSURANCE? -** If you have any inquiries, need to obtain coverage information or need assistance in resolving complaints, please do not hesitate to contact your insurance company or agent.

FOR **COMMERCIAL INSURANCE** CONTACT:

RSUI Group, Inc.
945 East Paces Ferry Road
Suite 1800
Atlanta, GA  30326

Call Collect          (404) 231-2366

RSG 99003 0803

**Plaintiffs 000672**

| Policy Number: | LHD912400 |
|---|---|
| Insurer: | Landmark American Insurance Company |
| Named Insured: | Portofino Master Homeowners Association at Pensacola Beach Inc |

## NOTICE - REJECTION OF TERRORISM COVERAGE

Coverage has been "rejected" by the Insured for all acts of terrorism including but not limited to "certified acts of terrorism" under the federal Terrorism Risk Insurance Act.

RSG 99018 1211

A member of Alleghany Insurance Holdings LLC

**Plaintiffs 000673**

**LANDMARK AMERICAN INSURANCE COMPANY**

## State Fraud Statements
## Fraud Statements – Signature Required for New York Only

### ARKANSAS, LOUISIANA, RHODE ISLAND, TEXAS AND WEST VIRGINIA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### ALASKA FRAUD STATEMENT

A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

### ALABAMA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

### ARIZONA FRAUD STATEMENT

For your protection Arizona law requires the following statement to appear on this form.  Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

### CALIFORNIA FRAUD STATEMENT

For your protection, California law requires that you be made aware of the following: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

### COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

### DELAWARE FRAUD STATEMENT

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

### DISTRICT OF COLUMBIA FRAUD STATEMENT

**WARNING:** It is a crime to provide false, or misleading information to an insurer for the purpose of defrauding the insurer or any other person.  Penalties include imprisonment and/or fines.  In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

### FLORIDA FRAUD STATEMENT

Any person who knowingly and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

A member of Alleghany Insurance Holdings LLC

**Plaintiffs 000674**

### HAWAII FRAUD STATEMENT

For your protection, Hawaii law requires you to be informed that any person who presents a fraudulent claim for payment of a loss or benefit is guilty of a crime punishable by fines or imprisonment, or both.

### IDAHO FRAUD STATEMENT

Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

### INDIANA FRAUD STATEMENT

Any person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

### KANSAS FRAUD STATEMENT

An act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto.

### KENTUCKY FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

### MAINE FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

### MARYLAND FRAUD STATEMENT

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### MINNESOTA FRAUD STATEMENT

Any person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

### NEW HAMPSHIRE FRAUD STATEMENT

Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

### NEW JERSEY FRAUD STATEMENT

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

### NEW MEXICO FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

A member of Alleghany Insurance Holdings LLC

**Plaintiffs 000675**

**OHIO FRAUD STATEMENT**

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**OKLAHOMA FRAUD STATEMENT**

**WARNING:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**OREGON FRAUD STATEMENT**

Any person who knowingly files a claim containing a false or deceptive statement for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

**PENNSYLVANIA FRAUD STATEMENT**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**PUERTO RICO FRAUD STATEMENT**

Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**TENNESSEE, VIRGINIA, AND WASHINGTON FRAUD STATEMENT**

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**SIGNATURE REQUIRED**

**NEW YORK FRAUD STATEMENT**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

_____

Insured/Applicant/Claimant

_____

By (Authorized Representative)

_____

Title

_____

Date

A member of Alleghany Insurance Holdings LLC

**Plaintiffs 000676**

# *IMPORTANT NOTICE*

**FLORIDA SURPLUS LINES DISCLOSURE NOTICE**

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

<u>**SCHEDULE OF POLICY ATTACHMENTS AND FORMS**</u>

| <u>Form Number</u> | <u>Form Title</u> |
|---|---|
| | Manuscript Form Including Endt. 1 |
| RSG 93041 0110 | Florida Changes - Cancellation and Nonrenewal |
| RSG 94011 0407 | Service Of Suit |
| RSG 94095 0512 | Minimum Earned Premium (Insureds with Coastal Property) |
| RSG 94138 0315 | Policy Period Amendment |
| RSG 94147 0220 | Appraisal Clause Amendment |
| RSG 96013 1003 | Asbestos Exclusion |
| RSG 96014 0504 | Exclusion of Pathogenic or Poisonous Biological or Chemical Materials |
| RSG 96064 0817 | Exclusion Of Terrorism - Exception Covering Certain Fire Losses |
| RSG 96067 0518 | Cyber Exclusion |
| IL 0017 1198 | Common Policy Conditions |

**Policy No.:**  LHD912400

RSG 94106 1009

**Plaintiffs 000678**

## PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies) , do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy.

Provided that:

1.      The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2.      The liability of each of the Insurers shall not exceed the Participation Limit set against its name.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurer | Policy Number | Participation | Authorized Signature |
|---------|--------------|---------------|---------------------|
| Westchester Surplus Lines Insurance Company | D38064666 004 | $5,000,000 part of $15,000,000 Primary | |
| Endurance American Specialty Insurance Company | ESP30000298003 | $5,500,000 part of $15,000,000 Primary | |
| Everest Indemnity Company | CA3P005801201 | $3,000,000 part of $15,000,000 Primary | |
| Princeton Excess Surplus Lines Insurance Company | 3VA3PP0000251-02 | $1,500,000 part of $15,000,000 Primary | |
| Arch Specialty Insurance Company | ESP1002326-00 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Axis Surplus Insurance Company | EAF645360-20 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Colony Insurance Company | XP190091-1 | $6,250,000 part of $25,000,000 excess of $25,000,000 | |
| Evanston Insurance Company | MKLV11XP007995 | $7,500,000 part of $25,000,000 excess of $25,000,000 | |
| Aspen Specialty Insurance Company | PX005LG20 | $5,000,000 part of $25,000,000 excess of $25,000,000 | |

1

Plaintiffs 000679

| | | | |
|---|---|---|---|
| Independent Specialty Insurance Company | VUX-CN-0000328-04 | $8,689,317 part of $217,232,927 excess of $25,000,000 | |
| Interstate Fire & Casualty Company | VRX-CN-0000328-04 | $28,240,281 part of $217,232,927 excess of $25,000,000 | |
| Lloyd's of London | VPC-CN-0000328-04 | $17,378,634 part of $217,232,927 excess of $25,000,000 | |
| James River Insurance Company | 00090459-1 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Maxum Indemnity Company | MSP-6012522-11 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Landmark American Insurance Company | LHD912400 | $48,058,232 part of $192,232,927 excess of $50,000,000 | *[signature]* |
| Homeland Insurance Company of New York | 795012091 | $50,000,000 part of $100,000,000 excess of $200,000,000 | |
| Everest Indemnity Company | CA3X001322201 | $21,116,464 part of $42,232,927 excess of $200,000,000 | |

2

**Plaintiffs 000680**

**MASTER PROPERTY POLICY**

1.      NAMED INSURED – "Named Insured" means **Portofino Master Homeowners Association at Pensacola Beach, Inc.; Portofino Tower One Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Two Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Three Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Four Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Five Homeowners Association at Pensacola Beach, Inc.** means the First Named Insured and any entity in which the First Named Insured owns an interest of more than 50 percent, during the Policy Period, controls during the Policy Period, or has the responsibility of placing the insurance provided by this Policy during the Policy Period. No entity is covered under this Policy unless the Company has received identifying information for such entity during the application or submission process, except if such entity is covered under miscellaneous unnamed insured locations or newly acquired property, or if such entity is added by endorsement.

      Notwithstanding any provision to the contrary in this Policy, if other valid and collectible insurance is available to any entity covered by this Policy solely because of the ownership, control, or responsibility to purchase insurance by the First Named Insured, this insurance will be excess with regard to such other insurance whether contingent, primary, excess or any other basis.

2.      TERM OF INSURANCE In consideration of a $ annual premium, this policy attaches and covers for a period of one year from April 1, 2020 to April 1, 2021, beginning and ending at 12:01 A.M. standard time, at the location of the property involved.

3.      PARTICIPATION – Please refer to the Participation Page.

4.      LIMIT OF LIABILITY - This Company shall not be liable for more than its proportion of $242,232,927 for any one occurrence.

5.      SUBLIMIT(S) OF LIABILITY) - This Company shall not be liable for more than its proportion of the following sublimits.  Sublimits are part of and not in addition to the overall Limit of Liability and apply on a per occurrence basis unless otherwise noted:

      a)      $15,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Flood.

      b)      $25,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Earthquake.

      c)      $1,000,000 per occurrence as respects Accounts Receivable

      d)      $500,000 per occurrence as respects Arson Reward

**Plaintiffs 000681**

e)    $1,000,000 per occurrence as respects Contingent Time Element, Attraction Properties are excluded

f)    $1,000,000 per occurrence as respects Consequential Loss

g)    $10,000,000 per occurrence as respects Course of Construction Including Soft Costs

h)    Included per occurrence as respects Demolition and Increased Cost of Construction Coverage A

i)    $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage B

j)    $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage C

k)    $1,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage D

l)    $10,000,000 per occurrence as respects Debris Removal

m)    $10,000,000 per occurrence as respects Errors and Omissions

n)    25% of the Adjusted Loss Maximum, $10,000,000 per occurrence as respects Extra Expense

o)    $5,000,000 per occurrence as respects Expediting Expense

p)    200,000,000 per occurrence as respects Equipment Breakdown

q)    $1,000,000 per occurrence as respects Contract Penalty

r)    $1,000,000 per occurrence as respects Fire Brigade Charges and Extinguishing Expenses

s)    $50,000 per occurrence as respects Inland Transit

t)    The lesser of 30 days of $2,500,000 per occurrence as respects Ingress/Egress

u)    $5,000,000 per occurrence as respects Miscellaneous Unnamed Locations

v)    $5,000,000 per occurrence as respects Newly Acquired Property (90 days; if not reported within 90 days the coverage ceases)

w)    $1,000,000 per occurrence as respects Leasehold Interest

x)    $500,000 per occurrence as respects Lost Master/Key Card

y)    $5,000,000 per occurrence as respects Rental Value/Rental Income

z)    Excluded per occurrence as respects Research and Development

aa)    $1,000,000 per occurrence as respects Royalties

bb)    $2,500,000 per occurrence as respects Service Interruption.  Property Damage and Time Element Combined.

cc)    $1,000,000 per occurrence as respects Valuable Papers and Records

dd)    The lesser of 30 days of $2,500,000 per occurrence as respects Civil or Military Authority

ee)    $3,000,000 per occurrence as respects Landscaping, subject to a $25,000 maximum per item

ff)    $1,000,000 per occurrence as respects Fine Arts, subject to a $25,000 maximum per item

The amount of loss from any one occurrence for which this policy is excess, shall be determined by the combined loss, damage or expense as insured under the primary policy.  In the event of loss or damage involving more than one coverage or peril, The Limits of Liability of the underlying policies shall first

4

apply to the coverage(s) or peril(s) not insured by this policy, and the remainder, if any to the coverages(s) or peril(s) as provided hereunder. Upon erosion or exhaustion of the Limits of Liability of the underlying policies, this policy shall then be liable for the loss uncollected from the coverage(s) or perils(s) insured hereunder, subject to the Limit of Liability specified herein.  In the event of reduction or exhaustion of the aggregate limit(s) designated in the underlying policy(ies), it is hereby understood and agreed that such insurance as is afforded by this policy shall apply in excess of the reduced or exhausted underlying limit(s).  The insured maintains the right to allocate and/or apply coverages, interests and/or perils, as insured in the primary and/or excess policies.

6.     DEDUCTIBLE CLAUSE - The Company will adjust all losses, damages or expenses arising out of any one occurrence as one loss. The Company will deduct the following from such loss:

**$50,000** per occurrence for all perils including earthquake sprinkler leakage, and the backup of sewers and drains, except:

WAITING PERIOD:

With respect to all Time Element coverages, coverage is provided by this policy only if the period of interruption of the Insured's business exceeds 24 hours. Then Time Element coverage will apply excess of the appropriate policy deductible.

EARTHQUAKE:

As respects loss or damage to property resulting from the peril of Earthquake, all loss, damage or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deductible the sum of $50,000.  This deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

FLOOD:

As respects loss or damage to property resulting from the peril of Flood, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100 year flooding, as defined by the Federal Emergency Management Agency, all loss arising out of any one occurrence shall be adjusted as one loss and from the loss shall be deducted the maximum amount recoverable under the National Flood Insurance Program for the Real or Personal Property at each Building, whether or not such coverage is purchased or maintained.

In addition, the following Deductible will apply to property not eligible and coverages not available under the National Flood Insurance Program that are covered under this Policy and any difference in valuation between policies: $100,000 per Occurrence.

The determination of whether a property is in whole or in part subject to the 100 Year Flood Zone shall be at the inception of the policy and not at the time of loss.

**Plaintiffs 000683**

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

NAMED STORM:

With respect to loss or damage to property in Tier 1 Counties resulting from the period of Named Windstorm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm), the deductible shall be 2% of such unit of insurance at each location in accordance with policy valuation at the time of loss.  A minimum $100,000 each occurrence shall apply.

With respect to any other named storm loss or damage, the deductible shall be **$50,000** any one occurrence.

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

ALL OTHER WIND and HAIL:
As respects loss or damage to property resulting from the peril of All Other Wind, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

**$50,000**

Definition of 'Unit of Insurance':
  a)  Each separate building or structure
  b)  Contents in each separate building or structure
  c)  Property in the yard of each separate building or structure
  d)  Annual Business Interruption value applying to each separate building or structure.
  e)  Each Other Property item as listed in the Statement of Values.  If values are not listed separately, the value is included in the building value.

Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence. If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the insured shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s), notwithstanding the above reference to two or more deductibles.

The deductible amounts specified above shall not apply to general average contributions and salvage charges.

7.   LOSS PAYABLE - Loss, if any, shall be adjusted with and payable to the Insured, or as directed by them.

**Plaintiffs 000684**

8.     TERRITORY - This policy covers anywhere in the United States of America and its territories and possessions including coastal and inland waterways and while in due course of transit therein or thereto.

9.     PROPERTY COVERED - Except as hereinafter excluded, this policy covers the interest of the Insured in all real and personal property owned, used, leased or intended for use by the Insured or in which the Insured may have an insurable interest, or for which the Insured may be responsible for the insurance, or real or personal property hereafter constructed, erected, installed, or acquired including while in course of construction, erection, installation, and assembly including Improvements and Betterments. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.  This policy is extended to include:
   a)     The interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by written contract for such property, including the cost to defend any allegations of liability for loss or damage to such property.
   b)     At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured.
   c)     Contractors' and/or subcontractors' (of any tier) and/or vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract.

10.    PROPERTY EXCLUDED - This policy does not cover loss or damage to:

   a)     Money and securities;
   b)     Land, land values, except as insured under the "Pollutant Cleanup of Land and Water" clause.  This exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements if land improvements have been scheduled on the Schedule of Values on file with the company.  Land improvements as described hereunder include, but are not limited to any alteration to the natural condition of the land by grading, landscaping, excavation, earthen dikes or dams, as well as additions to land such as pavements, roadways or similar works;
   c)     Water; except water which is normally contained within any type of tank, piping system or other process equipment;
   d)     Growing crops, standing timber, and live animals;
   e)     Watercraft; aircraft and motor vehicles licensed for highway use;
   f)     Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.
   g)     Underground mines or mine shafts or any property within such mine or shaft;

7

Plaintiffs 000685

h)      Offshore property; unless reported on the Schedule of Values on file with the company.

i)      Transmission and Distribution Lines beyond 1,000 feet of Insured Premises;

j)      currency; evidence of debt; notes

k)      Turbines and satellites;

l)      docks, piers, and wharves; bridges, roadways, streets, walks or any other paved surfaces; dams or dikes; railroad rolling stock; off-shore drilling rigs or platforms; underground mines, wells, caverns including property contained therein unless reported on the Schedule of Values on file with the company.

11.      PROPERTY VALUATION - The basis of loss adjustment shall be as follows:

a)      Valuable Papers & Records/Electronic Data Processing Media :  the cost to repair or replace the property with other of like kind and quality including the cost of labor, service or supplies consumed in reconstructing, reproducing, recreating, transcribing or copying information; or, if not so replaced, the value blank.

b)      Raw materials and supplies:  the replacement cost new.

c)      Stock in process:  The value of raw materials plus labor expended plus the proper proportion of overhead charges.

d)      Finished stock and other merchandise for sale:  The regular cash selling price less all discounts and charges to which such property would have been subject had no loss occurred.

e)      Real and personal property of others for which the Insured is liable:  A valuation consistent with the liability of the Insured but only to the extent that such money is necessarily expended by the Insured.

f)      Electronic data processing equipment, production machinery & equipment:  The cost to repair or replace new with like kind and quality. In addition, the Insured may elect to replace such equipment with equipment having technological advances and/or representing an improvement in function and/or forming part of a program of system enhancement and/or more consistent with the Insured's technology strategy (without any reduction or offset for betterment) provided that such replacement can be accomplished without increasing the Insurer's liability.

g)      Fine arts, at original cost to the Insured, per schedule, latest appraised value or current market value, all at the Insured's option.

h)      Other property not otherwise provided for; at replacement cost new without deduction for depreciation.  If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:

8

Plaintiffs 000686

      i)      The repairs, replacement or reinstatement must be executed with due diligence and dispatch.

      ii)     This Company's liability for loss or damage on a replacement cost basis shall not exceed the lesser of the replacement cost new of the property or any part thereof identical with such property intended for the same occupancy and use, including normal and customary profit and overhead even if the work is performed by the Insured; or the amount actually and necessarily expended in repairing or replacing said property or any part thereof including normal and customary profit and overhead even if the work is performed by the Insured.

12.    BUSINESS INTERRUPTION - This policy shall cover the loss resulting from necessary interruption of business conducted by the Insured including all interdependent loss of earnings between or among companies owned or operated by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

    a)     In the event of such loss, damage or destruction this Company shall be liable for the ACTUAL LOSS SUSTAINED by the insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business. Due consideration shall be given to the continuation of normal charges and expenses including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately before the loss. For the purposes of this insurance, "Gross Earnings" are defined as the sum of:

      i)      Net sales value of production from manufacturing operations, and net sales from Merchandising or Non-Manufacturing operations; and

      ii)     Other earnings derived from operations of the business,

               LESS THE COST OF:

      iii)    Raw Stock from which such production is derived;

      iv)    Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the services(s) sold by the Insured;

      v)     Merchandise sold, including packaging materials therefor; and

      vi)    Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

Plaintiffs 000687

b)      In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the period of restoration, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including ordinary payroll, directly attributable to such research and development activities.

c)      Resumption of Operations: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business:

    i)     by a complete or partial resumption of operation at a location owned by the same entity suffering the loss, whether damaged or not; or

    ii)    by making use of available stock, merchandise, or other property;

such reduction shall be taken into account in arriving at the amount of loss hereunder.

d)      EXPERIENCE OF THE BUSINESS - In determining the amount of gross earnings, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

e)      As respects coverage provided under the Gross Earnings clause of this policy, the insurer shall not be liable for any loss resulting from loss or damage to finished stock nor for the time required to reproduce said finished stock.

13.    Extra Expense - This policy shall cover the necessary extra expense, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

a)      The term "Extra Expense" wherever used in this Policy, is defined as the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally have been incurred to conduct the business during the same period had no loss or damage occurred.

Plaintiffs 000688

b)      In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities, this policy shall cover the actual loss sustained of the extra expenses as defined herein directly attributable to the interruption of such research and development activities.

c)      As soon as practicable the Insured shall resume normal operations of the business and shall dispense with such extra expense.

14.     This policy is extended to cover expenses as are necessarily incurred for the purpose of reducing any loss under this policy; however, such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

15.     SOFT COSTS - This policy shall cover soft costs, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to property under construction as covered herein.

a)      The term "Soft Costs" shall include:

     i)      Additional interest costs on money used to finance construction or repair;

     ii)     Additional real estate and property taxes incurred for the period of time that construction extends beyond the projected completion date;

     iii)    Additional legal and accounting fees; and

     iv)    Additional advertising and promotional expenses which become necessary as a result of an insured loss.

b)      This company shall pay soft costs incurred from the date that the building, structure or improvement would have been completed had no physical damage occurred until such time that it is completed.  As soon as practicable after any loss, the Insured shall utilize every available means to reduce the amount of loss including:

     i)      partial or complete resumption of construction, business or operations;

     ii)     making use of materials, equipment, supplies, or other property at the Insured's premises or elsewhere; or

     iii)    making use of substitute facilities or services where practical;

     such reduction will be taken into account in arriving at the amount of such loss.

16.     Rental Value/Rental Income - This policy shall cover the actual loss sustained by the Insured resulting directly from the necessary untenability caused by direct

Plaintiffs 000689

physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as covered herein.  Loss settlement shall not exceed the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenability.

a)      If the Insured is the lessor, for the purposes of this insurance, "rental value" is defined as the sum of:

   i)      the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the insured, and

   ii)     the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

   iii)    the fair rental value of any portion of said property which is occupied by the Insured.

b)      If the Insured is the lessee, rental value shall be the determined rental which the Insured is obligated to pay (including ground rents, accrued charges, real estate taxes and interest if the Insured shall be liable therefor) less such charges and expenses as do not necessarily continue.

c)      Experience of the Business - In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

d)      With respect to buildings or structures leased or rented by the Insured, this policy will serve as rental income insurance in those situations where the insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord.  This policy will respond for rental expenses incurred by the Insured in excess of the expenses which would have been incurred had a leased or rented premises not been damaged or destroyed by any peril covered under this policy. Such coverage will apply for all additional expenses incurred during the period of untenability or if the lease cannot be terminated until its expiration.

17.    Royalties - This policy shall cover the loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to direct physical loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the other party.

12

**Plaintiffs 000690**

a)   Any loss hereunder shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED to such income referred to above, which would have been earned had no loss occurred.

b)   Resumption of Operations:  The Insured shall influence, to the extent possible, the party with whom the agreement described above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Company.

c)   Experience of the Business:  In determining the amount of income derived from the agreements(s) described above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

18.   Leasehold Interest - This policy covers the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

a)   the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

b)   improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of this policy;

c)   the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located; and "Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located. The "Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

Plaintiffs 000691

d)    The "Interest of the Insured as Lessee" is defined as:

    i)    the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

    ii)    the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

e)    The "Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is cancelled by the lessee, to the extent not covered under any other section of this policy.

f)    "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "Interest of the Insured as Lessee".

g)    This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

19.    Loss Provisions Applicable to Time Element Coverage - The "Period of Indemnity" is defined as the length of time for which loss may be claimed, and shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy, subject to the following provisions:

a)    The Period of Indemnity shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged.

b)    With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly the Period of Restoration shall be determined as provided above but such determined length of time shall be applied, and the loss hereunder calculated from the date that business operations would have begun had no damage or destruction occurred.

c)    Extended Period of Indemnity - The Period of Indemnity shall include such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

    i)    the date on which the liability of the Company for loss or damage would otherwise terminate; or

Plaintiffs 000692

ii)     the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually completed;

terminating no more than 365 days from said later commencement date.

