UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WESTCHESTER SURPLUS
LINES INS. CO., et al.,

     Plaintiffs,

v.                                                                          Case No. 3:23cv453-MCR-HTC

PORTOFINO MASTERS HOMEOWNERS
ASSOC., INC., et al.,

     Defendants.
_____/

## ORDER

This matter is before the Court on Defendants' and Non-Party Association Members' Amended Motion for Protective Order and Prayer for Award of Attorneys' Fees. Doc. 137. Upon consideration of the motion, the Plaintiffs' Response, Doc. 145, Defendants' notice of supplemental authority, Doc. 150, and counsel's argument at the hearing held on December 15, 2023, the Court finds the motion should be GRANTED to the extent a protective order will be issued. However, the Court declines to award fees and costs.

I.      **Background**[1]

The Plaintiffs in this declaratory judgment action are insurers (herein referred to as the "Insurers") who issued, collectively, more than a dozen commercial property policies of insurance to Defendant homeowner associations (herein referred to as the "HOAs"),[2] with effective dates from April 1, 2020, to April 1, 2021, covering a group of condominiums and adjacent property herein referred to as the Portofino Towers, located on Pensacola Beach.[3]   The Portofino Towers were damaged by Hurricane Sally, which made landfall in Pensacola on September 16, 2020.   Shortly thereafter, the HOAs submitted a claim to four (4) of the Insurers,[4] which immediately began investigating the claim.   However, in December 2020, because of a dispute between the Insurers and the HOAs over the amount of payments to be made, the HOAs demanded an appraisal.[5]

As part of the appraisal process, the HOAs and the Insurers each selected an appraiser.   The HOA selected George Keys of Keys Claims Consultants as their appraiser and the Insurers selected Pat Lewis of Lewis Claims Solutions.   The two

---

[1] The information cited in the background comes from the amended complaint, Doc. 104, and the motion to vacate the appraisal award, Doc. 116.
[2] The Defendant HOAs are the Master HOA and the HOA for each of the five (5) condominium towers comprising the Portofino property.
[3] The covered properties consist of the five (5) towers, each standing 27 stories high, and fourteen other buildings on a 28-acre property.  Doc. 104 at 10.
[4] Those four (4) insurers are Westchester, Princeton, Everest, and Endurance, referred to in the amended complaint as the "Primary Layer Carriers."  Doc. 104 at 21.
[5] According to the Insurers, the HOAs submitted an appraisal demand to only the Primary Layer Carriers.  *Id.* at 54.

appraisers then selected Jon Doan as the umpire.  Keys, Lewis, and Doan, thus,

comprised the Appraisal Panel.  The Appraisal Panel conducted hearings beginning

August 15, 2022, over Lewis's objection, and, subsequently, the Panel issued an

Appraisal Award in excess of $180,000,000 in favor of the HOAs.

The Insurers file this declaratory judgment action, seeking, among other relief,

a declaration that the Appraisal Award is void because Defendants engaged in

fraudulent conduct during the claim submission and appraisal process, Doc. 104 at

7, 40, and should be vacated under Fla. Stat. § 682.13.[6]  Specifically, the Insurers

contend: (1) the HOAs' witnesses and Keys made false representations regarding

past damages and repairs and their whereabouts during Hurricane Sally, Doc. 104 at

¶s 114-15; (2) Keys and his experts submitted written documents containing

misleading information, *id.* at ¶ 116; (3) Keys and his experts submitted estimates

and invoices containing unsupported pricing that lacked evidence or contained

duplicate costs, *id.* at ¶s 117-19; (4) the HOAs, Keys, and the experts failed to timely

---

[6] Although Fla. Stat. § 682.13 addresses the basis for vacating arbitration awards, it has been applied by several courts to vacating appraisal awards. *See e.g., Marlowe v. Ironshore Specialty Ins. Co.*, 2020 WL 736628, at *2 (M.D. Fla. Jan. 29, 2020) ("Section 682.13 of the Florida Statutes provides the grounds for vacating arbitration awards, but Florida state courts and [federal courts] have held that it also provides the grounds for vacating insurance appraisal awards.") (citing *Villas at the Hammocks v. Empire Indem. Ins. Co.*, 2011 WL 13223726, at *2 (S.D. Fla. Apr. 5, 2011)). Pursuant to that section, an appraisal award may be vacated on certain enumerated grounds, including if the "award is procured by corruption, fraud or other undue means."  Fla. Stat. § 682.13(1)(a).  In the absence of one the vacatur reasons outlined in Section 682.13, "a court may not vacate the [appraisal] award." *Id.*

produce documents, *id.* at ¶s 135-38; and (5) the HOAs, Keys, and the experts intentionally withheld and concealed material information, *id.* at ¶ 139.

