UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CASE NO. 3:23-cv-00453-MCR-HTC

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, et al.,

    Plaintiffs,

v.

PORTOFINO MASTER HOMEOWNERS
ASSOCIATION INC., a Florida not-for-
profit Corporation, et al.,

    Defendants.

_____/

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT WITH SUPPORTING MEMORANDUM OF LAW (VALUATION OF LOSS)

Plaintiffs, Westchester Surplus Lines Insurance Company ("Westchester"), Arch Specialty Insurance Company ("Arch"), AXIS Surplus Insurance Company ("AXIS"), Colony Insurance Company ("Colony"), Evanston Insurance Company ("Evanston"), Aspen Specialty Insurance Company ("Aspen"), Independent Specialty Insurance Company ("Independent"), Interstate Fire & Casualty Company ("Interstate"), Lloyd's of London (Consortium #9226) ("Lloyd's"), James River Insurance Company ("James River"), Landmark American Insurance Company ("Landmark"), Maxum Indemnity Company ("Maxum"), and Homeland Insurance

Company of New York ("Homeland") ("Plaintiffs"), pursuant to Federal Rule of Civil Procedure 56, move for partial summary judgment in their favor against defendants, Portofino Master Homeowners Association, Inc. ("Master"), Portofino Tower One Homeowners Association at Pensacola Beach, Inc. ("Tower One"), Portofino Tower Two Homeowners Association at Pensacola Beach, Inc. ("Tower Two"), Portofino Tower Three Homeowners Association at Pensacola Beach, Inc. ("Tower Three"), Portofino Tower Four Homeowners Association at Pensacola Beach, Inc. ("Tower Four"), and Portofino Tower Five Homeowners Association at Pensacola Beach, Inc. ("Tower Five") ("Portofino"), and in support state as follows:

## **INTRODUCTION**

This matter arises out of a Hurricane Sally insurance claim where Portofino sought over $230 million for damages, on a replacement cost value basis, at an appraisal. Plaintiffs dispute Portofino's entitlement to any amount and have filed motions to that effect. Specifically, as alleged in Plaintiffs' amended complaint, Plaintiffs believe that the appraisal award was procured by fraud. Notwithstanding said arguments, Plaintiffs file this motion to the extent Portofino seeks the replacement cost value of any of the appraisal award.

Specifically, despite claiming such extensive damage, it is undisputed that Portofino has not made any permanent repairs to their Property. Accordingly, under clear Florida precedent and the plain language of each of the policies issued by

Plaintiffs, Portofino is entitled to seek no more than the actual cash value of the claimed property damage.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### I.     The Insurance Policies

1.     Each Plaintiff issued a separate commercial property insurance policy to Portofino, either primary or excess, which was effective from April 1, 2020 through April 1, 2021, subject to the terms, conditions, limitations, and exclusions contained therein ("Policies").[1]

2.     Each Policy provided coverage to the properties located at 1-9 Portofino Drive, Pensacola Beach, FL 32561 and 913 Gulf Breeze Parkway, Pensacola Beach, FL 32561 ("Property").[2]

3.     The Property consists of five separate condominium buildings, and 14 other buildings.[3]

4.     Each Policy contains a Master Property Policy Form that is amended by endorsements unique to each Plaintiff.[4]

5.     The Master Property Policy Form contains the following provision, that is incorporated into each policy issued by Plaintiffs:

---

[1] *See* D.E. 222-1; D.E. 222-2; D.E. 222-3; D.E. 222-4; D.E. 222-5; D.E. 222-6; D.E. 222-7; D.E. 222-8; D.E. 222-9; D.E. 222-10, D.E. 222-11.
[2] *See* D.E. 104, at ¶ 30; D.E. 108, at ¶ 30.
[3] *See* D.E. 104, at ¶ 31; D.E. 108, at ¶ 31.
[4] *See, e.g.*, D.E. 222-4, at p. 10.

