## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION
## CASE NO.  3:23-cv-00453-MCR-HTC

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, et al.,

      Plaintiffs,

v.

PORTOFINO MASTER HOMEOWNERS
ASSOCIATION INC., a Florida not-for-
profit Corporation, et. al.,

      Defendants.

_____

### PLAINTIFFS' MOTION TO STRIKE, OR IN THE ALTERNATIVE, EXCLUDE EXPERT TESTIMONY OF LARRY MCCALLISTER AND INCORPORATED SUPPORTING MEMORANDUM OF LAW

Plaintiffs Westchester Surplus Lines Insurance Company, Arch Specialty Insurance Company, AXIS Surplus Insurance Company, Colony Insurance Company, Evanston Insurance Company, Aspen Specialty Insurance Company, Independent Specialty Insurance Company, Interstate Fire & Casualty Company, Lloyd's of London (Consortium #9226), James River Insurance Company, Maxum Indemnity Company, Landmark American Insurance Company, and Homeland Insurance Company of New York (collectively "plaintiffs") submit this motion to strike, or in the alternative, exclude the opinion testimony of Larry McCallister

("McCallister") with an incorporated supporting memorandum of law, respectfully showing the Court as follows:

This Court should strike the expert disclosure of McCallister under Rule 37 of the Federal Rules of Civil Procedure because neither defendants' disclosure nor McCallister's report (or, more precisely, lack thereof) describe "the basis and reasons" for his opinions or "the facts or data considered by the witness," As required by Rule 26(a)(2)(B). Moreover, even setting aside defendants' noncompliance with the Federal Rules, McCallister's deposition testimony reveals that his opinion is unreliable and he has not prepared a single document that shows the amount of damage purportedly suffered by defendants. Indeed, McCallister admits he only provided an à la carte pricing list to the umpire, not a true calculation of the measure of damages, making his purported damages analysis speculative and misleading. Accordingly, for both procedural and substantive reasons, McCallister should be stricken as an expert witness.

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE AND EXCLUDE</u>

### I.   **This Court Should Strike the Expert Disclosure of McCallister Under Fed. R. Civ. P. 37**

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on

a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."

Relevant here, Rule 26(a)(2)(B) requires that an expert disclosure "must be accompanied by a written report … and contain" the following:

> (i)   a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii)  the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv)  the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v)   a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi)  a statement of the compensation to be paid for the study and testimony in the case.

"The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x. 821, 824 (11th Cir. 2009) (*quoting Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)). Here, defendants have failed to provide the information required by Rule 26(a)(2)(B) for Larry McCallister of LJB Restoration Services, LLC as an expert witness.

On June 28, 2024, defendants named McCallister as an expert witness but omitted the information required by Rule 26(a)(2)(B). Specifically, within its Rule 26 disclosure, defendants provided only the following information:

> *(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the*

*witness in forming them; (iii) any exhibits that will be used to summarize or support them;*

Mr. McCallister's report, including all appendices, was previously provided to the Plaintiffs on July 31, 2023 as part of Defendants' Responses to Plaintiffs' First Request for Production. They are being provided again contemporaneously with these disclosures.

*(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;*

Attached.

*(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and*

None.

*(vi) a statement of the compensation to be paid for the study and testimony in the case.*

Mr. McCallister's hourly rate is $350.

(Ex. 2 to McCallister Dep., cited transcript pages and exhibits attached to this motion as Exhibit "1").[1]

Unfortunately for defendants, this disclosure failed to meet the requirements of Rule 26(a)(2)(B). Specifically, the "written report" (*i.e.*, McCallister's repair estimate) and the disclosure defectively fail to mention McCallister's means and methods. (McCallister Dep. at 33:9-12, 156:22-24). Nor does the disclosure state any basis whatsoever for his numbers and conclusions. (*Id*. at 157:4-7). In effect,

---

[1] Defendants' disclosure defectively fails to specify whether subsection B or C of Rule 26(a)(2) applies to the proposed experts listed. However, because the subparagraphs listed in the disclosure match those found in Rule 26(a)(2)(B) for retained experts, it appears that it was made under subsection B. Further, based on "the original purpose of his retention" (as part of the appraisal team in 2021 in connection with the appraisal of Portofino Towers that preceded this lawsuit (McCallister Dep. at 78:23-79:3)), his disclosure was subject to the requirements of Rule 26(a)(2)(B). *Cedant v. United States*, 75 F.4th 1314, 1322 (11th Cir. 2023).

and without expressly stating so, McCallister has been put forward as an expert to defend the content of his own estimates. Thus, defendants' disclosure of McCallister failed to comply with Rule 26(a)(2)(B)(i) or (ii) and must be stricken in toto.

