## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, et al.,

     Plaintiffs,

v.

PORTOFINO MASTER
HOMEOWNERS
ASSOCIATION, INC., a Florida not-for-
profit Corporation, et al.,

     Defendants.

Case No. 3:23-cv-00453-MCR-HTC

### PLAINTIFF LANDMARK AMERICAN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED SUPPORTING MEMORANDUM OF LAW

Plaintiff Landmark American Insurance Company ("Landmark"), pursuant to Federal Rule of Civil Procedure 56 and Rule 56.1 of the Local Rules of the United States District Court for the Northern District of Florida, respectfully files this motion for summary judgment. This motion seeks a judicial declaration that the appraisal award entered in the appraisal between only defendants and Westchester Surplus Lines Insurance Company and other primary layer carriers not parties to this action ("Primary Layer Carriers") is not binding upon Landmark and entry of summary judgment in Landmark's favor on Portofino's counterclaim for breach of contract.

1

In support of this motion, Landmark submits the affidavit of Christine McHugh, transcript excerpts from the deposition of Kimberly Lamar as defendants' Rule 30(b)(6) corporate representative and accompanying exhibits, and other evidence of record, all of which are attached to this motion as Exhibits 1 through 16 or have previously been filed with the Clerk of Court.

## I.    **<u>OVERVIEW</u>**

This action arises from a first-party property insurance claim for damage to defendants' property, which consists of five (5) separate condominium buildings, each standing 27 stories, and fourteen other buildings on a 28-acre property in Pensacola Beach, Florida (hereinafter "the Property"). Landmark provides coverage for the Property under an excess commercial property insurance policy that attaches once the amount of an adjusted loss exceeds $50 million (hereinafter "the Landmark excess policy").

On September 16, 2020, Hurricane Sally impacted the Property. Defendants gave notice of the loss to the Primary Layer Carriers but did not notify Landmark. (*See* SOF Nos. 4-5, 9-14 below). Early in 2021, defendants and the Primary Layer Carriers submitted defendants' claim to appraisal without notifying or involving Landmark. (SOF Nos. 21-32). In March 2022, approximately eighteen (18) months after the loss, Landmark first learned of the loss to the Property. (SOF No. 6).

On January 12, 2023, Landmark and the other Primary and Excess Layer Carriers filed this declaratory judgment action to address their concerns related to defendants' claim submission and the ongoing appraisal between the Primary Layer Carriers and defendants. ([D.E. 1]; *see also,* First Amended Complaint, [D.E. 104]). Between February 2023 and July 2023, while the declaratory judgment action was pending, the appraisal panel entered an appraisal award in seven parts. The total appraisal award was approximately $187 million, which exceeds the coverage limits provided by the Primary Layer Carriers' policies and potentially impacts the Landmark excess policy.

On September 15, 2023, after the appraisal award had been entered, defendants filed their answer and counterclaim to the first amended complaint. ([D.E. 108]). Count Twelve of the counterclaim alleges breach of contract against Landmark for its alleged failure to adjust the loss and failure to pay the appraisal award. (*Id.* at 274).

As shown below in the Statement of Material Facts as to Which There Exists No Genuine Issue for Trial, Landmark was not a party to the appraisal. The Landmark excess policy requires that a request for appraisal by one of the parties must be made in writing (defendants never requested appraisal from Landmark), both parties must agree in writing to submit to appraisal (Landmark never agreed to be a party to the appraisal), and both parties must sign a written appraisal agreement

containing certain specified provisions relating to the protocol for the appraisal (Landmark never signed any such agreement). In fact, Landmark, in writing to defendants or their legal counsel on multiple occasions, stated unequivocally that it was <u>not</u> a party to the appraisal. Further, the written appraisal award did not contain the specifics required by the Landmark excess policy. For these reasons, the appraisal award is not binding upon Landmark.

