# EXHIBIT "5"

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

PENSACOLA DIVISION

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, *et. al.*

    Plaintiffs,

v.                        CASE NO. 3:23-cv-00453-MCR-HTC

PORTOFINO MASTER HOMEOWNERS
ASSOCIATION INC., a Florida not-for-
profit Corporation, *et. al.*

    Defendants.

_____/

## DECLARATION OF LEWIS CLAIM SOLUTIONS, LLC

Pursuant to 28 U.S.C. § 1746, I, Patrick Lewis, hereby depose and state as follows:

1. My name is Patrick Lewis. I am of sound mind and over the age of eighteen, and I make this Declaration based upon my personal knowledge.

2. I am the CEO of Lewis Claim Solutions, LLC ("LCS").

3. LCS was retained in December 2020 by Westchester Surplus Lines Insurance Company; Endurance American Specialty Insurance Company; Everest Indemnity Insurance Company; and The Princeton Excess and Surplus Lines

LEGAL\66394922\1

Insurance Company ("Primary Layer Carriers") to serve as their appraiser in the appraisal of the loss that is the subject of this litigation.

4. On August 17, 2021, I initially requested any inspection reports showing the condition of the property before or after the loss, including but not limited to inspection reports, damage reports, photographs, repair/build estimates, any knowledge of prior claims and associated documentation, and incurred invoices for repair after the storm. I also requested access to all Condominium Association meeting notes from the time the building was built, through current. The stated purpose of this request was to see the history of construction issues, maintenance, repairs, causation of issues unrelated to Hurricane Sally, and potential incurred costs from Hurricane Sally as determined by the Board of Directors of the Association.

5. I did not receive a response to the August 17, 2021 letter. On August 31, 2021, I sent a second email to request access to Condominium Association meeting notes from the time the building was built through present. George Keys responded to this request to advise that "[t]he Appraisal process is not a discovery process" and directed me to counsel for the insured.

6. In or around January 2022, the appraisal panel agreed to begin the appraisal hearings in April 2022, with documents and expert reports to be exchanged in March. Due to the need to conduct additional tests and inspections, the appraisal panel subsequently agreed to exchange documents and expert reports by May 31,

2022, to exchange estimates on July 11, 2022, and to begin the panel hearings on August 15, 2022.

7. I did not receive any of the documents reflecting the pre-Sally condition of the property first requested in August 2021 until on or about July 25, 2022, at which time I received only the meeting minutes from the Portofino Master Homeowner's Association meetings.

8. Within days of the commencement of the appraisal hearing, I received approximately 3,900 new documents from the insureds that had not previously been provided to me. These documents were provided to me by Cozen O'Connor as they were received from Ed Fleming's office.

9. As a result of the late document production, none of the experts whose opinions Lewis Claims relied upon, or any of the panel members including the umpire, had an opportunity to consider these documents in rendering their opinions. Further, Lewis Claims had to review all of these documents while the appraisal panel hearings were underway.

10. There were no documents from Premier Skyline in the voluminous last minute document production received from Portofino.

11. On or about July 11, 2022, I received Keys' claim submission, totaling $211,065,472.96. On or about August 2, 2022, Mr. Keys increased the claim

submission to approximately $233 million due to a purported error in the original submission ("Keys Claim Submission").

12. The Keys Claim Submission contained duplicate and overlapping items for the same or similar repairs and repair processes in their estimates.

13. The Keys Claim submission presented incorrect general conditions calculations in their repair estimates and did not account for multiple trades sharing the same general costs, failing to consider that the insureds would benefit from economies of scale as a result of the cost reductions for the simultaneously performed construction operations.

14. Although Mr. Keys and his experts only tested one swinging balcony door, which did not leak or fail during the test, they claimed that all balcony swinging doors must be replaced in their estimates and at the Appraisal Panel hearings.

15. Even though Mr. Keys and his experts included the costs for replacement of all exterior windows and doors due to paint damage, they acknowledged that only a small fraction of the exterior windows and doors showed signs of paint damage.

16. In addition to requesting payment to replace all of the exterior windows and doors at the Property, Mr. Keys and his experts submitted estimates to the Appraisal Panel requesting payments to re-seal all of the existing windows at the Property. In other words, Mr. Keys and his experts claimed that Plaintiffs should

pay for both (1) re-sealing the existing windows and doors, and (2) removing and replacing those same windows and doors with new windows and doors.

