# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

## CASE NO. 3:23-cv-00453-MCR-HTC

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, et al.,

     Plaintiffs,

v.

PORTOFINO MASTER HOMEOWNERS
ASSOCIATION INC., a Florida not-for-
profit Corporation, et al.,

     Defendants.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO PORTOFINO'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO CLAIMS AND DEFENSES RELATED TO ALLEGED "NON-PARTICIPATION" IN APPRAISAL

Plaintiffs, Westchester Surplus Lines Insurance Company ("Westchester"), Arch Specialty Insurance Company ("Arch"), AXIS Surplus Insurance Company ("AXIS"), Colony Insurance Company ("Colony"), Evanston Insurance Company ("Evanston"), Aspen Specialty Insurance Company ("Aspen"), Independent Specialty Insurance Company ("Independent"), Interstate Fire & Casualty Company ("Interstate"), Lloyd's of London (Consortium #9226) ("Lloyd's"), James River Insurance Company ("James River"), and Maxum Indemnity Company ("Maxum") (collectively, "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 56, file their

response in opposition to defendants' (collectively, "Portofino"), Motion for Partial Summary Judgment as to Claims and Defenses Related to Alleged "Non-Participation" in Appraisal [D.E. 261] ("Motion"), and in support state as follows:

## **INTRODUCTION**

By its own terms, the Motion clearly illustrates that Portofino is not entitled to summary judgment in its favor regarding Plaintiffs' participation in appraisal (or, more accurately, lack thereof). Specifically, through a winding narrative of unsupported and uncited arguments disguised as facts, Portofino attempts to distract the Court from what actually occurred.

Portofino incorrectly claims that it only invoked appraisal for a portion of the loss and, in response, all Plaintiffs (most of whom were unaware of a claim at that time) somehow invoked appraisal of the entire claim. In reality, however, Portofino sent correspondence to four, and only four, carriers, invoking appraisal for the entire loss. This fact is undisputed. As a part of that, and only that, appraisal proceeding, Portofino's appraiser submitted a fraudulent claim, or, at the very least, one that did not comply with the terms of the applicable policies.

Further, despite the purported topic of the Motion, the Motion only briefly touches on Plaintiffs' participation in appraisal. Instead, the subsections of Portofino's "Arguments" sections relating to the "failure of pre-conditions to

appraisal," "non-cooperation by the Homeowners,"[1] "premature appraisal," and the "allegation that the Homeowners 'dramatically' increased their claim."[2]

As none of these arguments directly deal with participation in appraisal, it is difficult to parse the topic for which Portofino is seeking summary judgment.[3] Nevertheless the Motion should be denied for numerous reasons: (a) the Motion is procedurally defective due to its failure to comply with the Local Rules; (b) the Motion contains numerous misstatements and misrepresentations (including fictitious quotes)[4] of the material facts and the applicable law; (c) Portofino failed to adhere to the terms of the policies; (d) Plaintiffs have not waived any rights, and may assert coverage defenses after appraisal; (e) Portofino deprived Westchester of the opportunity to disagree; and (f) Plaintiffs are not attempting to peek behind the appraisal curtain. For these reasons, the Motion should be denied with respect to all arguments, not just participation in appraisal, as Portofino did not meet its burden. At the very least, genuine issues of material fact preclude granting the Motion.

---

[1] Portofino states that this argument is "more fully addressed in the Homeowners' Motion for Partial Summary Judgment as to Count I, Doc. 250" and contains no substantive argument. D.E. 261, at p.42. It is unclear why it was introduced in this Motion, but Plaintiffs substantively address it in their response to D.E. 250.

[2] D.E. 261, at p.41-43.

[3] The Motion states that it is moving for Summary Judgment on three counts in Plaintiffs' Amended Complaint, four of its own affirmative defenses, and 22 affirmative defenses. Some, but not all of these counts and affirmative defenses relate to participation in appraisal. *See* D.E. 104, at p.49-55, 58-61; D.E. 123, at p.22-25; D.E. 124, at p.19-20; D.E. 125, at p.10, 15; D.E. 126, at p.10, 15; D.E. 127, at p.10, 15; D.E. 128, at p.10, 15; D.E. 129, at p.10, 15; D.E. 130, at p.16; D.E. 131, at p.27-28; D.E. 132, at p.31, 32, 37; D.E. 133, at p.10.

[4] *See, e.g.*, D.E. 261, at p.7, 37, 39.

## PORTOFINO'S DEFECTIVE STATEMENT OF FACTS

**A.      Portofino's Motion is procedurally defective and should be denied.**

Preliminarily, Portofino's Motion fails to comply with the Northern District's Local Rules. Accordingly, it is procedurally defective and should be denied.

Local Rule 56.1(B) requires a party moving for summary judgment to "include a statement of facts generally in the form that would be appropriate in an appellate brief." N.D. Fla. Loc. R. 56.1(B) This "statement of facts must not be set out in a separate document." *Id.*

The failure to comply with these requirements is grounds for denial of a motion for summary judgment. *See Fodor v. E. Shipbuilding Grp.*, No. 5:12-cv-28-RS-CJK, 2014 WL 50783, at *4 (N.D. Fla. Jan. 7, 2014) (The movant "failed to submit a separate, short and concise statement of the material facts as to which [it] contend[ed] there [was] no genuine issue to be tried, and the statement of facts [it] provided within [its] motion for summary judgment did not reference any evidence in the record or cite to particular parts of materials in the record. The court may deny summary judgment on this basis."); *see also Adeniran v. United States*, No. 4:22-cv-47-WS-MJF, 2022 WL 2230131, at *1 (N.D. Fla. May 19, 2022) ("Plaintiff failed to attach a memorandum that complies with the Local Rules. This is another reason to deny the motion for summary judgment.").

Portofino's Motion is due to be denied as it fails to include a statement of facts in the "form that would be appropriate in an appellate brief." Instead, the Motion contains nearly 28 pages of purported facts,[5] many of which are unsupported and lack citations to the record.[6] Most egregiously, in the "Circular Logic" section of the Motion, Portofino provides an uncited and unsupported block quote.[7] However, no one representing Plaintiffs, nor Plaintiffs themselves, has ever made such a statement. Indeed, the "Market Insurers," are not a single entity and no one has ever spoken for all of them. This confusing and misleading narrative seeks to obfuscate the issues before the Court.

