## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### (Pensacola Division)

### Case No.: 3:23-cv-00453-MCR-HTC

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, ET AL.

      Plaintiffs,

v.

PORTOFINO MASTER HOMEOWNERS
ASSOCIATION INC., a Florida not-for-
profit Corporation, ET AL.

      Defendants.

_____ /

## CERTAIN PLAINTIFFS' REPLY IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT ON LATE NOTICE

Plaintiffs Independent Specialty Insurance Company ("ISIC"), Interstate Fire

& Casualty Company ("IFC"), Lloyd's of London (Consortium #9226) ("Lloyd's"),

Evanston Insurance Company ("Evanston"), Aspen Specialty Insurance Company

("Aspen"), Colony Insurance Company ("Colony"), Landmark American Insurance

Company ("Landmark"), James River Insurance Company ("JRI"), and Maxum

Indemnity Company ("Maxum") (collectively "Excess Carriers"), file this Reply to

Portofino's[1] Opposition to Plaintiffs' Motion for Partial Summary Judgment on Late

---

[1] "Portofino" refers to Portofino Master Homeowners Association at Pensacola Beach Inc.,
Portofino Tower One Homeowners Association at Pensacola Beach Inc., Portofino Tower Two

Notice [D.E. 291] and in support state as follows:

## **INTRODUCTION**

The undisputed facts support the Excess Carriers' position—that neither Portofino, nor Portofino's agent, A.J. Gallagher Risk Management Services ("Gallagher"), provided timely notice (or, in some cases, any notice) of the loss to the Excess Carriers.

Nevertheless, Portofino attempts to avoid summary judgment by presenting misleading arguments concerning agency and prejudice, none of which are backed by Florida law. Likewise, Portofino incorrectly states that it complied with JRI's additional notice requirements despite never providing any notice to JRI. Simply put, providing notice to Gallagher, Jeff Hellman ("Hellman"), or Cozen O'Connor ("Cozen") does not constitute notice to the Excess Carriers.

Portofino also fails to rebut the presumption of prejudice in favor of the Excess Carriers. Instead, it argues that Excess Carriers could not have been prejudiced because the *primary carriers*[2] investigated the loss. This position is insufficient as a matter of law and ignores that the Excess Carriers lost an opportunity to consider the appraisal demand, participate in the selection of an

---

Homeowners Association at Pensacola Beach Inc., Portofino Tower Three Homeowners Association at Pensacola Beach Inc., Portofino Tower Four Homeowners Association at Pensacola Beach Inc., and Portofino Tower Five Homeowners Association at Pensacola Beach Inc.

[2] Westchester Surplus Lines Insurance Company, Endurance American Specialty Insurance Company, Everest Indemnity Company, Princeton Excess Surplus Lines Insurance Company.

appraiser and umpire, and object to Portofino's selection of its appraiser. Accordingly, summary judgment should be granted in the Excess Carriers' favor.

## I.    Providing notice to Portofino's *own agent* is not proper notice.

Portofino does not dispute that it had a duty to notify Plaintiffs. Rather, Portofino has taken the indefensible position that it discharged this duty by notifying its *own agent*–Gallagher–and that it had no further responsibility to ensure that the Excess Carriers were provided notice.

Portofino is wrong. Under Florida law, Gallagher, as Portofino's insurance broker, is Portofino's agent, acting "as a middleman between the insured and the insurer." *Tower Ins. Co. of N.Y. v. Lormejuste*, No. 4:11cv226-RS/CAS, 2012 WL 1986881, at *6 (N.D. Fla. Apr. 23, 2012); *see also Ospina v. Sec. Nat'l Ins. Co.*, 739 So. 2d 633, 633 (Fla. 3d DCA 1999) ("well-settled that an insurance broker is generally the agent of the insured") (internal citations omitted). In fact, the Master Policy specifically identifies Gallagher as Portofino's agent for purposes of transmitting notice *to* each carrier.[3] This was confirmed by Gallagher's corporate representative during her deposition.[4]

---

[3] *See, e.g.*, D.E. 222-4, ¶44 ("… [T]he Insured shall report such loss … to … Gallagher … *for transmission to the designated loss adjuster and to this Company*.") (emphasis added).

