# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| WESTCHESTER SURPLUS LINES INSURANCE COMPANY, et al.,<br><br>    Plaintiffs,<br>v.<br><br>PORTOFINO MASTER HOMEOWNERS ASSOCIATION, INC., a Florida not-for-profit Corporation, et al.,<br><br>    Defendants. | Case No. 3:23-cv-00453-MCR-HTC |

## PLAINTIFF LANDMARK AMERICAN INSURANCE COMPANY'S REPLY TO DEFENDANTS' RESPONSE TO LANDMARK'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Landmark American Insurance Company ("Landmark"), files this reply to defendants' response [D.E. 295] to Landmark's motion for summary judgment [D.E. 241], respectfully showing the Court as follows:

## INTRODUCTION

Landmark seeks a judicial declaration that Landmark is not bound by the appraisal award. Defendants allege that Landmark breached the insurance contract by failing to pay the appraisal award and failing to adjust the loss. ([D.E. 108] at 97, 157, 159 ¶ 274). Landmark seeks summary judgment on the following grounds:

(1) The Landmark excess policy's Appraisal Clause Amendment precludes defendants from enforcing the appraisal award against Landmark; and

(2) Landmark did not breach the insurance contract, since Landmark had no duty under its excess policy to adjust a loss not reported to Landmark, and Landmark had no duty to pay the appraisal award.

(Landmark's Motion [D.E. 241]).

In response to Landmark's motion, defendants pretend that Landmark moved for summary judgment here based upon defendants' late notice of the loss and failure to cooperate. However, Landmark's summary judgment motion did not address those grounds. Consequently, the vast majority of defendants' arguments and facts are unresponsive and irrelevant to Landmark's motion.

## STATEMENT OF FACTS

Landmark will attempt to bring clarity to the tangle of unsupported factual assertions in defendants' response, most of which are unresponsive, irrelevant, and/or a mischaracterization of the evidence.

### I. Defendants' Demand for Appraisal

On December 11, 2020, a mere three months after the hurricane of September 20, 2020, defendants through their legal counsel Edward Fleming demanded appraisal of the loss in a letter addressed *only to the Primary Layer Carriers.* ([D.E. 241-5, 241-9]. SOF 15[1]). Fleming's letter of December 11, 2020, was *addressed to the Primary Layer Carriers only* - Westchester Surplus Lines Insurance, Endurance

---

[1] SOF 15 incorrectly states the letter is dated December 20, 2020 -- it actually is dated December 11, 2020.

American Specialty Insurance Company, Everest Indemnity Insurance Company, AmWINS Special Risk Underwriters/The Princeton Excess and Surplus Lines Insurance Company - and their adjuster Jeff Hellman. (*See* [D.E. 241-9], at 2-3, stating "[t]his letter is sent on behalf of the Named Insureds on <u>those policies</u>," referencing the Primary Layer Carriers' policies) (Emphasis added)).

Defendants' Rule 30(b)(6) representative Kimberly Lamar admitted under oath that Fleming's letter was <u>not</u> addressed to Landmark or any other Excess Layer Carrier. ([D.E. 241-2] at 3, 88:6-25; SOF 9). It also is undisputed that defendants did <u>not</u> later send a copy of Fleming's letter to Landmark, its agent(s) or representative(s). ([D.E. 241-1], ¶ 8; SOF 17). Thus, Fleming's letter does *not* constitute a written demand by defendants that Landmark submit to appraisal, as required by the Landmark excess policy's Appraisal Clause Amendment.

Defendants submitted in support of their demand for appraisal sworn proofs of loss totaling $6,479,380.60. ([D.E. 251-5]). This amount was far below the level at which the Landmark excess policy's layer of coverage attaches -- $50 million. (*See* [D.E. 1-1], at 671, 680; SOF 1). Defendants in their counterclaim acknowledge that, "[a]t the time of Portofino's [defendants'] demand for appraisal, the dispute involved less than the $15 million covered by first-tier carriers." ([Doc. 108] at 104, ¶ 37). Thus, defendants admit their initial claim and demand for appraisal did *not*

3

implicate the Landmark excess policy. This admission *in judicio* is binding upon defendants.

