UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CASE NO. 3:23-cv-00453-MCR-HTC

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, et al.,

    Plaintiffs,

v.

PORTOFINO MASTER HOMEOWNERS
ASSOCIATION INC., a Florida not-for-
profit Corporation, et al.,

    Defendants.
_____/

**PLAINTIFF HOMELAND INSURANCE COMPANY OF
NEW YORK'S REPLY IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Homeland Insurance Company of New York ("Homeland") files its reply in support of its Motion for Summary Judgment (DE 245), stating as follows:

## INTRODUCTION

Homeland's Motion is limited to the issue of whether Portofino's breaches of the notice and Loss Appraisal provisions of the Homeland Policy preclude coverage. In its sprawling response, Portofino attempts to minimize its failure to comply with the provisions by arguing that the actions and knowledge of third parties—Arthur J. Gallagher ("Gallagher") (Portofino's own broker), Cozen O'Connor ("Cozen")

138358241.1

(counsel for the primary carriers), and Jeff Hellman of McLaren Young International (the designated loss adjuster) ("Hellman")—are imputable to Homeland.

Portofino, however, fails to engage with the explicit language of the Homeland Policy or agency law limitations. None of the third parties identified by Portofino acted on behalf of Homeland with respect to the provision of notice or appraisal. Pursuant to the Homeland Policy, Portofino, and Portofino alone, had the obligation to ensure Homeland received "prompt" notice of the loss. It is undisputed Portofino did not comply with that requirement—it waited nearly two years to send any notice to Homeland. By then, the appraisal had been underway for eighteen months with no notice to Homeland.

These undisputed facts demonstrate that Portofino breached the express terms of the Homeland Policy, and Homeland is entitled to summary judgment on its declaratory relief claim and Portofino's breach of contract counterclaim.

## ARGUMENT

### I. Portofino's Late Notice Bars Coverage.

The Homeland Policy's Excess Property Conditions state "the Insured [i.e., Portofino] must see that" various actions are taken in the event of loss, including, "[g]iv[ing] this Company [i.e., Homeland] prompt notice of the loss," including "a description of the property involved" and a "description of how, when and where the

loss or damage occurred."[1]  Portofino failed to comply with this condition, waiting nearly two years to contact Homeland, and, even then, failing to provide particulars of the loss.[2]

To obfuscate the import of its breach, Portofino argues (1) notice to Gallagher and Hellman constitutes sufficient notice to Homeland; and (2) Homeland was not prejudiced by the delay. Portofino's arguments do not withstand scrutiny.

### A. Portofino did not comply with the Homeland Policy by providing notice to Gallagher and Hellman.

First, Portofino insists that it provided sufficient notice by reporting the loss to its own broker, Gallagher, and Hellman, pursuant to paragraph 44 of the Master Property Policy form.[3]  However, Portofino's argument ignores the fact that the governing notice provision is contained in the Homeland Policy's Excess Property Conditions, not the Master Property Policy form.[4]

The Excess Property Conditions state: "[t]he following Conditions are added to this Policy and replace any provisions to the contrary."[5] In this case, the Master Property Policy form and the Excess Property Conditions contain different notice provisions. The former required reporting the claim to Gallagher (in part); whereas

---

[1] DE 222-11, pp. 9-10.
[2] Portofino cannot create an issue of material fact by relying on its own conclusory and self-serving declaration (DE 291-1, ¶¶ 5-7, 12) that it satisfied the notice provision. *See Roda v. Univ. of Miami*, 542 F. Supp. 3d 1289, 1299 (S.D. Fla. 2021).
[3] DE 292, p. 2.
[4] DE 222-11, pp. 9, 39.
[5] *Id.*, p. 9.

the latter required that Portofino "give [Homeland] prompt notice of the loss."[6] Accordingly, the notice provision that controls is the one in the Excess Property Conditions.

Moreover, Portofino does not demonstrate how notice to Gallagher or Hellman constituted notice to Homeland. Portofino's entire argument rests on the tortured notion that Gallagher and Hellman acted as Homeland's agents. However, neither Gallagher nor Hellman acted as Homeland's agent for any purpose, including receipt of notice. Portofino, as the "party who asserts and relies on any agency relationship[,] has the burden of proving its existence, as well as its scope." *Eberhardy v. Gen. Motors Cop.*, 404 F. Supp. 826, 831 (M.D. Fla. 1975); *see also Font v. Stanley Steemer Int'l, Inc.*, 849 So. 2d 1214, 1216 (Fla. 5th DCA 2003). Portofino proves neither.