20.   Extensions of Time Element Coverage: This policy, subject to all its provisions and without increasing the amount of said policy, insures against direct physical loss resulting from damage to or destruction by the perils insured against, to:

a)     Any service provider's property including but not limited to, electrical equipment and systems, water, gas, steam, telephone or their respective transmission and distribution lines or utility plants which directly or indirectly provide incoming or outgoing services to the Insured situated on or outside of the Insured's premises.

b)     the actual loss sustained, and Extra Expense incurred by the Insured at an insured location during the period of restoration directly resulting from physical loss or damage of the type insured to property of the type insured at a Contingent Time Element Location, meaning a location within the TERRITORY of a direct supplier or direct customer of the Insured.

As respects this subparagraph b):

i.    The Insured will influence and cooperate with the Contingent Time Element Location in every way and take any reasonable and necessary action, including the use of other machinery, supplies, or locations, to effect mitigation of the loss payable hereunder.

ii.   In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

iii.  This Policy does not insure loss resulting from a lack of incoming or outgoing electricity, fuel, gas, water, steam, refrigeration, sewage, or telecommunications of a direct supplier or direct customer of the Insured.

iv.   The per occurrence deductible that applies to all perils also applies to the coverage as provided under this subparagraph b).

c)     dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other manufacturing purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources.

d)     the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory

Plaintiffs 000693

mile of an insured location, access to real or personal property is impaired or hindered by order of civil or military authority irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 e) below.

e)    the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory mile of an insured location, ingress to or egress from real or personal property is thereby impaired or hindered irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 d) above.

f)    property, facilities or piping systems which prevents the Insured from discharging its outgoing effluence.

21.    Transit - This policy shall cover property in transit, and this policy attaches and covers shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.  This insurance is extended to cover loss or damage to property:

a)    sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

b)    arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

c)    occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

d)    at the Insured's option, property which is incoming to the Insured.

The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor. With respect to shipments described under subparagraphs a and d above, this Company agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

Plaintiffs 000694

      e)     The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

      f)     Seaworthiness of any vessel or watercraft, and airworthiness of any aircraft are admitted between this Company and the Insured.

22.    Accounts Receivable - Defined as:

      a)     All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

      b)     Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

      c)     Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

      d)     Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

      e)     the monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

      f)     the monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

23.    Lost Master/Key Card - If a master or grand master key is lost, or damaged so it cannot be duplicated, we will pay for the actual loss of keys, the cost of adjusting locks to accept new keys, or the cost of new locks, if required, of like kind and

Plaintiffs 000695

quality including the cost of installation subject to the limit contained in the Declarations.

24.    Arson Reward - If covered property sustains direct physical loss or damage caused by or resulting from a fire, and the origin of such loss is determined to be the criminal acts of an individual or individuals, we will pay a reward to the person or persons who provide information that leads to the arrest and conviction of the individual or individuals responsible for the loss.

25.    Contract Penalty – This policy covers a compensation payment due under the Hotel Management Agreement between the Franchisee, Named Insured, and any Franchisor, as identified via policy endorsement, or other appropriate subsidiaries acting as the management company or agent, whether insured or not under this policy. The Contract Penalty is triggered when the Hotel Management Agreement is terminated due to loss or damage of a type insured under this policy from an insured peril where such loss or damage causes a total constructive loss.

"A total constructive loss" means the destruction or damage to the Hotel by an insured peril whereby the destruction of or damage to the Hotel is such that the cost of repairing, rebuilding or replacing the Hotel exceeds 50% of the Replacement value of the Hotel." The Contract Penalty will only apply if the franchisor does not release the franchisee from the Hotel Management Agreement after a total constructive loss occurs and the First Named Insured / Franchisee elects not to repair or rebuild the property.

26.    BOILER & MACHINERY - This policy insures direct or indirect loss as covered elsewhere in this policy to insured property as a result of an Accident to an Object subject to the following definitions:

a)    "Object" means any boiler, fired or unfired pressure vessel, refrigerating or air-conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.
b)    "Accident" means an accidental loss to an Object or a part thereof which manifests itself in physical damage that necessitates repair or replacement of the Object or part thereof.
c)    "Hazardous Substance" means the additional expense incurred for clean up, repair or replacement, or disposal of damaged, contaminated or polluted property as a result of an "Accident" which causes property to become damaged, contaminated or polluted by a substance declared hazardous to health by an authorized governmental agency.  "Additional Expenses" means expenses incurred that would not have been incurred, had no substance hazardous to health been involved in the accident.

27.    PERILS INSURED AGAINST - This policy insures against all risks of direct physical loss of or damage to property described herein including general

18

average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

28.    PERILS EXCLUDED - This policy does not insure:

a)    infidelity or dishonesty of the Insured or of the Insured's employees. A willful act of malicious intent shall not be deemed to be an act of infidelity. In no event does this Policy insure loss caused by theft by the Insured or the Insured's employees;

b)    against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

c)    against ordinary wear and tear or gradual deterioration unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

d)    against inherent vice or latent defect unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

e)    against errors in processing or manufacture of the Insured's product unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

f)    against mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

g)    against nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except if a covered peril ensues, liability is specifically assumed for direct loss by such ensuing peril but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination.  This Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

h)    against hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or

Plaintiffs 000697

expected attack by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or by military, naval, or air forces; or by any agent of any such government, power, authority, or forces;

i) against any weapon employing atomic fission or fusion;

ii) against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

iii) against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against under this policy;

iv) against risks of contraband or illegal trade;

v) against confiscation, nationalization and expropriation;

Notwithstanding the above provisions, this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated. Nothing in the foregoing shall be construed to include any loss, damage, or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon or war employing atomic fission or fusion whether in time of peace or war.

i) loss or damage caused directly or indirectly by the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants unless the release, discharge, dispersal, seepage, migration, or escape is caused by a peril not otherwise excluded herein. However, if a peril not otherwise excluded herein ensues due to the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants, such ensuing loss or damage shall be covered.

j) loss or damage caused by an act of terrorism which means an act or series of acts, including the use of force or violence, of any person or group(s) or persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public or any section of the public in fear for such purposes.

k) against loss or damage caused by insect or vermin.

20

Plaintiffs 000698

l)  against delay, loss of market loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

m)  against delay, loss of market, loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

n)  against corrosion, depletion, deterioration, erosion, wet rot, dry rot, decay, evaporation, rust, and shrinkage unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

o)  against changes of temperature or humidity, whether atmospheric or not;

p)  against settling, cracking, bulging, shrinking, or expansion of foundations; machinery pedestals, pads, or platforms; floors, pavements, walls, ceilings, or roofs; or the cumulative effects of smog, smoke, soot, vapor liquid, or dust;

q)  against lack of incoming power voice/data/internet access from offsite services except as provided in the Service Interruption Extension.

Exclusion b), c), d) and e) do not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly.

Exclusion b), c) and d) do not apply to property in transit.

29.  DEFINITIONS

a)  The term "Earthquake" as used in this policy shall mean loss or damage caused by or resulting from a series of vibrations induced in the earth's crust by the abrupt rupture and rebound of rocks in which elastic strain has been slowly accumulating (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

b)  The term "Flood" as used in this policy shall mean loss or damage caused by or resulting from waves, tide, or tidal water, and the rising (including the overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and similar bodies of water, whether wind driven or not (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

c)  The term "occurrence" is defined as follows:

Plaintiffs 000699

i)     Except as hereinafter defined, "loss occurrence" shall mean an accident or occurrence or series of accidents or occurrences arising out of one event.

ii)     ii) Each loss occurrence which involves the perils of tornado, windstorm, cyclone, hurricane, hail or flood shall include all loss or damage wherever occurring occasioned by these perils which arise out of one atmospheric disturbance during a continuous period of 168 hours.

iii)     Each loss occurrence which involves the peril of earthquake, a series of earthquakes shall include all losses or damage sustained during a continuous period of 168 hours.

iv)     Each loss occurrence which involves the peril(s) of vandalism, malicious mischief or riot/civil commotion shall include all losses or damage sustained resulting from one or more acts committed by a person acting alone or in collusion with others during a continuous period of 168 hours.

v)     The Insured shall have the right to elect the moment from which the time periods referred to in ii), iii), and iv) above shall be deemed to have commenced, however no elected period of time shall commence within any previous occurrence.

vi)     Should the time period in ii), iii), and iv) above extend beyond expiration or cancellation date of this policy and commence prior to the expiration or cancellation date, this Company shall be liable as is such period fell entirely within the term of this policy.

vii)     However, we shall not be liable hereunder for any loss or damage:

viii)     Occurring before this policy becomes effective; or

ix)     Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

d)     "Raw Stock" - Materials and supplies in the state in which the Insured receives it for conversion by the Insured into Finished Stock, including supplies consumed in such conversion or in the service rendered by the Insured.

e)     "Stock in Process" - Raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture by on behalf of the Insured but which has not become Finished Stock.

f)     "Finished Stock" - Stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

g)     "Merchandise" - Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

h)     "Normal" - The condition that would have existed had no loss occurred.

Plaintiffs 000700

i)      "Improvements and Betterments" - Fixtures, alterations, installations or additions comprising a part of the described building and made or acquired at the expense of the Insured, but which are not legally subject to removal by the Insured.

j)      "Valuable papers and records" - Written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents and manuscripts.

k)      "Electronic Data Processing Media" - All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles.

l)      "Securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets.

m)      "Fine Arts" - Shall include but not be limited to bona fide works of art, works of rarity, works of historical value, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, galley proofs, original records, sculptures, carvings and similar property.

n)      "Architect and Engineering Fees" - Any cost associated with the preparation of plans, supervision of and approval for the repair or replacement of damaged or destroyed property.

o)      "Tier One County" - the entire territory of the United States Virgin Islands, the entire Commonwealth of Puerto Rico, the entire State of Florida, and the following:

      i)      In the State of Alabama, the counties of Baldwin, Escambia, and Mobile;

      ii)      In the State of Connecticut, the counties of Fairfield, New Haven, and New London;

      iii)      In the State of Georgia, the counties of Bryan, Camden, Chatham, Glynn, Liberty, and McIntosh;

      iv)      In the State of Hawaii, the counties of Honolulu, Kauai, and Maui;

      v)      In the State of Louisiana, the counties (also known as "Parishes") of Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, Iberia, Iberville, Jefferson Davis, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John The Baptist, St. Martin, St. Mary, St. Tammany, Terrebonne, and Vermillion;

      vi)      In the Commonwealth of Massachusetts, the counties of Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, and Suffolk;

23

vii)   In the State of Mississippi, the counties of George, Greene, Hancock, Harrison, Jackson, Pearl River, and Stone;

viii)  In the State of New Jersey, the counties of Atlantic, Monmouth, and Ocean;

ix)    In the State of New York, the counties of Kings, Nassau, Queens, and Suffolk;

x)     In the State of North Carolina, the counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington;

xi)    In the State of Rhode Island, the counties of Newport, Providence, and Washington;

xii)   In the State of South Carolina, the counties of Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, and Williamsburg;

xiii)  In the State of Texas, the counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Gollad, Harris, Hidalgo, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, and Willacy; and

xiv)   In the Commonwealth of Virginia, the counties of Accomack, Gloucester, Isle of Wright, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, Westmoreland, and York; and the independent cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Suffolk, and Virginia Beach.

p)   "Named Storm"- A storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Depression or Tropical Storm. "Named storm" does not include "flood" resulting from a "named storm".

q)   "Time Element' – Includes coverage as described under Clause 12., 13., 14., 15., 16., 17., 18., 19. and 20. hereunder.

r)   "Unnamed Location' – A location which has not been scheduled with underwriters or the insured's representative and is not considered a Newly Acquired location.

s)   "Newly Acquired Location" – A location acquired by the insured after inception of this policy for a period of up to 90 days until reported to and agreed by underwriters.

30.   FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES - This policy covers fire brigade charges and other extinguishing expenses for which the Insured may be assessed including loss of fire extinguishing materials expended resulting from a peril insured.

24

31.     SEVERABILITY OF INTERESTS - The inclusion herein of more than one person or organization, as Insured, shall not operate to increase the limit of the Company's liability nor the deductible amounts to be borne by the Insured. Except with respect to limits of liability and deductible amounts, the terms of this policy shall apply separately to each person or organization covered as Insured in the same manner and to the same extent as though a separate policy had been issued to each such person or organization.

32.     DEBRIS REMOVAL - This policy covers the cost of removal of debris of property covered hereunder including the cost of removal of debris of property not insured hereunder from the premises of the Insured resulting from a peril insured against. Except as otherwise provided for elsewhere in this policy, this policy does not cover the cost to extract contaminants or pollutants from land or water, nor does it cover the cost to remove, restore or replace contaminated or polluted land or water.

If at the time insured property is contaminated as a direct result of physical damage insured against by this policy there is in force any law or ordinance regulating contamination, including but not limited to pollution, then this policy shall cover, as a result of the enforcement of such law or ordinance, the increased cost of decontamination and debris removal of such property in a manner to satisfy such law or ordinance.  As respects Time Element coverage(s), this policy is extended to include such time as is necessary and reasonable with the exercise of due diligence and dispatch to decontaminate such property in a manner to satisfy such law or ordinance.

33.     DEMOLITION AND INCREASED COST OF CONSTRUCTION - In the event of loss or damage under this policy that causes the enforcement of any law or ordinance in force at the time of loss regulating the construction, repair or use of property, this Company shall be liable for:

a)      COVERAGE A - the loss in value of the undamaged portion of the property as a consequence of the enforcement of any law or ordinance that requires demolition of undamaged parts of the same property;

b)      COVERAGE B – the cost to demolish and clear the site of undamaged parts of the same property;

c)      COVERAGE C – the increased cost to repair or reconstruct damaged and undamaged property on the same or another site when the increased cost is a consequence of the enforcement of any law or ordinance.  These costs are limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  This Company shall not be liable for any increased cost of repair or reconstruction loss unless the damaged property is actually rebuilt or replaced;

25

Plaintiffs 000703

d)     Any increase in loss including but not limited to Business Interruption, Extra Expense, Rental Value, Rental Income, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law or ordinance.

e)     In the event real or personal property is not repaired or replaced to the same height, floor area, size, style or comparable quality of the original property insured due to the enforcement of law or ordinance regulating, restricting or prohibiting repair or replacement of covered property, this policy will pay the full replacement cost without deduction for depreciation for the real or personal property damaged or destroyed, as if the property was replaced to the same height, floor area, size, style or comparable quality of the original property insured.  This policy will also pay Time Element loss as if the original structure were repaired or replaced to original specifications, subject to the terms and conditions of these coverage(s).

34.    EXPEDITING EXPENSE - This policy covers the extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

35.    CONTRIBUTING INSURANCE - Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy.  This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

36.    EXCESS INSURANCE - Excess insurance is insurance over the limit of liability set forth in this policy.  The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

37.    UNDERLYING INSURANCE - Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire.  The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy. Should the amount of loss payable under such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then no deductible shall apply hereunder and that portion which exceeds such a deductible amount shall be considered "other insurance". Should the amount of loss payable under such underlying insurance be less than the largest deductible amount which would apply in the event of loss under this policy, then the deductible amount to be deducted hereunder shall be the difference between the amount to be paid under such underlying insurance and the largest deductible amount which would apply in the event of loss under this policy.

38.    OTHER INSURANCE - Except for insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether

Plaintiffs 000704

prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils.  This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.

39.     SUBROGATION - Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder.  The right of subrogation against the Insured, affiliated, subsidiary, and associated companies, or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived and at the option of the Insured, against a tenant or guest of the Insured. In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.  If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests.  If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

40.     SALVAGE AND RECOVERIES - All salvages, recoveries, and payments, (excluding proceeds from subrogation and underlying insurance) recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly.  If proceeds from subrogation are recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(s) participating in the payment of any loss, in the proportion of their respective interests.

41.     CONTROL OF DAMAGED MERCHANDISE - The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods.  The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods.  The Insured, using reasonable discretion, shall be the sole judge as to whether production or EDP equipment and/or media is damaged and unusable. This insurer shall be allowed to dispose of as salvage, any non-proprietary property deemed unusable by the Insured.

Plaintiffs 000705

42.    BRAND OR TRADEMARK - In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carriers or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at this Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

43.    ERRORS OR OMISSIONS - Any unintentional error or omission made by the Insured in the application for insurance shall not void or impair the insurance hereunder but only to the extent this Policy would have provided coverage had the unintentional error or omission not been made provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department. This coverage does not apply if there is coverage available under any other provision in this Policy.

44.    NOTICE OF LOSS - As soon as practicable after any loss or damage occurring under this policy is known to the Insured's home office insurance department, the Insured shall report such loss or damage with full particulars to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 for transmission to the designated loss adjuster and to this Company.

45.    DESIGNATED LOSS ADJUSTER - It is understood and agreed that each and every loss will be adjusted by Jeff Hellman of McLaren Young International, 19324 40th Avenue West, Suite C, Lynnwood, WA 98036.

46.    PROOF OF LOSS - Proof of loss is required as soon as practicable following the Company's written request for signed Proof from Insured; however, Insured, at its option, may elect to file Proof with the Company prior to the Company's request.  It shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained.

47.    PARTIAL PAYMENT OF LOSS - In the event of a loss covered by this policy, it is understood and agreed that the Company shall allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

48.    PAYMENT OF LOSS - All adjusted claims shall be due and payable no later than thirty (30) days after presentation of acceptable proofs of loss by the Insured or its appointed representative.

49.    LOSS ADJUSTMENT EXPENSES - This policy is extended to include reasonable expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. These expenses include fees of professionals engaged to assist the Insured in determining the cause and origin of the loss, the amount

28

Plaintiffs 000706

of loss sustained, and the amount of loss payable under this policy. This policy shall not cover the expenses of a public adjuster. Such expenses shall not exceed $2,000,000 in any one occurrence.

50.     APPRAISAL - If the Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser.  The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending.  Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss.  If the appraisers fail to agree, they shall submit their differences to the umpire.  An award in writing by any two shall determine the amount of loss.  The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

51.     CONSEQUENTIAL LOSS - This policy insures against consequential loss including spoilage to real and personal property as insured hereunder caused by change of temperature or humidity or by interruption of any service including but not limited to power, heat, air conditioning, or refrigeration resulting from a peril insured against.

52.     PAIR AND SET - In the event of loss or damage by a peril insured against to any article or articles which are part of a pair or set, the measure of loss or damage to such article or articles shall be the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

53.     CONSEQUENTIAL REDUCTION IN VALUE - This policy covers the reduction in value of insured components or parts of components or parts of products or the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to direct physical loss or damage insured against by this Policy to other insured components or parts of products.

54.     COINSURANCE WAIVER - This policy is not subject to any coinsurance or average clause.

55.     ALTERATIONS AND USE CLAUSE - Permission is granted to the insured to cease operations or for buildings to remain vacant or unoccupied provided fire protection, watch alarm services are maintained, and written notice is given to the Insurer prior to the sixtieth (60th) consecutive day of cessation of operations, vacancy or unoccupancy. The Insured's building is considered vacant or unoccupied when it does not contain enough covered Property to conduct customary business operations.

Plaintiffs 000707

56.    ASSISTANCE AND COOPERATION OF THE INSURED - The Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

57.    SUE AND LABOR - In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment.  This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

58.    REINSTATEMENT - With the exception of loss subject to annual aggregate limits as noted herein, no loss hereunder shall reduce the amount of this policy.

59.    SUIT AGAINST THE COMPANY - No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy.  The Company agrees that any action or proceeding against it for recovery of any loss under this policy shall not be barred if commenced within the time prescribed therefor in the statutes of Florida.

60.    CERTIFICATES OF INSURANCE - It is understood and agreed that Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 is authorized to issue certificates of insurance naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests subject always to the terms, conditions, and limits of liability of this policy. The Company agrees to waive the issuance of formal Company endorsements in respect of such interests.

61.    NOTIFICATION CLAUSE - All notices or communications concerning this policy shall be addressed to the offices of the Insured, to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 and to AmWINS Brokerage of Georgia, 3630 Peachtree Road NE, Suite 1700, Atlanta, GA 30326.  All such notices shall be sent via registered mail.

62.    CANCELLATION/NON RENEWAL - This policy may be cancelled at any time at the request of the Insured or it may be cancelled or non-renewed by the Company by mailing to the Insured written notice stating when, not less than ninety (90) days thereafter or ten (10) days in the event of non-payment of premium, such cancellation or non-renewal shall be effective. If the First Named Insured cancels, return of any unearned premium will be calculated on the

Plaintiffs 000708

customary short rate basis. If the Company cancels, return of any unearned premium will be calculated on a pro rata basis. Return of any unearned premium will be made by the Company as soon as practicable. The cancellation will be effective even if the Company has not made or offered a refund.

63.   TITLES OF PARAGRAPHS - The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

64.   MORTGAGE CLAUSE - As respects Real Property only, loss, if any, under this policy shall be payable to the mortgagee (or trustee) as its interest may appear under all present or future mortgages upon the property herein insured in which the aforesaid may have an interest as mortgagee (or trustee) in order or precedence of mortgages., and this insurance as to the interest of said mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that, in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided also, that the mortgagee (or trustee) shall, notify the Company of any changes of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and unless permitted by this policy, it shall be noted thereon and the mortgagees or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The company reserves the right to cancel this policy at any time as provided by its terms, and in such case, this policy shall continue in force for the benefit only of the mortgagee (or trustee) for an additional thirty (30) days.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgagee debt, or may at their option pay to the mortgagee (or trustee) the whole principal due or to grow on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and all of such other securities, but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

65.   JURISDICTION AND SUIT - It is hereby understood and agreed that in the event of the failure of the Insurer to pay an amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court

31

Plaintiffs 000709

of competent jurisdiction within the United States and will comply with all requirements necessary to give such jurisdiction.  All matters arising hereunder shall be determined in accordance with the law and practice of such court. In any suit instituted against it under this, the Insurer will abide by the final decision of such court or any appellate court in the event of an appeal.

66.     POLLUTANT CLEAN UP AND REMOVAL - This policy is extended to cover the expense actually incurred by the Insured to decontaminate, clean up and/or remove pollutants from land, water or air including resultant time element loss if the release, discharge, or dispersal of the pollutants results from any loss or damage as covered herein. Such expenses shall not exceed $500,000 in any one policy year.

67.     ATTACHMENT CLAUSE – Please refer to the Participation Page.

_____
 [Authorized Signature]

32

# Endorsement No. 1

## **Microorganism Exclusion – Resultant Mold**

This policy does not insure any loss, Damage, Time Element, claim, cost, expense or other sum directly or indirectly arising out of or relating to (regardless of whether any other cause or event contributed concurrently or in any sequence):

Fungus, mold, mildew, yeast, mushrooms, spores, toxins, mycotoxins, bacteria or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion shall not apply to any such loss, Damage, Time Element, claim, cost, or expense resulting from mold that is a direct result of an Insured Cause of Loss and is not otherwise excluded by the Policy, provided such loss, Damage, Time Element, claim, cost, or expense is reported to the Company in writing within twelve months from the expiration date of the policy. This clause is subject to a $500,000 per occurrence and in the annual aggregate sublimit.