At issue before the Court in this discovery dispute are 125 subpoenas issued by three of the Insurers, Homeland Insurance Company of New York, James River Insurance Company, and Landmark American Insurance Company (collectively, the "Issuing Insurers"), to owners of individual condominium units located in the Portofino Towers. The owners targeted by the subpoenas are those who purchased units after Hurricane Sally. The HOAs and 124 of the subpoenaed parties have filed a motion for protective order, objecting to producing any of the requested documents as irrelevant to this dispute. Doc. 137. The documents requested in each subpoena are the same and fall into the following categories: (1) sales documents; (2) sellers' disclosures; (3) appraisals; (4) inspections; and (5) documents regarding damages to the Towers. The Issuing Insurers contend this information is relevant to their attempts to show that the HOAs, Keys, and their experts committed fraud during the appraisal process. For the reasons discussed below, the Court disagrees.

## II.    Discussion

The HOAs and non-parties have moved for a protective order under Federal Rule of Civil Procedure 26(c). Pursuant to that rule, a party or any person from whom discovery is sought may move for a protective order and the Court may "for good cause" issue such an order "to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

The sole basis for the motion is that the documents sought are not relevant to the

issues and claims in this case. As parties, the HOAs have standing to move for a

protective order if the subpoenas seek irrelevant information.[7] *Auto-Owners Ins. Co.*

*v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005).

According to the HOA, while couched in terms of fraud, the true basis for the

Insurers' declaratory judgment action and the motion to vacate the appraisal award

---

[7] As discussed during the hearing, the non-parties may seek similar relief under Rule 45. Rule 45(d)(1) imposes a duty on the issuing party to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). This duty reflects a balancing between the litigants' need to obtain information from non-parties and the need to protect outsiders to the litigation from having to incur undue burden and expense. *Ubiquiti Networks, Inc. v. Kozumi USA Corp.,* 4:12-mc-66-RH/CAS, 295 F.R.D. 517, 527 (N.D. Fla.), *objections overruled,* 981 F. Supp. 2d 1207 (N.D. Fla. 2013). To protect a third party from an issuer's failure to honor that duty, a court "must" modify or quash a subpoena which "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(iv). A subpoena may also be quashed if it calls for "clearly irrelevant" matter. *See Bailey Inds., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 667 (N.D. Fla. 2010) (citing *Herron v. Blackford*, 264 F.2d 723, 725 (5th Cir. 1979)). The unduly burdensome analysis requires the court to "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Jordan v. Comm'r, Mississippi Dep't of Corr.,* 947 F.3d 1322, 1337 (11th Cir. 2020) (citing, 9A Wright & Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2019)). In balancing the interests, courts consider several factors, including the "relevance of the information requested" to the underlying litigation and the "burden [that would be] imposed" by producing it. *Id.* (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)). "The status of the subpoena recipient as a non-party is also a factor that can weigh against disclosure in the undue burden inquiry." *Id.* (citing *Wiwa*, 392 F.3d at 818 ("[I]f the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party.")). "The burden on the non-party is particularly great when the party issuing the subpoena seeks private information." *Pinehaven Plantation Properties, LLC v. Mountcastle Family LLC*, 2013 WL 6734117, at *2 (M.D. Ga. Dec. 19, 2013). Counsel for the HOAs and the non-parties, however, made clear they are only seeking protection under Rule 26 based on the lack of relevance and are not asking the Court to consider whether the subpoenas are unduly burdensome. Indeed, according to counsel, many of the homeowners do not have the requested documents.

Case No. 3:23cv453-MCR-HTC

is that they are unhappy with the amount of the award. The HOA argues, however, that it is well settled that only an appraisal panel can determine the amount of loss; it is not an issue for the courts. In other words, while a court may vacate an appraisal award if there has been fraud, a court cannot look underneath the hood and re-evaluate an appraisal award. *See Baptist Coll. of Fla., Inc. v. Church Mut. Ins. Co., SI*, 5:22cv158-MW/MJF, 2023 WL 4358781, at *5 (N.D. Fla. March 7, 2023) (finding that plaintiff's attempt to "introduce evidence meant to modify the face of the Appraisal Award … runs contrary to Florida law) (citing *First Protective Ins. Co. v. Hess*, 81 So. 3d 482, 486 (Fla. 1st DCA 2011) ("[A] trial court may not look beyond the face of an appraisal award and consider extrinsic evidence to determine the basis for the award.")). The HOA points to the Insurers' use of words such as "overinflated," "duplicative," "unsupported," and "overlapping" to describe the problem with the award amount as evidence the Insurers' claim has nothing to do with fraud, and is, instead, a veiled attempt to reargue the amount of loss. Thus, the HOA argues the subpoenas seek information which has "zero" relevance to the litigation.