3

11. PROPERTY VALUATION - The basis of loss adjustment shall be as follows: . . .

    h) Other property not otherwise provided for; at replacement cost new without deduction for deprecation. If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy and shall be subject to the following provisions:

        i) The repairs, replacement or reinstatement must be executed with due diligence and dispatch.

        ii) This Company's liability for loss or damage on a replacement cost basis shall not exceed the lesser of the replacement cost new of the property or any part thereof identical with such property intended for the same occupancy and use, including normal and customary profit and overhead even if the work is performed by the Insured; or the amount actually and necessarily expended in repairing or replacing said property or any part thereof including normal and customary profit and overhead even if the work is performed by the Insured.[5]

## II. The Claim Submission and Appraisal

6. On September 17, 2020, Portofino's agent, AJ Gallagher & Company ("Gallagher"), placed only Westchester, and other primary layer carriers not parties to this action ("Primary Layer Carriers"), on notice of a claim for property damage at the Property as a result of Hurricane Sally.[6]

---

[5] *See, e.g.*, D.E. 222-4, at p. 15-16.
[6] *See* September 17, 2020 notice, attached as Exhibit 1.

4

7. Thereafter, on December 10, 2020, Portofino, through Gallagher, notified Arch and AXIS of the loss.[7]

8. The next day, on December 11, 2020, Portofino, through its counsel, Ed Fleming, made a demand for appraisal to the Primary Layer Carriers under their specific primary policies as specified in the appraisal demand.[8]

9. On August 2, 2022, Portofino's selected appraiser submitted a $233,030,601.80 claim for damages in advance of the appraisal hearings.[9]

10. The appraisal hearings began on August 15, 2022 and ultimately resulted in the issuance of an appraisal award comprising seven separate parts ("Appraisal Award") by the appraisal panel.[10]

11. The Appraisal Award (excluding costs already incurred) provided a replacement cost value ("RCV") amount, depreciation, and an actual cash value ("ACV") amount, which represents RCV less depreciation.[11]

12. The total RCV amount of the Appraisal Award is $186,896,043.57 and the ACV amount is $174,547,352.44.[12]

---

[7] *See* December 10, 2020 correspondence, attached as Exhibit 2.
[8] *See* December 11, 2020 correspondence, attached as Exhibit 3.
[9] *See* August 15, 2022 Statement of Loss, attached as Exhibit 4.
[10] *See* Appraisal Award, attached as Exhibit 5.
[11] *Id.*
[12] *Id.*

## III. Portofino has not performed the Repairs

13. Despite claiming over $233 million of hurricane damages at the appraisal, Portofino has not permanently repaired or replaced any of the alleged damage. Indeed, Portofino's responses to interrogatories and their corporate representatives' deposition testimony confirms the lack of permanent repairs or replacement.[13]

14. In response to Interrogatories served by Landmark (nearly identical answers were provided in response to other Plaintiffs' interrogatories), Portofino confirmed that only temporary repairs have been completed. Specifically, Portofino stated:

> 22. Identify each construction, repair, rehabilitation, renovation, remodeling, clean up, remediation, demolition, or other improvement ("work") that has not been performed or completed, but which Portofino believes is necessary to repair the alleged damage to the property as a result of the claimed loss by the nature of the work, the estimate, price, the estimated start and completion days of work, the name of the person or entity who is/was to complete the activity, the permits received, and any contracts entered.
> 
> **ANSWER:**
> 
> **See Appraisal Panel Awards and expert reports. All damages other than incurred costs reflected in the appraisal awards entered on 3/15/2023, 3/27/2023, 4/10/2023, 4/28/2023, 5/30/2023, and 7/16/2023 need to be performed. Portofino has been unable to perform necessary repairs as Plaintiffs have refused to comply with the Appraisal Panel Awards.**[14]

---

[13] *See* Transcript of Deposition of Portofino's corporate representative, Kimberly Lamar, attached as Exhibit 6; Portofino's Responses to Landmark's First Set of Interrogatories, attached as Exhibit 7.