In further violation of the requirements of Rule 26(a)(2)(B), McCallister attempted to give the following new opinions at his deposition:

- That redundancies were considered, addressed, and reflected as part of the umpire's award. (Ex. 1, McCallister Dep. at 59:1-60:7; 65:1-66:13).
- That the umpire's award was fair and accurate. (*Id*. at 42:13-43:7).
- A critique of the opinions set forth in the expert report dated May 31, 2024, prepared by Mr. Klein with Young & Associates. (*Id*. at 12:15-19, 78:5-16).

None of these new opinions were provided in writing to the parties, as required by the rule. (*Id*. at 12:7-11). In fact, defendants' disclosure and McCallister's written report do not mention, let alone critique, Mr. Klein's opinions or report. (*Id*. at 157:8-11). Accordingly, this Court should strike the expert disclosure of McCallister and preclude him from giving new expert opinions.[2]

---

[2] A party must supplement its disclosure "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). Any attempt to interject new opinions will be untimely and must be excluded. *Jenkins v. Corizon Health Inc.*, No. CV418-099, 2020 U.S. Dist. LEXIS 142582 at *22 (S.D. Ga. Aug. 6, 2020).

## II.    McCallister's Damages Opinions Should Be Excluded Under *Daubert* and Rule 702

### A.    The Standard to Be Applied

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based upon sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the federal district courts are "gatekeepers" charged with ensuring that the proffered expert testimony is relevant and reliable. The overarching goal of *Daubert's* gatekeeping requirement is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 at 152 (1999). "Courts are cautioned not to admit speculation, conjecture, or inference that cannot be supported by sound scientific principles." *Hendrix ex rel. G.P. v. Evenflo Co. Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (*quoting Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002)).

6

Trial courts are allowed "substantial discretion in deciding how to test an expert's reliability." *Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1292 (11th Cir. 2005) (*quoting United States v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999). However, when an expert admits that he or she is "not the right person to ask" about a topic, their opinion testimony on that point should be excluded. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 382 F. Supp. 3d 687, 694 (E.D. Mich. 2019). In fact, "[i]t is well established that a district court may exclude the purported expert testimony of witnesses who admit they have no expertise in a certain area." *Exim Brickell LLC v. Bariven, S.A.*, No. 09-cv-20915, 2011 U.S. Dist. LEXIS 161203 at *8-9 (S.D. Fla. Mar. 11, 2011) (internal citations omitted).[3] Further, the "court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (quoting *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1111 (11th Cir. 2005)). "But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. STR136, 146 (1997).

---

[3] *See also Betterbox Comm. Ltd. v. BB Tech., Inc.*, 300 F.3d 325, 335 (3d Cir. 2002); *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001); *United States v. Wildcat*, No. 99-30345, 2000 U.S. App. LEXIS 25383 at *1 (9th Cir. Oct. 4, 2000).

"The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1306 (11th Cir. 1999) (*citing Daubert,* 509 U.S. at 592 n.10); *Bourjaily v. United States*, 48 U.S. 171, 175-76 (1987). Further, the non-movant in response to a *Daubert* motion is not entitled to have the court resolve disputed issues of fact in the non-movant's favor, as in a summary judgment motion, since the issue of whether an expert's testimony is admissible is not an issue of fact. *Joiner* at 143 (1997).

## III.  The Court Should Exclude McCallister Based on His Own Admissions That He Provided an "À La Carte" Pricing List, Rather than an Estimate of the Claimed Damages

As noted, McCallister's "written report" are the same "estimates" he prepared in the appraisal process. According to McCallister, he was retained solely for pricing and not to determine the scope of the damage, which was done by others. (Ex. 1, McCallister Dep. At 35:2-5, 35:6-10). To this end, McCallister was "tasked with producing each one of these estimates by trade separately and by building separately." (*Id*. at 43:23-44:21). Ultimately, he prepared an estimate for each of the five buildings roughly totaling $217 million. (*Id*. at 36:11-23).