Defendants' claim for breach of the insurance contract fails because defendants, before filing their counterclaim for breach of contract, never made a demand under the Landmark excess policy, never submitted a proof of loss implicating that policy, or otherwise presented a claim to Landmark. Landmark, therefore, did not breach the insurance contract by failing to adjust the loss. Neither did Landmark breach the insurance contract by failing to pay the appraisal award, as discussed above. For these reasons, Landmark is entitled to summary judgment on defendants' claim for breach of the insurance contract.

## II.   STATEMENT OF MATERIAL FACTS AS TO WHICH THERE EXISTS NO GENUINE ISSUE FOR TRIAL

### A.   The Landmark Excess Policy

1.   Landmark issued to defendants the Landmark excess policy, number LHD912400, effective April 1, 2020, to April 1, 2021. (*See* Landmark Excess Policy [D.E. 1-1] at 670-725). The Landmark excess policy provides excess coverage for covered losses to the Property of $48,058,000 (Forty-eight million fifty-eight

4

thousand dollars) part of $150,000.00 (one hundred fifty million dollars) in excess of $50,000,000 (Fifty million dollars), (*Id.* at 680), subject to all the provisions, terms, conditions, exclusions, and limitations contained in the Landmark excess policy.

2.     The Landmark excess policy contains the following provisions, among others:

*This Endorsement Changes the Policy. Please Read It Carefully*

### APPRAISAL CLAUSE AMENDMENT
_____

This endorsement modifies insurance provided under the following:

### ALL COVERAGE PARTS

This endorsement replaces any and all provisions regarding appraisal.

If we and you disagree on the value of the property or the amount of loss, either party may request, in writing, an appraisal of the value of the property and/or the amount of loss. An appraisal may then take place only if the other party agrees **in writing** to participate in the appraisal process pursuant to terms of a **written agreement** between the parties. At a minimum, the **written agreement** between the parties will specify a protocol for the selection of a disinterested, competent, and impartial appraiser (who does not have a financial interest in the claim and/or appraisal award, including a contingent interest in the outcome of the claim or appraisal award), the inspection of the property by the appraisers, the selection of an umpire, communications between and among the appraisers and umpire, specific itemization of each item in dispute, and an award form. If the parties cannot agree on a **written agreement** specifying the protocol, an appraisal will not take place.

If appraisal moves forward, the two appraisers will select an umpire, who is disinterested, competent, and impartial. . . . The appraisers will state separately the value of the property and amount of loss. Specific itemization of each item and amount in dispute is required, including,

but not limited to, building-by-building, floor-by-floor, unit-by- unit, and area-by-area allocation. If the appraisers fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

[D.E. 1-1 at 716 (Emphasis added)].

3.    The Landmark excess policy's Appraisal Clause Amendment by its language replaces the appraisal clause in the Master Property Policy form in the Landmark excess policy and constitutes the only appraisal clause effective between defendants and Landmark for the loss at defendants' Property caused by Hurricane Sally.

### B.    Landmark First Learned of the Hurricane Sally Loss on March 18, 2022

4.    On September 16, 2020, Hurricane Sally struck Pensacola, Florida. While defendants' agent Gallagher notified the Primary Layer Carriers of a loss suffered at the Property, no one notified Landmark of the loss. (*See* Affidavit of Christine McHugh, ¶ 3). Ms. McHugh's affidavit is attached to this motion as  Exhibit 1.

5.    Defendants' legal counsel has stated that, "we've stipulated that Portofino did not directly put Landmark on notice at any time." (Deposition of defendants' 30(b)(6) corporate representative Kimberly Lamar, at 222:5-7; *see also* Depo. Lamar at 222:10-25; 223:1-3). Copies of all pages of Ms. Lamar's deposition referenced in this motion are attached to this motion as Exhibit 2.

6.    Landmark first learned of the loss to the Property on or about March 18, 2022, when the Primary Layer Carriers' legal counsel at Cozen O'Connor sent an email to

representatives of some of the Excess Layer Carriers, including Landmark, making them aware of defendants' Hurricane Sally claim. (Aff. McHugh, ¶ 9; *see also* Exhibit 3 to this motion).

7.      By this time, the appraisal [involving only defendants and the Primary Layer Carriers] had been underway for well over a year. (Depo. Lamar at 293:14-16).