17. Since Hurricane Sally, Portofino has obtained nineteen permits to replace rooftop HVAC units. Only four of those permits specifically mention Hurricane Sally as the cause of damage to the individual HVAC units. Even though only nineteen rooftop HVAC units have been replaced since Hurricane Sally, Mr. Keys and his experts claimed that 93 rooftop HVAC units need to be replaced as a result of Hurricane Sally. During the Appraisal Panel hearings, Mr. Keys and his experts claimed the replacement of 93 rooftop HVAC units even though they could not explain how the units were damaged.

18. Mr. Keys and his experts claimed during the Appraisal Panel hearings approximately $18.8 million for crane rental costs, which are not based on any actual price quotes. LCS obtained estimates from crane vendors, establishing that the actual rental costs would be below $6 million.

19. Mr. Keys and his experts claimed in their presentation at the Appraisal Panel hearings the need for a separate crane for each trade at a condominium building, rather than allowing for the same crane to be used by various contractors for roof repair and repairs of the windows and doors. Further, while Mr. Keys and his experts claimed that roof repairs would take nine months per building and the fenestration repairs would take twelve months per building, the calculated crane rental costs for each individual condominium tower for fenestrations (repairs with

5

longer duration) was approximately a quarter of the amount claimed for the crane rental costs for roof repairs (repairs with much shorter duration).

20. Mr. Keys and his experts submitted repair estimates that claimed 410 months of temporary toilets. This allocation amounts to two temporary toilets per building for each of the five condominium buildings for 17 years.

21. The repair estimates submitted by Mr. Keys and his experts also claim costs for project supervision amounting to 40 hours of supervision per week for 29.2 years.

22. The prices that Mr. Keys and his experts submitted to the Appraisal Panel for the waterproofing systems are significantly inflated and do not reflect the actual costs of applying those systems. Mr. Keys did not provide any support to substantiate the pricing in his claim submission. Mr. Keys also did not demonstrate that the Kemper waterproofing system in his claim submission was the same or the equivalent of the waterproofing system used on the balconies prior to the loss.

23. Based on photographs of the damages to the Property sustained as a result of Hurricane Ivan in 2004, Defendants are asserting a claim for the same damages, claiming they are now a result of Hurricane Sally. The photographs demonstrate that the damages claimed by Defendants, as well as Mr. Keys and his experts, as resulting from Hurricane Sally to numerous exterior windows, doors, balconies, and guardrails are the same damages that were present in 2004 after Hurricane Ivan.

24. Mr. Keys and his experts claimed the cost for metal lath and stucco repairs to certain fenestrations even though the Property does not contain any metal lath and stucco fenestration construction.

25. During the appraisal hearings, Mr. Keys produced several affidavits for the first time.

26. For example, during my opening presentation, I stated that the handrails installed on the five towers at Portofino could be repaired.

27. Mr. Keys then presented an affidavit from Justin Poma of Poma Architectural Metals. Mr. Poma stated in his affidavit that Poma Corporation was the manufacturer of the handrails at Portofino, and that those handrails are no longer in production and no longer available. Mr. Poma was not present at the appraisal hearing.

28. Mr. Poma's affidavit is contrary to the blueprints for the property, which state that the guardrails shall be Dula-Wright glass railings with 4-inch centerline prefinished aluminum top rail and ¼-inch tempered safety glass and a prefinished aluminum bottom channel.

29. Isaac Lewis of LCS communicated with Bill Hilliker of Kane Innovations. Mr. Hilliker advised that he recalled installing the railings at Portofino. Mr. Hilliker advised that Dula Wright was purchased by Sterling Fabricated Systems around 1999-2000 and the companies merged to become Sterling Dula Architectural Products in 2000. In 2001 Kane Manufacturing purchased Sterling Dula and the

company operated as Sterling-Dula, a division of Kane Manufacturing, for several years. In 2013, the company was rebranded to Kane Innovations, producing the Sterling-Dula line of railing. Mr. Hilliker further advised that Kane Innovations is effectively the same company that made the railings at Portofino 18 years ago, and while there have since been some design changes, it is essentially the same railing.

*(signature page to follow)*

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON: October 13, 2023

By: _____

Patrick Lewis