By failing to conform with the Local Rule's requirements, Portofino obscures otherwise clear facts in an attempt to justify its violations of the applicable insurance policies. Accordingly, the Motion should be denied based on Portofino's failure to comply with the Local Rules.

---

[5] In an apparent attempt to avoid the word count limitations, and in violation of Local Rule 56.1(B) requirement that the "statement of facts must not be set out in a separate document," Portofino "adopt[s] and incorporate[s] by reference the Statement of Facts from . . . [Doc. 246]" and states that at least one "issue is more thoroughly discussed in . . . Doc. 255." D.E. 261, at p.8, 13. For sake of completeness, Plaintiffs address the statement of facts in this Motion as well as the incorporated facts of D.E. 246. However, because it is unclear if the statement of facts from D.E. 255 is incorporated into the Motion, Plaintiffs address those facts in their response to D.E. 255.

[6] See, e.g., D.E. 261, at p.19 ("Either Dickenson had actual or apparent authority to represent the interests of the Market in demanding that appraisal, or those who claim he did not waived any objection and ratified the demand through participating in the appraisal.").

[7] See D.E. 261, at p.7.

**B.    Portofino's Statement of Facts is likewise substantively incorrect.**

Beyond the obvious procedural defects, the Motion's statement of facts includes a host of factual inaccuracies and unsupported claims and legal arguments. Indeed, the entirety of the Motion is based on the false premise that the appraisal at issue was invoked by Plaintiffs (many of whom were unaware of the claim) rather than the original invocation of appraisal by Portofino.[8]

Portofino claims that it did not actually invoke appraisal of the entire loss,[9] but instead invoked appraisal only for some amorphous amount and scope.[10] This statement, however, is contradicted by Portofino's December 11, 2020, correspondence to Westchester, Endurance American Specialty Insurance Company, Everest Indemnity Company, and Princeton Excess Surplus Lines Insurance Company ("primary layer carriers").[11] In that letter, Portofino unequivocally stated that it "demand[ed] an appraisal of the loss at issue in the above-referenced matter."[12]

---

[8] Notably, the "Legal Standards" section of Portofino's Motion directly contradicts this position. According to Portofino, "[o]nce a party to a unilateral appraisal clause has invoked it, appraisal is mandatory." D.E. 261, at p.36. Thus, by their own admission, there could only be one appraisal demand, which is the one made by Portofino to the primary layer carriers and no one else.
[9] D.E. 246, at p.3.
[10] *See id.*
[11] Endurance American Specialty Insurance Company, Everest Indemnity Company, and Princeton Excess Surplus Lines Insurance Company have since dismissed their lawsuit. *See* D.E. 84; D.E. 85; D.E. 86.
[12] D.E. 116-6.

Indeed, Portofino's appraiser's testimony makes clear that Portofino's "partial appraisal" position is nothing more than revisionist history:

> A.   . . . When you go to appraisal, you have to appraise the entire loss and when you -- you can't just go and say, okay, we're going to -- we're going to appraise just the water mitigation, hypothetically. . . .[13]

However, Portofino clouds this straightforward invocation of appraisal with uncited and unsupported facts.[14] For instance, Portofino states that it:

> pointed out that the Market Insurers had not proffered any estimates as to the exterior damages, and thus questioned the 'dispute' requirement of the policy. Market counsel, J.D. Dickenson, insisted there was a dispute. Both parties waived that issue by proceeding with the Appraisal.[15]

None of these naked assertions are supported by citations to the record and should, therefore, be ignored.[16] *See Canady v. Colombani*, No. 4:18cv538-MW-MAF, 2021 WL 11691707, at *1 (N.D. Fla. May 3, 2021) ("[A] 'memorandum must include pinpoint citations to the record evidence supporting each factual assertion.'") (quoting N.D. Loc. R. 56.1(F)); *Salters v. Leon Cnty. Sch.*, No. 4:21cv241-MW/MJF, 2023 WL 4006447, at *4 (N.D. Fla. May 10, 2023) ("[A] court is required to consider . . . only portions of the record the parties have cited. Fed. R. Civ. P. 56(c)(1)(A); N.D. Fla. Local Rule 56.1(F)."); *Salas v. AMC E. Cmtys., LLC*, No.

---

[13] D.E. 225-1, at 119:3-7.

[14] *See, e.g.*, D.E. 246, at p.4 n.12.

[15] *Id.*

[16] *Id.*

8:20-cv-688-T-33CPT, 2020 WL 13228407, at *1 (M.D. Fla. Apr. 30, 2020) ("When resolving a motion for summary judgment, the Court has no independent duty to search and consider any part of the record not otherwise referenced and pinpoint cited in the statement of material facts and response thereto.") (internal citations omitted).

These statements are also incorrect. J.D. Dickenson did not represent the entire "market"[17] and it is unclear who "[b]oth parties" are in this context, as there are 19 parties to this lawsuit.[18] Portofino frequently claims that Mr. Dickenson represented the entire "market"[19] because if Mr. Dickenson does not represent every Plaintiff, Portofino's argument fails. Specifically, Portofino mischaracterizes a letter from Mr. Dickenson as a separate appraisal demand.[20] In doing so, Portofino incorrectly states that:

> This case involves sequential demands for appraisal by both parties. The only demand for appraisal of the "entire loss" was not made by [Portofino], but rather by the Market Insurers. That is the demand that proceeded to appraisal.[21]

---

[17] See, e.g., D.E. 228-11, at p.24:2-4 ("A. Cozen did not represent James River. Q. Ever in this case? A. No.").

[18] See generally D.E. 104.

[19] See, e.g., D.E. 246, at p.4 n.12 ("Market counsel, J.D. Dickenson, insisted there was a dispute."); D.E. 261, at p.4 (". . . arranged by the attorney who throughout this process was known as 'Market counsel,' Dickenson and the Cozen O'Connor firm."); D.E. 262, at p.12 n.4 ("Mr. J.D. Dickenson of the Cozen O'Connor firm, the attorney who represented the Market in the appraisal right up to, and during, the appraisal hearings that started August 15, 2022.").

[20] See D.E. 261, at p.9.

[21] Id.