[4] D.E. 244-1, 93:1-3: ("Q You were assisting Portofino in providing notice to the carriers; correct? A Correct.").

Despite Gallagher's undisputed role as Portofino's agent, Portofino has taken the remarkable position that once it notified Gallagher of its loss, Gallagher's knowledge was then somehow imputed to each Excess Carrier. This position is backwards. "[I]t is axiomatic under Florida law … that knowledge … an agent acquires while acting within the course and scope of his authority is generally imputed to his principal," *i.e.*, Portofino. *See Dye v. Tamko Bldg. Prods.*, 908 F.3d 675, 685 (11th Cir. 2018) (internal citations omitted). Thus, Gallagher's knowledge that it was transmitting notice to each Excess Carrier in piecemeal fashion over a considerable length of time is imputed to Portofino and not the Excess Carriers.

Here, Portofino had the unambiguous duty to provide notice to each carrier. "Notice is considered "a condition precedent to coverage, and … failure to provide timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy." *Aseff v. Catlin Specialty Ins. Co.*, 115 F. Supp. 3d 1364, 1369 (S.D. Fla. 2015) (internal citations and quotations omitted).

The act that Portofino delegated the responsibility to Gallagher does not fulfill this duty under Florida law. *Ospina*, 739 So. 2d at 633 ("[N]otice to the insurance broker [is] insufficient to impute knowledge to the carrier."). As principal, it was incumbent on Portofino to ensure its agent, Gallagher, transmitted timely notice to each carrier. Gallagher's failure to provide notice falls squarely on Portofino. *See*

*Essex Ins. Co. v. Zota,* 985 So. 2d 1036, 1046 (Fla. 2008) ("[A]cts of a broker are imputable to the insured.") (internal citations omitted). Accordingly, because notice to Gallagher does not satisfy the terms of the policies, the Excess Carriers are entitled to summary judgment.

## II.   Despite Portofino's continued use of the phrase, there was no "Market Counsel" representing all carriers.

Portofino bafflingly argues that Cozen acted as counsel for "the Market insurers," which it contends include all Plaintiffs. Portofino also argues, without any factual or legal support, that Cozen "assumed the duty to keep the Market Insurers informed as to the amount of the loss."[5] However, it is unrebutted that Cozen was initially retained by the Primary Layer Carriers and later by Arch, Aspen, AXIS, Evanston, and Maxum. The remaining carriers never retained Cozen.

Further, Cozen never acted as the apparent agent of any carriers that Cozen did not represent. Nor could Cozen have acted as an apparent agent of any carrier before that carrier actually retained Cozen as counsel, or before that carrier even knew about the claim. While not discussed by Portofino, apparent agency requires: "(1) a representation by the principal; (2) reliance on that representation by a third person…; and (3) detriment to the third party from such reliance." *Nat'l Indem. Co. v. Consol. Ins. Servs.*, 778 So. 2d 404, 407 (Fla. 4th DCA 2001) (internal citations

---

[5] D.E. 291, p.15.

omitted). Importantly, *the principal* must do or say something to hold out the person as its agent. *Id.* at 407-08.[6]

Portofino fails to point to any evidence demonstrating that any of the carriers Cozen did not represent ever held out Cozen as their attorney or agent. Indeed, no such evidence exists. Portofino, as the "party who asserts and relies on any agency relationship has the burden of proving its existence, as well as its scope." *Eberhardy v. General Motors Corp.*, 404 F. Supp. 826, 831 (M.D. Fla. 1975). Portofino fails to meet this burden.[7]

### III.   Hellman did not have authority to give or receive notice on behalf of any of the Excess Carriers.

Portofino consistently argues that it was absolved of its notice obligations once Hellman, an independent adjuster, became aware of the claim. According to Portofino, the fact that Hellman was listed on the policy as the designated loss adjuster somehow deems him to be each Plaintiff's agent. This is a fiction and not supported by the terms of the polices or Florida law. As with Cozen, Portofino fails

---

[6] Mr. Dickenson also never held himself out as an agent for any Plaintiff he did not represent, nor did Hellman ever hold himself out as an agent for any carrier who Portofino had not placed on notice of the loss. Despite Portofino's statements to the contrary, no factual or legal support for these erroneous statements exists.