Defendants acknowledge that Fleming's December 11, 2020 letter was the only appraisal demand that defendants made to *any* insurer. ([D.E. 241-2] at 4, 153:14-19; SOF 16). Defendants agreed that "there is no written request from Portofino [defendants] asking Landmark to stipulate to appraisal." ( [D.E. 241-2] at 10, 228:4-8; SOF 18). Thus, there is no dispute that defendants did not demand appraisal from Landmark under paragraph 50 of the master property policy form or the Landmark excess policy's Appraisal Clause Amendment.

## II.   The Primary Layer Carriers' Purported Demand for Appraisal

On December 31, 2020, only the Primary Layer Carriers agreed to submit defendants' claim to appraisal. Their legal counsel J.D. Dickenson of Cozen O'Connor sent a letter to plaintiff's counsel naming an appraiser for the Primary Layer Carriers (SOF 21[2]; *see* [D.E. 241-10]). Dickenson's letter of December 31, 2020, begins by specifically referencing the insurance policies issued by *the Primary Layer Carriers only* and explicitly states in the first paragraph of the letter that *Dickenson represents these Carriers only*, who he refers to collectively as "the Insurers." ([D.E. 241-10] at 2). Dickenson also addressed defendants' appraisal

---

[2] SOF 21 incorrectly stated the letter is dated December 31, 2021 – it actually is dated December 31, 2020.

4

demand on behalf of *the Primary Layer Carriers only* by letter dated April 5, 2021. (D.E 251-19). There is no ambiguity in either letter. Dickenson's letters addressing appraisal were <u>not</u> written on behalf of Landmark and do <u>not</u> refer to Landmark or the Landmark excess policy. Thus, Dickenson's letters were *not* a written demand or agreement for appraisal by Landmark.

It is undisputed that Dickenson agreed to appraisal on behalf of the Primary Layer Carriers only long *before* Landmark first learned, on March 18, 2022, of the loss and the ongoing appraisal between defendants and the Primary Layer Carriers. (*See* [D.E. 241-1] ¶ 4; SOF 6). Defendants in their response admitted this fact, stating that "Landmark did not know on the date of the hurricane whether the loss would reach its level of coverage. No one did. That was not established until two years after the loss, and was determined by the Appraisal Panel…." ([D.E. 295] at 7).

On April 1, 2022, Dickenson sent another letter to defendants' legal counsel Edward Fleming regarding the ongoing appraisal and "the Insurers'" that Dickenson represented, regarding documents requested from Defendants. ([D.E. 250-3]). Nothing in this letter can be construed as Dickenson representing Landmark in this matter. Defendants' 30(b)(6) corporate representative even testified that <u>Landmark never requested appraisal of the Hurricane Sally loss and never agreed to submit to appraisal.</u> ([D.E. 241] at SOF 22).

5

Notably, Dickenson sent another letter to Fleming on August 16, 2022, discussing in part the "procedural history of the claim and the appraisal process." (See [D.E. 241-14]) at 5-6). On page 6 of the letter, Dickenson stated that

> Our office did not, and never has, stated that it represents Landmark American Insurance Company in this appraisal. Our office does not represent Landmark in this claim and cannot speak for Landmark. You are free to communicate with Landmark's representative.

(*Id.* at 6). Landmark has also provided sworn affidavit testimony that it never retained Dickenson or his law firm in this matter. ([D.E. 283-1] ¶ 3). Thus, the evidence is undisputed that Dickenson and his law firm never represented Landmark in the appraisal or any other aspect of this matter.

### III.  **Landmark Did Not Demand or Consent to Appraisal**

Defendants in their response falsely claim that Landmark demanded appraisal under paragraph 50 of the master property policy form (as opposed to the Landmark excess policy's Appraisal Clause Amendment). This never happened. The letters discussed above between counsel for defendants and the Primary Layer Carriers cannot be construed as Landmark demanding or consenting to appraisal.