With respect to Gallagher, the undisputed facts and law show that Gallagher acted as **Portofino's** agent, not Homeland's. *See Ospina v. Sec. Nat'l Ins. Co.*, 739 So. 2d 633, 633 (Fla. 3d DCA 1999) ("[A]n insurance broker is generally the agent of the insured"). This role was confirmed by representatives of Gallagher and Portofino at deposition.[7]

---

[6] *Id.*, p. 9.
[7] DE 228-15, pp. 23:10-15, 93:1-3; DE 231-1, p. 22:8-22.

138358241.1

Because Gallagher was Portofino's agent, notice to Gallagher does not satisfy Portofino's duty to provide notice to Homeland. *See id*. at 633 ("[N]otice to the insurance broker [is] insufficient to impute knowledge to the carrier."). As the principal, it was incumbent on Portofino to ensure that its agent provide sufficient notice to Homeland. The responsibility for Gallagher's failure to provide notice falls squarely on Portofino. *See Essex Ins. Co. v. Zota,* 985 So. 2d 1036, 1046 (Fla. 2008) ("[A]cts of a broker are imputable to the insured.") (citation omitted)).

Portofino's position that notice to Hellman was notice to Homeland is similarly untenable.[8] It is undisputed that Hellman was not Homeland's agent in connection with this loss because the claim had not been reported to Homeland and Hellman only adjusted the claim on behalf of the primary carriers.[9] Even if an argument could be made that he acted as Homeland's agent as a loss adjuster, the Homeland Policy did not grant Hellman authority to act as Homeland's agent for receipt of notice. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1253 (11th Cir. 2014) ("[T]he scope of the agent's authority is limited to what the principal has authorized the agent to do."). Pursuant to the Homeland Policy's plain terms, the duty to provide notice belonged to Portofino alone.

---

[8] Even if notice to Hellman was sufficient, the cited email (DE 224-17) fails to satisfy the notice provision because it does not contain the loss particulars required by the Policy.
[9] DE 224-1, pp. 32:1-6, 45:14-17, 46:2-8, 127:4-10, 128:24-129:4, 204:10-16.

### B. Portofino fails to overcome the presumption of prejudice.

Portofino has not overcome the presumption of prejudice to Homeland, and its failure to do so warrants summary judgment in Homeland's favor. *See Boran Craig Barber Homes, Inc. v. Mid-Continent Cas. Co.*, 2009 WL 10670850, at *9 (M.D. Fla. Feb. 19, 2009). Portofino's attempts to rebut the presumption fail because they ignore the fact that Portofino, the only party with the obligation to notify Homeland, did not communicate any information regarding the loss until June 24, 2022, in a letter Homeland did not receive until July 6, 2022.[10] Despite this delay, Portofino argues Homeland did not suffer prejudice because "[t]he purpose of timely notice of a loss is to allow an insurer the ability to promptly investigate that loss," and other carriers investigated the loss.[11] Portofino's argument ignores Homeland's contractual right to participate in that investigation. An excess carrier is still prejudiced even when the primary carrier investigated the loss. *See id*. at *9 (finding insured failed to overcome presumption of prejudice even though excess carrier received primary carrier's investigation file).

Furthermore, the ability to investigate the claim is not the only purpose served by the timely notice requirement. A "prompt" notice provision also "enable[s] the insurer to evaluate its rights and liabilities" and "prevent[s] fraud and imposition

---

[10] DE 245-1, pp. 151-152 (150:22-151:3) and 399.
[11] DE 292, p. 6.

upon [the insurer].'" *PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co.*, 566 F. App'x 845, 847 (11th Cir. 2014). Portofino does not rebut the fact that its failure to provide timely notice of the loss (coupled with its premature invocation of appraisal) deprived Homeland of its ability to evaluate its rights and liabilities as to the claim and the appraisal. Portofino now seeks to impose a $187 million award against Homeland from an appraisal in which Homeland was not a party. Homeland did not learn the details of the appraisal until the day the final appraisal hearing began.[12] By then, the appraisal had been underway for eighteen months. The primary carriers and Portofino had chosen appraisers (who then chose the umpire), the panel had scheduled/conducted property inspections, and the appraisers had exchanged expert reports, estimates, and other documents.[13] This all occurred without Homeland's input.