This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part, for these matters.

All other terms and conditions remain unchanged.

Plaintiffs 000711

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

The following conditions are added and supersede any provisions to the contrary:

**A. CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** Cancellation For Policies In Effect 90 Days Or Less

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with underwriting requirements established by the insurer.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**7.** Cancellation For Policies In Effect For More Than 90 Days

If this policy has been in effect for more than 90 days, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

**(2)** 45 days before the effective date of cancellation for any other reason.

**B. NONRENEWAL**

**1.** If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least 45 days prior to the expiration of the policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**Policy No.:** LHD912400      **Effective:** 4/1/2020

RSG 93041 0110   Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2006

**Plaintiffs 000712**

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## SERVICE OF SUIT

It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company, at the request of the Insured, will submit to the jurisdiction of any Court of Competent Jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court or seek a transfer of a case to another Court as permitted by the laws of the United States or of any state in the United States, moreover, this endorsement is not an agreement that the law of a particular jurisdiction applies to any dispute under the policy. It is further agreed that service of process in such suit may be made upon the highest one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located, and that in any suit instituted against it upon this contract this Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal.   The one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located is hereby authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the Insured's request to give a written undertaking to the Insured that they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

Policy No.:  LHD912400        Effective:  4/1/2020

RSG 94011 0407

Plaintiffs 000713

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# MINIMUM EARNED PREMIUM
# (Insureds with Coastal Property)

This endorsement modifies insurance provided under the following:

### ALL COVERAGE PARTS

This endorsement replaces any cancellation provision in regards to refund or return premium calculations if we cancel the policy for non-payment of premium or the First Named Insured cancels or removes a location(s) or coverage(s) from the policy.

If we cancel this policy for non-payment of premium, the First Named Insured cancels, removes a location(s) or removes coverage(s) from this policy, the minimum premium earned for this policy, if cancelled, or for the removed location(s) or coverage(s), will be based on the Schedule below.

| SCHEDULE |
|---|
| Minimum Earned Premium:   80% of the Total Premium excluding Terrorism shown on the COMMON POLICY DECLARATIONS or the Location Premium for the removed location(s), **if coverage for the policy or the removed location(s) was in effect at any time during the period from June 1st to November 30th.** |
| 25% of the Total Premium excluding Terrorism shown on the COMMON POLICY DECLARATIONS or the Location Premium for the removed location(s), **if coverage for the policy or the removed location(s) was NOT in effect at any time during the period from June 1st to November 30th.** |

Policy No.:  **LHD912400**        Effective:  **4/1/2020**

**Plaintiffs 000714**

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# POLICY PERIOD AMENDMENT

This endorsement modifies insurance provided under the following:

### ALL COVERAGE PARTS

The POLICY PERIOD on the Declarations Page is deleted in its entirety and replaced by the following:

**POLICY PERIOD:** From ___04/01/2020___ To ___04/01/2021___ 12:01 A.M. Standard Time at the location of the property insured.

Policy No.:  **LHD912400**      Effective:  **4/1/2020**

RSG 94138 0315

**Plaintiffs 000715**

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# APPRAISAL CLAUSE AMENDMENT

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

This endorsement replaces any and all other provisions regarding appraisal.

If we and you disagree on the value of the property or the amount of loss, either party may request, in writing, an appraisal of the value of the property and/or the amount of loss. An appraisal  may then take place  only  if  the  other party  agrees in writing to  participate  in the appraisal process  pursuant  to terms of a written agreement between the parties. At a minimum, the written agreement between the  parties  will specify  a  protocol  for  the  selection  of  a disinterested, competent,  and  impartial  appraiser (who does not have a financial interest in the claim and/or appraisal award, including a contingent interest in the outcome of the claim or appraisal award),  the  inspection  of  the property by the appraisers, the selection  of  an  umpire, communications  between  and  among  the appraisers and umpire, specific itemization of each item in dispute,  and  an  award  form.  If the parties cannot agree on a written agreement specifying the protocol, an appraisal will not take place.

If appraisal moves forward, the two appraisers will select an umpire, who is disinterested, competent, and impartial.  If the two appraisers cannot agree to an umpire within 15 days of either appraiser proposing one or more umpires, the two appraisers may jointly request that the selection of a competent and impartial umpire be made by a judge of a court in the county of the loss or damage. If either party to the appraisal, without notice to the other party, asks a judge to select an umpire, any such umpire selection shall be invalidated and the selection of a new umpire shall be required.  If the appraisers do not agree to jointly request the appointment of an umpire, either the insurer or insured can unilaterally end the appraisal with written notice to the other.  The appraisers will state separately the value of the property and amount of loss. Specific itemization of each item and amount in dispute is required, including, but not limited to, building-by-building, floor-by-floor, unit-by-unit, and area-by-area allocation. If the appraisers fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Each party will:

  **a.**  pay its chosen appraiser; and

  **b.**  bear the other expenses of the appraisal and the umpire's fee equally.

In connection with the appraisal proceeding, neither the appraisers nor the umpire shall have authority to decide questions of law. Neither the appraisers nor the umpire shall attempt to  resolve any issue of insurance  coverage, policy exclusions, compliance with the policy terms and conditions, or any issues concerning the Limits of Insurance available under the Policy.

At any time after the request for appraisal, we will retain our right to demand compliance with all applicable Duties in the Event of Loss as described in this Policy. We may require completion of any of the Duties in the Event of Loss, or any other policy condition, prior to continuance of the appraisal proceeding.

If there is an appraisal, we will still retain our right to deny the claim.

Where applicable, the parties agree that during the pendency of an appraisal all required responses and cures to any Civil Remedy Notices are extended until 30 days after the appraisal is concluded.

By voluntarily agreeing to the appraisal process, both parties acknowledge that there are irreconcilable differences that exist regarding the value of the property and/or the amount of loss. Since appraisal is voluntary, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us.

**Policy No.:  LHD912400       Effective:  4/1/2020**

RSG 94147 0220

**Plaintiffs 000716**

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

This policy does not apply to any loss, demand, claim or suit arising out of or related in any way to asbestos or asbestos-containing materials.

The company shall have no duty of any kind with respects to any such loss, demand, claim or suit.

**Policy No.:**  LHD912400      **Effective:**  4/1/2020

RSG 96013 1003

Plaintiffs 000717

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION OF PATHOGENIC OR POISONOUS BIOLOGICAL OR CHEMICAL MATERIALS

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

The following exclusion is added:

We will not pay for loss or damage caused directly or indirectly by the discharge, dispersal, seepage, migration, release, escape or application of any pathogenic or poisonous biological or chemical materials.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

However, if both A. and B. below apply, we will pay up to a maximum of $10,000 for any and all claims for such loss or damage arising out of events occurring within the term of this policy:

A.  The pathogenic or poisonous biological or chemical materials are normally kept at or brought onto your premises, with your consent, for use in your business operations at your premises; and

B.  The discharge, dispersal, seepage, migration, release, escape or application of the pathogenic or poisonous biological or chemical materials is accidental and is not the result of a willful or malicious act against any persons, organizations, or property of any nature.

**Policy No.:  LHD912400        Effective:  4/1/2020**

RSG 96014 0504

**Plaintiffs 000718**

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION OF TERRORISM
# (EXCEPTION COVERING CERTAIN FIRE LOSSES)

This endorsement modifies insurance provided under the following:

### ALL COVERAGE PARTS

**A.  Definitions**

1.  "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.  The criteria contained in that Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

    a.  The act resulted in  insured  losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

    b.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2.  "Other act of terrorism" means any activity against persons, organizations or property of any nature:

    a.  That involves the following or preparation for the following:

        (1)  Use or threat of force or violence; or

        (2)  Commission or threat of a dangerous act; or

        (3)  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

    b.  When one or both of the following applies:

        (1)  The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

        (2)  It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology; and

    c.  When the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act.

**B.  Exclusion of Certified Acts of Terrorism and the following Other Acts of Terrorism**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism" or an "other act of terrorism":

1.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

2.  With respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

    a.  The act involves the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination;

    b.  The act is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials;

    c.  The act involves the release of pathogenic or poisonous biological or chemical materials, and it appears that one purpose of the terrorism was to release such materials; or

---

**Policy No.:  LHD912400      Effective:  4/1/2020**

**Plaintiffs 000719**

**d.** The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico, and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "other act of terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of an "other act of terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold is exceeded.

With respect to this Item **B.2.d.**, the immediately preceding paragraph describes the threshold used to measure the magnitude of an "other act of terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an "other act of terrorism", there is no coverage under this Coverage Part or Policy.

## C. Exception Covering Certain Fire Losses

If a "certified act of terrorism" or an "other act of terrorism" results in Fire, we will pay for the loss or damage caused by that Fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property.  Such coverage for Fire applies only to direct loss or damage by Fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense Coverage Forms or endorsements that apply to those coverage forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

With respect to Fire resulting from any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

## D. Application Of Other Exclusions

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as, but not limited to, losses excluded by any Nuclear Hazard or War And Military Action Exclusions.

**Plaintiffs 000720**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## CYBER EXCLUSION

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

Notwithstanding any provision to the contrary within the Policy or any endorsements attached thereto, it is understood and agreed as follows:

**Exclusion**

This Policy does not insure any loss, damage, destruction, distortion, erasure, corruption or alteration of **ELECTRONIC DATA** from **COMPUTER VIRUS** or any loss of access, any loss of use, reduction in functionality, cost, expense of any kind or of any nature whatsoever resulting therefrom.  Further, this Policy does not insure any loss or damage that directly or indirectly results from loss, damage, destruction, distortion, erasure, corruption or alteration of **ELECTRONIC DATA** from **COMPUTER VIRUS**.

Such loss or damage as described herein is excluded regardless of any other cause or event contributing concurrently or in any other sequence to the loss or damage.

This Cyber Exclusion applies regardless of whether the loss or damage arises out of or results from authorized, unauthorized, intentional, unintentional or accidental access in, of, or to any computer, communication system, file server, network(s), networking equipment, computer system, computer hardware, computer software, data processing equipment, computer memory, microchip, microprocessor, integrated circuit or similar device.

**ELECTRONIC DATA** means facts, concepts and information recorded, transmitted or converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment.  **ELECTRONIC DATA** also includes programs, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

**COMPUTER VIRUS** means a set of corrupting, harmful or otherwise unauthorized instructions or code including, but not limited to any set of maliciously, intentionally, unintentionally or accidentally introduced instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature located anywhere in the world.  **COMPUTER VIRUS** includes, but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

However, in the event that a peril insured by this Policy results from any of the matters described herein, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage to insured property that was directly caused by such peril insured by this Policy and occurring within the Policy Period.

**Policy No.:** LHD912400     **Effective:** 4/1/2020

RSG 96067 0518

**Plaintiffs 000721**

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 Plaintiffs 000722 Page 1 of 1

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004

Plaintiffs 000723

# POLICYHOLDER DISCLOSURE
# NOTICE OF TERRORISM INSURANCE COVERAGE

As we previously notified you, as required by the Terrorism Risk Insurance Act, as amended in 2015, you were offered the opportunity to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act*:  The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

 YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS.  UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020 OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE.  THE PREMIUM TO BE CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION.  IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

You rejected the offer of terrorism coverage you received as part of your policy quote and you have no coverage for losses resulting from an act of terrorism as defined in the Act.  The premium required for your terrorism coverage would have been: ▮▮▮▮▮▮▮

**If your policy includes Property Coverage in one or more of these states: CA, CT, GA, HI, IA, IL, MA, ME, MO, NC, NJ, NY, OR,  RI, VA, WA, WI, or WV; the following statement applies:**

The terrorism exclusion makes an exception for (and thereby continues your coverage for) property fire losses resulting from an act of terrorism.  Therefore, even though you rejected the offer of terrorism coverage, that rejection does not apply to fire losses resulting from an act of terrorism - the coverage in your policy for such fire losses will continue.  If such a loss occurs, and is certified under the Act, the loss will be reimbursed by the United States under the formula detailed above.

**Plaintiffs 000724**

**If your policy includes Inland Marine Coverage in one or more of these states: CA, ME, MO, OR, or WI, the following statement applies:**

The terrorism exclusion makes an exception for (and thereby continues your coverage for) direct property damage fire losses resulting from an act of terrorism.  Therefore, if you reject the offer of terrorism coverage, that rejection does not apply to direct property damage fire losses resulting from an act of terrorism - the coverage in your policy for such fire losses will continue.  If such a loss occurs, and is certified under the Act, the loss will be reimbursed by the United States Government under the formula detailed above.
You need to take no action with respect to this notice.  You will receive a bill for your policy premium which will include the amount required for your coverage for fire losses resulting from an act of terrorism, if applicable.

If you have any questions about this notice, please contact your agent.

**Plaintiffs 000725**

COMMERCIAL EXCESS PROPERTY

POLICY NUMBER:     795-01-20-91-0000
NAMED INSURED:     Portofino Master Homeowners Association
                   at Pensacola Beach Inc
ISSUE DATE:        04/22/2020
EFFECTIVE DATE:    04/01/2020

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION OF CERTIFIED ACTS OF TERRORISM

### SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C.**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| CA, CT, GA, HI, IA, IL, MA, ME, MO, NC, NJ, NY, OR, RI, VA, WA, WI, WV | Property Coverage |
| | |
| | |
| | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A.  The following definition is added with respect to the provisions of this endorsement:
    **"Certified act of terrorism"** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a **"certified act of terrorism"** include the following:
    1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and
    2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B.  The following exclusion is added this Policy and replaces any provision to the contrary:

    **Certified Act of Terrorism Exclusion**
    This Company will not pay for loss or damage caused directly or indirectly by a **"certified act of terrorism"**. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

C.  **Exception Covering Certain Fire Losses**
    The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

    If a **"certified act of terrorism"** results in fire, this Company will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to property covered under this Policy. Therefore, for example, the coverage does not apply to Business Income or Extra Expense insurance coverage provided under this Policy, if any.

**Plaintiffs 000726**

COMMERCIAL EXCESS PROPERTY

POLICY NUMBER:      795-01-20-91-0000
NAMED INSURED:      Portofino Master Homeowners Association
                    at Pensacola Beach Inc
ISSUE DATE:         04/22/2020
EFFECTIVE DATE:     04/01/2020

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and this Company has met our insurer deductible under the Terrorism Risk Insurance Act, this Company will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

**Plaintiffs 000727**

COMMERCIAL EXCESS PROPERTY



## CLAIMS REPORTING OPTIONS

**Phone:**

Call our 24-hour claim service center:  877.248.3455

**Email:**

Email us at claims@onebeacon.com

**On-line:**

Use our web-based claim reporting at www.onebeacon.com

**Fax:**

Fax us at 866.213.2802

**Contact your OneBeacon agent or broker**

**Plaintiffs 000728**

**Policy Number:** 795-01-20-91-0000
**Renewal of:** 795-00-95-54-0000



## EXCESS PROPERTY POLICY DECLARATIONS

**EXCESS INSURANCE COMPANY:**

Homeland Insurance Company of New York
605 Highway 169 North, Suite 800
Plymouth, MN 55441

**INSURED'S NAME AND MAILING ADDRESS:**

Portofino Master Homeowners Association
at Pensacola Beach Inc
10 Portofino Dr
Pensacola Bch, FL  32561-2465

**PRODUCER NUMBER:**

1011909

**PRODUCER NAME:**
AmWINS Brokerage of Georgia, LLC

**POLICY PERIOD**      **From:** 04/01/2020               **To:** 04/01/2021

**At the Time Defined in the Primary Underlying Insurance Policy (If not Defined in the Primary Underlying Insurance Policy, at 12:01 AM Standard Time at the Mailing Address Shown Above)**

**IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS OF THIS POLICY THIS COMPANY AGREES WITH THE NAMED INSURED TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY**

**PREMIUM**

**POLICY PREMIUM:**
**TERRORISM PREMIUM:**
**TOTAL DUE:**



☒**Minimum Earned Premium Applies**
In the event of cancellation of this Policy by the first named Insured prior to the expiration of the Policy Period shown above, the following minimum earned premium applies:
**25% MINIMUM EARNED PREMIUM**
Cancellation by this Company for non-payment of premium will be deemed cancellation at the first named Insured's request.
☐**Insureds with Coastal Property Premium Endorsement Applies**

**LIMIT(S) OF RECOVERY AND UNDERLYING AMOUNTS** (Deductible, SIR or Primary Amounts)

$50,000,000 PART OF $100,000,000 EACH OCCURRENCE EXCESS $100,000,000 EACH OCCURRENCE

**OBSP BR 100 09 17**                                                                          Page 1 of 2

**Plaintiffs 000729**

**THIS POLICY IS SUBJECT TO THE TERMS CONTAINED IN THESE DECLARATIONS AND CONSISTS OF THE FOLLOWING CONDITIONS, COVERAGE FORM(S) AND ANY ENDORSEMENT(S):**

```
Excess Property Policy Declarations          OBSP BR 100 09 17
Manuscript Form
Excess Policy Conditions                     OBSP BR 002 09 17
Claim Reporting Options                      PHN 049 OBSP 04 16
Policyholder Disclosure Notice of Terrorism
Insurance Coverage                           PHN 014 IL 01 15
Exclusion of Certified Acts of Terrorism     OBSP BR 219 09 17
Service of Suit Endorsement                  OB IL 001 10 15
US Treasury OFAC Advisory Notice             IL P 001 01 04
```

_____
SECRETARY

_____
PRESIDENT

04/22/2020
_____
DATE OF ISSUANCE

**LAST PAGE OF DECLARATIONS**

**Plaintiffs 000730**

# EXCESS PROPERTY CONDITIONS

The following Conditions are added to this Policy and replace any provisions to the contrary.

### A. ABANDONMENT
There can be no abandonment to this Company of any property.

### B. ASSIGNMENT
Neither this Policy nor the proceeds of this Policy can be assigned, either before or after a loss, to another party without this Company's consent.

### C. BANKRUPTCY, INSOLVENCY OR UNCOLLECTIBILITY OF UNDERLYING INSURANCE
In the event of the bankruptcy, insolvency or other financial impairment of any underlying insurer this Policy will apply as if all underlying insurance were valid and collectible. This Company will not be liable for the obligations of any such underlying insurer, and this Policy will not replace any such underlying insurance. This Company does not insure or assume, under any circumstances, the risk of uncollectibility (in whole or part), whether because of bankruptcy, insolvency or financial impairment of any underlying insurer or for any other reason. Rather, the risk of such uncollectibility is expressly retained by the Insured.

### D. CANCELLATION
1. The first named Insured may cancel this Policy by mailing or delivering to this Company or any of its authorized agents advance written notice of cancellation.
2. This Company may cancel this Policy by mailing or delivering to the first named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 90 days before the effective date of cancellation if we cancel for any other reason.
3. This Company will mail or deliver our notice to the first named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If the first named Insured cancels this Policy, earned premium will be computed in accordance with the customary short rate table and procedure. If this Company cancels, earned premium will be calculated pro rata. Premium adjustment may be made at the time cancellation is effective. If not made then, premium adjustment will be made as soon as practicable after the cancellation becomes effective. This Company's check or the check of its representative mailed or delivered will be sufficient tender of any refund of premium due to the first named Insured. The cancellation will be effective even if this Company has not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### E. CHANGES
This Policy contains all the agreements between this Company and the Insured concerning the insurance afforded. Notice to any agent or broker or knowledge possessed by any agent or broker or by any other person will not affect a waiver or a change in any part of this Policy or stop this Company from asserting any right under the terms of this Policy. The terms of this Policy can be amended or waived only by endorsement issued by this Company and made a part of this Policy.

### F. CONFORMITY TO STATUTE
Terms of this Policy which are in conflict with any applicable statutes or regulations are hereby amended to conform to such statutes or regulations.

### G. DUTIES IN THE EVENT OF LOSS OR DAMAGE
1. The Insured must see that the following are done in the event of loss or damage to property covered under this Policy:
   a. Notify the police if a law may have been broken.
   b. Give this Company prompt notice of the loss or damage. Include a description of the property involved.
   c. As soon as possible, give this Company a description of how, when and where the loss or damage

**Plaintiffs 000731**

COMMERCIAL EXCESS PROPERTY

occurred.

**d.** Take all reasonable steps to protect the property from further damage, and keep a record of expenses necessary to protect the property for consideration in the settlement of the claim. The expenses necessary to protect the property covered under this Policy will be apportioned between the interests concerned in the ratio of their respective loss payments as finally settled. However, this will not increase the amount of insurance due under this Policy. This Company will not pay for any subsequent loss or damage resulting from a peril that is not covered under this Policy. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**e.** At this Company's request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**f.** As often as may be reasonably required, permit this Company to inspect the property proving the loss or damage and examine the Insured's books and records. Also, permit this Company to take samples of damaged and undamaged property for inspection, testing and analysis, and permit this Company to make copies from the Insured's books and records.

**g.** Send this Company a signed, sworn proof of loss containing the information we request to investigate the claim. The Insured must do this within 60 days after this Company's request. We will supply you with the necessary forms.

**h.** Cooperate with this Company in the investigation or settlement of the claim.

**2.** We may examine any Insured, or its representative, under oath, while not in the presence of any other Insured, or any other Insured's representative, and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including the Insured's books and records. In the event of an examination, the Insured's, or its representative's, answers must be signed.

No examination under oath or examination of books and records, nor any act of this Company or any of its employees or representatives in connection with the investigation of any loss or claim, will serve to waive any defense which this Company might otherwise have with respect to any loss or claim. All such examinations or acts will be deemed to have been made or done without prejudice to this Company's liability.

## H. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Policy unless:

**1.** There has been full compliance with all of the terms of this Policy; and

**2.** The action is brought within 12 months after the date on which the direct physical loss or damage occurred.

However, if under the laws of the State within which this Policy is issued such limitation is invalid, then any such claims will be void unless such legal action is commenced within the shortest limit of time permitted by the laws of such State.

## I. LOSS APPRAISAL

If this Company and the Insured disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and will notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 30 days upon such umpire, the Insured and this Company may file a joint motion requesting that a judge of a court having jurisdiction appoint a competent and impartial umpire after a joint hearing before the court. Along with the joint motion requesting the appointment of the umpire, each party will submit to the court sworn affidavits which describe the efforts their appraiser has taken to reach agreement regarding the appointment of the umpire. If either party does not agree to a joint motion, the Insured or this Company may unilaterally file a motion to compel appraisal in a court having jurisdiction. Such motion to compel must include a request for a joint hearing, and notice of hearing must be sent to the non-requesting party's appraiser by certified mail 7 days prior to the hearing.

Once appraisal proceeds, each appraiser will state separately the value of the property and amount of loss as of the date and time of the loss or damage. If the appraisers fail to agree, they will submit their differences to the umpire. An itemized award in writing of any two will determine the amount of value and the amount of the loss or damage to such items. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

This Company will not waive any of its rights by any act relating to appraisal. If there is an appraisal, this Company retains its right to deny the claim.