### A. Relevance

Pursuant to Federal Rule Civil Procedure 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the

issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  In determining whether discovery, to a party or non-party, is relevant, the Court must consider the allegations, claims, and defenses raised.  *See Jordan v. Comm'r, Miss. Dept of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020) ("As indicated by the language of Rule 26, the relevance of information sought in discovery depends on the claims asserted in the underlying action and the legal standards that govern those claims.") (citing Fed. R. Civ. P. 26(b)(1)).  Viewing the subpoenas in that lens, the Court finds the subpoenas do not seek information relevant to the issues in this case.

First, the Insurers' claim of fraud is premised on representations made by the HOAs, Keys, or his experts regarding the condition of the properties, not on any conduct or misrepresentations made by the owners of the units.  Second, regardless of what may be in the sales documents, there is no allegation the HOAs, Keys, or his experts had access to those documents or reviewed those documents when making their presentation to the Panel or submitting their claims.

The Issuing Insurers argue the sellers' disclosures, inspections and appraisals are relevant because they *may* contain information showing that the windows,

guardrails, doors, and balconies the HOAs and Keys represented as being damaged were either not damaged or not as damaged.  However, whether an individual seller disclosed damage caused by Hurricane Sally during their negotiations has no bearing on what the HOAs, Keys, or their experts knew or did not know.  Also, as the Issuing Insurers' counsel acknowledged during the hearing, even if certain damages had been disclosed in the "Seller's Disclosures," the cause of the damage would not necessarily have been documented.  And, even if a homeowner had a duty to disclose[8] damage to any of the exterior doors, windows, or balcony, and failed to meet its obligation to do so, that does not necessarily mean the damage did or did not exist and certainly has no bearing on what Keys or the HOAs knew or did not know at the time the HOAs submitted their claim or during the appraisal process.

More importantly, the Insurers had inspectors, consultants, and experts on-site within weeks, if not days, of Hurricane Sally, and thus had first-hand knowledge regarding the damage the Towers sustained.[9]  Thus, if there were any intentional misrepresentations regarding the condition of the properties, they can be established through the Insurers' own inspection notes and observations – particularly when

---

[8] Under Florida law, "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." *Johnson v. Davis*, 480 So. 2d 625, 629 (Fla. 1985).  As to what is "readily observable," the Florida Supreme Court provided no definition.  *See id.* at 629.

[9] According to the Insurers, the appraisal process required the retention of numerous experts and several days of unit inspections, during which time the appraisers observed any damage to the units and spoke to many of the unit owners.  Doc. 116 at 4.

Case No. 3:23cv453-MCR-HTC

compared to those of Keys and his experts.  In contrast, even if the individual

owners' appraisals or inspections show, as the Insurers suggest, that inspections or

damage assessments were made of HOA-owned or maintained structures, that

information would be merely the opinions of those professionals, which, once again,

would have no bearing on whether Keys' or the HOAs' experts made any

misrepresentations.  Surely, the condition of the properties immediately after Sally

(even assuming no repairs have been made) would be more relevant than anything

contained in sales documents regarding the condition of the property more than 3

years later.

Also, it is notable the Insurers did not request these documents or complain

about needing them at any time during the appraisal proceedings.  At no point, for

example, did the Insurers argue the prices at which units sold for post-Hurricane

Sally made a difference, even though that information was publicly available.  And

the Insurers cannot vacate the Appraisal Award on information that could have

uncovered at the time of the hearings.  *See Davenport v. Dimitrijevic*, 857 So. 2d

957, 962 (Fla. 4th DCA 2003) ("A claim of fraud under section 682.13(1)(a) is not

an opportunity to obtain a second bite of the apple to correct a party's deficiencies

of proof at an arbitration").

As set forth in their motion to vacate, the Insurers sought and complained about a delay in receiving "meeting minutes, condominium documents, repair records, and contracts." Doc. 116 at 5. The Insurers sought to continue the appraisal hearings because the HOAs and Keys produced a "significant amount of documentation" within 24 hours of the hearing "that contain[ed] detailed information of previous conditions and damages to the subject building that will directly affect the accuracy" of the parties' positions. Doc. 116 at 11. The Insurers argue those documents were "critically pertinent to the loss and damage value." *Id.* at 10. It would seem, therefore, that the Insurers already have documents showing the damage to the properties caused by Hurricane Sally and anything that may be in the sales documents would be cumulative or of minimal value, at best.