[14] *See* Exhibit 7, at p. 20-21.

6

15. Likewise, one of Portofino's corporate representatives, Kim Lamar, testified that only temporary repairs were performed at the Property.[15]

16. Ms. Lamar further testified that Portofino did not have sufficient funds to begin the repairs, but that Portofino took out a line of credit to complete some of the temporary repairs. Specifically, Ms. Lamar testified as follows:

> Q. Mr. Dickenson asked you earlier about amounts spent and you referenced the $14 million on interior repairs, correct?
>
> A. Correct.
>
> Q. He also referenced that there were some other temporary expenses, roof costs, balcony repairs. My question for you is whether Portofino has taken out a loan to make any needed hurricane repairs?
>
> A. We've taken lines of credit, yes.
>
> Q. How much have you taken out in lines of credit?
>
> A. Oh, I'd say collectively, 10 to $11 million.
>
> Q. Have there been any assessments of the homeowners to pay back that line of credit or to otherwise pay for repairs? . . .
>
> A. . . . I can get the exact date for you but there was a special assessment done because our property insurance went up exponentially, and also to allow for the deductible for Hurricane Sally. So we have done one special assessment, and the board has recently passed a contingent special assessment as we have still not been paid for the award amounts. So we are going to have to start paying back the lines of credit and there's been a contingent special assessment should we not receive the funds that were awarded.[16]

---

[15] *See* Exhibit 6, at 25:19-27:1 ("We've had temporary repairs to the roof … to the balconies …We had to do the temporary repairs to the roof directly").

[16] *See* Exhibit 6, at 142:16-143:25

17. Notably, despite the line of credit, Ms. Lamar testified that Portofino has no plans to begin repairs, let alone complete them. Specifically, she testified as follows:

> Q. The appraisal panel issued an award of approximately $180 million; is that correct?
>
> A. Yes.
>
> Q. And those are all for damages that need to be repaired at Portofino, is what Portofino's position is; is that correct?
>
> A. Yes. . . .
>
> Q. Has Portofino lined up contractors to perform this repair work yet?
>
> A. No.
>
> Q. Has Portofino sought bids from any contractors?
>
> A. No.[17]

18. Accordingly, Portofino has confirmed that repairs and replacement of property allegedly damaged by the storm have not been completed and still "need to be performed."[18]

## **LEGAL STANDARD**

A court "shall grant summary judgment when the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Further, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

---

[17] *See* Exhibit 6, at 209:5-11; 214:6-11.
[18] *See id.*

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(a)).

"A moving party discharges its burden on a motion for summary judgment by showing the Court that there is an absence of evidence to support the non-moving party's case." *Talat Enters., Inc. v. Aetna Cas. & Surety Co.*, 952 F. Supp. 773, 775 (M.D. Fla. 1996) (citing *Celotex*, 477 U.S. at 325). Thereafter, "the non-moving party must then 'go beyond the pleadings,' and by its own affidavits or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 324).

"A nonmoving party, opposing a motion for summary judgment supported by affidavits cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial. . . . The evidence presented cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine*

9

issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (internal quotations omitted)).

## ARGUMENT

The Master Property Policy Form incorporated into each Policy specifically states that "[i]f the property is not repaired, rebuilt or replaced with similar property on the same or another site, ***the Company shall not be liable for more than the actual cash value of the property damaged or destroyed***."[19] In other words, as explained by courts throughout the State of Florida, Plaintiffs are not responsible for issuing replacement cost payment until Portofino completes permanent repairs to repair the damaged property. *See, e.g.*, *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 395 F. App'x 659, 662 (11th Cir. 2010); *CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 843 F. App'x 189, 192-93 (11th Cir. 2021); *Metal Prod. Co., LLC v. Ohio Sec. Ins. Co.*, No. 21-11612, 2022 WL 104618, at *2 (11th Cir. Jan. 11, 2022).[20]