Regarding these estimates, McCallister testified that he "agree[s] … a hundred percent" that redundancies and economies of scale would have to be considered if someone were to add the five building estimates together. (*Id*. at 43:23-44:21). In

fact, McCallister admitted that the same crane could be used for the roof, windows, and sliding glass doors and for more than one tower, eliminating redundancies and "overlapping issues." (*Id*. at 41:2-42:12). McCallister's estimated costs for the 600-ton crane in the general conditions related to the roof totals $4,529,849.28 and $1,248,946.80 for the window and doors. This brings the total costs for the 600-ton crane to $5,778,796.08 per building. This amount multiplied by five (5) buildings equates to $28,893,980.40. Subtracting the total duplicative costs associated with the crane(s) acknowledged by McCallister results in a reduction in his estimates by at least $5 million per building, or $25 million total.

Other examples of obvious duplication and redundancies in McCallister's estimates include: (a) on site security lasting more than 36 months, (*Id.* at 38:1-10); (b) 57,600 hours (28 years) of total on-site construction supervision, (*Id.* at 40:11-19); (c) having a construction trailer for each tower, when only one would be required, (*Id.* at 62:15-63:2); and (d) 72 months (6 years) of temporary toilets for Tower 1 alone. (*Id.* at 65:1-66:13).

To justify the obvious redundancies in his estimates, McCallister testified that he was only "tasked with giving à la carte pricing based on trade based on the building," even though he would not advise preparing a bid that way. (*Id.*). Specifically, McCallister testified that:

> Q. And you would agree with me that by doing it that way, meaning by each trade separately and then by each tower separately, ***it has the effect of increasing this number*** that ended up being $217 million; correct?
>
> A. ***Oh, absolutely***...

(*Id*. at 42:13-43:7) (emphasis added).

McCallister further agreed that the $217 million estimate he prepared for the appraisal panel is not a market price for the work that needs to be performed at defendants' property. (*Id*. at 43:8-12). In other words, he stated "I don't think that anyone would select that methodology. There are cheaper ways to do it" than his $217 million estimate. (*Id*. at 43:13-19).

Importantly, McCallister testified that the à la carte method he utilized "***was not the methodology that would be selected by a thinking person***." (*Id*. at 47:3-48:8) (emphasis added). More specifically, he stated that:

> we were tasked with separating these by building and assuming that each trade -- we had no idea what the scope was. There will be economies in scale… if you're pricing all of this à la carte and you were to do it piece by piece, it's going to be more money. ***I don't know anybody that would want to do this piece by piece*** and only do the windows, and then come back and then only do the doors, and then come back and only do the roof on one tower. ***However, we priced that to afford for the appraisal process***.

(*Id*. at 119:21-120:15) (emphasis added).

Notably, when questioned about the staggering redundancies in his estimates, McCallister backtracked himself out of being an expert witness in this litigation. According to McCallister, he was just "producing à la carte pricing so that later on

once the scope was determined and awarded by the umpire, he had the pricing in front of him." (Ex. 1, McCallister Dep. at 58:10-16). McCallister, however, never changed his estimates but rather gave the umpire all of the numbers and let the umpire "deal with those redundancies." (*Id*. at 45:4-15, 77:24-78:4 ("as far as me revising estimates, we left that up to the umpire.")). McCallister conceded that his estimates were "simply a price list to apply to a scope." (*Id*. at 123:6-12).

McCallister further admitted that his estimate was not a bid. According to McCallister, "[i]f I give you a bid to paint your house and also put a roof on it, and you say, well, I want a shingle roof and an alternate for a metal roof, you're certainly not going to add the two [bids] together and call that a bid." (*Id*. at 87:17-88:11). So "if I was going to put a roof on your house and you have a shingle roof and you wanted a metal roof, I'd give you Option A and Option B. ***A thinking person would not add those two together and think that was my bid***." (*Id*. at 104:16-25) (emphasis added).[4]

Here, the Court certainly should enforce McCallister's own admissions that he simply provided an à la carte pricing list and not an estimate of the actual claimed damages. As discussed, at numerous points throughout his deposition, McCallister

---

[4] McCallister continued, "we did not have a scope, so we just put together pricing. If I gave you a list of prices for a restaurant, hey, this is how much all of the sandwiches cost, you can't add all the sandwiches up and say, well, that nobody told me it was redundant that I didn't have to eat every sandwich." (*Id.* at 121:10-122:4).

testified that "no thinking person" would use his à la carte pricing list as an estimate of the claimed damages, which is precisely what defendants are using it for in this litigation.

Accordingly, McCallister should be prohibited from giving opinion testimony on: (a) the cost of repairs at defendants' property; (b) what defendants should be awarded as damages under the plaintiffs' insurance policies; (c) what defendants should be awarded as damages in this lawsuit; (d) the proper measure of damages; (e) whether the defendants' Statement of Loss was proper; (f) whether the umpire accurately accounted for redundancies; or (g) any critiques of Mr. Klein's report.