8.      On June 24, 2022, defendants' legal counsel, Edward P. Fleming, wrote a letter to Landmark asking for a certified copy of any Landmark policy that might provide coverage for Hurricane Sally damage. (Exhibit 4 to this motion). This was the first correspondence sent directly to Landmark by or on behalf of defendants. (Depo. Lamar at 224:20-226:25). However, defendants still did not notify Landmark of a loss within the Landmark excess policy's layer of coverage. (Aff. McHugh, ¶ 5; *see also* Depo. Lamar at 222:5-7).

## C.    Defendants Did Not Submit a Written Claim Under the Landmark Excess Policy

9.      On December 11, 2020, defendants sent separate correspondence to the each of the Primary Layer Carriers only, enclosing a sworn proof of loss totaling $6,479,380.60, which amount was within the primary layer of coverage and did not implicate the Landmark excess policy. (Exhibit 5 to this motion). Defendants' legal counsel stipulated that defendants' letter of December 11, 2020, was addressed to the Primary Layer Carriers only. (Depo. Lamar at 88:23-25).

10.    Defendants never submitted to Landmark, its agents, or representatives a sworn proof of loss. (Aff. McHugh, ¶ 6).

11.    On January 8, 2021, defendants submitted to the Primary Layer Carriers only a supplemental proof of loss, increasing their claim to $12,441,383.65, which amount again was within the primary layer of coverage and did not implicate the Landmark excess policy. (Exhibit 6 to this motion).

12.    On February 26, 2021, defendants submitted to the Primary Layer Carriers only a supplemental proof of loss, increasing their claim to $13,625,952.43, which amount again was within the primary layer of coverage and did not implicate the Landmark excess policy. (Exhibit 7 to this motion).

13.    Defendants, on July 25, 2022, filed with the Florida Department of Financial Services a Civil Remedy Notice of Insurer Violation against the Excess Layer Carriers, including Landmark. (Exhibit 8 to this motion at 1-6).

14.    At the time defendants filed their counterclaim against Landmark on September 15, 2023, ([D.E. 108] at 97, 157), defendants still had not submitted a written claim under the Landmark excess policy. (Aff. McHugh, ¶ 7).

### D.    Defendants Did Not Request Appraisal From Landmark

15.    On December 20, 2020, a mere three (3) months after the Hurricane Sally loss, defendants' legal counsel, Edward P. Fleming, sent a letter to the Primary Layer Carriers demanding appraisal of the loss. (Exhibit 9 to this motion). Notably, this

letter was <u>not</u> directed to Landmark or any of the other excess insurers, (*See* Depo. Lamar at 88:6-25), and it did <u>not</u> reference the Appraisal Clause Amendment in the Landmark excess policy.

16. Defendants' December 11, 2020, appraisal demand to the Primary Layer Carriers was the only appraisal demand that defendants made to any insurer. (Depo. Lamar at 153:14-19).

17. Defendants did not send a copy of its appraisal demand letter to Landmark, its agent, or its representative. (Aff. McHugh, ¶ 8).

18. Defendants have stipulated that "there is no written request from Portofino asking Landmark to stipulate to appraisal." (Depo. Lamar at 228:4-8).

19. Defendants did not comply with the Landmark excess policy's Appraisal Clause Amendment, which states that "[i]f we and you disagree on the value of the property or the amount of loss, either party may <u>request, in writing</u>, an appraisal of the value of the property and/or the amount of loss." (*See* Appraisal Clause Amendment, SOF No. 2) (Emphasis added).

20. Because defendants did not send Landmark a written request for appraisal of the Hurricane Sally loss, Landmark did not agree in writing to submit the claim to appraisal, and there is no written agreement regarding submission of the claim to appraisal, defendants are not entitled to enforce the appraisal award against Landmark.

**E.    Landmark Did Not Agree to Submit to Appraisal of the Hurricane Sally Loss**

21.    On December 31, 202l, the Primary Layer Carriers agreed to submit the claim appraisal. (Exhibit 10 to this motion).