This statement, however, is completely false.[22] On April 5, 2021, Mr. Dickenson sent a letter to Portofino clarifying the terms of the Master Property Policy form.[23] That letter explicitly stated that it was sent only on behalf of the primary layer carriers.[24] Portofino's characterization of the letter as having been sent on behalf of "the Market Insurers" desperately ignores the clear language of the letter.[25]

Moreover, the April 5, 2021 letter explains that the appraisal provision of the Master Property Policy form "does not provide an avenue for bifurcating an appraisal into separate portions for work that has already been performed and work that has yet to be performed . . . ."[26] The letter continues:

> *[T]o the extent that there is any confusion* regarding which portions of the Insureds' loss is in appraisal and which portions are not, the Insurers [defined in the letter to include only Westchester, Endurance, Everest, and Princeton] echo the Insureds' appraisal demand pursuant to the above-referenced provision and hereby demand appraisal for the entire loss, including whichever portions of the loss the Insureds now incorrectly claim are not in appraisal.[27]

As can be plainly seen, the "invocation" was only to clarify Portofino's confusing position.

Even if Portofino's characterization of the correspondence is correct (it is not), it makes sense only if Mr. Dickenson represented all Plaintiffs. Because he did not,

---

[22] *See* D.E. 246-5.
[23] *See id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.* (emphasis added).

he could not have invoked appraisal on behalf of every Plaintiff. Accordingly, Portofino's argument fails.

Furthermore, Portofino contends that "[t]he evidentiary record in this case clearly supports that the Market Insurers participated in the appraisal of the entire loss, as demanded by Market counsel J.D. Dickenson."[28] Specifically, Portofino states, "[e]ither Dickenson had actual or apparent authority to represent the interests of the Market in demanding that appraisal, or those who claim he did not waived any objection and ratified the demand through participating in the appraisal."[29] Neither of these legal assertions contain citations to the record or Florida law and, as outlined herein, the facts directly contradict this assertion.[30] *See McCroan v. Morgan*, No. 4:14cv40-RH-CAS, 2015 WL 5439966, at *2 n.5 (N.D. Fla. Aug. 17, 2015) ("Plaintiff's statements are also deficient because they are conclusory assertions.").

Moreover, the corporate representatives for Arch, AXIS, Aspen, Colony, Evanston, James River, Velocity Risk Underwriters,[31] Homeland Insurance Company of New York, and Landmark American Insurance Company each testified that appraisal was never invoked as to each of them.[32] Accordingly, because many

---

[28] D.E. 261, at p.19.

[29] *Id.*

[30] *Id.*

[31] D.E. 228-10, at p.9:1-5 ("Velocity Risk Underwriters is the managing general agent for Independent, Interstate, and Lloyd's for the applicable policy.").

[32] *See* Arch's Second Supplemental/Amended Answers to First Interrogatories by Defendant, Portofino Master Homeowners Association, Inc., attached as Exhibit "1," at p.10 ("Appraisal was

of the Plaintiffs did not participate, they could not have ratified any conduct. At the very least, this is evidence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ([T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonably jury could return a verdict for the nonmoving party.").

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1335 (11th Cir. 2024). "A fact is 'material' if it could affect the outcome of the suit under the governing law." *Id.* "Accordingly, a genuine dispute of material fact exists where the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant "has the burden

---

only demanded of . . . the . . . primary layer carriers . . . . To the extent this Interrogatory seeks an admission that Plaintiffs other than the primary layer carriers were participating in the appraisal, [Arch] makes no such admission."); D.E. 228-9, at p.75:6-24 ("No, we weren't part of it, so we were not participating in the appraisal process."); D.E. 228-7, at p.20:2-7 ("Axis did not participate in the appraisal award."); D.E. 228-8, at p.37:16-24 ("We couldn't . . . . We could not participate. The insured did not invoke appraisal upon Evanston."); D.E. 228-14, at p.86:6-10 ("We didn't get to participate, and we weren't given prompt notice, so it is not binding."); D.E. 228-11, at p.156-57:20-2 ("Our claim in the litigation is that the appraisal process had already started and we didn't have any input into the participants or the process. And then we -- once the train had left the station, we did our best to keep up with it."); D.E. 227, at p.103:9-20 ("We didn't have an opportunity to participate in that. All we could do is get information about it . . . ."); D.E. 228-10, at p.122:2-6 ("Q. It's your position that the Velocity carriers were not participating in the appraisal. As you sit here today, it's the position that Velocity carriers were not participating in the appraisal? A. That is -- that is a correct statement."); D.E. 228-13, p.83-84:24-1 ("No. They -- they would not have asked us, because we were not participating in the appraisal process.").

of demonstrating that there are no genuine issues of material fact." *Id.* "In determining whether the movant has met this burden, [the Court] must view the evidence in the light most favorable to the non-moving party" and "also must draw all reasonable inferences in the non-movant's favor." *Id.*

Where, as here, the non-movant will bear the burden of proof at trial on an issue, the moving party must either (1) "show" or "point out to the district court that there is an absence of evidence to support the non-moving party's case," or, alternatively, (2) "support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). "If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Id.* at 1116.

## ARGUMENT

Portofino makes legal arguments throughout the Motion, as opposed to only in the "Arguments" section. [33] Indeed, Portofino's "Legal Standards" section contains numerous legal conclusions and assertions, as well as further unsupported statements of purported facts. [34] Due to Portofino's failure to articulate its legal

---

[33] *See, e.g.*, D.E. 261, at p.35-41.
[34] *See id.*

arguments, which are scattered throughout the Motion, Plaintiffs attempt to respond to each of the arguments by grouping them in the following sections.

## A. Insurers are entitled to assert policy defenses and challenge the existence of coverage after an appraisal.

Portofino dedicates a significant amount of space to the inaccurate premise that a party waives its rights to challenge either coverage or the validity of the appraisal process when it proceeds to an appraisal.[35]

For example, without citation, Portofino states that "[p]arties waive any objections to appraisal, including late notice, when they voluntarily proceed with the appraisal, as they did here."[36] As a threshold point, the suggestion that Plaintiffs participated in the appraisal in this case ignores the undisputed fact that Plaintiffs did not even have notice of the appraisal process when it first began since the original sworn proof of loss did not exceed the primary layer of coverage.[37] This also glosses over the fact that on August 2, 2022, just weeks before the appraisal hearing, Portofino and its appraiser, George Keys, submitted an updated claim submission that increased the claimed loss from $13.6 million to an astronomical

---

[35] *See* D.E. 261, at p.37-39.