[7] Portofino argues that because Cozen informed some carriers of the loss, Portofino was relieved of its notice obligations. This position, however, has already been rejected by Magistrate Cannon during oral arguments and her accompanying order on the motions to quash subpoenas directed to Cozen. D.E. 277-4, 59:18-20 ("THE COURT: [W]hether or not Cozen … told anyone or g[ave] anyone notice would not take away [Portofino's] obligation."); D.E. 206, p.13 ("[W]hether the Cozen Firm directed or chose to provide notice to the insurers is irrelevant because it does not absolve [Portofino] of [its] own contractual obligations.").

to meet its burden with respect to the existence of Hellman's agency. *See Eberhardy*, *supra* Section II. Simply put, Hellman was not an agent for any Excess Carrier.[8]

Even if he was an agent as Portofino suggests, which is disputed, Portofino ignores the unambiguous policy language. None of the policies provide a grant of authority for him to act on behalf of any carrier for purposes of notice. At best, any agency, which the Excess Carriers dispute, is limited to adjusting claims. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1253 (11th Cir. 2014) (Agent's scope of "authority is limited to what the principal has authorized the agent to do.") (internal citations omitted). Thus, there is absolutely no support for Portofino's contention that Hellman was any carrier's general agent for anything, let alone notice.

## IV.    **The fact that Portofino did not know the extent of the loss does not excuse its obligation to provide timely notice.**

Portofino does not contest that the Excess Carriers did not receive notice of the loss "as soon as practicable." Nevertheless, Portofino urges that it did not owe prompt notice to the Excess Carriers because Portofino had not determined the extent of its loss.

Florida law does not recognize such an exception from a policy's notice requirements. Rather, "an insured must give notice … without waiting for the full

---

[8] D.E. 224-1, 45-46:14-6 ("Q. [Y]ou were the adjuster for the market participants on this claim? … A. To the primary layer, yes. … Q. [A]re you claiming that you had no responsibilities and no duties to anyone other than the primary layer …? A. [T]he claim wasn't presented to anybody other than the primary layer.").

extent of the damages to become apparent." *1500 Coral Towers Condo. Ass'n v. Citizens Prop. Ins. Corp.,* 112 So. 3d 541, 543 (Fla. 3d DCA 2013). Thus, Portofino's lack of knowledge of the extent of damage does not excuse its undisputed failure to provide timely notice–or, in some cases, any notice at all–to the Excess Carriers.

## V.    <u>The Excess Carriers did not waive any rights.</u>

Portofino incorrectly argues that the Excess Carriers waived any late notice defense because they "participated" in appraisal. Though the Excess Carriers' participation–or, more accurately, lack thereof–is discussed more thoroughly in D.E. 251, it bears repeating that the Excess Carriers did not explicitly or implicitly waive any rights.

Waiver is the voluntary relinquishment of a known right and can be evidenced by "conduct warranting an inference that a known right has been relinquished." *Torres v. K-Site 500 Assocs.,* 632 So.2d 110, 112 (Fla. 3d DCA 1994). The Excess Carriers filed this lawsuit in January 2023, while the appraisal was underway, seeking to vitiate that appraisal. In denying Plaintiffs' motion to stay the appraisal, this Court noted that Plaintiffs "retain all available rights to assert coverage issues after the appraisal awards are entered."[9] Even if the Excess Carriers had actively participated in the appraisal process—and they did not—they would still retain any coverage defenses under Florida law.

---

[9] D.E. 78, p.4.

## VI.    Portofino failed to rebut the presumption of prejudice

Portofino argues that the Excess Carriers were not prejudiced simply because the primary carriers were able to investigate the loss. This position fails as a matter of law. *See Yacht Club on the Intracoastal Condo. Ass'n v. Lexington Ins. Co.*, 599 F. App'x 875, 879 (11th Cir. 2015) ("The ability to offer testimony as to causation alone does not satisfy the purpose of prompt notice and therefore cannot vitiate the prejudice suffered ….").