Defendants in their response contradict their claim that Landmark in 2020 and 2021 allegedly participated in the appraisal, erroneously stating that Landmark's alleged participation in the appraisal supposedly began in 2022. Specifically, defendants state that "Landmark assigned a claim number to the claim on March 18, 2022 … [and] immediately began participating in the Appraisal of the loss."

6

(Response at 9). On the contrary, as shown by Landmark in its motion for summary judgment, Landmark immediately upon learning of the appraisal on March 18, 2022, began writing letters to defendants objecting to the appraisal and specifically stating that Landmark was not participating in it. ([D.E. 241-1, 241-11, 241-12]; SOF 25). Landmark did agree to contribute to certain appraisal costs, including the cost of experts, solely to receive access to information regarding defendants' claim. ([D.E. 283-1] ¶¶ 4 and 5).

On August 2, 2022, on the eve of the appraisal panel hearing (and *after* Landmark sent its letter dated June 24, 2022, stating that it was *not* participating in the appraisal), defendants' selected appraiser submitted estimates totaling $233,030,601.80. ([D.E. 251-28]). These estimates implicated the Landmark excess policy for the first time. Still, defendants *never* submitted a sworn proof of loss or claim that their damages exceeded the $50 million attachment point of the Landmark excess policy. (*See* the Landmark excess policy, [D.E. 1-1] at 680, which states that "[i]t shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: … the amount of the loss, damage or expense sustained."; s*ee also* [D.E. 241-1] ¶6).

Therefore, it is undisputed that Landmark did not request in writing appraisal under paragraph 50 of the master property policy form or the Landmark excess

policy's Appraisal Clause Amendment. Defendants' deceptive efforts to suggest otherwise are unavailing.

## LEGAL ARGUMENT

### I. Defendants' Response is Procedurally Defective

Local Rule 56.1(C) requires that the memorandum of a party opposing summary judgment "must respond to the moving party's statement of facts as would be appropriate in an appellate brief." Landmark, complying with Fed. R. Civ. P. 56 and Local Rule 56.1(A), offered 32 separate facts with supporting evidence and citations to the record where this evidence can be found. ("SOFs"). (*See* [D.E. 241]). Defendants' response failed to respond to Landmark's SOFs. Consequently, Landmark's SOFs are undisputed. See ***KGM Contrs., Inc. v. Heavy Haulers, Inc.,*** 2018 U.S. Dist. LEXIS 243239, *2 (N.D. Fla. Jan. 5, 2018) (On a motion for summary judgment, a "plaintiff's factual assertions, supported by citations to the record evidence, are undisputed" when the opposing party fails to respond).

Defendants' response also violates Local Rule 56.1(B), which states that "[a] statement of facts must not be set out in a separate document." Defendants, at pages 1-2 of their response, attempt to incorporate facts and arguments contained in other motions and responses. This is improper and violates Local Rule 56.1 and Rule 56 of the Federal Rules of Civil Procedure. *See **United States v. Marder,*** 183 F. Supp. 3d 1231, 1235 (S.D. Fla. 2016) (the Rule's "clear procedural directive is intended to

reduce confusion and prevent the Court from having to scour the record and perform time-intensive fact searching" and is "consistent with determining the appropriateness of summary judgment."); ***Ocean's 11 Bar & Grill, Inc. v. Indem. Ins. Corp. RRG,*** 2012 WL 2675435, *3 (S.D. Fla. July 6, 2012) (citing to depositions and exhibits within body of motion to support facts therein insufficient); ***Cottingham v. Wal-Mart Stores E., LP,*** 2022 WL 2068269, *2 (S.D. Fla. Jan. 21, 2022) (*citing* ***Celotex Corp. v. Catrett,*** 477 U.S. 317, 323 (1986)) ("Not only has Defendant failed to comply with the Rule, but it has prejudiced Plaintiff's ability to discern the factual basis for defendant's motion. Moreover, Defendant's failure would force the Court to scour the record to determine the basis of Defendant's Motion. It is Defendant's responsibility, as the moving party, to 'inform the district court of the basis for its motion….'").