Portofino attempts to shift the burden to Homeland and argues Homeland cannot show prejudice because Homeland cannot speculate regarding what it would have done differently or how those actions would have affected the outcome.[14] But, as the Second Circuit said:

> An insurer cannot be expected to show precisely what the outcome would have been had timely notice been given. This uncertainty … is the result of the failure of the insured to comply with the policy, and it

---

[12] DE 245-9, p. 39 (38:4-10); DE 245-10, pp. 1-5.
[13] DE 245-7; DE 104, ¶ 62; DE 108, Answer, ¶ 62; DE 108, Counterclaim, ¶ 44; DE 130, ¶ 44; DE 245-8.
[14] DE 292, p. 23.

7

should not be permitted to use that uncertainty as a weapon against the insurer.

*Am. Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 440–41 (2d Cir. 1995). That is precisely what Portofino is doing here: Portofino asks the Court to require Homeland to create an alternative history for the twenty-one-month period in which it had no notice to prove prejudice. Putting aside the improper burden shifting, Portofino cannot wield its breach as a weapon against Homeland.

Because of its untimely notice, Portofino deprived Homeland of the opportunity to participate in the claim investigation and appraisal. Accordingly, Portofino cannot overcome the presumption of prejudice.

## II.   Portofino Failed to Comply with Homeland's Loss Appraisal Provision.

The undisputed facts show Portofino initiated appraisal with the primary carriers and proceeded with appraisal before providing notice to Homeland. For the most part, Portofino does not dispute that the Loss Appraisal provision contains eight conditions,[15] including a disagreement between Homeland and Portofino regarding the amount of the loss, Homeland's right to select an appraiser, and an itemized award.

---

[15] Portofino claims that a demand is not required, but that position is inconsistent with the provision's language, which states a demand is required if a party chooses appraisal to resolve a disagreement regarding the amount of loss.

8

Portofino failed to satisfy any of the Loss Appraisal conditions. Because there was no notice to Homeland, there could be no disagreement as to valuation of the claim between Homeland and Portofino. Further, it is undisputed that Homeland did not receive/send an appraisal demand and did not select an appraiser. By extension, Homeland did not have an appraiser to participate in the appraisal and ensure the award was itemized.[16] Nor did Homeland pay any appraisal expenses.

Portofino attempts to sidestep these issues by again torturing agency law. Portofino argues Homeland had knowledge of or participated in the appraisal through its "agents" Hellman and Cozen. However, for the reasons set forth in Homeland's opposition to Portofino's summary judgment motion regarding appraisal participation, there is no evidence that Cozen had actual or apparent agency to represent Homeland.[17] On the contrary, the April 5, 2021 letter from Cozen upon which Portofino relies to show a disagreement as to the amount of the loss and a "written demand" for appraisal clearly states it was sent by the primary carriers only.[18]

In addition, there is no evidence that Hellman, the loss adjuster, acted for Homeland in connection with the appraisal. The appraisal is not, as Portofino

---

[16] Portofino argues the award is itemized because it contains a statement of loss per tower. However, an itemized award requires an itemized estimate to permit the parties to evaluate coverage issues and the potential application of sub-limits. (*See* DE 256-1, p. 12.)
[17] DE 286, pp. 24-25.
[18] DE 246-5, p. 1.

9

...

suggests, a continuation of the adjustment. On the contrary, the adjustment occurs ***prior to*** appraisal. *See Am. Cap. Assur. Corp. v. Courtney Meadows Apartment, L.L.P.*, 36 So. 3d 704, 707 (Fla. 1st DCA 2010) (finding that appraisal on items not adjusted was premature, noting, "[w]ithout adjustment, it is impossible to know whether the parties disputed the amount of loss to warrant appraisal"). Indeed, Hellman was not involved in the appraisal.[19] Accordingly, there is no basis to impute knowledge of or participation in the appraisal to Homeland.