**Plaintiffs 000732**

COMMERCIAL EXCESS PROPERTY

**J. MISREPRESENTATION AND FRAUD**
This Policy is void in any case of fraud by the Insured as it relates to this insurance at any time. This entire Policy is also void if, at any time, the Insured intentionally conceals or misrepresents any material fact or circumstance concerning this insurance.

**K. NO BENEFIT TO BAILEE**
No person or organization, other than the Insured, having custody of property insured under this Policy will benefit from this insurance.

**L. OTHER INSURANCE**
If there is other insurance covering the same loss or damage, this Company will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether the Insured can collect on it or not.

**M. PAYMENT OF LOSS**
This Company will pay for covered loss or damage within 60 days after we receive the sworn proof of loss, if the Insured has complied with all of the terms of this Policy, and:
1. This Company has reached agreement with the Insured on the amount of loss; or
2. An appraisal award has been made.

Bankruptcy or insolvency of the Insured will not relieve this Company of any of its obligations under this Policy. However, no loss will be paid under this Policy if the Insured has collected the amount of the loss or damage from others.

**N. PRIVILEGE TO ADJUST WITH OWNER**
This Company may adjust losses with the owners of lost or damaged property if other than the Insured. If we pay the owners, such payments will satisfy the Insured's claims against us for the owners' property. This Company will not pay the owners more than their financial interest in the property covered under this Policy.

This Company may elect to defend the Insured against suits arising from claims of owners of property. We will do this at our expense. No action of this Company in such regard will increase the amount of insurance due under this Policy.

**O. SALVAGE OR RECOVERIES**
When, in connection with any loss under this Policy, any salvage or recovery is received after loss settlement, the loss will be calculated on the basis on which it would have been settled had the amount of salvage or recovery been known at the time the loss was originally determined. Any amounts thus found to be due either party from the other will be paid promptly.

The expense of all proceedings necessary to such recoveries will be apportioned between the interests concerned in the ratio of their respective recoveries as finally settled. If there should be no recovery and proceedings are conducted solely by this Company, this Company will pay such expenses.

**P. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**
If any person or organization to or for whom this Company makes payment under this Policy has rights to recover damages from another, those rights are transferred to this Company to the extent of our payment. That person or organization must do everything necessary to secure this Company's rights and must do nothing after loss to impair them. But the Insured may waive its rights against another party in writing:
1. Prior to a loss covered under this Policy.
2. After a loss covered under this Policy only if, at time of loss, that party is one of the following:
   a. Someone insured by this Policy;
   b. A business firm:
      (1) Owned or controlled by the Insured; or
      (2) That owns or controls the Insured; or
   c. The Insured's tenant.
This will not restrict insurance under this Policy.

Plaintiffs 000733

## PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies) , do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy.

Provided that:

1.   The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2.   The liability of each of the Insurers shall not exceed the Participation Limit set against its name.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurer | Policy Number | Participation | Authorized Signature |
|---|---|---|---|
| Westchester Surplus Lines Insurance Company | D38064666 004 | $5,000,000 part of $15,000,000 Primary | |
| Endurance American Specialty Insurance Company | ESP30000298003 | $5,500,000 part of $15,000,000 Primary | |
| Everest Indemnity Company | CA3P005801201 | $3,000,000 part of $15,000,000 Primary | |
| Princeton Excess Surplus Lines Insurance Company | 3VA3PP0000251-02 | $1,500,000 part of $15,000,000 Primary | |
| Arch Specialty Insurance Company | ESP1002326-00 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Axis Surplus Insurance Company | EAF645360-20 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Colony Insurance Company | XP190091-1 | $6,250,000 part of $25,000,000 excess of $25,000,000 | |
| Evanston Insurance Company | MKLV11XP007995 | $7,500,000 part of $25,000,000 excess of $25,000,000 | |
| Aspen Specialty Insurance Company | PX005LG20 | $5,000,000 part of $25,000,000 excess of $25,000,000 | |

1

Plaintiffs 000734

| | | | |
|---|---|---|---|
| Independent Specialty Insurance Company | VUX-CN-0000328-04 | $8,689,317 part of $217,232,927 excess of $25,000,000 | |
| Interstate Fire & Casualty Company | VRX-CN-0000328-04 | $28,240,281 part of $217,232,927 excess of $25,000,000 | |
| Lloyd's of London | VPC-CN-0000328-04 | $17,378,634 part of $217,232,927 excess of $25,000,000 | |
| James River Insurance Company | 00090459-1 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Maxum Indemnity Company | MSP-6012522-11 | $12,500,000 part of $50,000,000 excess of $50,000,000 | |
| Landmark American Insurance Company | LHD912400 | $48,058,232 part of $192,232,927 excess of $50,000,000 | |
| Homeland Insurance Company of New York | 795012091 | $50,000,000 part of $100,000,000 excess of $200,000,000 | |
| Everest Indemnity Company | CA3X001322201 | $21,116,464 part of $42,232,927 excess of $200,000,000 | |

2

Plaintiffs 000735

## MASTER PROPERTY POLICY

1.  NAMED INSURED – "Named Insured" means **Portofino Master Homeowners Association at Pensacola Beach, Inc.; Portofino Tower One Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Two Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Three Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Four Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Five Homeowners Association at Pensacola Beach, Inc.** means the First Named Insured and any entity in which the First Named Insured owns an interest of more than 50 percent, during the Policy Period, controls during the Policy Period, or has the responsibility of placing the insurance provided by this Policy during the Policy Period. No entity is covered under this Policy unless the Company has received identifying information for such entity during the application or submission process, except if such entity is covered under miscellaneous unnamed insured locations or newly acquired property, or if such entity is added by endorsement.

    Notwithstanding any provision to the contrary in this Policy, if other valid and collectible insurance is available to any entity covered by this Policy solely because of the ownership, control, or responsibility to purchase insurance by the First Named Insured, this insurance will be excess with regard to such other insurance whether contingent, primary, excess or any other basis.

2.  TERM OF INSURANCE In consideration of a $ annual premium, this policy attaches and covers for a period of one year from April 1, 2020 to April 1, 2021, beginning and ending at 12:01 A.M. standard time, at the location of the property involved.

3.  PARTICIPATION – Please refer to the Participation Page.

4.  LIMIT OF LIABILITY - This Company shall not be liable for more than its proportion of $242,232,927 for any one occurrence.

5.  SUBLIMIT(S) OF LIABILITY) - This Company shall not be liable for more than its proportion of the following sublimits.  Sublimits are part of and not in addition to the overall Limit of Liability and apply on a per occurrence basis unless otherwise noted:

    a)   $15,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Flood.
    b)   $25,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Earthquake.
    c)   $1,000,000 per occurrence as respects Accounts Receivable
    d)   $500,000 per occurrence as respects Arson Reward

3

**Plaintiffs 000736**

e)    $1,000,000 per occurrence as respects Contingent Time Element, Attraction Properties are excluded

f)    $1,000,000 per occurrence as respects Consequential Loss

g)    $10,000,000 per occurrence as respects Course of Construction Including Soft Costs

h)    Included per occurrence as respects Demolition and Increased Cost of Construction Coverage A

i)    $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage B

j)    $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage C

k)    $1,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage D

l)    $10,000,000 per occurrence as respects Debris Removal

m)   $10,000,000 per occurrence as respects Errors and Omissions

n)    25% of the Adjusted Loss Maximum, $10,000,000 per occurrence as respects Extra Expense

o)    $5,000,000 per occurrence as respects Expediting Expense

p)    200,000,000 per occurrence as respects Equipment Breakdown

q)    $1,000,000 per occurrence as respects Contract Penalty

r)    $1,000,000 per occurrence as respects Fire Brigade Charges and Extinguishing Expenses

s)    $50,000 per occurrence as respects Inland Transit

t)    The lesser of 30 days of $2,500,000 per occurrence as respects Ingress/Egress

u)    $5,000,000 per occurrence as respects Miscellaneous Unnamed Locations

v)    $5,000,000 per occurrence as respects Newly Acquired Property (90 days; if not reported within 90 days the coverage ceases)

w)    $1,000,000 per occurrence as respects Leasehold Interest

x)    $500,000 per occurrence as respects Lost Master/Key Card

y)    $5,000,000 per occurrence as respects Rental Value/Rental Income

z)    Excluded per occurrence as respects Research and Development

aa)   $1,000,000 per occurrence as respects Royalties

bb)   $2,500,000 per occurrence as respects Service Interruption.  Property Damage and Time Element Combined.

cc)   $1,000,000 per occurrence as respects Valuable Papers and Records

dd)   The lesser of 30 days of $2,500,000 per occurrence as respects Civil or Military Authority

ee)   $3,000,000 per occurrence as respects Landscaping, subject to a $25,000 maximum per item

ff)    $1,000,000 per occurrence as respects Fine Arts, subject to a $25,000 maximum per item

The amount of loss from any one occurrence for which this policy is excess, shall be determined by the combined loss, damage or expense as insured under the primary policy.  In the event of loss or damage involving more than one coverage or peril, The Limits of Liability of the underlying policies shall first

4

Plaintiffs 000737

apply to the coverage(s) or peril(s) not insured by this policy, and the remainder, if any to the coverages(s) or peril(s) as provided hereunder. Upon erosion or exhaustion of the Limits of Liability of the underlying policies, this policy shall then be liable for the loss uncollected from the coverage(s) or perils(s) insured hereunder, subject to the Limit of Liability specified herein. In the event of reduction or exhaustion of the aggregate limit(s) designated in the underlying policy(ies), it is hereby understood and agreed that such insurance as is afforded by this policy shall apply in excess of the reduced or exhausted underlying limit(s). The insured maintains the right to allocate and/or apply coverages, interests and/or perils, as insured in the primary and/or excess policies.

6.   DEDUCTIBLE CLAUSE - The Company will adjust all losses, damages or expenses arising out of any one occurrence as one loss. The Company will deduct the following from such loss:

**$50,000** per occurrence for all perils including earthquake sprinkler leakage, and the backup of sewers and drains, except:

WAITING PERIOD:

With respect to all Time Element coverages, coverage is provided by this policy only if the period of interruption of the Insured's business exceeds 24 hours. Then Time Element coverage will apply excess of the appropriate policy deductible.

EARTHQUAKE:

As respects loss or damage to property resulting from the peril of Earthquake, all loss, damage or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deductible the sum of $50,000. This deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

FLOOD:

As respects loss or damage to property resulting from the peril of Flood, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss. The Company will deduct the following from such loss:

With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100 year flooding, as defined by the Federal Emergency Management Agency, all loss arising out of any one occurrence shall be adjusted as one loss and from the loss shall be deducted the maximum amount recoverable under the National Flood Insurance Program for the Real or Personal Property at each Building, whether or not such coverage is purchased or maintained.

In addition, the following Deductible will apply to property not eligible and coverages not available under the National Flood Insurance Program that are covered under this Policy and any difference in valuation between policies: $100,000 per Occurrence.

The determination of whether a property is in whole or in part subject to the 100 Year Flood Zone shall be at the inception of the policy and not at the time of loss.

5

**Plaintiffs 000738**

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

NAMED STORM:

With respect to loss or damage to property in Tier 1 Counties resulting from the period of Named Windstorm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm), the deductible shall be 2% of such unit of insurance at each location in accordance with policy valuation at the time of loss.  A minimum $100,000 each occurrence shall apply.

With respect to any other named storm loss or damage, the deductible shall be **$50,000** any one occurrence.

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

ALL OTHER WIND and HAIL:
As respects loss or damage to property resulting from the peril of All Other Wind, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

**$50,000**

Definition of 'Unit of Insurance':
  a) Each separate building or structure
  b) Contents in each separate building or structure
  c) Property in the yard of each separate building or structure
  d) Annual Business Interruption value applying to each separate building or structure.
  e) Each Other Property item as listed in the Statement of Values.  If values are not listed separately, the value is included in the building value.

Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence. If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the insured shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s), notwithstanding the above reference to two or more deductibles.

The deductible amounts specified above shall not apply to general average contributions and salvage charges.

7.    LOSS PAYABLE - Loss, if any, shall be adjusted with and payable to the Insured, or as directed by them.

6

**Plaintiffs 000739**

8.    TERRITORY - This policy covers anywhere in the United States of America and its territories and possessions including coastal and inland waterways and while in due course of transit therein or thereto.

9.    PROPERTY COVERED - Except as hereinafter excluded, this policy covers the interest of the Insured in all real and personal property owned, used, leased or intended for use by the Insured or in which the Insured may have an insurable interest, or for which the Insured may be responsible for the insurance, or real or personal property hereafter constructed, erected, installed, or acquired including while in course of construction, erection, installation, and assembly including Improvements and Betterments. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.  This policy is extended to include:

a)    The interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by written contract for such property, including the cost to defend any allegations of liability for loss or damage to such property.

b)    At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured.

c)    Contractors' and/or subcontractors' (of any tier) and/or vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract.

10.    PROPERTY EXCLUDED - This policy does not cover loss or damage to:

a)    Money and securities;

b)    Land, land values, except as insured under the "Pollutant Cleanup of Land and Water" clause.  This exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements if land improvements have been scheduled on the Schedule of Values on file with the company.  Land improvements as described hereunder include, but are not limited to any alteration to the natural condition of the land by grading, landscaping, excavation, earthen dikes or dams, as well as additions to land such as pavements, roadways or similar works;

c)    Water; except water which is normally contained within any type of tank, piping system or other process equipment;

d)    Growing crops, standing timber, and live animals;

e)    Watercraft; aircraft and motor vehicles licensed for highway use;

f)    Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

g)    Underground mines or mine shafts or any property within such mine or shaft;

7

**Plaintiffs 000740**

h)     Offshore property; unless reported on the Schedule of Values on file with the company.

i)     Transmission and Distribution Lines beyond 1,000 feet of Insured Premises;

j)     currency; evidence of debt; notes

k)     Turbines and satellites;

l)     docks, piers, and wharves; bridges, roadways, streets, walks or any other paved surfaces; dams or dikes; railroad rolling stock; off-shore drilling rigs or platforms; underground mines, wells, caverns including property contained therein unless reported on the Schedule of Values on file with the company.

11.    PROPERTY VALUATION - The basis of loss adjustment shall be as follows:

a)     Valuable Papers & Records/Electronic Data Processing Media : the cost to repair or replace the property with other of like kind and quality including the cost of labor, service or supplies consumed in reconstructing, reproducing, recreating, transcribing or copying information; or, if not so replaced, the value blank.

b)     Raw materials and supplies:  the replacement cost new.

c)     Stock in process:  The value of raw materials plus labor expended plus the proper proportion of overhead charges.

d)     Finished stock and other merchandise for sale:  The regular cash selling price less all discounts and charges to which such property would have been subject had no loss occurred.

e)     Real and personal property of others for which the Insured is liable:  A valuation consistent with the liability of the Insured but only to the extent that such money is necessarily expended by the Insured.

f)     Electronic data processing equipment, production machinery & equipment:  The cost to repair or replace new with like kind and quality. In addition, the Insured may elect to replace such equipment with equipment having technological advances and/or representing an improvement in function and/or forming part of a program of system enhancement and/or more consistent with the Insured's technology strategy (without any reduction or offset for betterment) provided that such replacement can be accomplished without increasing the Insurer's liability.

g)     Fine arts, at original cost to the Insured, per schedule, latest appraised value or current market value, all at the Insured's option.

h)     Other property not otherwise provided for; at replacement cost new without deduction for depreciation. If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:

8

      i)      The repairs, replacement or reinstatement must be executed with due diligence and dispatch.

      ii)     This Company's liability for loss or damage on a replacement cost basis shall not exceed the lesser of the replacement cost new of the property or any part thereof identical with such property intended for the same occupancy and use, including normal and customary profit and overhead even if the work is performed by the Insured; or the amount actually and necessarily expended in repairing or replacing said property or any part thereof including normal and customary profit and overhead even if the work is performed by the Insured.

12.    BUSINESS INTERRUPTION - This policy shall cover the loss resulting from necessary interruption of business conducted by the Insured including all interdependent loss of earnings between or among companies owned or operated by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

     a)     In the event of such loss, damage or destruction this Company shall be liable for the ACTUAL LOSS SUSTAINED by the insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business. Due consideration shall be given to the continuation of normal charges and expenses including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately before the loss. For the purposes of this insurance, "Gross Earnings" are defined as the sum of:

      i)      Net sales value of production from manufacturing operations, and net sales from Merchandising or Non-Manufacturing operations; and

      ii)     Other earnings derived from operations of the business,

             LESS THE COST OF:

      iii)    Raw Stock from which such production is derived;

      iv)    Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the services(s) sold by the Insured;

      v)     Merchandise sold, including packaging materials therefor; and

      vi)    Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

**Plaintiffs 000742**

b)   In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the period of restoration, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including ordinary payroll, directly attributable to such research and development activities.

c)   Resumption of Operations: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business:

i)   by a complete or partial resumption of operation at a location owned by the same entity suffering the loss, whether damaged or not; or

ii)  by making use of available stock, merchandise, or other property;

such reduction shall be taken into account in arriving at the amount of loss hereunder.

d)   EXPERIENCE OF THE BUSINESS - In determining the amount of gross earnings, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

e)   As respects coverage provided under the Gross Earnings clause of this policy, the insurer shall not be liable for any loss resulting from loss or damage to finished stock nor for the time required to reproduce said finished stock.

13.   Extra Expense - This policy shall cover the necessary extra expense, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

a)   The term "Extra Expense" wherever used in this Policy, is defined as the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally have been incurred to conduct the business during the same period had no loss or damage occurred.

10

Plaintiffs 000743

b)     In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities, this policy shall cover the actual loss sustained of the extra expenses as defined herein directly attributable to the interruption of such research and development activities.

c)     As soon as practicable the Insured shall resume normal operations of the business and shall dispense with such extra expense.

14.   This policy is extended to cover expenses as are necessarily incurred for the purpose of reducing any loss under this policy; however, such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

15.   SOFT COSTS - This policy shall cover soft costs, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to property under construction as covered herein.

a)     The term "Soft Costs" shall include:

i)     Additional interest costs on money used to finance construction or repair;
ii)    Additional real estate and property taxes incurred for the period of time that construction extends beyond the projected completion date;
iii)   Additional legal and accounting fees; and
iv)    Additional advertising and promotional expenses which become necessary as a result of an insured loss.

b)     This company shall pay soft costs incurred from the date that the building, structure or improvement would have been completed had no physical damage occurred until such time that it is completed.  As soon as practicable after any loss, the Insured shall utilize every available means to reduce the amount of loss including:

i)     partial or complete resumption of construction, business or operations;
ii)    making use of materials, equipment, supplies, or other property at the Insured's premises or elsewhere; or
iii)   making use of substitute facilities or services where practical;

such reduction will be taken into account in arriving at the amount of such loss.

16.   Rental Value/Rental Income - This policy shall cover the actual loss sustained by the Insured resulting directly from the necessary untenability caused by direct

11

Plaintiffs 000744

physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as covered herein.  Loss settlement shall not exceed the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenability.

a)   If the Insured is the lessor, for the purposes of this insurance, "rental value" is defined as the sum of:

    i)   the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the insured, and

    ii)   the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

    iii)   the fair rental value of any portion of said property which is occupied by the Insured.

b)   If the Insured is the lessee, rental value shall be the determined rental which the Insured is obligated to pay (including ground rents, accrued charges, real estate taxes and interest if the Insured shall be liable therefor) less such charges and expenses as do not necessarily continue.

c)   Experience of the Business - In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

d)   With respect to buildings or structures leased or rented by the Insured, this policy will serve as rental income insurance in those situations where the insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord.  This policy will respond for rental expenses incurred by the Insured in excess of the expenses which would have been incurred had a leased or rented premises not been damaged or destroyed by any peril covered under this policy. Such coverage will apply for all additional expenses incurred during the period of untenability or if the lease cannot be terminated until its expiration.

17.   Royalties - This policy shall cover the loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to direct physical loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the other party.

Plaintiffs 000745

a)   Any loss hereunder shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED to such income referred to above, which would have been earned had no loss occurred.

b)   Resumption of Operations:  The Insured shall influence, to the extent possible, the party with whom the agreement described above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Company.

c)   Experience of the Business:  In determining the amount of income derived from the agreements(s) described above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

18.   Leasehold Interest - This policy covers the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

a)   the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

b)   improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of this policy;

c)   the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located; and "Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located. The "Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

Plaintiffs 000746

d) The "Interest of the Insured as Lessee" is defined as:

    i) the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

    ii) the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

e) The "Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is cancelled by the lessee, to the extent not covered under any other section of this policy.

f) "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "Interest of the Insured as Lessee".

g) This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

19. Loss Provisions Applicable to Time Element Coverage - The "Period of Indemnity" is defined as the length of time for which loss may be claimed, and shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy, subject to the following provisions:

a) The Period of Indemnity shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged.

b) With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly the Period of Restoration shall be determined as provided above but such determined length of time shall be applied, and the loss hereunder calculated from the date that business operations would have begun had no damage or destruction occurred.

c) Extended Period of Indemnity - The Period of Indemnity shall include such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

    i) the date on which the liability of the Company for loss or damage would otherwise terminate; or

14

Plaintiffs 000747

ii)     the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually completed;

terminating no more than 365 days from said later commencement date.

20.     Extensions of Time Element Coverage: This policy, subject to all its provisions and without increasing the amount of said policy, insures against direct physical loss resulting from damage to or destruction by the perils insured against, to:

a)      Any service provider's property including but not limited to, electrical equipment and systems, water, gas, steam, telephone or their respective transmission and distribution lines or utility plants which directly or indirectly provide incoming or outgoing services to the Insured situated on or outside of the Insured's premises.

b)      the actual loss sustained, and Extra Expense incurred by the Insured at an insured location during the period of restoration directly resulting from physical loss or damage of the type insured to property of the type insured at a Contingent Time Element Location, meaning a location within the TERRITORY of a direct supplier or direct customer of the Insured.

As respects this subparagraph b):

i.      The Insured will influence and cooperate with the Contingent Time Element Location in every way and take any reasonable and necessary action, including the use of other machinery, supplies, or locations, to effect mitigation of the loss payable hereunder.

ii.     In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

iii.    This Policy does not insure loss resulting from a lack of incoming or outgoing electricity, fuel, gas, water, steam, refrigeration, sewage, or telecommunications of a direct supplier or direct customer of the Insured.

iv.     The per occurrence deductible that applies to all perils also applies to the coverage as provided under this subparagraph b).

c)      dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other manufacturing purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources.

d)      the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory

Plaintiffs 000748

mile of an insured location, access to real or personal property is impaired or hindered by order of civil or military authority irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 e) below.

e) the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory mile of an insured location, ingress to or egress from real or personal property is thereby impaired or hindered irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 d) above.

f) property, facilities or piping systems which prevents the Insured from discharging its outgoing effluence.

21. Transit - This policy shall cover property in transit, and this policy attaches and covers shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.  This insurance is extended to cover loss or damage to property:

a) sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

b) arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

c) occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

d) at the Insured's option, property which is incoming to the Insured.

The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor. With respect to shipments described under subparagraphs a and d above, this Company agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

Plaintiffs 000749

e)      The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

f)      Seaworthiness of any vessel or watercraft, and airworthiness of any aircraft are admitted between this Company and the Insured.