The Issuing Insurers further argue the documents requested from the non-party unit owners who purchased condominiums post-Sally are "evidence of impropriety during the appraisal process." Doc. 145 at 3. However, the Court reviewed the "improprieties" alleged in both the amended complaint and the motion to vacate and cannot agree. The post-Hurricane Sally sales documents for individual units have no bearing on whether (1) the HOAs or Keys delayed their production of crucial documents or withheld documents until the eve of the hearing, (2) the HOAs submitted duplicative or hyper-inflated costs in their repair estimates, Doc. 116 at 14-16, (3) Keys made misrepresentations regarding past damages and repairs, or (4)

the witnesses did not accurately disclose their whereabouts during Sally, Doc. 104 at 34-38.  Even assuming these types of alleged improprieties can be considered "fraud," their support, if any, lie in the documents that were generated by the Insurers' own appraisals, inspectors, and experts, or in the documents eventually produced by the HOAs.[10]  This is not a case, for example, where information that may not have been relevant during the appraisal process, such as a retainer agreement with the appraiser, is necessary for purposes of establishing an impropriety.  *See Biscayne Beach Club Condo. Ass'n, Inc. v. Westchester Surplus Lines Ins. Co.,* 2022 WL 18776152, at *1 (S.D. Fla. Mar. 1, 2022) (permitting limited discovery regarding any fee arrangements with appraiser "because Defendant raised concerns that Mr. Pyka had a contingency fee arrangement with Biscayne Beach through which he would receive a percentage of any appraisal award issued to Biscayne Beach").

Finally, the Court will address two arguments made by the Issuing Insurers at the hearing that were not included or made prominent in their written materials. First, the Issuing Insurers argue they were not involved in the appraisal process as no demand was made on them and they did not have sufficient notice of the hearing.

---

[10] In the motion to vacate, the Insurers describe the documents the HOAs provided to them on the eve of the appraisal hearing as including the following information: "(1) a detailed history of maintenance to the property; (2) several years of roofing issues; (3) many years of maintenance to the windows and sliding doors; (4) damages to unit balcony columns; (5) condensation issues; and (6) concrete spalling."  Doc. 116 at 12.

The Court does not find this argument to alter the above analysis.  Namely, the

Issuing Insurers filed a joinder to the motion to vacate, Doc. 117, and, thus, adopted

the arguments made therein.  Also, the Issuing Insurers have since had access to the

information that was generated as part of the appraisal process and do not argue this

information is insufficient to establish the Insurers' fraud claim.

Second, along those same lines, the Issuing Insurers argue the documents are

relevant to the HOAs' breach of contract claim against them, seeking to bind them

to the Appraisal Award.  The Court also does not find this argument to move the

needle because the issue in the counterclaim is not how much the Appraisal Award

should be but simply whether the Issuing Insurers are bound to it.

While there can certainly be instances when discovery is relevant to an action

seeking to vacate an appraisal award, the discovery sought here from the third parties

is simply not relevant.  *See Continuum on S. Beach Condo. v. QBE Ins. Corp.*, 338

F.R.D.  668,  671  (S.D.  Fla.  2021)  (granting  motion  for  protective  order  as  to

subpoenas issued to 32 non-party unit owners in an action seeking to compel

appraisal).

**B.     Fees and Costs**

The HOAs and non-parties seek a recovery of attorneys' fees incurred in filing

the motion for protective order pursuant to Rule 37(a)(5)(C).  *See* Fed. R. Civ. P.

26(c) (allowing for the recovery of fees under Rule 37(a)(5) for filing or opposing a

motion for protective order).  Under Rule 37(a)(5), when a motion for protective

order is granted, a court "must" award the reasonable expenses incurred in making

the motion, unless the court finds the nonmovant's position was "substantially

justified" or "other circumstances make an award of expenses unjust."  Fed. R. Civ.

P. 37(a)(5)(A).  "A position is 'substantially justified' if it results from a 'genuine

dispute, or if reasonable people could differ as to the appropriateness of the contested

action.'"  *Hodge v. Tide Tamer Indus., Inc.*, No. 4:19CV575-MW/CAS, 2020 WL

7634228, at *2 (N.D. Fla. Mar. 16, 2020) (citation omitted).

Here, while both sides seek the award of fees, neither address why an award

should be granted or why neither exception applies.  Nonetheless, while

unmeritorious, the Court cannot say the Issuing Insurers' position was not

substantially justified.  *See id.*  Thus, no fees will be awarded.

Accordingly, it is ORDERED:

1.      Defendants' amended motion for protective order, Doc. 137, is

GRANTED to the extent the non-parties do not have to respond to the subject

subpoenas.

2.      Defendants' request for fees is DENIED.

DONE AND ORDERED this 26th day of December, 2023.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**