For decades, it has been black letter law that under similar policy language an insurance company is not responsible for making payment on a replacement cost

---

[19] *See, e.g.*, D.E. 222-4, at p. 15 (emphasis added).
[20] "Replacement cost insurance is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property." *Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013). "In contrast to a replacement cost policy, actual cash value is generally defined as the 'fair market value' or '[r]eplacement cost minus normal depreciation,' where depreciation is defined as a 'decline in an asset's value because of use, wear, obsolescence or age.'" *Id.* (quoting *Black's Law Dictionary* 506, 1690 (9th ed. 2009)) (citing *Goff v. State Farm Fla. Ins. Co.*, 999 So. 2d 684, 689 (Fla. 2d DCA 2008)).

value until repairs have been completed. *See State Farm Fire & Cas. Co. v. Patrick*, 647 So. 2d 983, 983 (Fla. 3d DCA 1994) ("Courts have almost uniformly held that an insurance company's liability for replacement cost does not arise until the repair or replacement has been completed.").

Indeed, courts have held that "insurance contract[s] contain[] no allowances for advance payments to fund repairs." *Buckley Towers*, 395 F. App'x at 662; *see also CMR*, 846 F. App'x at 192-93 ("Nor could Empire have breached the insurance policy based on the actual cash value because CMR did not seek actual cash value."). This is true even when the insured is unable to complete repairs due to lack of funds. *See Buckley Towers*, 395 F. App'x at 663.

Here, Portofino's own corporate representative testimony and responses to interrogatories establish that they have not completed, let alone begun, any permanent repairs, rebuilds, or replacements of the claimed damage. In fact, Ms. Lamar testified that despite having access to a line of credit and the ability to assess the unit owners for the repairs, Portofino has not lined up or sought bids from any contractors to perform the repair work.[21] Likewise, Portofino repeatedly stated in responses to Plaintiffs' interrogatories that "[a]ll damages other than incurred costs … need to be performed [sic]."[22] Thus, under established Florida precedent,

---

[21] *See* Exhibit 6, at 209:5-11; 214:6-11.
[22] *See* Exhibit 7, at p. 20-21.

11

Portofino is not entitled to the RCV of the Property and is instead limited to the ACV.

Moreover, the mere fact that Portofino has completed some temporary repairs, does not entitle Portofino to the RCV of the property damage. *See CMR*, 846 F. App'x at 192 ("Empire could not have breached the insurance policy based on the replacement cost value because … CMR's interrogatory answers state that it ha[d] made only ***temporary repairs, not that it has completed the repairs to all of the damage caused by Hurricane Irma***. Empire could not have breached by not paying CMR's estimated replacement cost value because CMR had not made any repairs covered by the policy; and certainly not the millions of dollars' worth that CMR's estimate lists and that CMR seeks in this lawsuit." (emphasis added)); *see also DIS Invests., LLC v. Great Lakes Ins. SE*, No. 23-23363-CV-WILLIAMS, 2024 WL 4005199, at *6 (finding insured was not entitled to ACV when it "ha[d] completed only temporary 'patching' . . . .).

Accordingly, Portofino's failure to complete repairs to the Property limits any recovery in this litigation to the ACV of the claimed damages as a matter of law.

## **CONCLUSION**

As detailed throughout, Portofino is entitled only to seek ACV for the alleged Hurricane Sally damages. Specifically, under the terms of the Policies, RCV is only available *after* repairs, rebuilds, or replacements have been completed. Here,

Portofino has not started, let alone completed, permanent repairs to the Property, and, therefore, RCV is unavailable as a matter of law.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter an Order granting this Motion and entering judgment in Plaintiffs' favor, along with awarding Plaintiffs any further relief that this Court deems just and proper.

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.1(F), the undersigned certifies that this motion contains 2,730 words, excluding case style, signature block, and certificate of service.