## IV. McCallister's Opinions on Damages Are Not Based Upon Sufficient Facts or a Reliable Methodology

As noted above, McCallister testified that the à la carte procedure he utilized "was not the methodology that would be selected by a thinking person." (*Id.* at 47:3-48:8). McCallister also did not calculate or account for the numerous redundancies in his estimates and made no effort to provide "the basis and reasons" for his opinions or "the facts or data considered by the witness," which is required by Rule 26(a)(2)(B)(i) and (ii). (*Id.* at 77:24-78:4).

This Court should exclude all expert opinions of McCallister as unreliable. Indeed, his own testimony would mislead instead of help the trier of fact, as McCallister admits his pricing list of $217 million, which is the only written

document McCallister prepared, would never be "selected by a thinking person" as the method to calculate the damages at Portofino.[5]

## CONCLUSION

For the reasons discussed above, this Court should enter an order precluding Larry McCallister from testifying as an expert witness in this case.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to N.D. Fla. Local Rule 7.1(B) and (C), counsel for plaintiffs conferred with counsel for the defendants on October 23, 2024. Defendants oppose the relief sought in this motion.

## CERTIFICATE OF COMPLIANCE

This submission does not exceed the word count limit imposed by Local Rule 7.1(F). The word count of the word-processing system used to prepare the motion and supporting memorandum shows 3010 words.

Respectfully submitted this 25th day of October, 2024.

*/s/ Elizbeth D. Salinas*
ELIZABETH D. SALINAS
Florida Bar No. 113394
MOZLEY, FINLAYSON & LOGGINS LLP
4767 New Broad Street
Orlando, FL 32814

---

[5] Defendants may argue that McCallister should simply be limited to opinions related to his à la carte pricing list. However, the jury should not be allowed to "pick and choose" from McCallister's menu of pricing because the inherent redundancies must also be removed, and McCallister provided absolutely no mechanism for doing so.

(407) 514-2765 Ext. 2317
esalinas@mfllaw.com

-and-

WAYNE D. TAYLOR
Georgia Bar No. 701275
*Admitted pro hac vice*
MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway, Suite 1500
Atlanta, GA 30338
Tel: (404) 256-0700
wtaylor@mfllaw.com
*Counsel for Plaintiff Landmark American
Insurance Company*

/s/ David C. Bibb
David C. Bibb (Fla. Bar No. 190330)
**ROLFES HENRY CO., LPA**
3165 McCroy Place, Suite 174
Orlando, FL  32803
Telephone:  (407) 284-4990
dbibb@rolfeshenry.com


Brian P. Henry, Esq.
Fla. Bar No. 0089069
**ROLFES HENRY CO., LPA**
5577 Broadcast Court
Sarasota, FL  34240
Telephone:  (941) 684-0100
bhenry@rolfeshenry.com
kdeglman@rolfeshenry.com

*Counsel for Plaintiffs Independent Specialty
Insurance Company, Interstate Fire & Casualty
Company, and Lloyd's of London*

/s/ Jack R. Reiter
Jack R. Reiter, Esq.

14

Florida Bar No.: 0028304
jack.reiter@gray-robinson.com
Jordan S. Kosches, Esq.
Florida Bar No.: 49881
jordan.kosches@gray-robinson.com
**GrayRobinson, P.A.**
333 SE 2nd Avenue, Suite 3200
Miami, FL 33131
Telephone: (305) 416-6880

*Counsel for Plaintiff Colony Insurance Co.*

*/s/ Aaron Konstam*
**ERIC A. HILLER**
Florida Bar No. 27920
eric.hiller@kennedyslaw.com
**AARON KONSTAM**
Florida Bar No. 104765
aaron.konstam@kennedyslaw.com
**BRYAN M. WALSH**
Florida Bar No. 1019565
Bryan.walsh@kennedyslaw.com
**JUNAID N. SAVANI**
Florida Bar No. 88816
Junaid.savani@kennedyslaw.com
**ILIRIANA FETEJA**
Florida Bar No. 1039423
Iliriana.Fteja@kennedyslaw.com
**Kennedys CMK LLP**
1111 Brickell Avenue, Suite 1300
Miami, FL 33131
Telephone: (305) 371-1111

*Counsel for Plaintiff James River
Insurance Company*

*/s/ Heidi Hudson Raschke*
Heidi Hudson Raschke
Florida Bar No. 61183
hraschke@carltonfields.com