22.    Defendants' 30(b)(6) corporate representative testified that Landmark never requested appraisal of the Hurricane Sally loss and <u>never agreed to submit to appraisal</u>. (Depo. Lamar at 228:10-25; 229:1-3, 22-25; 230:1-6).

23.    Defendants stipulated that there is no written agreement between Landmark and defendants regarding submission of the claim to appraisal. (Depo. Lamar, 230:8-14).

24.    Thus, there is no written agreement between defendants and Landmark "specify[ing] a protocol for the selection of a disinterested, competent, and impartial appraiser (who does not have a financial interest in the claim and/or appraisal award, including a contingent interest in the outcome of the claim or appraisal award), the inspection of the property by the appraisers, the selection of an umpire, communications between and among the appraisers and umpire, specific itemization of each item in dispute, and an award form," as required by the Landmark excess policy's Appraisal Clause Amendment. (*See* SOF No. 2).

**F.    Landmark Refused in Writing to be a Party to the Appraisal Between Defendants and the Primary Layer Carriers**

25.    On June 14, 2022, Landmark sent defendants a certified letter stating in part:

> At this time, Landmark has not agreed to appraisal and will not be bound by the current appraisal proceedings. It is our understanding that the ongoing appraisal process is proceeding in potential violation of some or all of the[] limitations or conditions [in the Landmark excess policy]. Landmark expressly reserves its right under the terms of the Appraisal Clause Amendment, as well as compliance with any duties required by the Amendment of the policy as a whole.

(Aff. McHugh, ¶ 9; Exhibits 11 and 12 attached to this motion).

26.    On August 3, 2022, defendants were notified in writing by legal counsel for the Primary Layer Carriers that "Landmark American Insurance Company is not participating in the appraisal process." (Exhibit 13 to this motion at 9, n. ii).

27.    Again, on August 16, 2022, legal counsel for the Primary Layer Carriers wrote to defendants' legal counsel stating in a footnote that "Landmark American Insurance Company is not participating in the appraisal process." (Exhibit 14 to this motion at n. ii).

28.    On August 17, 2022, Landmark, through its legal counsel, also notified defendants that "Landmark and Portofino Towers never have entered into a written agreement regarding appraisal. Accordingly, Landmark is not participating in any appraisal process regarding the above-referenced claim, including that ongoing appraisal process in which the other carriers may be participating." (Exhibit 15 to this motion). Defendants' legal counsel stipulated on the record that defendants' attorney received the August 17, 2022, letter from Landmark's counsel. (Depo. Lamar at 230:23-25; 231:1-16).

29.    On September 22, 2022, Landmark submitted its response to defendants' civil remedy notice filed with the Florida Department of Financial Services, stating in part:

> Portofino did not, and still has not, demanded appraisal to Landmark. Landmark did not, and still has not, agreed in writing to participate in the appraisal process pursuant to terms of a written agreement between the parties. Further, Landmark is not required under the Landmark Policy to participate in the appraisal process. Accordingly, Landmark is not participating in the appraisal process.

(*See* Exhibit 8 to this motion at 7-12). Landmark further stated that "Portofino has not made any offers or demands to Landmark. Nor has Portofino presented Landmark with a claim that would implicate coverage under the Landmark Policy." *Id.* Landmark also stated in the response that "Landmark has not denied Portofino's claim. Instead, Portofino has not presented a claim to Landmark in excess of $50 million." *Id*.

30.    At no time before this lawsuit was filed (or afterward) did Landmark agree in writing to be a party to the appraisal between defendants and the Primary Layer Carriers. (Aff. McHugh, ¶ 10).

31.    At no time before this lawsuit was filed (or afterward) did Landmark sign a written appraisal agreement. (Aff. McHugh, ¶ 11).