[36] D.E. 261, at p.37. Portofino continues, "[p]arties may not represent, by words or actions, that they are participating and then say, 'Just kidding,' when they suspect they are not going to like the appraisal panel's decision as to the amount of the loss." *Id.* This purposefully argumentative statement is not a legal standard, nor is it an accurate statement of the facts or law.

[37] D.E. 231-6.

$233,030,601.80.[38] Plaintiffs—who had no (or little) notice and no opportunity to investigate the claim—cannot be said to have participated in the appraisal that was foisted upon them by Portofino's machinations.

Plaintiffs also attempted to stay the appraisal process pending disposition of its Declaratory Judgment action, which is contrary to the fiction that Plaintiffs were willing participants in the process.[39] As Plaintiffs asserted in their Motion, "[s]taying the appraisal proceeding will save ongoing appraisal expenses for all parties and prevent a perversion of the intent of the contractual appraisal provisions in the applicable policies."[40]

When the Court denied Plaintiffs' attempt to stop the appraisal, the Court observed that "the Plaintiffs 'retain all available rights to assert coverage issues after the appraisal awards are entered,'" citing *Cherrystone Court, Inc. v. Cincinnati Indemnity Co.*, No. 2:21-cv-736-JLB-NPM, 2022 WL 3334685 at *2 n.3 (M.D. Fla. Aug. 12, 2022) ("[C]ourts routinely compel appraisal when an insurer has denied coverage, and as noted, appraisal does not affect [a party's] ability to continue contesting coverage whatsoever[.]"); *Waterford Condo. Ass'n of Collier Cnty., Inc.*,

---

[38] D.E. 226-19. Further, on August 16, 2022, after receipt of Portofino's astronomical appraisal claim submission, certain Plaintiffs joined in a clear and comprehensive Reservation of Rights letter setting forth the history of the claim and appraisal, specifically noting that appraisal was only demanded as to the primary layer carriers. *See* D.E. 241-14. Plaintiffs never received a response to this letter.

[39] *See generally* D.E. 57.

[40] D.E. 57 at p.5.

2019 WL 4861196, at *1 (holding that a party's "consideration of a fraud defense is no reason to stop or stay appraisal").[41]

    This Court's conclusion in denying Plaintiffs' stay should control and defeats Portofino's contention that by "participating" in the appraisal, Plaintiffs abandoned their challenge to the sanctity of the process or the existence of coverage. Considering the history of these proceedings, Plaintiffs had no choice but to "participate" in the appraisal process by obtaining as much information as possible while preserving their challenges. This is not a waiver any more than when a party proceeds to trial after its motion for continuance is denied. *Cf. Louette v. State,* 152 Fla. 495, 507 (1943) ("It is a general rule that a party does not waive his previous objection to the admission of improper, illegal or incompetent evidence merely by cross-examining the witness with relation to the objectionable matter . . . ."); *Dupree v. State,* 639 So. 2d 125, 127, n. 3 (Fla. 1st DCA 1994) ("We reject appellee's argument that cross-examination concerning testimony received over objection waives the objection. 'It is a general rule that a party does not waive his previous objection to the admission of improper, illegal or incompetent evidence merely by cross-examining the witness with relation to the objectionable matter.'"). Once the proverbial train left the station, Plaintiffs had no choice but to hang on and try not to get crushed.

---

[41] D.E. 78 at p.4.

This Court's prior ruling that a party does not waive its coverage argument by "participating" in an appraisal is consistent with Florida law. Indeed, it is well established that insurers do not waive coverage defenses by proceeding with appraisal. *See Am. Cap. Assurance Corp. v. Leeward Bay at Tarpon Bay Condo. Ass'n, Inc.*, 306 So. 3d 1238, 1243 (Fla. 2d DCA 2020) ("Our disposition is without prejudice to American Capital's right to contest coverage as a matter of law and continue litigating its coverage defense after the appraisal.") (citing *Am. Coastal Ins. Co. v. Residences at Pelican Isle Condo. Ass'n*, 291 So. 3d 1003, 1003 (Fla. 2d DCA 2020); *Liberty Am. Ins. v. Kennedy*, 890 So. 2d 539, 541-42 (Fla. 2d DCA 2005)); *see also See Am. Coastal Ins. Co. v . San Marco Villas Condo. Ass'n, Inc.*, 379 So. 3d 1099, 1104 (Fla. 2024) ("[T]rial courts have discretion in determining the order in which coverage and amount-of-loss issues are resolved.").

Similar to the instant facts, the insured in *Leeward Bay* invoked appraisal and submitted what the insurer believed to be a "falsely inflated . . . claim well beyond its actual value . . . ." 306 So. 3d at 1240. There, the insurer argued that the court should rule on the coverage issue (*i.e.*, fraud) prior to the case moving to appraisal. *Id.* at 1241. The court disagreed, holding that though "[u]ndisputedly, coverage issues are judicial questions for the court," appraisal could be conducted prior to a court ruling on the coverage issues. *Id.* at 1241, 1243.

16

Likewise, in *San Marco*, the insured filed suit seeking to compel appraisal of a Hurricane Irma claim. 379 So. 3d at 1101-02. The insurer argued that the court should first rule on its coverage defenses (*i.e.*, "fraud or . . . material misrepresentations"). *Id.* The court agreed with the holding of *Leeward Bay*, finding that "trial courts have discretion in determining the order in which coverage and amount-of-loss issues are resolved." *Id.* at 1104. However, the Supreme Court of Florida made clear that "[a]ll other disputes—including those involving coverage or legal matters—are beyond the scope of appraisal and must be determined in court." *Id.*

It is well established under Florida law that proceeding to appraisal does not preclude Plaintiffs from arguing that the claim itself is not covered. To hold otherwise would incentivize insureds to invoke appraisal at the earliest possible stage to effectively guarantee coverage of their claim without regard to its validity or the terms of the policy. Thus, even if all Plaintiffs participated in the appraisal (which is not the case), they did not waive any coverage defenses by doing so. *See Leeward Bay*, 306 So. 3d at 1243; *San Marco*, 379 So. 3d at 1104. Accordingly, Portofino's argument is not only unpersuasive but also directly contradicts Florida

precedent and this Court's previous order.[42] For these reasons, the Motion should be denied.