Further, Portofino's position ignores that late notice–or absence of notice– deprived the Excess Carriers of an opportunity to consider the appraisal demand, participate in the selection of an appraiser and umpire, or object to Portofino's selection of Mr. Keys as its appraiser, whose improper conduct is highlighted throughout numerous filings before the Court.[10]

Portofino has failed to show any evidence rebutting the presumption of prejudice in favor of the Excess Carriers. Accordingly, summary judgment should be awarded in favor of the Excess Carriers. *See id.* at 881 (Insured has burden "to show lack of prejudice where the insurer has been deprived of the opportunity to investigate….") (internal citations and quotations omitted).

---

[10] *See, e.g.*, D.E. 266.

## VII.    Portofino failed to comply with JRI's Notice Endorsement.

Portofino mistakenly argues that compliance with the Master Policy's notice provision *or* JRI's "Notice of Loss, Damage, or Occurrence" endorsement ("Notice Endorsement") somehow satisfies the notice requirements of the JRI policy.[11] However, it is basic insurance law that when an endorsement "is inconsistent with the general policy, the endorsement generally controls." *Tudor Ins. Co. v. Am. Cas. Co. of Reading Pa.*, 274 F. Supp. 3d 1278, 1285 (N.D. Fla. 2017) (internal citations omitted).

Regardless, Portofino failed to comply with both the Master Policy–as addressed above–and the Notice Endorsement. The Notice Endorsement provides two independent scenarios where Portofino was required to "immediately report … to [JRI] or its authorized representative any loss, damage or occurrence that will, or is likely to result in":

1. "a claim under this policy"; or

2. "the exhaustion of 50% or more of the limits of the underlying insurance."[12]

Portofino failed to provide timely notice of both scenarios. It is undisputed that neither Portofino nor Gallagher ever reported the claim to JRI, let alone provided

---

[11] D.E. 291, p.31 ("[W]hether we look at paragraph 44 of the Master Policy, or the JRI endorsement, timely notice was given.").

[12] D.E. 104-1, p.454.

"immediate" notice as required by the endorsement.[13] Instead, Portofino argues that Hellman was somehow JRI's "authorized representative," and because he was aware of the claim, Portofino is relieved of its notice obligations. This logic is flawed for three primary reasons.

### A.    Hellman was never JRI's agent.

As discussed above, Hellman was never authorized to act as an general agent for any Excess Carrier–including JRI–let alone as an agent for notice. Thus, for the reasons addressed above, any notice given to Hellman does not satisfy the notice requirements of the JRI policy.[14]

Likewise, Portofino's argument that Hellman was JRI's "authorized representative" fails. Again, Portofino relies on the fact that Hellman is listed as the designated adjuster to confer duties beyond what he is expressly limited to do, *i.e.*, adjust the claim.[15] *See Osorio*, *supra* Section III.

Portofino ignores that on two occasions the policy expressly identifies JRI's authorized representatives, none of which are Hellman.[16] Moreover, the Notice Endorsement directs the insured to http://www.jamesriverins.com/claims for "[a]dditional information regarding reporting losses."[17] There, JRI identifies certain

---

[13] D.E. 248, p.7 n.25.
[14] Similarly, pursuant to Section II., *supra*, Cozen was not JRI's agent. Thus, any notice to Cozen, does not relieve Portofino of its notice obligations to JRI.
[15] *See, e.g.*, D.E. 104-1, p.430.
[16] D.E. 104-1, p.442, 451.
[17] *Id.* p.454.

types of claims that should be reported to third-party claims administrators

("TPAs").[18] Thus, the "authorized representatives" referenced in the Notice

Endorsement are those individuals expressly identified as "authorized

representatives" and the TPAs, not Hellman. Portofino's position strains credulity.