## II.   Landmark is Entitled to Summary Judgment Because it Did Not Breach the Landmark Excess Insurance Policy

### A.   Defendants Failed to Negate That the Landmark Excess Policy's Appraisal Clause Amendment is the Only Enforceable Appraisal Provision in the Landmark Excess Policy

In Florida, an insurance policy endorsement, such as the Landmark excess policy's Appraisal Clause Amendment, supersedes an earlier policy provision such as the master property policy form's appraisal provision. "The law in Florida is clear that to the extent an endorsement is inconsistent with the body of the policy, the endorsement controls." ***Allstate Fire & Cas. Ins. Co. v. Hradecky****,* 208 So. 3d 184,

187 (Fla. 3d DCA 2016); *see also* **Family Care Ctr., P.A. v. Truck Ins. Exch.,** 875 So. 2d 750, 752 (Fla. 4th DCA 2004) ("Even if there were an ambiguity between the endorsement and the body of the policy, the endorsement, which is clear, controls."); **Fireman's Fund Ins. Co. v. Levine & Partners, P.A.,** 848 So. 2d 1186, 1187 (Fla. 3d DCA 2003) ("the terms of an endorsement such as the one sued upon control over anything purportedly to the contrary in any other insuring agreement"); **Steuart Petroleum Co., Inc. v. Certain Underwriters at Lloyd's London,** 696 So. 2d 376, 379 (Fla. 1st DCA 1997) ("to the extent an endorsement is inconsistent with the body of the policy, the endorsement controls").

Therefore, the Landmark excess policy's Appraisal Clause Amendment is the only enforceable appraisal provision in the Landmark excess policy. Defendants cannot enforce the master property policy form's appraisal provision against Landmark.

**B.   Defendants Have Not Proven (or Created an Issue of Fact) about Whether Landmark Waived its Right to Enforce the Landmark Excess Policy's Appraisal Clause Amendment**

Defendants bafflingly argue that Cozen O'Connor and its attorneys, including Dickenson, acted as counsel for "the Market insurers," which defendants nakedly contend included Landmark, and that Dickenson allegedly consented to and participated in the appraisal on behalf of Landmark. However, it is unrebutted that

10

Landmark did <u>not</u> retain Dickenson or Cozen O'Connor as its counsel in this matter. ([D.E. 283-1] ¶ 3).

Nor were these attorneys Landmark's apparent agents. "In order to establish apparent agency, three elements must be present: (1) a representation by the principal; (2) reliance on that representation by a third person (here the insureds); and (3) detriment to the third party from such reliance." ***Nat'l Indem. Co. v. Consol. Ins. Servs.***, 778 So. 2d 404, 407 (Fla. 4th DCA 2001) (*citing* ***Almerico v. RLI Ins. Co.***, 716 So. 2d 774, 777 (Fla. 1998)). Under Florida law, *the principle* must do or say something to hold out the person as its agent. ***Consol. Ins.***, 778 So. 2d at 407-408. None of the evidence cited by defendants demonstrates Landmark held out Dickenson or his law firm as Landmark's attorneys in the appraisal. Thus, defendants' efforts to "spin" the words of Dickenson's letters, including his references to "the Market Insurers," is not evidence of an agreement *by Landmark* to submit to appraisal.

The evidence defendants argue allegedly confirms "Landmark was involved in the appraisal process," (Response at 11-12) -- *i.e.,* Landmark paid some of the costs and attended meetings -- is simply confirmation that Landmark merely monitored the appraisal between defendants and the Primary Layer Carriers. Landmark already provided affidavit testimony explaining that it monitored the appraisal and paid some of the costs solely to receive information regarding

defendants' claim. ([D.E. 283-1] ¶¶ 4-5). Defendants have not offered any evidence to rebut this fact.