The mere fact that Homeland later learned there was disagreement as to the amount of the loss between Portofino and the primary carriers does not mean Homeland adopted that disagreement (or any of the primary carriers' actions) as its own. Rather, Homeland seeks a declaration that there is no coverage for the loss at all, regardless of the amount of loss.[20]

Because Portofino breached the Loss Appraisal provision, Portofino's counterclaim fails, and Homeland is not bound by the appraisal.

### III. Portofino Cannot Rely on Waiver/Estoppel to Excuse Its Breaches.

Finally, there is no basis to find that Homeland waived or is estopped from relying on the notice or Loss Appraisal provisions. There can be no waiver unless there is "a clear showing that [a party] voluntarily and intentionally relinquished [its]

---

[19] DE 224-1, p. 32:23-24.
[20] DE 104, ¶¶ 242, 249.

138358241.1

rights…." *Smith v. Carlton*, 348 So. 3d 52, 57 (Fla. 5th DCA 2022). To prove estoppel, Portofino must show "(1) a representation by [Homeland] to [Portofino] as to some material fact, which representation is contrary to the condition of affairs later asserted by [Homeland]; (2) a reliance upon this representation by [Portofino]; and (3) a change in the position of [Portofino] to [its] detriment, caused by the representation and [its] reliance thereon." *United States Life Ins. Co. in the City of New York v. Logus Mfg. Corp.*, 845 F. Supp. 2d 1303, 1318 (S.D. Fla. 2012).

Portofino cannot satisfy its burden because Homeland explicitly and consistently reserved its rights as to the application of the notice and Loss Appraisal provisions. After receiving the June 24 letter on July 6, 2022, Homeland undertook an internal investigation to find any record of a reported Hurricane Sally claim (there was none).[21] Less than three weeks after Portofino's first correspondence to Homeland, Portofino filed a Civil Remedy Notice ("CRN") accusing Homeland of bad faith.[22] The next day, Homeland reached out to Portofino's counsel for more information.[23] There is no evidence that Portofino provided additional information

---

[21] DE 292-1, pp. 1-2.
[22] DE 231-30, pp. 4-9. The CRN does not serve as notice of the claim or the appraisal. A CRN provides notice of potential statutory violations by an insurer in handling claims to perfect the right of the insured to "institute a civil action … when the [insured] is damaged by the insurer's failure to settle claims in good faith." *Lane v. Westfield Ins. Co.*, 862 So. 2d 774, 779 (Fla. 5th DCA 2003). Because it concerns alleged violations in claim handling, a CRN presupposes the existence of a reported claim. Here, Portofino had not reported a claim to Homeland at the time it filed its CRN. Further, the CRN does not constitute "prompt" notice or contain the information required by the notice provision.
[23] DE 245-3, p. 3.

138358241.1

regarding the loss at that time. After that July 26 request, Homeland timely responded to the CRN on September 23, 2022 and specifically reserved its rights under the notice and Loss Appraisal provisions, including all rights as to whether it would be bound by the appraisal.[24] Homeland again reserved its rights on November 29, 2022 and January 12, 2023, then issued a declination of coverage on April 27, 2023, when it appeared the award would reach its layer.[25]

As set forth in Homeland's oppositions to Portofino's motions for summary judgment,[26] because Homeland consistently reserved its rights, there can be no finding of waiver or estoppel. *See Gemini II Ltd. v. Mesa Underwriters Specialty Ins. Co.*, 592 F. App'x 803, 809 (11th Cir. 2014) (finding reservation of rights that referenced policy condition sufficiently specific to prevent waiver); *Scottsdale Ins. Co. v. Outrigger Beach Club Condo. Ass'n, Inc.*, 304 F. Supp. 3d 1208, 1214-15 (M.D. Fla. 2018) (finding no estoppel when insurer sent reservation of rights letter).

Portofino claims Homeland delayed issuing a reservation of rights. However, an excess carrier, does not have a duty to speak to coverage until a claim implicates its layer. *See Wellons, Inc. v. Lexington Ins. Co.*, 931 F. Supp.2d 1228, 1244 n. 18 (N.D. Ga. 2013) (collecting cases) ("Under the general rule, an excess carrier has no duty to speak as to coverage until the primary layer has been exhausted."). Homeland

---

[24] DE 246-12.
[25] DE 1, p. 3 n.2; DE 286-1; DE 286-2.
[26] DE 286, pp. 19-27; DE 287, pp. 23-25.