22.     Accounts Receivable - Defined as:

a)      All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

b)      Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

c)      Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

d)      Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

e)      the monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

f)      the monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

23.     Lost Master/Key Card - If a master or grand master key is lost, or damaged so it cannot be duplicated, we will pay for the actual loss of keys, the cost of adjusting locks to accept new keys, or the cost of new locks, if required, of like kind and

Plaintiffs 000750

quality including the cost of installation subject to the limit contained in the Declarations.

24.  Arson Reward - If covered property sustains direct physical loss or damage caused by or resulting from a fire, and the origin of such loss is determined to be the criminal acts of an individual or individuals, we will pay a reward to the person or persons who provide information that leads to the arrest and conviction of the individual or individuals responsible for the loss.

25.  Contract Penalty – This policy covers a compensation payment due under the Hotel Management Agreement between the Franchisee, Named Insured, and any Franchisor, as identified via policy endorsement, or other appropriate subsidiaries acting as the management company or agent, whether insured or not under this policy. The Contract Penalty is triggered when the Hotel Management Agreement is terminated due to loss or damage of a type insured under this policy from an insured peril where such loss or damage causes a total constructive loss.

"A total constructive loss" means the destruction or damage to the Hotel by an insured peril whereby the destruction of or damage to the Hotel is such that the cost of repairing, rebuilding or replacing the Hotel exceeds 50% of the Replacement value of the Hotel." The Contract Penalty will only apply if the franchisor does not release the franchisee from the Hotel Management Agreement after a total constructive loss occurs and the First Named Insured / Franchisee elects not to repair or rebuild the property.

26.  BOILER & MACHINERY - This policy insures direct or indirect loss as covered elsewhere in this policy to insured property as a result of an Accident to an Object subject to the following definitions:

a)  "Object" means any boiler, fired or unfired pressure vessel, refrigerating or air-conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

b)  "Accident" means an accidental loss to an Object or a part thereof which manifests itself in physical damage that necessitates repair or replacement of the Object or part thereof.

c)  "Hazardous Substance" means the additional expense incurred for clean up, repair or replacement, or disposal of damaged, contaminated or polluted property as a result of an "Accident" which causes property to become damaged, contaminated or polluted by a substance declared hazardous to health by an authorized governmental agency. "Additional Expenses" means expenses incurred that would not have been incurred, had no substance hazardous to health been involved in the accident.

27.  PERILS INSURED AGAINST - This policy insures against all risks of direct physical loss of or damage to property described herein including general

18

average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

28.    PERILS EXCLUDED - This policy does not insure:

a)    infidelity or dishonesty of the Insured or of the Insured's employees. A willful act of malicious intent shall not be deemed to be an act of infidelity. In no event does this Policy insure loss caused by theft by the Insured or the Insured's employees;

b)    against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

c)    against ordinary wear and tear or gradual deterioration unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

d)    against inherent vice or latent defect unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

e)    against errors in processing or manufacture of the Insured's product unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

f)    against mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

g)    against nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except if a covered peril ensues, liability is specifically assumed for direct loss by such ensuing peril but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination. This Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

h)    against hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or

19

Plaintiffs 000752

expected attack by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or by military, naval, or air forces; or by any agent of any such government, power, authority, or forces;

i)     against any weapon employing atomic fission or fusion;

ii)     against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

iii)     against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against under this policy;

iv)     against risks of contraband or illegal trade;

v)     against confiscation, nationalization and expropriation;

Notwithstanding the above provisions, this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated. Nothing in the foregoing shall be construed to include any loss, damage, or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon or war employing atomic fission or fusion whether in time of peace or war.

i)     loss or damage caused directly or indirectly by the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants unless the release, discharge, dispersal, seepage, migration, or escape is caused by a peril not otherwise excluded herein. However, if a peril not otherwise excluded herein ensues due to the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants, such ensuing loss or damage shall be covered.

j)     loss or damage caused by an act of terrorism which means an act or series of acts, including the use of force or violence, of any person or group(s) or persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public or any section of the public in fear for such purposes.

k)     against loss or damage caused by insect or vermin.

Plaintiffs 000753

l)      against delay, loss of market loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

m)      against delay, loss of market, loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

n)      against corrosion, depletion, deterioration, erosion, wet rot, dry rot, decay, evaporation, rust, and shrinkage unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

o)      against changes of temperature or humidity, whether atmospheric or not;

p)      against settling, cracking, bulging, shrinking, or expansion of foundations; machinery pedestals, pads, or platforms; floors, pavements, walls, ceilings, or roofs; or the cumulative effects of smog, smoke, soot, vapor liquid, or dust;

q)      against lack of incoming power voice/data/internet access from offsite services except as provided in the Service Interruption Extension.

Exclusion b), c), d) and e) do not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly.

Exclusion b), c) and d) do not apply to property in transit.

29.   DEFINITIONS

a)      The term "Earthquake" as used in this policy shall mean loss or damage caused by or resulting from a series of vibrations induced in the earth's crust by the abrupt rupture and rebound of rocks in which elastic strain has been slowly accumulating (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

b)      The term "Flood" as used in this policy shall mean loss or damage caused by or resulting from waves, tide, or tidal water, and the rising (including the overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and similar bodies of water, whether wind driven or not (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

c)      The term "occurrence" is defined as follows:

Plaintiffs 000754

i)     Except as hereinafter defined, "loss occurrence" shall mean an accident or occurrence or series of accidents or occurrences arising out of one event.

ii)     ii) Each loss occurrence which involves the perils of tornado, windstorm, cyclone, hurricane, hail or flood shall include all loss or damage wherever occurring occasioned by these perils which arise out of one atmospheric disturbance during a continuous period of 168 hours.

iii)     Each loss occurrence which involves the peril of earthquake, a series of earthquakes shall include all losses or damage sustained during a continuous period of 168 hours.

iv)     Each loss occurrence which involves the peril(s) of vandalism, malicious mischief or riot/civil commotion shall include all losses or damage sustained resulting from one or more acts committed by a person acting alone or in collusion with others during a continuous period of 168 hours.

v)     The Insured shall have the right to elect the moment from which the time periods referred to in ii), iii), and iv) above shall be deemed to have commenced, however no elected period of time shall commence within any previous occurrence.

vi)     Should the time period in ii), iii), and iv) above extend beyond expiration or cancellation date of this policy and commence prior to the expiration or cancellation date, this Company shall be liable as is such period fell entirely within the term of this policy.

vii)     However, we shall not be liable hereunder for any loss or damage:

viii)     Occurring before this policy becomes effective; or

ix)     Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

d)     "Raw Stock" - Materials and supplies in the state in which the Insured receives it for conversion by the Insured into Finished Stock, including supplies consumed in such conversion or in the service rendered by the Insured.

e)     "Stock in Process" - Raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture by on behalf of the Insured but which has not become Finished Stock.

f)     "Finished Stock" - Stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

g)     "Merchandise" - Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

h)     "Normal" - The condition that would have existed had no loss occurred.

Plaintiffs 000755

i) "Improvements and Betterments" - Fixtures, alterations, installations or additions comprising a part of the described building and made or acquired at the expense of the Insured, but which are not legally subject to removal by the Insured.

j) "Valuable papers and records" - Written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents and manuscripts.

k) "Electronic Data Processing Media" - All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles.

l) "Securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets.

m) "Fine Arts" - Shall include but not be limited to bona fide works of art, works of rarity, works of historical value, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, galley proofs, original records, sculptures, carvings and similar property.

n) "Architect and Engineering Fees" - Any cost associated with the preparation of plans, supervision of and approval for the repair or replacement of damaged or destroyed property.

o) "Tier One County" - the entire territory of the United States Virgin Islands, the entire Commonwealth of Puerto Rico, the entire State of Florida, and the following:
   i) In the State of Alabama, the counties of Baldwin, Escambia, and Mobile;
   ii) In the State of Connecticut, the counties of Fairfield, New Haven, and New London;
   iii) In the State of Georgia, the counties of Bryan, Camden, Chatham, Glynn, Liberty, and McIntosh;
   iv) In the State of Hawaii, the counties of Honolulu, Kauai, and Maui;
   v) In the State of Louisiana, the counties (also known as "Parishes") of Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, Iberia, Iberville, Jefferson Davis, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John The Baptist, St. Martin, St. Mary, St. Tammany, Terrebonne, and Vermillion;
   vi) In the Commonwealth of Massachusetts, the counties of Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, and Suffolk;

Plaintiffs 000756

vii)    In the State of Mississippi, the counties of George, Greene, Hancock, Harrison, Jackson, Pearl River, and Stone;

viii)   In the State of New Jersey, the counties of Atlantic, Monmouth, and Ocean;

ix)     In the State of New York, the counties of Kings, Nassau, Queens, and Suffolk;

x)      In the State of North Carolina, the counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington;

xi)     In the State of Rhode Island, the counties of Newport, Providence, and Washington;

xii)    In the State of South Carolina, the counties of Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, and Williamsburg;

xiii)   In the State of Texas, the counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Gollad, Harris, Hidalgo, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, and Willacy; and

xiv)    In the Commonwealth of Virginia, the counties of Accomack, Gloucester, Isle of Wright, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, Westmoreland, and York; and the independent cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Suffolk, and Virginia Beach.

p)   "Named Storm"- A storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Depression or Tropical Storm. "Named storm" does not include "flood" resulting from a "named storm".

q)   "Time Element' – Includes coverage as described under Clause 12., 13., 14., 15., 16., 17., 18., 19. and 20. hereunder.

r)   "Unnamed Location' – A location which has not been scheduled with underwriters or the insured's representative and is not considered a Newly Acquired location.

s)   "Newly Acquired Location" – A location acquired by the insured after inception of this policy for a period of up to 90 days until reported to and agreed by underwriters.

30.    FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES - This policy covers fire brigade charges and other extinguishing expenses for which the Insured may be assessed including loss of fire extinguishing materials expended resulting from a peril insured.

24

Plaintiffs 000757

31.     SEVERABILITY OF INTERESTS - The inclusion herein of more than one person or organization, as Insured, shall not operate to increase the limit of the Company's liability nor the deductible amounts to be borne by the Insured. Except with respect to limits of liability and deductible amounts, the terms of this policy shall apply separately to each person or organization covered as Insured in the same manner and to the same extent as though a separate policy had been issued to each such person or organization.

32.     DEBRIS REMOVAL - This policy covers the cost of removal of debris of property covered hereunder including the cost of removal of debris of property not insured hereunder from the premises of the Insured resulting from a peril insured against. Except as otherwise provided for elsewhere in this policy, this policy does not cover the cost to extract contaminants or pollutants from land or water, nor does it cover the cost to remove, restore or replace contaminated or polluted land or water.

If at the time insured property is contaminated as a direct result of physical damage insured against by this policy there is in force any law or ordinance regulating contamination, including but not limited to pollution, then this policy shall cover, as a result of the enforcement of such law or ordinance, the increased cost of decontamination and debris removal of such property in a manner to satisfy such law or ordinance.  As respects Time Element coverage(s), this policy is extended to include such time as is necessary and reasonable with the exercise of due diligence and dispatch to decontaminate such property in a manner to satisfy such law or ordinance.

33.     DEMOLITION AND INCREASED COST OF CONSTRUCTION - In the event of loss or damage under this policy that causes the enforcement of any law or ordinance in force at the time of loss regulating the construction, repair or use of property, this Company shall be liable for:

a)      <u>COVERAGE A</u> - the loss in value of the undamaged portion of the property as a consequence of the enforcement of any law or ordinance that requires demolition of undamaged parts of the same property;

b)      <u>COVERAGE B</u> – the cost to demolish and clear the site of undamaged parts of the same property;

c)      <u>COVERAGE C</u> – the increased cost to repair or reconstruct damaged and undamaged property on the same or another site when the increased cost is a consequence of the enforcement of any law or ordinance.  These costs are limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  This Company shall not be liable for any increased cost of repair or reconstruction loss unless the damaged property is actually rebuilt or replaced;

25

     d)     Any increase in loss including but not limited to Business Interruption, Extra Expense, Rental Value, Rental Income, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law or ordinance.

     e)     In the event real or personal property is not repaired or replaced to the same height, floor area, size, style or comparable quality of the original property insured due to the enforcement of law or ordinance regulating, restricting or prohibiting repair or replacement of covered property, this policy will pay the full replacement cost without deduction for depreciation for the real or personal property damaged or destroyed, as if the property was replaced to the same height, floor area, size, style or comparable quality of the original property insured. This policy will also pay Time Element loss as if the original structure were repaired or replaced to original specifications, subject to the terms and conditions of these coverage(s).

34.     EXPEDITING EXPENSE - This policy covers the extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

35.     CONTRIBUTING INSURANCE - Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy. This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

36.     EXCESS INSURANCE - Excess insurance is insurance over the limit of liability set forth in this policy. The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

37.     UNDERLYING INSURANCE - Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy. Should the amount of loss payable under such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then no deductible shall apply hereunder and that portion which exceeds such a deductible amount shall be considered "other insurance". Should the amount of loss payable under such underlying insurance be less than the largest deductible amount which would apply in the event of loss under this policy, then the deductible amount to be deducted hereunder shall be the difference between the amount to be paid under such underlying insurance and the largest deductible amount which would apply in the event of loss under this policy.

38.     OTHER INSURANCE - Except for insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether

Plaintiffs 000759

prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils. This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.

39.   SUBROGATION - Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder. The right of subrogation against the Insured, affiliated, subsidiary, and associated companies, or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived and at the option of the Insured, against a tenant or guest of the Insured. In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery. If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests. If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

40.   SALVAGE AND RECOVERIES - All salvages, recoveries, and payments, (excluding proceeds from subrogation and underlying insurance) recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly. If proceeds from subrogation are recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(s) participating in the payment of any loss, in the proportion of their respective interests.

41.   CONTROL OF DAMAGED MERCHANDISE - The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods. The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured, using reasonable discretion, shall be the sole judge as to whether production or EDP equipment and/or media is damaged and unusable. This insurer shall be allowed to dispose of as salvage, any non-proprietary property deemed unusable by the Insured.

Plaintiffs 000760

42.   BRAND OR TRADEMARK - In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carriers or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at this Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

43.   ERRORS OR OMISSIONS - Any unintentional error or omission made by the Insured in the application for insurance shall not void or impair the insurance hereunder but only to the extent this Policy would have provided coverage had the unintentional error or omission not been made provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department. This coverage does not apply if there is coverage available under any other provision in this Policy.

44.   NOTICE OF LOSS - As soon as practicable after any loss or damage occurring under this policy is known to the Insured's home office insurance department, the Insured shall report such loss or damage with full particulars to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 for transmission to the designated loss adjuster and to this Company.

45.   DESIGNATED LOSS ADJUSTER - It is understood and agreed that each and every loss will be adjusted by Jeff Hellman of McLaren Young International, 19324 40th Avenue West, Suite C, Lynnwood, WA 98036.

46.   PROOF OF LOSS - Proof of loss is required as soon as practicable following the Company's written request for signed Proof from Insured; however, Insured, at its option, may elect to file Proof with the Company prior to the Company's request.  It shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained.

47.   PARTIAL PAYMENT OF LOSS - In the event of a loss covered by this policy, it is understood and agreed that the Company shall allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

48.   PAYMENT OF LOSS - All adjusted claims shall be due and payable no later than thirty (30) days after presentation of acceptable proofs of loss by the Insured or its appointed representative.

49.   LOSS ADJUSTMENT EXPENSES - This policy is extended to include reasonable expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. These expenses include fees of professionals engaged to assist the Insured in determining the cause and origin of the loss, the amount

Plaintiffs 000761

of loss sustained, and the amount of loss payable under this policy. This policy shall not cover the expenses of a public adjuster. Such expenses shall not exceed $2,000,000 in any one occurrence.

50. APPRAISAL - If the Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss. The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

51. CONSEQUENTIAL LOSS - This policy insures against consequential loss including spoilage to real and personal property as insured hereunder caused by change of temperature or humidity or by interruption of any service including but not limited to power, heat, air conditioning, or refrigeration resulting from a peril insured against.

52. PAIR AND SET - In the event of loss or damage by a peril insured against to any article or articles which are part of a pair or set, the measure of loss or damage to such article or articles shall be the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

53. CONSEQUENTIAL REDUCTION IN VALUE - This policy covers the reduction in value of insured components or parts of components or parts of products or the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to direct physical loss or damage insured against by this Policy to other insured components or parts of products.

54. COINSURANCE WAIVER - This policy is not subject to any coinsurance or average clause.

55. ALTERATIONS AND USE CLAUSE - Permission is granted to the insured to cease operations or for buildings to remain vacant or unoccupied provided fire protection, watch alarm services are maintained, and written notice is given to the Insurer prior to the sixtieth (60th) consecutive day of cessation of operations, vacancy or unoccupancy. The Insured's building is considered vacant or unoccupied when it does not contain enough covered Property to conduct customary business operations.

Plaintiffs 000762

56.   ASSISTANCE AND COOPERATION OF THE INSURED - The Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

57.   SUE AND LABOR - In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment. This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

58.   REINSTATEMENT - With the exception of loss subject to annual aggregate limits as noted herein, no loss hereunder shall reduce the amount of this policy.

59.   SUIT AGAINST THE COMPANY - No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy. The Company agrees that any action or proceeding against it for recovery of any loss under this policy shall not be barred if commenced within the time prescribed therefor in the statutes of Florida.

60.   CERTIFICATES OF INSURANCE - It is understood and agreed that Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 is authorized to issue certificates of insurance naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests subject always to the terms, conditions, and limits of liability of this policy. The Company agrees to waive the issuance of formal Company endorsements in respect of such interests.

61.   NOTIFICATION CLAUSE - All notices or communications concerning this policy shall be addressed to the offices of the Insured, to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 and to AmWINS Brokerage of Georgia, 3630 Peachtree Road NE, Suite 1700, Atlanta, GA 30326. All such notices shall be sent via registered mail.

62.   CANCELLATION/NON RENEWAL - This policy may be cancelled at any time at the request of the Insured or it may be cancelled or non-renewed by the Company by mailing to the Insured written notice stating when, not less than ninety (90) days thereafter or ten (10) days in the event of non-payment of premium, such cancellation or non-renewal shall be effective. If the First Named Insured cancels, return of any unearned premium will be calculated on the

Plaintiffs 000763

customary short rate basis. If the Company cancels, return of any unearned premium will be calculated on a pro rata basis. Return of any unearned premium will be made by the Company as soon as practicable. The cancellation will be effective even if the Company has not made or offered a refund.

63.     TITLES OF PARAGRAPHS - The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

64.     MORTGAGE CLAUSE - As respects Real Property only, loss, if any, under this policy shall be payable to the mortgagee (or trustee) as its interest may appear under all present or future mortgages upon the property herein insured in which the aforesaid may have an interest as mortgagee (or trustee) in order or precedence of mortgages., and this insurance as to the interest of said mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that, in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided also, that the mortgagee (or trustee) shall, notify the Company of any changes of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and unless permitted by this policy, it shall be noted thereon and the mortgagees or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The company reserves the right to cancel this policy at any time as provided by its terms, and in such case, this policy shall continue in force for the benefit only of the mortgagee (or trustee) for an additional thirty (30) days.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgagee debt, or may at their option pay to the mortgagee (or trustee) the whole principal due or to grow on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and all of such other securities, but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

65.     JURISDICTION AND SUIT - It is hereby understood and agreed that in the event of the failure of the Insurer to pay an amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court

31

Plaintiffs 000764

of competent jurisdiction within the United States and will comply with all requirements necessary to give such jurisdiction.  All matters arising hereunder shall be determined in accordance with the law and practice of such court. In any suit instituted against it under this, the Insurer will abide by the final decision of such court or any appellate court in the event of an appeal.

66.     POLLUTANT CLEAN UP AND REMOVAL - This policy is extended to cover the expense actually incurred by the Insured to decontaminate, clean up and/or remove pollutants from land, water or air including resultant time element loss if the release, discharge, or dispersal of the pollutants results from any loss or damage as covered herein. Such expenses shall not exceed $500,000 in any one policy year.

67.     ATTACHMENT CLAUSE – Please refer to the Participation Page.

_____

[Authorized Signature]

32

**Plaintiffs 000765**

# Endorsement No. 1

### **Microorganism Exclusion – Resultant Mold**

This policy does not insure any loss, Damage, Time Element, claim, cost, expense or other sum directly or indirectly arising out of or relating to (regardless of whether any other cause or event contributed concurrently or in any sequence):

Fungus, mold, mildew, yeast, mushrooms, spores, toxins, mycotoxins, bacteria or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion shall not apply to any such loss, Damage, Time Element, claim, cost, or expense resulting from mold that is a direct result of an Insured Cause of Loss and is not otherwise excluded by the Policy, provided such loss, Damage, Time Element, claim, cost, or expense is reported to the Company in writing within twelve months from the expiration date of the policy. This clause is subject to a $500,000 per occurrence and in the annual aggregate sublimit.

This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part, for these matters.

All other terms and conditions remain unchanged.

Plaintiffs 000766

POLICY NUMBER: 795-01-20-91-0000
NAMED INSURED: Portofino Master Homeowners Association
at Pensacola Beach Inc
ISSUE DATE: 04/22/2020
EFFECTIVE DATE: 04/01/2020

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SERVICE OF SUIT

All coverages in this policy are subject to the following condition.

**Service of Suit**

1.  We designate and authorize the following person as our agent for service of process by certified mail, return receipt requested, for any proceeding instituted by or on behalf of the insured, or any beneficiary under this policy, and arising out of this policy of insurance made:

    General Counsel
    OneBeacon Insurance Group – Legal Department
    605 North Highway 169
    Suite 800
    Plymouth, MN 55441

2.  If required by applicable statute, we also designate the Superintendent, Commissioner or Director of Insurance, or other officer or individual specified in the law of the jurisdiction in which this policy is issued, to receive on our behalf service of process for any proceeding instituted by or on behalf of the insured, or any beneficiary under this policy, and arising out of this policy of insurance. We authorize the Superintendent, Commissioner, Director or other officer or individual upon whom service is made to mail a copy of the process to the person identified in Paragraph **1.** above.

3.  In Rhode Island, we also designate and authorize the following person as our agent for service of process for any proceeding instituted by or on behalf of the insured, or any beneficiary under this policy, and arising out of this policy of insurance:

    Sherry A. Goldin
    10 Weybosset Street
    Providence, Rhode Island 02903

4.  In Oregon, service of process for any proceeding instituted by or on behalf of the insured, or any beneficiary under this policy, and arising out of this policy of insurance may be made upon the insurance producer in the courts for the county where the insurance producer who registered or delivered the policy resides or transacts business.

5.  By agreeing to the service of process provisions above, we do not waive our right to commence an action in any court of competent jurisdiction in the United States, remove an action to a United States District Court or seek a transfer of a case to another court as permitted by the laws of the United States or of any state within the United States.

As used above, the word "insured" means any person or organization qualifying as an insured under the policy, and the words "we," "us" and "our" refer to the company providing this insurance.