        Respectfully submitted,

        */s/* Bryan Walsh
        ERIC A. HILLER, ESQ.
        Florida Bar No. 27920
        eric.hiller@kennedyslaw.com
        AARON KONSTAM, ESQ.
        Florida Bar No. 104765
        aaron.konstam@kennedyslaw.com
        JUNAID N. SAVANI
        Florida Bar No. 88816
        junaid.savani@kennedyslaw.com
        BRYAN M. WALSH
        Florida Bar No. 1019565
        bryan.walsh@kennedyslaw.com
        **KENNEDYS CMK LLP**
        1111 Brickell Avenue, Suite 1300
        Miami, Florida 33131
        Telephone: (305) 371-1111

        *Counsel for Plaintiff James River Insurance Company*

>*/s/ John David Dickenson*
>John David Dickenson
>Florida Bar No. 575801
>jdickenson@cozen.com
>Evan M. Holober
>Florida Bar No. 1012320
>eholober@cozen.com
>**COZEN O'CONNOR**
>1801 N. Military Trail,
>Suite 200
>Boca Raton, FL 33431
>Telephone: (561) 515-5250
>Facsimile: (561) 515-5230
>
>*Counsel for Plaintiffs Westchester Surplus Lines Insurance Company, Arch Specialty Insurance Company, AXIS Surplus Insurance Company, Evanston Insurance Company, Aspen Specialty Insurance Company, and Maxum Indemnity Company*
>
>*/s/ Heidi Hudson Raschke*
>Heidi Hudson Raschke
>Florida Bar No. 61183
>hraschke@carltonfields.com
>Madison E. Wahler
>Florida Bar No. 1019015
>mwahler@carltonfields.com
>**CARLTON FIELDS, P.A.**
>4221 W. Boy Scout Blvd, Suite 1000
>Tampa, Florida 33607
>Telephone: 813-223-7000
>Facsimile: 813-229-4133
>
>-and-
>
>Amanda D. Proctor (*admitted pro hac vice*)
>Georgia bar No.: 776848
>aproctor@carltonfields.com

**CARLTON FIELDS, P.A.**
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia 30309
Telephone: (404) 815-3400

*Counsel for Plaintiff Homeland
Insurance Company of New York*

*/s/ David C. Bibb*
David C. Bibb, Esq. (Fla. Bar No.: 190330)
Brian P. Henry, Esq. (Fla. Bar No.: 0089069)
**ROLFES HENRY CO., LPA**
3165 McCrory Place, Suite 174
Orlando, Florida 32803
Telephone: (407) 284-4990
Email: dbibb@rolfeshenry.com
rkitchens@rolfeshenry.com
bhenry@rolfeshenry.com
kmcclintock@rolfeshenry.com

*Counsel for Plaintiffs Independent Specialty,
Insurance Company, Interstate Fire & Casualty
Company, and Lloyd's of London*

*/s/ Jack R. Reiter*
Jack R. Reiter, Esq.
Florida Bar No.: 0028304
jack.reiter@gray-robinson.com
Jordan S. Kosches, Esq.
Florida Bar No.: 49881
jordan.kosches@gray-robinson.com
**GRAYROBINSON, P.A.**
333 SE 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

*Counsel for Plaintiff Colony Insurance Co.*

*/s/ Wayne D. Taylor*
Wayne D. Taylor, Esq.
Georgia Bar No. 701275
*Admitted in* USDC NDFL
wtaylor@mfllaw.com
**MOZLEY, FINLAYSON & LOGGINS LLP**
1050 Crown Pointe Parkway, Suite 1500
Atlanta, GA 30338
Telephone: (404) 256-0700
Facsimile: (404) 250-9355
Elizabeth D. Salinas, Esq.
Florida Bar No. 113394
esalinas@mfllaw.com
4767 New Broad Street
Orlando, Florida 32814
Telephone: (404) 256-0700

*Counsel for Plaintiff Landmark American Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 25, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will automatically serve all counsel of record.

/s/ Bryan Walsh

16