15

Madison E. Wahler
Florida Bar No. 1019015
mwahler@carltonfields.com
**CARLTON FIELDS, P.A.**
4221 W. Boy Scout Blvd, Suite 1000
Tampa, Florida 33607
Telephone: 813-223-7000

-and-

Amanda D. Proctor (*admitted pro hac vice*)
Georgia Bar No. 776848
**CARLTON FIELDS, P.A.**
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia 30309
Telephone: 404-815-3400
aproctor@carltonfields.com

*Counsel for Plaintiff Homeland Insurance*
*Company of New York*

*/s/ John David Dickenson*
John David Dickenson
Florida Bar No. 575801
jdickenson@cozen.com
Alexandra J. Schultz
Florida Bar No. 122100
aschultz@cozen.com
Juan P. Garrido
Florida Bar No. 118678
jgarrido@cozen.com
**COZEN O'CONNOR**
1801 N. Military Trail, Suite 200
Boca Raton, FL 33431
Telephone: (561) 515-5250

*Counsel for Plaintiffs Westchester Surplus Lines*
*Insurance Company, Arch Specialty Insurance*
*Company, AXIS Surplus Insurance Company,*

16

*Evanston Insurance Company, Aspen Specialty Insurance Company, and Maxum Indemnity Company*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed *Plaintiffs' Motion To Strike, Or In The Alternative, Exclude Expert Testimony Of Larry McCallister And Incorporated Supporting Memorandum Of Law* with the Clerk of the Court using the Court's CM/ECF System which will automatically send a copy of same to the following counsel of record:

Heidi Hudson Raschke, Esq.
Madison E. Wahler, Esq.
Amanda D. Proctor (*admitted pro hac vice*)
**CARLTON FIELDS, P.A.**
hraschke@carltonfields.com
mwahler@carltonfields.com
aproctor@carltonfields.com
*Counsel for Plaintiff Homeland Insurance Company of New York*

David C. Bibb, Esq.
Brian P. Henry, Esq.
**ROLFES HENRY CO., LPA**
dbibb@rolfeshenry.com
wgonzalez@rolfeshenry.com
bhenry@rolfeshenry.com
kdeglman@rolfeshenry.com
*Counsel for Plaintiffs Independent Specialty Insurance Company, Interstate Fire & Casualty Company, and Lloyd's Of London*

Jack R. Reiter, Esq.
Jordan S. Kosches, Esq.
**GRAY ROBINSON, P.A.**
jack.reiter@gray-robinson.com
jordan.kosches@gray-robinson.com
*Counsel for Plaintiff Colony Insurance Company*

Eric A. Hiller Esq.
Aaron Konstam, Esq.
Bryan M. Walsh, Esq.
Junaid N. Savani, Esq.
Iliriana Feteja, Esq.
**KENNEDYS CMK LLP**
eric.hiller@kennedyslaw.com
aaron.konstam@kennedyslaw.com
bryan.walsh@kennedyslaw.com
Junaid.savani@kennedyslaw.com
Iliriana.Fteja@kennedyslaw.com
*Counsel for Plaintiff James River Insurance Company*

John David Dickenson, Esq.
Alexandra J. Schultz, Esq.
Juan P. Garrido, Esq.
**COZEN O'CONNOR**
jdickenson@cozen.com
aschultz@cozen.com
jgarrido@cozen.com
*Counsel for Plaintiffs Westchester*
*Surplus Lines Insurance Company,*
*Arch Specialty Insurance Company,*
*Axis Surplus Insurance Company,*
*Evanston Insurance Company, Aspen*
*Specialty Insurance Company, and*
*Maxum Indemnity Company*

Edward P. Fleming, Esq.
Matthew A. Bush, Esq.
Aaron T. McCurdy, Esq.
**MCDONALD FLEMING, LLP**
epfleming@pensacolalaw.com
cat@pensacolalaw.com
mabush@pensacolalaw.com
bushservice@pensacolalaw.com
amccurdy@pensacolalaw.com
absomerset@pensacolalaw.com

Kurtis Jay Keefer
**GOEDE, DEBOEST & CROSS,**
**PLLC**
kkeefer@gadclaw.com
curbanowski@gadclaw.com

Charles F. Beall, Jr., Esq.
**MOORE, HILL &**
**WESTMORELAND, P.A.**
cbeall@mhw-law.com
tstokes@mhw-law.com
*Counsel for Defendants*

This 25th day of October, 2024.

*/s/ Elizabeth D. Salinas*
ELIZABETH D. SALINAS
Florida Bar No. 113394