### G.    The Appraisal Award Does Not Comply With the Provisions of the Landmark Excess Policy

32.    The seven (7) part appraisal award entered between February 2023 and July 2023, in the appraisal between the Primary Layer Carriers and defendants, which defendants seek to enforce against Landmark in this action, does not comply with the requirements of the Landmark excess policy's Appraisal Clause Amendment because the award does not "state separately the value of the property and amount of loss." (*See* Partial Appraisal Award, Exhibit 16 to this motion). The award also does not "[s]pecific[ally] itemiz[e] [] each item and amount in dispute [], including, but not limited to, building-by-building, floor-by-floor, unit-by-unit, and area-by-area allocation." (*See* Landmark excess policy Appraisal Clause Amendment, SOF No. 2).

## III.    <u>ARGUMENT AND CITATION OF AUTHORITY</u>

### A.    Standard on Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because this case is pending before this Court under its diversity jurisdiction and it arose in Florida, this Court should apply the substantive laws of Florida, including Florida's laws on insurance policy interpretation. ***Sutton v. Wal-Mart Stores E., LP***, 64 F.4th 1166, 1168 (11th Cir. 2023).

**B.     The Terms of the Landmark Excess Policy's Appraisal Clause Amendment Preclude Defendants Enforcing the Appraisal Award Against Landmark**

"Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written." ***Allstate Ins. Co. v. Orthopedic Specialists,*** 212 So. 3d 973, 975-76 (Fla. 2017). This is so notwithstanding any extracontractual evidence of the parties' contrary intentions. In ***Shiloh Christian Ctr. v. Aspen Specialty Ins. Co.***, 65 F.4th 623 (11th Cir. 2023) (applying Florida law), the court acknowledged that evidence of the parties' course of dealing, their contractual negotiations, and the policy applications "strongly suggest[ed]" that the parties intended and expected the policies would exclude damage caused by named windstorms. ***Id.*** at 625. However, the court found that "[h]owever clear the parties' subjective intentions or expectations, the policies do not, by their plain terms, exclude named-windstorm-related losses." ***Id.*** The court held that "under Florida law — as in the law more generally — in the event of a conflict between clear text, on the one hand, and even compelling evidence of extra-textual 'intent,' on the other, the latter must give way to the former." ***Id.*** Based upon this principle, the court in ***Shiloh*** reversed the district court's grant of summary judgment to the insurer, finding coverage for damage caused by a hurricane.

14

This same rule applies to insurance policy appraisal provisions. "Appraisals are creatures of contract and the subject or scope of appraisal depends on the contract provisions." *Fla. Ins. Guar. Ass'n v. Branco,* 148 So. 3d 488, 491 (Fla. 5th DCA 2014). In *Homeowners Choice Prop. & Cas. Ins. Co. v. Murray,* 388 So. 3d 1039 (Fla. 3d DCA 2024), the court reversed the trial court's grant of a motion to compel appraisal, holding that "the policy's clear and unambiguous appraisal provision provides that 'both parties must agree to appraisal,'" and finding that "the trial court failed to give effect to the appraisal provision as it was written by granting the Insured's motion to compel appraisal." *Id.* at 1040.

Here, the Landmark excess policy's Appraisal Clause Amendment plainly and unambiguously states that "[a]n appraisal may … take place only if the other party agrees in writing to participate in the appraisal process pursuant to terms of a written agreement between the parties." (SOF No. 2). The Landmark excess policy then specifies what must be contained in a written appraisal agreement:

> At a minimum, the written agreement between the parties will specify a protocol for the selection of a disinterested, competent, and impartial appraiser (who does not have a financial interest in the claim and/or appraisal award, including a contingent interest in the outcome of the claim or appraisal award), the inspection of the property by the appraisers, the selection of an umpire, communications between and among the appraisers and umpire, specific itemization of each item in dispute, and an award form.

*Id.* The Appraisal Clause Amendment further states that "[i]f the parties cannot agree on a written agreement specifying the protocol, an appraisal will not take place." *Id.*

15

It is undisputed that defendants did <u>not</u> request appraisal from Landmark in writing, and Landmark did <u>not</u> agree in writing to be a party to the appraisal between defendants and the Primary Layer Carriers or any other appraisal. On the contrary, Landmark and counsel for the Primary Layer Carriers consistently and unambiguously advised defendants that Landmark was <u>not</u> a party to the appraisal between the Primary Layer Carriers and defendants. (SOF Nos. 25-29). Considering this, the Landmark excess policy mandates that "an appraisal will not take place" *involving defendants and Landmark.* Thus, no appraisal that is binding on Landmark took place. Consequently, defendants cannot enforce the appraisal award rendered in the appraisal between the Primary Layer Carriers and defendants against Landmark.