## B.    Portofino failed to comply with the appraisal provisions of the policies.

The insurance policies unambiguously require Portofino to demand appraisal on each Plaintiff.[43] Specifically, the appraisal provision provides:

> 50. APPRAISAL - If the Insured and this Company fail to agree on the amount of loss, each, **upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company**, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss. The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.[44]

Portofino attempts to sidestep its undisputed non-compliance with its requirement to make a demand on each insurer by (a) mischaracterizing their December 11, 2020 letter as a demand for only a "limited scope" appraisal; and (b)

---

[42] *See* D.E. 78, at p.4 ("Plaintiffs 'retain all available rights to assert coverage issues after the appraisal awards are entered' . . . .") (quoting *Cherrystone*, 2022 WL 3334685 at *2 n.3).
[43] *See, e.g.*, D.E. 222-6, at EVANSTON000869.
[44] *Id.* (emphasis added).

rewriting history to argue that this unambiguous appraisal demand was not the one that proceeded to appraisal.[45]

This argument is disingenuous. Notably, the December 11, 2020 letter does not refer to a "limited scope" appraisal and instead "demand[ed] an appraisal of the loss at issue in the above-referenced matter."[46] In fact, Portofino's appraiser testified that he was retained to appraisal the "entire loss" and not portions thereof.[47]

Furthermore, under Florida law, Portofino could not have invoked a partial appraisal. "What is appraised and whether a party can be compelled to appraisal depend on the contract provisions." *Citizens Prop. Ins. Corp. v. Casar*, 104 So. 3d 384, 385 (Fla. Dist. Ct. App. 2013). Here, the plain language of the appraisal provision does not allow the dividing the appraisal into separate parts. Instead, the appraisal provision mandates that the process determine "the amount of loss" as a whole, not merely individual portions.

Under similar policy language, this Court has refused to impose restrictions on the scope of the appraisal after it was invoked by the party claiming a limited scope. *Am. Fid. Life Ins. Co. v. James River Ins. Co.*, No. 3:23-CV-24675-MCR-ZCB, 2024 WL 4023559, at *3 (N.D. Fla. May 3, 2024) ("The Court will not impose restrictions on the appraisal because the policy's appraisal provision does not

---

[45] *See* D.E. 261, at p.8.
[46] D.E. 116-6.
[47] D.E. 225-1, at 119:3-7.

explicitly contain restrictions as to the scope of the appraisal."). Thus, the fact that Defendants retroactively attempted to claim that the appraisal was intended as limited in scope does not make it so.

Moreover, as Portofino concedes in the Motion "[o]nce a party to a unilateral appraisal clause has invoked it, appraisal is mandatory."[48] Thus, by Portofino's own logic, the appraisal demanded to the primary layer carriers was the one that proceeded to the appraisal, and their after-the-fact recharacterization of the December 11, 2020 letter as a "limited scope" appraisal has no merit.[49] *See In re 274 Atl. Isles, LLC*, 651 B.R. 319, 330 (Bankr. S.D. Fla. 2023) ("As a general rule . . . a court cannot rewrite a contract based on what is essentially an after-the-fact change of heart . . . .").

Furthermore, Portofino never demanded an appraisal of any carrier other than the primary layer carriers.[50] In an effort to bind the excess carriers to the appraisal award and avoid this clear breach of the appraisal condition, Portofino relies on

---

[48] D.E. 261, at p.36.

[49] At best this disingenuous attempt at rewriting history is illustrative of the fact that there are material facts in dispute regarding the invocation of appraisal. Specifically, Portofino incorrectly believes that its invocation of appraisal (the only invocation made by any party) was not the appraisal that moved forward.

[50] *See* D.E. 116-6. Even if Portofino is correct (it is not), and Mr. Dickenson was the one invoking the appraisal, Mr. Dickenson did so only on behalf of the four primary layer carriers. *See* D.E. 246-5.

waiver and argues that "parties are not entitled to pretend participation in an appraisal [sic], and then change their minds once they do not like the results."[51]

Despite Portofino's contentions, Plaintiffs have not initiated this litigation because "they do not like the results";[52] rather, they initiated this litigation, *before* there were any results, because of clear and fraudulent breaches of numerous policy provisions by Portofino and its appraiser. In particular, in taking this position, Portofino ignores the fact that Plaintiffs initiated this litigation on January 12, 2023, well before the appraisal award was issued and then sought to stay the proceedings.[53] Thus, Portofino's often repeated statement that this is simply Plaintiffs' attempt to avoid the award because "they do not like the results"[54] is belied by the clear timeline of this matter and is completely without merit.

Accordingly, the Motion should be denied because Portofino failed to comply with the requirements of the policies[55] or, at the very least, there are genuine issues

---

[51] D.E. 261, at p.42.

[52] *See id*.

[53] *See* D.E. 1.

[54] D.E. 261, at p.42.

[55] Portofino also failed to comply with the sworn proof of loss requirement of the appraisal provision. This obligation is not merely procedural but serves a substantive function: it provides the insurer with a concrete upper limit on damages and guides the investigation into the specific types of damages claimed. Specifically, a sworn proof of loss must at least place the insurer "in the ballpark" regarding the damages and give notice of the areas to be investigated. *Garden-Aire Village S. Condo. Ass'n Inc. v. QBE Ins. Corp.*, No. 10-61985-CIV, 2013 WL 864570, at *8 (S.D. Fla. Mar. 8, 2013). Here, at no time did Portofino submit a Sworn Statement in Proof of Loss in the amount of (or any amount close to) $233 million, thus depriving Plaintiffs of a meaningful opportunity to evaluate challenges to the unsworn claim. Portofino failed to place Plaintiffs "in the ballpark," violating the terms of the applicable policies and undermining the appraisal process.

of material fact relating to the invocation of appraisal and Portofino's noncompliance with terms of the policies, which prevent summary judgment in their favor.

**C.    The record evidence confirms that Plaintiffs did not waive any rights.**

The Motion argues that the Plaintiffs waived their right to contest Portofino's undisputed failure to demand an appraisal against any of the excess carriers.[56] However, as discussed below, Portofino fails to point to anything in the record evidencing any implicit, let alone explicit, waiver of any contractual right on behalf of Plaintiffs.