**B.    The Notice Endorsement is not superfluous.**

Next, if Portofino's position is adopted, it would render the notice provisions

in each excess policy superfluous. More specifically, Portofino would never have to

notify the Excess Carriers whenever the primary carriers assign Hellman to adjust a

claim. Because a policy "should not be read so as to make one section superfluous

… i.e., not interpreted in such a way as to render a provision meaningless,"

Portofino's position should be rejected. *See Port Consol., Inc. v. Int'l Ins. Co. of

Hannover, PLC*, 826 F. App'x 822, 827 (11th Cir. 2020) (internal citations and

quotations omitted). Further, to the extent the Notice Endorsement's requirements

conflict with the provision naming Hellman as the designated adjuster, the Notice

Endorsement controls.

---

[18] *Id.*

### C.    Portofino failed to provide notice when it knew 50% of the limits below JRI's policy was likely to be exhausted

Portofino further ignores the fact that the Notice Endorsement also requires immediate notice of "any loss, damage or occurrence that will, or is likely to result in … the exhaustion of 50% or more of the limits of the underlying insurance."[19]

It is undisputed that Portofino breached this requirement. Portofino does not dispute that in March 2021, it gave notice to all excess carriers up to the $50 million layer, *i.e.*, JRI's layer.[20] By giving notice to these carriers—especially those between the $25 million to $50 million—Portofino knew that the claim was "likely to result in … the exhaustion of 50% or more of the limits" below JRI. Thus, Portofino's failure to give JRI notice in March 2021 breached its obligations under the Notice Endorsement.

### D.    Portofino is not excused from its failure to comply with JRI's Notice Endorsement.

Portofino attempts to sidestep its failure to notify JRI by clinging to the Notice Endorsement's statement that "[f]ailure to give notice of any such loss which, at the time of occurrence, did not appear to involve this policy but which, at a later date, would appear to give rise to a claim hereunder, shall not invalidate such claim."[21] This statement, however, does not apply to the present claim.

---

[19] *Id.*
[20] D.E. 248-10, D.E. 248-11.
[21] *See* D.E. 291, p.31.

First, the statement contemplates later notice of "a claim hereunder"; however, Portofino never provided notice to JRI.[22] By the time JRI became aware of the loss from other sources in March 2022, the appraisal was almost completed and JRI was severely prejudiced.[23] Accordingly, because Portofino failed to provide notice to JRI, it failed to comply with the terms of the JRI policy.

Further, Portofino's position ignores that it believed a claim "[was] likely to result in … the exhaustion of 50% or more of the [underlying] limits" in March 2021, but failed to notify JRI when it notified underlying carriers. More specifically, once Portofino notified the $25-$50 million layer, there was an independent basis to provide notice irrespective of whether it was likely to trigger the JRI policy. Thus, the failure to put JRI on notice at that time is not excused by the plain reading of the endorsement.

In sum, with respect to JRI's Notice Endorsement, it is uncontroverted that Portofino never provided notice to JRI and otherwise failed to comply with the endorsement.

## **CONCLUSION**

Portofino has failed to show that a genuine dispute of material fact exists, summary judgment should be granted in favor of the Excess Carriers. It is undisputed

---

[22] *See* D.E. 248, p.7 n.25.
[23] *See* D.E. 248.

that Portofino failed to provide timely notice to the Excess Carriers, instead relying on notice to its insurance broker and a loss adjuster. This is insufficient to rebut the presumption of prejudice under Florida law.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Honorable Court grant their Motion for Summary Judgment and provide any other relief this Court deems just.

## CERTIFICATE OF WORD COUNT

Pursuant to N.D. Fla. Local Rule 7.1(F), the undersigned certifies that this motion contains 3,193 words, excluding case style, signature block, and certificate of service.