There is no evidence that Landmark was "involved" in the Primary Layer Carriers' alleged demands for appraisal, their selection of appraisers and an umpire, or that Landmark agreed in writing to appraisal. On the contrary, it is undisputed that Landmark, after receiving notice of the ongoing appraisal between defendants and the Primary Layer Carriers, protested in writing that the appraisal was not being conducted consistently with the Landmark excess policy's Appraisal Clause Amendment, and stated unambiguously that Landmark was *not* participating in that appraisal. (See SOFs 25, 28, 29). Landmark's actions were not inconsistent with its right to enforce the Landmark excess policy's Appraisal Clause Amendment, and thus, Landmark's actions did not amount to a waiver of those rights. *See* **Fla. Ins. Guar. Ass'n v. Branco,** 148 So. 3d 488, 494 (Fla. 5th DCA 2014), finding the undisputed facts showed the insurer's conduct was not inconsistent with its right to appraisal.

Defendants' response fails to create a material issue of fact about whether Landmark waived its right to enforce the Landmark excess policy's Appraisal Clause Amendment. This Court must give effect to the plain language of that policy provision and find as a matter of law that the appraisal award issued in the appraisal between defendants and the Primary Layer Carriers is not binding upon Landmark.

### III. Landmark Did Not Owe or Breach a Duty to Adjust The Loss

Defendants assert in their counterclaim that Landmark "fail[ed] to promptly adjust the claim; [] fai[ed] to complete the adjustment of the claim; [and] fail[ed] to fully adjust the claim." ([Doc. 108] at 159, ¶ 274). However, defendants' response to Landmark's motion acknowledged that "Landmark's agent, the Designated Loss Adjuster, was informed of the loss – on the date of the loss – and he promptly began carrying out the duties owed by Landmark and the other Market Insurers of adjusting the loss; i.e., investigating the scope of the damages caused by Hurricane Sally, and evaluating the costs of remediating those damages." ([D.E. 295] at 2). This admission by defendants fatally undermines their contention that Landmark allegedly "fail[ed] to promptly adjust the claim." Defendants have not pointed to any evidence that Landmark failed to promptly adjust the claim.

On December 11, 2020, less than three months after the hurricane, defendants demanded the Primary Layer Carriers submit to appraisal of the loss. ([D.E. 241-9]; SOF 15). At this time, according to defendants' counterclaim, their claim was "less than the $15 million covered by first-tier carriers." ([Doc. 108] at 104, ¶ 37). At defendants' request, the process then shifted from adjusting the loss to determining the amount of the loss through appraisal.

It is undisputed that defendants never made a "claim" under the Landmark excess policy and never submitted a sworn proof of loss implicating coverage under

13

the Landmark excess policy. Defendants merely provided untimely notice of the loss and, for the first time on the eve of the appraisal panel hearing, had their appraiser provide the appraisal panel with estimates implicating the Landmark excess policy. ([D.E. 251-28]). Defendants now contend that "Market Counsel and the Designated Loss Adjuster agreed to put the 'entire loss' into appraisal [] prior to the parties knowing exactly what the amount of loss was…." (Response at 30). However, Landmark was not a part of this alleged agreement, and it was not in writing as required by the Landmark excess policy's Appraisal Clause Amendment. Defendants contend that "an appraisal panel [] completed the adjustment of the loss started by Landmark's Designated Adjuster." (*Id.* at 3).

Defendants now complain that "Landmark made no effort to adjust the loss outside of its Designated Loss Adjuster and the appraisal process." (Response at 4). Yet, until defendants filed their counterclaim, they were content with the loss being "adjusted" through appraisal. Defendants cannot have it both ways.

Defendants fail to cite any law establishing Landmark owed a duty independently from the other insurers and the Designated Loss Adjuster identified in the Landmark excess policy to adjust a loss not reported to reach the Landmark excess policy's layer of coverage. Nor have defendants cited any law requiring Landmark under these circumstances to initiate its own adjustment of the loss when

defendants and the Primary Layer Carriers had agreed to submit defendants' claim to appraisal to determine the amount of the loss.

## V. **CONCLUSION**

For the reasons and on the grounds discussed above and in Landmark's motion for summary judgment [D.E. 241], Landmark's motion should be granted.

Respectfully submitted this 10th day of January, 2025.