138358241.1

issued its reservation of rights approximately five months before the first interim award.[27] Further, once it became apparent that the award would likely implicate Homeland's layer, Homeland denied coverage. After the final award was issued on July 16, 2023, showing Homeland's layer was implicated, Homeland amended the complaint to address how the appraisal and award violated the Homeland Policy.[28] Given these facts, there is no reasonable dispute that Homeland timely communicated its coverage position.

Nor is Portofino's argument that Homeland is estopped because it allegedly participated in the appraisal credible. The facts show Homeland did not participate: Homeland did not receive/send an appraisal demand, select an appraiser, pay appraisal fees, or learn the details of the appraisal until the final appraisal hearing. Even Portofino's appraisal expert could not opine that Homeland participated in the appraisal.[29] The only "evidence" cited by Portofino is privileged communications between Homeland and counsel for the other carriers ***after*** commencement of the final appraisal hearing, in anticipation of this litigation.[30]

Portofino does not cite law or facts supporting the notion that Homeland waived or is estopped from denying coverage by failing to object to or acquiescing

---

[27] *Compare* DE 246-12 (dated September 23, 2022) *with* DE 245-11, p. 3 (dated February 15, 2023.
[28] *Compare* DE 245-11, p. 35 *with* DE 104.
[29] DE 223-1, 197:19-24.
[30] DE 292-2.

138358241.1

in the appraisal. The undisputed facts show the opposite. But, even if Homeland sat back and did nothing, that fact alone would not warrant a finding of estoppel. Under Florida law, "[e]stoppel by silence or inaction may arise where the party to be estopped has a duty to speak or act and fails to do so." *Logus*, 845 F. Supp. 2d at 1318. Portofino does not provide any authority for the proposition that Homeland could, let alone had a duty to, object to an appraisal to which it was not a party. Because Homeland was not a party to the appraisal, *Biscayne Beach Club Condo. Ass'n, Inc. v. Westchester Surplus Lines Ins. Co.*, 111 F.4th 1182 (11th Cir. 2024) is inapposite.[31]

Given that Homeland timely and consistently reserved its rights and filed this declaratory judgment action before conclusion of the appraisal, Portofino's arguments of waiver and estoppel fail.

## CONCLUSION

Homeland respectfully submits that its Motion for Summary Judgment should be granted.

---

[31] Further, once Homeland's investigation confirmed Portofino's breaches, Homeland had no duty to adjust the loss. *See Starling v. Allstate Floridian Ins. Co.*, 956 So. 2d 511, 513 (Fla. 5th DCA 2007) ("[M]aterial breach of an insured's duty to comply with a policy's condition precedent relieves the insurer of its obligations under the contract."); *see also MC & VC Corp. v. Scottsdale Ins. Co.*, No. 21-CV-60729-RAR, 2021 WL 6125799, at *2 (S.D. Fla. Dec. 27, 2021) ("[N]otice is a condition precedent to coverage.").

## CERTIFICATE OF WORD COUNT

Pursuant to N.D. Fla. Local Rule 7.1(F), the undersigned certifies that this Opposition contains 3,197 words, excluding case style, signature block, and certificate of service.

Respectfully submitted this 10th day of January, 2025.

                                         */s/ Amanda D. Proctor*
                                         Heidi Hudson Raschke
                                         Florida Bar No. 61183
                                         4221 W. Boy Scout Blvd
                                         Tampa, Florida  33607
                                         Telephone: 813-223-7000
                                         Email: hraschke@carltonfields.com

                                         Amanda D. Proctor (admitted *pro hac vice*)
                                         David Houston McConnell, III
                                         Florida Bar No. 1038642
                                         1230 Peachtree Street, N.E., Suite 900
                                         Atlanta Georgia 30309
                                         Telephone:  404-815-3392
                                         Email:  aproctor@carltonfields.com
                                                         dmcconnell@carltonfields.com

                                         ***Counsel for Plaintiff Homeland Insurance Company of New York***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 10, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will automatically serve all counsel of record.

*/s/ Amanda D. Proctor*
Amanda D. Proctor

138358241.1