**Plaintiffs 000767**

# Endorsement No. 1

| | |
|---|---|
| **Named Insured:** | Portofino Master Homeowners Association |
| **Insurer:** | Homeland Insurance Company of New York |
| **Policy Number:** | 795-01-20-91-0000 |
| **Effective Date:** | 04/01/2020 |
| **Additional Premium:** | **N/A** |

In consideration of the additional premium shown above, it is hereby understood and agreed that the following amendments are made to this policy:

The Participation page of the broker manuscript is hereby deleted and replaced by the following:

## PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies) , do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy.

Provided that:

1.  The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2.  The liability of each of the Insurers shall not exceed the Participation Limit set against its name.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurer | Policy Number | Participation | Authorized Signature |
|---|---|---|---|
| Homeland Insurance Company of New York | 795-01-20-91-0000 | $50,000,000 part of $100,000,000 excess of $100,000,000 | *brian hill* |

All other terms and conditions remain unchanged.

**Plaintiffs 000768**



## How to Report a Claim

### Property and Inland Marine

The Everest Property Claims team is dedicated to providing a best in class claim experience through clear communication and a customer first approach.  Our team of Property and Inland Marine Claims Specialists work with you for the life of the claim and are available 24/7 to respond to all questions and concerns. Timely submission of Loss Notices complies with the terms and conditions of your policy and assists us in providing quality service to our policyholders.  Any claim or circumstance which may reasonably be expected to give rise to a claim needs to be reported to Everest as soon as possible.   In the event you have any questions and/or concerns regarding the claim process, contact Paul Keane:

Bus.: 908-604-7404

Cell:  908-334-8086

**Paul.keane@everestre.com**

**The following methods may be used to promptly report a claim:**

**Option 1:**
**Email Claim Reporting: PropertyMarineClaims@everestre.com**

**Option 2:**
**Phone Reporting Toll-Free: 1-866-287-1736**

**PLEASE FOLLOW THE FOLLOWING STEPS IMMEDIATELY AFTER A LOSS:**

1. **Obtain the Facts:** Find out as much as you can about the incident.

2. **Gather All Supporting Information:** Obtain as much supplemental information as you can before you report the claim:
   - ✓ Policy Number
   - ✓ Name, address, phone
   - ✓ Date of Loss
   - ✓ Loss location

3. **Report the Claim Immediately and Please Provide Your Policy Number:** Don't delay in calling because you don't have all the information. Timely reporting is essential. You can gather and report any missing information at a later date.

### Retention of any and all evidence

Whenever possible, do not make nor have any repairs made until an inspection can be made. Many times immediate repairs are required. If so, it is crucial that **any and all parts** repaired or replaced **be retained and safeguarded until further notice.** In addition, please retain a copy of the repair invoice.

For additional information, please refer to our website: www.everestre.com

EN IL 12 MU 04 20

**Plaintiffs 000769**

EN IL 5 FL 10 18

# FLORIDA SUPPLEMENTAL DECLARATIONS PAGE

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

EDEC 819 01 20

Everest Indemnity Insurance Company
477 Martinsville Road
P.O. Box 830 Liberty Corner, NJ 07938-0830
1-800-438-4375



# MANUSCRIPT PROPERTY
# POLICY DECLARATIONS

**Policy Number: CA3X001322-201**          **Renewal of:  CA3X001322-191**

**Named Insured and Address:**
Portofino Masters Homeowners Association at Pensacola Beach, Inc.
10 Portofino Drive
Gulf Breeze, FL 32561

**Policy Period:**
**From:  04/01/2020                          To: 04/01/2021**
(At 12:01 A.M. Standard Time at the location of the property involved)

**Limit of Liability**: 50% that being $21,116,464 part of $42,232,927 in Excess of $200,000,000 which in turn Excess of policy deductibles.
(Maximum Limit of Liability in any one Occurrence)

**Perils:** All Risks of Direct Physical Loss or Damage including Named Windstorm, but EXCLUDING Flood, Storm Surge and Earth Movement, and as further described in the approved policy form.

**Description of Property Covered:**
Real and Personal property; Furniture & Fixtures; Improvements and Betterment's; Inventory; Stock; EDP hardware media and data; Business Income; Extra Expense and as further defined in the policy form.

**Premium:**
In return for the payment of the premium shown above, out of which a commission of
                              shall be paid by us, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**Forms Attached:** See attached forms schedule

President

Secretary

Plaintiffs 000771

**EDEC 820 05 17**

Everest Indemnity Insurance Company
477 Martinsville Road
P.O. Box 830 Liberty Corner, NJ 07938-0830
1-800-438-4375



*EVEREST*
*Everest Re Group, Ltd.*

# SCHEDULE OF FORMS AND ENDORSEMENTS

**Named Insured: Portofino Masters Homeowners association at Pensacola Beach, Inc.**

**Policy Number: CA3X001322-201**          **Effective Date: 04/01/2020**

| Form Number | Edition Date | Endorsement Number | Title – Description |
|---|---|---|---|
| EDEC 819 | 01 20 | | Manuscript Property Policy Declarations |
| EDEC 820 | 05 17 | | Schedule of Forms and Endorsements |
| AmWINS Brokerage of Georgia | | | Broker Manuscript Policy Form |
| ECP 10 601 | 03 17 | | Authorities Exclusion |
| ECP 10 603 | 03 17 | | Asbestos Endorsement |
| ECP 10 604 | 03 20 | | Biological or Chemical Materials Exclusion |
| ECP 04 619 | 07 19 | | Absolute Cyber Exclusion |
| ECP 10 607 | 03 17 | | Electronic Date Recognition  Exclusion |
| EIL 03 540 | 03 20 | | Communicable Disease Exclusion |
| ECP 10 611 | 03 20 | | Seepage And/or Pollution And/or Contamination Exclusion |

**Plaintiffs 000772**

**EDEC 820 05 17**

| | | |
|---|---|---|
| ECP 13 002 | 07 18 | Builders Risk Exclusion (Wood Frame) |
| ECP 00 565 | 06 18 | Minimum Earned Premium |
| ECP 12 003 | 11 18 | Amendment of Examination Under Oath Provision |
| ECP 10 544 | 09 17 | Existing Damage Exclusion |
| ECP 13 003 | 09 18 | Exclusion of Terrorism – Certified and Noncertified Acts |
| ECP 10 614 | 03 17 | Method of Claim Notice and Service of Suit Conditions |
| ECP 02 103 | 08 19 | Florida Amendatory Endorsement – Cancellation and Nonrenewal |
| ECP MAN | 05 17 | Amendatory Endorsement No. 2 |

President

Secretary

**Plaintiffs 000773**

## PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies) , do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy.

Provided that:

1.      The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2.      The liability of each of the Insurers shall not exceed the Participation Limit set against its name.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurer | Policy Number | Participation | Authorized Signature |
|---------|--------------|---------------|----------------------|
| Westchester Surplus Lines Insurance Company | D38064666 004 | $5,000,000 part of $15,000,000 Primary | |
| Endurance American Specialty Insurance Company | ESP30000298003 | $5,500,000 part of $15,000,000 Primary | |
| Everest Indemnity Company | CA3P005801201 | $3,000,000 part of $15,000,000 Primary | |
| Princeton Excess Surplus Lines Insurance Company | 3VA3PP0000251-02 | $1,500,000 part of $15,000,000 Primary | |
| Arch Specialty Insurance Company | ESP1002326-00 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Axis Surplus Insurance Company | EAF645360-20 | $5,000,000 part of $10,000,000 excess of $15,000,000 | |
| Colony Insurance Company | XP190091-1 | $6,250,000 part of $25,000,000 excess of $25,000,000 | |
| Evanston Insurance Company | MKLV11XP007995 | $7,500,000 part of $25,000,000 excess of $25,000,000 | |
| Aspen Specialty Insurance Company | PX005LG20 | $5,000,000 part of $25,000,000 excess of $25,000,000 | |

1

**Plaintiffs 000774**

| | | |
|---|---|---|
| Independent Specialty Insurance Company | VUX-CN-0000328-04 | $8,689,317 part of $217,232,927 excess of $25,000,000 |
| Interstate Fire & Casualty Company | VRX-CN-0000328-04 | $28,240,281 part of $217,232,927 excess of $25,000,000 |
| Lloyd's of London | VPC-CN-0000328-04 | $17,378,634 part of $217,232,927 excess of $25,000,000 |
| James River Insurance Company | 00090459-1 | $12,500,000 part of $50,000,000 excess of $50,000,000 |
| Maxum Indemnity Company | MSP-6012522-11 | $12,500,000 part of $50,000,000 excess of $50,000,000 |
| Landmark American Insurance Company | LHD912400 | $48,058,232 part of $192,232,927 excess of $50,000,000 |
| Homeland Insurance Company of New York | 795012091 | $50,000,000 part of $100,000,000 excess of $200,000,000 |
| Everest Indemnity Company | CA3X001322201 | $21,116,464 part of $42,232,927 excess of $200,000,000 |

2

**Plaintiffs 000775**

**MASTER PROPERTY POLICY**

1.      NAMED INSURED – "Named Insured" means **Portofino Master Homeowners Association at Pensacola Beach, Inc.; Portofino Tower One Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Two Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Three Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Four Homeowners Association at Pensacola Beach, Inc.; Portofino Tower Five Homeowners Association at Pensacola Beach, Inc.** means the First Named Insured and any entity in which the First Named Insured owns an interest of more than 50 percent, during the Policy Period, controls during the Policy Period, or has the responsibility of placing the insurance provided by this Policy during the Policy Period. No entity is covered under this Policy unless the Company has received identifying information for such entity during the application or submission process, except if such entity is covered under miscellaneous unnamed insured locations or newly acquired property, or if such entity is added by endorsement.

Notwithstanding any provision to the contrary in this Policy, if other valid and collectible insurance is available to any entity covered by this Policy solely because of the ownership, control, or responsibility to purchase insurance by the First Named Insured, this insurance will be excess with regard to such other insurance whether contingent, primary, excess or any other basis.

2.      TERM OF INSURANCE In consideration of a $ annual premium, this policy attaches and covers for a period of one year from April 1, 2020 to April 1, 2021, beginning and ending at 12:01 A.M. standard time, at the location of the property involved.

3.      PARTICIPATION – Please refer to the Participation Page.

4.      LIMIT OF LIABILITY - This Company shall not be liable for more than its proportion of $242,232,927 for any one occurrence.

5.      SUBLIMIT(S) OF LIABILITY) - This Company shall not be liable for more than its proportion of the following sublimits.  Sublimits are part of and not in addition to the overall Limit of Liability and apply on a per occurrence basis unless otherwise noted:

      a)    $15,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Flood.

      b)    $25,000,000 in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Earthquake.

      c)    $1,000,000 per occurrence as respects Accounts Receivable

      d)    $500,000 per occurrence as respects Arson Reward

**Plaintiffs 000776**

e)     $1,000,000 per occurrence as respects Contingent Time Element, Attraction Properties are excluded
f)     $1,000,000 per occurrence as respects Consequential Loss
g)     $10,000,000 per occurrence as respects Course of Construction Including Soft Costs
h)     Included per occurrence as respects Demolition and Increased Cost of Construction Coverage A
i)     $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage B
j)     $10,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage C
k)     $1,000,000 Included per occurrence as respects Demolition and Increased Cost of Construction Coverage D
l)     $10,000,000 per occurrence as respects Debris Removal
m)     $10,000,000 per occurrence as respects Errors and Omissions
n)     25% of the Adjusted Loss Maximum, $10,000,000 per occurrence as respects Extra Expense
o)     $5,000,000 per occurrence as respects Expediting Expense
p)     200,000,000 per occurrence as respects Equipment Breakdown
q)     $1,000,000 per occurrence as respects Contract Penalty
r)     $1,000,000 per occurrence as respects Fire Brigade Charges and Extinguishing Expenses
s)     $50,000 per occurrence as respects Inland Transit
t)     The lesser of 30 days of $2,500,000 per occurrence as respects Ingress/Egress
u)     $5,000,000 per occurrence as respects Miscellaneous Unnamed Locations
v)     $5,000,000 per occurrence as respects Newly Acquired Property (90 days; if not reported within 90 days the coverage ceases)
w)     $1,000,000 per occurrence as respects Leasehold Interest
x)     $500,000 per occurrence as respects Lost Master/Key Card
y)     $5,000,000 per occurrence as respects Rental Value/Rental Income
z)     Excluded per occurrence as respects Research and Development
aa)    $1,000,000 per occurrence as respects Royalties
bb)    $2,500,000 per occurrence as respects Service Interruption.  Property Damage and Time Element Combined.
cc)    $1,000,000 per occurrence as respects Valuable Papers and Records
dd)    The lesser of 30 days of $2,500,000 per occurrence as respects Civil or Military Authority
ee)    $3,000,000 per occurrence as respects Landscaping, subject to a $25,000 maximum per item
ff)    $1,000,000 per occurrence as respects Fine Arts, subject to a $25,000 maximum per item

The amount of loss from any one occurrence for which this policy is excess, shall be determined by the combined loss, damage or expense as insured under the primary policy.  In the event of loss or damage involving more than one coverage or peril, The Limits of Liability of the underlying policies shall first

4

apply to the coverage(s) or peril(s) not insured by this policy, and the remainder, if any to the coverages(s) or peril(s) as provided hereunder. Upon erosion or exhaustion of the Limits of Liability of the underlying policies, this policy shall then be liable for the loss uncollected from the coverage(s) or perils(s) insured hereunder, subject to the Limit of Liability specified herein.  In the event of reduction or exhaustion of the aggregate limit(s) designated in the underlying policy(ies), it is hereby understood and agreed that such insurance as is afforded by this policy shall apply in excess of the reduced or exhausted underlying limit(s).  The insured maintains the right to allocate and/or apply coverages, interests and/or perils, as insured in the primary and/or excess policies.

6.     DEDUCTIBLE CLAUSE - The Company will adjust all losses, damages or expenses arising out of any one occurrence as one loss. The Company will deduct the following from such loss:

**$50,000** per occurrence for all perils including earthquake sprinkler leakage, and the backup of sewers and drains, except:

WAITING PERIOD:

With respect to all Time Element coverages, coverage is provided by this policy only if the period of interruption of the Insured's business exceeds 24 hours. Then Time Element coverage will apply excess of the appropriate policy deductible.

EARTHQUAKE:

As respects loss or damage to property resulting from the peril of Earthquake, all loss, damage or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deductible the sum of $50,000.  This deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

FLOOD:

As respects loss or damage to property resulting from the peril of Flood, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss.  The Company will deduct the following from such loss:

With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100 year flooding, as defined by the Federal Emergency Management Agency, all loss arising out of any one occurrence shall be adjusted as one loss and from the loss shall be deducted the maximum amount recoverable under the National Flood Insurance Program for the Real or Personal Property at each Building, whether or not such coverage is purchased or maintained.

In addition, the following Deductible will apply to property not eligible and coverages not available under the National Flood Insurance Program that are covered under this Policy and any difference in valuation between policies: $100,000 per Occurrence.

The determination of whether a property is in whole or in part subject to the 100 Year Flood Zone shall be at the inception of the policy and not at the time of loss.

5

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

NAMED STORM:

With respect to loss or damage to property in Tier 1 Counties resulting from the period of Named Windstorm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm), the deductible shall be 2% of such unit of insurance at each location in accordance with policy valuation at the time of loss. A minimum $100,000 each occurrence shall apply.

With respect to any other named storm loss or damage, the deductible shall be **$50,000** any one occurrence.

The above deductibles shall not apply to ensuing loss or damage not otherwise excluded herein.

ALL OTHER WIND and HAIL:
As respects loss or damage to property resulting from the peril of All Other Wind, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss. The Company will deduct the following from such loss:

**$50,000**

Definition of 'Unit of Insurance':
   a) Each separate building or structure
   b) Contents in each separate building or structure
   c) Property in the yard of each separate building or structure
   d) Annual Business Interruption value applying to each separate building or structure.
   e) Each Other Property item as listed in the Statement of Values. If values are not listed separately, the value is included in the building value.

Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence. If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the insured shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s), notwithstanding the above reference to two or more deductibles.

The deductible amounts specified above shall not apply to general average contributions and salvage charges.

7.   LOSS PAYABLE - Loss, if any, shall be adjusted with and payable to the Insured, or as directed by them.

6

**Plaintiffs 000779**

8.   TERRITORY - This policy covers anywhere in the United States of America and its territories and possessions including coastal and inland waterways and while in due course of transit therein or thereto.

9.   PROPERTY COVERED - Except as hereinafter excluded, this policy covers the interest of the Insured in all real and personal property owned, used, leased or intended for use by the Insured or in which the Insured may have an insurable interest, or for which the Insured may be responsible for the insurance, or real or personal property hereafter constructed, erected, installed, or acquired including while in course of construction, erection, installation, and assembly including Improvements and Betterments. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.  This policy is extended to include:
    a)   The interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by written contract for such property, including the cost to defend any allegations of liability for loss or damage to such property.
    b)   At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured.
    c)   Contractors' and/or subcontractors' (of any tier) and/or vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract.

10.  PROPERTY EXCLUDED - This policy does not cover loss or damage to:

    a)   Money and securities;
    b)   Land, land values, except as insured under the "Pollutant Cleanup of Land and Water" clause.  This exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements if land improvements have been scheduled on the Schedule of Values on file with the company.  Land improvements as described hereunder include, but are not limited to any alteration to the natural condition of the land by grading, landscaping, excavation, earthen dikes or dams, as well as additions to land such as pavements, roadways or similar works;
    c)   Water; except water which is normally contained within any type of tank, piping system or other process equipment;
    d)   Growing crops, standing timber, and live animals;
    e)   Watercraft; aircraft and motor vehicles licensed for highway use;
    f)   Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.
    g)   Underground mines or mine shafts or any property within such mine or shaft;

7

Plaintiffs 000780

h)     Offshore property; unless reported on the Schedule of Values on file with the company.

i)     Transmission and Distribution Lines beyond 1,000 feet of Insured Premises;

j)     currency; evidence of debt; notes

k)     Turbines and satellites;

l)     docks, piers, and wharves; bridges, roadways, streets, walks or any other paved surfaces; dams or dikes; railroad rolling stock; off-shore drilling rigs or platforms; underground mines, wells, caverns including property contained therein unless reported on the Schedule of Values on file with the company.

11.     PROPERTY VALUATION - The basis of loss adjustment shall be as follows:

a)     Valuable Papers & Records/Electronic Data Processing Media :  the cost to repair or replace the property with other of like kind and quality including the cost of labor, service or supplies consumed in reconstructing, reproducing, recreating, transcribing or copying information; or, if not so replaced, the value blank.

b)     Raw materials and supplies:  the replacement cost new.

c)     Stock in process:  The value of raw materials plus labor expended plus the proper proportion of overhead charges.

d)     Finished stock and other merchandise for sale:  The regular cash selling price less all discounts and charges to which such property would have been subject had no loss occurred.

e)     Real and personal property of others for which the Insured is liable:  A valuation consistent with the liability of the Insured but only to the extent that such money is necessarily expended by the Insured.

f)     Electronic data processing equipment, production machinery & equipment:  The cost to repair or replace new with like kind and quality. In addition, the Insured may elect to replace such equipment with equipment having technological advances and/or representing an improvement in function and/or forming part of a program of system enhancement and/or more consistent with the Insured's technology strategy (without any reduction or offset for betterment) provided that such replacement can be accomplished without increasing the Insurer's liability.

g)     Fine arts, at original cost to the Insured, per schedule, latest appraised value or current market value, all at the Insured's option.

h)     Other property not otherwise provided for; at replacement cost new without deduction for depreciation.  If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:

Plaintiffs 000781

     i)      The repairs, replacement or reinstatement must be executed with due diligence and dispatch.

     ii)     This Company's liability for loss or damage on a replacement cost basis shall not exceed the lesser of the replacement cost new of the property or any part thereof identical with such property intended for the same occupancy and use, including normal and customary profit and overhead even if the work is performed by the Insured; or the amount actually and necessarily expended in repairing or replacing said property or any part thereof including normal and customary profit and overhead even if the work is performed by the Insured.

12.    BUSINESS INTERRUPTION - This policy shall cover the loss resulting from necessary interruption of business conducted by the Insured including all interdependent loss of earnings between or among companies owned or operated by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

    a)     In the event of such loss, damage or destruction this Company shall be liable for the ACTUAL LOSS SUSTAINED by the insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business. Due consideration shall be given to the continuation of normal charges and expenses including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately before the loss. For the purposes of this insurance, "Gross Earnings" are defined as the sum of:

     i)      Net sales value of production from manufacturing operations, and net sales from Merchandising or Non-Manufacturing operations; and

     ii)     Other earnings derived from operations of the business,

            LESS THE COST OF:

     iii)    Raw Stock from which such production is derived;

     iv)    Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the services(s) sold by the Insured;

     v)     Merchandise sold, including packaging materials therefor; and

     vi)    Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

Plaintiffs 000782

b)      In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the period of restoration, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including ordinary payroll, directly attributable to such research and development activities.

c)      Resumption of Operations: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business:

i)      by a complete or partial resumption of operation at a location owned by the same entity suffering the loss, whether damaged or not; or

ii)     by making use of available stock, merchandise, or other property;

such reduction shall be taken into account in arriving at the amount of loss hereunder.

d)      EXPERIENCE OF THE BUSINESS - In determining the amount of gross earnings, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

e)      As respects coverage provided under the Gross Earnings clause of this policy, the insurer shall not be liable for any loss resulting from loss or damage to finished stock nor for the time required to reproduce said finished stock.

13.     Extra Expense - This policy shall cover the necessary extra expense, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

a)      The term "Extra Expense" wherever used in this Policy, is defined as the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally have been incurred to conduct the business during the same period had no loss or damage occurred.

10

**Plaintiffs 000783**

b)      In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities, this policy shall cover the actual loss sustained of the extra expenses as defined herein directly attributable to the interruption of such research and development activities.

c)      As soon as practicable the Insured shall resume normal operations of the business and shall dispense with such extra expense.

14.    This policy is extended to cover expenses as are necessarily incurred for the purpose of reducing any loss under this policy; however, such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

15.    SOFT COSTS - This policy shall cover soft costs, as hereinafter defined, incurred by the Insured caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to property under construction as covered herein.

a)      The term "Soft Costs" shall include:

i)      Additional interest costs on money used to finance construction or repair;
ii)     Additional real estate and property taxes incurred for the period of time that construction extends beyond the projected completion date;
iii)    Additional legal and accounting fees; and
iv)     Additional advertising and promotional expenses which become necessary as a result of an insured loss.

b)      This company shall pay soft costs incurred from the date that the building, structure or improvement would have been completed had no physical damage occurred until such time that it is completed.  As soon as practicable after any loss, the Insured shall utilize every available means to reduce the amount of loss including:

i)      partial or complete resumption of construction, business or operations;
ii)     making use of materials, equipment, supplies, or other property at the Insured's premises or elsewhere; or
iii)    making use of substitute facilities or services where practical;

such reduction will be taken into account in arriving at the amount of such loss.