### C.    Landmark Did Not Breach The Insurance Contract

"[I]f a contract involves performance, the breach occurs where the defaulting party fails to perform an act it has agreed to do." ***Fla. Gamco, Inc. v. Fontaine***, 68 So. 3d 923, 930 (Fla. 4th DCA 2011) (internal quotations and citations omitted). Here, defendants' counterclaim alleges that Landmark failed to perform its obligations under the Landmark excess policy to adjust the loss, pay the loss, and pay the appraisal award. ([D.E. 108] at ¶ 274). However, defendants cannot point to any act that Landmark was *required* to perform - i.e., an obligation of the insurer expressly set forth in the Landmark excess policy - that Landmark failed to perform.

16

### 1. Landmark Had No Duty Under its Excess Policy to Adjust a Loss Not Reported to Landmark

Count Twelve of defendants' counterclaim alleges in part that Landmark failed to adjust defendants' claim and failed to communicate its findings regarding the amount of the loss. ([D.E. 108] at ¶ 274). Yet, defendants, before filing their counterclaim, never submitted a claim under the Landmark excess policy. (SOF Nos. 5, 8-12).

Defendants cannot point to any language in the Landmark excess policy that required Landmark, an excess insurer, to adjust or investigate a loss that was not reported to Landmark. (*See* SOF Nos. 9, 11, 12, 14). For these reasons, Landmark did not breach the insurance contract by not adjusting the claim and allegedly not investigating the loss. **Fontaine,** *supra,* at 930 ("[I]f a contract involves performance, the breach occurs where the defaulting party fails to perform an act it has agreed to do.").

Defendants' counterclaim further alleges that Landmark failed to approve invoices for repair/replacement of the damaged Property and failed to designate certain payments made to defendants as "advanced" payments. ([D.E. 108] at ¶ 274). However, defendants cannot show they submitted any invoices to Landmark (or anyone on its behalf) for repair or replacement of the damaged Property *in amounts implicating the Landmark excess policy's layer of coverage.* On the contrary, any evidence produced by defendants will show that defendants submitted invoices and

payment requests *to the Primary Layer Carriers only* and for amounts *within* the layer of coverage provided by the Primary Layer Carriers. Defendants also cannot show that Landmark owed any duty under the Landmark excess policy to designate as "advanced" any payments made by the Primary Layer Carriers *under their layers of coverage.* For these reasons, Landmark did not breach the Landmark excess policy's provisions, if any, regarding payment of invoices and advanced payments. ***Fontaine***, *supra.*

### 2.   Landmark Had No Duty to Pay the Appraisal Award

Defendants further allege in their counterclaim that Landmark failed to fully and timely pay the appraisal award. ([D.E. 108] at ¶ 274). As discussed above in section II. B., the appraisal award that is the subject of defendants' counterclaim is not enforceable against Landmark. Therefore, Landmark did not breach the insurance contract by not paying the appraisal award.

Defendants further allege that Landmark failed to indemnify defendants under the Landmark excess policy. ([D.E. 108] at ¶ 274). However, defendants, before filing their counterclaim, never claimed indemnity under the Landmark excess policy. (SOF Nos. 5, 8-12, 14). A party to an insurance contract does not have a cause of action for breach of contract when it has not claimed indemnity under the contract. And an insured's action for alleged breach of an insurance contract cannot constitute its demand for indemnity under the contract.

To the extent defendants' claim for indemnity refers to the amount of the appraisal award, Landmark was not required to indemnify defendants for any portion of the appraisal award, as discussed above, and its failure to do so, therefore, did not amount to a breach of the insurance contract.

## IV.    <u>CONCLUSION</u>

For the reasons and on the grounds discussed above, Landmark is entitled to summary judgment on its claim for a judicial declaration that the appraisal award is not enforceable against Landmark and summary judgment in its favor on count twelve of defendants' counterclaim for breach of the insurance contract.