Waiver is "the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right." *Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005) (internal citation omitted). Further, to establish waiver, a party must show "(1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right." *Goodwin v. Blu Murray Ins. Agency, Inc.*, 939 So. 2d 1098, 1104 (Fla. 5th DCA 2006) (internal citation omitted).

"Waiver may be implied by conduct, but that conduct must make out a clear case." *Id.* (internal citation omitted). In addition, waiver "may be inferred from

---

[56] "Excess carriers" includes all Plaintiffs except Westchester.

conduct or acts putting one off his guard and leading him to believe that a right has been waived." *Gilman v. Butzloff*, 22 So. 2d 263, 265 (Fla. 1945) (citing *Rader v. Prather*, 130 So. 15 (Fla. 1930)).

Notably, "waiver is an issue of fact" and is generally not ripe for summary judgment. *MDS (Can.) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 851 (11th Cir. 2013) (citing *Rutig v. Lake Jem Land Co.*, 20 So. 2d 497, 498 (Fla. 1945) ("The question of waiver is usually one of fact for consideration by a trial jury on issues properly defined.")); *see also Leonardo v. State Farm Fire & Cas. Co.*, 675 So. 2d 176, 178-79 (Fla. 4th DCA 1996) ("[W]e conclude that [the issue of waiver] should be resolved, on a case-by-case basis, by the trier of fact."); *Goodwin*, 939 So. 2d at 1104 ("Summary judgment is particularly unsuitable where the facts and circumstances indicate a possibility of waiver.") (internal citation omitted).

Here, the crux of Portofino's waiver argument is that Plaintiffs participated in the appraisal; however, this assertion is contrary to the clear history of these proceedings. Multiple Plaintiffs testified at their corporate representative depositions that they were only "participating" by paying for information regarding the claim.[57] Such practice is commonplace in the insurance industry. Nevertheless, Portofino seizes on this word as its entire basis for the waiver argument.

---

[57] *See, e.g.*, D.E. 228-9.

Specifically, Portofino points to the fact that several excess carriers used the term in their response to the civil remedy notices filed by Portofino.[58] However, Portofino ignores that within those same responses, Plaintiffs explicitly state that they will "evaluate the appraisal award to determine whether there are any coverage issues under the Policy that may impact Portofino's entitlement to payment of some or all of the appraisal award."[59] These "coverage issues" obviously include the failure to comply with the policies' conditions, such as the unambiguous requirement that there must be a demand for appraisal to each Company.[60]

Moreover, it is undisputed that prior to the appraisal hearings Portofino was unaware of the supposed acts committed by Plaintiffs that Portofino asserts constituted a waiver of their coverage defenses. Therefore, at no time during the appraisal was Portofino ever caught off guard or led to believe that any such rights had been waived. *See Gilman*, 22 So. 2d at 265.

---

[58] D.E. 261, at p.29. Further, to the extent Portofino cites Plaintiffs' responses to Portofino's civil remedy notices as an attempt to allege any bad faith conduct, it is black letter law in Florida that such allegations are impermissible. *See Jakab v. Arch Specialty Ins. Co.*, No. 23-61624-CIV-SINGHAL, 2024 WL 3362429, at *3 (S.D. Fla. June 18, 2024) ("An insured cannot assert a bad faith claim unless and until the issue of coverage has been determined.") (internal citations omitted).

[59] *See* D.E. 246-12, at p.10, 20, 30, 40, 50, 64, 79, 95, 105, 114.

[60] *See, e.g.*, D.E. 222-6, at EVANSTON000869. Further, the sworn proof of loss requirement was likewise not waived. To be sure, Mr. Dickenson's April 5, 2021 letter specifically states that "[t]he Appraisal Panel will evaluate and consider any and all Proofs of Loss which the Insureds have previously submitted, or will submit in the future in connection with this claim . . . ." D.E. 246-5. Portofino failed to provide any additional sworn proofs of loss that would have put an insurer "in the ballpark" of its eventual $233 million claim. *See Garden-Aire*, 2013 WL 864570, at *8.

Accordingly, the Motion should be denied with respect to Plaintiffs' "participation" in appraisal and waiver of their rights under the policies.[61] Simply put, Portofino does not point to any record evidence showing that Plaintiffs explicitly waived any rights, let alone provide a "clear case" of waiver, and even if they did there is a dispute of material fact and "[s]ummary judgment is particularly unsuitable" on this issue. *Goodwin*, 939 So. 2d at 1104 (internal citation omitted).

**D.    Without any legal support, Portofino attempts to create a new legal standard for waiver.**

Ironically, without citation to any legal authority, Portofino creates its own "legal standard" for waiver: "Parties waive any objections to appraisal, including late notice, when they voluntarily proceed with the appraisal, as they did here."[62] According to Portofino a party is "married to the mechanism it chooses to resolve its disputed property claim."[63] This is simply not true.

Presumably, Portofino fabricates this legal standard based on its distortion of *Fla. Ins. Guar. Ass'n v. Hunnewell*, 173 So. 3d 988 (Fla. 2d DCA 2015), which is addressed in the following section of the Motion.[64] In that section, Portofino argues that:

---

[61] Again, regardless of whether Plaintiffs participated in the appraisal or not, insurers do not waive their ability to challenge coverage after the appraisal awards have been entered. *See Leeward Bay*, 306 So. 3d at 1243; *San Marco*, 379 So. 3d at 1104.

[62] D.E. 261, at p.37.

[63] *See id.*

[64] D.E. 261, at p.37-39

> The holding in *Hunnewell* shows that a right from an insurance policy can be waived by an act of participation in a process that is inconsistent with that right. For example, a party can waive the pre-conditions to appraisal by engaging in the appraisal process without first requiring compliance with such conditions. Additionally, implicit in *Hunnewell's* [sic] holding is that a party is married to the mechanism it chooses to resolve its disputed property claim.[65]

The foregoing contention does not present citations of authority, and, in fact, the argument is not supported by *Hunnewell*.[66] The relevant holding in *Hunnewell* was limited to the issue of when an insured waives the right to demand an appraisal after engaging in extensive litigation filed by the insured. *Id.* at 992-93. However, that is completely irrelevant to the issues in this case.