Date: January 10, 2025          Respectfully submitted,

By:    */s/ David C. Bibb*
       David C. Bibb (Fla. Bar No. 0190330)
       Brian P. Henry, Esq. (Fla. Bar No. 0089069)
       ROLFES HENRY COMPANY, Co., LPA
       3165 McCrory Place, Suite 174
       Orlando, Florida 32803
       Telephone:   (407) 284-4990
       Email:       dbibb@rolfeshenry.com
       rkitchens@rolfeshenry.com
       bhenry@rolfeshenry.com
       kmcclintock@rolfeshenry.com

       *Attorneys for Plaintiffs Interstate Fire & Casualty*
       *Company, Independent Specialty Insurance*
       *Company, and Lloyd's of London*

*/s/ John David Dickenson*
John David Dickenson
Florida Bar No. 575801
jdickenson@cozen.com
Alexandra J. Schultz
Florida Bar No. 122100
aschultz@cozen.com
Juan P. Garrido
Florida Bar No. 118678
jgarrido@cozen.com
**COZEN O'CONNOR**
1801 N. Military Trail, Suite 200
Boca Raton, FL 33431
Telephone: (561) 515-5250

*Counsel for Plaintiffs Westchester Surplus Lines
Insurance Company, Arch Specialty Insurance
Company, AXIS Surplus Insurance Company,
Evanston Insurance Company, Aspen Specialty
Insurance Company, and Maxum Indemnity*


/s/ Jack R. Reiter
Jack R. Reiter, Esq.
Florida Bar No.: 0028304
jack.reiter@gray-robinson.com
Jordan S. Kosches, Esq.
Florida Bar No.: 49881
jordan.kosches@gray-robinson.com
**GrayRobinson, P.A.**
333 SE 2nd Avenue, Suite 3200
Miami, FL 33131
Telephone: (305) 416-6880

*Counsel for Plaintiff Colony Insurance Co.*

*/s/ Elizbeth D. Salinas*
ELIZABETH D. SALINAS
Florida Bar No. 113394
MOZLEY, FINLAYSON & LOGGINS LLP
4767 New Broad Street
Orlando, FL 32814
(407) 514-2765 Ext. 2317
esalinas@mfllaw.com

-and-

WAYNE D. TAYLOR
Georgia Bar No. 701275
*Admitted pro hac vice*
MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway, Suite 1500
Atlanta, GA 30338
Tel: (404) 256-0700
wtaylor@mfllaw.com
*Counsel for Plaintiff Landmark American*
*Insurance Company*


*/s/ Heidi Hudson Raschke*
Heidi Hudson Raschke
Florida Bar No. 61183
hraschke@carltonfields.com
Madison E. Wahler
Florida Bar No. 1019015
mwahler@carltonfields.com
**CARLTON FIELDS, P.A.**
4221 W. Boy Scout Blvd, Suite 1000
Tampa, Florida 33607
Telephone: 813-223-7000

-and-

18

Amanda D. Proctor (*admitted pro hac vice*)
Georgia Bar No. 776848
**CARLTON FIELDS, P.A.**
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia 30309
Telephone: 404-815-3400
aproctor@carltonfields.com

*Counsel for Plaintiff Homeland Insurance*
*Company of New York*

/s/ Aaron Konstam
**ERIC A. HILLER**
Florida Bar No. 27920
eric.hiller@kennedyslaw.com
**AARON KONSTAM**
Florida Bar No. 104765
aaron.konstam@kennedyslaw.com
**BRYAN M. WALSH**
Florida Bar No. 1019565
Bryan.walsh@kennedyslaw.com
**JUNAID N. SAVANI**
Florida Bar No. 88816
Junaid.savani@kennedyslaw.com
**ILIRIANA FETEJA**
Florida Bar No. 1039423
Iliriana.Fteja@kennedyslaw.com
**Kennedys CMK LLP**
1111 Brickell Avenue, Suite 1300
Miami, FL 33131
Telephone: (305) 371-1111

*Counsel for Plaintiff James River*
*Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and accurate copy of the foregoing has been served via e-mail on counsel for all parties at the email addresses below or has been served by automatic service by the Court's e-filing system, on this 16th day of December 2024:

/s/ *David C. Bibb*

David C. Bibb (Fla. Bar No. 190330)