>*/s/ Elizbeth D. Salinas*
>ELIZABETH D. SALINAS
>Florida Bar No. 113394
>MOZLEY, FINLAYSON & LOGGINS LLP
>4767 New Broad Street
>Orlando, FL 32814
>(407) 514-2765 Ext. 2317
>esalinas@mfllaw.com
>
>-and-
>
>WAYNE D. TAYLOR
>Georgia Bar No. 701275
>*Admitted pro hac vice*
>MOZLEY, FINLAYSON & LOGGINS LLP
>1050 Crown Pointe Parkway, Suite 1500
>Atlanta, GA 30338
>Tel: (404) 256-0700
>wtaylor@mfllaw.com
>*Counsel for plaintiff Landmark American Insurance Company*

## **CERTIFICATE OF WORD COUNT**

Pursuant to N.D. Fla. Local Rule 7.1(F), the undersigned certifies that this motion contains 3,197 words, excluding case style, signature block, and certificate of service.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed *Plaintiff Landmark American Insurance Company's Reply to Defendants' Response to Landmark's Motion for Summary Judgment* with the Clerk of Court using the Court's CM/ECF System, which will automatically send a copy of the same to the following counsel of record:

Heidi Hudson Raschke, Esq.
Madison E. Wahler, Esq.
Amanda D. Proctor (*admitted pro hac vice*)
**CARLTON FIELDS, P.A.**
hraschke@carltonfields.com
mwahler@carltonfields.com
aproctor@carltonfields.com
*Counsel for Plaintiff Homeland Insurance Company of New York*

David C. Bibb, Esq.
Brian P. Henry, Esq.
**ROLFES HENRY CO., LPA**
dbibb@rolfeshenry.com
wgonzalez@rolfeshenry.com
bhenry@rolfeshenry.com
kdeglman@rolfeshenry.com
*Counsel for Plaintiffs Independent Specialty Insurance Company, Interstate Fire & Casualty Company, and Lloyd's Of London*

Jack R. Reiter, Esq.
Jordan S. Kosches, Esq.
**GRAY ROBINSON, P.A.**
jack.reiter@gray-robinson.com
jordan.kosches@gray-robinson.com
*Counsel for Plaintiff Colony Insurance Company*

Eric A. Hiller Esq.
Aaron Konstam, Esq.
Bryan M. Walsh, Esq.
Junaid N. Savani, Esq.
Iliriana Feteja, Esq.
**KENNEDYS CMK LLP**
eric.hiller@kennedyslaw.com
aaron.konstam@kennedyslaw.com
bryan.walsh@kennedyslaw.com
Junaid.savani@kennedyslaw.com
Iliriana.Fteja@kennedyslaw.com
*Counsel for Plaintiff James River Insurance Company*

| | |
|---|---|
| John David Dickenson, Esq.<br>Alexandra J. Schultz, Esq.<br>Juan P. Garrido, Esq.<br>**COZEN O'CONNOR**<br>jdickenson@cozen.com<br>aschultz@cozen.com<br>jgarrido@cozen.com<br>*Counsel for Plaintiffs Westchester Surplus Lines Insurance Company, Arch Specialty Insurance Company, Axis Surplus Insurance Company, Evanston Insurance Company, Aspen Specialty Insurance Company, and Maxum Indemnity Company* | Edward P. Fleming, Esq.<br>Matthew A. Bush, Esq.<br>Aaron T. McCurdy, Esq.<br>**MCDONALD FLEMING, LLP**<br>epfleming@pensacolalaw.com<br>cat@pensacolalaw.com<br>mabush@pensacolalaw.com<br>bushservice@pensacolalaw.com<br>amccurdy@pensacolalaw.com<br>absomerset@pensacolalaw.com<br><br>Kurtis Jay Keefer<br>**GOEDE, DEBOEST & CROSS, PLLC**<br>kkeefer@gadclaw.com<br>curbanowski@gadclaw.com<br><br>Charles F. Beall, Jr., Esq.<br>**MOORE, HILL & WESTMORELAND, P.A.**<br>cbeall@mhw-law.com<br>tstokes@mhw-law.com<br>*Counsel for Defendants* |

This 10th day of January, 2025.

*/s/ Elizabeth D. Salinas*
ELIZABETH D. SALINAS
Florida Bar No. 113394