16.    Rental Value/Rental Income - This policy shall cover the actual loss sustained by the Insured resulting directly from the necessary untenability caused by direct

11

Plaintiffs 000784

physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as covered herein.  Loss settlement shall not exceed the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenability.

a)      If the Insured is the lessor, for the purposes of this insurance, "rental value" is defined as the sum of:

      i)      the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the insured, and

      ii)      the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

      iii)      the fair rental value of any portion of said property which is occupied by the Insured.

b)      If the Insured is the lessee, rental value shall be the determined rental which the Insured is obligated to pay (including ground rents, accrued charges, real estate taxes and interest if the Insured shall be liable therefor) less such charges and expenses as do not necessarily continue.

c)      Experience of the Business - In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred.  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

d)      With respect to buildings or structures leased or rented by the Insured, this policy will serve as rental income insurance in those situations where the insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord.  This policy will respond for rental expenses incurred by the Insured in excess of the expenses which would have been incurred had a leased or rented premises not been damaged or destroyed by any peril covered under this policy. Such coverage will apply for all additional expenses incurred during the period of untenability or if the lease cannot be terminated until its expiration.

17.      Royalties - This policy shall cover the loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to direct physical loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the other party.

Plaintiffs 000785

a)      Any loss hereunder shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED to such income referred to above, which would have been earned had no loss occurred.

b)      Resumption of Operations:  The Insured shall influence, to the extent possible, the party with whom the agreement described above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Company.

c)      Experience of the Business:  In determining the amount of income derived from the agreements(s) described above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

18.     Leasehold Interest - This policy covers the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

a)      the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

b)      improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of this policy;

c)      the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located; and "Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located. The "Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

Plaintiffs 000786

d) The "Interest of the Insured as Lessee" is defined as:

  i) the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

  ii) the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

e) The "Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is cancelled by the lessee, to the extent not covered under any other section of this policy.

f) "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "Interest of the Insured as Lessee".

g) This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

19. Loss Provisions Applicable to Time Element Coverage - The "Period of Indemnity" is defined as the length of time for which loss may be claimed, and shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy, subject to the following provisions:

a) The Period of Indemnity shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged.

b) With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly the Period of Restoration shall be determined as provided above but such determined length of time shall be applied, and the loss hereunder calculated from the date that business operations would have begun had no damage or destruction occurred.

c) Extended Period of Indemnity - The Period of Indemnity shall include such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

  i) the date on which the liability of the Company for loss or damage would otherwise terminate; or

14

ii)    the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually completed;

terminating no more than 365 days from said later commencement date.

20.   Extensions of Time Element Coverage: This policy, subject to all its provisions and without increasing the amount of said policy, insures against direct physical loss resulting from damage to or destruction by the perils insured against, to:

a)    Any service provider's property including but not limited to, electrical equipment and systems, water, gas, steam, telephone or their respective transmission and distribution lines or utility plants which directly or indirectly provide incoming or outgoing services to the Insured situated on or outside of the Insured's premises.

b)    the actual loss sustained, and Extra Expense incurred by the Insured at an insured location during the period of restoration directly resulting from physical loss or damage of the type insured to property of the type insured at a Contingent Time Element Location, meaning a location within the TERRITORY of a direct supplier or direct customer of the Insured.

As respects this subparagraph b):

i.   The Insured will influence and cooperate with the Contingent Time Element Location in every way and take any reasonable and necessary action, including the use of other machinery, supplies, or locations, to effect mitigation of the loss payable hereunder.

ii.   In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

iii.   This Policy does not insure loss resulting from a lack of incoming or outgoing electricity, fuel, gas, water, steam, refrigeration, sewage, or telecommunications of a direct supplier or direct customer of the Insured.

iv.   The per occurrence deductible that applies to all perils also applies to the coverage as provided under this subparagraph b).

c)    dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other manufacturing purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources.

d)    the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory

15

mile of an insured location, access to real or personal property is impaired or hindered by order of civil or military authority irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 e) below.

 e) the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against at or within 1 statutory mile of an insured location, ingress to or egress from real or personal property is thereby impaired or hindered irrespective of whether the property of the Insured shall have been damaged. This coverage extension does not apply if there is coverage for the loss under paragraph 19 d) above.

 f) property, facilities or piping systems which prevents the Insured from discharging its outgoing effluence.

21. Transit - This policy shall cover property in transit, and this policy attaches and covers shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.  This insurance is extended to cover loss or damage to property:

 a) sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

 b) arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

 c) occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

 d) at the Insured's option, property which is incoming to the Insured.

The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor. With respect to shipments described under subparagraphs a and d above, this Company agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

16

Plaintiffs 000789

e)     The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

f)     Seaworthiness of any vessel or watercraft, and airworthiness of any aircraft are admitted between this Company and the Insured.

22.   Accounts Receivable - Defined as:

a)     All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

b)     Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

c)     Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

d)     Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

e)     the monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

f)     the monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

23.   Lost Master/Key Card - If a master or grand master key is lost, or damaged so it cannot be duplicated, we will pay for the actual loss of keys, the cost of adjusting locks to accept new keys, or the cost of new locks, if required, of like kind and

Plaintiffs 000790

quality including the cost of installation subject to the limit contained in the Declarations.

24.    Arson Reward - If covered property sustains direct physical loss or damage caused by or resulting from a fire, and the origin of such loss is determined to be the criminal acts of an individual or individuals, we will pay a reward to the person or persons who provide information that leads to the arrest and conviction of the individual or individuals responsible for the loss.

25.    Contract Penalty – This policy covers a compensation payment due under the Hotel Management Agreement between the Franchisee, Named Insured, and any Franchisor, as identified via policy endorsement, or other appropriate subsidiaries acting as the management company or agent, whether insured or not under this policy. The Contract Penalty is triggered when the Hotel Management Agreement is terminated due to loss or damage of a type insured under this policy from an insured peril where such loss or damage causes a total constructive loss.

"A total constructive loss" means the destruction or damage to the Hotel by an insured peril whereby the destruction of or damage to the Hotel is such that the cost of repairing, rebuilding or replacing the Hotel exceeds 50% of the Replacement value of the Hotel." The Contract Penalty will only apply if the franchisor does not release the franchisee from the Hotel Management Agreement after a total constructive loss occurs and the First Named Insured / Franchisee elects not to repair or rebuild the property.

26.    BOILER & MACHINERY - This policy insures direct or indirect loss as covered elsewhere in this policy to insured property as a result of an Accident to an Object subject to the following definitions:

a)    "Object" means any boiler, fired or unfired pressure vessel, refrigerating or air-conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

b)    "Accident" means an accidental loss to an Object or a part thereof which manifests itself in physical damage that necessitates repair or replacement of the Object or part thereof.

c)    "Hazardous Substance" means the additional expense incurred for clean up, repair or replacement, or disposal of damaged, contaminated or polluted property as a result of an "Accident" which causes property to become damaged, contaminated or polluted by a substance declared hazardous to health by an authorized governmental agency.  "Additional Expenses" means expenses incurred that would not have been incurred, had no substance hazardous to health been involved in the accident.

27.    PERILS INSURED AGAINST - This policy insures against all risks of direct physical loss of or damage to property described herein including general

Plaintiffs 000791

average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

28.    PERILS EXCLUDED - This policy does not insure:

a)    infidelity or dishonesty of the Insured or of the Insured's employees. A willful act of malicious intent shall not be deemed to be an act of infidelity. In no event does this Policy insure loss caused by theft by the Insured or the Insured's employees;

b)    against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

c)    against ordinary wear and tear or gradual deterioration unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

d)    against inherent vice or latent defect unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

e)    against errors in processing or manufacture of the Insured's product unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

f)    against mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

g)    against nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except if a covered peril ensues, liability is specifically assumed for direct loss by such ensuing peril but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination.  This Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

h)    against hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or

Plaintiffs 000792

expected attack by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or by military, naval, or air forces; or by any agent of any such government, power, authority, or forces;

i)      against any weapon employing atomic fission or fusion;

ii)     against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

iii)    against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against under this policy;

iv)     against risks of contraband or illegal trade;

v)      against confiscation, nationalization and expropriation;

Notwithstanding the above provisions, this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated.  Nothing in the foregoing shall be construed to include any loss, damage, or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon or war employing atomic fission or fusion whether in time of peace or war.

i)      loss or damage caused directly or indirectly by the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants unless the release, discharge, dispersal, seepage, migration, or escape is caused by a peril not otherwise excluded herein.  However, if a peril not otherwise excluded herein ensues due to the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants, such ensuing loss or damage shall be covered.

j)      loss or damage caused by an act of terrorism which means an act or series of acts, including the use of force or violence, of any person or group(s) or persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public or any section of the public in fear for such purposes.

k)      against loss or damage caused by insect or vermin.

20

Plaintiffs 000793

l)      against delay, loss of market loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

m)      against delay, loss of market, loss of use, mysterious disappearance, loss or shortage disclosed upon taking inventory unless the loss can be proven by the insured to be caused by a peril insured hereunder;

n)      against corrosion, depletion, deterioration, erosion, wet rot, dry rot, decay, evaporation, rust, and shrinkage unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

o)      against changes of temperature or humidity, whether atmospheric or not;

p)      against settling, cracking, bulging, shrinking, or expansion of foundations; machinery pedestals, pads, or platforms; floors, pavements, walls, ceilings, or roofs; or the cumulative effects of smog, smoke, soot, vapor liquid, or dust;

q)      against lack of incoming power voice/data/internet access from offsite services except as provided in the Service Interruption Extension.

Exclusion b), c), d) and e) do not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly.

Exclusion b), c) and d) do not apply to property in transit.

29.    DEFINITIONS

a)      The term "Earthquake" as used in this policy shall mean loss or damage caused by or resulting from a series of vibrations induced in the earth's crust by the abrupt rupture and rebound of rocks in which elastic strain has been slowly accumulating (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

b)      The term "Flood" as used in this policy shall mean loss or damage caused by or resulting from waves, tide, or tidal water, and the rising (including the overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and similar bodies of water, whether wind driven or not (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

c)      The term "occurrence" is defined as follows:

Plaintiffs 000794

i)       Except as hereinafter defined, "loss occurrence" shall mean an accident or occurrence or series of accidents or occurrences arising out of one event.

ii)      ii) Each loss occurrence which involves the perils of tornado, windstorm, cyclone, hurricane, hail or flood shall include all loss or damage wherever occurring occasioned by these perils which arise out of one atmospheric disturbance during a continuous period of 168 hours.

iii)     Each loss occurrence which involves the peril of earthquake, a series of earthquakes shall include all losses or damage sustained during a continuous period of 168 hours.

iv)     Each loss occurrence which involves the peril(s) of vandalism, malicious mischief or riot/civil commotion shall include all losses or damage sustained resulting from one or more acts committed by a person acting alone or in collusion with others during a continuous period of 168 hours.

v)      The Insured shall have the right to elect the moment from which the time periods referred to in ii), iii), and iv) above shall be deemed to have commenced, however no elected period of time shall commence within any previous occurrence.

vi)     Should the time period in ii), iii), and iv) above extend beyond expiration or cancellation date of this policy and commence prior to the expiration or cancellation date, this Company shall be liable as is such period fell entirely within the term of this policy.

vii)    However, we shall not be liable hereunder for any loss or damage:

viii)   Occurring before this policy becomes effective; or

ix)    Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

d)    "Raw Stock" - Materials and supplies in the state in which the Insured receives it for conversion by the Insured into Finished Stock, including supplies consumed in such conversion or in the service rendered by the Insured.

e)    "Stock in Process" - Raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture by on behalf of the Insured but which has not become Finished Stock.

f)    "Finished Stock" - Stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

g)    "Merchandise" - Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

h)    "Normal" - The condition that would have existed had no loss occurred.

Plaintiffs 000795

i)      "Improvements and Betterments" - Fixtures, alterations, installations or additions comprising a part of the described building and made or acquired at the expense of the Insured, but which are not legally subject to removal by the Insured.

j)      "Valuable papers and records" - Written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents and manuscripts.

k)      "Electronic Data Processing Media" - All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles.

l)      "Securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets.

m)      "Fine Arts" - Shall include but not be limited to bona fide works of art, works of rarity, works of historical value, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, galley proofs, original records, sculptures, carvings and similar property.

n)      "Architect and Engineering Fees" - Any cost associated with the preparation of plans, supervision of and approval for the repair or replacement of damaged or destroyed property.

o)      "Tier One County" - the entire territory of the United States Virgin Islands, the entire Commonwealth of Puerto Rico, the entire State of Florida, and the following:

   i)      In the State of Alabama, the counties of Baldwin, Escambia, and Mobile;

   ii)     In the State of Connecticut, the counties of Fairfield, New Haven, and New London;

   iii)    In the State of Georgia, the counties of Bryan, Camden, Chatham, Glynn, Liberty, and McIntosh;

   iv)     In the State of Hawaii, the counties of Honolulu, Kauai, and Maui;

   v)      In the State of Louisiana, the counties (also known as "Parishes") of Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, Iberia, Iberville, Jefferson Davis, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John The Baptist, St. Martin, St. Mary, St. Tammany, Terrebonne, and Vermillion;

   vi)     In the Commonwealth of Massachusetts, the counties of Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, and Suffolk;

23

Plaintiffs 000796

vii) In the State of Mississippi, the counties of George, Greene, Hancock, Harrison, Jackson, Pearl River, and Stone;

viii) In the State of New Jersey, the counties of Atlantic, Monmouth, and Ocean;

ix) In the State of New York, the counties of Kings, Nassau, Queens, and Suffolk;

x) In the State of North Carolina, the counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington;

xi) In the State of Rhode Island, the counties of Newport, Providence, and Washington;

xii) In the State of South Carolina, the counties of Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, and Williamsburg;

xiii) In the State of Texas, the counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Gollad, Harris, Hidalgo, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, and Willacy; and

xiv) In the Commonwealth of Virginia, the counties of Accomack, Gloucester, Isle of Wright, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, Westmoreland, and York; and the independent cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Suffolk, and Virginia Beach.

p) "Named Storm"- A storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Depression or Tropical Storm. "Named storm" does not include "flood" resulting from a "named storm".

q) "Time Element' – Includes coverage as described under Clause 12., 13., 14., 15., 16., 17., 18., 19. and 20. hereunder.

r) "Unnamed Location' – A location which has not been scheduled with underwriters or the insured's representative and is not considered a Newly Acquired location.

s) "Newly Acquired Location" – A location acquired by the insured after inception of this policy for a period of up to 90 days until reported to and agreed by underwriters.

30. FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES - This policy covers fire brigade charges and other extinguishing expenses for which the Insured may be assessed including loss of fire extinguishing materials expended resulting from a peril insured.

24

31.     SEVERABILITY OF INTERESTS - The inclusion herein of more than one person or organization, as Insured, shall not operate to increase the limit of the Company's liability nor the deductible amounts to be borne by the Insured. Except with respect to limits of liability and deductible amounts, the terms of this policy shall apply separately to each person or organization covered as Insured in the same manner and to the same extent as though a separate policy had been issued to each such person or organization.

32.     DEBRIS REMOVAL - This policy covers the cost of removal of debris of property covered hereunder including the cost of removal of debris of property not insured hereunder from the premises of the Insured resulting from a peril insured against. Except as otherwise provided for elsewhere in this policy, this policy does not cover the cost to extract contaminants or pollutants from land or water, nor does it cover the cost to remove, restore or replace contaminated or polluted land or water.

If at the time insured property is contaminated as a direct result of physical damage insured against by this policy there is in force any law or ordinance regulating contamination, including but not limited to pollution, then this policy shall cover, as a result of the enforcement of such law or ordinance, the increased cost of decontamination and debris removal of such property in a manner to satisfy such law or ordinance.  As respects Time Element coverage(s), this policy is extended to include such time as is necessary and reasonable with the exercise of due diligence and dispatch to decontaminate such property in a manner to satisfy such law or ordinance.

33.     DEMOLITION AND INCREASED COST OF CONSTRUCTION - In the event of loss or damage under this policy that causes the enforcement of any law or ordinance in force at the time of loss regulating the construction, repair or use of property, this Company shall be liable for:

a)     COVERAGE A - the loss in value of the undamaged portion of the property as a consequence of the enforcement of any law or ordinance that requires demolition of undamaged parts of the same property;

b)     COVERAGE B – the cost to demolish and clear the site of undamaged parts of the same property;

c)     COVERAGE C – the increased cost to repair or reconstruct damaged and undamaged property on the same or another site when the increased cost is a consequence of the enforcement of any law or ordinance.  These costs are limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  This Company shall not be liable for any increased cost of repair or reconstruction loss unless the damaged property is actually rebuilt or replaced;

Plaintiffs 000798

d)   Any increase in loss including but not limited to Business Interruption, Extra Expense, Rental Value, Rental Income, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law or ordinance.

e)   In the event real or personal property is not repaired or replaced to the same height, floor area, size, style or comparable quality of the original property insured due to the enforcement of law or ordinance regulating, restricting or prohibiting repair or replacement of covered property, this policy will pay the full replacement cost without deduction for depreciation for the real or personal property damaged or destroyed, as if the property was replaced to the same height, floor area, size, style or comparable quality of the original property insured.  This policy will also pay Time Element loss as if the original structure were repaired or replaced to original specifications, subject to the terms and conditions of these coverage(s).

34.   EXPEDITING EXPENSE - This policy covers the extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

35.   CONTRIBUTING INSURANCE - Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy.  This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

36.   EXCESS INSURANCE - Excess insurance is insurance over the limit of liability set forth in this policy.  The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

37.   UNDERLYING INSURANCE - Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire.  The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy. Should the amount of loss payable under such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then no deductible shall apply hereunder and that portion which exceeds such a deductible amount shall be considered "other insurance". Should the amount of loss payable under such underlying insurance be less than the largest deductible amount which would apply in the event of loss under this policy, then the deductible amount to be deducted hereunder shall be the difference between the amount to be paid under such underlying insurance and the largest deductible amount which would apply in the event of loss under this policy.

38.   OTHER INSURANCE - Except for insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether

26

prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils.  This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.

39.     SUBROGATION - Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder.  The right of subrogation against the Insured, affiliated, subsidiary, and associated companies, or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived and at the option of the Insured, against a tenant or guest of the Insured. In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.  If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests.  If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

40.     SALVAGE AND RECOVERIES - All salvages, recoveries, and payments, (excluding proceeds from subrogation and underlying insurance) recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly.  If proceeds from subrogation are recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(s) participating in the payment of any loss, in the proportion of their respective interests.

41.     CONTROL OF DAMAGED MERCHANDISE - The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods.  The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods.  The Insured, using reasonable discretion, shall be the sole judge as to whether production or EDP equipment and/or media is damaged and unusable. This insurer shall be allowed to dispose of as salvage, any non-proprietary property deemed unusable by the Insured.

Plaintiffs 000800

42.     BRAND OR TRADEMARK - In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carriers or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at this Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

43.     ERRORS OR OMISSIONS - Any unintentional error or omission made by the Insured in the application for insurance shall not void or impair the insurance hereunder but only to the extent this Policy would have provided coverage had the unintentional error or omission not been made provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department. This coverage does not apply if there is coverage available under any other provision in this Policy.

44.     NOTICE OF LOSS - As soon as practicable after any loss or damage occurring under this policy is known to the Insured's home office insurance department, the Insured shall report such loss or damage with full particulars to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 for transmission to the designated loss adjuster and to this Company.

45.     DESIGNATED LOSS ADJUSTER - It is understood and agreed that each and every loss will be adjusted by Jeff Hellman of McLaren Young International, 19324 40th Avenue West, Suite C, Lynnwood, WA 98036.

46.     PROOF OF LOSS - Proof of loss is required as soon as practicable following the Company's written request for signed Proof from Insured; however, Insured, at its option, may elect to file Proof with the Company prior to the Company's request.  It shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained.

47.     PARTIAL PAYMENT OF LOSS - In the event of a loss covered by this policy, it is understood and agreed that the Company shall allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

48.     PAYMENT OF LOSS - All adjusted claims shall be due and payable no later than thirty (30) days after presentation of acceptable proofs of loss by the Insured or its appointed representative.

49.     LOSS ADJUSTMENT EXPENSES - This policy is extended to include reasonable expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. These expenses include fees of professionals engaged to assist the Insured in determining the cause and origin of the loss, the amount

**Plaintiffs 000801**

of loss sustained, and the amount of loss payable under this policy. This policy shall not cover the expenses of a public adjuster. Such expenses shall not exceed $2,000,000 in any one occurrence.

50.  APPRAISAL - If the Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser.  The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending.  Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss.  If the appraisers fail to agree, they shall submit their differences to the umpire.  An award in writing by any two shall determine the amount of loss.  The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

51.  CONSEQUENTIAL LOSS - This policy insures against consequential loss including spoilage to real and personal property as insured hereunder caused by change of temperature or humidity or by interruption of any service including but not limited to power, heat, air conditioning, or refrigeration resulting from a peril insured against.

52.  PAIR AND SET - In the event of loss or damage by a peril insured against to any article or articles which are part of a pair or set, the measure of loss or damage to such article or articles shall be the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

53.  CONSEQUENTIAL REDUCTION IN VALUE - This policy covers the reduction in value of insured components or parts of components or parts of products or the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to direct physical loss or damage insured against by this Policy to other insured components or parts of products.

54.  COINSURANCE WAIVER - This policy is not subject to any coinsurance or average clause.

55.  ALTERATIONS AND USE CLAUSE - Permission is granted to the insured to cease operations or for buildings to remain vacant or unoccupied provided fire protection, watch alarm services are maintained, and written notice is given to the Insurer prior to the sixtieth (60th) consecutive day of cessation of operations, vacancy or unoccupancy. The Insured's building is considered vacant or unoccupied when it does not contain enough covered Property to conduct customary business operations.

Plaintiffs 000802

56.     ASSISTANCE AND COOPERATION OF THE INSURED - The Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

57.     SUE AND LABOR - In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment.  This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

58.     REINSTATEMENT - With the exception of loss subject to annual aggregate limits as noted herein, no loss hereunder shall reduce the amount of this policy.

59.     SUIT AGAINST THE COMPANY - No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy.  The Company agrees that any action or proceeding against it for recovery of any loss under this policy shall not be barred if commenced within the time prescribed therefor in the statutes of Florida.

60.     CERTIFICATES OF INSURANCE - It is understood and agreed that Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 is authorized to issue certificates of insurance naming additional insureds and/or loss payees and/or mortgagees and others for their respective rights and interests subject always to the terms, conditions, and limits of liability of this policy. The Company agrees to waive the issuance of formal Company endorsements in respect of such interests.

61.     NOTIFICATION CLAUSE - All notices or communications concerning this policy shall be addressed to the offices of the Insured, to Arthur J. Gallagher Risk Management Services, Inc., 1900 West Loop South #1600, Houston, TX 77027 and to AmWINS Brokerage of Georgia, 3630 Peachtree Road NE, Suite 1700, Atlanta, GA 30326.  All such notices shall be sent via registered mail.