Respectfully submitted this 25th day of October, 2024.

*/s/ Elizbeth D. Salinas*
ELIZABETH D. SALINAS
Florida Bar No. 113394
MOZLEY, FINLAYSON & LOGGINS LLP
4767 New Broad Street
Orlando, FL 32814
(407) 514-2765 Ext. 2317
esalinas@mfllaw.com

-and-

WAYNE D. TAYLOR
Georgia Bar No. 701275
*Admitted pro hac vice*
MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway, Suite 1500
Atlanta, GA 30338
Tel: (404) 256-0700
wtaylor@mfllaw.com

*Counsel for Plaintiff Landmark American Insurance Company*

## CERTIFICATE OF WORD COUNT

Pursuant to N.D. Fla. Local Rule 7.1(F), the undersigned certifies that this motion contains 4166 words, excluding case style, signature block, and certificate of service.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing pleading using the Court's CM/ECF System which will automatically send a copy of same to the following counsel of record:

Heidi Hudson Raschke, Esq.
Madison E. Wahler, Esq.
Amanda D. Proctor (*admitted pro hac vice*)
**CARLTON FIELDS, P.A.**
hraschke@carltonfields.com
mwahler@carltonfields.com
aproctor@carltonfields.com
*Counsel for Plaintiff Homeland Insurance Company of New York*

David C. Bibb, Esq.
Brian P. Henry, Esq.
**ROLFES HENRY CO., LPA**
dbibb@rolfeshenry.com
wgonzalez@rolfeshenry.com
bhenry@rolfeshenry.com
kdeglman@rolfeshenry.com
*Counsel for Plaintiffs Independent Specialty Insurance Company, Interstate Fire & Casualty Company, and Lloyd's Of London*

Jack R. Reiter, Esq.
Jordan S. Kosches, Esq.
**GRAY ROBINSON, P.A.**
jack.reiter@gray-robinson.com
jordan.kosches@gray-robinson.com
*Counsel for Plaintiff Colony Insurance Company*

Eric A. Hiller Esq.
Aaron Konstam, Esq.
Bryan M. Walsh, Esq.
Junaid N. Savani, Esq.
Iliriana Feteja, Esq.
**KENNEDYS CMK LLP**
eric.hiller@kennedyslaw.com
aaron.konstam@kennedyslaw.com
bryan.walsh@kennedyslaw.com
Junaid.savani@kennedyslaw.com
Iliriana.Fteja@kennedyslaw.com
*Counsel for Plaintiff James River Insurance Company*

John David Dickenson, Esq.
Alexandra J. Schultz, Esq.
Juan P. Garrido, Esq.
**COZEN O'CONNOR**
jdickenson@cozen.com
aschultz@cozen.com
jgarrido@cozen.com
*Counsel for Plaintiffs Westchester
Surplus Lines Insurance Company,
Arch Specialty Insurance Company,
Axis Surplus Insurance Company,
Evanston Insurance Company, Aspen
Specialty Insurance Company, and
Maxum Indemnity Company*

Edward P. Fleming, Esq.
Matthew A. Bush, Esq.
Aaron T. McCurdy, Esq.
**MCDONALD FLEMING, LLP**
epfleming@pensacolalaw.com
cat@pensacolalaw.com
mabush@pensacolalaw.com
bushservice@pensacolalaw.com
amccurdy@pensacolalaw.com
absomerset@pensacolalaw.com

Kurtis Jay Keefer
**GOEDE, DEBOEST & CROSS,
PLLC**
kkeefer@gadclaw.com
curbanowski@gadclaw.com

Charles F. Beall, Jr., Esq.
**MOORE, HILL &
WESTMORELAND, P.A.**
cbeall@mhw-law.com
tstokes@mhw-law.com
*Counsel for Defendants*

This 25th day of October, 2024.


*/s/ Elizabeth D. Salinas*
ELIZABETH D. SALINAS
Florida Bar No. 113394