Furthermore, there is absolutely no support for Portofino's misguided statement that a party is "married to the mechanism it chooses to resolve its disputed property claim."[67] First, Plaintiffs did not invoke the appraisal, Portofino invoked appraisal as to the primary layer carriers only. Second, it goes without saying that parties frequently initiate property insurance litigation and many of those disputes resolve outside of litigation, be it at mediation, arbitration, or, in fact, appraisal. Likewise, cases that begin in appraisal often proceed to litigation after the fact. *See, e.g.*, *Leeward Bay*, 306 So. 3d at 1243; *San Marco*, 379 So. 3d at 1104. More to the point, it is black letter law in Florida that an insurer retains the right to challenge

---

[65] D.E. 261, at p.37-38.

[66] *Id.*

[67] *See id.*

26

coverage after an appraisal takes place, and Portofino does not properly or sufficiently allege that Plaintiffs waived that right. *See Leeward Bay*, 306 So. 3d at 1243; *San Marco*, 379 So. 3d at 1104.

In sum, Portofino's purported legal standard should be disregarded. More specifically, the Motion should be denied because the excess carriers did not participate in appraisal, and even if they did, Portofino has not reached the high bar required to show they are entitled to summary judgment on the issue of waiver.

**E.    Portofino dramatically increased the value of its claim in appraisal and, therefore, deprived Westchester of the opportunity to disagree.[68]**

Portofino dramatically increased the value of its claim and, therefore, deprived Westchester of the opportunity to disagree. More specifically, the policies require a disagreement between the parties before appraisal can be invoked.[69] As cited above, the appraisal provision requires that the "Insured and this Company fail to agree on the amount of loss."[70]

The dramatic increase in the amount of the claim at appraisal indicates that there was never an informed disagreement between the parties, rendering the appraisal invalid from its inception. Nevertheless, Portofino argues that it did not

---

[68] To the extent this Court finds that the appraisal is binding on the excess carriers, the excess carriers join in this argument.

[69] *See, e.g.*, D.E. 222-6, at EVANSTON000869.

[70] *See, e.g.*, *id*.

dramatically increase the claim because an appraisal submission is not a claim.[71] To this end, Portofino argues that:

> What the market Insurers falsely represent as a 'claim' by [Portofino] was an estimate by one of more than 20 experts who appeared before the Appraisal Panel. That estimate was not prepared by, approved by, or presented by, [Portofino].[72]

In addition, the Motion states that its appraiser:

> had no authority to, and didn't, make a claim submission for [Portofino]. Rather, [the appraiser] and his experts presented their independent and disinterested opinions *in the appraisal process* as to the amount of the *loss*.[73]

This transparent attempt to distance itself from the conduct of its appraiser does not warrant summary judgment in Portofino's favor. In fact, this logic would incentivize insureds to strategically inflate claim amounts after invoking appraisal and then throw their hands up and blame it on their appraiser. This is a blatant attempt by Portofino to avoid its post-loss obligations under the terms of the policies by hiding behind its appraiser's improper conduct. *See Vintage Bay Condo. Ass'n, Inc. v. Lexington Ins. Co.*, No. 2:18-cv-729-FtM-99CM, 2019 WL 211433, at *3 (M.D. Fla. Jan. 16, 2019) ("Here, because at least some post-loss obligations remain

---

[71] Indeed, the parsing of "claim" versus "loss" is a distinction without a difference. *See First Acceptance Ins. Co., Inc. v. At Home Auto Glass, LLC*, 365 So. 3d 1278, 1281 (Fla. 6th DCA 2023) ("Amount of loss" includes "determination of the amount of money to repair or replace the damaged property . . . .").

[72] D.E. 261, at p.43.

[73] D.E. 261, at p.43-44.

unsatisfied the Court denies [the insured's] request to compel appraisal at this time.").[74]

Moreover, in *Vintage Bay*, the court held that appraisal was improper because, when the insured submitted a significantly higher sworn proof of loss after invoking appraisal, the insurer "ha[d] not yet determined whether it dispute[d] (and to what extent it might dispute) [the insured's] proof of loss . . . ." *Id.*

Unlike *Vintage Bay*, the increased amount here was not sworn. Portofino never submitted a sworn proof of loss for the amount submitted by its appraiser, effectively ignoring the accountability and integrity controls built into the proof of loss requirement of the policies and Florida law. Notably, when Portofino "demand[ed] an appraisal of the loss" on December 11, 2020, it submitted sworn proofs of loss totaling $6,479,380.60.[75] However, on August 2, 2022, in advance of the appraisal hearing, Portofino, through its appraiser, submitted estimates totaling $233,030,601.80, which constitutes 96% of the total combined limit of liability under the applicable policies.[76] Regardless of whether it is characterized as the

---

[74] Likewise, Portofino wants the benefit of the fraudulently inflated insurance claim without any of the consequences that come with committing fraud. If Portofino's position was correct, appraisers would be free to commit all fraudulent conduct imaginable, and it would be insufficient to set aside an appraisal award, which, of course, is incorrect. *See Wilson v. Fed. Ins. Co.*, No. 5:19cv371-RH/MJF, 2022 WL 21694019, at *17 (N.D. Fla. June 20, 2022) ("An award may be vacated on the grounds set out in Florida Statutes § 682.13," which include "fraud.").
[75] D.E. 251-5.
[76] D.E. 251-28.

"amount of loss" or the "amount of claim," a 3,496.5% increase can safely be described as "dramatic."

This dramatic leap in claimed damage is indicative of the lack of "informed disagreement" between the parties, as required by the policies and Florida law. *Redlhammer v. ASI Preferred Ins. Corp.*, 337 So. 3d 421, 422-23 (Fla. 3d DCA 2021) ("[T]he record does not demonstrate that the parties have the requisite 'disagreement' informed by reasonable competing estimates . . . .").[77] Thus the disagreement requirement is not a mere "catchphrase" created by Plaintiffs from irrelevant caselaw. Rather it is a standard requirement of property insurance policies, including the policies at issue.[78] *See, e.g.*, *San Marco*, 379 So. 3d at 1102 ("Under American Coastal's policy, each party has the right to demand an appraisal where there is a disagreement as to the 'amount of loss.'").