## SERVICE LIST:

John David Dickenson, Esq.
Alexandra Jordan Schultz, Esq.
Juan P. Garrido, Esq.
**COZEN O'CONNOR**
1801 N. Military Trail, Suite 200
Boca Raton, Florida 33431
Emails: jdickenson@cozen.com
        aschultz@cozen.com
        jgarrido@cozen.com
        lkrtausch@cozen.com

*Attorneys for Plaintiffs Westchester Surplus Lines Insurance Company, Arch Specialty Insurance Company, AXIS Surplus Insurance Company, Evanston Insurance Company, Aspen Specialty Insurance Company, and Maxum Indemnity Company*

Wayne D. Taylor, Esq.
Sarah M. McKimm, Esq.
**MOZLEY, FINLAYSON & LOGGINS LLP**
1050 Crown Pointe Parkway, Suite 1500
Atlanta, Georgia 30338
Email: wtaylor@mfllaw.com
   smackimm@mfllaw.com

----- and -----

Elizabeth D. Salinas, Esq.
**MOZLEY, FINLAYSON & LOGGINS LLP**
4767 New Broad Street
Orlando, Florida 32814
Email: esalinas@mfllaw.com

*Attorneys for Plaintiff Landmark American Insurance Company*

Heidi Hudson Raschke, Esq.
Madison E. Wahler, Esq.
**CARLTON FIELDS, P.A.**
4221 W. Boy Scout Blvd., Suite 1000
Tampa, Florida 33607
Emails: hraschke@carltonfields.com
       mwahler@carltonfields.com
       lharrell@carltonfields.com
       tpaecf@cfdom.com

----- and -----

Amanda D. Proctor, Esq.
Georgia Bar No. 776848
**CARLTON FIELDS, P.A.**
1230 Peachtree Street, N. E.
Suite 900
Atlanta, Georgia 30309
Email: aproctor@carltonfields.com

*Attorneys for Plaintiff Homeland Insurance Company of New York*

Jack R. Reiter, Esq.
Jordan S. Kosches, Esq.
**GRAY ROBINSON, P.A.**
333 SE 2nd Avenue, Suite 3200
Miami, Florida 33131
Emails: jack.reiter@gray-robinson.com
        jordan.kosches@gray-robinson.com

*Attorneys for Plaintiff Colony Insurance Company*

Eric A. Hiller, Esq.
Aaron Konstam, Esq.
Bryan M. Walsh, Esq.
Junaid N. Savani, Esq,
Iliriana Fteja, Esq.
**Kennedys CMK LLP**
1111 Brickell Avenue, Suite 1300
Miami, Florida 33131
Emails: eric.hiller@kennedyslaw.com
        aaron.konstam@kennedyslaw.com
        bryan.walsh@kennedyslaw.com
        junaid.savani@kennedyslaw.com

*Counsel for Plaintiff James River Insurance Company*

Edward P. Fleming, Esq.
Matthew A. Bush, Esq.
Aaron T. McCurdy, Esq.
**McDonald Fleming, LLP**
719 S. Palafox Street
Pensacola, Florida 32502
Emails: flemingservice@pensacolalaw.com
        cat@pensacolalaw.com
        mabush@pensacolalaw.com
        bushservice@pensacolalaw.com
        amccurdy@pensacolalaw.com
        asluberti@pensacolalaw.com

---- and -----

Lindsey Miller-Hailey, Esq.
**McDonald Fleming, LLP**
1230 Mitchell Avenue
Tallahassee, Florida 32303
Email: lmillerhailey@tallahasseelaw.org

*Co-Counsel for Defendants*

Kurtis Jay Keefer, Esq.
**GOEDE, DEBOEST & CROSS, PLLC**
6609 Willow Park Drive, Suite 201
Naples, FLORIDA 34109
Emails: kkeefer@gadclaw.com
        curbanowski@gadclaw.com

*Co-Counsel for Defendants*

Charles F. Beall, Jr., Esq.
MOORE, HILL & WESTMORELAND, P.A.
350 West Cedar Street
Maritime Place, Suite 100
Pensacola, Florida 32502
Email: cbeall@mhw-law.com
  tstokes@mhw-law.com

*Co-Counsel for Defendants*