62.     CANCELLATION/NON RENEWAL - This policy may be cancelled at any time at the request of the Insured or it may be cancelled or non-renewed by the Company by mailing to the Insured written notice stating when, not less than ninety (90) days thereafter or ten (10) days in the event of non-payment of premium, such cancellation or non-renewal shall be effective. If the First Named Insured cancels, return of any unearned premium will be calculated on the

**Plaintiffs 000803**

customary short rate basis. If the Company cancels, return of any unearned premium will be calculated on a pro rata basis. Return of any unearned premium will be made by the Company as soon as practicable. The cancellation will be effective even if the Company has not made or offered a refund.

63.     TITLES OF PARAGRAPHS - The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

64.     MORTGAGE CLAUSE - As respects Real Property only, loss, if any, under this policy shall be payable to the mortgagee (or trustee) as its interest may appear under all present or future mortgages upon the property herein insured in which the aforesaid may have an interest as mortgagee (or trustee) in order or precedence of mortgages., and this insurance as to the interest of said mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that, in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided also, that the mortgagee (or trustee) shall, notify the Company of any changes of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and unless permitted by this policy, it shall be noted thereon and the mortgagees or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The company reserves the right to cancel this policy at any time as provided by its terms, and in such case, this policy shall continue in force for the benefit only of the mortgagee (or trustee) for an additional thirty (30) days.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgagee debt, or may at their option pay to the mortgagee (or trustee) the whole principal due or to grow on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and all of such other securities, but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

65.     JURISDICTION AND SUIT - It is hereby understood and agreed that in the event of the failure of the Insurer to pay an amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court

31

of competent jurisdiction within the United States and will comply with all requirements necessary to give such jurisdiction.  All matters arising hereunder shall be determined in accordance with the law and practice of such court. In any suit instituted against it under this, the Insurer will abide by the final decision of such court or any appellate court in the event of an appeal.

66.    POLLUTANT CLEAN UP AND REMOVAL - This policy is extended to cover the expense actually incurred by the Insured to decontaminate, clean up and/or remove pollutants from land, water or air including resultant time element loss if the release, discharge, or dispersal of the pollutants results from any loss or damage as covered herein. Such expenses shall not exceed $500,000 in any one policy year.

67.    ATTACHMENT CLAUSE – Please refer to the Participation Page.

_____

[Authorized Signature]

Plaintiffs 000805

# Endorsement No. 1

### <u>Microorganism Exclusion – Resultant Mold</u>

This policy does not insure any loss, Damage, Time Element, claim, cost, expense or other sum directly or indirectly arising out of or relating to (regardless of whether any other cause or event contributed concurrently or in any sequence):

Fungus, mold, mildew, yeast, mushrooms, spores, toxins, mycotoxins, bacteria or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion shall not apply to any such loss, Damage, Time Element, claim, cost, or expense resulting from mold that is a direct result of an Insured Cause of Loss and is not otherwise excluded by the Policy, provided such loss, Damage, Time Element, claim, cost, or expense is reported to the Company in writing within twelve months from the expiration date of the policy. This clause is subject to a $500,000 per occurrence and in the annual aggregate sublimit.

This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part, for these matters.

All other terms and conditions remain unchanged.

**Plaintiffs 000806**

**COMMERCIAL PROPERTY**
**ECP 10 601 03 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AUTHORITIES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

Notwithstanding any of the preceding provisions of this Endorsement, except in respect of certain specific coverage(s) provided elsewhere in the policy to which this Endorsement is attached, this policy does not insure against fines, penalties and expenses directly attributable to such fines and penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

Copyright, Everest Reinsurance Company, 2017
Includes copyrighted material of Insurance Services Office, Inc.,
used with permission

**Plaintiffs 000807**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ASBESTOS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

A.  This Policy only insures asbestos physically incorporated in an insured building or structure, and then only that part of the asbestos which has been physically damaged during the policy period by one of these Listed Perils:

Fire; Smoke; Explosion; Lightning; Windstorm; Hail; Direct Impact of Vehicles, Aircraft or Vessel; Riot or Civil Commotion; Vandalism or Malicious Mischief; Leakage or Accidental Discharge of Fire Protective Equipment; Flood and Earth Movement.

This coverage is subject to all limitations in the policy to which this endorsement is attached and, in addition, to each of the following specific limitations:

1)  The said building or structure must be insured under this policy for damage by that Listed Peril.

2)  The Listed Peril must be the immediate, sole cause of the damage to the asbestos.

3)  The Assured must inspect the building or structure and report to Underwriters the existence and cost of the damage within one year after the Listed Peril first damaged the asbestos.  Any later reported damage is not insured, including all damage reported more than one year after the last day of the policy period.

4)  Insurance under this policy in respect of asbestos shall not include any sum relating to:

    (i)      faults in the asbestos or its design or workmanship;

    (ii)     asbestos not physically damaged by the Listed Peril;

    (iii)    actions taken to protect human health or property; or

    (iv)    standards or requirements set by any government or regulatory authority.

B.  Except as set forth in the foregoing Section A, this policy does not insure asbestos or any sum relating thereto.

Copyright, Everest Reinsurance Company, 2017
Includes copyrighted material of Insurance Services Office, Inc.,
used with permission

**Plaintiffs 000808**

**COMMERCIAL PROPERTY**
**ECP 10 604 03 20**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

**Plaintiffs 000809**

**ECP 04 619 07 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ABSOLUTE CYBER EXCLUSION

This endorsement modifies insurance provided under the following:

MANUSCRIPT PROPERTY COVERAGE FORM

It is understood and agreed that the following Exclusion is added to the Policy:

This policy does not insure against loss or damage caused directly or indirectly by any of the following, regardless of any other cause or event contributing concurrently or in sequence to the loss or damage:

Cyberattack, cyberwarfare, cyberterrorism or any kind of malicious activity that attempts to collect, disrupt, deny, degrade or destroy information system resources or the information itself, including loss, damage, cost or expense resulting from or caused directly or indirectly by any of the following:

i. Loss of, alteration of, or damage to, corruption of, or a reduction in the functionality, availability or operation of any computer, computer system, website or any other electronic data system, hardware, process, program, software , data, media, information repository, microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether your property or not;

ii. Any access to or disclosure of any person's or organization's confidential, personal, proprietary or other nonpublic information in any recordable form, including but not limited to costs or expenses associated with notification, remediation, mitigation or prevention of a security breach; or

iii. Extortion threats, fraud or theft involving any computer, computer system, computer software, computer process or program, website or any other electronic data system or any confidential, personal, proprietary or other nonpublic information.

All other terms and conditions of this Policy remain unchanged.

**Plaintiffs 000810**

**COMMERCIAL PROPERTY**
**ECP 10 607 03 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ELECTRONIC DATE RECOGNITION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

This policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

a)   the calculation, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not; or

b)   any change, alteration or modification involving the date change to the year 2000, or any other date change including leap year calculations, to any such computer system, hardware program or software or any microchip, integrated circuit or similar device in computer equipment or noncomputer equipment, whether the property of the insured or not.

Clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

**Plaintiffs 000811**

EIL 03 540 03 20

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

It is understood and agreed that the following Exclusion is added to the Policy:

**A.**  We will not pay for any loss, cost, damage or expense:

    **1.**  Arising out of, caused by, attributed to, or occurring concurrently or in any sequence to "communicable disease"; or

    **2.**  To clean-up, detoxify, remove, monitor or test:

        **(a)**  For a "communicable disease"; or

        **(b)**  Any tangible or intangible property insured under this policy that is affected by such "communicable disease".

    Any contamination of property or business interruption caused by any virus, parasite or microorganism is not direct physical loss insured under this policy. This exclusion also applies to any loss arising directly or indirectly out of fear or threat (whether actual or perceived) of any virus, bacterium or other microorganism.

**B.**  The exclusion set forth in Paragraph **A.** above applies to all coverage, coverage extension(s), additional coverage(s), and exception(s) to exclusions under all forms and endorsements that comprise this Coverage Part or Policy.

**C.**  For the purposes of this endorsement, the following Definition applies:

    "Communicable disease" means any infectious or contagious substance:

    **1.**  Including, but not limited to a virus, bacterium, parasite or other microorganism or any mutation thereof whether deemed living or not, and

    **2.**  Regardless of the method of transmission, whether direct or not, including, but not limited to, airborne transmission, bodily fluid transmission, transmission from or to any surface or object, solid, liquid or gas or between humans, animals, or from any animal to any human or from any human to any animal,

    that can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to tangible or intangible property insured insured under this policy.

All other terms and conditions of this Policy apply.

**Plaintiffs 000812**

**COMMERCIAL PROPERTY**
**ECP 10 611 03 20**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION

It is understood and agreed that the following Exclusion is added to the Policy:

**1.**  **SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION**

Notwithstanding any provisions in the policy to which this Endorsement is attached, this policy does not insure against loss, damage, costs or expenses in connection with the actual, alleged or threatened release, discharge, escape, dispersal, or seepage of "contaminants and/or pollutants", all whether direct or indirect, proximate or remote or in whole or in part caused by any cause whatsoever.  Nevertheless if a fire or explosion arises directly from seepage and/or contamination and/or pollution, loss or damage insured under this policy arising directly from that peril shall (subject to the terms, conditions and limitations of the policy) be covered

The Insured shall give notice to the Company of intent to claim no later than 12 months after the date of the original physical loss or damage.

**2.**  **POLLUTION CLEAN-UP OF LAND AND WATER**

Notwithstanding the provisions of the preceding exclusion in this Endorsement or any provision respecting seepage and/or "contaminants and/or pollutants", and/or debris removal and/or cost of clean-up in the policy to which this Endorsement is attached, this Policy also covers the reasonable and necessary cost for the cleanup, removal and disposal of "contaminants and/or pollutants" from uninsured property consisting of land and water at the Insured Location if the release, discharge or dispersal of "contaminants and/or pollutants" is a direct result of insured physical loss or damage to insured property.  The maximum amount insured and payable under this Policy for Pollution Clean-Up is the sublimit stated in the Limit of Liability section.

This Policy does not cover the cost to cleanup, remove and dispose of "contaminants and/or pollutants" from such property:

**a.**  at any location insured for Personal Property only.

**b.**  at any property insured under AUTOMATIC COVERAGE, ERRORS AND OMISSIONS or Miscellaneous Unnamed Location coverage provided by this Policy.

**c.**  when the Insured fails to give written notice of loss to the Company within 180 days after inception of the loss.

For the purposes of this endorsement, the following Definition applies:

"Contaminants and/or pollutants" means any material that after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, loss of use marketability or loss of use of property insured by this Policy, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, bacteria, fungi, virus, parasite, organism, mold, spores, vaccines, waste material, or hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act, or as designated by the U.S. Environmental Protection Agency.

**Plaintiffs 000813**

COMMERCIAL PROPERTY
ECP 13 002 07 18

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BUILDERS RISK EXCLUSION
## (WOOD FRAME)

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
COMMERCIAL PROPERTY MANUSCRIPT POLICY
PINNACLE PROPERTY COVERAGE FORM

In consideration of the premium charged, it is hereby understood and agreed that this policy does not provide coverage for the following:

Buildings or structures made of wood or any other combustible material that are under the course of construction or erection, including:

**(1)** Building materials, supplies, equipment, fixtures and machinery used for or incidental to construction;

**(2)** Foundations of a building or structure described in the Declarations while in the course of construction; and

**(3)** Temporary structures built or assembled on site, including cribbing, scaffolding and construction forms.

However, subject to the terms and conditions of this policy, this policy shall provide coverage for existing buildings undergoing normal maintenance, repairs or renovations which are considered to be finished property in the course of construction. For the purposes of this endorsement, an existing building is not considered to be undergoing normal maintenance, repairs or renovations when it is stripped down to its structural components and rebuilt.

**All other terms and conditions remain the same.**

Copyright, Everest Reinsurance Co., 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Plaintiffs 000814**

**INTERLINE**
**ECP 00 565 06 18**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

**SCHEDULE**

| **Minimum Earned Premium:** | 35 | % of the TOTAL PREMIUM shown on the DECLARATIONS |
|---|---|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

The following provision is added to the Cancellation Condition and replaces any provision to the contrary:

If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be pro rata, less 10%, and such refund will be subject to the minimum earned premium shown in the Schedule. The cancellation will be effective even if we have not made or offered a refund.

COMMERCIAL PROPERTY
ECP 12 003 11 18

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF EXAMINATION UNDER OATH PROVISION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

It is hereby understood and agreed that the Policy is amended as follows:

The provisions relating to duties of the Insured in the event of loss or damage are amended as follows:

1. Any provision relating to examination under oath is replaced by the following:

   The Company may examine the Named Insured, any other insured, the Insured's agents or representatives, and all others, under oath, while not in the presence of any other insured, agent or representative and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's book and records.  Such examination shall take place in the County where the building is located.  In the event of an examination, an insured's answers must be signed.

2. The following provisions are added:

   In the event of a direct damage loss which the Insured believes is insured herein, the Insured has the duty to:

   a. Provide the Company with the records and documents the Company requests and permit the Company to make copies;

   b. Any and all insureds must execute all authorizations for the release of information when requested by the Company;

   c. The Named Insured and any insured must submit to recorded statements when requested by the Company.

**All other terms and conditions remain the same.**

**COMMERCIAL PROPERTY**
**ECP 10 544 09 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXISTING DAMAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

The following is Exclusion is added to the policy

**Existing Damage**

We will not pay for loss or damage caused directly or indirectly by **Existing Damage**. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence, to **Existing Damage**. This exclusion applies whether or not the loss or damage results in widespread damage or affects a substantial portion of the property.

For the purpose of this endorsement, **Existing Damage** means:

**a.** Any damage which occurred prior to the effective date of this policy regardless of whether such damage was apparent on the effective date of this policy or at a later date;

**b.** Any claims or damage arising out of workmanship, repairs and/or lack of repairs resulting from damage which occurred prior to the effective date of this policy; and

**c.** Any claims or damage unless all buildings insured under your previous policy have been fully and completely repaired. Prior to such completion of repairs, coverage will be limited to the actual cash value of the property at the time of a covered loss or damage occurring during this policy period.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**Plaintiffs 000817**

COMMERCIAL PROPERTY
ECP 13 003 09 18

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF TERRORISM – CERTIFIED AND NONCERTIFIED ACTS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY
PINNACLE PROPERTY COVERAGE FORM

### SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| FL | Property |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A.** The following Definitions are added:

  **1. Certified Act Of Terrorism**

   "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

  **2. Noncertified Act Of Terrorism**

   "Noncertified act of terrorism" means activities against persons, organizations or property of any nature:

   **a.** That involve the following or preparation for the following:

    **(1)** Use or threat of force or violence; or

    **(2)** Commission or threat of a dangerous act; or

    **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

Copyright, Everest Reinsurance Co., 2018
Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.
Plaintiffs 000818

**b.** When one or both of the following applies:

    **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology; and

**c.** That are not certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.

**B.** The following Exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by any "certified act of terrorism" or "noncertified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exceptions to the exclusion in Paragraph **B.** apply only if indicated and as indicated in the Schedule of this endorsement.

**1.** If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Time Element Coverage, Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury

**2.** If a "noncertified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Time Element Coverage, Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion

**Plaintiffs 000819**

**COMMERCIAL PROPERTY**
**ECP 10 614 03 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# METHOD OF CLAIM NOTICE AND SERVICE OF SUIT CONDITIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

## AA.  METHOD OF CLAIM NOTICE

Under all of the coverages of this policy, notice of claim or circumstances which may reasonably be expected to give rise to a claim hereunder shall be given in writing to, and at the address for the Claims Organization shown in the Declarations.  If no Claims Organization is shown in the Declarations, such notice shall be given in writing to Everest Indemnity Insurance Company, PO Box 830, Liberty Corner, NJ 07938-0830.

## BB.  SERVICE OF SUIT

It is agreed that in the event of the Company's failure to pay any amount claimed to be due hereunder, the Company, at your request will submit to the jurisdiction of a court of competent jurisdiction within the United States.  Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.  It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Everest Indemnity Insurance Company, PO Box 830, Liberty Corner, NJ  07938-0830 or his or her representative, and that in any suit instituted against us upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, other officer specified for that purpose in the statute, or his or her successor or successors in office as the Company's true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named  Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Copyright, Everest Reinsurance Company, 2017
Includes copyrighted material of Insurance Services Office, Inc.,
used with permission
**Plaintiffs 000820**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# FLORIDA AMENDATORY ENDORSEMENT – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL PROPERTY MANUSCRIPT POLICY
PINNACLE PROPERTY COVERAGE FORM

The following cancellation and nonrenewal provision applies and supersedes any similar provision to the contrary.

**<u>Cancellation and Nonrenewal</u>**

**I. Cancellation**

1. You may cancel this policy by providing us with an advance, written request for cancellation stating when the cancellation shall take effect; or by remitting the original policy, or by remitting a lost or retained policy release, signed by the First Named Insured or authorized representative.

2. Cancellation For Policies In Effect 90 Days Or Less

   a. If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

      i. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
      ii. 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:
         (1) A material misstatement or misrepresentation; or
         (2) A failure to comply with underwriting requirements established by the insurer.

   b. We may not cancel:

      i. On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

      ii. Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

Copyright, Everest Reinsurance Company, 2019
Includes copyrighted material of Insurance Services Office, Inc.,
used with its permission.

**Plaintiffs 000821**

3. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

4. Cancellation For Policies In Effect For More Than 90 Days

   a. If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

      i. Nonpayment of premium;

      ii. The policy was obtained by a material misstatement;

      iii. In the event of failure to comply, within 90 days after the effective date of coverage, with underwriting requirements established by us before the effective date of coverage;

      iv. There has been a substantial change in the risk covered by the policy;

      v. The cancellation is for all insureds under such policies for a given class of insureds;

      vi On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

      vii On the basis of a single property insurance claim which is the result of water damage, if we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

      viii. The cancellation of some or all of our policies is necessary to protect the best interests of the public or policyholders and such cancellation is approved by the Florida Office of Insurance Regulation.

   b. If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

      i. 10 days before the effective date of cancellation if cancellation is for nonpayment of premium;

      ii. 45 days before the effective date of cancellation if:

      (1) Cancellation is for one or more of the reasons stated in Paragraphs 4.a.ii. through 7.a.vii. above, and this policy does not cover a residential structure or its contents; or

      (2) Cancellation is based on the reason stated in Paragraph 4.a.viii. above;

   iii.  120 days before the effective date of cancellation if:

      (1) Cancellation is for one or more of the reasons stated in Paragraphs 4.a.ii. through 7.a.vii. above; and

      (2) This policy covers a residential structure or its contents.

c . If this policy has been in effect for more than 90 days and covers a residential structure or its contents, we may not cancel this policy based on credit information available in public records.

## II. Nonrenewal

1. If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least:

   a. 45 days prior to the expiration of the policy if this policy does not cover a residential structure or its contents, or if nonrenewal is for the reason stated in Paragraph II.5.; or

   b. 120 days prior to the expiration of the policy if this policy covers a residential structure or its contents.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. We may not refuse to renew this policy:

   a. On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

   b. On the basis of filing of claims for sinkhole loss. However, we may refuse to renew this policy if:

      i. The total of such property insurance claim payments for this policy equals or exceeds the policy limits in effect on the date of loss for property damage to the covered building; or

      ii. You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based; or

   c. Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**Plaintiffs 000823**

4. Notwithstanding the provisions of Paragraph II.3., we may refuse to renew this policy if this policy includes Sinkhole Loss coverage. If we non-renew this policy for purposes of removing Sinkhole Loss coverage, pursuant to section 627.706, Florida Statutes, we will offer you a policy that includes catastrophic ground cover collapse coverage.

5. Notwithstanding the provisions of Paragraph II.3., we may refuse to renew this policy if nonrenewal of some or all of our policies is necessary to protect the best interests of the public or policyholders and such nonrenewal is approved by the Florida Office of Insurance Regulation.

### III. Limitations On Cancellation And Nonrenewal In The Event Of Hurricane Or Wind Loss – Residential Property

1. The following provisions apply to a policy covering a residential structure or its contents, if such property has sustained damage as a result of a hurricane or windstorm that is the subject of a declaration of emergency by the Governor and filing of an order by the Commissioner of Insurance Regulation:

   a. Except as provided in Paragraph III.1.b., we may not cancel or nonrenew the policy until at least 90 days after repairs to the residential structure or its contents have been substantially completed so that it is restored to the extent that it is insurable by another insurer writing policies in Florida. If we elect to not renew the policy, we will provide at least 100 days' notice that we intend to nonrenew 90 days after the substantial completion of repairs.

   b. We may cancel or nonrenew the policy prior to restoration of the structure or its contents for any of the following reasons:

      i. Nonpayment of premium;

      ii. Material misstatement or fraud related to the claim;

      iii. We determine that you have unreasonably caused a delay in the repair of the structure; or

      iv. We have paid the policy limits.

   If we cancel or nonrenew for nonpayment of premium, we will give you 10 days' notice. If we cancel or nonrenew for a reason listed in Paragraph b.(2), b.(3) or b.(4), we will give you 45 days' notice.

2. With respect to a policy covering a residential structure or its contents, any cancellation or nonrenewal that would otherwise take effect during the duration of a hurricane will not take effect until the end of the duration of such hurricane, unless a replacement policy has been obtained and is in effect for a claim occurring during the duration of the hurricane. We may collect premium for the period of time for which the policy period is extended.

3. With respect to Paragraph III.2., a hurricane is a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service (hereafter referred to as NHC). The hurricane occurrence begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the NHC and ends 72 hours after the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the NHC.

**ECP MAN 05 17**

Everest Indemnity Insurance Company
477 Martinsville Road
P.O. Box 830 Liberty Corner, NJ 07938-0830
1-800-438-4375



# AMENDATORY ENDORSEMENT No. 2

**Named Insured: Portofino Masters Homeowners Association at Pensacola Beach, Inc.**

**Policy Number: CA3X001322-201**          **Effective Date: 04/01/2020**

In consideration of the premium charged, it is hereby understood and agreed that the following changes are made part of the policy:

Clause 5. SUBLIMIT(S) OF LIABILITY, item bb). is amended as follows:

bb). $2,500,000 per occurrence as respects Service Interruption. Property Damage and Time Element Combined (T&D Lines within premises and 1,000 ft. thereof).

Clause 10.  PROPERTY EXCLUDED, item e. is amended as follows

(e) Watercraft while afloat, aircraft, and motor vehicles licensed for highway use when not on the Insured's premises.

Clause 20.  EXTENSIONS OF TIME ELEMENT COVERAGE, is amended per the following:

(20) Extension of Time Element Coverage (b) property that directly or indirectly prevents a direct supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that prevents a direct receiver of goods and/or services from receiving the Insured's goods and/or services; such supplier or receiver shall not be an Insured under this policy. Coverage includes loss or damage to real and personal property not owned or operated by the Insured, located within 5 miles of an insured and which attracts business to the vicinity.

The following items are deleted in their entirety and excluded from this policy:

- WAIVER OF POLICY CONDITIONS
- POLICY AUTHORSHIP

**Plaintiffs 000825**

All other Terms and Conditions remain unchanged.

_____
President

**Plaintiffs 000826**