In sum, Portofino dramatically increased the amount of the loss during the appraisal of its Hurricane Sally claim. This dramatic increase deprived Westchester of its ability to properly investigate the loss and determine that there was a legitimate disagreement, which is required by the policies. Accordingly, by no means has Portofino shown it is entitled to summary judgment with respect to this issue.

---

[77] *See, e.g.*, D.E. 222-6, at EVANSTON000869.
[78] *See* D.E. 261, at p.46.

**F.    Plaintiffs are not seeking to peek behind the appraisal curtain.**

Finally, Portofino's legal standard section touches on the issue of whether the Court or the appraisal panel has the jurisdiction to determine the amount of loss.[79] Despite Portofino's insistence to the contrary, Plaintiffs have never argued that this Court should "tell the appraisal panel to limit the amount of the loss."[80] To the contrary, Plaintiffs agree that "the determination of the 'amount of loss' is the sole and exclusive responsibility of the appraisal panel." [81] However, Portofino's appraiser did not, at any point, submit an estimate for damages. Instead, as testified to by the estimator used by Portofino's appraiser, Portofino submitted an "a la carte" menu for the umpire to pick and choose certain line items.[82] This is either fraud or noncompliance with the appraisal provision.

## <u>CONCLUSION</u>

As detailed throughout, the Motion itself illustrates that Portofino is not entitled to summary judgment. Specifically, the Motion is procedurally defective and its lengthy narrative is indicative of the fact that, at a minimum, genuine disputes of material fact exist. Accordingly, the Motion should be denied.

---

[79] D.E. 261, at p.40.

[80] *Id.*

[81] *See* D.E. 261, a p.40 (citing *Sunshine State Ins. Co. v. Rawlins*, 34 So. 3d 753 (Fla. 3d DCA 2010)).

[82] D.E. 228-2, at p.58:11-14 ("Again, that's what's reflected and what we were tasked with, is producing a la carte pricing so that later on once the scope was determined and awarded by the umpire, he had the pricing in front of him.").

**WHEREFORE**, Plaintiffs respectfully request that this Court enter an Order denying the Motion, along with awarding Plaintiffs any further relief that this Court deems just and proper.

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.1(F), the undersigned certifies that this motion contains 7,977 words, excluding case style, signature block, and certificate of service.

Respectfully submitted this 16th day of December 2024.

*/s/ Aaron Konstam*
Eric A. Hiller
Florida Bar No. 27920
eric.hiller@kennedyslaw.com
Aaron P. Konstam
Florida Bar No. 104765
aaron.konstam@kennedyslaw.com
Bryan Walsh
Florida bar No. 1019565
bryan.walsh@kennedyslaw.com
**Kennedys CMK LLP**
1111 Brickell Avenue, Suite 1300
Miami, Florida 33131
Telephone: (305) 371-1111
*Counsel for Plaintiff James River Insurance Company*

*/s/ John David Dickenson*
John David Dickenson
Florida Bar No. 575801
jdickenson@cozen.com
Evan M. Holober
Florida Bar No. 1012320
eholober@cozen.com
**Cozen O'Connor**
1801 N. Military Trail, Suite 200
Boca Raton, FL 33431
Telephone: (561) 515-5250
Facsimile: (561) 515-5230
*Counsel for Plaintiffs Westchester Surplus Lines Insurance Company, Arch Specialty Insurance Company, AXIS Surplus Insurance Company, Evanston Insurance Company, Aspen Specialty Insurance Company, and Maxum Indemnity Company*

_/s/ Heidi Hudson Raschke_
Heidi Hudson Raschke
Florida Bar No. 61183
hraschke@carltonfields.com
**Carlton Fields, P.A.**
4221 W. Boy Scout Blvd, Suite 1000
Tampa, Florida 33607
Telephone: 813-223-7000
Facsimile: 813-229-4133

-and-

Amanda D. Proctor (_admitted pro hac vice_)
Georgia Bar No. 776848
David H. McConnell III
Georgia Bar No. 676308
**CARLTON FIELDS, P.A.**
1230 Peachtree Street, NE,
Suite 900
Atlanta, Georgia 30309
Telephone: 404-815-3400
aproctor@carltonfields.com
dmcconnell@carltonfields.com

_Counsel for Plaintiff Homeland Insurance Company of New York_

_/s/ David C. Bibb_
David C. Bibb
Florida Bar No. 190330
dbibb@rolfeshenry.com
wgonzalez@rolfeshenry.com
**Rolfes Henry Co., LPA**
3191 Maguire Boulevard, Suite 160
Orlando, FL 32803
Telephone: (407) 284-4990

_/s/ Jack R. Reiter_
Jack R. Reiter, Esq.
Florida Bar No.: 0028304
jack.reiter@gray-robinson.com
Jordan S. Kosches, Esq.
Florida Bar No.: 49881
jordan.kosches@gray-robinson.com
**GrayRobinson, P.A.**
333 SE 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887
_Counsel for Plaintiff Colony Insurance Co._

_/s/ Wayne D. Taylor_
Wayne D. Taylor, Esq.
Georgia Bar No. 701275
_Admitted in USDC NDFL_
wtaylor@mfllaw.com
**Mozley, Finlayson & Loggins LLP**
1050 Crown Pointe Parkway, Suite 1500
Atlanta, GA 30338
Telephone: (404) 256-0700
Facsimile: (404) 250-9355

Brian P. Henry, Esq.
Florida Bar No. 0089069
bhenry@rolfeshenry.com
kdeglman@rolfeshenry.com
**Rolfes Henry Co., LPA**
5577 Broadcast Court
Sarasota, FL 34240
Telephone: (941) 684-0100
*Counsel for Plaintiffs Independent Specialty*
*Insurance Company, Interstate Fire & Casualty Company, and Lloyd's of London*

Elizabeth D. Salinas, Esq.
Florida Bar No. 113394
esalinas@mfllaw.com
**Mozley, Finlayson & Loggins LLP**
4767 New Broad Street
Orlando, Florida 32814
Telephone: (404) 256-0700
*Counsel for Plaintiff Landmark American Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 16, 2024, I electronically filed the foreground document with the Clerk of Court using CM/ECF, which will automatically serve all counsel of record.

/s/ Bryan Walsh
Bryan Walsh